UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | CHAPTER 11 |
| SUMMIT METALS, INC., | ) ) | CASE NO. 1:08-cv-0005 (SLR) |
| Debtor. | ) ) ) | |
| | ) | |
| AMBROSE M. RICHARDSON, III | ) ) | |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| U.S. TRUSTEE KELLY BEAUDIN STAPLETON, | ) ) | |
| Appellee. | ) ) | |

APPELLANT'S APPENDIX

INDEX

Notice of Appeal                                                                                    1

Decision and Order of Bankruptcy Court, 12/4/07                                 2

Temporary Restraining Order of NY Supreme Court                          53

Preliminary Injunction Decision of NY Supreme Court                      56

Preliminary Injunction Order of NY Supreme Court                         72

Summary Judgment Decision in Gray v. Richardson                         84

Fee Decision in Gray v. Richardson                                              88

Decision of Appellate Division in Gray v. Richardson                      92

Delaware Committee Adversary Complaint                                     97

Findings and Conclusions of Delaware Dist. Court, 8/6/04             134

Fee Application of H. Adam Prussin, Esq.                                     178

Fee Application of Committee Counsel                                         209

Time Records of A. M. Richardson, 6/1/95 – 12/31/98                  295

Fee Application of A. M. Richardson, 1/1/99 – 12/31/00               321

Fee Application of A. M. Richardson, 1/1/01 – 8/31/04                 421

Amended and Supplemental Application of Richardson                  490

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | CHAPTER 11 |
| SUMMIT METALS, INC., | ) ) | CASE NO. 98-2870 (KJC) |
| Debtor. | ) ) ) ) |  |

## NOTICE OF APPEAL

Ambrose M. Richardson, III, a creditor, hereby appeals under 28 U.S.C. §158(a) from the

Order of the Bankruptcy Judge insofar as it denied appellant's administrative claim entered in

this proceeding on the 4th day of December, 2007.

The names of all parties to the Order appealed from, and the names and addresses of their

respective attorneys, are set forth on the attached schedule.

**AMBROSE M. RICHARDSON**
Ambrose M. Richardson, III
Creditor of Chariot Group/Summit
40 Wall Street
New York, NY 10005
(212) 530-4771; Fax: (212) 267-2030

December 13, 2007

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **SUMMIT METALS, INC.,** | : Case No. 98-2870-KJC |
| | : |
| Debtor. | : |
| | : |

## <u>ORDER</u>

AND NOW, this 4th day of December, 2007, upon consideration of Amended Application of Ambrose M. Richardson, Esq. for Compensation as Post-Petition Creditor and as Creditor Providing Substantial Benefit to the Estate Pursuant to §§ 503(b)(1)(A)(i), 503(b)(3)(B),(C),(D) and (F) and 503(b)(4)(Docket No. 587) ("Richardson Application"), objections thereto, after evidentiary hearing thereon and consistent with the foregoing Opinion, it is hereby

**ORDERED** and **DECREED** that the Richardson Application is **GRANTED**, in part and **DENIED**, in part.  Richardson is awarded an allowed administrative expense in the amount of $2,533.65.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

48

Joanne Bianco Wills, Esquire
Klehr Harrison Harvey Branzburg & Ellers
919 N. Market Street, Suite 1000
Wilmington, DE 19801

Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Joseph J. Bodnar, Esquire
Law Offices of Joseph J. Bodnar
2101 North Harrison Street, Suite 101
Wilmington, DE 19802

Adam G. Landis, Esquire
Rebecca L. Butcher, Esquire
Landis Rath & Cobb, LLP
919 Market Street, Suite 600
Wilmington, DE 19801

"J" Jackson Shrum, Esquire
Harvey, Pennington Ltd.
913 Market Street, 7th Floor
Wilmington, DE 19801

Ambrose M. Richardson, Esquire
A. M. Richardson, P.C.
40 Wall Street, 35th Floor
New York, NY 10005

Barry M. Klayman, Esquire
Todd Charles Schiltz, Esquire
Wolf, Block, Schorr & Solis-Cohen LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801

H. Adam Prussin, Esquire
Pomerantz Haudek Block Grossman & Gross
100 Park Avenue, 26th Floor
New York, NY 10017-5516

49

00003

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 98-2870-KJC |
| **SUMMIT METALS, INC.,** | : | |
| | : | |
| Debtor. | : | |
| | : | |

## O P I N I O N[1]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

JEPSCO, Ltd. ("Jepsco") and Ambrose M. Richardson, Esq. ("Richardson") have filed applications seeking the allowance of fees and expenses as administrative expenses pursuant to section 503(b) of the Bankruptcy Code. The Chapter 11 Trustee, the United States Trustee, and the Official Committee of Unsecured Creditors (the "Committee") (collectively, the "Objecting Parties") have objected. The Court held evidentiary hearings on February 23, March 16, and April 4, 2006 and accepted post-hearing briefs from the parties.

For the reasons set forth below, the Court will deny Jepsco's request and grant in part and deny in part Richardson's request.

### BACKGROUND

A.    The Summit Metals Bankruptcy and the Events Preceding

A brief explanation of the events leading to and surrounding the filing of this chapter

---

[1]    This Opinion constitutes the findings of fact and conclusions of law required by FED. R. BANKR. P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B).

11 proceeding (the "Case")[2] is helpful to the resolution of the instant dispute.

1.    The New York Proceedings

During the period from 1991 to 1995, Richard E. Gray, the sole director and majority

shareholder of The Chariot Group, Inc. ("Chariot") caused Chariot to pay approximately $7.7

million in fees to its indirect majority shareholder, Chariot Holdings Ltd. ("Chariot Holdings"),

and to VDC Recovery Corporation, a Gray-controlled entity. During this time, Gray also caused

Chariot to write-off loans it had made to Chariot Holdings and to Gray. These events led to the

August 1995 filing of a New York shareholder lawsuit against Gray (the "First NY Shareholder

Lawsuit").

After the commencement of the First NY Shareholder Lawsuit, Gray attempted to sell

Chariot's operating subsidiaries -- Energy Savings Products, Inc. ("ESP"), in which Chariot held

a 92% interest, and B.F. Rich Co., Inc. ("B.F. Rich"), ESP's wholly-owned subsidiary. Gray was

successful in June 1995, causing Chariot to sell its interest in ESP to Homestar Acquisition

Corporation ("Homestar Acquisition"), a company wholly owned by Gray. In exchange for

ESP's stock, Gray arranged for Chariot to receive a $15 million note (the "Note") from Hallowell

Industries, Inc. ("Hallowell"), another entity owned and controlled by Gray. Following the sale

of ESP to Homestar Acquisition, Gray merged Homestar Acquisition into ESP. The Note

remains unpaid.

In August 1995, Gray merged Summit Metals, Inc. ("Summit" or the "Debtor") with

---

[2]    These background facts have been derived substantially from then District Judge
Jordan's Post-Trial Findings of Fact and Conclusions of Law resolving Summit Metals, Inc. v. Gray (In
re Summit Metals, Inc.), No. 00-387 (D. Del. Aug. 6, 2004), submitted as Exhibit 22. Judge Jordan has
since been elevated to the Court of Appeals for the Third Circuit.

2

Chariot, transferred the remaining Chariot operations to Chariot Management, Inc., another entity affiliated with Gray, and shut down Chariot operations. The events surrounding the Summit/Chariot merger led to the filing of a second shareholder lawsuit (the "Second NY Shareholder Lawsuit," together, with the First NY Shareholder Lawsuit, the "NY Shareholder Lawsuits").

In October 1996, the plaintiffs in the NY Shareholder Lawsuits successfully obtained preliminary injunctive relief with respect to the: (i) alleged looting of Chariot by Gray; (ii) sale of Chariot's interest in ESP to Homestar Acquisition; and (iii) merger of Chariot into Summit (the "Preliminary Injunction Proceeding"). As a result, Gray was enjoined from transferring any of ESP's assets to himself or any other entity that he owned or controlled (the "Preliminary Injunction"). In October 1998, Gray was found to have violated the Preliminary Injunction by misappropriating $4.3 million from ESP and was held in civil contempt (the "Contempt Proceeding"). An order was entered in January 1999 providing Gray an opportunity to purge the judgement of contempt by returning the $4.3 million. However, Gray refused to do so. He was committed to prison from November 2001 until November 2003, at which time he stipulated to deposit the stock of the Debtor, ESP, Rivco (as defined below), and Jenkins (as defined below) into escrow pending the resolution of the DE Adversary Proceeding (as defined below).

        2.    The Delaware Proceedings

On December 30, 1998, the Debtor commenced this Case, seeking protection under chapter 11 of the Bankruptcy Code. The filing of the petition stayed the NY Shareholder Lawsuits. The Committee was formed by the United States Trustee on March 4, 1999. Richardson, the former partner of Gray and officer of Chariot and its subsidiaries, was appointed

3

as its Chairman. On October 1, 2004, the Court appointed Francis A. Monaco, Jr. as the Chapter 11 Trustee.

On October 29, 1999, the Committee filed a complaint on behalf of the Debtor to recover property from Gray and his affiliated entities, including ESP (the "DE Adversary Proceeding"). The Complaint alleged that Gray breached his fiduciary duties owed to the Debtor and Chariot by engaging in unfair and fraudulent self-dealing transactions, which included the looting of Chariot from 1991 to 1995 and the sale of Chariot's interest in ESP for the unpaid Note. The Complaint also alleged that, following the shut-down of Chariot's operations, Gray took two corporate opportunities of the Debtor when he acquired ownership in Riverside Millwork Co., Inc. ("Rivco") and Jenkins Manufacturing, Inc. ("Jenkins") with the Debtor's money. On August 6, 2004, the District Court for the District of Delaware found for the Debtor, awarding a $40 million judgment against Gray and directing Gray and his affiliated entities to transfer their interests in Rivco and Jenkins to the Debtor. In 2005, the Debtor sold its interests in Rivco and Jenkins -- the estate's only marketable assets -- for approximately $18 million.

3.    Miscellaneous Relevant Proceedings

In 1997, creditors commenced an involuntary bankruptcy proceeding against Homestar Industries, Inc. ("Homestar"), another entity owned by Gray, in the Eastern District of Missouri (the "MO Bankruptcy Proceeding"). A chapter 7 trustee was subsequently appointed, who recovered approximately $600,000 in insurance proceeds misappropriated by Gray from Homestar (the "MO Adversary Proceeding"). While in prison for contempt, Gray pled guilty to bankruptcy and tax fraud relating to the MO Bankruptcy Proceeding (the "MO Criminal Proceeding"). Additional unrelated criminal investigations into Gray's activities also occurred in

4

Connecticut and New York.

In 2000, while the DE Adversary Proceeding was pending, creditors of ESP commenced an involuntary bankruptcy proceeding against it in the Middle District of Tennessee (the "TN Bankruptcy Proceeding"). Following the commencement of the TN Adversary Proceeding (as defined below), the Committee dismissed ESP as a defendant from the DE Adversary Proceeding. The Committee then filed a proof of claim on behalf of the Debtor in the TN Bankruptcy Proceeding. To resolve ESP's objection to the Debtor's proof of claim, the Committee agreed to relinquish the Debtor's claim against ESP in exchange for 92% of ESP's outstanding equity post-bankruptcy and any of ESP's rights or causes of action against Gray or his affiliated entities, including any Rivco and Jenkins corporate opportunity claims.

In 2001, Richardson commenced a lawsuit in New Hampshire against Gray and his affiliated entities on the Debtor's behalf, alleging claims identical to those alleged in the DE Adversary Proceeding (the "NH Proceeding"). The NH Proceeding was stayed shortly thereafter.

4.    Proceedings Against Richardson

Four separate proceedings filed against Richardson are relevant here. First, prior to the filing of this Case, Gray and Summit sued Richardson in New York, alleging that Richardson violated his fiduciary duties as an officer of Chariot (the "Richardson Fiduciary Duty Proceeding"). Ultimately, the Richardson Fiduciary Duty Proceeding was dismissed and Summit was held responsible to indemnify Richardson for his fees and expenses.

In 1998, a portion of Richardson's fees and expenses incurred in the Richardson Fiduciary Proceeding was reimbursed by Summit. It was this reimbursement that was the subject of the second proceeding against Richardson. In May 1999, following the commencement of this

5

Case, the Debtor filed an adversary proceeding against Richardson seeking the avoidance and recovery of the reimbursement as an alleged preference (the "Richardson Preference Proceeding").

The third proceeding against Richardson was commenced in August 1999 by the Debtor and alleged racketeering, conspiracy, tortious interference with a contract and economic relations, prima facie tort, abuse of process, breach of fiduciary duty, and vexatious litigation (the "Richardson Racketeering Proceeding"). The life span of the Richardson Racketeering Proceeding was short as it was dismissed after ten days.

The fourth and final proceeding against Richardson was commenced by ESP after the filing of the TN Bankruptcy Proceeding. ESP filed suit against the Committee, Richardson, and their individual lawyers and law firms, alleging that the DE Adversary Proceeding violated the automatic stay (the "TN Adversary Proceeding"). ESP also sought punitive damages from Richardson, arguing that his failure to prosecute certain objections he raised in the TN Bankruptcy Proceeding amounted to egregious conduct.

B.    Procedural History

On February 11, 2005, Jepsco filed its application (the "Application" or "Jepsco Application") seeking the allowance of fees and expenses totaling $78,366.78 as an administrative expense under section 330 of the Bankruptcy Code. Jepsco subsequently amended its Application (the "Amended Application" or Jepsco Amended Application") on April 26, 2005 to seek the allowance of its fees and expenses under section 503(b)(3)(D) for its "substantial contribution" to the Case. The Objecting Parties have argued, inter alia, that: (i) Jepsco lacks standing under section 503(b)(3)(D); (ii) Jepsco did not substantially contribute to

6

the Debtor's estate or creditors; and (iii) even if Jepsco substantially contributed, Jepsco is ineligible to seek its fees as an administrative expense.

On February 15, 2005, Richardson filed his application (the "Application" or "Richardson Application") seeking the allowance of fees and expenses totaling $877,752.59 as an administrative expense under sections 507(a)(1) and 503(b). Richardson subsequently amended his Application (the "Amended Application" or "Richardson Amended Application") on March 13, 2006, reducing his request to $869,631.50 and relying only upon sections 503(b)(1)(A),[3] 503(b)(3)(B), (C), (D), and (F), and 503(b)(4). On April 3, 2006, Richardson supplemented (the "Supplement") his Amended Application with more detailed invoices and further amended his request to remove section 503(b)(3)(B) as a supporting provision.[4] The Objecting Parties have argued, inter alia, that: (i) Richardson is unable to collect his expenses under section 503(b)(1)(A) because they did not arise from a post-petition transaction with the Debtor or provide an actual benefit to the Debtor's estate; (ii) Richardson cannot collect expenses under section 503(b)(3)(C) because the criminal matters in which he assisted do not relate to the Case, the Debtor's business or its property; (iii) Richardson cannot recover his expenses under section

---

[3]     In his Amended Application, Richardson cites section 503(b)(1)(A)(i). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), section 503(b)(1)(A) was renumbered section 503(b)(1)(A)(i). Section 507(a)(1) has also been renumbered as Section 507(a)(2). Because this Case was filed before the effective date of BAPCPA, the Court will refer to the pertinent sections as they were designated at the time the Case was filed.

[4]     It is unclear whether Richardson removed section 503(b)(3)(F) as well. According to Richardson's testimony on April 4, 2006, he no longer wished to rely upon section 503(b)(3)(F). (Hr'g Tr. 122:13-123:13, Apr. 4, 2006.) Moreover, the Supplement lumps his time spent on Committee matters into his section 503(b)(1)(A) claim. (Supplement 5.) However, Richardson's Post-Trial Brief proffers a section 503(b)(3)(F) argument. (Richardson Post-Hr'g Br. 16-18.) Because of this ambiguity and because the Objecting Parties have addressed section 503(b)(3)(F) in their papers, the Court will examine whether the reimbursement of Richardson's expenses under section 503(b)(3)(F) is appropriate.

7

503(b)(3)(D) because his efforts failed to make a substantial contribution to the Debtor's estate or creditors; (iv) by the plain language of the statute, Richardson is unable to recover his fees under sections 503(b)(3)(C), (D), and (F); and finally, (v) Richardson cannot recover his fees under section 503(b)(4) because his status as an attorney does not entitle him to recover his professional rate, his efforts were duplicative, his fees are unreasonable, and his invoices are vague and ambiguous.

### DISCUSSION

In deciding whether to grant the relief sought in the Jepsco Amended Application, the Court is called upon to determine: (i) whether Jepsco is eligible to pursue an administrative expense claim under section 503(b)(3)(D); (ii) if so, whether Jepsco substantially contributed to the Debtor's chapter 11 case; and (iii) whether Jepsco can recover its fees under sections 503(b)(3)(D) or 503(b)(4).

In deciding whether to grant the relief sought in the Richardson Amended Application, the Court is called upon to determine: (i) whether Richardson's expenses qualify for reimbursement under sections 503(b)(1)(A) and 503(b)(3)(C), (D) or (F); and (ii) whether Richardson's fees qualify for reimbursement under section 503(b)(4).

I.    Jepsco Amended Application

    A.    Jepsco is eligible to pursue administrative allowance of expenses but not fees

In its Amended Application, Jepsco relies upon section 503(b)(3)(D) to seek an administrative expense recovery of $76,344 in fees and $2,022.78 in expenses. Under 11 U.S.C. § 503(b)(3)(D), the Court may allow as administrative expenses,

        the actual, necessary expenses, other than compensation and

8

00011

> reimbursement specified in [section 503(b)(4)], incurred by . . . a
> creditor, an indentured trustee, an equity security holder, or a
> committee representing creditors or equity security holders other
> than a committee appointed under section 1102 of this title, in
> making a substantial contribution in a case under chapter 9 or 11 of
> this title . . . .

The Objecting Parties argue that Jepsco is ineligible to recover its fees and expenses under this provision because (i) Jepsco is not "a creditor, an indentured trustee, an equity security holder or a committee representing creditors or equity security holders[;]" and (ii) section 503(b)(3)(D) does not permit the recovery of compensation.

In defending its eligibility under section 503(b)(3)(D), Jepsco argues that the approximate $1 million claim held in this Case by James T. Kelly ("Kelly"), Jepsco's president, chief executive officer, sole director, and sole employee, qualifies it as a creditor of the Debtor. According to Kelly, he used Jepsco as his alter ego and often operated Jepsco under his name. (Hr'g Tr. 37:20-38:1, Feb. 23, 2006.)  Essentially, Jepsco asserts that Jepsco and Kelly are the same entity.

The Court will consider the Jepsco Amended Application under section 503(b)(3)(D). The evidence submitted indicates that the totality of fees and expenses requested in the Jepsco Amended Application were generated solely by Kelly.  At first, Kelly drafted the Jepsco Application improperly and without the assistance of counsel.  (Hr'g Tr. 39:22-24, Feb. 23, 2006.)  Thereafter, with the help of counsel, Kelly sought to adopt the Application for himself. The Court finds no reason to refuse such a request and will reach the merits of the Jepsco Amended Application.[5]

---

[5]     The Court will use "Kelly" and "Jepsco" interchangeably herein.

Although the Court concludes that Kelly may adopt the Jepsco Amended Application for himself, Kelly is eligible to pursue only an award of expenses -- not fees -- under section 503(b)(3)(D). The plain language of section 503(b)(3)(D) is clear that an applicant who substantially contributes to a debtor's estate and creditors may be awarded only actual and necessary <u>expenses</u>. For an award of compensation, applicants must rely on section 503(b)(4), which allows as an administrative expense,

> reasonable compensation for professional services rendered by an <u>attorney or an accountant</u> of an entity whose expense is allowable under [section 503(b)(3)], based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(4) (emphasis added). In the instant case, the Objecting Parties have argued that section 503(b)(4) cannot apply because Kelly is neither an accountant nor a lawyer. The Court agrees. Kelly operates and provides the services of a "management consulting firm." (Hr'g Tr. 36:8, Feb. 23, 2006.) Therefore, because Kelly cannot meet the standard for eligibility under section 503(b)(4), the Court must deny Jepsco's request for allowance of $76,344 in fees.

B.     <u>Jepsco did not substantially contribute to the Debtor's estate or creditors</u>

Under section 503(b)(3)(D), Kelly can recover his remaining $2,022.78 in expenses if he proves by a preponderance of the evidence that he incurred the expenses as a result of activities which substantially contributed to the Debtor's estate or creditors. <u>See, e.g.</u>, <u>In re Buckhead Am. Corp.</u>, 161 B.R. 11, 15 (Bankr. D. Del. 1993) ("Because creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole, they have the burden of

10

proving . . . that they made the requisite substantial contribution."). The Bankruptcy Code does not define "substantial contribution." However, courts have determined that an applicant's activities substantially contribute if they "'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors.'" Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994) (quoting Haskins v. United States (In re Lister), 846 F.2d 55, 57 (10th Cir. 1988)). The activities must "facilitate progress in the case, rather than . . . retard or interrupt." In re Gurley, 235 B.R. 626, 636 (Bankr. W.D. Tenn. 1999).

Courts have examined several factors to determine whether applicants' efforts have substantially contributed, including: "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others." Id.; accord Buckhead, 161 B.R. at 15; In re FRG, Inc., 124 B.R. 653, 658 (Bankr. E.D. Pa. 1991); In re Alert Holdings Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). Additionally, courts have considered the motivation of the applicant, holding that applicants who act "primarily to serve their own interests and . . . [who would have acted] absent an expectation of reimbursement from the estate" cannot be compensated under section 503(b)(3)(D). Lebron, 27 F.3d at 944 (emphasis added). If the benefit received by the estate was incidental "arising from activities the applicant has pursued in protecting his or her own interests[,]" courts have found an applicant's contribution insubstantial. Id.

It is undisputed that Kelly participated voluntarily, not only in this Case and the DE Adversary Proceeding, but also in several of the miscellaneous yet relevant proceedings. More specifically, Kelly provided deposition testimony to aid the DE Adversary Proceeding, testified

11

00014

in this Case to fight against consolidation, reviewed and assembled files in anticipation of the DE

Adversary Proceeding, and attended approximately ten meetings with the Committee in

preparation for the DE Adversary Proceeding. Moreover, Kelly met with ESP's general counsel

to review business records, met with BF Rich's attorneys and Rivco and Jenkins shareholders to

discuss monetary demands from Gray, met with U.S. Attorneys in Missouri, Connecticut, and

New York as well as the Federal Bureau of Investigation (the "FBI") and the Internal Revenue

Service (the "IRS"), and testified at the Contempt Proceeding and the TN Bankruptcy

Proceeding's sale hearing. (Jepsco App. 6-8.)

Kelly asserts that his efforts substantially contributed to this Case because: (i) his efforts

"prevented Gray from pilfering money from what ultimately would be part of the Summit estate,

[he] organized documents and exhibits, and helped send Gray to jail so this [C]ase could

proceed" (Jepsco Post-Hr'g Br. 5); (ii) the DE Adversary Proceeding, in which he participated,

"conferred substantially all, if not all, of the assets on the Debtor's estate" (Jepsco Post-Hr'g Br.

5); and (iii) he "lessened the burden on the [d]ebtors' professionals and expedited a smooth

transition through the bankruptcy process" (Jepsco Post-Hr'g Br. 9 (alteration in original)

(citation omitted)).

The Objecting Parties disagree with Kelly's assessment of his efforts' effect on the

Debtor's estate and creditors. First, the Objecting Parties argue that any contribution conferred

upon this Case was merely incidental, because Kelly's primary motive in assisting the parties was

to acquire Rivco and Jenkins from the Committee. Second, the Objecting Parties contend that

Kelly's assistance in the TN Bankruptcy Proceeding, the various criminal investigations, the

Contempt Proceeding, and the BF Rich, Jenkins and Rivco matters did not relate to this Case

12

00015

and, therefore, no benefit was conferred. Finally, the Objecting Parties assert the success of the

DE Adversary Proceeding resulted from the Committee's efforts and that Kelly's testimony

could have been compelled through the Federal Rules of Civil Procedure.

The Court agrees with the Objecting Parties and concludes that Kelly's activities did not

make a substantial contribution to this Case. First, the record fails to establish how Kelly's

activities in the criminal investigations, the TN Bankruptcy Proceeding, and the BF Rich matter--

or even how those matters themselves -- conferred a direct benefit on the Debtor's estate and

creditors. Kelly testified that the criminal investigations led to the indictment of Gray in

Missouri and Connecticut, may have reduced the IRS's claim in this Case, and placed the IRS in

a position to seize Gray's assets. (Hr'g Tr. 281:18-283:1, Apr. 4, 2006.) Kelly also testified that

ESP, along with its subsidiary, BF Rich, "were part of the umbrella of Summit Metals" (Hr'g Tr.

41:13-15, Feb. 23, 2006), thereby implying that any contribution to the TN Bankruptcy

Proceeding and BF Rich matter contributed to this Case. However, there is no evidence proving

that Kelly's efforts in the TN Bankruptcy Proceeding, the BF Rich matter, and the criminal

investigations increased the assets of this Case or prevented them from diminishing. See In re

Granite Partners, L.P., 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) ("[I]nsubstantial services

include those that do not actually increase the size of the estate . . . ."); Marcus Montgomery

Wolfson & Burten P.C. v. AM Int'l (In re AM Int'l, Inc.), 203 B.R. 898, 904 (D. Del. 1996)

(finding that the applicants substantially contributed because their negotiations allowed the

creditors committee to receive full payment on their claims). Kelly's actions may have helped

the TN Bankruptcy Proceeding by stopping the flow of money from BF Rich to Gray and helping

the IRS pursue claims against Gray but none of Kelly's actions have been proven to have

13

00016

increased or maintained the assets of the Debtor. Kelly himself admits this. (See generally Hr'g Tr. 253:1-300:2, Apr. 4, 2006.) Moreover, there is no indication that, absent Kelly's efforts, a different outcome would have been produced in this Case. See, e.g., Lebron, 27 F.3d at 946 (holding that the applicant's contributions were substantial because they were "critical" to both the court and the trustee); Granite, 213 B.R. at 449 ("Here, the applicants' objections to the disclosure statement did not alter the character of the document, and did not, therefore, rise to the level of a substantial contribution."); In re Columbia Gas Sys., Inc., 224 B.R. 540, 552 (Bankr. D. Del. 1998) ("Exxon's activities were not of the type that if absent, progress towards reorganization of [the Debtor] would have been substantially diminished.").

Second, although Kelly's request of and participation in meetings of the Jenkins and Rivco shareholders may have stopped monetary payments to Gray, which ultimately may have decreased Jenkins' and Rivco's sale value, the record shows that Kelly's motivation for participating in the meetings stemmed from his minority shareholder positions in Rivco and Jenkins. (Hr'g Tr. 50:24-51:2, Feb. 23, 2006 ("[B]oth Ailward and I were shareholders of Jenkins and Rivco, and so we though it was a pretty good idea to find out whether or not these companies were being denuded by Gray . . . .").) According to Kelly, his primary concern was to prevent Rivco and Jenkins from "paying money out that had been prohibited by a restraining order." (Hr'g Tr. 286:1-3, Apr. 4, 2006.) Therefore, because Kelly requested and participated in the meetings for the purpose of protecting Rivco and Jenkins, any benefit accruing to this Case as a result of these efforts was merely incidental. See, e.g., Mfrs. Hanover Trust Co. v. Bartsh (In re Flight Transp. Corp. Sec. Litig.), 874 F.2d 576, 583 (8th Cir. 1989) (finding lack of substantial contribution where indenture trustee's services, which included monitoring of and intervention in

14

00017

security and bankruptcy litigation, filing proofs of claims, and communicating and advising its clients, were designed primarily to benefit its clients); In re Lister, 846 F.2d at 57 (denying reimbursement for the applicant's pre-petition efforts to collect a judgment when he "was unaware of the pendency of bankruptcy proceedings[,]" and thus, were solely for his own interest); Columbia Gas, 224 B.R. at 549 (noting, as a factor in its decision to withhold reimbursement, the applicant's "strong economic self-interest" in the global settlement); FRG, 124 B.R. at 659 (holding that potential purchasers of the debtors' assets did not substantially contribute to the estate by participating in the bidding process because their actions were "primarily on behalf of their own interests").

Finally, although the Contempt Proceeding and the DE Adversary Proceeding substantially contributed to this Case by ultimately providing for the recovery and sale of the Jenkins and Rivco stock, the Court cannot find that Kelly's testimony and fact-finding assistance in those proceedings substantially contributed. While it is true that Kelly's participation in the DE Adversary Proceeding was extensive, totaling approximately eighty hours, "extensive participation in a case, without more, is insufficient to compel compensation." Gurley, 235 B.R. at 636. Kelly relies on In re Essential Therapeutics, Inc., 308 B.R. 170 (Bankr. D. Del. 2004), arguing that his extensive participation "'lessened the burden on the [d]ebtors' professionals and expedited a smooth transition through the bankruptcy process.'" (Jepsco Post-Hr'g Br. 9 (alteration in original) (quoting Essential, 308 B.R. at 176).) Kelly's reliance on Essential is misplaced. In Essential, the applicants assisted the estate by taking over a portion of the debtors' counsel's responsibilities. For example, the applicants drafted key plan provisions, participated in hearings, and prepared necessary corporate documents. The Essential Court held that

15

"[w]ithout this assistance, the [d]ebtors' counsel would have had to devote significant time and resources to perform these services .... As a result, the Debtors were able to cut costs by focusing their efforts on their areas of expertise and allowing the [applicants] to assist where appropriate ...." Essential, 308 B.R. at 176. Here, unlike the applicants in Essential, Kelly's testimony and fact-finding assistance did not relieve the Committee of any of its duties or enable the Committee to focus its attention elsewhere. Essential is inapplicable here.

The success of the Contempt Proceeding and the DE Adversary Proceeding did not result solely from Kelly's efforts, but rather, from the participation of many, including the Objecting Parties, the plaintiffs of the NY Shareholder Lawsuits, and their respective attorneys.[6] See, e.g., In re Worldwide Direct, Inc., 334 B.R. 112, 125 (Bankr. D. Del. 2005) (concluding that applicant's participation in a sale did not substantially contribute because there was "no evidence what amount was due solely (or even primarily) to [the applicant's] efforts .... [and the applicant] acknowledges that it was one of many parties participating in the negotiations"); Columbia Gas, 224 B.R. at 549 (noting, as one of the court's reasons for denying reimbursement, that the settlement, which provided $550 to $600 million in estate value, required the participation of many).

Finally, the Court is unwilling to award reimbursement under section 503(b)(3)(D) for an applicant's time and effort in testifying. The Court agrees with the reasoning set forth in In re

---

[6]        In support of Jepsco's request, Richardson testified that there would not have been a DE Adversary Proceeding without the participation of Kelly. (Hr'g Tr. 252:11-12, Apr. 4, 2006.) As courts have held, "Corroborating testimony by a disinterested [emphasis added] party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.'" In re U.S. Lines, Inc., 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989). The Court may also use its "own first-hand observance of the services provided" in addition to any corroborating testimony to find a substantial contribution. Id.

Gherman, 105 B.R. 714, 717 (Bankr. S.D. Fla. 1989): "Virtually all litigation is dependent to some degree upon the testimony and, therefore, the time and effort, of lay witnesses. A witness subject to a court's subpoena power, who voluntarily furnishes evidence, is simply performing a civic duty." Reimbursing a lay witness who provides testimony for the prevailing party would encourage lay witnesses to demand reimbursement from a debtor regardless of the substance or significance of the testimony, thereby adding an unwelcome incentive to the process.

    Therefore, because the Court has determined that Kelly's efforts throughout the TN Bankruptcy Proceeding, the BF Rich, Rivco, and Jenkins matters, the various criminal investigations, the DE Adversary Proceeding, and the Contempt Proceeding did not substantially contribute to this Case, Jepsco's request for an allowance of $2,022.78 in administrative expenses will be denied.

> C.    Jepsco failed to meet its burden of proving that its expenses are actual and necessary

    Even if this Court concludes that Kelly's efforts substantially contributed to the Debtor's estate and creditors, the Court cannot award Kelly his expenses because he has failed to meet his burden of proving that they are actual and necessary. Under section 503(b)(3)(D), a finding of substantial contribution is only the first step. After such a finding, the Court must determine whether an applicant's expenses were actual and necessary. The applicant must provide sufficient details of each expense incurred for which reimbursement is sought. See generally In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 584 (Bankr. D. Utah 1985) (noting that required details include the date, type, and amount of each expense). Local Rule 2016-2 provides

17

00020

guidance to applicants. It requires that an applicant requesting payment of an administrative

expense under section 503(b)(3) must provide the Court with "an expense summary by category

for the entire period of the request. Examples of such categories are computer-assisted legal

research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging." Del.

Bankr. L.R. 2016-2(e). Additionally, each expense within each category must be itemized, with

"the date the expense was incurred, the charge and the individual incurring the expense, if

available." Id.

  In the Jepsco Application, which provides the only expense detail submitted to the Court,

Kelly's activities from February 2001 until February 2004 are listed with some detail, but his

expenses are merely totaled and listed under each activity. For example, Kelly's submission for

February 2001 states: "Meeting in Counsel's office regarding transfer of records (HR)
Expense: $32."

(Jepsco App. 6.) The Application does not provide any explanation of the expenses except for

the January 2004 expense described as "hotel 2 nights and late check out." (Jepsco App. 8.)

Moreover, the testimony of both Richardson and Kelly provides no additional insight.

Consequently, without any supporting detail, the Court is unable to award Kelly's requested

expenses. See, e.g., Jensen-Farley, 47 B.R. at 584 ("Undocumented expenses will not be

allowed."); Worldwide Direct, 334 B.R. at 120 (holding that "a request for an administrative

claim under section 503(b) requires the same level of documentation and substantiation as a

request for compensation under section 330"); In re F.A. Potts & Co., Inc., 114 B.R. 92, 94-95

(Bankr. E.D. Pa. 1990) (denying the reimbursement of "administrative costs" for the applicant's

failure to specify its components).

18

II.    Richardson Amended Application

    A.    Section 503(b)(1)(A)

Richardson relies upon section 503(b)(1)(A) to seek an administrative expense recovery of $618,995.87[7] in fees and $82,358.20 in expenses. Part of Richardson's claim is comprised of the Richardson Fiduciary Duty Proceeding indemnification award and his subsequent collection costs. The collection costs include Richardson's fees and expenses incurred for efforts in this Case, the DE Adversary Proceeding, the MO Bankruptcy Proceeding, the MO Adversary Proceeding, the MO Criminal Proceeding, the TN Bankruptcy Proceeding, the TN Adversary Proceeding, the NH Proceeding, the Richardson Preference Proceeding, the Richardson Racketeering Proceeding, the Contempt Proceeding, and the Preliminary Injunction Proceeding, taken to recover assets for the estate so that he could collect his indemnification award (the "Collection Costs"). According to Richardson, he is entitled to an award of the Collection Costs because of Chariot's corporate by-laws, providing indemnification "to the fullest extent now or hereafter permitted by law" (Richardson Post-Hr'g Br. 3), and the Delaware Supreme Court's decision in Stifel Financial Corp. v. Cochran, 809 A.2d 555 (Del. 2002), permitting the indemnification of expenses incurred by a corporate officer in successfully prosecuting an indemnification suit under 8 Del. C. § 145(a)[8] (Richardson Post-Hr'g Br. 3-4).

---

    [7]    Of the $618,995.87 requested under section 503(b)(1)(A), $561,380.81 is also sought under sections 503(b)(3)(D) and 503(b)(4).

    [8]    Richardson also relies upon In re Women First Healthcare, Inc., 332 B.R. 115 (Bankr. D. Del. 2005), and Reading Co. v. Brown, 391 U.S. 471 (1986), to argue that he may recover his indemnification claim under section 503(b)(1)(A) without a showing of substantial contribution because his claim was incurred while defending an action brought by the Debtor, as successor in interest to Chariot. (Richardson Post-Hr'g Br. 5-6.) Those cases stand for the proposition that a tort committed by a debtor can give rise to an administrative claim. In the instant case, Richardson's reliance on Women First and Reading is misplaced as he has not accused the Debtor of committing a tort.

In response to Richardson's request, the Objecting Parties argue that an indemnification award of Collection Costs is improper because: (i) Richardson failed to introduce into evidence the Chariot bylaws; (ii) the Stifel decision does not entitle Richardson to receive indemnification for the Collection Costs; and (iii) the Collection Costs are unreasonable. Additionally, even if the Court awards Richardson the Collection Costs, the Objecting Parties assert that Richardson's entire indemnification claim under section 503(b)(1)(A) is improper because it did not arise out of a post-petition transaction between the Debtor and because Richardson's actions did not directly and substantially benefit the estate.

It is unnecessary for the Court to decide whether Richardson is entitled to an award of his Collection Costs. Even if the Court awarded them, Richardson's indemnification claim is not entitled to administrative status. Under 11 U.S.C. § 503(b)(1)(A), the Court may allow as administrative expenses, "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, commissions for services rendered after the commencement of the case." For a request to be allowed under section 503(b)(1)(A), the applicant must prove that "'the debt [arises] from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [is] beneficial to the debtor-in-possession in the operation of the business.'" Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (quoting Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976) (first alterations in original)); accord In re Women First Healthcare, Inc., 332 B.R. 115, 121 (Bankr. D. Del. 2005); In re Pinnacle Brands, Inc., 259 B.R. 46, 51 (Bankr. D. Del. 2001); In re Mid-American Waste Sys., Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999); In re Phila. Mortgage Trust, 117 B.R. 820, 827 (Bankr.

20

E.D. Pa. 1990).

In this Case, Richardson's section 503(b)(1)(A) indemnification claim fails because it did not arise from a transaction with the Debtor. Rather, it arose from the Richardson Fiduciary Duty Proceeding, which was filed pre-petition and stemmed from Richardson's pre-petition conduct as an officer of Chariot. Consistently, courts have held that an indemnification claim based upon pre-petition services or conduct is not a cost or expense for "services rendered after the commencement of a case." 11 U.S.C. § 503(b)(1)(A). Instead, it is a form of prepetition compensation for services that is not entitled to administrative expense priority. See, e.g., Pinnacle, 259 B.R. at 51-52 (denying administrative status to applicant's indemnification claim arising from a contract executed pre-petition); Mid-American, 228 B.R. at 821-22 (refusing to award administrative expense status for indemnification claims arising from securities litigation, which arose pre-petition out of the applicants' pre-petition conduct); In re Overland Park Fin. Corp., 240 B.R. 402, 405-06 (Bankr. D. Kan. 1999) (refusing to grant administrative expense priority to former officer/director's indemnification claim for expenses incurred in a lawsuit based upon his pre-petition actions); Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 188 B.R. 347, 359 (Bankr. S.D.N.Y. 1995) (holding that because the agreement at issue was executed pre-petition, any contractual right to indemnification arising therefrom would be a pre-petition unsecured claim); In re Highland Group, Inc., 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) (same); Phila. Mortgage, 117 B.R. at 828-30 (finding that claims based upon pre-petition conduct cannot be afforded administrative expense priority because claims must arise post-petition); In re Amfesco Indus., Inc., 81 B.R. 777, 784 (Bankr. E.D.N.Y. 1988) (same); cf. In re Heck's Props., Inc., 151 B.R. 739, 767-68 (S.D. W. Va. 1992) (awarding administrative cost

21

priority to officers' and directors' indemnification claims that arose from a lawsuit based upon their post-petition conduct and services).

The remainder of Richardson's section 503(b)(1)(A) claim is comprised of his time and expenses spent on Committee matters. According to Richardson, his time and expenses devoted to Committee matters -- and also to collecting his indemnification award -- are entitled to priority under section 503(b)(1)(A) because his efforts enabled the recovery of assets for the estate. (Supplement 5-6.) "One of the main policies underlying section 503(b)(1)(A) is to provide an incentive for creditors and others to continue or commence doing business with an insolvent entity." 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Alan N. Resnick et al. eds., 15th ed. rev. 2006); see also Mammoth Mart, 536 F.2d at 954 ("[I]f a business is to be reorganized, third parties must be willing to provide the necessary goods and services. Since they clearly will not do so unless their claims for payment will be paid ahead of the pre-petition debts and liabilities of the debtor, [the Code] provides a priority for expenses incurred by the debtor-in-possession in order to maintain, preserve, or rehabilitate the bankrupt estate."). Thus, a section 503(b)(1)(A) applicant must demonstrate that "the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." O'Brien Envtl., 181 F.3d at 533 (citations omitted) (emphasis added). Examples of costs and expenses often awarded priority under section 503(b)(1)(A) are "outlays for repairs, upkeep, freight, [and] insuring the value of the property . . . . [as well as] for storage of property, for rent and for other goods and services incidental to protecting, conserving, maintaining and rehabilitating the estate . . . ." 4 COLLIER ON BANKRUPTCY at ¶ 503.06[1]. In the instant case, although Richardson argues extensively that he conferred an actual benefit to the

22

estate, he failed to establish that his costs and expenses were necessary to preserve the value of estate assets. Therefore, Richardson has failed to meet the burden required under section 503(b)(1)(A). Richardson's request for an administrative expense priority claim under section 503(b)(1)(A) will be denied.

      B.     Section 503(b)(4)

     Richardson seeks reimbursement of fees totaling $711,326.65 under section 503(b)(4).[9] As set forth above, section 503(b)(4) allows for the reimbursement of "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expenses is allowable under [section 503(b)(3)] . . . ." As indicated by the plain language of the statute, the issue of whether fees can be awarded as administrative expenses under section 503(b)(4) typically is not decided until after the Court allows an administrative expense recovery under section 503(b)(3). Nevertheless, the Court will address section 503(b)(4) first, but concludes that Richardson's request must be denied.

     Richardson, an attorney admitted to practice in the state of New York, has submitted his fee request under section 503(b)(4) and seeks reimbursement of his and his employees' legal services in the NY Shareholder Lawsuits, the Contempt Proceeding, the Preliminary Injunction Proceeding, this Case, the DE Adversary Proceeding, the MO Bankruptcy Proceeding, the MO Adversary Proceeding, the MO Criminal Proceeding, the TN Bankruptcy Proceeding, the TN

---

     [9]      Richardson requests reimbursement of his fees under sections 503(b)(1)(A), 503(b)(3)(C), (D), and (F), and 503(b)(4). However, reimbursement of fees can be awarded only under sections 503(b)(1)(A) and 503(b)(4). See 11 U.S.C. § 503(b)(3) ("[T]here shall be allowed as administrative expenses . . . the actual and necessary expenses, other than compensation and reimbursement . . . ."). As explained in Discussion supra Part II.A., Richardson's request for fees under section 503(b)(1)(A) is denied. The remainder of his requested fees will be analyzed under section 503(b)(4).

Adversary Proceeding, the NH Proceeding, the Richardson Fiduciary Duty Proceeding, the Richardson Preference Proceeding, and the Richardson Racketeering Proceeding. Services included drafting, reviewing and filing pleadings, undertaking discovery, providing advice, performing research, and developing legal theories. (Richardson Post-Hr'g Br. 16.) Richardson's time has been billed at the rate of $250-275 per hour, his associate's time at $150 per hour, and his paralegal's time at $75 per hour. (Richardson Am. App. 8.)

The Objecting Parties have argued that Richardson was not employed as an attorney for any party and, therefore, is seeking improperly an hourly wage for services he provided while representing himself. In support of this argument, the Objecting Parties rely on In re Gimelson, Nos. 04-3216, 00-11773F, 2004 WL 2713059 (E.D. Pa. Nov. 23, 2004), and In re Pappas, 277 B.R. 171 (Bankr. E.D.N.Y. 2002), both of which are helpful to the Court's present inquiry.

In Gimelson and Pappas, attorneys sought reimbursement of their time devoted to assisting trustees in the recovery of assets. Both courts denied the requests. The Pappas Court reasoned: "The mere fact that the creditor happens to be an attorney who bills $250 per hour does not change the inquiry. Section 503(b) provides that 'actual' 'expenses' may be afforded administrative expense status. Marshall's billable time, although valuable, was not an 'actual expense' to Marshall." 277 B.R. at 177. The Gimelson Court agreed with the Bankruptcy Court, which held, "Section 503(b)(4) does not include the time spent by a creditor who represents himself and has not incurred any attorney's fees, but affords an administrative priority to reimburse a creditor for compensation paid for professional services provided by an attorney for an entity." 2004 WL 2713059, at *22.

The Court agrees with the reasoning of Pappas and Gimelson. The fact that Richardson is

24

an attorney does not change the relevant inquiry of eligibility under section 503(b)(4). Only "an attorney or an accountant of an entity whose expense is allowable under [section 503(b)(3)]" is eligible for reimbursement of the "actual and necessary expenses incurred by such an attorney or accountant . . . ." 11 U.S.C. § 503(b)(4) (emphasis added). Here, although Richardson's actions may have been motivated , at least in part, by the prospect of helping other case participants, Richardson was not employed as an attorney for those participants and thus, could have been acting only in his personal capacity. Therefore, because Richardson, "as an attorney representing himself, does not seek reimbursement of professional fees that he incurred, but seeks compensation for his own time expended[,]" Richardson is ineligible to seek reimbursement of his fees under section 503(b)(4). Gimelson, 2004 WL 2713059, at *21. Richardson's request for reimbursement of $711,326.65 in fees under section 503(b)(4) is denied.

     C.    Section 503(b)(3)(C)

    Richardson next argues that he is entitled to an administrative expense recovery of $1,830.59 under section 503(b)(3)(C)[10] for his expenses[11] incurred while assisting state and federal officials in developing and prosecuting bankruptcy and tax fraud claims against Gray. More specifically, Richardson asserts that he worked with the FBI and U.S. Attorneys prosecuting the MO Criminal Proceeding by answering questions, establishing the falsity of Gray's statements under oath at the MO Bankruptcy Proceeding's meeting of creditors, identifying supporting evidence, and providing "extensive background information . . . relating to

---

[10]     Of the $1,830.59 requested under section 503(b)(3)(C), $1,827.59 is also sought under section 503(b)(3)(D).

[11]     The Court will not address Richardson's fee request under this section for the reasons stated above. See Discussion supra Part II.B.

the New York proceedings and the overall big picture." (Richardson Am. App. 27.) The Objecting Parties argue that the MO Criminal Proceeding does not relate to the Debtor's case, business, or property but rather, stems from Gray's misappropriation of Homestar's insurance proceedings and false testimony in the MO Bankruptcy Proceeding's meeting of creditors.

The Court cannot allow Richardson's request under section 503(b)(3)(C). Under 11 U.S.C. § 503(b)(3)(C), the Court may allow as administrative expenses, "the actual, necessary expenses, other than compensation and reimbursement specified under [section 503(b)(4)], incurred by . . . a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor . . . ." Unlike sections 503(b)(1)(A) and 503(b)(3)(B) and (D), section 503(b)(3)(C) does not require that the expenses incurred by the creditor provide a benefit to the estate. However, the applicant bears the burden of satisfying a two-prong test. First, the applicant must show a direct relationship between the expenses sought and the prosecution of the criminal activity. See Lebron, 27 F.3d at 943 n.1 (holding that section 503(b)(3)(C) was unavailable to an applicant because his efforts, although ultimately leading to a criminal prosecution of the debtor, were not incurred in the course of a criminal proceeding); In re Petit, 291 B.R. 582, 591 (Bankr. D. Me. 2003) (refusing an award under section 503(b)(3)(C) because there was no showing that the applicant's expenses incurred in providing information to the court, which led to the investigation and prosecution of the debtor, were incurred in connection with a criminal investigation). Second, the applicant must prove that the prosecution of the criminal offense relates to a debtor's case, business, or property. See, e.g., In re Holder, 207 B.R. 574, 576 (Bankr. M.D. Tenn. 1997) (prosecuting the debtor for the improper representations and omissions on his statements and schedules).

26

In the instant case, Richardson fulfilled his burden under the first prong but did not do so under the second. The record establishes that Richardson's expenses were incurred in connection with the prosecution of the MO Criminal Proceeding. Richardson's activities assisted the FBI and U.S. Attorneys in formulating an indictment and provided evidence against Gray. See In re Fall, 93 B.R. 1003, 1012 (Bankr. D. Or. 1988) ("The phrase 'in connection' could encompass a wide variety of activities. Its use suggests a legislative intent that a creditor whose activities can be shown to have contributed in any direct way to the results which led to prosecution of a criminal offense . . . ."). However, the record is unclear how the MO Criminal Proceeding -- or even how the MO Bankruptcy Proceeding or the MO Adversary Proceeding -- relates to this Case, the Debtor's property or its business. There is no evidence that the Debtor had an interest in the insurance proceeds misappropriated by Gray or that it had any interest in the MO Bankruptcy Proceeding. Moreover, there is no evidence establishing how the Debtor's business related to the MO Criminal Proceeding or to Homestar. Richardson argues that the Homestar trustee may have asserted a claim to Jenkins but did not because of the successful outcome of the MO Adversary Proceeding. (Hr'g Tr. 30:15-25, Mar. 16, 2006.) This argument is unpersuasive in light of the lack of evidence supporting such a claim. Because Richardson has failed to meet his burden of proof, this Court must deny his request for an administrative expense under section 503(b)(3)(C).

D.    Section 503(b)(3)(D)

Turning next to Richardson's most lengthy argument, the Court must decide whether Richardson's request for an administrative expense recovery of $107,282.41 in expenses under

27

section 503(b)(3)(D) is proper.[12]  Richardson has set forth eighteen specific examples of how his efforts in thirteen different proceedings substantially contributed to this estate and its creditors. The Objecting Parties contend that an award under section 503(b)(3)(D) is inappropriate because: (i) Richardson's efforts provided no actual and direct benefit to the Case; (ii) if a contribution was made, it was the result of numerous retained professionals; (iii) Richardson's primary motivation in acting was to benefit himself or to fulfill the fiduciary duties owed to Committee members; and (iv) many of Richardson's efforts were duplicative of retained professionals in the Case. Below, the Court addresses separately Richardson's efforts in each one of the thirteen proceedings and determines that an allowed administrative expense totaling $2,533.65 is appropriate.

### 1.    NY Shareholder Lawsuits

According to Richardson, his participation in the NY Shareholder Lawsuits, more specifically, his efforts regarding the Preliminary Injunction Proceeding and Contempt Proceeding, substantially contributed to the Debtor's estate and creditors by "establish[ing] the facts and theories of the Debtor's looting and fraudulent transfer claims" (Richardson Post-Hr'g Br. 8) asserted in the DE Adversary Proceeding and by ultimately causing Gray's incarceration, which led to the escrow of Jenkins and Rivco stock and prevented further actions adverse to the Debtor (Richardson Post-Hr'g Br. 8). Additionally, Richardson has argued that his efforts in the Preliminary Injunction Proceeding provided evidence for the DE Adversary Proceeding. More

---

[12]    Of the $107,282.41 requested under section 503(b)(3)(D), $81,816.65 is also sought under section 503(b)(1)(A) and $1,827.59 under section 503(b)(3)(C), but these expenses are disallowed for the reasons discussed previously. The Court will not address Richardson's fee request under § 503(b)(3)(D) for the reasons stated above. See Discussion supra Part II.B.

28

specifically, Richardson gathered evidence, recruited witnesses, drafted pleadings, and supervised attorneys. (Hr'g Tr. 23:4-7, Mar. 16, 2006.) With respect to the Contempt Proceeding, Richardson worked to unseal the record of the Contempt Proceeding, prevented its resealing, discovered and evaluated evidence, and worked with H. Adam Prussin ("Prussin"), the attorney for the NY Shareholder Lawsuit plaintiffs and special counsel to the Committee. (Richardson Post-Hr'g Br. 8; Hr'g Tr. 24:4-22, Mar. 16, 2006.)

In this Case, the Preliminary Injunction Proceeding and the Contempt Proceeding substantially contributed to the estate. Those proceedings established facts and theories asserted in the DE Adversary Proceeding, and thereby "lessened the burden on the Debtor['s] professionals[,]" reduced fees and expenses, and eased the professionals' preparation. Essential, 308 B.R. at 176. Moreover, the proceedings led to the escrow of Rivco and Jenkins stock, ensuring its preservation for the Debtor's estate and its creditors. However, the Court cannot conclude that it was Richardson's efforts which directly caused these benefits.[13] The benefits produced from the Preliminary Injunction Proceeding and the Contempt Proceeding resulted from the participation of many, especially Prussin. (Richardson Am. App. 19 ("Richardson . . . worked with H. Adam Prussin to discredit Gray's arguments of not owning his affiliates and having purged his contempt."); Hr'g Tr. 43:4-7, Mar. 16, 2006 ("[I]n connection with the contempt proceeding and even with respect to the adversary proceeding, it [Richardson's effort] was supportive of Mr. Prussin who was . . . the barrister in this case . . . .").) Richardson claims

---

[13]    Some of Richardson's efforts occurred pre-petition. Pre-petition expenses are recoverable under section 503(b)(3)(D) only if the applicant can "establish that the pre-petition efforts resulted in a substantial contribution to the estate post-petition." Essential, 308 B.R. at 175 (emphasis added).

29

to have "supplied the evidence to show that . . . Gray had sufficient resources to purge the

contempt" (Richardson Am. App. 19), "established the facts and theories of the Debtor's looting

and fraudulent transfer claims against Gray" (Richardson Am. App. 5), and been "substantially

responsible for [the] injunction" (Hr'g Tr. 23:7, Mar. 16, 2006). Without any additional

evidence to support such assertions or the Court's first-hand observance of Richardson's role in

the Contempt Proceeding and the Preliminary Injunction Proceeding, the Court cannot conclude

that his efforts substantially contributed to the Case. See, e.g., In re 9085 E. Mineral Office

Bldg., Ltd., 119 B.R. 246, 249-50 (Bankr. D. Colo. 1990) ("Something more than mere

conclusory self-serving statements regarding one's involvement in a case which allegedly

resulted in a 'substantial contribution' must be presented to the Court before compensation can

be allowed . . . . '[A] court's own first-hand observance of the services provided may be a

sufficient basis . . . .'" (quoting In re U.S. Lines, Inc., 103 B.R. 427, 430 (Bankr. S.D.N.Y.

1989)).

     Moreover, the Court cannot agree that Richardson's efforts to unseal the Contempt

Proceeding's record directly benefitted this estate and creditors. In 1999, Richardson's efforts

permitted public access to the court file and the records. (See Richardson Post-Hr'g Br. Ex. A (J.

Cozier Order dated Dec. 9, 1999).) However, this effort was duplicated by the Committee. The

parties involved with the NY Shareholder Lawsuits entered into a Stipulation and Protective

Order, which forbade them from using the materials produced in connection with those

proceedings in additional litigation. (Ex. 24 (Stipulation & Protective Order dated July 1, 1997).)

In 2001, the Committee fought successfully to obtain and use the confidential materials in the DE

Adversary Proceeding. (Ex. 516 (Hr'g Tr., Oct. 21, 2002).) Richardson has failed to produce

any evidence except for conclusory statements to indicate that the record he worked to unseal included materials not already included in those obtained by the Committee. (See Richardson Post-Hr'g Br. 11). Moreover, even though the Contempt Proceedings' evidentiary record may have been unsealed, the Court is unclear whether the parties to the DE Adversary Proceeding could have used them without first seeking additional court approval. (See Ex. 24 ¶ 7 ("Any Confidential Material which is admitted into evidence shall not lose its protection under this Stipulation and Protective Order unless ordered by the Court.").) As such, the Court must conclude that it was the Committee's efforts, not Richardson's efforts, which directly benefitted the estate and its creditors.

2.    MO Bankruptcy Proceeding, MO Adversary Proceeding, MO Criminal Proceeding (collectively, the "MO Proceedings")

In the MO Bankruptcy Proceeding, Richardson exchanged information with the chapter 7 trustee, evaluated evidence, and identified instances of Gray's false testimony at the meeting of creditors. These efforts, according to Richardson, led to the success of the MO Adversary Proceeding, which recovered $600,000 for the Homestar estate, and the MO Criminal Proceeding, which led to Gray's guilty plea of bankruptcy and tax fraud. (Richardson Am. App. 26-27.) According to Richardson, the success of the MO Adversary Proceeding stopped the chapter 7 trustee from asserting a claim to Jenkins. (Hr'g Tr. 30:15-20, Mar. 16, 2006.) Also, Richardson argues that Gray's guilty plea discredited Gray in the DE Adversary Proceeding. (Hr'g Tr. 30:24-25, Mar. 16, 2006.)

The Court cannot conclude that Richardson's efforts in the MO Proceedings substantially contributed to the Debtor's estate and creditors. For the Court to find a substantial contribution,

31

00034

"the applicant must show a 'causal connection' between the service and the contribution."
Granite, 213 B.R. at 447 (citation omitted). Here, no such connection has been shown. First, as
the Court previously indicated, it is unclear how the MO Proceedings provided a direct benefit to
the estate and its creditors. See Discussion supra Part II.C. Second, even if the Court found a
direct benefit, it is unclear how Richardson' efforts substantially contributed. There has been no
evidence submitted to indicate that the chapter 7 trustee in the MO Bankruptcy Proceeding had a
claim to Jenkins and deferred asserting that claim because of the MO Adversary Proceeding's
success. Moreover, there is no evidence that the MO Proceedings increased the assets within
Debtor's estate or prevented them from diminishing. Finally, although Gray may have been
discredited by the MO Criminal Proceeding, the likelihood of the success of the DE Adversary
Proceeding would have remained unchanged in its absence. The transactions underlying the DE
Adversary Proceeding had already occurred and Gray was already imprisoned for violating the
Preliminary Injunction.

        3.    TN Bankruptcy Proceeding

      Richardson's participation in the TN Bankruptcy Proceeding took many forms. First, he
unsuccessfully attempted to transfer the case to Delaware and to oppose the sale of BF Rich.
According to Richardson, these efforts served to educate the parties regarding Gray's prior
history and ultimately stopped the sale of BF Rich. (Richardson Am. App. 24.) A party's
efforts, while unsuccessful, may substantially contribute to an estate and its creditors. See, e.g.,
Hall Fin. Group, Inc. v. DP Partners, Ltd. (In re DP Partners, Ltd.), 106 F.3d 667, 670 (5th Cir.
1997) (explaining how creditor's unsuccessful proposed plan set off a bidding war, resulting in a
final amended plan that provided $3 million more for the creditors); Granite, 213 B.R. at 449

(considering whether applicants' unsuccessful objections altered the character of the proposed disclosure statement to add value or facilitate a successful reorganization). However, in this case, Richardson merely argues that his unsuccessful efforts substantially contributed to the TN Bankruptcy Proceeding. He offers no suggestion or proof as to how they substantially contributed to the Debtor's estate or creditors.

Second, Richardson opposed Gray's proposed plan of reorganization. According to Richardson, the proposed plan "would have deprived the Debtor of everything" because it subordinated the claims of ESP's stockholders to those of BF Rich, foreclosing the Debtor's chances of receiving a distribution. (Richardson Post-Hr'g Br. 9.) The Court cannot conclude that these efforts substantially contributed to the Debtor's estate and creditors. The Committee, in resolving the proof of claim dispute, relinquished the Debtor's claim against ESP. As a result, ESP's plan of reorganization and its proposed distribution schedule bore no effect on the Debtor's estate and creditors.

Third, Richardson submitted, defended, and pursued claims on behalf of the Debtor, which resulted "in the Debtor's [sic] obtaining the rights to [Rivco and Jenkins.]" (Richardson Post-Hr'g Br. 9.) More specifically, Richardson, while acting in his personal capacity, filed a separate claim in the TN Bankruptcy Proceeding and "prosecuted [both the Committee's claim and his claim] on behalf of the Committee . . . ." (Hr'g Tr. 33:22-23, Mar. 16, 2006.) According to Richardson, the settlement of the Debtor's claim resulted in the assignment of ESP's corporate opportunity claims against Gray to the Debtor -- "the basis of the Debtor's legal claim to [Rivco and Jenkins]." (Richardson Am. App. 25.) Richardson's argument fails. With regard to Richardson's submission of his own proof of claim, it was duplicative of the Committee's effort

33

and no evidence has been submitted to demonstrate a resulting benefit to the estate or creditors.
See, e.g., Essential, 308 B.R. at 175 (denying reimbursement where applicant's services were duplicative of the Debtor's professionals); Buckhead, 161 B.R. at 17 (holding that, because the debtor was responsible for the sale of assets, any services provided by the committee in the asset sales "were duplicative rather than actual and necessary"). As to the settlement of the Debtor's proof of claim, it did not result in the Debtor's ownership of Rivco and Jenkins. As the Committee and Chapter 11 Trustee correctly emphasized, Judge Jordan's opinion in the DE Adversary Proceeding found that "the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit" -- not ESP. (Ex. 509 ¶ 94.)

        4.    TN Adversary Proceeding

According to Richardson, his defense of the TN Adversary Proceeding successfully resisted an "attempt to enjoin the adversary proceeding against Gray in Delaware." (Richardson Am. App. 25.) At the outset, it is important to note that the outcome of the TN Adversary Proceeding benefitted the Debtor's estate and creditors only by allowing the DE Adversary Proceeding to continue. However, the Court cannot conclude that Richardson's efforts substantially contributed to that outcome. First, the success of the TN Adversary Proceeding was a result of numerous participants, including the Committee and its counsel. Second, because Richardson did not specify in detail his efforts taken in the TN Adversary Proceeding, it is impossible for this Court to determine whether Richardson's efforts were duplicative of those performed by the Committee. Third, and finally, like the Richardson Fiduciary Duty Proceeding, the Richardson Preference Proceeding, and the Richardson Racketeering Proceeding discussed below, the benefit conferred upon the estate as a result of Richardson's efforts was merely

34

incidental. By his own testimony, Richardson admits that the actions he undertook in connection with the TN Adversary Proceeding were to prove he was not liable for any wrongdoing. (Hr'g Tr. 164:23-165:2, Apr. 4, 2006.) In fact, a portion of the expenses for which he is seeking reimbursement constitute the fees of his own counsel, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC. The Court cannot allow reimbursement of Richardson for expenses incurred as a result of services rendered for his own benefit, rather than for the estate and its creditors. See, e.g., Lister, 846 F.2d at 57 (opining, as support for the Court's denial of a section 503(b)(3)(D) claim, that the applicant's pre-petition efforts were undertaken solely for the purpose of collecting a judgment); Phila. Mortgage, 117 B.R. at 831 ("The only activities which took place post-petition were Sarp's efforts to defend himself . . . . The expenditures appear to have been clearly made for Sarp's own benefit, and any benefit to the Debtor's estate appears to have been, at best, incidental.").

          5.    NH Proceeding

       Richardson next argues that the NH Proceeding, filed and pursued solely by Richardson and his local counsel, substantially contributed to the Debtor's estate and creditors by preventing the expiration of the New Hampshire fraudulent transfer statute of limitations, "plac[ing] a cloud on Gray's title and prevent[ing] any attempts by Gray to sell Rivco out from under Summit." (Richardson Am. App. 26-27.) The Court cannot agree. First, like the MO Proceedings, the Court does not believe the NH Proceeding conferred any benefit to the Debtor's estate or creditors. The NH Proceeding was stayed with the commencement of this Case and no judgment was ever entered on behalf of the Debtor. Although Richardson stated that the proceeding prevented looting (Richardson Am. App. 26), there is no evidence that Gray was attempting to

sell Rivco and that the NH Proceeding prevented such a sale. Second, Richardson's own testimony indicates that the NH Proceeding was duplicative of the Committee's efforts in Delaware, and therefore, non-compensable. (See Hr'g Tr. 167:6-9, Apr. 4, 2006 ("Q: The New Hampshire claims were duplicative of the claims that were pending in Tennessee and Delaware, right? [Richardson's] A: Well, they were duplicative of the claims that were pending in Delaware."); see also Ex. 35 (July 28, 2003 facsimile from Richardson to Cameron Schilling, Esq. stating that, "The Delaware action . . . covers the same issues as the NH action . . . .").)

6.    Richardson Fiduciary Duty Proceeding

Although Richardson's primary argument for the reimbursement of expenses he incurred while defending the Richardson Fiduciary Duty Proceeding falls under section 503(b)(1)(A), Richardson also argues that this proceeding led to discovery that established the corporate opportunity claims alleged in the DE Adversary Proceeding. (Hr'g Tr. 131:19-22, Apr. 4, 2006.) Richardson's argument is flawed in two respects. First, Richardson admitted that the evidence establishing the corporate opportunity claims originated from the discovery performed in the Richardson Preference Proceeding and not the Richardson Fiduciary Duty Proceeding. (Hr'g Tr. 132:10-14, Apr. 4, 2006.) Second, Richardson's primary purpose in acquiring this information was to further his own defense. Because any benefit to the estate and creditors was merely incidental, Richardson cannot receive reimbursement for these expenses.

7.    Richardson Preference Proceeding

Richardson argues that the discovery he obtained while defending the Richardson Preference Proceeding substantially contributed to the Debtor's estate and creditors by establishing the corporate opportunity claims alleged in the DE Adversary Proceeding. Again,

36

00039

Richardson primary purpose in acquiring this information was to further his own defense. (Hr'g Tr. 144:16-22, Apr. 4, 2006 ("Q: And the actions that you undertook in the suit were taken with the intent of proving that you weren't liable? [Richardson's] A: Yes. Q: In connection with those actions, you sought documents . . . to prove that Summit was solvent . . . ? [Richardson's] A: That's correct."); accord Hr'g Tr. 16:10-17:11, Mar. 16, 2006.) Therefore, any benefit to the estate and creditors was merely incidental.

### 8.    Richardson Racketeering Proceeding

Richardson seeks reimbursement of his expenses incurred in defending the Richardson Racketeering Proceeding, commenced on August 3, 1999 and voluntarily dismissed ten days later. However, Richardson admits that his defense of the proceeding provided no substantial benefit to the Debtor's estate or creditors. (Hr'g Tr. 151:6-9, Apr. 4, 2006 (testifying that there was no "substantial benefit aspect" to the expenses, but rather, that the expenses were incurred in defending an action brought by the Debtor).) Additionally, like the Richardson Fiduciary Duty Proceeding, the Richardson Preference Proceeding, and the TN Adversary Proceeding, any benefit conferred as a result of Richardson's defensive efforts, however unlikely, was merely an incidental result in light of Richardson's strong personal motive to prove the allegations against him false. Therefore, Richardson's request for reimbursement is denied.

### 9.    DE Adversary Proceeding

With regards to the DE Adversary Proceeding, Richardson asserts that he provided the facts and theories for the Complaint, assisted in the Complaint drafting, and succeeded in getting the case moved to Judge Jordan after more than two years of inactivity. Additionally, Richardson claims that he provided the evidence for a majority of the findings and the theories and

precedents for the legal conclusions in Judge Jordan's opinion issued in the DE Adversary Proceeding. According to Richardson, his participation in the DE Adversary Proceeding substantially contributed to the Case because it resulted in the recovery of Rivco and Jenkins. (Richardson Am. App. 22-23.)

Certainly, the DE Adversary Proceeding provided substantial benefits to the estate and its creditors, including a $40 million judgment against Gray and over $18 million from the stock of Rivco and Jenkins. However, the participation of many led to these results. First, the record is clear that it was Prussin who drafted the Complaint. Richardson reviewed the Complaint and provided comments, but these efforts are not extraordinary. (See, e.g., Supplement Invoice 1/1/99-12/31/00 46, 56 (time records indicating Richardson's review of Prussin's drafts of the Complaint); Hr'g Tr. 200:2-8, Apr. 4, 2006 (Prussin's testimony that he was the "principal draftsman" of the Complaint).) Second, the Complaint's facts and theories originated from multiple sources and did not stem solely from Richardson. Out of the eight causes of action, the first six originated from the NY Shareholder Lawsuits and from the Preliminary Injunction Proceeding. (See, e.g., Hr'g Tr. 125:11-18, Apr. 4, 2006 (Richardson's testimony as to the genesis of the DE Adversary Proceeding's causes of action); Hr'g Tr. 194-208, Apr. 4, 2006 (Prussin's testimony regarding the same). See generally Ex. 22 (Judge Jordan's Post-Trial Findings of Fact & Conclusions of Law detailing the claims asserted in the NY Shareholder Lawsuits and the Preliminary Injunction Proceeding); Ex. 24 (Opinions issued in the Contempt Proceeding and Preliminary Injunction Proceeding).) There has been no evidence presented that it was Richardson who developed the facts and the theories in those proceedings. As to the seventh cause of action -- the corporate opportunity claim -- the record is unclear who developed

38

it. Although Richardson asserts that he developed the claim, he offers no evidence in support of this. Therefore, he has failed to meet his burden of proof. Finally, although Richardson presented no corroborating evidence to support his claim with regard to the first through seventh causes of action, Prussin testified that the eighth cause of action originated solely from Richardson. (Hr'g Tr. 208:18, Apr. 4, 2006.) Because Judge Jordan found in favor of the Debtor on this cause of action, Richardson's efforts in developing this claim increased the money judgment against Gray. As such, any expenses incurred by Richardson in developing this cause of action may be reimbursed. However, the Court has been unable to identify in the record any expenses attributable to these particular efforts and is therefore unable to make any award in connection therewith.

Third, there is no support for Richardson's conclusory statements that he unilaterally provided the evidence upon which the District Court relied. Rather, like so many of the proceedings relevant to this Case, many contributed to the evidence supply. The Committee subpoenaed all the documents produced in connection with the NY Shareholder Lawsuits and fought for their use in the DE Adversary Proceeding. Additionally, they performed their own discovery regarding the allegations in the Complaint. (Exs. 517-22 (requests for the production of documents and subpoenas duces tecum issued by the Committee).) Although Richardson may have obtained important evidence supporting the corporate opportunity claims from the Richardson Preference Proceeding, the benefit to the estate was merely incidental as Richardson's purpose in acquiring the documents was personal. Additionally, a majority of the supporting testimony came from Kelly, without whom, Richardson testified, "it would have been impossible to go to trial . . . ." (Hr'g Tr. 252:11-12, Apr. 4, 2006.)

Finally, like many of Richardson's assertions, he has failed to provide any supporting evidence that his complaint to the Court of Appeals for the Third Circuit regarding the stagnant DE Adversary Proceeding caused the case to be re-assigned to Judge Jordan. Moreover, even if evidence existed, the transfer did not result in the successful outcome of the DE Adversary Proceeding. Rather, the success stemmed from the evidence and presentation of the parties.

          10.    This Case

Finally, Richardson asserts that his efforts in this Case entitle him to the reimbursement of expenses because he: (i) was instrumental in forming the Committee, in hiring Prussin as counsel, and in obtaining the authority for the Committee to prosecute claims against Gray; (ii) helped prevent this Case from staying the Contempt Proceeding; (iii) objected first to the conversion of the Case to chapter 7; (iv) helped educate the Court as to the background of the relevant proceedings and the basis for claims against Gray; and (v) objected first to the fee requests of Debtor's counsel, thereby preventing a drain on the assets of the estate. (Richardson Am. App. 20-21.)

The Court concludes that Richardson's expenses incurred while performing the above-referenced activities cannot be reimbursed under section 503(b)(3)(D). First, Richardson argues that he formed the Committee but, as the Objecting Parties correctly argue, the power to form a committee lies with the United States Trustee. Richardson failed to present any evidence to suggest that the United States Trustee failed to do her duty or to explain the nature of Richardson's contributions to the Committee's formation. Moreover, Richardson's expenses incurred while obtaining Committee authority to pursue claims against Gray and while pursuing additional committee counsel are equally non-reimbursable as these efforts are routine duties and

powers delineated in section 1103(a) and (c). See Worldwide Direct, 334 B.R. at 124 (denying reimbursement to a committee member under section 503(b)(3)(D) for "fulfilling its fiduciary duties as a Committee member and performing the routine Committee tasks delineated in section 1103(c)"). Additionally, there is no evidence that Richardson acted beyond what is expected from a committee member during these pursuits. (See Ex. 9 (Letter from Richardson to Paul Brenman, Esq. noting that he only had "three minor comments on the draft" Committee motion to prosecute the Gray claims).) However, while these efforts are not reimbursable under section 503(b)(3)(D), the Court concludes Richardson may receive reimbursement for these expenses pursuant to section 503(b)(3)(F).

Second, to further support his claim, Richardson relies on his opposition to the Debtor's attempt to stay the Contempt Proceedings. However, again, there is no evidence as to how his particular objection effected the outcome of the Debtor's attempt. Additionally, Richardson's effort was duplicative of that of the Committee, which also opposed the Debtor.

Third, Richardson has argued that his expenses incurred while opposing the Debtor's motion to convert should be reimbursed because the Committee "missed the motion" and failed to respond. (Hr'g Tr. 25:22, Mar. 16, 2006.) This argument fails because the record indicates that the Committee subsequently filed their response on January 9, 2001. (Ex. 504 (Docket Item No. 251).) Thus, because Richardson's efforts were duplicative of those efforts performed by the Committee, his expenses cannot be reimbursed.

Richardson continues his argument by noting how his numerous pleadings "served to educate the Court about the facts and circumstances of the case." (Richardson Am. App. 21.) Although Richardson's pleadings may have served to educate the Court more quickly as to the

41

relevant proceedings and Gray's background, the Court cannot conclude that his actions were extraordinary. See Psychiatric Hosps. of Hernando County, Inc., 228 B.R. 764, 767 (Bankr. M.D. Fla. 1998) ("Administrative expense compensation based on a substantial benefit to a bankruptcy estate must be strictly limited to extraordinary creditor actions that led directly to tangible benefits to the creditors, the debtor, or the estate.").

Finally, according to Richardson's speculation, his objection to the final fee application of Debtor's counsel, Klehr Harrison Harvey Branzburg & Ellers LLP ("Klehr Harrison"), stopped the flow of funds to them and caused Debtor's counsel to get "kind of discouraged about [not acting in the best interest of the estate]." (Hr'g Tr. 26:2-4, Mar. 16, 2006; see also Hr'g Tr. 52:15-17, Apr. 4, 2006 (Q: How did [the objection] benefit the estate? [Richardson's] A: Well, I think it did stop the – you know, the payment of fees to Klehr Harrison which were then deferred.").) While it is true that Klehr Harrison subsequently reduced its final fee allowance by $100,000, the Court cannot conclude that Richardson's objection was the cause. The Trustee also filed an objection seeking a reduction in Klehr Harrison's fee allowance. (Docket Item No. 420 (Objection of the Chapter 11 Trustee of Summit Metals, Inc. to the Tenth and Final Application of Klehr Harrison Harvey Branzburg & Ellers LLP for Compensation and Reimbursement of Expenses as Counsel to the Debtor Pursuant to 11 U.S.C. § 330); Docket Item No. 441 (Revised Objection of the Chapter 11 Trustee).) On August 2, 2005, the Trustee and Klehr Harrison entered into a stipulation reducing Klehr Harrison's fees and resolving the Trustee's objection. (See Docket Item No. 510 (Certification of Counsel Regarding the Order Approving the Final Application of Klehr Harrison Harvey Branzburg & Ellers LLP for Allowance of Compensation and for Reimbursement of Expenses).) Richardson was not a party

42

to this stipulation and the record fails to indicate how his objection contributed to the resolution.

E.    Section 503(b)(3)(F)

Despite the Court's denial of Richardson's request for administrative expense claims under sections 503(b)(1)(A), 503(b)(3)(C) and (D), and 503(b)(4), the Court will award Richardson reimbursement for his expenses "incurred in the performance of" Committee duties. 11 U.S.C. § 503(b)(3)(F). Expenses that qualify for reimbursement under this section include travel, lodging, and meal expenses incurred while attending committee meetings or court hearings. See In re Worldwide Direct, Inc., 259 B.R. 56, 63 (Bankr. D. Del. 2001) ("Travel expenses for committee members to attend committee meetings or court hearings are necessary for the functioning of the committee and are normally reimbursable."). Therefore, the Court will allow an administrative expense claim totaling $2,533.65. Details of the allowed expenses, derived from the Supplement, are set forth on Exhibit A attached hereto.

III.    Conclusion

For the reasons set forth above, Jepsco's request for the allowance of its fees and expenses as administrative expenses pursuant to section 503(b)(3)(D) is denied. Richardson's request for the allowance of his fees as an administrative expense is also denied. However, the Court will allow an administrative expense claim totaling $2,533.65 for Richardson's incurred expenses. Appropriate Orders follow.

IV.    Epilogue

The function of the Court as gatekeeper of the expenditure of estate resources is among the most important responsibilities conferred upon it. The purpose behind establishing the

43

demanding threshold to recovery under § 503 is obvious. But despite the applicants' inability to meet the rigorous standard set by the Bankruptcy Code, no one should infer that the efforts of Messrs. Richardson and Kelly are unappreciated by the Court or the parties. There was here no challenge to their skill, diligence or dedication in connection with their respective roles, official or otherwise, in this Case. Their participation was certainly helpful and should not be viewed as lacking what was, at least in part, their effort "to do the right thing" in connection with this Case.

BY THE COURT:

Dated: December 4, 2007

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

44

## EXHIBIT A

| DATE | DESCRIPTION | LOCATION IN SUPPLEMENT | COST |
|------|-------------|------------------------|------|
| 1/11/99 | Train and taxis to creditors meeting | Invoice 1/1/99-12/31/00 p.94 | $97.00 |
| 3/25/99 | Metroliner to Wilmington | 95 | 75.00 |
| 3/25/99 | Train to Wilmington | 95 | 152.00 |
| 5/27/99 | Metroliner to Wilmington | 95 | 150.00 |
| 6/25/99 | Tvl to Wilmington | 96 | 126.00 |
| 8/10/99 | Train to Wilmington | 96 | 152.00 |
| 8/27/99 | Tvl to Wilmington | 97 | 152.00 |
| 2/22/00 | Train to Wilmington | 98 | 132.00 |
| 4/27/00 | Metroliner to Wilmington | 99 | 158.00 |
| 1/11/01 | Metroliner and reserved train to and from Wilmington | Invoice 1/1/01-8/31/04 p.66 | 136.00 |
| 5/31/01 | Amtrak to Wilmington on 5/1/01 | 67 | 138.00 |
| 6/26/01 | Train to Wilminton [sic] | 67 | 138.00 |
| 2/13/04 | Amtrak to Wilmington on 2/10/04 | 68 | 60.00 |
| 2/13/04 | Hotel in Wilmington 1/10 - 1/14 | 68 | 867.65 |
| TOTAL AMOUNT ALLOWED | | $2,533.65 | |

45

00048

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| **SUMMIT METALS, INC.,** | : Case No. 98-2870-KJC |
|  | : |
| Debtor. | : |
|  | : |

## ORDER

AND NOW, this __ day of December, 2007, upon consideration of Amended Application of JEPSCO Ltd. for Compensation and Reimbursement for Administrative Expenses (Docket No. 451)("Jepsco Application"), objections thereto, after evidentiary hearing thereon and consistent with the foregoing Opinion, it is hereby

ORDERED and DECREED that the Jepsco Application is **DENIED**.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Joanne Bianco Wills, Esquire
Klehr Harrison Harvey Branzburg & Ellers
919 N. Market Street, Suite 1000
Wilmington, DE 19801

46

00049

Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Joseph J. Bodnar, Esquire
Law Offices of Joseph J. Bodnar
2101 North Harrison Street,
Suite 101
Wilmington, DE 19802

Adam G. Landis, Esquire
Rebecca L. Butcher, Esquire
Landis Rath & Cobb, LLP
919 Market Street, Suite 600
Wilmington, DE 19801

"J" Jackson Shrum, Esquire
Harvey, Pennington Ltd.
913 Market Street, 7th Floor
Wilmington, DE 19801

Ambrose M. Richardson, Esquire
A. M. Richardson, P.C.
40 Wall Street, 35th Floor
New York, NY 10005

Barry M. Klayman, Esquire
Todd Charles Schiltz, Esquire
Wolf, Block, Schorr & Solis-Cohen LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801

H. Adam Prussin, Esquire
Pomerantz Haudek block Grossman & Gross
100 Park Avenue, 26th Floor
New York, NY 10017-5516

47

00050

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 98-2870-KJC |
| **SUMMIT METALS, INC.,** | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

## ORDER

AND NOW, this 4th day of December, 2007, upon consideration of Amended Application of Ambrose M. Richardson, Esq. for Compensation as Post-Petition Creditor and as Creditor Providing Substantial Benefit to the Estate Pursuant to §§ 503(b)(1)(A)(i), 503(b)(3)(B),(C),(D) and (F) and 503(b)(4)(Docket No. 587) ("Richardson Application"), objections thereto, after evidentiary hearing thereon and consistent with the foregoing Opinion, it is hereby

ORDERED and DECREED that the Richardson Application is **GRANTED**, in part and **DENIED**, in part. Richardson is awarded an allowed administrative expense in the amount of $2,533.65.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

48

Joanne Bianco Wills, Esquire
Klehr Harrison Harvey Branzburg & Ellers
919 N. Market Street, Suite 1000
Wilmington, DE 19801

Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Joseph J. Bodnar, Esquire
Law Offices of Joseph J. Bodnar
2101 North Harrison Street, Suite 101
Wilmington, DE 19802

Adam G. Landis, Esquire
Rebecca L. Butcher, Esquire
Landis Rath & Cobb, LLP
919 Market Street, Suite 600
Wilmington, DE 19801

"J" Jackson Shrum, Esquire
Harvey, Pennington Ltd.
913 Market Street, 7th Floor
Wilmington, DE 19801

Ambrose M. Richardson, Esquire
A. M. Richardson, P.C.
40 Wall Street, 35th Floor
New York, NY 10005

Barry M. Klayman, Esquire
Todd Charles Schiltz, Esquire
Wolf, Block, Schorr & Solis-Cohen LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801

H. Adam Prussin, Esquire
Pomerantz Haudek Block Grossman & Gross
100 Park Avenue, 26th Floor
New York, NY 10017-5516

At IAS Part 14 of
Supreme Court of the
State of New York,
County of New York,
August 17, 1995

PRESENT: HON. WALTER M. SCHACKMAN
--------------------------------------------X
Benjamin Richardson,

              Plaintiff,         No. 120269/95

        v.

Richard E. Gray et al.

              Defendants
--------------------------------------------X
Benjamin Richardson

              Plaintiff,

       v.             No. 116880/95

Richard E. Gray et al.,

              Defendants.
--------------------------------------------X

       WHEREAS plaintiff in these actions has brought on
orders

to show cause dated August 9, 1995 in action No. 116880/95, and

dated August 16, 1995 in action No. 120269, both of which were

originally returnable on August 17, 1995, seeking a temporary

restraining order and preliminary injunction, the parties agree,

and the Court orders, the following:

       1. The return date of these motions is adjourned to

September 7, 1995.  Defendants will serve their papers in



PLAINTIFF'S
EXHIBIT
4
ALL-STATE LEGAL®

SUM 00029

00053

opposition to these motions by hand on on plaintiff's counsel by no later than 5:00 P.M. September 1, 1995, and plaintiff will serve his reply papers on the return date of this motion.

2. Pending the hearing of these motions, defendants, and all corporations or other entities controlled by them, shall be restrained and enjoined from consummating the sale, assignment, transfer, encumbrance or other disposition of the stock and/or assets of Chariot Group, Inc. or the operating companies, Energy Savings Products Corp. and B.F. Rich Company (the "Operating Companies"), and from disbursing any monies to Richard Gray or any of the other corporate defendants, directly or indirectly, from the Operating Companies or any other companies controlled by defendants, and/or from any loan or other financing transaction secured by the stock or assets of the Operating Companies or the Chariot Group, Inc., other than for payments of monies due and payable regularly and in the ordinary course of business.

3. Pending the hearing of these motions, defendants Houlihan, Summit, and Gray, directly or indirectly, or through any corporation owned or controlled by Gray, shall be restrained and enjoined from consummating any loan or financing transaction in the name of Summit Metals or any other corporation which Gray owns or controls, or in which Gray has an interest, which loan or financing transaction is secured or collateralized, directly or

indirectly, or in any way by the stock, assets or revenues of the
Operating Companies.

4.  With their responsive papers, defendants shall produce
the following documents:

a. current or most recent financial statements for
Summit Metals Inc., Homestar Acquisitions, Inc. and Halloway
Industries, Inc., and documents disclosing the ownership
structure of these corporations.

b. memorandum describing the proposed financing
transaction collateralized, directly or indirectly, by the stock
or assets of the Operating Companies, and the planned disposition
of the proceeds of such financing transaction.

Joseph H. Adams
Nyack, N.Y.
Counsel for Plaintiff
(914) 353-2320

Herzfeld & Rubin P.C.
Herzfeld & Rubin
40 Wall Street
New York, N.Y. 10005
Attorneys for defendants
(212) 344-5500

Howard, Darby & Levin
1330 Avenue of the Americas
New York, N.Y. 10019
Attorneys for Defendant
Houlihan, Lokey, Howard &
Zukin
(212) 841-1000

SO ORDERED:  August 17, 1995

Hon. Walter M. Schackman

SUM 00031

00055

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 11
-----------------------------------------------------------------X
BENJAMIN RICHARDSON, a Stockholder on behalf of
THE CHARIOT GROUP, INC.,

                        Plaintiff,

           - against -

RICHARD E. GRAY and THE CHARIOT GROUP, INC.,
CHARIOT HOLDINGS, LTD., CHARIOT PLASTICS,
INC., AMV HOLDINGS, INC., VDC RECOVERY, INC.,
CHARIOT BUILDING PRODUCTS, INC., HOMESTAR,
INC., and HOULIHAN, LOKEY, HOWARD & ZUKIN,
                        Defendant.
-----------------------------------------------------------------X
BENJAMIN RICHARDSON, a Stockholder on behalf of
THE CHARIOT GROUP, INC.,

                        Plaintiff,

           - against -

RICHARD E. GRAY and THE CHARIOT GROUP, INC.,
CHARIOT HOLDINGS, LTD., CHARIOT PLASTICS,
INC., AMV HOLDINGS, INC., VDC RECOVERY, INC.,
CHARIOT BUILDING PRODUCTS, INC., HOMESTAR,
INC., HOULIHAN, LOKEY, HOWARD & ZUKIN,
SUMMIT METALS, INC., HALLOWELL INDUSTRIES,
INC., HOMESTAR ACQUISITION CORP., and JOHN
DOE CORPORATIONS NOS. 1 TO 5,
                        Defendant.
-----------------------------------------------------------------X
LEWIS R. FRIEDMAN, Justice

Index No. 116880/95
SEQ. NO. 001 & 002

Index No. 120269/95

      Motion seq. nos. 001 and 002 in each of the above referenced cases are consolidated decision. Those motions were originally assigned to Justice Schackman. They were reassigned on his retirement.

      Plaintiff Benjamin Richardson brings these stockholder derivative and class action lawsuits on behalf of The Chariot Group, Inc. ("Chariot Group"). In Action No. 1 (Index No. 116880/95), plaintiff accuses defendant Richard E. Gray ("Gray"), the sole director and Chief Executive Officer of the Chariot Group, of various acts of fraud, corporate waste,

mismanagement, and self-dealing in violation of his fiduciary duty to the company and, particularly, its minority stockholders. Action No. 2 (Index No. 120269/95) is a purported class action on behalf of the minority stockholders of the Chariot Group which challenges and seeks rescission of a purported "cash-out merger" transaction put into effect by Gray on August 7, 1995, without prior notice or approval by the minority shareholders, the effect of the merger to eliminate the equity interests of the minority stockholders of the Chariot Group in exchange for worthless promissory notes from a shell corporate obligor. In motion seq. nos. 001, plaintiff seeks preliminary injunctive relief, the appointment of a temporary receiver and expedited discovery.

Defendants cross-move for (1) dismissal of the complaints on the grounds that plaintiff does not have the legal capacity to sue or, alternatively, is an inadequate representative of either the corporation or the class of former minority stockholders; (2) dismissal of the complaint in the class action lawsuit (Action No. 2) on the ground that plaintiff's exclusive remedy is his appraisal rights under Delaware Law; (3) dismissal of the claims arising from the acquisition of Republic Metal Products, Inc. on statute of limitation grounds; and (4) dismissal of all claims against defendants Houlihan, Lokey, Howard & Zukin and HomeStar, Inc. for failure to state a cause of action.

## FACTUAL ALLEGATIONS

Plaintiff is allegedly the owner of 10 shares of the Chariot Group, which is a Delaware corporation with a principal place of business in New York. It is a holding company which owns and controls the stock of two other Delaware corporations, Energy Savings Products, Inc. ("ESP") and B.F. Rich, Inc., both of which are engaged in the manufacture of windows and doors. Gray is the sole owner of defendant Chariot Holdings, Inc. Chariot Plastics, Inc., which is wholly owned by Chariot Holdings, Inc., is the record owner of approximately 78% of the outstanding shares of Chariot Group common stock

Plaintiff is one of approximately 400 other minority stockholders of the Chariot Group, all of whom have been allegedly excluded from the management and affairs of the Chariot Group and have been denied information about the operation and management of that company since 1991, when Gray caused the company's shares to be deregistered and the other directors dismissed.

Prior to 1986, Chariot Group was known as Sandusky Plastics, Inc. The company was taken public in 1986 in a $5 million initial public offering whereby Chariot Group stock was sold at $11 a share. Thereafter, it was traded on both the NASDAQ and American Stock Exchange and, as a listed company, was required to have and did have, outside directors and was required to make, and did make, periodic reports of financial and other information as required by law.

However, in or about 1990, Gray caused the Chariot Group to be delisted and deregistered under the Securities Act of 1934. He removed all of the independent directors and thereafter exercised complete and unilateral control over its financial affairs. Despite his fiduciary obligations to the minority stockholders, Gray has allegedly engaged in various wrongful acts between 1991 and 1994 which includes looting the monies and assets of Chariot Group, engaging in self-dealing transactions for his exclusive benefit, wrongfully exploiting corporate opportunities for the benefit of himself and/or other corporations which he controls, and paying no dividends.

Specifically, plaintiff alleges that from 1991 through 1994 Gray caused Chariot Group to pay management fees in the total amount of $4,972,000 to Chariot Holdings, Inc. for services which Gray was already required to perform as the CEO of Chariot Group (for which he was separately compensated at a yearly salary of $200,000) and that these payments were merely a conduit for the disbursement of monies to Gray. In 1994, management fees in the amount of $168,000 were paid to another of Gray's corporations, VDC Recovery, Inc. In addition, in 1991, Gray unilaterally caused Chariot Group to forgive indebtedness of Chariot Holdings, Inc. in the amount of $1,476,000 and, in 1991 and 1992, forgave debts of Gray in the amounts of $67,000 and 524,000, respectively.

Plaintiff alleges that these improper payments which total over $7.2 million were used by Gray to support his lavish lifestyle which consists of a Connecticut estate, a Park Avenue duplex coop in Manhattan, a summer home in the Adirondacks, servants, expensive automobiles, lavish furnishings, art and antiques. Gray is described as a "rogue attorney" who has been falsely holding himself out as a graduate of the University of Pennsylvania Wharton School of Business.

More troubling to the plaintiff currently, is the fact that Gray and Chariot Holdings, Inc. filed no federal or state tax returns from early 1990 to the present time despite the substantial earnings of both. In November of 1994, Gray executed consent judgments with the

Internal Revenue Service ("IRS") acknowledging tax deficiencies, not including interest or civil penalties, for the years 1984 through 1987 in an amount exceeding $2.5 million. Plaintiff claims that Gray has no personal assets capable of satisfying these judgments or any additional tax liabilities which have accrued but have not yet been paid.

In addition to the improper payments described above, the complaints allege other acts of misconduct on the part of Gray which constitute a breach of his fiduciary duty to Chariot Group and its stockholders. As far back as 1987, Gray is accused of causing Chariot Group to purchase a company known as Republic Metal Products, Inc. ("Republic") from Chariot Metals, Inc., another wholly-owned subsidiary of Chariot Holdings, Inc., for a purchase price of approximately $2.6 million. However, Gray fraudulently concealed that Chariot Metals, Inc. had acquired Republic in a transaction involving no down payment and that Gray allegedly looted Republic's resources prior to selling it to Chariot Group. After the sale, Republic lost several million dollars but the nature and extent of these losses were concealed by Gray.

In the late 1980's, Gray, Chariot Holdings, Inc. and/or Chariot Group were sued by a company known as Synalloy Corp. for securities violations for engaging in prohibited "short-swing" sales of its stock after Gray became a director of the company. Synalloy obtained and collected a $150,000 judgment against Gray, Chariot Holdings, Inc. and/or Chariot Group, which was paid by Chariot Group.

Plaintiff also alleges that, in 1994, Gray learned of the opportunity to purchase another manufacturer of home building products known as HomeStar, Inc. Rather than seizing this corporate opportunity for himself, he arranged for one of his other holding companies to acquire HomeStar, Inc. and used Chariot Group funds to pay for the acquisition.

The defendants strenuously oppose the application for preliminary injunctive relief claiming that the August 1995 extraordinary corporate restructuring is wholly fair to the minority stockholders of the Chariot Group. According to Gray, after Chariot Group was taken public in 1986, it enjoyed a very limited market and stockholder liquidity was practically non-existent. For several years, he sought additional bank financing to improve the company's cash position and to provide some liquidity to the minority stockholders. In December of 1994, Gray contacted the national investment firm of Houlihan Lokey Howard & Zukin ("Houlihan") for advice on refinancing the Chariot Group with an aim toward improving stockholder liquidity. Houlihan allegedly recommended that bank financing would be more readily available if the operations of ESP and B.F. Rich, Inc. (Chariot Group's operating subsidiaries)

were combined with HomeStar, Inc.   With Houlihan's assistance, the following "cash-out merger" transaction was formulated.

First, in April of 1995, HomeStar, Inc. was allegedly purchased by Chariot Realty[1]. Then, in June of 1995, the stock of ESP was sold to HomeStar Acquisition Corp. (a newly formed subsidiary of Chariot Realty, Inc.) in exchange for a promissory note in the amount of $15 million issued by Hallowell Industries, Inc. ("Hallowell"), the parent of Chariot Realty, Inc. After this transaction, HomeStar, Inc. became a sister company with ESP, both 100% owned by Chariot Realty.  That left Chariot Group with a principal asset consisting of the $15 million Hallowell note.  On August 7, 1995, Chariot Group was merged into its subsidiary, Summit Metals, Inc. ("Summit").   Since Chariot Plastics, Inc. owned approximately 78% of the outstanding shares of Chariot Group, Gray was advised that no stockholder meeting was necessary in accordance with Section 228 of Delaware's General Corporation Law ("Del. Corp. Law") and that the necessary corporate action could be accomplished by action of the majority stockholders.  In order to comply with its legal requirement that the merger transaction be fair to the minority stockholders of Chariot Group, minority shareholders were given, in exchange for their stock, promissory notes from Summit in the face amount of $4 per share, which is allegedly a value substantially in excess of the market price of Chariot Group stock at any time during the preceding five years.  Of course, any stockholder is free to elect appraisal rights under Delaware law.  In addition, if a majority of the minority stockholders demanded, Chariot Plastics, Inc. would, at its expense, engage an independent investment banker to value the minority shares and such valuation would be conclusive but in no event lower than the $4 offered.

On August 7, 1995, a package explaining the transactions were mailed to all stockholders of the Chariot Group.  This package consisted of a "Notice of Action By Stockholder" regarding the August 7, 1995 cash-out merger, a sample "Promissory Note", "Instructions for Letter of Transmittal", a "Notice of Appraisal Rights For Dissenting Shareholders", which includes a "Summary Description of Appraisal Rights" and a copy of Del. Corp. Law §262, an unaudited balance sheet for the Chariot Group as of December 31, 1994, and a "Notice of Action By Stockholder" regarding the June 30, 1995 sale of ESP.  According

---

[1]Gray alleges HomeStar was acquired by Chariot Realty but a Dunn & Bradstreet report and press reports indicate that HomeStar was acquired by Chariot Group for @$30 million.

to Gray, more than 25 stockholders have already tendered their Chariot Group stock certificates to Summit pursuant to the merger and some stockholders have elected appraisal rights.

Gray charges that these two lawsuits, and another stockholder derivative action commenced by Coulter Richardson in the Delaware Court of Chancery in July of 1995, have been started at the instigation of Gray's former law partner, Ambrose M. Richardson, III, as a bizarre personal vendetta against Gray. Both Coulter and Richard Benjamin are described as young men in their twenties whose stock was originally acquired by their father, who, in addition to being Gray's former law partner, was general counsel to the Chariot Group and represented Gray personally as recently as June of 1995. Ambrose Richardson is accused of breaching his ethical duties to preserve the confidences of his former clients by commencing these lawsuits and by sending defamatory and false letters to the other stockholders of the Chariot Group, which letters seeks to enlist the aid of these other stockholders in the prosecution of these actions.

Gray further charges that Ambrose Richardson was formerly the corporate secretary of the Chariot Group and ratified many of the acts now alleged to be unlawful. For example, Ambrose Richardson was present at the directors' meeting at which the acquisition of Republic was approved and he voiced no objection. Ambrose Richardson was also allegedly Gray's principal legal advisor when Gray entered into the settlement agreements with the IRS in 1994. Gray further denies admitting any tax fraud in connection with entering into these agreements but insists that he settled with the IRS because of the hazards and costs of further litigation.

With respect to the acquisition of HomeStar, Inc., Gray claims that Chariot Group did not have sufficient cash resources in 1994 to consummate the acquisition of that company and that HomeStar, Inc. was in a different market and geographic location and that its products did not really overlap. He further contends that its acquisition by Chariot Group was rejected because it was not perceived as helping the market price of Chariot Group stock and thereby improve liquidity for the minority stockholders. Unwilling to let the opportunity pass, he arranged for its purchase through Chariot Realty.

## *PROCEDURAL HISTORY*

The complaint in Action No. 1 seeks $10 million in compensatory damages for the various alleged breaches of Gray's fiduciary duty, as aided and abetted by Chariot Holdings, Chariot Plastics, AMV Holding and VDC Recovery; $20 million in punitive damages; an

RICHARDSON v. GRAY
Index No. 116880/95 Page - 7

accounting pursuant to Section 720(a) of the Business Corporation Law; and a constructive trust. The sixth and seventh causes of action requested preliminary and permanent injunctive relief prohibiting any additional improper disbursements to Gray or any of his companies to satisfy the tax liabilities of Gray or Chariot Holdings, Inc. and any extraordinary corporate transaction whereby the assets of Chariot Group are transferred to other Gray holding companies.

Action No. 1 had originally been filed by plaintiff's brother, Coulter Richardson, in July of 1995. A copy of the summons and complaint were allegedly served on the Houlihan investment firm on Thursday, August 3, 1995. On August 8, 1995, plaintiff obtained an Ex Parte order allowing the amendment of the caption to substitute Benjamin Richardson as the named plaintiff and to add additional defendants. Apparently, however, the summons and complaint were never served on Gray or the other defendants until an Order to Show Cause was filed on August 9, 1995, seeking preliminary injunctive relief preventing what plaintiff perceived was a threatened merger transaction contemplated by Gray. Justice Schackman granted a temporary restraining order (the "TRO") pending the August 17, 1995 return date of the motion which prevented Gray and his various companies from selling or otherwise disposing of the stock and assets of the Chariot Group or ESP and B.F. Rich, Inc. and from disbursing any extraordinary monies to Gray or any of the corporate defendants.

However, unbeknownst to plaintiff, Gray arranged for the cash-out merger transaction to be effective August 7, 1995, two days prior to the issuance of the TRO. After learning the details of the transaction, plaintiff commenced Action No. 2 on August 16, 1995 as a class action on behalf of the former minority stockholders of the Chariot Group seeking to rescind the June 1995 sale of ESP and the August 7, 1995 cash-out merger. This second complaint also seeks preliminary injunctive relief and the appointment of a temporary and permanent receiver to manage the affairs of the Chariot Group and its operating companies.

Thereafter, the parties presented the court with written stipulations whereby defendants agreed to adjourn the motions until September 14, 1995, continue the TRO and produce financial records regarding Summit, HomeStar Acquisition Corp. and Hallowell with its responsive papers. On September 14, 1995, Justice Schackman heard oral argument on the motions and issued an order continuing the TRO until further notice. The motions were referred to the undersigned on September 4, 1996.

RICHARDSON v. GRAY
Index No. 116880/95 Page - 8

In early December 1995, plaintiff moved (motion seq. nos. 002) in both actions to add five additional stockholders of Chariot Group as additional plaintiffs pursuant to CPLR 1002 and 1003.

As previously indicated, there are also at least two stockholder derivative actions pending in the Delaware Court of Chancery, one brought by plaintiff's brother, Coulter Richardson, and the other commenced by Synalloy Corp. By motion dated August 9, 1995, Gray's counsel moved in the Delaware actions to dismiss the complaints on the ground that Chariot Group had been merged out of existence and the former minority stockholders were limited to the statutory remedy of appraisal. The papers presented to this court do not reveal the outcome, if any, of this motion.

### DISCUSSION

#### Dismissal of the Complaints

Defendants seek dismissal of the complaint in Action No. 1 pursuant to CPLR 3211(a)(3) on the ground that, by reason of the merger on August 7, 1995, plaintiff is no longer a stockholder of Chariot Group and thus lacks capacity to prosecute a stockholder derivative action.

It is settled law in both Delaware and New York[2] that a plaintiff stockholder in a stockholder derivative action loses his right to continue to prosecute the action if he ceases to be a stockholder (*Lewis v. Anderson*, 477 A2d 1040, 1046 [Del Sup 1984]; *Tenney v. Rosenthal*, 6 NY2d 204, 210; *Rubinstein v. Catacosinos*, 91 AD2d 445, 446, *aff'd* 60 NY2d 890). Courts have applied this rule and dismissed the action where the stock of the plaintiffs had been acquired through a cash-out merger pursuant to Del. Corp. Law (*Rubinstein, supra; Bronzaft v. Caporali,* 162 Misc 2d 281 [NY Sup 1994]). However, in both of those cases, unlike the situation presented here, there was no suggestion of any wrongdoing in connection with the merger itself as the First Department specifically noted in *Rubinstein* (91 AD2d at 447), or that it was a collusive transaction, accomplished solely in order to defeat the stockholder derivative action. More importantly, in both cases, the merger was an arms-length transaction between two separate, publicly-traded corporations, and the surviving corporation was not interested in

---

[2] It is unclear which state's law the parties believe should apply to this issue.

RICHARDSON v. GRAY
Index No. 116880/95 Page - 9

pursuing the litigation. As recognized by the Supreme Court of Delaware, there is an exception to the standing rule where the merger itself was the product of fraud (*Lewis*, 477 A2d at 1046, n.10, *supra*; see also, *Ault v. Soutter*, 167 AD2d 38, 45-46).

The plaintiff herein promptly commenced a second action to rescind the cash-out merger and, if he is successful, the standing issue vis-a-vis the derivative claims in Action No. 1 will be rendered moot. Since, as discussed below, plaintiff has stated a valid claim for rescission of the merger and established the need for preliminary injunctive relief, dismissal of Action No. 1 is not warranted at this time.

Turning then to Action No. 2, defendants contend that the minority stockholders of the Chariot Group have no claim for rescission of the merger but are limited to their appraisal rights under Del. Corp. Law §262. The law in Delaware, which in this instance the parties agree applies, is that minority stockholders may challenge a cash-out merger, and are not confined to the appraisal remedy, where specific acts of "fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching" have been *alleged* (*Rabkin v. Philip A. Hunt Chemical Corp.*, 498 A2d 1099, 1104 [Del Sup 1985]; see also, *Cede & Co. v. Technicolor, Inc.*, 542 A2d 1182 [Del Sup 1988]; *Weinberger v. UOP, Inc.*, 457 A2d 701 [Del Sup 1983]).

Furthermore, "'[w]hen directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain'" (*Marciano v. Nakash*, 535 A2d 400, 404 [Del Sup 1987], quoting *Weinberger*, 457 A2d at 710, *supra*). The concept of fairness in a merger transaction has two basic aspects: fair dealing and fair price (*Weinberger, supra* at 711). The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and stockholders were obtained (*Id.; Rabkin, supra* at 1104-1105).

Review of the manner in which Delaware courts have applied the fairness test in the context of a cash-out merger demonstrates how much the type of arguably bona fide transactions presented for court scrutiny in those cases differ from the Chariot Group/Summit merger. Defendants insist that the merger complied in all respects with Delaware Law. However, inequitable conduct will not be protected merely because it is legal (*In re Tri-Star Productions, Inc. Litigation*, 634 A2d 319, 332 [Del Sup 1993]; *Rabkin, supra* at 1107). Particularly troublesome is the defendants' utilization of Del. Corp. Law §228 which allows

corporate action by written resolution in lieu of a stockholders meeting.   The minority
stockholders were simply presented with a *fait accompli*; there was no prior notice, no approval
by any of the minority stockholders, and no use of an independent negotiating committee of
outside directors (*see, e.g., Weinberger, supra* at 709-711).

Plaintiff has raised important factual issues about the timing of the merger, coming
one month after commencement of stockholder derivative actions in Delaware and days after at
least one of the defendants was served with the Order to Show Cause in Action No. 1.[3]   The
case of *Porter v. Texas Commerce BancShares, Inc.*, 15 Del J Corp L 1113, 1989 WL 120358
[Del Ch 1989], upon which defendants rely is distinguishable in that the merger complained of
was a negotiated, arms-length transaction between two major banks and there was no claim, as
in this case, that the merger was undertaken solely to extinguish derivative claims against the
directors of the merged bank.  In fact, the *Porter* action was commenced shortly *after* the bank
merger.   Delaware case law mandates that transactions involving self-dealing, such as the
termination of stockholder derivative litigation, be subjected to the critical review of some
independent agency (*Zapata Corp. v. Maldonado*, 430 A2d 779 [Del Sup 1981]; *Merritt v.
Colonial Foods, Inc.*, 505 A2d 757, 765 [Del Ch 1986]).

The defendants here are charged with bad faith in connection with the merger itself
which goes well beyond issues of the "mere inadequacy of price" which can be rectified in an
appraisal proceeding (compare, *Shapiro v. Pabst Brewing Co.*, 11 Del J Corp L 704, 1985 WL
11578 [Del Ch 1985][all alleged wrongs turned on the inadequacy of the merger price]).
Appraisal is also inadequate since Gray and his corporations would not be a party to an
appraisal proceeding and personally accountable for their actions (*see, Cede & Co., supra* at
1187; *Rabkin, supra* at 1104).  In addition, the plaintiff has raised serious questions about the
fairness of the price offered to the minority stockholders and the adequacy of the information
provided by defendants.

Turning first to the issue of price, plaintiff laments that none of the consideration for
the merger or the June 1995 sale of ESP involves the payment of cash, or other assets of current

---

[3]While defendants claim in their opposing memorandums of law, that none of the defendants, including
Houlihan, were served with the amended summons in Action No. 1 until after the Order to Show Cause was
signed on August 9, 1995, they offer no affidavit from Houlihan to support this claim.  On the other hand,
plaintiff has proffered an affidavit of service from a process server revealing that a Managing Director of
Houlihan was served on August 3, 1995.

value, but instead consists of future consideration in the form of promises to pay by Summit (now the wholly-owned subsidiary of Chariot Plastics, Inc., another Gray corporation) which, based on Gray's alleged history of corporate waste and total information black-out, cannot be considered valid consideration. Indeed, the promissory notes from Summit are not payable until the beginning in August of 2000, and continuing until August of 2005. Plaintiff also correctly points out that the promissory notes do not come from the corporation acquiring the profitable operating companies, i.e., Chariot Realty, Inc., but instead comes from Summit. As for the amount of promissory notes offered, there has been no independent evaluation of the $4 being offered although defendants offer to engage an independent investment banker to value the minority shares if a majority of stockholders so demand. The sole defense of the price offered comes in the undocumented affidavit of Gray, who states that this price is higher than alleged $.50 to $1.00 "range of quotes for the stock during the past few years in the 'pink sheets' that reflect the market prices of certain thinly traded over-the-counter stocks." (Gray 8/30/95 Aff.¶4).

The package of materials sent to the minority stockholders with the August 7, 1995 notice appears to be materially misleading in several important respects. First, it fails to advise the minority stockholders of the fact that all of the corporate participants in the alleged merger are corporations wholly-owned and controlled by Gray, particularly the surviving corporation, Summit, and Hallowell, the corporation that owes the $15 million note to Summit. Second, absolutely no financial information is given about either Summit or Hallowell. In fact, the notice regarding the June 30, 1995 sale of ESP merely identifies the buyer as HomeStar Acquisition Corp, and indicates only that ESP was sold in exchange for a note in the face amount of $15,000,000 issued by an "affiliate" of HomeStar Acquisition Corp., and fails to mention that the affiliate is Hallowell, another corporation owned and controlled by Gray. Third, the stockholders were only given an unaudited financial statement for the Chariot Group for the period ending December 31, 1994 which fails to reflect the sale of ESP to HomeStar Acquisition Corp. on June 30, 1995 and does not identify the alleged $15 million note from Hallowell as its major asset. Fourth, the stockholders were given conflicting information about the deadline for demanding appraisal rights. While the "Notice of Appraisal Rights For Dissenting Shareholders" correctly identifies the 20 day deadline, the "Summary Description of Appraisal Rights" provides that stockholders must demand appraisal "within one hundred twenty days after" August 7, 1995. Fifth, the stockholders were not informed of the pending stockholder derivative actions and that the aggregate of the claims against Gray for millions of dollars. This is surely an important piece of information to a minority stockholder who must

choose between accepting $4 per share for an investment which originally cost $11 or seeking statutory appraisal rights.

At the very least, the facts alleged import overreaching and bad faith conduct, which requires exploration by discovery and trial.

### Plaintiff Not a Proper Representative

The court finds that defendants have not established that this lawsuit and the related litigation in Delaware are the results of a personal vendetta by plaintiff's father, Ambrose M. Richardson, III. The allegations of corporate waste and mismanagement have been confirmed by Stuart J. Benton, formerly the Executive Vice President of Chariot Group, as well as from Chariot Group's own 1991-1994 financial records. It should also be noted that there are two Delaware stockholder derivative actions, one brought by a Richardson family member but the other brought by Synalloy Corp., who is not alleged to have any ties to the Richardson family. Finally, the allegations concerning Ambrose Richardson's involvement in Gray's personal tax matters and his alleged position as General Counsel for Chariot Group is nowhere substantiated. Defendants' own documentary submissions demonstrate that Gray was being counseled by the law firm of Hertzfeld & Rubin in connection with those tax matters. Other documentary evidence shows that, while Ambrose Richardson was the Secretary of the Chariot Group, he was never General Counsel to the company. Furthermore, at least five other minority stockholders have indicated their desire to join in as plaintiffs in this case.

### Preliminary Injunctive Relief

In order to grant preliminary injunctive relief, the court must consider whether plaintiff has demonstrated a likelihood of ultimate success on the merits, the prospect of irreparable harm, and a balancing of the equities in plaintiff's favor (*Aetna Insurance Co. v. Capasso*, 75 NY2d 860, 862; *W.T. Grant Co. v. Srogi*, 52 NY2d 496, 517). Preliminary injunctive relief against consummation of a cash-out merger has been granted where the defendants' conduct was "a textbook study on how one might violate as many fiduciary precepts as possible" (*Sealy Mattress Company of New Jersey, Inc. v. Sealy, Inc.*, 532 A2d 1324, 1335 [Del Ch 1987][applying same preliminary injunction standard as New York]).

Plaintiff has amply demonstrated a likelihood of success on the merits of its claims against Gray for corporate waste and mismanagement. The evidence of defalcations by Gray is overwhelming and, for the most part, completely uncontradicted, i.e., the payment of exorbitant

RICHARDSON v. GRAY
Index No. 116880/95 Page - 13

management fees to Chariot Holdings; the forgiveness of loans to that corporation and personal loans to Gray; his fabricated MBA degree from the Wharton School of Business; Gray's failure to pay federal income taxes and his voluntary acceptance of substantial civil tax penalties under then I.R.C. § 6653(b)(1) (i.e., tax fraud); his failure to file and pay state taxes despite his apparent residence in three different states; his improper conduct in the Hallowell bankruptcy proceeding; his admitted violation of the securities laws in engaging in "swing sales" of Synalloy stock while a member of the Board of Directors resulting in Chariot Group having to incur a $150,000 loss; and the fact that District Judge Murray M. Schwartz in the Synalloy case observed that Gray had engaged in "obstructionist behavior", lack of candor" (as a witness), and "questionable faith".

Furthermore, the evidence is overwhelmingly supportive of the plaintiff's claims that the purported cash-out merger with Summit is a sham and a complete breach of Gray's duty of fair dealing. While Gray contends that Houlihan recommended that bank financing could more easily be obtained if the operations of HomeStar were combined with ESP and B.F. Rich, Inc., he never explains the necessity for the next step in the transaction which is the elimination of the minority stockholders of the Chariot Group. The terms proposed by Gray—no money down, ten years to pay, no security, and a shell company obligor--do not resemble an arms length transaction. Summit has no assets, operations, employees or officers. According to a 1995 Dunn & Bradstreet report, Hallowell is not an active corporation, and defendants have not even produced a copy of the alleged $15 million note or any documentation establishing the stock ownership relationships between the various Gray corporations. The consideration to the minority stockholders of Chariot Group is nothing more than promissory notes from Gray corporations whereby the minority stockholders will be unable to assert challenges to Gray's misconduct until next century, the year 2,000.

The equities are clearly in favor of the former minority stockholders of Chariot Group. Defendants have not adequately rebutted plaintiff's charge that the purpose of this hastily consummated merger was to terminate the pending stockholder derivative actions and to give Gray complete control over the profitable operating companies without giving any real or enforceable consideration to the minority stockholders for their interest in the company. In addition, the court notes that Gray failed to provide the financial information his attorneys promised in paragraph four of the stipulation provided to this court in August of 1995.

The issuance of a preliminary injunction is further proper in this case as it will serve only to maintain the status quo (*Penstraw, Inc. v. Metropolitan Transportation Authority*, 200

00068

RICHARDSON v. GRAY
Index No. 116880/95 Page - 14

AD2d 442; *Ma v. Lien*, 198 AD2d 186, *lv dismissed* 83 NY2d 847). So far there has merely been a paper transfer of ownership and control of the operating companies and no third parties are yet involved. Defendants say that the issuance of preliminary injunctive relief will interfere with their ability to get bank financing for the operating companies, but do not allege that the operating companies are in urgent need of any financing. In fact, the need for financing was supposedly to create liquidity for the minority stockholders of the Chariot Group but yet the re-structuring transaction defendants have concocted merges them out of existence. Gray also makes the incredible claim that the preliminary injunction will "deprive them of the opportunity to have their compensation for their stock paid off **promptly**" [emphasis added] when the transaction he created locks them into an illiquid investment not fully payable until the year 2005.

The third and final requirement is irreparable harm to the minority stockholders if consummation of the merger is not preliminarily enjoined. Plaintiff has alleged that Gray may take action to sell, liquidate or dispose of the valuable operating companies, which are now owned by a subsidiary of one of Gray's other companies, Chariot Realty, Inc. This is a valid and compelling reason to justify the issuance of a preliminary injunction.

The court, therefore, finds that preliminary injunctive relief is warranted here and that an order should be issued to preserve the status quo as to all aspects of the business affairs of the Chariot Group, particularly its two operating subsidiaries, ESP and B.F. Rich, Inc., as well as HomeStar, Inc., and that Gray and the corporate defendants should be restraining pending the resolution of the claims in both actions from taking any steps to consummate the proposed merger transaction and from taking any action to compel the minority stockholders of the Chariot Group to exercise any option to surrender their shares of stock to Summit or to elect appraisal rights under Del. Corp. Law §262.

### *Appointment of a Temporary Receiver*

This requested relief is denied. There has been no showing that the preliminary injunction will not adequately protect the rights of the minority stockholders or that there is a danger that the businesses of the operating companies will be materially injured or destroyed (CPLR 6401[a]).

RICHARDSON v. GRAY
Index No. 116880/95 Page - 15

### Proper Defendants

The Houlihan investment firm is not a proper defendant in these actions. Accepting all of plaintiff's allegations as true, it acted merely as a financial advisor to Gray and refused to divulge confidential information of a client. Plaintiff admittedly has not asserted any substantive claims against Houlihan and preliminary injunctive relief against this defendant is not necessary if all the other participants in the cash-out merger are enjoined since it would be impossible for Houlihan, in its capacity as a financial advisor, to consummate the transaction by itself.

Likewise, HomeStar, Inc. is not named as a wrong-doer in any cause of action. Nevertheless, it remains a necessary party to this action because it is the alleged corporate opportunity wrongfully misappropriated by Gray and is directly involved in the corporate restructuring and refinancing transactions that are the subject of these actions.

### The Claims Involving Republic

CPLR 213(7)[4] includes among the types of action that must be commenced within six years,

> an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith.

Republic was acquired by Chariot Group in 1987, at a time when Chariot Group was a public company, with outside directors and regular SEC filings, and over eight years prior to the commencement of this action. Therefore, any claims regarding this transaction are clearly time-barred. While plaintiff alleges that Gray fraudulently concealed his wrongful conduct by not reporting the continuing losses separately, neither the complaint nor the affidavit of Stuart Benton sets forth with particularity, as required by CPLR 3016(b) for all fraud claims and defenses (*Monaco v. New York University Medical Center*, 213 AD2d 167, *lv dismissed* 86 NY2d 882), the details and circumstances surrounding this allegedly fraudulent concealment of

---

[4]Both parties agree that the New York limitations period applies (see also, *Lowengard v. Sante Fe Industries, Inc.*, 70 NY2d 262).

RICHARDSON v. GRAY
Index No. 116880/95 Page - 16

information, particularly when plaintiff discovered or suspected the alleged wrongdoing by Gray in order to come within the two-year discovery rule (see, CPLR 203[g]; *Schoen v. Martin*, 187 AD2d 253, 254). For these reasons, paragraphs 45 through 49, paragraph 56(a) of the first cause of action, and the third cause of action (paragraphs 64 through 67) of the complaint in Action No. 1 should be dismissed.

### CONCLUSION

For the foregoing reasons, plaintiff's motions for a preliminary injunction is granted. Defendants' cross motion for dismissal is granted only with respect to the claims regarding the 1987 acquisition of Republic Metal Products, Inc. and defendant Houlihan, Lokey, Howard & Zukin should be dropped as a defendant in both actions. Plaintiff's motion to add parties plaintiff is granted and the caption of the actions shall be amended accordingly.

Settle an appropriate order in Room 148A providing for the relief provided for herein. The issuance of the preliminary injunction is conditioned upon the filing of an undertaking in the amount of $50,000 in accordance with CPLR 6312(b).

A conference to discuss consolidation of these actions pursuant to CPLR 602(a), discovery issues and the future course of the case will be held on November 13, 1996 in courtroom 228 at 60 Centre Street, at 9:30 a.m.

Dated: October 21, 1996

J.S.C.

00071

At Individual Assignment Part
11 of the Supreme Court of the
State of New York, County of
New York, at the Courthouse
thereof at 60 Centre Street,
New York, New York on this
___ day of ___, 1996

P R E S E N T:

        LEWIS R. FRIEDMAN,

        Justice.

----------------------------------------x
BENJAMIN RICHARDSON, a stockholder on
behalf of the CHARIOT GROUP, INC.,                  Index No. 116880/95

            Plaintiff,

    - against -                                     Action No. 1

RICHARD E. GRAY and THE CHARIOT GROUP,
INC., CHARIOT HOLDINGS, LTD., CHARIOT
PLASTICS, INC., AMV HOLDINGS, INC.,
VDC RECOVERY, INC., CHARIOT BUILDING
PRODUCTS, INC., HOMESTAR, INC. and
HOULIHAN, LOKEY, HOWARD & ZUKIN,

            Defendants.
----------------------------------------x
BENJAMIN RICHARDSON, Individually and
as a member of the class of persons                 Index No. 120269/95
consisting of all of the minority
stockholders of common stock of THE
CHARIOT GROUP, INC.,                                Action No. 2

            Plaintiff,

    - against -

RICHARD E. GRAY and THE CHARIOT GROUP,
INC., CHARIOT HOLDINGS, LTD., CHARIOT
PLASTICS, INC., AMV HOLDINGS, INC.,
VDC RECOVERY INC., CHARIOT BUILDING
PRODUCTS, INC., HOMESTAR, INC., and
HOULIHAN, LOKEY, HOWARD & ZUKIN, SUMMIT
METALS, INC., HALLOWELL INDUSTRIES,
INC., HOMESTAR ACQUISITION CORP. and
JOHN DOE CORPORATIONS NOS. 1-5,

            Defendants.
----------------------------------------x



PLAINTIFF'S
EXHIBIT
2
ALL-STATE LEGAL

SUM 00017

Plaintiff, Benjamin Richardson, having moved by Order to Show Cause issued by this Court (Schackman, J.) on August 9, 1995 in Action No. 116880/95 ("Action No. 1") for an Order restraining and enjoining defendant Richard Gray ("Gray") from paying or otherwise disbursing to himself or to any of the Corporate defendants in Action No. 1 or any other Corporation under control of Gray, any payment other than reasonable executive compensation in the ordinary course of business; enjoining Gray directly or through any of the Corporate defendants herein from engaging in any extraordinary transaction not regularly done in the ordinary course of business by Chariot Group, Inc. or any the other Corporate defendants; restraining and enjoining defendants Houlihan, Lokey, Howard & Zukin ("Houlihan") from taking any action to consummate any financial transaction pursuant to which the stock or assets of Chariot Group, Inc., or of Energy Savings Products Corp. or B. F. Rich Company (the "Operating Companies") are sold, assigned, transferred, encumbered or otherwise disposed of and directing expedited discovery in this action.

AND, defendants other than Chariot Group and Houlihan having crossed-moved in Action No. 1 for an order pursuant to CPLR §3211(a)(3) and Code of Professional Responsibility DR 4-101(A) and (B) dismissing the complaint on the ground that plaintiff had not legal capacity to sue or in the alternative pursuant to CPLR §901(a)(4) striking the class action allegations of the complaint; in the alternative pursuant to CPLR Rule

-2-

SUM 00018

3211(a)(5) dismissing the complaint to the extent it alleges claims arising from the acquisition of Republic Metal Products, Inc., on the ground that such claims are barred by the applicable statute of limitations; pursuant to CPLR §3211(a)(7), dismissing the complaint to the extent it alleges claims against the entities sued herein as "Homestar, Inc." on the ground that it fails to state a cause of action against said entity,

AND, Plaintiff, Benjamin Richardson, having moved by Order to Show Cause entered in this Court (Schackman J.) on August 16, 1995 in Action No. 120269/95 ("Action No. 2") for an order restraining and enjoining defendant Gray, directly or through any of the defendant corporations or any other corporation which he may own or control, from proceeding to consummate or take any other action predicated upon the alleged consummation and validity of a certain merger dated August 7, 1995 pursuant to which, inter alia Chariot Group, Inc. was allegedly merged into Summit Metals, Inc. ("Summit"); restraining and enjoining Gray or Summit or any other corporation under control by them from compelling minority shareholders of Chariot Group, Inc. to exercise any option to surrender their shares of stock or to demand an appraisal thereof and tolling any time period established in §262 of the Delaware General Business Law for the exercise of appraisal rights; restraining and enjoining defendant Gray from paying or disbursing monies to Gray or any corporate defendants or other corporations controlled by Gray from the stock, assets or revenues of Energy Savings Product Corp. or B.F.

-3-

Rich Company (the "Operating Companies") or from any loan or financing transaction occurred or collateralized by the stock assets or revenues of said companies, other than reasonable executive compensation to be paid to Gray in the ordinary course of business; preserving the status quo as to all aspects of the business affairs of Chariot Group, restraining and enjoining defendant Houlihan from taking any action to consummate any financial transaction pursuant to which any of the stock or assets of Chariot Group or Summit or the Operating Companies are assigned, transferred encumbered or otherwise disposed of; and an order expediting discovery in said action,

AND, defendants other than Chariot Group, Inc. and Houlihan having moved by Notice of Cross-Motion dated September 1, 1995 in Action No. 2 for an order pursuant to CPLR §3211(a)(7) dismissing the complaint on the ground that it fails to state a cause of action and the plaintiffs' exclusive remedy is appraisal pursuant to Delaware Law; pursuant to CPLR 3211(a)(3) and Code of Professional Responsibility, DR 4-101(a) and (B) dismissing the complaint on the ground that plaintiff has not the legal capacity to sue, or in the alternative striking the class action allegations; in the alternative pursuant to CPLR 3211(a)(5) dismissing the complaint to the extent it alleges claims arising from the acquisition of Republic Metal Product, Inc. on the ground that such claims are barred by the statute of limitations, and pursuant to CPLR 3211(a)(7) dismissing the complaint against

-4-

defendant Homestar, Inc. on the ground it fails to state a claim against said defendant,

AND the parties in both actions having agreed by stipulation dated August 17, 1995, "So Ordered" by the court (Schackman, J.), to a temporary restraining order pending the hearing of the motions,

AND, plaintiff having moved by Notice of Motion dated December 6, 1995, in Action No. 1 for an order pursuant to CPLR §§1002 and 1003, adding certain individuals as additional plaintiffs in Action No. 1,

AND, plaintiff having moved by Notice of Motion dated December 6, 1995, in Action No. 2 for an order adding said individuals as additional plaintiffs in Action No. 2.

AND the motions in both said actions having come on to be heard before this Court (Schackman, J.) on September 14, 1995,

AND this court (Lewis R. Friedman, J.) having rendered its written decision dated October 21, 1996,

NOW, upon the Order to Show Cause dated August 9, 1995 in Action No. 1, the affirmation of Joseph H. Adams dated August 9, 1995, with exhibits annexed, and the affidavit of Stuart J. Benton, sworn to August 3, 1995, with exhibits annexed; the Order to Show Cause dated August 16, 1995 in Action No. 2 (Schackman, J.), the Affirmation in Support of Order to Show Cause for Injunctive Relief Identical to That in Related Action of Joseph H. Adams dated August 14, 1995, with exhibits annexed, the Reply Affirmations of Joseph H. Adams dated September 12, 1995, with

-5-

exhibits annexed, and of H. Adam Prussin, dated September 13, 1995, the affidavits of Ismael Rodriguez, sworn to September 7, 1995, Thomas Morris, Jr. sworn to August 29, 1995, Alan Blattberg, sworn to September 12, 1995, Ambrose M. Richardson III sworn to September 12, 1995, with exhibits annexed, Stuart J. Benton, sworn to [   ] September 1995, with exhibits annexed, Stephen J. Fraher, sworn to September 12, 1995 and Benjamin M. Richardson, sworn to September 6, 1995, all read in support of the plaintiffs' motions for preliminary injunctions, a temporary receiver and expedited discovery, and in opposition to the cross-motions, in both actions,

AND, upon the Notice of Cross-Motion dated September 1, 1995 in Action No. 1 and the Notice of Cross-Motion dated September 1, 1995 in Action No. 2, the Affidavit of Richard E. Gray, sworn to August 30, 1995, the Affirmation of John M. Schwartz, dated September 1, 1995, the Affidavit of Stephen E. Hermann, sworn August 31, 1995, the Affidavit of Brian C. Skarlatos, sworn October 11, 1995, all read in opposition to plaintiffs' motions and in support of defendants' cross-motions in both actions,

AND, upon the Affirmation in Opposition to Motions for a Preliminary Injunction of Scott H. Rosenblatt, dated September 1, 1995, with exhibits annexed, read in opposition to plaintiff's motions.

AND, upon the affirmation of Joseph H. Adams dated December 6, 1995 in Action No. 1 and the affirmation of Joseph H.

-6-

SUM 00022

00077

Adams dated December 6, 1995 in Action No. 2, and the affidavits of Anthony Cannavo, sworn to November 21, 1995, Salvatore Cala, sworn to November 27, 1995, James E. Deaviser, sworn to November 22, 1995, Harry W. Basham, sworn to November 30, 1995, and Joseph Giglietti, sworn to November 21, 1995, all read in support of plaintiffs motions to add additional plaintiffs, and the Affirmation in Opposition to Plaintiffs Motions to Add Plaintiffs of John M. Schwartz, dated December 29, 1995 in Action No. 1 and the Affirmation in Opposition to Plaintiff's Motion to Add Plaintiffs of John M. Schwartz dated December 29, 1995 in Action No. 2, all read in opposition to said motions, it is

ORDERED that the plaintiff's motions for preliminary injunctions in Action No. 1 and No. 2, the defendants' cross-motions and the motions of plaintiff to add parties in both actions, are all consolidated for decision, and it is further

ORDERED that the motions of the plaintiff for a preliminary injunction in both Action No. 1 and Action No. 2 are granted, and that upon the condition that plaintiff has given an undertaking in the amount of $50,000 prior to the entry of this Order in accordance with CPLR §6312(b), it is

ORDERED that defendant Richard E. Gray ("Gray"), directly or through any of the defendant corporations, or any corporation which Gray owns or controls, directly or indirectly, shall be and hereby is restrained and enjoined, pending the determination of Action No. 2, from taking any actions to consummate, or to take any other action predicated upon the

-7-

SUM 00023

00078

alleged consummation and validity of a certain "cashout" merger, dated August 7, 1995, pursuant to which, inter alia, Chariot Group, Inc. ("Chariot Group") was merged into Summit Metals, Inc. ("Summit"), including but not limited to closing or attempting to close any loan or financing transaction in the name of Summit or any other corporation owned or controlled by Gray, which transaction is secured in whole or in part by the stock or assets of Chariot Group, or any of its subsidiaries or operating companies, namely, Energy Savings Products, Inc., B.F. Rich Company, or of Homestar Inc., except to the extent necessary or desirable to conduct the operations of said companies in the ordinary course of business, and it is

FURTHER ORDERED that Gray or Summit, or any other corporation owned or controlled by Gray or Summit, or any corporation which Gray owns or controls, directly or indirectly, shall be and hereby is restrained and enjoined pending the determination of Action No. 2, from compelling the minority shareholders of Chariot Group to exercise any option to surrender their shares of stock, for the price specified in the Notice of Action of Shareholder dated August 7, 1995, or to demand an appraisal thereof, it being part of this order that any time period established in Section 262 of the Delaware General Business Law for the exercise of such appraisal rights by share- holders is tolled pending the determination of Action No. 2, and until further order of this Court, and it is

-8-

FURTHER ORDERED, that defendant Gray, directly or through any of the defendant corporations herein or any corporation which Gray owns or controls, directly or indirectly, shall be and hereby is restrained and enjoined, during the pendency of Action No. 1 and Action No. 2, from paying or otherwise disbursing monies to Gray, or to any of the corporate defendants herein, or to any other corporation owned or controlled by Gray, directly or indirectly in the form of loans, fees, or any other type of payment, when such monies are obtained, directly or indirectly from the stock, assets or revenues of either the operating companies owned or controlled or formerly owned and controlled by Chariot Group, namely, Energy Savings Products, Inc., B.F. Rich Company, or of Homestar, Inc., or from any loan or financing transaction secured or collateralized by the stock, assets and revenues of the operating companies, other than payments of monies due and payable *pursuant to agreements in effect prior to the date of this order* regularly and in the ordinary course of business including but not limited to *reasonable* legal fees and disbursements payable pursuant to any applicable indemnification provision of the corporation's by-laws or otherwise, and it is

FURTHER ORDERED, that defendant Gray, directly or through any of the defendant corporations herein or any corporation which Gray owns or controls, directly or indirectly, shall be and hereby is restrained and enjoined from:

1. selling, assigning, transferring, encumbering or otherwise disposing of the stock or assets of Chariot Group,

-9-

SUM 00025

Inc. or any of the stock or assets of any operating companies owned or controlled by Chariot Group, Inc, including but not limited to B.F.Rich Company and Energy Savings Products, Inc., or of Homestar, Inc., to any third party, including to any corporation named as a defendant herein, or any corporation or other business organization in which Gray is interested, directly or indirectly.

   2.   negotiating, closing or disbursing the proceeds of any loan or other financial transaction, through the agency of Houlihan, Lokey, Howard & Zukin or through any other third party, which is secured or collateralized or encumbers, directly or indirectly, the stock or assets of Chariot Group, Inc., or the stock, assets or revenues of the operating companies, owned or controlled by Chariot Group, namely, B.F. Rich Company, and Energy Savings Products Corp., or of Homestar, Inc., or any other corporation, including Summit, to which the foregoing may have been allegedly transferred, sold or assigned.

   3.   entering or closing any agreements pursuant to which the stock or the assets of the operating companies owned or controlled by Chariot Group, Inc. or the stock or assets of Chariot Group, Inc., may be sold, assigned, transferred, encumbered or otherwise disposed of to any third party, including but not limited to the corporate defendants herein, and it is further

   ORDERED that the defendant's cross-motions to dismiss the complaints in Action No. 1 and Action No. 2, is granted, and

-10-

the complaint is hereby dismissed, to the extent it seeks recovery arising from the 1987 acquisition of Republic Metal Products, Inc. by Chariot Group Inc., and said motions are otherwise denied, it is further

ORDERED that the complaints in both Actions No. 1 and Action No. 2 are hereby dismissed as against defendant Houlihan, and it is further

ORDERED that plaintiff's motions in Action No. 1 and Action No. 2 to add Anthony Cannavo, Salvatore Cala, James E. Deaviser, Harry W. Basham and Joseph Giglietti as additional parties in Action No. 1 and Action No. 2 are granted and said persons are hereby added as plaintiffs, therein and the caption in Action No. 1 shall be amended to read as follows:

----------------------------------------x

BENJAMIN RICHARDSON, ANTHONY CANNAVO,
SALVATORE CALA, JAMES E. DEAVISER, HARRY    Index No. 116880/95
W. BASHAM and JOSEPH GIGLIETTI,
stockholders on behalf of the
CHARIOT GROUP, INC.,

                    Plaintiffs,

  - against -

RICHARD E. GRAY and THE CHARIOT GROUP,    Action No. 1
INC., CHARIOT HOLDINGS, LTD., CHARIOT
PLASTICS, INC., AMV HOLDINGS, INC.,
VDC RECOVERY, INC., CHARIOT BUILDING
PRODUCTS, INC., HOMESTAR, INC., and
HOULIHAN, LOKEY, HOWARD & ZUKIN,

                    Defendants.
----------------------------------------x

-11-

and the caption in Action No. 2 shall be amended to read as follows:

```
---------------------------------------x
BENJAMIN RICHARDSON, ANTHONY CANNAVO,      :
SALVATORE CALA, JAMES E. DEAVISER,
HARRY W. BASHAM and JOSEPH GIGLIETTI,          Index No. 120269/95
Individually and as members of the
class of persons consisting of all of          Action No. 2
the minority stockholders of common
stock of THE CHARIOT GROUP, INC.,
```

                              Plaintiffs,

     - against -

RICHARD E. GRAY and THE CHARIOT GROUP,
INC., CHARIOT HOLDINGS, LTD., CHARIOT
PLASTICS, INC., AMV HOLDINGS, INC.,
VDC RECOVERY INC., CHARIOT BUILDING
PRODUCTS, INC., HOMESTAR, INC., and
HOULIHAN, LOKEY, HOWARD & ZUKIN, SUMMIT
METALS, INC., HALLOWELL INDUSTRIES,
INC., HOMESTAR ACQUISITION CORP. and
JOHN DOE CORPORATIONS NOS. 1-5,

                              Defendants.
```
---------------------------------------x
```

and it is further

    ORDERED, that as a matter of administrative convenience
and without consolidation, but without prejudice to any
subsequent application by any party concerning consolidation or
joint trial all proceedings in Action No. 1 and Action No. 2
shall henceforth be filed under Index No. 116880/95 *and it is further*
*ORDERED that a copy of this order be served on the Trial Support Office (Rm 83)*
*so that the Clerk may correct the records,*

                         E N T E R



                         _____
                         J.S.C.


                         -12-

SUM 00028

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 11
------------------------------------------------------------------X
RICHARD E. GRAY and SUMMIT METALS, INC., AS
SUCCESSOR TO THE CHARIOT GROUP, INC.,

                              Plaintiffs,

                    - against -                                    Index No. 124969/95
                                                                   Seq. No. 003

AMBROSE M. RICHARDSON, III, and RICHARDSON
MAHON & CASEY,

                              Defendants.
------------------------------------------------------------------X

LEWIS R. FRIEDMAN, Justice

  Defendants move for summary judgment dismissing the complaint against them,
and for judgment in defendant Richardson's favor on the counterclaim.

  There is no doubt that defendant Richardson, an attorney, had been secretary of the
plaintiff corporation's predecessors and subsidiaries during a period ending in 1991.
Plaintiffs allege that Richardson and his law firm provided various legal services to those
corporations. Plaintiff Gray contends that Richardson also represented him in various
matters. In the first cause of action plaintiffs seek an injunction against defendants "engaging
in a course of conduct adverse to the interests of their former clients." The second cause of
action seeks an injunction to require defendants to retain the confidences of their clients. In
the counterclaim Richardson seeks indemnification pursuant to plaintiff's bylaws and the
Delaware Corporation Law of his expenses in defending himself in this action as a corporate
officer and agent.

  Justice Schackman, immediately prior to his retirement, denied defendants' motion
to dismiss the complaint pursuant to CPLR 3211[a][1],[7] in a decision and order dated
August 27, 1996. Plaintiffs contend that this motion should be denied for the reasons set
forth by Justice Schackman. Suffice it to note that a motion to dismiss and a motion for
summary judgment are different. On the prior decision the references to disputes of fact
relate, as a matter of law, to the disputes raised by the motion papers and the complaint. The

GRAY v. RICHARDSON
Index No. 124969/95  Page - 2

references are not to issues presented on a motion for summary judgment, where the burden is on the parties to assemble, lay bare and reveal their proof in admissible form.

The heart of the complaint relates to the actions taken by Richardson and his sons in suing the corporate plaintiff in derivative actions such as *Richardson v Grey*, Index No. 116880/95, Sup. Ct. NY Co., where this court in a decision dated October 21, 1996 granted a preliminary injunction to prevent a fraudulent merger. The court's review of the documents submitted on this motion does not find that the parties disagree on the material facts concerning Richardson's representation of the corporation. It is undisputed that the representation ended in 1991, with the exception of certain collection matters for subsidiaries, not relevant to this action.

It is not alleged that Richardson is actually representing any party against the corporations or Grey. Yet the closest analogy to the circumstances here is in the rules which prohibit counsel from representing interests adverse to former clients. DR 5-108 prevents an attorney from representing a new client "in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client." The court has been shown no factual material which would demonstrate that any of the pending matters are "substantially related" to any former matter handled by Richardson or his law firm. The most that can be said for plaintiffs' position is that Richardson was involved in some of the structuring of the corporation during the time he served as counsel (see Grey aff. 2/28/97 pp. 7-8). Plaintiff seems to believe that if the events which are the subject of legal actions "were mere continuations of policies and structures he [Richardson] helped put into place or assets he helped to acquire" there is some tort or other wrong to the corporation. Plaintiff's papers fail woefully to establish that there is a substantial relationship between the current actions and the prior representation.

In addition plaintiffs do not show that there is anything in Richardson's current activities which are "materially adverse to the interests of a former client." Grey contends that Richardson was the General Counsel to his corporate empire, even though outside counsel held that title. If correct the court can not determine how the representation of shareholders in derivative actions are adverse to the corporations, particularly when at least one of the derivative actions has demonstrated obvious impropriety by Grey in his handling of the corporation's finances for his own gain. It is for those reasons that other courts have held that former corporate attorneys may represent minority shareholders in derivative

actions (*see, e.g., Jacuzzi v Jacuzzi Bros., Inc.*, 218 Cal App 2d 24, 32 Cal Rptr. 188 [1981]; *Seifert v Dumatric Indus. Inc.*, 413 Pa 395, 197 A2d 454 [1964]). In simple terms plaintiffs have failed to demonstrate the adversity to the interest Richardson represented. While Grey contends that Richardson handled "tax" matters for him, the detailed billing belies that. There is no showing that Gray's efforts to assist the Internal Revenue Service in collecting the over $7 million that Grey and his corporations concededly owe has anything to do with Richardson's prior representation of Grey or the corporations.

The second cause of action seeks an injunction similar to DR 4-101, preventing defendants from disclosing client confidences and secrets. Defendants assert that they have not disclosed and will not disclose client confidences. Plaintiffs concede that they have no information about what confidences defendants may have and seek discovery. It is obviously true that plaintiffs have no information to support their allegations in the second cause of action. Discovery to learn what defendants know will not advance plaintiff's case, which is based on disclosures. Since defendants' are precluded on pain of disciplinary action from engaging in disclosures the second cause of action adds nothing.

The counterclaim seeks indemnification. Justice Schackman denied that relief previously as being premature. The court need not engage in a prolonged study of Delaware General Corporation Law § 145 or the corporation's by-laws to conclude that since the action is being dismissed defendants have been successful within the meaning of Section 145[c]. As the Second Circuit has recently held that section mandates indemnification of "a director, officer, employee or agent of a corporation [who] has been successful on the merits or otherwise in defense of any action" such as the one at bar (*Waltuch v Conticommodity Services*, 88 F3d 87, 95-7 [2d Cir 1996]). There is no doubt that Richardson was an officer of the corporations involved and that he was acting as their agents. Plaintiffs offer no persuasive argument why indemnification is inappropriate at this time.

In light of the decision on this motion the court need not address whether the plaintiff corporation complied with Justice Schackman's order dismissing the case as to that plaintiff for failure to comply with BCL § 1312. It may well be that tax returns were required for the periods during which the predecessor was required to pay the franchise tax and that the Summit Metals tax returns are false and misleading. The court dismisses the action on the merits as to both plaintiffs, in any event.

GRAY v. RICHARDSON
Index No. 124969/95  Page - 4

The motion for summary judgment of dismissal of the complaint is granted.  The motion for judgment on the counterclaim is granted.  The Clerk shall enter a judgment accordingly.  Summary judgment is granted to defendant Richardson on his counterclaim against the corporate plaintiff.  Richardson may file a Note of Issue to obtain a hearing date for the assessment of damages.

Dated:  March 24, 1997

J.S.C.

00087

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:              IAS PART 7
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

RICHARD E. GRAY and SUMMIT METALS, INC., AS
SUCCESSOR TO THE CHARIOT GROUP, INC.,

                              Plaintiffs,                      FINDINGS OF FACT
                                                              AND CONCLUSIONS
                                                              OF LAW

              - against -                                     Index 124969/95

AMBROSE M. RICHARDSON, III, and RICHARDSON
MAHON & CASEY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**HAROLD TOMPKINS, JUSTICE:**

On March 24, 1997, Justice Lewis Friedman issued a Decision and Order dismissing the

Complaint brought by Summit Metals, Inc. ("Summit"), as Successor to The Chariot Group, Inc.,

against Ambrose M. Richardson, III, a former officer and attorney for that corporation and its

subsidiaries.

Because of Richardson's success in defending the action, Justice Friedman held that

Richardson was entitled to be indemnified for his actual and reasonable expenses in defending the

actions and in causing their dismissal.

At an inquest before this Court on July 1, 1997, Richardson testified personally, and

presented exhibits consisting of the Chariot By-laws and detailed time records.

1

FINDINGS OF FACTS

1. Richardson presented evidence showing time was spent defending the action by himself and others persons in his law firm, known as Richardson Mahon & Casey, P.C., and S. Pitkin Marshall, Esq., who appeared on Richardson's behalf at hearings relating to the Plaintiffs' motions for a temporary restraining order and for a preliminary injunction.

2. The charges of Mr. Marshall, amounting to $8,535.63 are not contested by the Plaintiffs.

3. Detailed billing records through March 31, 1997, indicate that Richardson's firm spent approximately 188 hours of time defending the actions, including approximately 100 hours of Richardson's own time and total time charges of $35,078.34. The time charges ranged from $44 per hour for paralegal time and $125 per hour for associate time to $250 per hour for Richardson's time.

4. Richardson is a graduate of Harvard Law School, and has been practicing in New York for over 25 years. His experience includes association with the former Mudge Rose Guthrie & Alexander and Rivkin Sherman & Levy, before starting his own independent firm in 1978.

5. Richardson wrote all of the affidavits and briefs for four separate motions in this action, consisting of a motion for a temporary restraining order, a motion for a preliminary injunction, a motion to dismiss and a motion for summary judgment. He testified that he spent approximately twenty to twenty-five hours writing the papers for each motion. This testimony is supported by the time records.

2

6. Richardson testified further, without contradiction, that the time spent on this matter was taken from other matters on which he could have been engaged, and he was not otherwise compensated for the time spent on this action.

7. The time charges of Richardson and his firm are within the range of fees charged by attorneys of similar skill and experience.

8. Summit did not present any evidence at all, much less any evidence to prove that the time spent or the time charges for the defense of the action, which resulted in the complete dismissal of the action, was in any respect unreasonable.

CONCLUSIONS OF LAW

9. The New York Courts have in many cases awarded fees to pro se or pro bono litigants, both because the time spent is time taken from one's profession as an attorney, and to further the policies of the statute that provides for indemnification or awards of attorneys' fees, see, e.g., Maplewood Management, Inc. v. Best, 143 A.D.2d 978, 533 N.Y.S.2d 612 (2d Dept. 1988). To hold otherwise would amount to an unjustified windfall to the corporation obligated by statute and its own By-laws to pay indemnification of its former officers and directors.

10. The fees and expenses of Richardson and his firm, as well as those of S. Pitkin Marshall, Esq., were actually and reasonably incurred in the defense of the action initiated against them, and are fair and reasonable by the standards of New York practice.

11. Richardson is entitled to recover $43,613.97 of Summit, including $8,535.63 for the efforts by S. Pitkin Marshall, Esq., and $35,078.34 for the efforts of his own firm.

3

00090

12. Interest shall accrue as of the date of Justice Friedman's order of March 24, 1997 granting summary judgment to Richardson on his claim for attorney's fees.

13. This decision constitutes the order and judgment of this court and a copy has been mailed to both counsel.

Dated:   July *30* , 1997

*[signature]*

J.S.C.

4

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department
in the County of New York, on August 27, 1998.


Present:  Hon. Betty Weinberg Ellerin, Justice Presiding
               Peter Tom
               Angela M. Mazzarelli
               David B. Saxe, Justices

------------------------------------------x
Richard E. Gray and Summit Meals, Inc.,
as Successor to The Chariot Group, Inc.,

                Plaintiffs-Appellants,                          M-4676

          -against-
                                                        Index No.
                                                        124969/95
Ambrose M. Richardson, III and
Richardson, Mahon & Casey, P.C.,

                Defendants-Appellants.
------------------------------------------x


     The above-named plaintiffs-appellants having moved for leave
to appeal to the Court of Appeals from this Court's decision and
order entered on June 30, 1998 (Appeal No.1811),

     Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

     It is ordered that the motion be and the same hereby is
denied, with $100 costs.

                         ENTER:


                              Catherine O'Hagan Wolfe
                                   Clerk.

00092

Ellerin, J.P., Tom, Mazzarelli, Saxe, JJ.

1811        Richard E. Gray, et al.,
                Plaintiffs-Appellants,

                    -against-                              Barry J. Quinn

        Ambrose M. Richardson, III, et al.,
                Defendants-Respondents.

                                            Pro Se &
                            Ambrose M. Richardson

        Judgment, Supreme Court, New York County (Lewis Friedman,
J.), entered September 23, 1997 in favor of defendants and
against plaintiffs in the amount of $46,331.98, bringing up for
review an order of the same court and Justice, entered on or
about March 24, 1997, which granted defendants' motion for
summary judgment dismissing the complaint and upon their
counterclaim for indemnification, unanimously affirmed, with
costs.

        Defendants ceased to perform legal work for plaintiffs in
mid-1991, other than minor collection matters not pertinent here,
and plaintiffs have failed to show how the general corporate work
defendants rendered is substantially related to the underlying
derivative actions alleging acts of corporate waste and breach of
fiduciary trust occurring subsequent to the cessation of that
representation (see, Bank of Tokyo Trust Co. v Urban Food Malls
Ltd., 229 AD2d 14, 31).  Similarly, plaintiffs' vague and
conclusory assertions that defendants must have acquired
confidential information because they represented plaintiffs does
not sufficiently set forth what information was acquired or

                                    51

allegedly improperly communicated to others (see, id.).

This action was commenced against Richardson because of his prior status as an agent of the corporate plaintiff, and, having prevailed, he is entitled to indemnification under Delaware's General Corporation Law (8 Del Code § 145[c]), and the corporation's by-laws.  Since Richardson is a lawyer, he is entitled to pro se attorneys' fees under the statute, the purpose of which is advanced by allowing such recovery (see generally, Parker 72nd Assocs. v Isaacs, 109 Misc 2d 57, 59).

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: JUNE 30, 1998

Catherine O'Hagan Wolfe
CLERK

52

00094

# State of New York,
## Court of Appeals

*At a session of the Court, held at Court of Appeals Hall in the City of Albany on the* twentieth *......................................day of* November ..................... 1998

**Present,**  HON. JUDITH S. KAYE, *Chief Judge, presiding.*

---

1-10          Mo. No. 1202
Richard E. Gray, et al.,
                    Appellants,
          v.
Ambrose M. Richardson, III,
et al.,
                    Respondents.

---

A motion for leave to appeal to the Court of Appeals in the above cause having heretofore been made upon the part of the appellants herein and papers having been submitted thereon and due deliberation having been thereupon had, it is

ORDERED, that the said motion be and the same hereby is denied with one hundred dollars costs and necessary reproduction disbursements.

*Stuart M. Cohen*
Stuart M. Cohen
Clerk of the Court



*State of New York*
*Court of Appeals*

*Stuart M. Cohen*
*Clerk of the Court*

*Clerk's Office*
*Albany, New York 12207-1095*

DECISION November 20, 1998

1-10      Mo. No. 1202
Richard E. Gray, et al.,
                    Appellants,
            v.
Ambrose M. Richardson, III,
et al.,
                    Respondents.

Motion for leave to appeal denied with
one hundred dollars costs and necessary
reproduction disbursements.



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SUMMIT METALS, INC.,<br><br>          Debtor.<br><br>SUMMIT METALS, INC.,<br><br>          Plaintiff,<br><br>RICHARD E. GRAY; CHH HOLDINGS, LTD.<br>(f/k/a CHARIOT HOLDINGS, LTD.);<br>B.F. RICH, INC.; CP PLASTICS, INC.<br>(f/k/a CHARIOT PLASTICS, INC.);<br>RAC INVESTORS, INC. (f/k/a VDC<br>RECOVERY, INC.); CHARIOT<br>INVESTORS, INC.; HARCAR, INC.;<br>ENERGY SAVING PRODUCTS, INC.;<br>CHARIOT MANAGEMENT, INC.; RIVERSIDE<br>MILLWORK, INC.; RIVCO REALTY, INC.;<br>RIVCO MANAGEMENT, INC.; RIVCO<br>ACQUISITION CORP.; CSC<br>RECOVERY CORP.; JENKINS<br>MANUFACTURING, INC.; JENKINS<br>REALTY, INC.; JENKINS<br>MANAGEMENT, INC.; JENKINS<br>ACQUISITION, INC.; C.R.L.<br>INDUSTRIES, INC.(f/k/a/ L.R.C.,<br>INC.); RICH REALTY, INC.; and<br>HALLOWELL INDUSTRIES, INC.,<br><br>          Defendants. | Chapter 11<br><br>Case No. 98-2870<br><br><br><br>Adversary Proceeding<br>No.<br><br>*A 99-557* |

**COMPLAINT**

**I. PARTIES**

1.    Plaintiff is the Debtor, Summit Metals, Inc. ("Summit"),
a Delaware corporation, acting by and through its Official
Committee of Unsecured Creditors, pursuant to the Order entered by
this Court on September 21, 1999. A copy of that order is attached
hereto as Exhibit A. Summit filed its voluntary Chapter 11 Petition
in this Court on December 30, 1998.

2.    On or about August 7, 1995, The Chariot Group, Inc. ("Chariot") merged into Summit (the "Merger"). As a result of that Merger, Summit became the successor-in-interest to all claims, rights and causes of action of Chariot.

3.    Defendant Richard E. Gray ("Gray") resides and/or has an office for the conduct of business at 730 Park Avenue, New York, New York 10021. Gray is the chairman and CEO of Summit and beneficially owns all of its stock. Prior to the Merger, Gray was the controlling shareholder, chairman, sole director and CEO of Chariot. Gray also owns and/or controls all the other corporate defendants.

4.    Defendant CHH Holdings, Ltd. (f/k/a Chariot Holdings, Ltd.) ("Holdings") is a Delaware corporation. Gray owns, and at all relevant times has owned, 100% of Holdings' stock.

5.    Defendant CP Plastics, Inc. (f/k/a Chariot Plastics, Inc.) ("Plastics") is a Delaware corporation. Holdings owns, and at all relevant times has owned, 100% of Plastics' stock.

6.    Prior to the Merger, Plastics owned about 1.9 million shares of Chariot stock, representing about 70% of the total, and the remaining 800,000 shares were held by public stockholders. The effect of the Merger was to freeze out the public stockholders, in exchange for worthless promissory notes to be issued by Summit, a shell corporation with no assets, no income, and no ability to pay those notes. Since the Merger, Plastics has owned 100% of the stock of Summit.

7.    Defendant Energy Saving Products, Inc. ("ESP") is a

2

Delaware corporation. Prior to June, 1995, Chariot owned approximately 92% of the stock of ESP. ESP was, and still is, in the business of selling replacement windows and doors in the home construction industry. ESP owns 100% of the stock of defendant B.F. Rich, Inc. ("BFR"), a Delaware corporation. ESP and BFR will be referred to, collectively, as ESP.

8. Defendant Harcar, Inc. ("Harcar") is a Delaware corporation. On or about June 30, 1995, Harcar acquired Chariot's 92% ownership interest in ESP.

9. Defendant RAC Investors, Inc. (f/k/a VDC Recovery, Inc.) ("RAC") is a Delaware corporation.

10. Defendant Chariot Investors, Inc. ("Chariot Investors") is a Delaware corporation.

11. Defendant Chariot Management, Inc. ("Chariot Management") is a Delaware corporation.

12. Defendant Riverside Millwork, Inc. ("Riverside") is a foreign corporation.

13. Defendant Rivco Realty, Inc. ("Rivco Realty") is a Delaware corporation.

14. Defendant Rivco Management, Inc. ("Rivco Management") is a Delaware corporation.

15. Defendant Rivco Acquisition Corp. ("Rivco Acquisition") is a Delaware corporation.

16. Defendant CSC Recovery Corp. ("CSC") is a Delaware corporation.

17. Defendant Jenkins Manufacturing, Inc. ("Jenkins") is a

3

foreign corporation.

18. Defendant Jenkins Realty, Inc. ("Jenkins Realty") is a foreign corporation.

19. Defendant Jenkins Management, Inc. ("Jenkins Management") is a foreign corporation.

20. Defendant Jenkins Acquisition, Inc. ("Jenkins Acquisition") is a Delaware corporation.

21. Defendant C.L.R. Industries, Inc. (f/k/a/ L.R.C., Inc.) ("C.L.R.") is a foreign corporation.

22. Defendant Rich Realty, Inc. ("Rich") is a Delaware corporation.

23. Defendant Hallowell Industries, Inc. ("Hallowell") is a Delaware corporation.

24. Gray owns and/or controls all of these corporate defendants and has been an officer and/or director of all of them. As such, he has prevented Summit and ESP from seeking redress against him and the other defendants for the violations alleged below.

## II.  JURISDICTION AND VENUE

25. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334 insofar as this is a civil proceeding arising in or related to a case under 11 U.S.C. §101 et seq.

26. This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F).

27. Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

4

III. <u>GRAY'S FIFTEEN YEARS OF LOOTING OF CHARIOT, SUMMIT, AND ESP</u>

28. For the past fifteen years, at least, Gray has used his position of control of Chariot, Summit and ESP to loot those companies systematically. He has done this through a series of self-dealing transactions, including but not limited to the transfer to himself of ESP and other valuable corporate assets, in exchange for little or no consideration; the payment of enormous "fees" to himself or to companies he owns or controls, in exchange for little or no services; the illegal payment by ESP of multi-million-dollar "dividends" to Gray-owned companies, in violation of various court orders; the use of funds he has improperly diverted from ESP or Chariot to pursue corporate opportunities for himself that rightfully belonged to those companies; and the misappropriation of funds paid over to Gray for purpose of paying tax obligations. Gray's actions were fraudulent and in violation of Gray's fiduciary duties, and deprived the Debtor, Summit, of millions of dollars in lost cash and opportunities.

A. <u>Gray's Transfer of ESP To Himself</u>

29. Until June of 1995, Chariot owned 92% of ESP, a successful and profitable manufacturer of replacement windows and doors for the home construction industry. ESP was Chariot's sole operating subsidiary and, through the payment of so-called "management fees", provided all, or substantially all, of Chariot's revenues.

30. On or about June 30, 1995, Gray caused Chariot to transfer all its ESP stock to HomeStar, in exchange for a

5

promissory_note in the amount of $15 million issued by Hallowell (the "Hallowell Note"). HomeStar and Hallowell were both wholly owned or controlled by Gray. Thus, the transfer of ESP was a self-dealing transaction by Gray, a fiduciary of Chariot.

31. Despite his self-evident conflict of interest, Gray alone set all the terms of this transaction, without the advice or consent of anyone else. In fact, Gray signed all the agreements and related documents for all the parties to the transaction, including the merger agreement and the Hallowell Note. Because he was the only Chariot director, there were no other directors to act as a potential check on Gray's actions; and Gray did not submit the transaction to a vote of all the shareholders. Instead, he caused his wholly-owned holding company Plastics to execute a written consent to the transaction, as Chariot's majority shareholder. Gray also did not hire any financial consultant or advisor to negotiate the transaction on behalf of Chariot, or to advise him or the company as to its fairness; nor did he seek to sell ESP to the highest bidder, despite the fact that, during the preceding year, he had received offers for ESP which, if accepted, would have provided far more than $15 million, in cash, to Chariot.

32. Five weeks after the transfer of ESP, Gray sent a written notice to Chariot's public stockholders, informing them that ESP had already been "sold". This belated notice was not only untimely, it was also false and misleading, because it did not disclose that Gray owned both HomeStar and Hallowell, and that this transaction was therefore a self-dealing transaction by Gray. Nor did it advise

6

the shareholders that Hallowell had no business, no income, and no assets, and, consequently, could never pay the Hallowell Note. The notice also did not disclose that on the same day as the transfer of ESP, June 30, 1995, HomeStar had merged into ESP, with ESP the surviving entity.

33. The terms of the Hallowell Note also bore no relationship to those that would have been negotiated in an arm's-length transaction. The note was unsecured, and provided no recourse against HomeStar or Harcar, the companies that actually acquired ESP and its assets. The note required no payments at all until 1997, at which time payments of interest only would be due until the year 2000. This put off, for years into the future, Hallowell's inevitable default on the Hallowell Note.

34. By causing Chariot to accept such worthless consideration for its operating subsidiary, without any recourse against the actual purchaser of ESP or against ESP's assets, Gray deliberately defrauded Chariot and its successor Summit.

35. Subsequent events have confirmed that the Hallowell note is worthless. As soon as it was delivered to Chariot, Gray caused $12 million of that note to be "dividended out" to Plastics, and for payments on that portion of the note to be "suspended". There have been no payments at all under the remaining $3 million portion of the note either. In short, neither Chariot nor Summit has received anything of value in payment under the Hallowell Note.

36. ESP was, and continues to be, a highly profitable company. By transferring ESP to himself, Gray has deprived Summit

7

and its creditors of the profits and corporate opportunities generated by ESP, all of which have been diverted to Gray's personal benefit.

### B. Gray's Looting of Chariot Group, Summit and ESP

#### 1. Looting that Preceded the Transfer of ESP

37.  Gray's theft of ESP followed four years of his looting of ESP and its parent, Chariot.

38.  Before starting his campaign of looting, Gray systematically eliminated all potential sources of opposition from other directors and the public shareholders. Until 1990, Chariot had been registered with the Securities and Exchange Commission and its shares were listed on the American Stock Exchange. As a result, Chariot was required to comply with SEC and Exchange rules concerning disclosure of financial information and was subject to various requirements concerning the composition of its board of directors.

39.  In 1990, Gray caused Chariot's stock to be de-listed and de-registered, and all the other Chariot directors either resigned or were dismissed. Thereafter, Gray was Chariot's sole director, and he did not publicly disclose any information about Chariot's business operations or financial condition. Chariot had failed to pay any dividends to its stockholders since at least 1990. As a result of all these factors, the market price of Chariot's stock plummeted and its shares traded only sporadically.

40.  While Chariot's public stockholders suffered, Gray caused that company to pay out millions of dollars to himself and to

8

various companies he owned and/or controlled, without any consideration. With no other directors to stand in his way, and with no requirement that financial results be regularly disclosed to the public, Gray was able to loot Chariot secretly and unopposed. The funds he looted from Chariot originated with ESP, which was Chariot's only substantial source of revenue.

41.  In 1991, in addition to Gray's $200,000 salary, Chariot paid "management fees" totaling at least $2,168,813 to Holdings, including the write-off of at least $1,230,813 in loans or advances previously paid out to Gray and Holdings, which they were capable of repaying. Holdings had provided no services to Chariot or ESP.

42.  In 1992, in addition to Gray's $200,000 salary, Chariot paid various "fees" totaling at least $3,064,000 to Holdings, which had provided no services to Chariot. Included in this payment was $2 million designated as Holdings' "share" of profits earned on the trading of shares of Synalloy Corporation.  Because Gray had been a director of Synalloy when these profits were earned, Synalloy sued Chariot and Gray to recover the short-swing profits on those transactions. Chariot paid all the costs of the defense of that action, and also paid the entire cost of the judgment obtained by Synalloy. Nevertheless, neither Gray nor Holdings ever returned any part of the $2 million "profit sharing" payment they had received from Chariot in 1992 in connection with those transactions; nor did Gray pay any portion of the fees, expenses or damages incurred by Chariot in that action.

43.  In 1993, in addition to Gray's $200,000 salary, Chariot

9

paid "management fees" of at least $890,000 to Holdings, which had provided no services to Chariot or ESP.

44.    In 1994, in addition to Gray's $200,000 salary, Chariot paid at least $659,140 in "management fees" to Holdings, and paid another $168,100 in fees to RAC. Neither of those companies had provided any services to Chariot or ESP.

45.    In 1995, in addition to Gray's $200,000 salary, Chariot paid $822,350 in "management fees" to RAC. RAC had provided no services to Chariot or ESP.

46.    There have never been any written or oral agreements providing for payment of any of the above fees, or requiring those entities to perform any services for Chariot, Summit or ESP; and, in fact, neither Holdings, RAC nor Investors performed any services in exchange for those payments. In deposition testimony, James Kelly, Chariot's president and ESP's most senior executive, could not identify anything that any of those companies had ever done for Chariot or ESP, and could not even identify anyone who had ever worked for Holdings, RAC or Investors.

47.    Nor did Gray, himself, ever do anything for Chariot or ESP that could possibly have justified the payment of such fees. Gray provided no services to those companies. Not only did he not have an office at any company facility, he never even paid a visit. Although Gray has claimed that he spent time looking for possible acquisitions, neither Chariot nor ESP has made a single acquisition since at least 1991. Rather, Gray has usurped all acquisition proposals for himself. Thus, when the possibility arose in 1995

10

that Chariot might acquire HomeStar Industries, Inc., Gray took that company for himself and, although he used money he obtained from Chariot to make the purchase, he did not offer this acquisition to Chariot.

48.  Gray authorized all these fees and payments unilaterally, without any checks or controls imposed by Chariot or ESP, and in breach of his fiduciary duties. Gray also fraudulently concealed them from Chariot's public shareholders.

### 2. Continued Looting After the Transfer of ESP

49.  As noted above, in about June of 1995, Gray caused Chariot to transfer ESP, its operating subsidiary, to Harcar. After that transfer, Gray continued to extract millions of dollars in improper payments from ESP. No longer did the funds pass through Chariot (or Summit). Instead, Gray caused ESP to start paying exorbitant "management fees" to Management, a new company he established shortly after the transfer of ESP. Management then funnelled millions of dollars, which had originated with ESP, to other Gray-owned companies, including RAC and Investors, which performed no services for ESP. Gray also caused ESP to declare enormous "dividends" to Harcar and other companies he owned. Such dividends were illegal and violated various court orders.

### a. Fees

50.  In 1996, Management wire transferred, from funds it had received from ESP, at least $300,000 to RAC. RAC provided no services to ESP.

51.  In 1997, Management wire transferred, from funds it had

11

received from ESP, at least $1.6 million to RAC and an additional $505,000 to another Gray-owned company, defendant Investors. Neither of those companies provided any services to ESP.

52. In his deposition testimony, James Kelly could identify no services RAC or Investors had provided, and could not identify anyone who worked for either of those companies.

53. There were no agreements requiring the payment of these fees to RAC or Investors, or requiring either of them to provide services to ESP.

54. Gray has extracted similar payments, in amounts presently unknown, in 1998 and 1999, in exchange for no services, and undoubtedly plans to continue this pattern of conduct in the future.

55. Gray himself has provided no services to any of these companies that would justify any of these payments. In particular, Gray has not arranged any acquisitions for ESP. To the contrary, When the possibility arose for acquiring Riversides and Jenkins, two companies in the same industry as ESP, Gray once again took those opportunities for himself, and once again used ESP's money to do it.

### b. "Dividends"

56. In addition to these "fees", in 1996 Gray caused ESP to declare and pay out $1.54 million in "dividends", of which $1,486,559 were paid to "related parties", amounts which were far greater than it had paid in dividends in prior years. Some of these dividends were paid to Management, over and above management

12

fees ESP had paid to that company, and even though Management did not purport to own any shares of ESP.

57.   In 1997, ESP again paid out a total of at least $3 million in "dividends", $2.2 million of which went to Harcar, and $800,000 of which went to Management, over and above the regular monthly management fees ESP had paid to that company.

58.   ESP probably paid out additional "dividends" to Gray or his companies in 1998 and 1999, in amounts presently unknown.

59.   The $2.2 million "dividend" paid to Harcar, and in all likelihood other fees and dividends extracted by Gray from ESP, were financed by ESP's lending bank, Fleet Capital Corporation, using ESP's line of credit. In addition, Gray also caused ESP to authorize other disbursements directly from Fleet Bank, to Gray or to companies owned by Gray, in amounts presently unknown.  Those disbursements were charged to ESP's credit line with Fleet Bank, and represent additional acts of waste, mismanagement and breach of fiduciary duty by Gray.

60.   These "dividends" constitute a further waste and misappropriation of corporate assets, in breach of Gray's fiduciary duties. They were not properly paid dividends, because the recipients of these payments were not the shareholders of ESP and, as discussed below, such payments had been prohibited by court order.

### c. Injury to Summit

61.   These "fees" and "dividends" from ESP, both before and after its purported transfer to Harcar, have caused direct injury

13

00109

to Summit. Summit is, and continues to be, the rightful owner of ESP, and therefore seeks rescission of the transfer of ESP in this action. In fact, as discussed below, in order to preserve Summit's rights and interests pending the return of ESP, in 1995 and again in 1997 the New York State Supreme Court (the "New York Court") enjoined Gray and all companies he owns or controls from taking extraordinary payments from ESP, directly or indirectly, and from taking any actions predicated on the validity of that transfer, such as the payment of "dividends" to entities whose status as shareholders is based on the validity of the transfer of ESP.

### d. Looting of Summit

62. Finally, in 1996, Gray caused Summit, a shell corporation with no business, to pay at least $445,000 in "management fees" to C.L.R., RAC and to Gray personally, none of which performed any services for Summit.

### C. Gray's Thefts of Summit's Assets and Business

63. Prior to November, 1995, Chariot (and, after the Merger, its successor Summit) had provided management services to ESP, and, from time to time, to other companies as well. In exchange, Chariot received management fees totalling hundreds of thousands, and sometimes millions, of dollars per year.

64. Shortly after the transfer of ESP and the Merger, on September 19, 1995, Gray incorporated a new company, defendant Management; and within a few weeks the personnel who had up to that point been working for Chariot and Summit were transferred to the employ of Management, where they continued to perform exactly the

14

same functions as before.

65.    The effect of this maneuver was to divert to Management at least $600,000 per year in management fees that were previously received by Chariot. Through October, 1995, Chariot had received monthly management fees from ESP in amounts ranging from $20,000 to $30,000, and from ESP's subsidiary, BFR, in amounts ranging from $11,000 to $28,000. But in November, 1995, ESP and BFR started paying these fees to Management, and they have continued to do so ever since. In 1996 and 1997, the total amounts paid to Management were at least $600,000 per year, and payments of this magnitude continue to the present.

66.    In addition, at the time of the transfer of Summit's management operations, Gray also caused Summit to transfer more than $1 million of retained earnings and other assets to Management.

67.    Neither Chariot nor Summit received any consideration for the transfer to Management of these assets and the right to receive these lucrative management fees. There was no business purpose for the creation of Management, or the transfer of Chariot's management operations to Management. The only reasons for the transfer were to remove this income from Summit and thereby attempt to put it beyond the reach of Summit's creditors and Chariot's public shareholders, and to facilitate further looting by Gray.

### D. Gray's Thefts of Corporate Opportunities

68.    Gray and other defendants, at his direction and control, and for his benefit, have regularly allowed other entities to reap

15

00111

the benefits of opportunities that properly belonged to Summit.

69. Since the transfer of ESP, Gray has deprived ESP and Summit of repeated corporate opportunities by having other corporate defendants, owned by him, commence business in the exact same industries as that in which ESP and Chariot had been operating, and he has funded the acquisition of those new businesses with cash diverted from ESP, and by misusing ESP's credit facilities.

70. Gray, Harcar and other defendants used millions of dollars improperly extracted from ESP, either directly or by utilizing its lines of credit, to pay for their purchase of other corporations and assets, including the stock and/or assets of defendants Riverside, Rivco Realty, Jenkins, Jenkins Realty and Rich Realty. Both Riverside and Jenkins are, like ESP, in the business of manufacturing windows and doors for the home construction market. ESP, whose funds were used for these purchases, had the capability of acquiring them in its own name. Accordingly, the purchases of Riverside and Jenkins were corporate opportunities that Gray misappropriated from ESP for his own personal benefit.

71. Gray also used funds obtained from ESP, or its credit facilities, to purchase real estate and other assets that were used by BFR, Riverside and Jenkins in their operations, and put that real estate into the name of Rich Realty, Rivco Realty, and Jenkins Realty, respectively. ESP, whose funds were used for the purchase, had the capability of acquiring them in its own name. Accordingly,

16

those transactions also represented corporate opportunities Gray misappropriated from ESP, using ESP's own money.

72.   The Rich Realty, Riverside, and Jenkins acquisitions came to the attention of Gray in his capacity as controlling shareholder and manager of ESP, and those companies were engaged in the same business as ESP, the manufacture of windows and doors. ESP was financially capable of making these acquisitions for itself, as demonstrated by the fact that its funds, and its lines of credit, were actually used to make these acquisitions.

73.   These transactions constituted usurpations of corporate opportunities rightfully belonging to ESP and Summit. In addition, ESP and Summit are entitled to imposition of a constructive trust upon these assets because they were acquired with their funds and credit facilities.

74.   Subsequent to these acquisitions, Gray caused Jenkins and/or Jenkins Realty to pay management fees to Jenkins Management, and he also caused Riverside and/or Rivco Realty to pay management fees to Rivco Management, in amounts presently unknown.   These management services were performed by many, if not all, of the same personnel who had worked for Summit prior to August of 1995.   The diversion of this management business, and of the fees paid and payable for such management services, was a further usurpation of corporate opportunities belonging to Summit.

E.   Gray's Misappropriation of Chariot's Tax Payments and
His Improper Attempts to Shift the Resulting
Tax Liabilities to ESP

75.   Chariot was a privately-owned company until 1986, when

17

Gray took it public. During the previous three year period (1984-86), Chariot (then known as Sandusky Plastics) was a wholly owned subsidiary of Plastics and Holdings, and those three companies filed consolidated federal tax returns.

76. During 1984-86, these companies determined that their consolidated federal tax liabilities were more than $1.6 million; and Chariot remitted that amount, in the aggregate, to Holdings, to be paid over to the IRS to cover those obligations.

77. But Gray did not cause Holdings to pay any of this money over to the IRS; nor did he return any of it to Chariot. Instead, he caused Holdings to file returns falsely representing that no taxes were due, and he kept Chariot's $1.6 million payment for himself. The IRS later determined that Holdings' consolidated tax returns for 1984-86 were fraudulent, and in 1994 Gray signed a consent judgment on behalf of Holdings in the amount of $6 million, which included fraud penalties and interest for a ten year period.

78. Despite signing the consent judgment, Gray and Holdings refused to make any of the required payments to the IRS. As a result, in 1995 the IRS levied against Holdings, Plastics and Chariot. Eventually, the IRS filed claims against Summit (as successor to Chariot), Plastics and ESP in an action in federal district court in New York, seeking to collect from those companies on its judgment against Holdings, with interest. In December of 1998 the federal court granted summary judgment to the IRS in the amount of $6.9 million against Plastics and Summit, because they had been part of the consolidated tax filing group with Holdings

18

and were therefore jointly and severally liable for the taxes owed by that group. In addition, the court set February, 1999, for a trial to determine whether judgment should also be entered against ESP. ESP was not a part of that consolidated tax filing group, because it had not been acquired by Chariot until after 1986. Thus, ESP had no statutory obligation to share in the payment of taxes owed by Holdings for 1984-86, or in the payments required by the consent judgment.

79.    Seeking to evade his own personal responsibility for these obligations, Gray is attempting to foist them off on ESP. Once again ignoring his own inherent and obvious conflicts of interest, Gray has arranged for all of his entities to be represented by the same counsel in the IRS proceedings, and, as a result, has prevented Summit and ESP from asserting any cross-claims for indemnity or contribution against him or Holdings. By failing to retain independent counsel for ESP and Summit, and by preventing them from asserting their rights to indemnity and/or contribution, Gray has again breached his fiduciary duty to ESP, Chariot and Chariot's public stockholders.

80.    Moreover, Gray, negotiating improperly on ESP's behalf despite his conflict of interest, has reportedly reached an agreement with the IRS that would require all payments with respect to this tax liability to come from ESP, without providing for any recourse by ESP against Gray or Holdings.

81.    Because this tax liability was created entirely by the misconduct of Gray and Holdings, defendants should be enjoined from

19

funding any settlement with the IRS out of the assets or income of ESP; and Summit and ESP are entitled to indemnification or contribution from Gray and Holdings for any payments the court may force them to make to the IRS as a result of the wrongdoing of Gray and Holdings.

## IV.  PRIOR LITIGATION

82.  This is not the first time the conduct of Gray and the other defendants has been called into question and, in fact, it has previously been found to be wrongful.

83.  In 1995, a shareholder of Chariot commenced a derivative action in New York State Supreme Court (the "New York Court") alleging that wrongful payments by Chariot and orchestrated by Gray, which aggregated over $7 million between 1991 and 1994, constituted looting of the company and that, unless restrained, Gray would continue to loot the company in the future.  The complaint sought return of those payments and a preliminary and permanent injunction barring such payments in the future.  Other stockholders brought similar lawsuits in Delaware Chancery Court.

84.  Shortly thereafter, after the transfer of ESP and the Chariot-Summit Merger were publicly disclosed, the same Chariot shareholder commenced a second action in the New York Court, alleging that both of those transactions were in breach of Gray's fiduciary duties to Chariot and its shareholders.

85.  On August 9, 1995, the New York Court signed an order to show cause barring all payments to Gray by Chariot and its subsidiaries (other than routine executive compensation, to be

20

00116

fixed by the Court), and barring all transfers of the stock or assets of ESP and its subsidiaries, pending the hearing on the plaintiff's preliminary injunction motion. On August 17, 1995, the New York Court signed a temporary restraining order (the "TRO"), which provided that:

> Pending the hearing of these motions, defendants, and all corporations or other entities controlled by them, shall be restrained and enjoined from consummating the sale, assignment, transfer, encumbrance or other disposition of the stock and/or assets of Chariot Group, Inc. or the operating companies, Energy Saving Products Corp. and B.F. Rich Company (the "Operating Companies") and from disbursing and monies to Richard Gray or any of the other corporate defendants, directly or indirectly, from the Operating Companies or any other companies controlled by defendants, and/or from any loan or other financing transaction secured by the stock or assets of the Operating Companies or the Chariot Group, Inc., other than for payments of monies due and payable regularly and in the ordinary course of business.

86. At the hearing of the Motion on September 14, 1995, the Court orally extended the TRO until further notice.

87. On October 21, 1996, the New York Court issued an opinion granting a preliminary injunction, finding that

> Plaintiff has amply demonstrated a likelihood of success on the merits of [his] claims against Gray for corporate waste and mismanagement. The evidence of defalcations by Gray is overwhelming and, for the most part, completely uncontradicted, i.e. the payment of exorbitant management fees to Chariot Holdings; the forgiveness of loans to that corporation and personal loans to Gray .... (Op. at 3, 12-13).

88. The New York Court entered its preliminary injunction order (the "Preliminary Injunction") in January of 1997, which

21

states, in part, that it is:

> ORDERED that defendant Gray, directly or through any of the defendant corporations herein or any corporation which Gray owns or controls, directly or indirectly, shall be and hereby is restrained and enjoined from:
>
> 1.  Selling, assigning, transferring, encumbering or otherwise disposing of the stock or assets of Chariot Group, Inc. or any of the stock or assets of any operating companies owned or controlled by Chariot Group, Inc., including but not limited to B.F. Rich Company and Energy Savings Products, Inc....

89.  The Order also provides that:

> Gray, directly or through any of the defendant corporations herein or any corporation which Gray owns or controls, directly or indirectly, and all of the defendants, shall be and hereby are, restrained and enjoined, during the pendency of Action No. 1 and Action No. 2, from paying or otherwise disbursing moneys to Gray, or to any of the corporate defendants herein, or to any other corporation owned or controlled by Gray, directly or indirectly in the form of loans, fees, or any other type of payment, when such monies are obtained, directly or indirectly from the stock, assets or revenues of either the operating companies owned or controlled or formerly owned and controlled by Chariot Group, namely, Energy Savings Products, Inc., B.F. Rich Company, or of HomeStar, Inc. ... other than payments of monies due and payable regularly and in the ordinary course of business pursuant to agreements in effect prior to the date of this order, including but not limited to reasonable legal fees and disbursements payable pursuant to any applicable indemnification provision of the corporation's by-laws or otherwise....

90.  Although the Preliminary Injunction barred extraordinary payments to Gray, or from the taking of any action predicated upon the validity of the transfer of ESP, as described above Gray has done both. Accordingly, he has been held in contempt of court.

22

00118

91.  In an opinion dated October 16, 1998, the New York Court found Gray and RAC in contempt of the Preliminary Injunction, and its order entered on January 8, 1999, specified that, to purge their contempt, they would have to repay $2.2 million to ESP and $2.1 million to Management within ten days.

92.  To date, neither Gray nor RAC has returned any part of the $2.2 million they took from ESP. Instead, Gray claims that he has deposited in escrow, with ESP's attorneys, a deed to certain New Hampshire real estate owned by Rivco Realty, Inc. This arrangement allows Gray to keep control of these assets for himself, which is a violation of the contempt order. Moreover, the value of the property, net of its mortgage, is far less than $2.2 million, and the purge agreement contains numerous loopholes which would allow Gray to avoid his obligations.

93.  Gray also represented to the New York Court that he has purged the remainder of the contempt order by depositing $2.1 million into a Chariot Management bank account. However, these funds were not deposited into Chariot Management's regular bank account but, instead, into an account at PNC Bank in Delaware over which Gray has exclusive control. This maneuver prevented Chariot Management from using those funds for regular business purposes and facilitated withdrawal of the funds by Gray without anyone else knowing about it. In fact, Gray has already dissipated at least $120,000 from this account to pay business expenses of his other companies.

94.  Thus, Gray and RAC have not purged their contempt, and a

23

00119

second contempt motion was filed, this time seeking the incarceration of Gray until such time as the entire $4.3 million is returned to ESP, oral argument on that motion took place an September 14, 1999, and the motion is currently sub judice.

<u>V. CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

95. Plaintiff incorporates by reference paragraphs 1 through 94.

96. Plaintiff asserts this cause of action against defendants Gray, ESP, BFR, Harcar, Hallowell, Plastics and Holdings.

97. Gray's transfer of ESP from Chariot, in exchange for a worthless promissory note, is void pursuant to 8 Del. C. §144, because it was a transaction between Chariot and a company owned or controlled by Gray, who was the sole director and chief executive officer of Chariot. No disinterested directors or shareholders approved this transaction, and it was not fair to Chariot.

98. In addition, the transfer of ESP constituted unfair self-dealing, waste, misappropriation of corporate assets, and a breach of fiduciary duty owed by Gray, as sole director and ultimate controlling shareholder of Chariot, and by Holdings and Plastics, as controlling shareholders of Chariot, to Chariot and its successor Summit.

99. Defendant ESP is the successor, by merger, to HomeStar, which acquired Chariot's interest in ESP. Harcar was the parent of HomeStar at the time of the transfer of ESP, and is now the owner of Chariot's interest in ESP. Hallowell, whose worthless $15

24

million promissory note provided the "consideration" for this transaction, is also a party to the transfer of ESP. Harcar, Hallowell and HomeStar are alter egos of Gray and knowingly participated and conspired in, and aided and abetted, the fraudulent and improper transfer of ESP.

100. As parties to the transfer of ESP, ESP, BFR and Harcar are also indispensable parties with respect to this claim, and their joinder is necessary to enable the Court to render complete relief, including rescission.

101. Pursuant to a preliminary injunction entered by the New York Court, defendants have been barred from taking any action to implement the transfer of ESP, or from taking any action based on the validity of that transfer. The injunction was entered for the purpose of maintaining the status quo so that the transfer could eventually be rescinded.

102. Plaintiff is entitled to an order rescinding the transfer and imposing a constructive trust on all payments, fees and distributions from ESP subsequent to the transfer.

<u>SECOND CAUSE OF ACTION</u>

103. Plaintiff incorporates by reference paragraphs 1 through 94.

104. Plaintiff asserts this cause of action against Gray.

105. As chairman and sole director of Chariot and Summit, Gray owed fiduciary duties to those entities, including but not limited to the duty not to take actions detrimental to ESP, which would injure Chariot or Summit, as owner of ESP.

25

106. The conduct of Gray as aforesaid constitutes a breach of his fiduciary duties.

### THIRD CAUSE OF ACTION

107. Plaintiff incorporates by reference paragraphs 1 through 94.

108. Plaintiff asserts this cause of action against defendants Gray, Holdings, Plastics, RAC, Investors, Harcar, Management and C.L.R.

109. As described above, since 1991, Gray has caused Chariot, ESP and BFR to make millions of dollars in payments to himself and to companies he owns or controls, typically in the form of management fees, consulting fees, bonuses or "dividends", in exchange for little or no services.

110. Extraordinary payments made by ESP or BFR are expressly barred by the TRO and the Preliminary Injunction. Because Management receives virtually all its revenue from ESP and BFR, extraordinary payments by Management to Gray or to other Gray-owned entities constitute a diversion of ESP's funds and are also prohibited by the TRO and the Preliminary Injunction.

111. All such payments from Chariot to or for the benefit of Gray prior to the Merger are void pursuant to 8 Del. C. §144, because they constitute transactions between the paying corporation and Gray, who was a director and/or officer of the corporation. No disinterested directors or shareholders approved any of these transactions, and none of them was fair to Chariot.

112. In addition, all fees, bonuses and dividends that were

26

paid by Chariot to these defendants, directly or indirectly, prior to the Merger constitute fraud, unfair self-dealing, waste, misappropriation of corporate assets, and a breach of fiduciary duty owed by Gray, Holdings and Plastics to Chariot and its successor Summit; and such fees, bonuses and dividends paid by ESP and BFR after the Merger constitute fraud, unfair self-dealing, waste, misappropriation of corporate assets, and a breach of fiduciary duty owed by Gray and Harcar to Summit, the rightful owner of ESP and BFR, as well as to ESP and BFR directly. Because the New York Court has enjoined implementation of the transfer of ESP and has forbidden defendants from taking any action predicated upon the validity of that transfer, plaintiff has a present equitable interest in ESP.

113. Finally, the management fees and other payments Gray caused Summit to pay to C.L.R. and RAC and to himself directly in 1996 are void pursuant to 8 U.S.C. §144, and constitute unfair self-dealing and waste, for all the same reasons set forth above with respect to the fees and bonuses paid by Chariot and ESP.

<u>FOURTH CAUSE OF ACTION</u>

114. Plaintiff incorporates by reference paragraphs 1 through 94.

115. Plaintiff asserts this cause of action against all defendants.

116. Plaintiff is entitled to an accounting of all transfers and other transactions of value by, on behalf of or otherwise to the detriment of Summit to and/or to the benefit of any of the

27

00123

defendants (the "Transfers").

## FIFTH CAUSE OF ACTION

117. Plaintiff incorporates by reference Paragraphs 1 through 94.

118. Plaintiff asserts this cause of action against all defendants.

119. Some or all of the Transfers by or otherwise detrimental to Summit may be void or voidable pursuant to 11 U.S.C. §§544, 547 and 548 (the "Avoidance Provisions").

120. To the extent Transfers are void or voidable pursuant to Avoidance Provisions, the property transferred must be returned to Summit.

## SIXTH CAUSE OF ACTION

121. Plaintiff incorporates by reference paragraphs 1 through 94.

122. Plaintiff asserts this cause of action against Gray, Holdings, Plastics and Management.

123. As described above, in the fall of 1995 Gray caused Summit to transfer to Management its lucrative management functions, together with the personnel who performed those functions, and related assets. Although this management business had earned Summit, and its predecessor Chariot, hundreds of thousands of dollars per year, Summit received no consideration whatsoever for the transfer of this business and assets to Management.

124. This transfer was void pursuant to 8 Del. C. §144,

28

because it was a self-dealing transaction between Summit and Gray, who owned and/or controlled Management and was its chief executive officer, and who was also Summit's sole director and the chief executive officer of the corporation. No disinterested directors or shareholders approved any of these transactions; and this transfer was not fair to Summit.

125. In addition, the transfer of Summit's businesses and assets to Management constitutes fraud, unfair self-dealing, waste, misappropriation of corporate assets, and a breach of fiduciary duty to Summit by Gray, Summit's controlling shareholder, sole director and chief executive officer.

126. Management, the recipient and beneficiary of this illegal and improper transfer, is an alter ego of Gray, and knowingly participated and conspired in, and aided and abetted, Gray's misconduct.

### SEVENTH CAUSE OF ACTION

127. Plaintiff incorporates by reference paragraphs 1 through 94.

128. Plaintiff asserts this cause of action against defendants Gray, Harcar, CSC Recovery, Riverside, Rivco Realty, Rivco Management, Rivco Acquisition, Jenkins, Jenkins Realty, Jenkins Management, Jenkins Acquisition, and Rich Realty.

129. As described above, Gray, through Harcar, CSC, RAC, Rivco Acquisition, Jenkins Acquisition and Rich Realty, used funds derived from ESP, or its credit facility, to acquire interests in, or real estate assets to be owned by, Riverside, Rivco Realty, CSC,

29

00125

Jenkins, Jenkins Realty and Rich Realty. In each case, the payout of these funds from ESP served no legitimate business purpose of ESP, constituted illegal and void self-dealing, and violated a preliminary injunction entered by the New York State Supreme Court.

130. Because the New York Court has enjoined implementation of the transfer of ESP and has forbidden defendants from taking any action predicated upon the validity of that transfer, plaintiff has a present equitable interest in ESP. In addition to being entitled to rescission of the transfer of ESP, plaintiff is also entitled to imposition of a constructive trust, in favor of ESP, over all stock and assets acquired by Gray and these other defendants with funds taken, directly or indirectly from ESP or with funds provided from lending institutions using ESP's credit.

131. The Riverside, Jenkins and Rich acquisitions came to the attention of Gray in his capacity as controlling shareholder and manager of ESP, and those companies were engaged in the same business as ESP, the manufacture of windows and doors. ESP was financially capable of making these acquisitions for itself, as demonstrated by the fact that its funds, and its lines of credit, were actually used to make these acquisition.

132. These transactions constituted usurpations of corporate opportunities rightfully belonging to ESP and Summit.

133. Subsequent to these acquisitions, Gray caused Jenkins and/or Jenkins Realty to pay management fees to Jenkins Management, and he also caused Riverside and/or Rivco Realty to pay management fees to Rivco Management, in amounts presently unknown. These

30

management services were performed by many, if not all, of the same personnel who had worked for Summit prior to August of 1995. The diversion of this management business, and of the fees paid and payable for such management services, was a further usurpation of corporate opportunities belonging to Summit.

134. Harcar, CSC, Jenkins Acquisition, Rivco Acquisition and Rivco Realty are alter egos of Gray and knowingly participated and conspired in, and aided and abetted, these violations. Riverside, Rivco Realty, Rivco Acquisition, Jenkins, Jenkins Realty, Jenkins Acquisition, B.F. Rich and Rich Realty were parties to these transactions and are indispensable parties, to enable the Court to grant complete relief, including imposition of a constructive trust and/or a mandatory injunction requiring defendants to transfer these interests to ESP and/or B.F. Rich.

EIGHTH CAUSE OF ACTION

135. Plaintiff incorporates by reference paragraphs 1 through 94.

136. Plaintiff asserts this cause of action against Gray, Plastics and Holdings.

137. Plaintiff is entitled to the return of the $1.6 million in tax payments it made to Holdings with respect to tax payments due for the 1984-86 period. Gray misappropriated those funds and did not remit them to the IRS; nor did he return them to Chariot.

138. Plaintiff is also entitled to an injunction barring Gray and the other defendants from entering into any agreement with the IRS that would require ESP to pay, or contribute to, any settlement

31

of the claims of the IRS.

139. In the event that any court enters judgment against ESP with respect to these tax liabilities, ESP is entitled to indemnification from these defendants for any such judgment; and Summit is entitled to indemnification from these defendants for the judgment already obtained by the IRS against Summit in 1998, as successor to Chariot, in connection with Holdings' non-payment of taxes in 1984-86.

140. In the alternative, plaintiff is entitled to contribution from Holdings and Plastics for their share of this consolidated tax liability, as determined in the parties' tax sharing agreement, and to indemnification from those parties for their entirety of the interest and fraud and negligence penalties, all of which were imposed because of the fraudulent and negligent actions of Richard Gray and Holdings, and which were not attributable to any acts of Summit or its predecessor Chariot.

### No Adequate Remedy at Law

141. Plaintiff does not have an adequate remedy at law for any of the causes of action alleged herein.

WHEREFORE, plaintiff prays for an Order and Judgment as follows:

A.    Rescinding the ESP Transfer.

B.    Imposing a constructive trust, in favor of Summit, on all stock or other assets of ESP, CSC, Riverside, Rivco Realty, Rivco Acquisition, Rivco Management, Jenkins Manufacturing, Jenkins Realty, Jenkins Management, Rich Realty and of any other company

32

that was acquired, directly or indirectly, with funds or credit provided by Chariot, ESP or Summit, and directing Gray, Harcar, CSC and all other defendants to transfer all such stock and assets to Summit.

C.    Requiring Gray and the other defendants to account to Summit for all profits, dividends, fees, management fees, consulting fees, asset transfers, or other payments, benefits or distributions of any kind which they have received, directly or indirectly, from Chariot, Summit, ESP and BFR, and from any other company acquired in whole or in part, directly or indirectly, with funds or credit provided by ESP, Chariot or Summit; and/or to pay damages therefor.

D.    Enjoining Gray, Holdings and Plastics from paying all or any part of any tax liability to the IRS from the funds of Summit, ESP or BFR, or from credit provided by Summit, ESP of BFR, directly or indirectly, and/or to indemnity Summit and ESP for all damages awarded or which may be awarded against them in the IRS Proceeding.

E.    Awarding damages for Gray's breach of his fiduciary duties, in an amount to be determined at trial, but in no event less than $20,000,000.

F.    Granting such other and further relief as the Court deems just and proper, including an award of costs and attorneys' fees

33

and expenses.

The Official Committee of Unsecured
Creditors.

By: _H. Adam Prussin_

H. Adam Prussin
SILVERMAN, HARNES, HARNES,
    PRUSSIN & KELLER
International Plaza
750 Lexington Avenue
Now York, N.Y.   10022

Special Litigation co-Counsel to
Official   Committee   of   Unsecured
    Creditors

By: _Todd C. Schiltz_ BG

Todd C. Schiltz (Bar # 3253)
WOLF, BLOCK, SCHORR and
    SOLIS-COHEN LLP
One Rodney Square, Suite 300
920 King Street
Wilmington, DE 19801

Counsel for Official Committee of
    Unsecured Creditors

34

00130

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE



In Re:                                    :

    SUMMIT METALS, INC.,        :        CHAPTER 11

          Debtor.            :        BANKRUPTCY NO. 98-02460MFW

**ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR ORDER AUTHORIZING
THE COMMITTEE TO PROSECUTE ACTIONS OF THE ESTATE
AGAINST RICHARD E. GRAY AND GRAY ENTITIES**

AND NOW, this 21st day of September, 1999, upon consideration of the Motion of the

Official Committee of Unsecured Creditors (the "Committee") for Order Authorizing the

Committee to Prosecute Actions of the Estate Against Richard E. Gray and Gray Entities (the

"Motion"), it is hereby

ORDERED that the Motion is granted; and it is

FURTHER ORDERED that the Committee alone is authorized to prosecute actions of the

Debtor's estate against Richard E. Gray and the Gray Entities (as defined in the Motion) and is

DSB:651275.1

00132

authorized to act on behalf of the Debtor in proceedings to recover property of the Debtor's estate from Gray and the Gray Entities.

BY THE COURT:

_____

MARY F. WALRATH,
UNITED STATES BANKRUPTCY JUDGE

Dated: Sept. 21 , 1999

CERTIFICATE OF SERVICE - I Certify
That I mailed by First - Class Mail
a Copy of this Document on: 9-27-99

TO: B. Grohsgal, Esq.

DSB:651275.1

-2-

Movant to send copies to all
parties and file certificate
of service with the court.

TOTAL P.38

00133

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2004 AUG -5  PM 3: 31

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| SUMMIT METALS, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| SUMMIT METALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| RICHARD E. GRAY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Chapter 11

Case No. 98-2870

Civil Action No. 00-387 (KAJ)

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Todd C. Schiltz, Esquire, Wolf Block Schorr & Solis-Cohen, 1100 N. Market Street –
#1001, Wilmington, Delaware 19801; Counsel for Plaintiff.
     Of Counsel:  H. Adam Prussin, Esquire, Pomerantz Haudek Block Grossman &
     Gross LLP, New York, New York.

Richard H. Cross, Esquire, Cross & Simon, LLC, 913 N. Market Street – #1001,
Wilmington, Delaware 19801; Counsel for Defendants Riverside Millwork Co., Inc. and
Jenkins Manufacturing Co., Inc.

Mr. Richard Gray, P. O. Box 182, Keene, New York 12942; Defendant *pro se*.

August 6, 2004
Wilmington, Delaware


EXHIBIT



JORDAN, District Judge

### I.    Introduction

This case began as an adversary proceeding in the United States Bankruptcy Court for the District of Delaware. On October 29, 1999, the Official Committee of Unsecured Creditors (the "Committee") filed a complaint on behalf of the plaintiff, Summit Metals Inc. ("Summit" or the "Company"), to recover property from Richard E. Gray ("Gray"), Summit's controlling shareholder and sole director, and from Gray's affiliated companies (the "Gray Entities").[1]  In April of 2000, the case was transferred to this Court. (D.I. 1.)

The amended complaint alleges that Gray, acting as a director and controlling shareholder of  Summit, breached his fiduciary duty to Summit and to its predecessor corporation, The Chariot Group, Inc. ("Chariot"), and to Chariot's predecessor corporation, Sandusky Plastics, Inc. ("Sandusky Plastics"), by engaging in unfair and

---

[1]B.F. Rich Co., Inc. ("B.F. Rich"), Chariot Holdings Ltd. ("Chariot Holdings"; n/k/a CHH Holdings, Ltd.), Chariot Plastics, Inc. ("Chariot Plastics"), Chariot Investors, Inc., Chariot Management, Inc. ("Chariot Management"), CSC Recovery Corporation; ("CSC Recovery"), Hallowell Industries, Inc. ("Hallowell"), Harcar, Inc. ("Harcar"), Jenkins Acquisition, Inc. ("Jenkins Acquisition"), Jenkins Realty, Inc. ("Jenkins Realty"), Jenkins Management, Inc. ("Jenkins Management"), Jenkins Manufacturing, Inc. ("Jenkins"), Rich Realty Inc. ("Rich Realty"), Rivco Inc. ("Rivco"; n/k/a Riverside Millwork Co., Inc.), Rivco Acquisition Corporation, Inc. ("Rivco Acquisition"), Rivco Realty, Inc. ("Rivco Realty"), Rivco Management, Inc. ("Rivco Management"), and VDC Recovery Corporation ("VDC Recovery Corp."; n/k/a RAC Investors).

Defendant B.F. Rich has been dismissed as a defendant in this case.  (D.I. 191.) Summit acknowledged at trial that it has not sought any relief from defendant Rich Realty because "there's nothing that indicates ... [that] Mr. Richard Gray owns an interest in Rich Realty. ... Based on that, we are willing to go forward and stipulate that [Rich Realty Inc.] be removed.." (January 13, 2004 Trial Transcript ["Trial Tran."] at 74-75.)

1

fraudulent self-dealing transactions that enriched both Gray and the Gray Entities at the

expense of the Company. Specifically, the complaint alleges that Gray:

> (i) looted Chariot by causing it to pay more than $7.7 million in fraudulent "management fees" and "consulting fees" to various companies Gray owns and controls, in exchange for no services;
>
> (ii) caused Chariot to sell the controlling stock interest Chariot held in Energy Saving Products, Inc. ("ESP") to defendant Harcar, Inc., another company Gray owns and controls, in exchange for a worthless unsecured promissory note issued by a shell corporation;
>
> (iii) usurped corporate opportunities belonging to Summit by acquiring, for himself, ownership in defendants Rivco and Jenkins, two companies that were in the same line of business as Summit, with funds belonging to Summit; and
>
> (iv) misappropriated $1.6 million that Sandusky Plastics had entrusted to him for the payment of federal income taxes, and instead filed fraudulent consolidated tax returns that ultimately resulted in the entry of a judgment, in favor of the Internal Revenue Service ("IRS"), against Summit in excess of $9 million.

(D.I. 211 at 2-3; D.I. 189.)

Summit seeks the following equitable relief in this action: (a) an order rescinding

the purported sale of ESP and directing Gray and the Gray Entities to transfer all shares

of ESP stock they own or control to Summit;[2] (b) an order imposing a constructive trust

---

[2]On August 20, 2003, I entered a Default Judgment and Order against Harcar, the entity which purports to own ESP, for failing to retain counsel. (D.I. 181.) The Order directs Harcar to transfer the stock it owns in ESP to Summit. (*Id.*) According to Summit, Harcar has not yet complied with this Order. (D.I. 211 at 32.) It is not clear why, in light of ESP's bankruptcy and liquidation, Summit is interested in ESP stock. *See infra* n. 59.

Default judgments were also entered against Chariot Holdings, Chariot Plastics, Chariot Investors, Hallowell, Chariot Management, Rivco Realty, Rivco Management, Rivco Acquisition, CSC Recovery, Jenkins Realty, Jenkins Management, and Jenkins Acquisition for failing to retain counsel. (D.I. 181.)

2

on the stock of Rivco and Jenkins, in favor of Summit, and directing Rivco Acquisition and Jenkins Acquisition to transfer such shares to Summit; (c) an order directing the Gray and the Gray Entities to account for all funds that flowed to them from Chariot, or its successor, Summit, or ESP; (d) an order directing Gray to account for all funds that flowed to him from any of the Gray Entities; and (e) an order directing the Gray Entities to account for all funds that they transferred to Gray. (D.I. 211 at 32.)

Summit also seeks the following legal remedies: (a) damages against Gray, Harcar, Hallowell, Chariot Plastics, and Chariot Holdings, jointly and severally, in the amount of $15 million for the sale of ESP; (b) damages against Gray in the amount of $7,772,403, against Chariot Holdings in the amount of $6,781,953, and against VDC Recovery Corp. in the amount of $990,450 for the payment of improper fees from 1991 to 1995; (c) damages in the amount of $4,909,264 against Gray, in the amount of $2,300,00 against Chariot Management, and in the amount of $2,200,000 against Harcar for improper dividends paid by ESP after June, 1995; (d) $2,448,600 against Gray and Chariot Management, jointly and severally, for the diversion of management fees from ESP and B.F. Rich; (e) damages in the amount of $3,164,668 against Gray for diversion of the corporate opportunity to earn management fees from Rivco and Jenkins, and damages against Jenkins Management in the amount of $1,964,668 and against Rivco Management in the amount of $1,200,000; and (f) damages against Gray and Chariot Holdings in the amount of $9 million for the injury caused to Summit by filing fraudulent tax returns. (D.I. 311 at 45-47.)

3

Rivco and Jenkins, the only two defendants represented by counsel at trial,[3] request that to the extent I enter a judgment ordering Gray and the Gray Entities to transfer the stock of Rivco and Jenkins to Summit, "the transfer be conditioned on Summit (or any third party acquiring the stock) not liquidating Rivco or Jenkins without further express authority from this Court and that Summit (or any third party acquiring the stock) take whatever reasonable steps necessary to ensure that Rivco and Jenkins remain as ongoing businesses." (D.I. 214.)

---

[3]Summit states that it is not seeking to hold either of these entities liable for the acts that will be discussed herein. "Rather, Rivco and Jenkins are defendants because Sumit is seeking an order directing other defendants to transfer the stock of Rivco and Jenkins to Summit." (D.I. 211 at 34.)

4

On January 13, 2004, I held a bench trial to address Summit's claims.[4] The following post-trial findings of fact and conclusions of law are issued pursuant to Fed. R. Civ. P. 52(a).[5]

## II.    Findings of Fact

### A.    The Parties

1.    Summit is a Delaware corporation.[6] Gray is Summit's sole director and

*A-M-L*

has served in that capacity since 1990.[7] Defendant Chariot Plastics is currently the sole shareholder of Summit, and has been the majority shareholder of Summit or its

---

[4]Gray, an attorney and former member of the bar of the State of New York, has represented himself *pro se* in this case since I granted his counsel's motion to withdraw in March 2003. Since March 2003, Gray asked me, on several occasions, to reschedule his trial. For the convenience of Gray, I granted his requests three times, and moved the trial from September 2003 to November 2003, to December 2003, and then to January 12, 2004.

Trial was scheduled to commence on January 12, 2004, at 9:00 a.m. At approximately 8:45 a.m., Gray telephoned my chambers to advise me that he had just filed a personal bankruptcy petition in the United States Bankruptcy Court for the Northern District of New York. (January 12, 2004 Trial Transcript ["Jan. 12 Trial Tr."] at 3.) I recessed the trial so that Summit could determine if any other defendant in this matter had filed bankruptcy, and to give Summit the opportunity to seek a lifting of the automatic bankruptcy stay. (Jan. 12 Trial Tr. at 19-20.) Summit filed a motion to lift the stay on the same day, and by late afternoon obtained an Order from the New York bankruptcy court lifting the automatic stay. (D.I. 205.)

I scheduled the trial to reconvene on January 13, 2004. Gray did not appear at trial. (Trial Tran. at 4.) However, Gray has submitted proposed findings of fact and conclusions of law. (D.I. 215.)

[5]Throughout these findings and conclusions, I have considered and adopted language suggested by litigants. In all such instances, the finding or conclusion in question has become my own, based upon my review of the evidence and the law.

[6] Plaintiff's Exhibit ("PX") 64.

[7] Trial Tr. at 26-27.

5

predecessors since 1984.[8] Chariot Plastics is the wholly owned subsidiary of Chariot Holdings, which, in turn is wholly owned by Gray. Thus, Gray, through two holding companies, is the controlling shareholder of Summit.[9]

2.    Summit is the successor of Chariot.[10] In August 1995, Gray, acting as the sole director and majority shareholder of Summit and Chariot, caused Chariot to merge with and into Summit.[11] Prior to this merger, Chariot was a public company, with approximately 25% of its shares publicly held, and the remaining 75% held by defendant Chariot Plastics, a Gray-owned holding company.[12] The public Chariot shareholders became creditors of Summit as a result of the merger.[13]

3.    Prior to 1987, Chariot was known as Sandusky Plastics.[14] Gray was a director of Sandusky Plastics, and a majority of that entity's outstanding stock was held by Chariot Plastics. Chariot Plastics, in turn, was wholly owned by Gray's wholly owned corporation, Chariot Holdings.[15]

---

[8] PX 135, 136, 137, 138.

[9] Trial Tr. at 23; PX 138.

[10] Trial Tr. at 19.

[11] Id. at 19-20, 23; PX 62-65.

[12] Trial Tr. at 12.

[13] PX 64.

[14] Trial Tr. at 12, 25; PX 135.

[15] Trial Tr. at 25-26; PX 135.

6

4.    At all relevant times Gray has served as a director, or the sole director, of Sandusky Plastics, Chariot, and Summit. Gray has also been the indirect controlling shareholder in each of those entities at all times since 1986.[16]

5.    Gray also directly or indirectly owns or controls all of the other corporate defendants currently in this case.[17]

**B.    The Tax Claim**

6.    From 1984 to 1986, Summit, while known as Sandusky Plastics, filed consolidated tax returns with its parent companies, Chariot Plastics and Chariot Holdings, which, in turn, were wholly owned by Gray.[18]

7.    Sandusky Plastics calculated its tax liabilities on a standalone basis and sent Gray the tax information and funds owed to the IRS.  Gray was supposed to prepare a consolidated tax return for Chariot Holdings, Chariot Plastics, Sandusky Plastics, and the other companies in the consolidated reporting group, and remit payment to the IRS for the amount due.[19]

8.    During the 1984 to 1986 time period, Sandusky Plastics calculated that its tax liabilities were approximately $1.7 million, and it forwarded that amount to Gray for payment to the IRS.  Gray never paid these funds to the IRS.  Instead, he kept the

---

[16] PX 135-138.

[17] PX 135-138; PX 6 at ¶ 12, 14, 19-26; PX 7 at pp. 38-40.

[18] Trial Tr. at 12, 14-17, 159-160.

[19] Id.

7

money and submitted consolidated tax returns to the IRS for Chariot Holdings, which stated that no tax was due.[20]

     9.    Gray never returned the $1.7 million to Sandusky Plastics or to any of its successor corporations.[21]

     10.    The IRS audited Chariot Holdings, rejected the consolidated tax returns filed from 1984 to 1986, and sent a notice of deficiency to Chariot Holdings for this time period.[22] The IRS also disallowed a deduction for a brokerage commission that Gray claimed had been paid to a steel broker, because the IRS determined that the brokerage commission contract was fictitious and had never been paid.[23]

     11.    In November of 1994, Gray, on behalf of Chariot Holdings, signed a consent judgment against Chariot Holdings in favor of the IRS, in an amount exceeding $2 million, including fraud penalties and interest ("Consent Judgment").[24]

     12.    Neither Gray nor Chariot Holdings has ever paid the Consent Judgment. As of today, the amount of the Consent Judgment, together with penalties and interest, is approximately $9-10 million.[25]

     13.    Having failed to collect from Chariot Holdings, the IRS brought a claim against Chariot Plastics and Summit asserting that they, as parties to the consolidated

---

[20]Trial Tr. at 159-160; PX 127 at p. F-3; PX 128.

[21]Trial Tr. at 159-160.

[22]PX 15; Trial Tr. at 164-166.

[23]Trial Tr. at 16-18.

[24]PX 16; Trial Tr. at 18, 165-166.

[25]Trial Tr. at 166-167.

8

00142

tax filing, were jointly and severally liable, regardless of fault, for the entire amount of the unpaid Consent Judgment, plus penalties and interest.

14.    In a 1998 opinion, the United States District Court for the Southern District of New York ruled against Summit and Chariot Plastics and entered judgment against both companies for the full amount of the unpaid Consent Judgment.[26]

### C.    The Looting Claims

15.    During the period from1991 to 1995, when Summit was known as Chariot, Gray unilaterally caused Chariot to pay approximately $7.7 million in fees to its indirect majority shareholder, Chariot Holdings, and another Gray controlled entity, VDC Recovery Corp.[27]

16.    During this time period Gray also caused Chariot to write-off loans it had made to Chariot Holdings and to Gray personally.[28]  Although Gray stood on both sides of these transactions, none of these payments was approved by anyone other than Gray himself, the only director of Chariot since 1990.[29]  The record shows the following payments were made during this time period:[30]

---

[26]Trial Tr. at 24; *Chariot Plastics v. United States,* 28 F. Supp. 2d 874 (S.D.N.Y. 1998).

[27]Trial Tr. at 43-47; PX 135-138.

[28]PX 25-29, 67, 68, 131; Trial Tr. at 42-43, 45.

[29]*See* PX 67, 68; Trial Tr. 26.

[30]PX 26, 27, 28 29, 83, 92, 131.

9

| Year | Amount | Recipient |
|-------|--------------|------------------------------|
| 1991 | $2,168,813 | Chariot Holdings |
| 1992 | $3,064,000 | Chariot Holdings |
| 1993 | $890,000 | Chariot Holdings |
| 1994 | $659,140<br><br>$168,100 | Chariot Holdings<br>VDC Recovery Corp. |
| 1995 | $822,350 | VDC Recovery Corp. |
| TOTAL | $7,772,403 | |

17.    According to James Kelly ("Kelly"), the president of Chariot during the time these payments were made, neither Gray, nor Chariot Holdings, nor VDC Recovery Corp. provided management services to Chariot that would justify paying these so-called consulting or management fees.[31] In fact, Kelly testified that he was not aware of any services that Gray, Chariot Holdings, or VDC Recovery Corp. provided in exchange for the payments.[32]

18.    Gray did not disclose to Chariot's public shareholders that Chariot was making payments to companies he owned and controlled. Moreover, although Chariot and Sandusky Plastics, when the entity was conducting business under that name, had filed reports with the Securities and Exchange Commission ("SEC") up to 1990, Gray

---

[31] .    Trial Tr. at 48–49.

[32]    Trial Tr. at 45.

00144

caused Chariot to stop filing periodic reports with the SEC in 1990. As a result, no financial information about the company was publicly available.[33]

19.      One of Chariot's public shareholders brought suit seeking to inspect Chariot's books and records pursuant to 8 Del. C. § 220. The shareholder prevailed in October of 1994[34] and Gray was forced to disclose Chariot's internal financial statements. These statements revealed the fees that Gray and his affiliated entities had been receiving.[35]

20.      After disclosure of these payments, a minority shareholder of Chariot filed a lawsuit in New York in August of 1995, alleging that Gray violated his fiduciary duties by engaging in these self-dealing transactions.[36]

D.      The Sale Of ESP And Chariot's Merger Into Summit

21.      In 1988, Chariot acquired 92% of the outstanding stock of ESP and ESP became a subsidiary of Chariot.[37] In 1990, ESP acquired 100% interest in B.F. Rich and this entity became a subsidiary of ESP.[38]

---

[33]*Id.* at 25-27, 29.

[34]PX 13.

[35]Trial Tr. at 29-30, 169-70; PX 26-31.

[36]Trial Tr. at 169-73.

[37] Trial Tr. at 64, 78-80; PX 136.

[38] Trial Tr. 32, 49; PX 46 at 5, 7.

11

22.    ESP and B.F. Rich were Chariot's only operating subsidiaries.[39] Both were in the business of manufacturing windows and doors.[40] Kelly was the president of Chariot from 1991 to 1995, and was the Chairman and Chief Executive Officer of ESP and B.F. Rich from 1991 to 2002.[41]

### 1.    Sale of ESP

23.    After the commencement of the first shareholder lawsuit in New York, the record shows that Gray made efforts to sell Chariot's operating subsidiaries and eliminate its public shareholders.

24.    On June 30, 1995, Gray caused Chariot to enter into a transaction whereby it sold its 92% stock interest in ESP to Homestar Acquisition Corporation ("Homestar"), a company wholly owned by Gray.[42] Homestar was acting as a nominee for Harcar, another Gray owned and controlled entity, and the owner of 100% of Homestar's stock.[43]

25.    Gray stood on both sides of the transaction and implemented this purported transaction unilaterally. He signed the written consent approving the sale as Chariot's sole director. He signed the written shareholder consent approving the sale

---

[39] PX 136, 137.

[40] Trial Tr. at 19; PX 2 at p. 2; PX 119 at pp. 27-28.

[41] Trial Tr. at 26, 62.

[42] PX 47-51.

[43] Defendant Richard E. Gray's Answer to Complaint, ¶ 30; Trial Tr. at 77-78.

12

on behalf of Chariot Plastics, Chariot's majority shareholder.  He also signed the sale agreement for both Chariot and Homestar.[44]

26.    On June 30, 1995, Chariot's 92% stock interest in ESP had a value of at least $15 million.[45]  In 1994, Gray received at least one offer to purchase ESP for up to $17 million, but Gray rejected that offer as inadequate.[46]

27.    In exchange for its ESP stock, Gray arranged for Chariot to receive a $15 million note ("Note") from Hallowell.[47]  The Note was payable over a 10 year period, with no payments due for two years and interest only payments due until 2000, five years after the transaction.  Gray owns and controls Hallowell and he signed the Hallowell Note as "Chairman" of that company.[48]

28.    Hallowell had no assets, income, operations, employees or ability to repay the Note.[49]  Gray, who was Hallowell's owner and chairman, knew that Hallowell could never pay the Note and, in another proceeding, testified that Hallowell "ha[d] a negative net worth."[50]  The Note was the only consideration Chariot received in exchange for ESP and B.F. Rich.

---

[44] PX 52-54.

[45] Trial Tr. at 67-68; PX 47-51 (appraisals valuing the Company between $12.6 and $24 million).

[46] PX 51; Trial Tr. 140-43.

[47] PX 52.

[48] PX 54.

[49] Trial Tr. at 153-54.

[50] PX 126 at p. 733.

13

29.   On June 30, 1995, the same day Gray purports to have sold ESP to Homestar, he merged  Homestar into ESP, with ESP being the surviving entity.  Gray signed the certificate of merger.[51]  Pursuant to the merger, Harcar, Homestar's owner, became the sole owner of ESP.

30.   Although Gray in effect sold Chariot's stock in ESP to himself on June 30, 1995, he did not disclose the sale to Chariot's public stockholders until several weeks after the transaction.  Even then, he did not disclose that he owned and controlled Harcar, the purchaser, or Hallowell, the entity providing the consideration.[52]

31.   Kelly was Chairman of ESP on June 30, 1995.  Gray did not inform Kelly of the sale transaction, did not seek his approval, and did not seek the approval of any of the other directors of ESP or B.F. Rich.[53]  As a result, for several years after June 30, 1995, ESP's financial statements continued to report that Chariot was its parent corporation.  Kelly, who maintained the stockholder records of ESP, testified that no stock was ever issued to Homestar or Harcar.[54]  Moreover, the sale of ESP was not the result of competitive bidding.[55]

32.   The Hallowell Note has not been paid.[56]

---

[51]PX 53.

[52]PX 56.

[53]Trial Tr. at 62-64.

[54]Trial Tr. at 80.

[55]Trial Tr. at 67-68.

[56]Trial Tr. at 67, 153-54.

14

### 2.    Merger of Chariot Into Summit

33.    On August 7, 1995, a few weeks after selling ESP to Harcar, Gray, in his capacity as majority shareholder and sole director of Chariot, caused Chariot to be merged with and into Summit.[57] The terms of the merger agreement provide that Chariot's minority shareholders were to receive notes in exchange for their interest in Chariot.[58]

34.    Gray did not advise Chariot's public shareholders of the sale of the ESP stock or the merger with Summit until after the transactions were purportedly consummated. Following disclosure of these transactions, another lawsuit was filed in the New York Supreme Court challenging the sale of the ESP stock and merger with Summit as an unfair, self-dealing transaction.[59]

### 3.    The New York Injunctions

35.    Plaintiffs in the New York lawsuits filed motions for a temporary restraining order and preliminary injunctive relief with respect to: (1) the alleged looting of Chariot by Gray; (2) the sale of Chariot's interest in ESP to Harcar; and (3) the merger of

---

[57] PX 62-66.

[58] PX 64.

[59] In October 2000, while this case was pending before this Court, creditors of ESP filed an involuntary petition for relief under the United States Bankruptcy Code, thereby placing that entity into bankruptcy. ESP has not emerged from bankruptcy, and is not expected to do so because it has sold all of its assets, and because the ESP creditors committee has proposed that the liquid assets ESP currently holds be distributed to creditors under a liquidating plan.

15

Chariot into Summit.[60]  The first two claims are being pursued in this adversary proceeding.

36.    By stipulation dated August 17, 1995, the parties to the New York proceedings agreed to the entrance of a temporary restraining order pending the resolution of the plaintiff's motion for a preliminary injunction.  The temporary restraining order provided, among other things, that "defendants . . . shall be restrained and enjoined from consummating the sale, assignment, transfer, encumbrance or other disposition of the stock and/or assets of . . . [ESP]."[61]

37.    On October 21, 1996, the New York State Supreme Court ("New York Court") issued an opinion granting plaintiffs' motion for a preliminary injunction.[62]  In its opinion, the New York Court reviewed evidence concerning Gray's alleged looting, the sale of ESP, and the merger of Chariot into Summit.  The New York Court granted the motion in its entirety, finding that plaintiff had established a probability of success on all claims.[63]

38.    With respect to the claims of looting, which are similar to the looting claims asserted in this case, the New York Court found that Chariot's payment of over $7.7 million in "consulting" and other fees to Gray and his companies was grossly unfair:

> Plaintiff has amply demonstrated a likelihood of success on
> the merits of [his] claims against Gray for corporate waste
> and mismanagement. The evidence of defalcations by Gray

---

[60] Trial Tr. at 173-76; PX 2 at pp. 1-2.

[61] PX 4 at 2.

[62] PX 2; Trial Tr. at 177-78.

[63] PX 2 at p. 12.

16

> is overwhelming and, for the most part, completely
> uncontradicted, i.e. the payment of exorbitant management
> fees to Chariot Holdings; the forgiveness of loans to that
> corporation and personal loans to Gray.[64]

39.   The New York Court also found that the evidence was "overwhelmingly

supportive" of plaintiff's claim that Gray's sale of ESP to Harcar was a breach of Gray's

fiduciary duty.[65]  The Court also found that one of the motives for the Chariot/Summit

merger, which had no business purpose, was to deprive the public shareholders of

"standing" to pursue the derivative claims.[66]

40.   The New York Court also held that Gray's disclosures to shareholders

about the transactions, which occurred after the fact, were misleading.

> First [the notice] fails to advise the minority stockholders of
> the fact that all of the corporate participants are corporations
> wholly owned and controlled by Gray, particularly ...
> Hallowell, the corporation that owes the $15 million note to
> Summit.  Second, absolutely no financial information is given
> about ... Hallowell ... and fails to mention that the affiliate
> [issuing the note] is Hallowell, another corporation owned
> and controlled by Gray....[67]

41.   On January, 30, 1997, the New York Court entered a preliminary

injunction order that enjoined Gray and the Gray Entities from "paying or otherwise

disbursing monies to Gray, or to any of the corporate defendants herein, or to any other

corporation owned or controlled by Gray, directly or indirectly in the form of loans, fees

---

[64]PX 2 at pp. 3, 12-13.

[65]PX 2 at pp. 10, 11.

[66]PX 2 at pp. 8-9.  Kelly testified that although he was president of Chariot at the
time, he had no role in the merger, and was not even informed of it at the time.  Trial Tr.
at 38.

[67]PX 2 at pp. 11.

17

or any other type of payment, when such monies are obtained directly or indirectly from the stock, assets or revenues of ... [ESP] ... ."[68]

### E.    Chariot's Management Services Business

42.    Prior to the merger of Chariot into Summit, Chariot was in the business of providing management services to ESP and B.F. Rich in exchange for a total management fee equal to approximately $600,000 per year. Those management services were provided by Kelly, Thomas Aylward ("Aylward"), and their staff, all of whom remained employed by Chariot/Summit after the 1995 sale and merger transactions.[69]

43.    In September of 1995, less than two months after selling ESP and merging Chariot into Summit, Gray created a new corporation, Chariot Management, to perform the same management services Chariot/Summit had performed in the past. Subsequent to September 1995, Chariot Management utilized the same personnel, equipment, and offices that Chariot had previously utilized to provide management services.[70]

44.    While all of the management services business was transferred to Chariot Management, neither Chariot nor Summit was paid anything for this transfer.[71] Gray owns Chariot Management.[72]

---

[68]PX 3 at p. 9.

[69]Trial Tr. at 52.

[70] Trial Tr. at 56-57.

[71]Trial Tr. at 58.

[72]Trial Tr. at 57; PX 37.

18

45.    From 1995 to 2001, Chariot Management received over $2.4 million in fees from the management business Gray transferred to it.[73] The breakdown of such fees is as follows:

| Year | Amount |
|---|---|
| 1996 | $605,102 |
| 1997 | $591,512 |
| 1998 | $576,176 |
| 1999 | $675,810 |
| 2000 | $396,821 |
| 2001 | $395,721 |
| Total | $2,448,600 |

46.    The evidence strongly suggests that if Gray had not transferred the management services business from Chariot to Chariot Management, these fees would have been paid to Chariot or Summit.

47.    The record reflects no legitimate business reason for the transfer of the management services business from Chariot. In fact, Kelly testified that the actual reason Gray diverted the management fees from Chariot was to prevent the IRS, which had a claim against Chariot, from levying on those moneys.[74]

---

[73]PX 132, 39-41, 110; Trial Tr. at 60.

[74]Trial Tr. at 59-60.

19

**F.    Violation of the New York Injunctions**

**1.    The Diversion of ESP Dividends to Gray**

48.    Although the temporary restraining and preliminary injunction orders issued by the New York Court precluded Gray from transferring any of ESP's assets to Gray or any entities he owned or controlled,[75] in 1996 and 1997, Gray caused ESP to pay dividends and other fees to entities controlled by him.  None of the dividends went to Chariot or its successor Summit.[76]

49.    The following dividends were declared and paid by ESP in 1996 and 1997:[77]

| Year | Amount | Recipient(s) |
|------|--------|--------------|
| 1996 | $1,540,000 | **Chariot Mgt. and Others** |
| 1997 | $2,200,000<br>$  800,000<br>$  369,264<br>Total:  $3,369,264 | Harcar<br>Chariot Mgt.<br>Others |
| Total | $4,909,264 | |

**2.    Contempt for Violating the New York Court's Injunctive Order**

50.    Upon learning that ESP had funneled money to Gray and the Gray Entities through dividends and other payments, the New York plaintiffs filed a motion for contempt.  On October 16, 1998, the New York Court held Gray, ESP, and VDC Recovery Corp. in civil contempt for violating the preliminary injunction.  Gray was

---

[75] PX 3 at p. 9; PX 4 at p. 2.

[76] Trial Tr. at 100.

[77] PX 40, 41, 133; Trial Tr. at 85-101.

20

ordered to return a total of $4.3 million that had been misappropriated after entry of the preliminary injunction order.[78]

51.    On December 30, 1998, Gray filed for bankruptcy on behalf of Summit. The bankruptcy stayed the prosecution of the New York lawsuits, but did not bar the contempt proceedings against Gray.[79]

52.    Therefore, in January 1999, the New York Court entered an order and judgment of contempt, which provided that Gray could purge the contempt by returning the $4.3 million within ten days from service of the order.[80] The New York Court's opinion and order were affirmed on appeal in May, 2000.[81]

53.    In July, 1999, the plaintiffs in New York filed a motion alleging that the contempt had not been purged, and requested the imposition of additional, coercive sanctions to compel compliance. On October 18, 2000, the New York Court issued an opinion holding that Gray had access to assets which could be used to purge the contempt, but had failed to do so.[82] The New York Court concluded that:

> Gray's conduct in connection with the Contempt Judgment is another example in the continuing pattern of bad faith

---

[78]PX 8; Trial Tr. at 179. Summit's petition for bankruptcy automatically stayed the prosecution of the New York lawsuits as the claims asserted in those suits represented assets of Summit's estate and, thus, the disposition of those claims had to be resolved in the context of the bankruptcy proceeding. The stay did not bar the contempt proceedings against Gray, and those proceeded notwithstanding the bankruptcy. Trial Tr. at 187.

[79]Trial Tr. at 187.

[80]PX 9.

[81]*Richardson v. Gray*, 707 N.Y.S.2d 436 (N.Y. App. Div. 2000).

[82]PX 10 at 4.

21

00155

> demonstrated by him since the commencement of this
> litigation. Gray made no good faith effort to purge the
> contempt while his appeal of the Contempt Judgment was
> pending before the Appellate Division, First Department,
> although no stay had been issued with respect to that
> judgment . . . . Even following the Appellate Division's
> affirmance of the Contempt Judgment, and until the present
> time, Gray has made neither any good faith effort to purge
> the contempt, nor any application for modification or
> extension of the purge order.[83]

Nevertheless, the New York Court held that it did not have the power to impose any
additional contempt sanctions to induce compliance.[84]  Plaintiffs appealed that portion of
the Court's ruling.

54.    On June 14, 2001, the Appellate Division affirmed the New York Court's
determination that the contempt had not been purged, but reversed its holding that
additional, coercive contempt sanctions could not be imposed.[85] The Appellate Division
directed the New York Court "to hold a hearing, within ten days of service of this order
with notice of entry, for a determination of whether defendant Gray should be confined
to prison for his contempt ...."[86]  It further held that:

> Given the amount of time that has passed since the original
> contempt order was entered in this case, the outrageous nature of
> [Gray's] abuse of his fiduciary duties as a corporate officer, and his
> seeming indifference to, and blatant disregard for, numerous
> judicial directives, we direct the court to hold a hearing, where Mr.
> Gray will have the burden of either establishing that he does not
> have, and has not had, the financial ability to return the requested
> funds, since entry of the first contempt order, or be confined to

---

[83] PX 10 at 6.

[84] Id.

[85] *Richardson v. Gray*, 726 N.Y.S.2d 105 (N.Y. App. Div. 2001).

[86] *Richardson*, 726 N.Y.S.2d at 106.

22

prison for contempt pursuant to Judiciary Law § 753 until such time
as his outstanding debts are satisfied. The hearing should also
address the discrepancy revealed by the record between Mr.
Gray's lavish lifestyle and his claims of financial distress. [87]

55.    In September and October of 2001, the New York Court held a hearing to

determine whether Gray had the financial ability to purge the contempt.[88] After

reviewing the evidence and argument, the New York Court committed Gray to prison

until such time as the contempt was purged. In support of its determination, it found

that Gray had the wherewithal to purge the contempt because he owned corporations

that had significant value, including Rivco, Rivco Realty, Jenkins, and B.F. Rich.[89]

56.    The New York Court rejected Gray's testimony that various educational

and religious institutions, among others, were the true owners of these and other

corporations. After plaintiffs issued subpoenas to some of the alleged institutional

owners, Gray entered into a series of signed stipulations conceding that, if these

institutions were called upon to testify, each would testify that it "has never owned any

stock or other financial interest of any kind" in any of Gray's corporations.[90]

57.    The New York Court also found that Gray was not a credible witness and

that his testimony was, in large part, not worthy of belief. In addition to his demeanor,

which the Court found to be evasive and combative, the Court considered the following

factors: (1) Gray had already been held in contempt for violating a preliminary

---

[87]*Id.* at 107.

[88]PX 6 at p. 1; PX 7 at pp. 38-40.

[89]PX 6 pp. 5-7; PX 7 at 38-40.

[90]PX 6 at p. 8; PX 7 at 38-40.

23

injunction; (2) Gray refused to purge the contempt while representing to the Court that he had done so; (3) Gray represented to the Court that he had no ownership interest in any of the companies he controlled, a representation which had been proven to be untrue; (4) Gray's financial arrangements were, in general, not above board; (5) critical documents were missing, and systematic efforts had been made to hide Gray's true income and assets; (6) Gray's excuses for failing to purge the contempt, including his alleged fears that doing so would violate the preliminary injunction, were demonstrably baseless.[91]  On the final day of the hearing, the New York Court, addressing Gray's counsel, stated that it "found your client totally incredible," "I don't believe your client," and "every time he's testified about something, it's been refuted by documentary evidence."[92]

    58.    Gray was committed to prison on November 19, 2001 and remained there until his contempt was purged in November of 2003.[93]  Even then Gray did not return any of the $4.3 million.  Instead, so that Gray could be present for trial in this action, the plaintiffs stipulated that Gray could purge the contempt by depositing certain stock into escrow pending the resolution of this adversary proceeding.[94]

---

[91]PX 6 at p. 10; PX 7 at 38–40.

[92]PX 7 at pp. 27, 28 and 29.

[93]PX 5, 10.1; Trial Tr. at 185–86.

[94]PX 10.1.

24

59.    Additionally, while in prison for contempt, Gray pled guilty to bankruptcy and tax fraud in the United States District Court for the Eastern District of Missouri, and was sentenced to two years imprisonment.[95]

G.    Misappropriation of the Rivco and Jenkins Business Opportunities

60.    In addition to being in the business of managing corporations in the window and door business, Chariot was in the business of acquiring such companies.[96] As previously discussed, Gray shut down Chariot's operations in 1995 by selling Chariot's 92% stake in ESP, merging Chariot into Summit, and transferring the management business to Chariot Management.

61.    The record indicates that Gray usurped Chariot's opportunities to acquire window and door businesses by shutting down Chariot's operations in 1995.

62.    In January of 1997, Gray acquired Jenkins, a manufacturer of windows and doors.[97] Gray acquired Jenkins through his wholly owned holding company, Jenkins Acquisition. Gray indirectly owns over 90% of the stock of Jenkins and Jenkins Acquisition.[98]

63.    In February of 1998, Gray acquired Rivco, a company engaged in window and door manufacturing and distribution.[99] Gray acquired Rivco through his wholly

---

[95]PX 11, 12.

[96]Trial Tr. at 53.

[97]Trial Tr. at 106-09; PX 119 at pp. 28-29; PX 138, 139.

[98]Trial Tr. at 106-07; PX 119 at 29-31; PX 138, 140.

[99]Trial Tr. at 106-09; PX 119 at pp. 28-31.

25

owned holding company, CSC Recovery, and it's wholly owned subsidiary, Rivco Acquisition.[100]

64.    At the time of these acquisitions, ESP, B.F. Rich, Jenkins and Rivco were all in the same line of business.[101]  Kelly testified that Jenkins and Rivco were acquired precisely because they were a "good fit" with Gray's existing companies, ESP and B.F. Rich.[102]

65.    Because the opportunity to acquire Rivco and Jenkins were within the line of business of Chariot and Summit, it appears that if Gray had not transferred ESP, B.F. Rich, and the management services businesses away from Chariot, then Chariot or Summit could have taken advantage of these opportunities.

66.    After the acquisitions, Gray placed  Kelly and Aylward in charge of Rivco and Jenkins.  Both Kelly and Aylward had been the senior operating executives at Chariot, and were the senior operating executives at ESP and B.F. Rich before and after the purported sale of ESP in 1995.[103]

67.    The funds Gray used to purchase Rivco and Jenkins, apart from what was paid or borrowed by the acquired companies, were obtained directly or indirectly from dividends or other payments made by ESP.[104]  Specifically, the $1 million equity

---

[100]*Id.*

[101]PX 119 at 28-32.

[102]Trial Tr. at 11-13, 55-56, 111-13, 123-25.

[103] Trial Tr. at 134.

[104]Trial Tr. at 114–18, 125-29; PX 22 (attached transactional documents), 116, 117, 139, 140.

26

investment used in the acquisition of Rivco was part of a $2.2 million dividend Gray

caused ESP to pay to Harcar.[105] The $700,000 equity investment in Jenkins was also

obtained from dividends paid by ESP.

     68.    Summit, Jenkins, and Rivco have stipulated that, if called as a witness,

Timothy Larkin would testify that:

        (a)    At the end of 2003, Rivco employed 212 employees;

        (b)    In 2003, Rivco provided payments and benefits to its
        employees in excess of $10,000,000;

        (c)    Rivco has annual sales of approximately $39,000,000.
        In 2003, approximately $28,000,000 of this revenue went
        toward the purchase of materials, products and services
        from Rivco's vendors;

        (d)    Rivco's place of business, Penacook, New
        Hampshire, is a small community located near Concord,
        New Hampshire. According to Mr. Larkin, Rivco is one of
        the largest employers in Penacook and one of the larger
        employers in the greater Concord, New Hampshire area;

        (e)    Jenkins is a manufacturer of windows and doors. Its
        principal place of business is in Anniston, Alabama. Jenkins
        was established in 1888;

        (f)    Jenkins employs 211 individuals. It has annual sales
        of approximately $18,000,000;

        (g)    Jenkins plays an important role as an employer in its
        local community and provides significant revenue for its
        various vendors and product suppliers;

        (h)    The management of Rivco and Jenkins is concerned
        with the pending litigation. The specific concern is that any
        order resulting from the litigation will ultimately lead to the
        liquidation of Rivco or Jenkins by the plaintiff; and

---

    [105]As set forth above, the New York Court determined that the payment of
dividends to Harcar violated the preliminary injunction issued in New York. PX 8 at pp.
12-14.

(i)    Given the status of Rivco and Jenkins as ongoing, viable commercial entities, any such liquidation would have a very real and negative effect not only upon these entities, but also upon their employees, vendors, and the local communities in which they are located.[106]

69.    Ambrose Richardson, the Chairman of the Committee testified that:

(a)    Given the condition of Rivco and Jenkins, it would not make sense to liquidate Rivco and Jenkins if the stock of Rivco and Jenkins were turned over to Summit; and

(b)    If Summit is successful in recovering the stock of Rivco and Jenkins, Soundview, an entity in which Richardson holds an interest, may submit an offer to acquire a controlling interest in Summit, Rivco and/or Jenkins.[107]

**H.    Additional Management Fees Usurped By Gray**

70.    After the acquisitions of Rivco and Jenkins, employees of Chariot Management, who had previously worked for Chariot, provided management services of the same type to Rivco and Jenkins.[108]

71.    The management fees paid by Rivco and Jenkins were not paid to Chariot Management, the entity rendering the services, but to Rivco Management and Jenkins Management.[109]  Gray owns 100% of the stock of these entities.[110]

72.    During the period from 1997 to 2001, Rivco and Jenkins paid over $3 million in management fees to Gray.  Whether or not the payments of these

---

[106]Defendant's Exhibit 1.

[107]Trial Tr. at 189-192.

[108]Trial Tr. at 134-35.

[109]PX 134.

[110]Trial Tr. 106-07; PX 138.

28

management fees were a legitimate way of pulling money out of these corporations, the fees would have been paid to Chariot or Summit, but for Gray's efforts to shut Chariot down in 1995. The following chart summarizes the fees paid:[111]

| Year | Amount | Payor | Recipient |
|---|---|---|---|
| 1997 | $308,726 | Jenkins | Jenkins Mgt. |
| 1998 | $300,000<br>$335,739 | Rivco<br>Jenkins | Rivco Mgt.<br>Jenkins Mgt. |
| 1999 | $300,000<br>$378,179 | Rivco<br>Jenkins | Rivco Mgt.<br>Jenkins Mgt. |
| 2000 | $300,000<br>$600,000 | Rivco<br>Jenkins | Rivco Mgt.<br>Jenkins Mgt. |
| 2001 | $300,000<br>$342,024 | Rivco<br>Jenkins | Rivco Mgt.<br>Jenkins Mgt. |
| Total | $3,164,668 | | |

## I.    The Adequacy of Legal Remedies

73.    Rivco Acquisition and Jenkins Acquisition, the companies that hold the Jenkins and Rivco stock, do not have the ability to satisfy any significant award of monetary damages.

74.    Gray's personal bankruptcy filing before trial indicated that his total assets had a value of $1 million or less and that his total liabilities exceeded his assets.[112]

75.    The New York Court concluded that Gray and the Gray Entities did not have the liquid assets to purge the $4.3 million contempt judgment. Therefore, the New York Court ordered Gray, in lieu of such a payment, to deliver all the Rivco and Jenkins

---

[111]PX 100-102, 105-107, 134; Trial Tr. at 109.

[112]D.I. 203.

29

stock (held by Rivco Acquisition and Jenkins Acquisition), Summit stock (held by Chariot Plastics), and ESP stock (held by Harcar) into escrow.[113]

III.    **Conclusions of Law**

    A.    **Self-Dealing and the Entire Fairness Standard**

        1.    **Gray is a Fiduciary Who Engaged in Self-Dealing Transactions**

76.    Gray, as a director and controlling shareholder of Chariot and Summit, owed fiduciary duties to Chariot/Summit and its shareholders. *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987) ("a shareholder owes a fiduciary duty . . . if it owns a majority interest in or exercises control over the business affairs of the corporation"); *Loft, Inc. v. Guth*, 2 A.2d 225, 238 (Del. Ch. 1938) (directors of Delaware corporations owe fiduciary duties to the corporation and its shareholders).

77.    The transactions that Gray caused or approved between Chariot or Summit and the Gray Entities, as a fiduciary of Chariot and Summit, and as the owner or controlling shareholder of the Gray Entities, were self-dealing transactions. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993) ("classic self-dealing transaction" occurs "where a director or directors stand on both sides of a transaction"); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ("directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing").

78.    Gray appeared on both sides of at least the following transactions:

    (a) Chariot's payment of $7,772,403 in management or consulting fees to various Gray-owned entities between 1991 and 1995;

---

[113]PX 10.1.

30

(b) the purported sale of Chariot's interest in ESP to Harcar;

(c) the transfer of Chariot's management services business to Chariot Management; and

(d) the payment of dividends by ESP to Gray-owned companies other than Summit.

## 2. Gray Bears the Burden of Proving the Entire Fairness of His Self-Dealing Transactions

79.     Under Delaware law, self-dealing transactions between a corporation and

a director or controlling shareholder are subject to the entire fairness test. *Kahn v.*

*Lynch Communication Sys., Inc.*, 638 A.2d 1110, 1115 (Del. 1994) ("A controlling or

dominating shareholder standing on both sides of a transaction . . . bears the burden of

proving its entire fairness").

80.     A self dealing fiduciary must prove the entire fairness of the transaction by

a preponderance of the evidence. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 703 (Del.

1983).

81.     Entire fairness has two components: fair price and fair dealing.  In

*Weinberger*, the Delaware Supreme Court held:

> When directors of a Delaware corporation are on both sides
> of a transaction, they are required to demonstrate their
> utmost good faith and the most scrupulous inherent fairness
> of the bargain. The requirement of fairness is unflinching in
> its demand that where one stands on both sides of a
> transaction, he has the burden of establishing its entire
> fairness, sufficient to pass the test of careful scrutiny by the
> courts. ....
>
> The concept of fairness has two basic aspects: fair dealing
> and fair price. The former embraces questions of when the
> transaction was timed, how it was initiated, structured,
> negotiated, disclosed to the directors, and how the approvals
> of the directors and the stockholders were obtained. The

31

latter aspect of fairness relates to the economic and financial
considerations of the [transaction]....

*Id.* at 710.  *See also Nixon v. Blackwell,* 626 A.2d 1366, 1375-76 (Del. 1993); *Mills*

*Acquisition Co. v. Macmillan, Inc.,* 559 A.2d 1261, 1280 (Del. 1989).

82.    The entire fairness standard also applies where the transaction is with a

controlling shareholder.  The Delaware Supreme Court held that:

> [o]rdinarily, in a challenged transaction involving self-dealing
> by a controlling shareholder, the substantive legal standard
> is that of entire fairness, with the burden of persuasion
> resting upon the defendants.

*Kahn v. Tremont Corp.,* 694 A. 2d 422, 428 (Del. 1997).  *See also Kahn v. Lynch*

*Communication Systems, Inc.,* 638 A.2d 1110, 1115 (Del. 1994) (A controlling ...

shareholder standing on both sides of a transaction ... bears the burden of proving its

entire fairness").

83.    In *Technicorp International II, Inc. v. Johnston,* No. Civ. A. 15084, 2000

WL 713750 (Del. Ch. May 31, 2000), the Chancery Court applied the entire fairness test

in a case similar to this one:

> Corporate officers and directors, like all fiduciaries, have the
> burden of showing that they dealt properly with corporate
> funds and other assets entrusted to their care. Where, as
> here, fiduciaries exercise exclusive power to control the
> disposition of corporate funds and their exercise is
> challenged by a beneficiary, the fiduciaries have a duty to
> account for their disposition of those funds, i.e. to establish
> the purpose, amount and propriety of the disbursements.
> And where, as here, the fiduciaries cause those funds to be
> used for self-interested purposes, i.e. to be paid to
> themselves or to others for the fiduciary's benefit,  they have
> the 'burden of establishing [the transactions'] entire fairness,
> sufficient to pass the test of careful scrutiny by the court.

32

00166

*Id.* at *16 (footnotes and citations omitted).

### 3.    Gray's Breach of His Fiduciary Duties

84.    Gray, a director and controlling shareholder of Chariot, caused Chariot, a
company that was not paying dividends, to pay him $7,772,403 in management and
consulting fees from 1991 to 1995. The payment of these fees was self-dealing, and
Gray thus has the burden of proving entire fairness. *Kahn*, 638 A.2d at 1115. Because
he failed to appear for trial, Gray did not introduce any evidence of the fairness of the
fee payments at trial, and he has not introduced any such evidence in his post trial
submission of proposed findings of fact and conclusions of law. (Trial Tr., D.I. 215.) In
fact, the record reveals that Gray provided Chariot with little, if any, services in
exchange for these fees. Accordingly, Gray breached his fiduciary duties of loyalty and
good faith and is thus liable to Chariot for $7,772,403.

85.    In 1995, Gray, as the sole director and majority shareholder, sold Chariot's
stock in ESP to Harcar. In exchange, Chariot received a promissory note for $15 million
from Hallowell, an entity that had no assets, business, income, operations, or ability to
pay. This was a self-interested transaction, *see Kahn*, 638 A.2d at 1115, and Gray has
not met his burden of proving the entire fairness of that transaction. (Trial Tr., D.I. 215.)
Accordingly, I find that Gray breached his fiduciary duties of loyalty and good faith to
Chariot when he caused the sale of the ESP stock to Harcar, and is liable for that
breach in the amount of $15 million.[114]

---

[114]Although the $15 million promissory note was a self-interested transaction, I
accept $15 million as a fair valuation of ESP, given that the company was appraised by
an expert at $12.6 million and that there was a $17 million offer to purchase ESP the
previous year. *See supra* n.'s 45-46. It is also noteworthy that the plaintiff apparently

33

86.    In September 1995, Gray transferred Summit's management services business to Chariot Management, his wholly owned company, without consideration. Gray has not demonstrated that this self-dealing transaction was entirely fair to Summit. *Kahn*, 638 A.2d at 1115. Gray has thus breached his fiduciary duties of loyalty and good faith to Summit in connection with this transaction, and as a result of Gray's breach, Summit was unable to earn the fees it otherwise would have earned. From 1996 to 2001, the fees amounted to $2,448,600, an amount for which Gray is liable.

87.    Gray engaged in self-dealing through the sale of the ESP stock to his wholly owned companies for essentially worthless consideration. Gray has not submitted any evidence regarding the entire fairness of this transaction, and has thus breached his fiduciary duties of loyalty and good faith. *See Kahn*, 638 A.2d at 1115.

88.    ESP paid $4,909,264 in dividends in 1996 and 1997 to several of the Gray Entities. Gray's payment of these dividends to entities he controlled was self dealing and a breach of the fiduciary duties he owed to Chariot. *See Kahn*, 638 A.2d at 1115. Therefore, Gray is liable to Chariot for his breach in the amount of $4,909,264.

89.    Several of the Gray Entities participated in, benefitted from, and aided and abetted Gray's violations. Specifically:

(a) Chariot Holdings and VDC Recovery Corp. participated
in, benefitted from and aided and abetted the looting

---

accepts this as a fair valuation. (*See* D.I. 211 at 12.)

Because Gray is liable for money damages for his breach of the fiduciary duties of loyalty and good faith to Chariot, and because the ESP stock is, at this point, of questionable value, *see supra* n. 59, Summit's inconsistent request to rescind the sale of ESP and direct Gray and the Gray Entities to transfer all shares of ESP stock they own or control to Summit (D.I. 211 at 32) will be denied.

34

violations, by serving as conduits by which the improper payments of $7,772,403 were transferred to Gray;

(b) Harcar participated in, benefitted from and aided and abetted the wrongful transfer of the ESP stock to Harcar in 1995, by serving as the vehicle for receipt of Summit's interest in ESP. Hallowell participated in and aided and abetted that transaction by issuing the $15 million promissory note utilized as "consideration" for the transaction;

(c) Chariot Management participated in, benefitted from and aided and abetted the wrongful transfer of the management services business from Summit to Chariot Management, by serving as the vehicle for the transfer of that business and the receipt of $2,448,600 in management fees, and by serving as the conduit by which those management fees were transferred to Gray and/or to Gray's other business interests;

(d) Harcar received $2.2 million in dividends issued by ESP in 1996 and 1997. By accepting these payments in violation of an injunction issued by the New York Court, Harcar aided and abetted Gray's breach of duty; and

(e) Chariot Management received approximately $2.3 million in dividends issued by ESP in 1996 and 1997. By accepting these payments in violation of an injunction issued by the New York Court, Chariot Management aided and abetted Gray's breach of duty.

90.    It is well established that a corporate entity can be liable for aiding and abetting breaches of fiduciary duties. See Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 386 (Del. Ch. 1999). Any such claims require that the following elements be pleaded with sufficient supporting facts in order to survive a motion to dismiss: "(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the

35

plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Id.*
Here, all of the elements have been satisfied.

91.    Accordingly, Chariot Holdings will be liable in the amount of $6,781,953
and VDC Recovery Corp. will be liable in the amount of $990,450 for aiding and abetting
the $7,772,403 of improper payments to Gray. Harcar and Hallowell will be jointly and
severally liable in the amount of $15 million for aiding and abetting the sale of ESP.
Chariot Management will be jointly and severally liable in the amount of $2,448,600 for
aiding and abetting the improper transfer of management services.    Chariot
Management will be liable in the amount of $2,300,00 and Harcar will be liable in the
amount of $2,200,000 for aiding and abetting the improper payment of dividends after
June 1995.[115]

**B.    Gray Breached His Duty Of Loyalty When He Appropriated Rivco and Jenkins for Himself**

**1.    The Acquisitions Of Rivco and Jenkins Were Corporate Opportunities for Summit**

92.    A corporate opportunity exists when:

(1) the corporation is financially able to undertake it;
(2) it is within the corporation's line of business; and,
(3) the corporation would have had an interest in the opportunity.

*Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1938).    *See also Broz v. RFB Cellular, Inc.*, 673 A.2d
148 (Del. 1996).

---

[115]Summit has requested equitable relief in the form of an accounting of funds
transferred by Gray and the Gray Entities. (D.I. 211 at 32.)  However, because Summit
has set forth a specific dollar amount regarding the funds in dispute, this request will be
denied.

36

93.    In *Equity Corp. v. Milton*, 221 A.2d 494 (Del. 1966) the Court reaffirmed the recognized principle that a corporate fiduciary usurps a corporate opportunity if he utilizes corporate resources to finance the acquisition for himself:

> [W]hen a business opportunity comes to a corporate officer, which, because of the nature of the opportunity, is not one which is essential or desirable for his corporation to embrace, being an opportunity in which it has no actual or expectant interest, the officer is entitled to treat the business opportunity as his own and the corporation has no interest in it, provided the officer has not wrongfully embarked the corporation's resources in order to acquire the business opportunity.

*Milton*, 221 A.2d at 497. *See also Kaplan v. Fenton*, 278 A.2d 834 (Del. 1971) (director is free to pursue an opportunity as his own only if "the corporate resources have not been wrongfully embarked thereon"); *Rapistan Corp. v. Michaels*, 511 N.W.2d 918 (Mich. 1994) (applying Delaware law) (where corporate funds are used to make the acquisition, the fiduciary is estopped from denying that the transaction was a corporate opportunity).

94.    Rivco and Jenkins operated in Summit and its subsidiaries' lines of business, namely window and door manufacturing. Summit could have acquired Rivco and Jenkins if Gray had not diverted this line of business from Summit and breached his fiduciary to duties to Summit by wrongfully using assets of ESP to acquire those companies. *Milton*, 221 A.2d at 497 (fiduciary usurps a corporate opportunity if he employs the corporation's resources to acquire a business opportunity for himself). Finally, Gray's decision to use ESP assets and Gray's decision to have Kelly and Aylward, Summit's operating executives, serve as the operating executives of Rivco and

37

Jenkins, demonstrates that Summit would have had an interest in acquiring Rivco and Jenkins. Accordingly, the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit.

### 2. The Imposition of a Constructive Trust on the Rivco And Jenkins Stock Held By Gray and the Gray Entitles

95.    The remedy for misappropriation of a corporate opportunity is the imposition of a constructive trust in favor of the corporation upon the property. See *Guth*, 5 A.2d at 511 (when "the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired"), *Stephanis v. Yiannatsis*, 1993 WL 437487 at * 8 (Del. Ch. 1993) (granting imposition of constructive trust over stock fiduciary acquired in violation of corporate opportunity doctrine).

96.    Jenkins and Rivco were both in the same line of business as ESP and B.F. Rich, which was, again, the manufacturing and distribution of windows and doors. The acquisition of companies in this line of business was the business of Summit's predecessor, Chariot.

97.    The Jenkins and Rivco acquisitions occurred in 1997 and 1998, respectively. By that time, Gray had transferred, at least on paper, the stock of ESP from Summit's predecessor, Chariot, to Harcar, and had diverted all of Chariot's assets to himself and his related entities. As discussed, the resources of ESP, including its ability to borrow money, were used to finance the acquisitions of Rivco and Jenkins. The fact that Gray had improperly misappropriated ESP from Summit by this time

38

by the New York Court, and cannot serve as a basis to preclude the imposition of a constructive trust.

98.    Accordingly, a constructive trust will be imposed for the benefit of Summit over all shares of Jenkins or Rivco held by Gray and the Gray Entities, and both Gray and the Gray Entities will be ordered to transfer to Summit any Jenkins or Rivco stock they hold.[116]

### 3.    Management Fees Paid to Rivco Management and Jenkins Management

99.    By transferring Summit's management services to Chariot Management, and then directing Rivco and Jenkins to pay such fees in the amount of $1,200,000 to Rivco Management and $1,964,668 to Jenkins Management, entities wholly owned by Gray, Gray also usurped Chariot's and Summit's opportunity to earn $3,164,668 in management fees. The right to these fees belonged to Summit, and therefore Gray, Rivco Management, and Jenkins Management are liable for this diversion of corporate opportunity. Neither Gray, nor Rivco Management, nor Jenkins Management, has set forth any evidence pertaining to the entire fairness of this action. *Schreiber v. Bryan*, 396 A.2d 512, 519 (Del. Ch. 1978). Therefore, Rivco Management and Jenkins Management are liable to Summit for $1,200,000 and $1,964,668 respectively, and Gray is jointly and severally liable for the full $3,164,178.

---

[116]Jenkins and Rivco seek an order limiting Summit's ability to liquidate them. Although mindful of the impact such liquidation would have on the managers and employees of those companies, and the communities they inhabit, this request must be denied. In effect, Jenkins and Rivco seek relief when there is no case or controversy between them and Summit at this point.

39

### C.     Gray's Failure To File Accurate Tax Returns

100.     From 1984 to 1986, Sandusky Plastics transferred $1.7 million to Gray to pay the taxes that entity owed the IRS. Gray did not deliver these funds to the IRS and did not return them to Sandusky Plastics. From this, I conclude that Gray kept the $1.7 million, thereby violating his duty of loyalty to Sandusky Plastics. *Cede*, 634 A.2d at 361 ("[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest by a director, officer or controlling shareholder and not shared by the stockholders generally.")

101.     During this time period, Gray also caused Chariot Holdings to file fraudulent tax returns on behalf of a consolidated group of companies, including Sandusky Plastics. In those returns, Gray included fraudulent tax deductions which were ultimately disallowed by the IRS.

102.     Gray's wrongful conduct  resulted in the entry of a tax deficiency judgment against Summit that has grown, with penalties and interest, to approximately $9 million. Gray's fraud and breach of his fiduciary duty of loyalty caused Summit to incur the tax deficiency, and is thus liable to Summit for the full amount of the judgment. *See Kahn*, 638 A.2d at 1115.

### IV.     Conclusion

For the foregoing reasons, an appropriate judgment order will be entered in favor of Summit and against the defendants, with the exception of B.F. Rich and Rich Realty. *See supra* p. 1 at n.1.

40

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 AUG -6  PM 3: 31

| | |
|---|---|
| In re: | Chapter 11 |
| SUMMIT METALS, INC., | Case No. 98-2870 |
| Debtor. | |
| SUMMIT METALS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 00-387 (KAJ) |
| RICHARD E. GRAY, et al., | |
| Defendants. | |

**JUDGMENT**

Judgment shall be entered in favor of Summit Metals Inc. ("Summit") as follows:

I.       On the first cause of action, challenging the purported sale of ESP, the amount of $15 million is awarded as damages, jointly and severally as against defendants Richard E. Gray ("Gray"), Harcar, Inc., Hallowell Industries, Inc., Chariot Plastics, Inc., and CHH Holdings Ltd.[1] Prejudgment interest is to be awarded, running from June 30, 1995.

II.      On the third cause of action, alleging looting of Chariot by Gray:

        A.       Damages are awarded against CHH Holdings Ltd. in the amount of $6,781,953 and against RAC Investors, Inc.[2] in the amount of $990,450 for aiding and abetting improper management fees, consulting fees, loan forgiveness and other

_____

[1]Formerly known as Chariot Holdings Ltd.

[2]Formerly known as VDC Recovery Corporation.

payments improperly made during the period 1991-1995. Gray is jointly and severally liable for the full $7,772,403. Pre-judgment interest is to be awarded, running from the end of each calendar year during which such improper payments were made.

        B.      Damages are awarded against Chariot Management, Inc. in the amount of $2,300,000, and against Harcar, Inc. in the amount of $2,200,000 for improper dividends paid by ESP after June, 1995, during a period when Summit was the rightful owner of ESP stock. Gray is jointly and severally liable for the full $4,909,264. Pre-judgment interest is to run from the end of each calendar year during which such payments were made.

        III.     On the sixth cause of action, alleging diversion of management fees from ESP and B.F. Rich, the amount of $2,448,600 is awarded as damages, jointly and severally, against defendants Gray and Chariot Management. Pre-judgment interest is to be awarded, running from the end of each calendar year during which these fees were paid.

        IV.     On the seventh cause of action, alleging theft of corporate opportunities in connection with the Rivco and Jenkins acquisitions:

        A.      A constructive trust is imposed on the stock of Riverside Millwork Co.,[3] Rivco Realty, Inc., Jenkins Manufacturing, Inc., and Jenkins Realty Inc. held by defendants Rivco Acquisition Corporation, Inc. ("Rivco Acquisition"), and Jenkins Acquisition, Inc. ("Jenkins Acquisition"). Rivco Acquisition and Jenkins Acquisition are hereby directed to transfer all shares of those companies to Summit forthwith.

---

    [3]Formerly known as Rivco Inc.

2

Defendants Riverside Millwork Co., Inc., Rivco Realty, Inc., Jenkins Manufacturing, Inc. and Jenkins Realty, Inc. are hereby directed to amend their stock records to reflect that Summit is now the beneficial owner, and holder of record, of all of those shares.

        B.      Damages against Jenkins Management, Inc. are awarded in the amount of $1,964,668, and against Rivco Management, Inc. in the amount of $1,200,000 for diversion of Summit's opportunity to earn management fees from Riverside Millwork Co. and Jenkins Manufacturing, Inc. Gray is jointly and severally liable for the full $3,164,668. Prejudgment interest is to run from the last day of each calendar year during which such fees were paid to those entities.

    V.      On the eighth cause of action, alleging breach of fiduciary duty in connection with the non-payment of taxes, damages are awarded jointly and severally against Gray and CHH Holdings Ltd. for the full amount of the Consent Judgment.[4]

UNITED STATES DISTRICT JUDGE

August 6, 2004
Wilmington, Delaware

---

[4]Gray entered into a Consent Judgment with the IRS in November of 1994, in an amount exceeding $2 million, on behalf of Chariot Holdings (n/k/a CHH Holdings Ltd.), for its failure to pay taxes on behalf of Summit's predecessor, Sandusky Plastics. *See* Findings of Fact and Conclusions of Law p. 8 at ¶¶ 7-11. Summit is liable for the full amount of the Consent Judgment, which, including fraud penalties and interest, plaintiff estimates to be approximately $9-10 million. *Id.* at ¶¶ 12-14.

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SUMMIT METALS, INC., | : | Case No. 98-2870 (DDS) |
| | : | |
| | : | **Hearing Date: 4/1/05 at 9:30 am** |
| | : | **Objection Date: 3/25/05 at 4:00 pm** |
| Debtor. | : | |

### NOTICE OF FILING OF FIRST INTERIM APPLICATION OF POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

TO:   The Debtor, the Office of the United States Trustee, the Chapter 11 trustee and all parties appearing on the currently operative service list maintained by the Debtor in this case pursuant to Fed. R. Bankr. P. 9010(b) and 2002.

Pomerantz Haudek Block Grossman & Gross LLP , counsel to the Official Committee of Unsecured Creditors of Summit Metals, Inc. ("Committee"), has filed its first interim Application for Compensation and Reimbursement of Expenses ("Application"), which seeks the approval and payment of fees and expenses as counsel to the Committee for the period from December 30, 1998 through September 30, 2004.

You are required to file a response, if any, to the Application on or before **March 25, 2005 at 4:00 p.m.** At the same time, you must also serve and file a copy of the response on the following:

> H. Adam Prussin, Esquire
> Pomerantz Haudek Block Grossman & Gross LLP
> 100 Park Avenue, 26th Floor
> New York, NY 10017

**A HEARING ON THE APPLICATION AND ANY TIMELY FILED OBJECTIONS WILL BE HELD ON APRIL 1, 2005 AT 9:30 A.M.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING

February 11, 2005

Todd C. Schiltz, Esq. (#3253)
Wolf, Block, Schorr and Solis-Cohen, LLP
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312
tschiltz@wolfblock.com

WIL:47856.1/CRE042-145994

00178

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Summit Metals, Inc., | : | Case No. 98-2870 (DDS) |
| | : | |
| | : | **Hearing Date:  4/1/05 at 9:30 am** |
| Debtor. | : | **Objection Date: 3/25/05 at 4:00 pm** |

### APPLICATION OF POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP FOR
### COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
### OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS OF SUMMIT METALS, INC.
### FOR THE PERIOD FROM DECEMBER 30, 1998 THROUGH SEPTEMBER 30, 2004

Name of Applicant:          Pomerantz Haudek Block Grossman & Gross LLP

Authorized to Provide
Professional Services to:        Official Committee of Unsecured Creditors of
                  Summit Metals, Inc.
Date of Retention:          August 27, 1999

Authorized to Provide
Professional Services to:        Summit Metals, Inc.
Date of Retention:          January, 1997

Period for which compensation and
reimbursement is sought:        December 30, 1998 through September 30, 2004

Amount of Compensation sought as
actual, reasonable and necessary:    $ 1,705,400.50

Amount of Expense Reimbursement sought
as actual, reasonable and necessary:   $  72,205.75

This is an: __X__ interim ____ final application

The total time expended for fee application preparation is approximately __--__ Hours and the corresponding
compensation requested is approximately $_____--_____.  Application prepared after September 30, 2004.

If this is not the first application filed, disclose the following for each prior application:

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| | | | | | |
| | | | | | |

Local Form 101 (Fee Application Cover Sheet)

00179

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SUMMIT METALS, INC., | : | Case No. 98-2870 (DDS) |
| | : | |
| | : | **Hearing Date: 4/1/05 at 9:30 am** |
| Debtor | : | **Objection Date: 3/25/05 at 4:00 pm** |

**ADMINISTRATIVE CLAIM REQUEST OF POMERANTZ HAUDEK**
**BLOCK GROSSMAN & GROSS LLP**

Pursuant to §503(b)(4) of the Bankruptcy Code, Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz"), on behalf of itself and Silverman Harnes Harnes Prussin & Keller ("Silverman Harnes"),[1] submit this administrative claim request for reimbursement of legal fees and expenses incurred and paid for the benefit of the Estate. Applicants' persistent and effective legal services, rendered over a period of 7½ years, resulted in recovery for Summit of the only assets it now has: ownership of Riverside Millworks & Co. ("Rivco") and Jenkins Manufacturing Corp. ("Jenkins"), companies that are worth millions of dollars. Both Pomerantz and Silverman Harnes were retained on a contingency basis and to date have received no compensation whatsoever for their services. Pomerantz now asks for an award sufficient to reimburse it and Silverman Harnes for their out of pocket expenses of $72,205.75, and for their time, valued at $1,705,400.50.

In this Circuit, counsel who obtain a recovery for a client under such an arrangement, in this type of litigation, are customarily awarded a percentage of the recovery, usually in the neighborhood of 25%. In the present case, although a judgment has been obtained in the amount of approximately $42 million, that judgment has not been collected and it is doubtful that any substantial part will ever

---

[1] When Prussin left Silverman Harnes in June, 2000, Pomerantz and Silverman Harnes entered into an agreement to share any fees awarded in this action. At the end of 2000 Silverman Harnes dissolved and it has assigned its interest in any award to Prussin personally.

of the stock of two corporations, Riverside Millwork Co. ("Rivco") and Jenkins Manufacturing Corp. ("Jenkins"). Although Summit intends to sell those companies, no such sale has yet been arranged or scheduled, and no reliable valuation of those companies presently exists. Accordingly, this application is based on the lodestar approach. Should such a sale occur, Pomerantz reserves the right to amend this application to seek a fee award based on the percentage of recovery approach.

Under the lodestar approach, in contingency fee cases it is customary for the Court to apply a multiplier to the total lodestar to compensate counsel for the risk counsel have undertaken, and for the results they have achieved. However, out of concern for the financial circumstances of the Debtor, Pomerantz has elected not to ask the Court to apply a multiplier to this total lodestar amount at this time. Pomerantz reserves the right to amend this application to seek a multiplier should circumstances change, or if the Court determines that a substantial portion of the time spent is ineligible, for any reason, for inclusion in the Debtor's administrative expenses.

## I. COMPENSATION PAID AND ITS SOURCE

1.      All services for which this application seeks compensation were performed for the Debtor. Pomerantz has received no payment and no promises for payment from any source for services rendered in any capacity whatsoever in connection with the matter covered by this application. There is no agreement or understanding between applicants and any other person, other than Silverman Harnes Harnes Prussin & Keller ("Silverman Harnes"), for the sharing of compensation to be received for services rendered in these cases. Silverman Harnes represented the Debtor, and its predecessor corporation Chariot, before Pomerantz was substituted as counsel in June of 2000.

2

## II. FEE STATEMENTS

2.    Fee statements describing all services provided by Pomerantz and by Silverman Harnes are attached as Attachment A. These statements contain daily time logs describing the time spent by each attorney during the course of the representation. To the best of applicants' knowledge, this application complies with Sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules. Pomerantz' time records are initially handwritten by the attorney performing the described services, and are input on a weekly basis into a computerized data base. Silverman Harnes' time records include the time of one attorney, H. Adam Prussin, who recorded his time daily in handwriting in a daily desk calendar. All those entries have been transcribed and categorized for purposes of this application under the supervision of Mr. Prussin. The hourly rates charged for professional services are based upon the time, nature, extent and value of such services and the cost of comparable services other than in a case under the Bankruptcy Code.

3.    Applicants were retained to performed their services under a contingency fee arrangement, pursuant to which they have received no compensation, and no reimbursement of expenses, during the 7½ years they performed services.

4.    Expense summaries and back-up material are attached hereto as Attachment C. Local Form 102 is Attachment B. The Firm Resume of Pomerantz is Attachment D.

## III. ACTUAL AND NECESSARY EXPENSES

5.    A summary of actual and necessary expenses incurred by Pomerantz in both the New York and the Delaware actions is attached as part of Exhibit A. Pomerantz charges 20¢ per page for copies. Its copying machines automatically record the number of copies made what the person that is doing the copying enters the client's account number into a device attached to the photocopier.

3

With respect to on-line legal research services, Pomerantz charges the standard usage rates these providers charge for computerized legal research. Pomerantz bills its clients the actual amounts charged by such services, with no premium. Pomerantz believe that these rates are the market rates that the majority of law firms charge clients for such services, and that the charges included were ordinarily and necessarily incurred in the prosecution of the action.

6.    Similarly, a summary of actual and necessary expenses incurred by Silverman Harnes in both the New York and the Delaware actions is attached as part of Exhibit A. Silverman Harnes did not have automated copy counting devices, but instead its office staff, which did the copying, prepared an estimate of the number of copies made at any time. The summary attached is a copy of a handwritten expense ledger maintained by the firm in the ordinary course of business.

## IV. DESCRIPTION OF THE PROCEEDINGS

7.    The Petition in Bankruptcy in this case was filed on December 30, 1998; accordingly, the administrative expenses awardable for applicants' work in these proceedings is limited to the time and expenses incurred in these proceedings after that date. There are two separate, but related proceedings for which compensation is being sought here: the adversary proceeding commenced and prosecuted to a successful conclusion after the Petition was filed; and the New York actions, which preceded, and were the basis for, the Delaware action. Although the New York actions were stayed as a result of Summit's bankruptcy, on August 10, 1999, Judge Walrath of this Court expressly authorized Pomerantz to continue to prosecute the New York contempt proceedings for the benefit of Summit's estate.

8.    . In order for the Court to have a complete understanding of the New York and Delaware proceedings, this application will recount their entire history from the beginning.

4

## A. The New York Proceedings

### 1. Proceedings Prior to the Filing of Summit's Bankruptcy Petition

9.    Prior to August of 1995 the Debtor, Summit Metals, Inc., was known as The Chariot Group, Inc. ("Chariot"). It was (and its successor Summit is) a Delaware corporation with headquarters in New York and New Jersey. Through its operating subsidiary, Energy Saving Products, Inc. ("ESP"), Chariot was in the business of manufacturing windows and doors. Chariot was a public company, but Richard E. Gray ("Gray") was the controlling stockholder and sole director. Gray also owns and controls a large number of privately held companies (the "Gray Entities"), some of which are shell corporations and others of which are holding companies.

10.    In August of 1995 two lawsuits were commenced by a minority shareholder of Chariot in the Supreme Court of the State of New York, County of New York. The first of these lawsuits was a shareholder derivative action brought on behalf of Chariot, alleging that Gray and various Gray Entities had looted Chariot of over $7 million during the preceding 5 years. The second lawsuit, although denominated a shareholder class action, was partly a second derivative action on behalf of Chariot. It challenged, as unfair and a breach of fiduciary duty by Gray and his Entities, the sale of ESP to another Gray Entity in exchange for a worthless, unsecured promissory note. The lawsuit also challenged, on behalf of a class of minority stockholders, the fairness of the merger of Chariot into Summit, which "froze out" the minority shareholders in exchange for promissory notes to be issued by Summit. As a result of that freeze-out merger, the former minority shareholders of Chariot are now creditors of Summit.

11.    In October of 1996 the New York court issued a preliminary injunction barring further extraordinary payments or transfers by Chariot or ESP to Gray or to the Gray Entities.

5

12.    In February of 1997 the law firm of Silverman Harnes Harnes Prussin & Keller ("Silverman Harnes") was substituted as counsel for the plaintiff and an additional plaintiff was added to the case. H. Adam Prussin, a member of Silverman Harnes, was the partner in charge of the case.

13.    During 1997 various discovery disputes were litigated and, by the end of the year, defendants had produced documents and depositions were scheduled to begin in early 1998. On April 1, 1998, Prussin took the deposition of the first witness, Richard E. Kelly, who was the President of Chariot, the Chairman of ESP, and a senior executive of most of Gray's other companies. During that deposition over 70 documents that had been produced were marked as exhibits. Deposition notices had also been served on Gray and Chariot's in-house attorney, Barry Quinn; but after the revelations of Kelly's deposition, neither Quinn nor Gray showed up.

14.    At his deposition Kelly testified that, after the entry of the preliminary injunction, Gray had caused ESP to pay out over $5 million to other Gray Entities, outside of the ordinary course of business, and that much of that money had been used to finance the acquisitions of Rivco and Jenkins. Although those two companies were in the same line of business as Chariot and ESP, and although ESP's money had been used to make the acquisitions, Gay had arranged it so that neither Chariot nor ESP acquired any ownership interest in either Rivco or Jenkins. Instead, Gray made the acquisitions on behalf of two Gray Entities, Rivco Acquisition Corp. and Jenkins Acquisition Corp.. It was through this deposition of Jim Kelly that these two acquisitions, and their method of finance, were first revealed.

15.    After deposing Kelly, Silverman Harnes prepared and filed a motion, in mid-1998, to hold Gray and several of his companies in contempt for violating the preliminary injunction. Just

6

as the Petition in Bankruptcy was filed, in the first week of January, 1999, the court granted the motion and ordered that, to purge the contempt, they would have to return $4.3 million to ESP within 10 days. The contempt order and judgment was entered in the first week of January, 1999, within a few days of the filing of Summit's bankruptcy petition.

### 2. Proceedings After the Filing of Summit's Bankruptcy Petition

16.     Gray and his entities appealed the contempt decision, but did not seek a stay. This appeal required Silverman Harnes to file an opposition brief and to confer in compiling the joint appendix. There was no oral argument. In May of 2000, the trial court's decision was affirmed. See *Richardson v. Gray*, 272 A.D.2d 142, 707 N.Y.S.2d 436 (1st Dept. 2000).

17.     In July, 1999, Silverman Harnes filed a motion alleging that the contempt had not been purged and requesting the imposition of additional, coercive remedies to compel compliance, including the threat of incarceration. In connection with this motion, Silverman Harnes served an extensive document subpoena and took two depositions (of Kelly and Gray).

18.     Gray also sought to derail the second contempt proceedings by moving, in July of 1999, in this Court for an order blocking the contempt proceedings in New York on the ground that it violated the automatic bankruptcy stay. That motion engendered briefing by Silverman Harnes and attendance at a hearing in Wilmington. On August 10, 1999, Judge Walrath ruled, in open court, that the contempt proceedings were not stayed.

19.     Gray also cross-moved for summary judgment, arguing that the cases should be dismissed because they were based on confidential information improperly disclosed by Ambrose Richardson, who had worked years earlier as counsel to Chariot. Although this argument had previously been made in opposition to the original preliminary injunction motion, and rejected, Gray

7

now claimed that he had "newly discovered" evidence on the issue which warranted revisiting it. This issue also required extensive briefing before the argument was rejected again.

20.      In responding to the second contempt motion on the merits, Gray argued that (1) he had, in fact, purged the contempt, through a series of transactions; and (2) that he did not have the financial wherewithal to do anything "further" to purge the contempt. The issue of Gray's financial condition was referred to a special referee, who held a mini-trial on this issue that lasted half a day. In advance of the referee's hearing, Silverman Harnes served a trial subpoena requiring the production of a vast quantity of financial records, and defendants filed a motion to quash that subpoena, which had to be briefed and argued.

21.      One of the main issues before the referee was Gray's claim that he did not own any of the Gray Entities, but acted only as an "authorized representative" for them; therefore, he argued, the assets of those companies were not "his" assets and were irrelevant in determining whether he had the ability to purge the contempt. Up to that time, Gray had refused to identify the alleged "true" owners of these companies, claiming that this information was "irrelevant". But at the special master's mini-trial he was forced, at the insistence of Silverman Harnes, to identify these supposed "true owners". Included among the people and institutions he identified was the Episcopal Diocese of New York and the University of Pennsylvania, among others. Nonetheless, the special master ruled that Gray exercised such control over these entities that he did have access to sufficient corporate funds to purge the contempt. Gray's purported identification of the "true" owners of these companies later became crucial evidence in both the New York actions and in the adversary proceeding commenced in this Court.

22.      After the special referee issued his report, Silverman Harnes prepared a motion to

8

confirm his report, which occasioned yet another round of briefing.

23.    In May of 2000 Prussin moved from Silverman Harnes to Pomerantz, and Pomerantz

was substituted as counsel in the New York actions (as well as in the Delaware adversary

proceeding, discussed below).

24.    On October 18, 2000, the New York Court issued an opinion holding that Gray and

RAC had the financial wherewithal to purge the contempt, but had failed to do so. Nonetheless, it

also held that it did not have the power to impose additional sanctions. The court refused to act even

though it concluded that

> ... Gray's conduct in connection with the Contempt Judgment is
> another example in the continuing pattern of bad faith demonstrated
> by him since the commencement of this litigation. Gray made no
> good faith effort to purge the contempt while his appeal of the
> Contempt Judgment was pending before the Appellate Division, First
> Department, although no stay had been issued with respect to that
> judgment.

25.    Pomerantz appealed and, on June 14, 2001, the Appellate Division affirmed the

determination that the contempt had not been purged, but reversed the holding that additional,

coercive contempt sanctions could not be imposed. *Richardson v. Gray*, 726 N.Y.S.2d 105 (1st Dept.

2001). The Appellate Division directed the trial court "to hold a hearing, within ten days of service

of this order with notice of entry, for a determination of whether defendant Gray should be confined

to prison for his contempt pursuant to Judiciary Law § 753." It further held that

> Given the amount of time that has passed since the original contempt
> order was entered in this case, the outrageous nature of [Gray's]
> abuse of his fiduciary duties as a corporate officer, and his seeming
> indifference to, and blatant disregard for, numerous judicial
> directives, we direct the court to hold a hearing, where Mr. Gray will
> have the burden of either establishing that he does not have, and has
> not had, the financial ability to return the requested funds, since entry

9

00188

of the first contempt order, or be confined to prison for contempt pursuant to Judiciary Law § 753 until such time as his outstanding debts are satisfied. The hearing should also address the discrepancy revealed by the record between Mr. Gray's lavish lifestyle and his claims of financial distress.

26.    In advance of this hearing Pomerantz served another trial subpoena requiring Gray to produce all his corporate records. As a result, Gray produced many thousands of pages of records at the trial. Equally important, Pomerantz also served trial subpoenas on all the individuals and entities that could be found that Gray had named, at the special referee's hearing, as being the "true" owners of the Gray Entities.

27.    Before the trial started, Gray tried several tactics to try to derail it. First, he threatened to bring on a contempt proceeding in the ESP Tennessee bankruptcy. To pre-empt such a tactic, on June 26, 2001, Pomerantz filed a motion in that court seeking a determination that continuation of the contempt proceeding did not violate the automatic bankruptcy stay. Gray caused ESP to oppose the motion. Prussin flew to Nashville to argue the motion, at the conclusion of which the Court ruled that the contempt proceedings did not violate the stay and that no relief from stay was therefore necessary.

28.    Simultaneously, Gray caused ESP to remove the New York actions to federal court, once again seeking to derail the contempt trial. This maneuver forced Pomerantz to file a remand petition and to appear before Bankruptcy Judge Blackshear of the Bankruptcy Court for the Southern District of New York. The action was promptly remanded to New York state court.

29.    The contempt trial started on September 4, 2001, and consumed a total of all or part of eight hearing days, concluding on October 16, 2001. The trial was largely devoted to perusing Gray's personal and corporate records to determine what assets and liabilities there were, and who

10

owned them, who the officers and directors were, and whether or not they had been funneling money to Gray. The task was made much more difficult because there were no stock ledgers for most of the companies; no corporate minute books; no financial statements; and no evidence whatsoever that anyone other than Gray actually exercised control over them. Pomerantz served trial subpoenas on the University of Pennsylvania, the Episcopal Diocese of New York, and others that Gray had identified as the true owners of the Gray Entities. In exchange for Pomernatz withdrawing the trial subpoenas, Gray was forced to sign a series of stipulations attesting that each of these witnesses, if called to testify, would deny that they ever owned any financial interest in any of the Gray Entities.

30.     After reviewing the testimony and documents presented at the hearing, the arguments of counsel and the prior proceedings in these actions, in November of 2001 the Court committed Gray until he purged the contempt. The Court's post-trial findings of fact and conclusions of law[2] specifically found that Gray had the wherewithal to purge the contempt because, despite his denials, he owned the Gray Entities, several of which had significant value, including Rivco and Jenkins.

31.     The court also found that Gray was not a credible witness and that his testimony was, in large part, not worthy of belief. On the record at the final day of the hearing, the New York court, addressing Gray's New York counsel, explicitly stated that it "found your client totally incredible", "I don't believe your client", and "every time he's testified about something, it's been refuted by documentary evidence".

32.     Gray was incarcerated for a period of about two years, during which he was also serving time for a criminal conviction for bankruptcy fraud and tax evasion. Gray was released in

---

[2] These conclusions and findings were prepared by Pomerantz and were adopted, verbatim, by the court at the conclusion of the proceedings.

11

November of 2003, when he agreed to deposit his assets into escrow pending the outcome of the Delaware proceedings.

### B. The Delaware Proceedings

33.     The Delaware Proceedings all took place after the filing of Summit's bankruptcy petition.  All the work performed by Silverman Harnes in the Delaware Proceedings was done by H. Adam Prussin, a partner in the firm.[3] After he moved to Pomerantz in June of 2000, he continued as partner in charge and was assisted, from time to time, by associates of that firm.

34.     As noted above, a result of Summit's bankruptcy, the New York actions were stayed (except for the contempt proceedings).  The bankruptcy schedules submitted by Summit, and the examination by the U.S. Trustee, made it clear that Summit had no business, no employees, and no assets. All of that had disappeared with the "sale" of ESP, the operating subsidiary, in 1995. The $15 million note received for the sale of ESP was not even listed as an asset.  The reality was that Summit's *only* assets of any value at all were its claims against Gray and the Gray Entities. It was clear that Summit itself was not going to initiate such proceedings, because Gray, the target of the lawsuits, was the sole shareholder and sole director of Summit and was not about to sue himself.

35.     To circumvent this problem, in early February, 1999, Silverman Harnes submitted motions on behalf of members of the Carucci family, who collectively were among Summit's largest creditors, and on behalf of the plaintiffs in the New York actions, to dismiss the bankruptcy case or, in the alternative, to get the stay lifted so that the New York actions could proceed.  To help develop the record for such a motion, Silverman Harnes participated in the U.S. Trustee's initial

---

[3] Silverman Harnes dissolved at the end of 2000 and the time records of its attorneys are no longer available. Julie Sullivan, an associate of the firm, performed services in connection with this representation but, in the absence of her records, her time cannot be included in this application.

12

deposition of Barry Quinn, Summit's "responsible party",which took place in Wilmington on February 19, 1999. For their part, Summit's counsel moved for an order granting them expedited discovery to examine Mr. Walter Carucci, who produced documents and appeared with Mr. Prussinfor a deposition in Wilmington. At a hearing on March 25, 1999, Judge Walrath, "with trepidation", declined, without prejudice, to dismiss the case or lift the stay.

36.    On May 18, 1999, Silverman Harnes filed a motion on behalf of Benjamin Richardson and C.C. Partners, the plaintiffs in the New York action, seeking permission to prosecute the claims in those actions in Delaware Bankruptcy Court. That motion came on for hearing on June 8, 1999, and was denied on the ground that shareholders did not have the authority, under the Bankruptcy Code, to bring such a proceeding, because that decision was now the province of either the debtor or the creditors.

37.    Finally, in August of 1999 the Official Committee of Unsecured Shareholders of Summit (the "Committee") obtained sole authority to pursue claims against Gray and the Gray Entities on behalf of the Debtor, and obtained approval of the Bankruptcy Court to retain Silverman Harnes as "special litigation co-counsel" to prosecute those claims. The retention entailed negotiations and communications with members of the creditors committee.

38.    In November of 1999 Silverman Harnes commenced an adversary proceeding in this Court on behalf of Summit against Gray and over a dozen Gray Entities. The complaint continues the claim of looting that had been raised in the first of the New York actions, and also continues the claim, first raised in the second New York action, that the sale of ESP was unfair and should be rescinded. The complaint also adds claims based on subsequent events disclosed in the New York actions, including a "usurpation of corporate opportunity" claim that Gray had used ESP's funds to

13

acquire Rivco and Jenkins, which were in the same line of business as Summit, but had vested ownership of those companies in other Gray Entities rather than in Summit.

39.     From the start, Gray used every tactic he could think of to delay the adversary proceedings. First, defendants did not answer the complaint on time. When Silverman Harnes had a default entered, defendants successfully moved to lift it, arguing that their failure to answer the complaint on time was due to an oversight. Their motion required the filing of an extensive brief to demonstrate, inter alia, that defendants did not have a meritorious defense to any of the claims., and attendance at an oral argument in Wilmington. The Court lifted the default.

40.     Then defendants successfully moved to withdraw the reference, and the case was transferred to the docket of District Court Judge Farnan in the spring of 2000. Silverman Harnes opposed the motion, because it wanted to remain before Judge Walrath, who was now familiar with the parties and issues, and because of the delay that would be caused to start over again before a new judge. This motion also required extensive briefing, in which Silverman Harnes participated.

41.     Defendants also objected to every discovery request directed at them, and moved to quash every discovery request directed at third parties which, under the local rules, automatically stayed enforcement of those subpoenas.

42.     Defendants did produce some documents which, upon review, turned out to be, mostly, duplicate copies of documents that had already been produced in the New York actions.

43.     Defendants' objections and motions to quash required Silverman Harnes to file a series of motions to compel production. These motions were re-argued before Magistrate Judge Thynge in December of 2002, after Judge Farnan, after sitting on the motions for over two years, reassigned the case without ruling on them.

14

44.     Defendants also moved for sanctions against Silverman Harnes for reviewing documents that some of the subpoenaed parties had produced in response to the subpoenas before defendants moved to quash them. Silverman Harnes prepared a brief in opposition to this motion. Judge Farnan denied the motion.

45.     Silverman Harnes also started the preparation of voluminous interrogatories and requests to admit, which was later completed by Pomerantz.

46.     On November 10, 1999, almost immediately after Silverman Harnes commenced the adversary proceeding, Gray caused Summit's counsel to file a motion to convert the case to a Chapter 7. The Committee opposed conversion because it might result in substantial delay while a trustee was appointed and brought up to speed on the history and merits of these claims. Conversion would also mean that the Committee would be dissolved and would lose control over the prosecution of these claims to a trustee who might, or might not, continue vigorous prosecution. Silverman Harnes paricipated in the drafting of the opposition papers, and the motion was deferred indefinitely at a hearing before Judge Walrath on December 9, 1999. Periodically, as months went by waiting for the court to rule on several critical summary judgment and discovery motions, the bankruptcy court revisited the question of conversion; and once the case was reassigned from Judge Walrath, each time the court had to be re-educated as to the history of these proceedings and the importance of continuing with the claims.

47.     In late 1999 Silverman Harnes filed Summit's first motion for partial summary judgment, which addressed the claim regarding the sale of ESP. The motion was argued in May of 2000, but was not ruled on for over two years, when it was denied. Although Silverman Harnes did not prevail on this motion, it did learn, for the first time, what defenses the defendants planned to

15

00194

raise with respect to this claim.

48.    Silverman Harnes also spent a substantial amount of time attending other bankruptcy court conferences, several of which included giving a description of the claims raised in the adversary proceeding and of the status of those proceedings.

49.    Silverman Harnes also spent a substantial amount of time conferring with the creditors committee, seeking approval of the filing of the case, describing the case and apprising them of the status of the case. Some of these conferences were also devoted to discussions of settlement proposals and of the committee's response to those proposals.

50.    In particular, there were extensive discussions involving a proposed reorganization plan that might be submitted by a group of investors affiliated with Ambrose Richardson, the chairman of the creditors committee. This group (the "TSPG" group) prepared a detailed written disclosure statement which Silverman Harnes reviewed and commented upon, and there were several lengthy negotiation sessions with members of that group.

51.    Silverman Harnes also spent time doing its own investigation of facts concerning the tax dispute between the IRS and Richard Gray and the Gray Entities. That dispute had ended in a multi-million-dollar judgment being imposed on Summit in an action decided by Judge Denny Chin of the U.S. District Court for the Southern District of New York. The facts pertaining to that case were relevant to the cause of action Silverman Harnes asserted in the Delaware Proceedings, seeking reimbursement from Gray and certain of his entities for the liability imposed upon Summit.

52.    During the 18 month period between the filing of the Debtor's petition and the substitution of Pomerantz for Silverman Harnes, the latter firm also engaged in extensive miscellaneous calls and correspondence, primarily with Mr. Richardson and co-counsel at Wolf,

16

Block (Paul Brenman and Todd Schiltz) concerning the status of the case and strategies to be pursued.

53.    As noted above, in June of 2000 Pomerantz was substituted for Silverman Harnes as counsel to the Committee. After this point Mr. Prussin continued as partner in charge of the litigation, but he was assisted, from time to time, by Ronen Sarraf and other associates at the firm.

54.    In October of 2000, while the parties were still waiting for rulings on the summary judgment and discovery motions submitted the previous May, ESP, Summit's former operating subsidiary, was forced into bankruptcy in Tennessee. This opened up a whole new avenue by which Gray could seek to derail the Delaware adversary proceedings, as well as the contempt proceedings in New York. On April 3, 2001, Gray caused ESP's bankruptcy counsel to commence an adversary proceeding against the Committee and its counsel personally, seeking to enjoin them from continuing with the Summit adversary proceeding and demanding hundreds of thousands of dollars from plaintiff's counsel as damages. A lengthy written response was filed on April 1, 2001, and on June 18, 2001, the Committee's counsel filed a motion to dismiss that adversary proceeding. The Tennessee bankruptcy court held an evidentiary hearing in July, 2001, at the conclusion of which it rejected virtually all of the contentions of ESP's counsel, but directed that the complaint in Delaware be amended to exclude any claims for relief against ESP. This produced protracted wrangling over the scope of the material that had to be excluded. At about the same time, as noted above, plaintiffs in the New York actions obtained a determination by the Tennessee bankruptcy court that the contempt proceedings in New York were not stayed by the ESP bankruptcy.

55.    There were other important proceedings in the ESP bankruptcy that related to the Summit adversary proceeding. Pomerantz participated in the filing and prosecution of claims against

17

ESP and various Gray Entities in Tennessee, on behalf of Summit including, most notably, a claim that ESP had improperly paid out "dividends" to other Gray Entities whereas, in fact, the equitable owner of ESP was Summit and the New York court had therefore prohibited any extraordinary payments by ESP, including dividends, to any entity other than Summit. That case was settled shortly before trial. In exchange for dismissing that claim, Summit obtained an assignment, from ESP, of all its rights against Gray and the Gray Entities arising from the usurpation of the opportunity to acquire Rivco and Jenkins. This assignment undercut Gray's principal defense to that claim in the Delaware adversary proceeding. Pomerantz also participated in a motion, brought on by Ambrose Richardson, chairman of the Committee, to have the ESP bankruptcy proceeding transferred from Tennessee to Delaware, for consolidation with the Summit proceedings. That motion was eventually denied.

56.    In addition, Pomerantz filed an objection in Tennessee bankruptcy court to the proposed sale of ESP's subsidiary, B.F. Rich. Although ESP was now bankrupt, B.F. Rich was still operating successfully and was a very valuable company. The preliminary injunction entered by the New York court forbade the sale of any ESP asset , outside the ordinary course of business without approval by the New York court. Pomerantz and its co-counsel, Wolf Block, sought to block the sale on the grounds that the sale was barred by that order and that the sales price was grossly inadequate, thereby damaging Summit, which still had a claim pending for rescission of its sale of ESP. This proceeding entailed briefing and an appearance in Nashville. Ultimately, one proposed sale of B.F. Rich was blocked, but another one went through.

57.    Because of Gray's repeated invocation of the "defense" that these claims were all barred because of misconduct by Ambrose Richardson, Pomerantz served a motion to strike that

18

affirmative defense from defendants' answers in the Delaware proceedings. That motion entailed two rounds of briefing, the first of which occurred during the period September-November of 2000. In late February of 2002, Judge Farnan issued an order requiring a second round of briefing. The Court granted the motion, preventing Gray from engaging in further motion and discovery practice on this subject, which could have diverted the proceedings even further.

58.     As noted above, in August of 2002 Judge Farnan reassigned the case, and it was designated to be transferred to the docket of the new Judge nominated for this District, Judge Kent A. Jordan. However, at the time Judge Jordan had not been approved by the Senate, and it was not clear how long it might take before he would be in a position to assume control of the case. Fearful of yet another extended delay, the Committee decided that Pomerantz should prepare a motion to lift the bankruptcy stay. If the Delaware Proceedings were going to be indefinitely bogged down, the Committee preferred to take a chance to get the New York actions going again so that the merits could be adjudicated more quickly. Pomerantz prepared extensive motion papers, but they were never filed because Judge Jordan's appointment was approved soon afterwards.

59.     Based on defendants' responses to the Committee's interrogatories and requests to admit, in early 2002 Pomerantz filed a second motion for partial summary judgment, this time with respect to the $7 million looting claim. The filing of that motion, which was never ruled upon, produced a mass request by all defense counsel to be relieved. Pomerantz was concerned that such withdrawal not lead to open-ended delay while Gray was given an indefinite period to find replacement counsel. Accordingly, Pomerantz submitted a brief, and argued, that withdrawal should be accompanied by an order that substitute counsel would have to appear within a short period of time and that, failing that, defaults should be entered. Judge Farnam agreed to relieve them, and

19

accepted Pomerantz' condition.

60.    Initially, the problem was averted when Henry Heiman, who had been representing Gray personally, withdrew his own motion to withdraw and agreed to represent all the defendants. But in early 2003, after Magistrate Judge Thynge had entered an order specifying that trial was to take place that April, Mr. Heiman renewed his motion to withdraw, which was granted.

61.    When no one filed an appearance on behalf of any of the corporate defendants, Pomerantz sought entry of defaults and default judgments against them. This motion once again entailed a detailed presentation of the merits of the claims, and the damages inflicted, to persuade the Court to enter a default judgment for the entire amounts claimed and to grant the other equitable relief requested against the defaulting corporate entities. The District Court entered defaults against the corporate defendants, but it did not enter default judgments.  From that point on, Gray represented himself pro se.

62.    In the summer of 2002, Judge Farnan denied the first motion for partial summary judgment and reassigned the case. Pomerantz' discovery motions were assigned to Magistrate Judge Thynge, who granted all of plaintiff's motions and denied all the motions to quash. At the time, she also entered a critical ruling allowing all discovery in the New York Actions, including documents produced and depositions taken, to be used in the Delaware adversary proceeding, and established a complete schedule for the remainder of the case, including trial. By the end of 2002, the case had been reassigned to Judge Kent A. Jordan, who had been newly appointed to the Court.

63.    In January of 2003 Pomerantz conducted the only deposition that was taken in the Delaware adversary proceeding: the continuation of Jim Kelly's deposition that had been started in the New York actions on April 1, 1998. Because Kelly was going to be Pomerantz' key witness at

20

trial, and because he lived outside the 100 mile radius from the Wilmington courthouse and therefore could not be subpoenaed to testify at trial, his deposition was prepared as if it was his trial testimony. Because Kelly was a cooperating witness, preparation for his deposition included detailed interview sessions with him.

64.     Judge Jordan required the parties to prepare a final pretrial statement by August of 2003, and had scheduled a trial date for the following month. Pomerantz prepared its part of that statement, but Gray, who was still incarcerated, claimed that he was unable to prepare his part. As a result, no final pretrial order was ever entered. Meanwhile, Gray made several successful efforts to delay the trial, ultimately getting it moved from September, 2003, the date Judge Jordan had originally set, to January 12, 2004.

65.     The Court held a final pretrial conference on January 9, 2004; Gray appeared by telephone, from his home in New York. At that conference the Court rejected Gray's application to reopen the defaults, which had been entered against all the corporate defendants six months earlier, and to postpone the trial still further.

66.     At about 8:45 a.m. on January 12, 2004, fifteen minutes before the trial of this action was scheduled to start, Gray made a telephone call to the Court advising that he had just filed a personal bankruptcy petition in the Northern District of New York. Unless something were done, the trial would have to be postponed indefinitely. The Court recessed the trial so that plaintiff could find out whether any other defendants had filed for bankruptcy and to give plaintiff the opportunity to seek a lifting of the automatic bankruptcy stay. Pomerantz and Wolf Block contacted the Northern District bankruptcy judge in charge of Gray's case and apprised him of the situation. They prepared papers seeking a lifting of the stay and faxed them to the court within a few hours. The court heard

21

argument, by telephone, that afternoon, and lifted the stay. By late afternoon that day, January 12, plaintiff had succeeded in obtaining, from the bankruptcy judge in the Northern District of New York, an order lifting the automatic stay. Upon being apprised that the stay had been lifted, Judge Jordan scheduled the trial to commence the next day, January 13, 2004.

67.    After all this time and effort, Gray himself did not show up for the trial. Pomerantz put on its case, with the assistance of Todd Schiltz of Wolf Block Schorr and Solis-Cohen, Summit's bankruptcy counsel. They introduced the testimony of two witnesses and approximately 140 exhibits. The list of exhibits consists mostly of the injunction and contempt decisions from the New York actions, and documents marked at Mr. Kelly's 1998 deposition in the New York actions. Specifically, plaintiff's trial exhibits 1-10.1, 25-35, 37-38, 41-56, 58-99, 120, 125, and 126 – the vast majority of exhibits used at the trial – were all either decisions in, transcripts from, or documents produced and marked as deposition exhibits in, the New York actions. In short, the evidentiary record generated in the New York actions constituted most of the evidence ultimately used in the trial here in Delaware, and made it possible for Summit to prevail in the Delaware adversary proceeding without conducting far more extensive discovery in the adversary proceeding.

68.    On August 24, 2004, Judge Jordan issued his findings of fact and conclusions of law, and his final judgment. Almost exactly nine years since the New York actions had begun, and five years since the Delaware adversary proceeding had begun, Judge Jordan entered a judgment of $42 million against Gray and his entities, and, more importantly, imposed a constructive trust on the stock of Rivco and Jenkins in favor of Summit. He ordered the Gray Entities to surrender their Rivco and Jenkins shares to Summit forthwith.

69.    But this was not yet the end. Gray filed a notice of appeal pro se, but purported to

22

00201

represent not only himself but the corporate defendants as well. Summit was forced to make submissions to that Court concerning the insufficiency of this appeal. As a result, the clerk gave Gray 30 days to have counsel appear for the corporations. When that failed to happen, the appeal of the corporations was dismissed. Then, Gray failed to file his brief on time; and, as a result, his appeal was dismissed as well for failure to prosecute.

70.     Finally, as noted above, when Gray was released from prison in November of 2003 he entered into an escrow agreement in the New York actions, pursuant to which he had deposited a power of attorney, authorizing the escrow agent (his attorney in the New York Actions, Richard Asche) to execute documents transferring the Rivco and Jenkins shares if the Delaware Court so ordered. After being put on notice of the rulings in the Delaware District Court and the Third Circuit, Mr. Asche hesitated to comply, and asked Pomerantz to obtain a court order requiring him to do so. Pomerantz then filed a motion in the New York actions, at the request of Summit's Chapter 11 Trustee, to dissolve the escrow agreement. When this motion was granted, Rivco and Jenkins finally recognized Summit as their true owner.

## IV.  BREAKDOWN OF TIME SPENT ON SPECIFIC ACTIVITIES

The time spent on specific activities, described below, includes time spent in the New York actions and in this Delaware adversary proceeding. All time included below was spent post-petition.

23

00202

## A. The Delaware Proceedings

| TASK | HOURS | | | | VALUE |
|---|---|---|---|---|---|
| | HAP | RAS | VKE | MSW | |
| Attempts to Lift Stay of N.Y. Actions or Re-Commence Derivative Actions | 199.5 | -- | -- | -- | 109,725.00 |
| Negotiations, Agreements re Retention by Creditors Committee | 26.1 | -- | -- | -- | 14,355.00 |
| Draft Pleadings and Document Requests | 107.7 | -- | -- | -- | 59,235.00 |
| Obtain Default Judgment, Oppose Motion to Lift Default | 81.2 | -- | -- | -- | 44,660.00 |
| Opposition to Withdrawal of Reference | 20.0 | -- | -- | -- | 11,000.00 |
| Draft Subpoenas | 9.4 | -- | -- | -- | 5,170.00 |
| Motions to Compel Discovery | 13.9 | -- | -- | -- | 7,645.00 |
| Review Documents Produced | 16.4 | -- | -- | -- | 9,020.00 |
| First Motion for Partial Summary Judgment, re Sale of ESP | 211.0 | -- | -- | -- | 116,050.00 |
| Opposition to Defendants' Motion to Convert to Chapter 7 | 35.3 | -- | -- | -- | 19,415.00 |
| Opposition to Defendants' Motion for Discovery Sanctions | 26.1 | -- | -- | -- | 14,255.00 |
| Meetings with Creditors Committee | 23.8 | -- | -- | -- | 13,090.00 |
| Other Pretrial/Bankruptcy Court Conferences | 52.5 | 2.0 | -- | -- | 29,455.00 |
| Settlement Negotiations re Proposed Reorganization Plan by Richardson Group | 45.9 | -- | -- | -- | 25,245.00 |

24

00203

| | | | | | |
|---|---|---|---|---|---|
| Factual Investigation | 14.0 | -- | -- | -- | 7,700.00 |
| Communications, Documentation re Substitution of Pomerantz for Silverman | 1.0 | -- | -- | -- | 550.00 |
| Second Motion for Partial Summary Judgment (Looting) | 62.0 | -- | -- | -- | 34,100.00 |
| Communications with Potential Expert Witness | 2.6 | -- | -- | -- | 1,430.00 |
| Depositions and Deposition Scheduling and Preparation | 100.1 | -- | -- | -- | 55,055.00 |
| Written Discovery (Doc. Req's, Interrogs, Req's to Admit) | 68.6 | 1.0 | -- | -- | 38,020.00 |
| Conferences with Magistrate Judge Thynge; Initial Disclosures; PTO proposals | 22.2 | -- | -- | 1.3 | 12,697.50 |
| Opposition to Motion in Bankruptcy Court to Stay Contempt Proceedings | 1.5 | -- | -- | -- | 825.00 |
| Opposition to Proceeding in Tennessee Bankruptcy Court to Stay Delaware Action | 100.3 | -- | -- | -- | 55,165.00 |
| Opposition to Two Sets of Motions of Defense Counsel to Withdraw | 25.2 | 3.0 | -- | -- | 14,730.00 |
| Motions for Default and Default Judgment Against Corporate Defendants | 82.5 | -- | -- | -- | 45,375.00 |
| Opposition to Motion to Stay Proceedings Pending Defendants' Retention of Counsel | 8.6 | -- | -- | -- | 4,730.00 |
| Preparation of Final Pretrial Order/Final Pretrial Conference(s) | 52.2 | -- | -- | -- | 28,710.00 |
| Conferences, Communications re Repeated Efforts of Gray to Postpone Trial | 23.2 | -- | -- | -- | 12,760.00 |
| Motion to Lift Bankruptcy Stay Created By Gray Bankruptcy | 7.0 | -- | -- | -- | 3,850.00 |
| Trial and Trial Prep. | 105.2 | 11.0 | 22.0 | -- | 65,450.00 |

25

| | | | | | |
|---|---|---|---|---|---|
| Preparation of Proposed Post-Trial Findings | 79.7 | -- | -- | -- | 43,835.00 |
| Third Circuit Appeal | 1.0 | -- | -- | -- | 550.00 |
| Misc. Calls, Correspondence (primarily with clients, co-counsel) | 57.2 | -- | -- | -- | 31,460.00 |
| Legal Research | -- | 12.7 | -- | -- | 3,683.00 |
| Motion to Strike Affirmative Defense | 46.3 | 18.0 | -- | -- | 30,685.00 |
| Settlement Discussions | 30.5 | -- | -- | -- | 16,775.00 |
| Prosecution and Settlement of Summit Claim in ESP Bankruptcy | 41.4 | -- | -- | -- | 22,770.00 |
| Attempt to Block Sale of B.F. Rich in Tenn. Bankr. Court | 13.7 | -- | -- | -- | 7,535.00 |
| Motion to Transfer ESP Bankruptcy Proceedings to DE and Consolidate | 22.2 | -- | -- | -- | 12,210.00 |
| Committee's Motion to Lift Stay | 13.6 | -- | -- | -- | 7,480.00 |

| Sub-Total Hours: | | Rate: | | Lodestar: | |
|---|---|---|---|---|---|
| H. Adam Prussin | 1868.0 | H. Adam Prussin | $550 | H. Adam Prussin | 1,027,400.00 |
| Murielle Steven Walsh | 1.3 | Murielle Steven Walsh | $375 | Murielle Steven Walsh | 487.50 |
| Ronen A. Sarraf | 47.7 | Ronen A. Sarraf | $290 | Ronen A. Sarraf | 13,833.00 |
| Vincent K. Eng | 22.0 | Vincent K. Eng | $200 | Vincent K. Eng | 4,400.00 |

| TOTAL: | 1939.00 | | $1,046,120.50 |
|---|---|---|---|

26

## B. The New York Proceedings

| TASK | HOURS | | | | VALUE |
|------|-------|------|------|------|-------|
| | HAP | RAS | VKE | MSW | |
| Appeal of First Contempt Order | 96.9 | -- | -- | -- | 53,295.00 |
| Second Contempt Motion: Lead-In | 50.7 | -- | -- | -- | 27,885.00 |
| Second Contempt Motion: Discovery | 53.7 | -- | -- | -- | 29,535.00 |
| Second Contempt Motion: Moving and Reply Papers | 134.5 | -- | -- | -- | 73,975.00 |
| Second Contempt Motion: Referee Hearing | 54.6 | -- | -- | -- | 30,030.00 |
| Second Contempt Motion: Motion to Confirm Referee's Report | 10.0 | -- | -- | -- | 5,500.00 |
| Second Contempt Motion: Pre-Trial Settlement Discussions | 5.4 | -- | -- | -- | 2,970.00 |
| Second Contempt Motion: Reconsideration, Appeal | 115.7 | 53.0 | -- | -- | 79,005.00 |
| Second Contempt Motion: Remand After Removal to Federal Court | 26.8 | 46.0 | -- | -- | 28,080.00 |
| Second Contempt Motion: Relief From ESP Bankruptcy Stay | 41.3 | 4.5 | -- | -- | 24,020.00 |
| Second Contempt Motion: Settlement Discussions | 18.3 | -- | -- | -- | 10,065.00 |
| Second Contempt Motion: Trial and Trial Prep | 288.7 | 308.0 | -- | -- | 248,105.00 |
| Second Contempt Motion: Motions to Release Gray From Prison | 64.2 | 7.5 | 1.0 | -- | 37,685.00 |
| Investigation (primarily review of IRS v.Gray court records) | 7.3 | -- | -- | -- | 4,015.00 |

27

| | | | | | |
|---|---|---|---|---|---|
| Miscellaneous Calls, Conferences, Correspondence | 9.3 | -- | -- | -- | 5,115.00 |
| Substitution of Counsel | 0.3 | -- | -- | -- | 165.00 |

| **Sub-Total Hours:** | | **Rate:** | | **Lodestar:** | |
|---|---|---|---|---|---|
| H. Adam Prussin | 977.4 | H. Adam Prussin | $550 | H. Adam Prussin | $537,570.00 |
| Ronen A. Sarraf | 419.0 | Ronen A. Sarraf | $290 | Ronen A. Sarraf | $121,510.00 |
| Vincent K. Eng | 1.0 | Vincent K. Eng | $200 | Vincent K. Eng | $200.00 |
| | | | | | $ 659,280.00 |
| **TOTAL:** | 1,397.4 | | | | |
| **TOTAL HOURS BOTH CASES:** | 3,336.4 | **TOTAL LODESTAR BOTH CASES:** | | | $1,705,400.50 |

## Valuation of Services

71.    From December 30, 1998 through September 30, 2004, attorneys and paraprofessionals at Pomerantz and Silverman Harnes have spent a total of 3,336.4 hours in connection with this case, as fully set forth in the above summary. These are the normal hourly rates for work of this character. Pomerantz believes that the time entries included in Attachement A attached hereto, which support these totals and itemize the work done, are in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines.

72.    The reasonable value of the services rendered, as described above, is $1,705,400.50, calculated on the lodestar method. In accordance with customary practice in calculating lodestar in contingency fee cases of this nature, current billing rates are used, in lieu of interest, to compensate for the delay in payment.

73.    Attachment A also includes records of Pomerantz and Silverman Harnes documenting the expenses reasonably and necessary incurred in these actions.

74.    In accordance with the factors enumerated in 11 U.S.C. §330, the amounts requested is

28

00207

fair and reasonable given (a) the complexity of these cases, (b) the time expended; (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

75.    This application covers the period December 30, 1998 through September 30, 2004. Pomerantz has and will continue to perform additional necessary services subsequent to September 30, 2004.

WHEREFORE, Pomerantz prays (1) that an allowance be made to it in the sum of $1,705,400.50 as compensation for necessary professional services rendered to the Committee and to Summit and in the sum of $72,205.75 for reimbursement of actual necessary costs and expenses incurred, (2) that the Debtor be ordered to pay Pomerantz all allowed amounts, none of which have heretofore been paid to Pomerantz or to Silverman Harnes, and (3) that this Court grant such other and further relief as it may deem just and proper.

POMERANTZ HAUDEK BLOCK GROSSMAN
& GROSS LLP

By: H. Adam Prussin

100 Park Avenue, 26th Floor
New York, N.Y. 10017
(212) 661-1100 (tel)
(212) 661-8665 (fax)

Dated: February 10, 2005

29

00208

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    :
                                          :    Chapter 11
                                          :    Case No. 98-2870 (DDS)
SUMMIT METALS, INC.                       :
                                          :
        Debtor.                           :

### AFFIDAVIT OF TODD C. SCHILTZ

STATE OF DELAWARE          )
                           )    ss
COUNTY OF NEW CASTLE       )

Todd C. Schiltz being duly sworn, deposes and says:

1.      I am a partner with the law firm Wolf Block, Schorr and Solis-Cohen LLP

("Wolf Block"), which maintains offices at, Wilmington Trust Center, 1100 North Market Street,

Wilmington, Delaware 19801. I am familiar with the matters set forth herein and make this

affidavit in support of the Amended Application of Wolf Block, Schorr and Solis-Cohen LLP,

counsel to the Official Committee of Unsecured Creditors for Summit Metals, Inc.

("Committee") for Chapter 11 Compensation and Reimbursement of Expenses (the

"Application").

2.      The detailed time entries attached to the Application contain a separate

description and time allotment for each activity performed by each individual attorney and

paralegal.

3.      All services for which compensation is requested by Wolf Block were

professional services performed for and on behalf of the Committee and not on behalf of any

other person.

4.      In accordance with the requirements of the United States Code, neither I nor any

member or associate of this firm has entered into any agreement, express or implied, with any

WIL:48284.1/CRE042-145994                    9

00209

other party-in-interest or any attorney for such other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtor's assets.

     5.    No agreement or understanding exists between me, this firm, or any member or associate thereof, on the one hand, and any other person, on the other hand, for division of compensation this firm may receive for services rendered in connection with this case, nor will any division of fees prohibited by the United States Code be made by me or any partner or associate of this firm.

Todd C. Schiltz (ID No. 3253)

Sworn to before me this 21st day of April 2005.

Notary Public

Commission Expires: 2/3/07

SANDRA M. FELL
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 3, 2007

00210

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    :
                                          :        Chapter 11
                                          :        Case No. 98-2870 (DDS)
SUMMIT METALS, INC.                       :
                                          :
    Debtor.                               :


ORDER APPROVING AMENDED APPLICATION OF
WOLF BLOCK, SCHORR AND SOLIS-COHEN LLP FOR CHAPTER 11
COMPENSATION AND REIMBURSEMENT OF EXPENSES

Upon the Application for Chapter 11 Compensation and for Reimbursement of

Expenses (the "Application") of Wolf Block, Schorr and Solis-Cohen LLP ("Wolf Block"),

counsel to the Official Committee of Unsecured Creditors for Summit Metals, Inc.; and it

appearing that the relief provided in this Order is in accordance with 11 U.S.C. §§ 330 and 331

and Rule 2016 of the Federal Rules of Bankruptcy Procedure; and after due deliberation and due

and sufficient cause appearing therefore, it is

ORDERED that the Application is granted, and Wolf Block is allowed

$420,161.75 as compensation for professional services rendered and $40,238.65 for expenses for

the period May 1, 1999 through September 30, 2004.


_____
United States Bankruptcy Court Judge

Dated: _____, 2005


WIL:48284.1/CRE042-145994

# *Exhibit "A"*

ASSET ANAYLSIS AND RECOVERY

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| 09/21/04 | T Schiltz | Calls to management at Rivco and Jenkins re: status of operations and financial condition. | 1.80 | 612.00 |
| 09/23/04 | T Schiltz | Review financial information re: Rivco and Jenkins. | 2.40 | 816.00 |
| 09/27/04 | T Schiltz | Legal research re: best method of removing cloud on title to Rivco and Jenkins stock. | 2.10 | 714.00 |
| 09/27/04 | T Schiltz | Email to Chapter 11 trustee re: NY order and need to remove cloud on title of stock | 0.10 | 34.00 |
| 09/27/04 | T. Schiltz | review agenda for meeting with Rivco and Jenkins | 0.10 | 34.00 |
| 09/28/04 | T Schiltz | Emails to HA Prussin re: removal of NY Order; . | 0.40 | 136.00 |
| 09/29/04 | T Schiltz | call to K. Mangan re: modification of NY Order | 0.40 | 136.00 |
| 09/29/04 | T Schiltz | research re: procedural steps needed to take to modify NY Order | 0.90 | 306.00 |
| 09/30/04 | T Schiltz | Call from F. Monaco re: next steps to take re: Rivco/Jenkins stock | 0.40 | 136.00 |
| 9/30/2004 | T Schiltz | calls to HA Prussin re: filing motion to vacate NY Order/escrow | 0.40 | 136.00 |
| | | **TOTAL** | **9.00** | **3,060.00** |

WIL:48255.3/CRE042-145994

00213

# *Exhibit "B"*

CASE MANAGEMENT

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|------------|-------------|
| 05/04/99 | L Mogavero | Meet with P. Brennan re: bankruptcy issues | 0.20 | 58.00 |
| 05/11/99 | P Brennan | Review docket entries and open issues | 0.30 | 93.00 |
| 05/11/99 | P Brennan | Review documents | 0.10 | 31.00 |
| 05/11/99 | P Brennan | Review and analyze Motion for Leave to Prosecute Derivative Suit | 0.20 | 62.00 |
| 05/12/99 | L Mogavero | Review docket and pleadings in Home State case | 2.00 | 580.00 |
| 05/12/99 | P Brennan | Telephone call to Smelkin - trustee in St. Louis case | 0.20 | 62.00 |
| 05/12/99 | P Brennan | draft opposition to prosecute derivative claims | 0.10 | 31.00 |
| 05/13/99 | L Mogavero | Confer with partner PBrennan | 0.50 | 145.00 |
| 05/13/99 | P Brennan | Prepare pleadings re: opposition to motion to prosecute derivative claims | 0.90 | 279.00 |
| 05/13/99 | P Brennan | Conference with Richardson, Kurtzman and Rhine | 0.80 | 248.00 |
| 05/14/99 | L Mogavero | Review pleadings; document | 2.00 | 580.00 |
| 05/17/99 | L Mogavero | Confer with partner re: 5/27/99 hearing | 0.20 | 58.00 |
| 05/17/99 | P Brennan | Telephone call with Trustee in related case | 0.20 | 62.00 |
| 05/17/99 | P Brennan | Prepare for 5/27/99 hearing | 0.40 | 124.00 |
| 05/17/99 | P Brennan | Telephone call to counsel for Debtor re: status of outstanding motions | 0.30 | 93.00 |
| 05/18/99 | P Brennan | Review latest pleadings | 0.10 | 31.00 |
| 05/21/99 | L Mogavero | Confer with partner P Brennan re: motion to dismiss bankruptcy | 0.20 | 58.00 |
| 05/21/99 | P Brennan | Prepare Motion for Committee to Assume Actions | 2.50 | 775.00 |
| 05/24/99 | P Brennan | Prepare for hearing on 5/27/99 | 0.40 | 124.00 |
| 05/24/99 | J Duckett | Retrieve docket entries re: 98-02870 U.S. Bankruptcy Court in Delaware for P. Brennan | 0.20 | 15.00 |
| 05/24/99 | P Brennan | Prepare Motion for Committee to Prosecute Actions | 2.60 | 806.00 |
| 05/25/99 | P Brennan | Telephone call to debtor's counsel re: outstanding motions | 0.20 | 62.00 |
| 05/25/99 | P Brennan | Review agenda items | 0.10 | 31.00 |
| 05/25/99 | P Brennan | Conference with counsel re: hearing on 5/27/99 | 0.20 | 62.00 |
| 05/25/99 | P Brennan | Prepare Motion re: Committee's pursuit of claims | 1.20 | 372.00 |
| 05/25/99 | P Brennan | Telephone call to counsel for Trustee in HomeStar | 0.20 | 62.00 |
| 05/26/99 | T Schiltz | Review materials in anticipation of hearing on May 27 | 1.00 | 225.00 |
| 05/26/99 | P Brennan | Telephone call to counsel | 0.10 | 31.00 |
| 05/26/99 | P Brennan | Prepare for 5/27/99 hearing | 1.10 | 341.00 |
| 05/26/99 | C Arterbridge | Conference with B. Grosghal | 0.20 | 22.00 |
| 05/26/99 | C Arterbridge | copy and file pleading with bankruptcy court | 0.50 | 55.00 |
| 05/27/99 | P Brennan | call TS re: 5/27 hearing | 0.30 | 93.00 |
| 05/27/99 | P Brennan | Prepare for 5/27 hearing; call TS re: same | 1.70 | 527.00 |
| 05/27/99 | T Schiltz | Telephone call from Paul Brennan re: 5/27 hearing | 0.30 | 67.50 |
| 05/27/99 | P Brennan | Attend hearing in Delaware | 2.10 | 651.00 |
| 05/27/99 | P Brennan | conference with counsel for parties in interest | 1.00 | 310.00 |
| 05/27/99 | P Brennan | Review monthly operating reports | 0.30 | 93.00 |
| 05/27/99 | C Arterbridge | Conference with BG | 0.20 | 22.00 |
| 05/27/99 | C Arterbridge | prepare amended certificate of service for Summit Metals and serve and file with bankruptcy court | 0.40 | 44.00 |
| 05/27/99 | T Schiltz | attend hearing in Bankruptcy Court with Paul Brennan | 2.10 | 472.50 |
| 05/27/99 | T Schiltz | Review pleadings for 5/27 hearing | 0.60 | 135.00 |

WIL:48255.3/CRE042-145994

| Date | Attorney | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 05/28/99 | P Brenman | Conference with Debtor's counsel | 0.20 | 62.00 |
| 05/28/99 | C Arterbridge | Conference with TS, locate monthly reports, call Parcels | 0.10 | 11.00 |
| 05/28/99 | C Arterbridge | locate monthly operating reports | 0.70 | 77.00 |
| 06/01/99 | T Schiltz | Review operating reports | 0.50 | 112.50 |
| 06/01/99 | P Brenman | Prepare for discovery | 0.20 | 62.00 |
| 06/01/99 | P Brenman | Review operating reports | 0.30 | 93.00 |
| 06/01/99 | P Brenman | Telephone call to counsel for Debtor | 0.20 | 62.00 |
| 06/01/99 | P Brenman | Prepare for and attend meeting with debtor's counsel | 2.80 | 868.00 |
| 06/01/99 | C Arterbridge | Conference with TS re: operating reports | 0.50 | 11.00 |
| 06/01/99 | C Arterbridge | call to Parcels for operating reports | 0.20 | 22.00 |
| 06/01/99 | C Arterbridge | call to bankruptcy court re: operating reports | 0.20 | 22.00 |
| 06/02/99 | P Brenman | Review operating reports | 0.20 | 62.00 |
| 06/02/99 | P Brenman | Telephone call to debtor's counsel | 0.10 | 31.00 |
| 06/02/99 | P Brenman | Telephone call to counsel for Trustee for HomeStar | 0.30 | 93.00 |
| 06/02/99 | P Brenman | Prepare response to Motion for Leave to Prosecute Derivative Action | 0.50 | 155.00 |
| 06/02/99 | P Brenman | Finalize response to Motion for Leave to Prosecute | 0.30 | 93.00 |
| 06/02/99 | P Brenman | call to TS re: response to motion for leave to prosecute | 0.20 | 62.00 |
| 06/02/99 | T Schiltz | Telephone call from P. Brenman re: 6/8/99 hearing | 0.20 | 45.00 |
| 06/03/99 | C Arterbridge | Assist with filing (TS entry of appearance) in bankruptcy court | 0.60 | 66.00 |
| 06/03/99 | T Schiltz | Review motion for leave to prosecute derivative action and draft answer to motion | 0.90 | 202.50 |
| 06/03/99 | T Schiltz | Meet with BG re: opposition to motion | 0.10 | 22.50 |
| 06/03/99 | P Brenman | Prepare response to Motion re: derivative action | 0.80 | 248.00 |
| 06/04/99 | C Arterbridge | Conference with TS | 0.10 | 11.00 |
| 06/04/99 | C Arterbridge | copy and file pleading with bankruptcy court, mail to service list | 0.50 | 55.00 |
| 06/04/99 | D Fitzgerald, J | Retrieved cases from WESTLAW | 0.80 | 72.00 |
| 06/04/99 | P Brenman | Analyze theory of class action | 0.20 | 62.00 |
| 06/04/99 | P Brenman | Prepare for hearings on Protective Order | 0.30 | 93.00 |
| 06/07/99 | P Brenman | Prepare for 6/8/99 hearings in Delaware | 1.20 | 372.00 |
| 06/07/99 | P Brenman | Conference with counsel for Trustee in HomeStar Chapter 7 matter | 0.60 | 186.00 |
| 06/08/99 | P Brenman | Preparation for hearings in Delaware re: stay, discovery and next steps | 2.50 | 775.00 |
| 06/08/99 | P Brenman | attendance at hearings in Delaware re: stay, discovery and next step | 1.10 | 341.00 |
| 06/08/99 | T Schiltz | Prepare for hearing before Judge Walsh | 0.40 | 90.00 |
| 06/08/99 | T Schiltz | attend hearing before Judge Walsh | 1.10 | 247.50 |
| 06/08/99 | T Schiltz | telephone call to Paul Brenman | 0.10 | 22.50 |
| 06/08/99 | T Schiltz | review memo prepared by Paul Brenman | 0.10 | 22.50 |
| 06/09/99 | P Brenman | Telephone call with counsel for Debtor re: Gray deposition | 0.20 | 62.00 |
| 06/09/99 | P Brenman | Telephone call to Trustee re: HomeStar | 0.10 | 31.00 |
| 06/10/99 | P Brenman | Conference with counsel for US Trustee | 0.20 | 62.00 |
| 06/10/99 | P Brenman | Review operating reports | 0.10 | 31.00 |
| 06/10/99 | P Brenman | Review Debtor correspondence | 0.10 | 31.00 |
| 06/10/99 | T Schiltz | Legal research re: debtor's rights concerning the exclusivity, including review of 11 U.S.C. Section 1121, review of Federal Digest for case law re 11 U.S. C. Section 1121 and review of pertinent cases re 11 U.S. Section 1121 | 1.50 | 337.50 |
| 06/10/99 | T Schiltz | draft memo to P. Brenman re Section 1121 | 0.50 | 112.50 |

| | | | | |
|---|---|---|---|---|
| 06/11/99 | T Schiltz | Legal research re: 11 U.S.C.A. Section 1121 | 0.40 | 90.00 |
| 06/11/99 | P Brenman | Legal research re: Exclusivity and Plan issues | 0.20 | 62.00 |
| 06/15/99 | P Brenman | Conference with counsel for Trustee - HomeStar | 0.20 | 62.00 |
| 06/16/99 | P Brenman | Conference with counsel for HomeStar Trustee | 0.20 | 62.00 |
| 06/16/99 | P Brenman | Review status of HomeStar discovery | 0.90 | 279.00 |
| 06/16/99 | P Brenman | Telephone call to counsel for Debtor re: Discovery | 0.40 | 124.00 |
| 06/18/99 | C Arterbridge | Conference with TS | 0.10 | 11.00 |
| 06/18/99 | C Arterbridge | copy and file pleadings with bankruptcy court | 0.30 | 33.00 |
| 06/21/99 | P Brenman | Prepare for hearings in Bankruptcy Court on 6/25/99 | 0.20 | 62.00 |
| 06/21/99 | C Arterbridge | Conference with TS | 0.10 | 11.00 |
| 06/21/99 | C Arterbridge | organize pleadings and correspondence file | 1.90 | 209.00 |
| 06/21/99 | C Arterbridge | match pleadings to bankruptcy docket | 0.30 | 33.00 |
| 06/21/99 | C Arterbridge | telephone call to parcels for Petition and Plan of Reorganization | 0.10 | 11.00 |
| 06/22/99 | P Brenman | Prepare for 6/25/99 Bankruptcy Court hearing | 0.30 | 93.00 |
| 06/23/99 | P Brenman | conference with HomeStar counsel | 0.20 | 62.00 |
| 06/23/99 | C Arterbridge | Conference with TS re: FPA documents in Summit file | 0.10 | 11.00 |
| 06/23/99 | C Arterbridge | prepare letter to N Levitsky with documents | 0.20 | 22.00 |
| 06/24/99 | B Grohsgal | Telephone calls concerning hearing. | 0.40 | 124.00 |
| 06/24/99 | P Brenman | Prepare for 6/25/99 hearings in Delaware | 0.30 | 93.00 |
| 06/25/99 | P Brenman | Prepare for hearing re: 2004 exam and protective order | 1.30 | 403.00 |
| 06/25/99 | B Grohsgal | Attend hearings before J. Walrath | 1.50 | 465.00 |
| 06/25/99 | P Brenman | Attend hearings in Delaware re: Gray 2004, A. Richardson Protective Order and automatic stay re: Unsealing issues | 1.50 | 465.00 |
| 06/30/99 | J Duckett | Retrieve U.S. Bankruptcy Court in Delaware docket entries on 98-02870 (Summit Metals Inc.) for P. Brenman | 0.10 | 7.50 |
| 07/06/99 | P Brenman | Review latest docket | 0.20 | 62.00 |
| 07/14/99 | P Brenman | Prepare for 7/21/99 hearing in Bankruptcy Court | 0.10 | 31.00 |
| 07/16/99 | C Arterbridge | Conference with LM update bankruptcy docket | 0.30 | 33.00 |
| 07/16/99 | P Brenman | Prepare for prosecution of claims by Creditors' Committee | 0.50 | 155.00 |
| 07/16/99 | P Brenman | Revise Motion for contempt v. Gray and other relief; conference with Creditors' Committee Chairman | 0.20 | 62.00 |
| 07/16/99 | P Brenman | confernce with chairman of committee | 0.20 | 62.00 |
| 07/19/99 | P Brenman | Prepare for 7/21/99 Bankruptcy Court hearing | 0.10 | 31.00 |
| 07/20/99 | P Brenman | Conference with U.S. Trustee re: Committee Members and open issues | 0.20 | 62.00 |
| 07/20/99 | P Brenman | Conference with counsel for Debtor re: Next steps | 0.10 | 31.00 |
| 07/22/99 | C Arterbridge | Conf. with TS | 0.10 | 11.00 |
| 07/22/99 | C Arterbridge | call to bankruptcy court for hearing date for motion for contempt | 0.10 | 11.00 |
| 07/23/99 | C Arterbridge | Telephone conference with Lori Capp at Bankruptcy court re: hearing date 8/10 | 0.40 | 44.00 |
| 07/23/99 | C Arterbridge | conference with TS re: hearing | 0.10 | 11.00 |
| 07/23/99 | C Arterbridge | prepare notice and certificate of serve, copy, serve and file with bankruptcy court | 0.30 | 33.00 |
| 07/26/99 | P Brenman | Prepare for 8/10/99 hearing | 0.20 | 62.00 |
| 07/28/99 | P Brenman | Review Motion to extend dates | 0.20 | 62.00 |
| 07/29/99 | P Brenman | Analyze latest pleadings - appeals, etc. | 0.10 | 31.00 |
| 07/30/99 | T Schiltz | Prepare motions for filing with the Court | 1.60 | 360.00 |
| 07/30/99 | T Schiltz | telephone call to P Brenman | 0.10 | 22.50 |
| 07/30/99 | T Schiltz | meet with Colleen Arterbridge | 0.10 | 22.50 |
| 07/30/99 | T Schiltz | telephone calls to court | 0.20 | 45.00 |

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 07/30/99 | C Arterbridge | Conference with TS re: filing papers | 0.10 | 11.00 |
| 07/30/99 | C Arterbridge | copy serve and file motion to prosecute Richard Gray and motion to compel Kostelanetz and Fink | 2.20 | 242.00 |
| 07/30/99 | C Arterbridge | call to bankruptcy court for objection date for motion to compel | 0.40 | 44.00 |
| 08/02/99 | T Schiltz | Telephone call from P. Brenman re: 8/10 hearing | 0.20 | 45.00 |
| 08/02/99 | C Arterbridge | Conference with TS | 0.10 | 11.00 |
| 08/02/99 | C Arterbridge | draft and file amended certificate of service | 0.20 | 22.00 |
| 08/05/99 | P Brenman | Prepare for 8/10 hearing | 0.30 | 93.00 |
| 08/06/99 | P Brenman | Prepare for 8/10 hearing | 0.50 | 155.00 |
| 08/09/99 | T Schiltz | Review pleading for filing | 0.10 | 22.50 |
| 08/09/99 | T Schiltz | telephone call to B. Grohsgal | 0.10 | 22.50 |
| 08/09/99 | T Schiltz | telephone call to C. Arterbridge | 0.10 | 22.50 |
| 08/09/99 | P Brenman | Prepare for 8/10 hearing | 0.90 | 279.00 |
| 08/09/99 | C Arterbridge | Telephone conference with TS x3 , fax pleading to service list | 0.20 | 22.00 |
| 08/09/99 | C Arterbridge | file with bankruptcy court response to request for order staying contempt proceedings | 0.50 | 55.00 |
| 08/09/99 | C Arterbridge | fax pleading to service list | 0.30 | 33.00 |
| 08/10/99 | T Schiltz | Attend hearing before Judge Walrath | 0.70 | 157.50 |
| 08/10/99 | P Brenman | Prepare for hearing before J. Walrath | 1.90 | 589.00 |
| 08/10/99 | P Brenman | Attend hearing before J. Walrath | 0.70 | 217.00 |
| 08/10/99 | P Brenman | Conference with A. Richardson, III re: case strategy | 2.60 | 806.00 |
| 08/11/99 | P Brenman | Review addition to Committee | 0.10 | 31.00 |
| 08/18/99 | P Brenman | Prepare for sale | 0.40 | 124.00 |
| 08/20/99 | P Brenman | Letter to M. Babbitt | 0.10 | 31.00 |
| 08/20/99 | C Arterbridge | Conference with TS | 0.10 | 11.00 |
| 08/20/99 | C Arterbridge | copy and file pleading with bankruptcy court and serve same | 0.40 | 44.00 |
| 08/26/99 | P Brenman | Telephone call to counsel re: 8/27/99 hearing | 0.40 | 124.00 |
| 08/26/99 | P Brenman | Prepare for 8/27/99 hearing | 0.10 | 31.00 |
| 08/26/99 | P Brenman | Review correspondence from Debtor re: 8/27 hearing | 0.10 | 31.00 |
| 08/27/99 | P Brenman | Preparation for 8/27 hearing | 0.20 | 62.00 |
| 08/27/99 | P Brenman | Attend hearing | 1.40 | 434.00 |
| 08/30/99 | P Brenman | Prepare for next steps - plan | 0.20 | 62.00 |
| 08/30/99 | P Brenman | Review transcript of 8/10/99 hearing | 0.20 | 62.00 |
| 08/30/99 | P Brenman | Telephone call to and from counsel to debtor regarding next steps to hearing order | 0.20 | 62.00 |
| 08/30/99 | P Brenman | Review Kostelanetz & Fink issue | 0.20 | 62.00 |
| 08/31/99 | P Brenman | Prepare for upcoming hearing | 0.50 | 155.00 |
| 08/31/99 | P Brenman | Letter to Brian Wille regarding Hearing Date | 0.10 | 31.00 |
| 09/02/99 | P Brenman | Prepare for 9/21/99 hearing | 0.60 | 186.00 |
| 09/02/99 | C Arterbridge | Conference with TS re: docket in main case and top 20 creditors; | 0.30 | 33.00 |
| 09/02/99 | C Arterbridge | prepare certificate of service for Order, copy, file in bankruptcy court, and serve | 0.30 | 33.00 |
| 09/02/99 | C Arterbridge | research orders issued by court | 0.90 | 99.00 |
| 09/02/99 | T Schiltz | Telephone call from P. Brenman re: order to file taxes; | 0.40 | 495.00 |
| 09/02/99 | T Schiltz | meet with C. Arterbridge re: adversary proceedings | 0.40 | |
| 09/02/99 | T Schiltz | review FRBP re: adversary actions | 1.40 | |
| 09/03/99 | C Arterbridge | Telephone call to P Brenman re: orders and fee application | 0.20 | 22.00 |
| 09/03/99 | C Arterbridge | Research orders on internet and westlaw | 0.60 | 66.00 |

| Date | Attorney | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 09/03/99 | C Arterbridge | telephone call to Parcels re: orders | 0.10 | 11.00 |
| 09/06/99 | C Arterbridge | Fax orders to P Brennan | 0.20 | 22.00 |
| 09/07/99 | P Brennan | Review latest Orders | 0.10 | 31.00 |
| 09/07/99 | P Brennan | Telephone call to U.S. Attorney's Office re: Tax returns and Order re: same | 0.20 | 62.00 |
| 09/09/99 | C Arterbridge | Conference with TS re: Gray affiliated entities | 0.10 | 11.00 |
| 09/09/99 | C Arterbridge | telephone calls (2) to Brian Johnson at Parcels for DE corporations associated with Gray | 0.20 | 22.00 |
| 09/09/99 | C Arterbridge | fax request to B Johnson at Parcels and review findings | 0.10 | 11.00 |
| 09/09/99 | C Arterbridge | telephone call to Lori Capp regarding amount of time designated to hearing | 0.10 | 11.00 |
| 09/15/99 | P Brennan | Prepare for 9/21/99 hearing | 0.20 | 62.00 |
| 09/17/99 | T Schiltz | Telephone call to P. Brennan re 9/21 hearing | 0.20 | 45.00 |
| 09/17/99 | P Brennan | Prepare for 9/21/99 hearing including review and analyze Motions and Rules | 0.30 | 93.00 |
| 09/17/99 | P Brennan | review re: Kostelanetz and Fink and discovery | 0.20 | 62.00 |
| 09/27/99 | C Arterbridge | telephone parcels to file summons with bankruptcy court | 0.20 | 22.00 |
| 09/27/99 | P Brennan | Review re: A. Richardson, III Order | 0.20 | 62.00 |
| 10/05/99 | C Arterbridge | Conference with Todd Schiltz re: serving order | 0.10 | 11.50 |
| 10/05/99 | C Arterbridge | prepare certificate of service and copy and serve Order to Prosecute Richard Gray | 0.90 | 103.50 |
| 10/19/99 | D O'Dea | Calls to Meister to deal with CSC inquiry | 0.20 | 70.00 |
| 10/19/99 | D O'Dea | Review engagement files re: potential conflict | 0.20 | 70.00 |
| 10/19/99 | D O'Dea | Send Email to Brennan re: CSC enaggement | 0.20 | 70.00 |
| 11/03/99 | P Brennan | Analyze latest pleadings; prepare strategy | 0.80 | 248.00 |
| 11/03/99 | P Brennan | Correspondence to B. Wille | 0.30 | 93.00 |
| 11/03/99 | C Arterbridge | Conference with Todd Schiltz re: call to Wayne Davis at Bankruptcy Court to check status of returned Summons | 0.10 | 11.50 |
| 10/03/99 | C Arterbridge | Call to Wayne Davis at bankruptcy court | 0.10 | 11.50 |
| 11/09/99 | P Brennan | Analyze status - options | 0.90 | 279.00 |
| 11/12/99 | T Schiltz | Telephone call from P. Brennan | 0.10 | 22.50 |
| 11/12/99 | T Schiltz | draft letter to Judge Walrath | 0.10 | 22.50 |
| 11/12/99 | C Arterbridge | Confernce with Todd Schiltz | 0.20 | 23.00 |
| 11/12/99 | C Arterbridge | copy, file in Bankruptcy Court and serve Objection of Committee | 0.60 | 69.00 |
| 11/22/99 | C Arterbridge | Prepare labels for 11/26 filing | 0.30 | 34.50 |
| 11/30/99 | C Arterbridge | Telephone calls to Gail Keenan re: docket 174 and 175; sent copy of 174 to P Brennan | 0.20 | 23.00 |
| 12/10/99 | C Arterbridge | Check Bankruptcy docket for signed order; telephone call from A Prussin re: filing | 0.30 | 34.50 |
| 12/13/99 | C Arterbridge | Review e-mail from T. Schiltz | 0.10 | 11.50 |
| 12/13/99 | C Arterbridge | check Bankruptcy docket for docketing information x2 | 0.10 | 11.50 |
| 12/13/99 | C Arterbridge | Telephone conference with A Prussin | 0.10 | 11.50 |
| 12/13/99 | C Arterbridge | Check Bankruptcy Court docket for docketing | 0.10 | 11.50 |
| 12/14/99 | C Arterbridge | Check Bankruptcy docket for docketing information | 0.30 | 11.50 |
| 12/14/99 | C Arterbridge | telephone conference with P. Brennan | 0.10 | 11.50 |
| 12/14/99 | C Arterbridge | telephone call to L. Capp re: status of motion | 0.10 | 11.50 |
| 12/14/99 | C Arterbridge | voice mail to T Schiltz re: conference with A Prussin | 0.10 | 11.50 |
| 12/14/99 | C Arterbridge | Telephone conference with A Prussin re: status of docketing and fax copy of Motion for Summary Judgment | 0.10 | 11.50 |
| 12/14/99 | C Arterbridge | Telephone conference with P Brennan, A Prussin and T Schiltz | 0.30 | 34.50 |

| | | | | |
|---|---|---|---|---|
| 12/17/99 | P Brennan | Prepare for hearings in January, 2000 | 0.80 | 248.00 |
| 12/21/99 | P Brennan | Review re: New developments | 0.40 | 124.00 |
| 12/23/99 | T Schiltz | Review pleadings | 0.70 | 157.50 |
| 12/23/99 | T Schiltz | telephone call to A. Prussin | 0.10 | 22.50 |
| 12/23/99 | T Schiltz | meet with M. Seidl re: case status | 0.10 | 22.50 |
| 12/23/99 | T Schiltz | telephone call to P. Brennan | 0.10 | 22.50 |
| 12/27/99 | P Brennan | Review re: Pleadings and open issues | 0.20 | 62.00 |
| 01/04/00 | C Arterbridge | copy, file with Bankruptcy Court and serve Affidavit of A. Prussin and Memorandum In Oppositoin to Request to Vacate Judgment | 1.20 | 138.00 |
| 01/05/00 | T Schiltz | Telephone call from A. Prussin re: motion to vacate | 0.80 | 184.00 |
| 01/06/00 | T Schiltz | Review and collect materials for hearing before Judge Walrath | 0.50 | 115.00 |
| 01/06/00 | C Arterbridge | Pull down dockets for main case and adversary matter for T Schiltz | 0.30 | 34.50 |
| 01/11/00 | P Brennan | Review pleadings | 1.00 | 315.00 |
| 01/11/00 | P Brennan | telephone call with A. Prussin | 0.10 | 31.50 |
| 01/17/00 | K Buraks | Conference with PJBrennan re: legal research on good faith conduct of DIP | 0.20 | 45.00 |
| 01/18/00 | K Buraks | Legal research - re: good faith requirement of debtor-in-possession | 3.70 | 832.50 |
| 01/19/00 | K Buraks | Conference with PJBrennan re: legal research on good faith conduct of DIP | 0.10 | 22.50 |
| 01/19/00 | K Buraks | Legal research - re: good faith requirement of debtor's principal | 0.50 | 112.50 |
| 01/21/00 | C Arterbridge | Conference with T Schiltz; prepare Notice of Service | 0.40 | 46.00 |
| 01/21/00 | C Arterbridge | File Notices of Service with Bankruptcy Court | 0.50 | 57.50 |
| 01/24/00 | P Brennan | Telephone call with counsel re: Court hearing | 0.30 | 94.50 |
| 01/27/00 | P Brennan | Review re: Latest pleadings | 0.20 | 63.00 |
| 01/31/00 | P Brennan | Prepare for hearing | 0.20 | 63.00 |
| 02/18/00 | R Lowy | Telephone call from RLopez concerning docket entry and review docket to obtain entry number | 0.20 | 37.00 |
| 02/22/00 | B Klayman | Telephone call from T. Schiltz re: update on what occurred at hearing | 0.10 | 32.50 |
| 02/22/00 | B Klayman | Meet A. Prussin; cover scheduling hearing | 2.20 | 715.00 |
| 03/09/00 | P Brennan | Telephone call with counsel for TSPG | 0.20 | 65.00 |
| 05/10/00 | P Brennan | Review re: A. Richardson letter to U.S. Trustee | 0.10 | 32.50 |
| 05/19/00 | P Brennan | Review re: Motion for submission of operating reports | 0.10 | 32.50 |
| 07/18/00 | C Arterbridge | Telephone call to Bankruptcy Court for hearing/objection dates | 0.10 | 11.50 |
| 07/19/00 | C Arterbridge | Telephone call to L Capp at Bankruptcy Court re: hearing date | 0.10 | 11.50 |
| 07/31/00 | C Arterbridge | Telephone call to Parcels for filing in Bankruptcy Court | 0.10 | 11.50 |
| 08/14/00 | C Arterbridge | File pleadings | 0.30 | 34.50 |
| 09/22/00 | C Arterbridge | prepare certificate of service, copy, file with Bankruptcy Court and serve Objection to Defendant's Motion | 0.40 | 46.00 |
| 11/30/00 | C Arterbridge | Telephone call to Parcels re: obtaining fee applications and orders from Bankruptcy Court | 0.10 | 11.50 |
| 12/29/00 | M Hess | Located Delaware bankruptcy case docket for P. Brennan | 0.60 | 60.00 |
| 01/08/01 | C Arterbridge | Copy, file agenda letter with Bankruptcy Court and call to Parcels | 0.10 | 13.00 |

| 01/17/01 | M Morris | Docket searches in Missouri, Delaware, Tennessee and Washington State for PJBrennan re: Energy Savings Products | 2.50 | 300.00 |
|---|---|---|---|---|
| 04/25/01 | C Arterbridge | Conference with M MaloneyHuss re: copy of Response to Mark Schlecht; telephone call to Gail Keenan re: same | 0.20 | 26.00 |
| 04/30/01 | C Arterbridge | Telephone call from Klehr Harris re: copy of Response | 0.10 | 13.00 |
| 04/30/01 | C Arterbridge | Telephone call from Henry Heiman's office re: copy of Response | 0.10 | 13.00 |
| 04/30/01 | C Arterbridge | Receive and forward agenda to Paul Brennan | 0.10 | 13.00 |
| 06/21/01 | R Lopez | Review of Removal issues | 0.30 | 69.00 |
| 06/21/01 | J Ranji | Reviewed Notice to Show Cause and letter from PJBrennan, in preparation for meeting and hearing on 6/26 | 0.50 | 122.50 |
| 06/27/01 | R Lopez | Conference with Brennan re: hearing status | 0.10 | 23.00 |
| 09/12/01 | A Bruno | Confer with Gail Keenan and retrieve and review bankruptcy docket | 0.20 | 24.00 |
| 11/14/01 | R Lopez | Telephone conference with PBrennan and Hartell re: status of case | 0.50 | 115.00 |
| 11/14/01 | M Morris | Search for and print dockets from bankruptcy proceeding and adversary proceeding | 0.30 | 36.00 |
| 02/27/02 | C Arterbridge | Telephone call from G Keenan re: documents needed for P Brennan | 0.20 | 28.00 |
| 02/27/02 | C Arterbridge | review bankruptcy main case for documents | 0.30 | 42.00 |
| 02/27/02 | C Arterbridge | telephone call to G Keenan re: documents not found | 0.10 | 14.00 |
| 02/27/02 | C Arterbridge | review old bankruptcy docket in adversary action and fax same to G. Keenan | 0.40 | 56.00 |
| 02/27/02 | C Arterbridge | telephone call to Parcels for documents, telephone call from Parcels re: documents sent to storage | 0.40 | 56.00 |
| 02/27/02 | C Arterbridge | telephone call to G Keenan to prove archive information | 0.30 | 42.00 |
| 02/27/02 | C Arterbridge | telephone call to bankruptcy court clerk and archives department for information | 0.30 | 42.00 |
| 03/20/02 | T Schiltz | Meet with CArterbridge re: order on motions to strike | 0.10 | 29.00 |
| 03/20/02 | T Schiltz | review local rules re: brief schedule | 0.20 | 58.00 |
| 03/20/02 | T Schiltz | review draft motion for partial summary judgment and draft comments thereto | 1.10 | 319.00 |
| 03/20/02 | C Arterbridge | locate response deadline from order and e-mail to P Brennan | 0.60 | 84.00 |
| 03/20/02 | C Arterbridge | Conference with T. Schiltz | 0.10 | 14.00 |
| 03/28/02 | P Brennan | Prepare for upcoming Motions | 1.50 | 562.50 |
| 04/05/02 | C Arterbridge | telephone call from bankruptcy court and conference with T Schiltz re: closed status on bankruptcy e-filing system | 0.40 | 56.00 |
| 04/17/02 | C Arterbridge | Pick up order from District Court clerks office | 0.30 | 42.00 |
| 07/09/02 | H Booker | Prepared Notice of Address Change and review of file materials; uploaded same onto ECF system | 0.50 | 55.00 |
| 08/06/02 | C Arterbridge | Telephone call from R Lopez re: bankruptcy filing, | 0.40 | 56.00 |
| 08/06/02 | C Arterbridge | conference with B Klayman re: review filing and make changes | 0.40 | 56.00 |
| 09/10/02 | R Lopez | Preparation of no objection certification, agenda, service of agenda and court binder | 4.60 | 1,104.00 |
| 09/10/02 | C Arterbridge | Telephone call from R Lopez re: filings | 0.10 | 14.00 |
| 09/10/02 | C Arterbridge | Conf. with B Klayman and J Barber re: filing | 0.10 | 14.00 |
| 09/11/02 | C Arterbridge | e-file with bankruptcy court Certificate of No Objection, e-file and copy agenda binder to Judge's Chambers | 1.30 | 182.00 |

WIL:48255.3/CRE042-145994

| 09/11/02 | R Lopez | Preparation of agenda and no objection certification | 1.40 | 336.00 |
|---|---|---|---|---|
| 10/04/02 | H Booker | Meeting with TCSchiltz | 0.10 | 11.00 |
| 10/04/02 | H Booker | uploading exhibits for filing with the court | 0.20 | 22.00 |
| 10/04/02 | H Booker | correspondence with Parcels re: filing | 0.10 | 11.00 |
| 10/04/02 | H Booker | prepare motion for filing and distribution | 0.40 | 44.00 |
| 10/11/02 | H Booker | Review of docket entries; meeting with JLBarber | 0.50 | 55.00 |
| 10/15/02 | H Booker | Correspondence with Bankruptcy Court | 0.10 | 11.00 |
| 10/24/02 | J Ranji | Review certification of counsel regarding court order | 0.10 | 26.00 |
| 10/24/02 | J Ranji | check docket and confirm order posted | 0.10 | 26.00 |
| 11/11/02 | C Arterbridge | locate amended complaint from bankruptcy/district court dockets and pull docket | 0.50 | 70.00 |
| 11/11/02 | C Arterbridge | telephone to Parcels for PACER docket and conference with J Barber re: same | 0.30 | 42.00 |
| 12/16/02 | P Brennan | Telephone call with potential purchaser | 0.70 | 269.50 |
| 05/12/03 | C Arterbridge | Check District Court docket for additions to docket | 0.10 | 18.00 |
| 05/13/03 | C Arterbridge | Check District Court docket for additions to docket | 0.20 | 36.00 |
| 05/14/03 | C Arterbridge | Check District Court docket for additions to docket | 0.20 | 36.00 |
| 05/16/03 | C Arterbridge | Check District Court docket for additions to docket | 0.20 | 36.00 |
| 06/09/03 | H Booker | Review of District Court docket entries | 0.30 | 37.50 |
| 07/11/03 | H Booker | Review of District Court Docket | 0.20 | 25.00 |
| 10/06/03 | C Arterbridge | prepare agenda letter and copy from chambers procedures for Judge Kornreich | 1.00 | 180.00 |
| 10/06/03 | C Arterbridge | prepare letter to Judge Kornreich re: A Prussin's participation at hearing by phone | 0.40 | 72.00 |
| 10/10/03 | C Arterbridge | E-file with bankruptcy court notice of agenda for hearing on 10/22/03 | 0.30 | 54.00 |
| 10/17/03 | C Arterbridge | Research bankruptcy docket for Motions/Orders re: Prosecution of Action by Creditor Committee | 1.00 | 180.00 |
| 10/17/03 | C Arterbridge | Pull docket for main case and Gray adversary | 0.40 | 72.00 |
| 04/14/04 | C Arterbridge | Prepare agenda binders for hearing on April 21, 2004; efile and copy; forward by to G Ballick and Chambers | 3.20 | 512.00 |
| 08/11/04 | C Arterbridge | locate on bankruptcy docket monthly operating report and motion/order to compel debtor to file monthly operating reports | 0.20 | 32.00 |
| 08/11/04 | C Arterbridge | telephone call from T. Stauss re: New Jersey District Court docket and document needed for T Schiltz and locate same | 0.30 | 48.00 |
| 08/11/04 | T Schiltz | Draft motion to assume control over certain of debtor's assets | 2.50 | 850.00 |
| 08/11/04 | T Schiltz | calls to D. Ross re: whether committee has authority to assume committee's assets | 0.50 | 170.00 |
| 08/11/04 | T Schiltz | call to T. Forrester re: motion to assume control over debtor's asset | 0.30 | 102.00 |
| 08/11/04 | T Schiltz | legal research re: right of committee to assume control over debtor's assets. | 2.00 | 680.00 |
| 08/11/04 | D Ross | Call from TSchiltz re motion of the committee for an order authorizing it to act on behalf of the debtor on certain matters | 0.50 | 137.50 |
| 08/11/04 | D Ross | review committee motion | 0.40 | 110.00 |
| 08/11/04 | D Ross | preliminary research re: statutory and case law to support committee's request to assume control ove certain assets of the estate | 1.20 | 330.00 |

WIL:48255.3/CRE042-145994

| 08/12/04 | T Schiltz | Call from D. Ross re: research on right of committee to take control over assets of debtor's estate | 0.40 | 136.00 |
|---|---|---|---|---|
| 08/12/04 | D Ross | Review and analysis of case law and statutory law re authority of committee and analysis of issues re committee standing and powers | 2.40 | 660.00 |
| 08/12/04 | D Ross | various meetings with WLoy re research | 0.30 | 82.50 |
| 08/12/04 | D Ross | call TSchiltz re comments on motion. | 0.40 | 110.00 |
| 08/12/04 | W Loy | Research re: Power of Creditor's Committee for DRoss | 1.50 | 180.00 |
| 08/13/04 | T Schiltz | Draft motion to assume control over certain assets. | 2.00 | 680.00 |
| 08/16/04 | H Booker | Correspondence with District Court and Judge Jordan's docketing clerk regarding Post-Trial Findings and Judgment | 0.20 | 27.00 |
| 08/16/04 | H Booker | correspondence with Parcels, Inc. regarding obtaining copies of same | 0.20 | 27.00 |
| 08/17/04 | C Arterbridge | Conference with T Schiltz re: Motion/hearing date and telephone call to G Ballek re: same | 0.50 | 80.00 |
| 08/17/04 | C Arterbridge | Prepare new 2002 list and certificate of service | 0.80 | 128.00 |
| 08/17/04 | T Schiltz | Continued legal research re: right of committee to act on behalf of the debtor. | 1.50 | 510.00 |
| 08/17/04 | T Schiltz | Finalize motion to assume control over assets and file same | 0.60 | 204.00 |
| 08/18/04 | C Arterbridge | Efile with bankruptcy court, copy and serve Motion of Committee with copy to chambers | 1.30 | 208.00 |
| 08/23/04 | T Schiltz | Call to US Trustee re: committee motion to assume control of assets; | 0.60 | 204.00 |
| 08/23/04 | T Schiltz | call to MLT re: committee motion to assume control of assets | 0.40 | 136.00 |
| 08/23/04 | T Schiltz | calls to A. Richardson re: response by US Trustee to committee motion to assume control of assets | 0.80 | 272.00 |
| 08/24/04 | M Temin | Telephone call with Schiltz re: motion to assume ontrol over assets | 0.40 | 210.00 |
| 08/24/04 | T. Schiltz | Call to ML Temin re: case status, monetizing assets and appointment of trustee | 0.50 | 170.00 |
| 08/24/04 | M Temin | telephone call with Schiltz re: appointment of trustee and procedure to request appointment of trustee | 0.20 | 115.00 |
| 08/24/04 | T Schiltz | Calls with A. Richardson and committee members re: appointment of Chapter 11 Trustee | 1.30 | 442.00 |
| 08/25/04 | C Arterbridge | Check bankruptcy docket for objections to motion | 0.20 | 32.00 |
| 08/25/04 | C Arterbridge | prepare agenda letter | 0.60 | 96.00 |
| 08/25/04 | M Temin | telephone call with Schiltz re: steps to be taken as result of opposition to creditor committee motion | 0.10 | 52.50 |
| 08/25/04 | T Schiltz | Call to ML Temin re: opposition to committee motion | 0.10 | 34.00 |
| 08/25/04 | T Schiltz | calls to US Trustee re: Chapter 11 Trustee; review US Trustee objection and prepare response to same | 0.40 | 136.00 |
| 08/25/04 | T Schiltz | review US Trustee obj. and prepare response to same | 2.00 | 680.00 |
| 08/26/04 | M Temin | Telephone call with Schiltz re: trustee | 0.10 | 52.50 |
| 08/26/04 | C Arterbridge | pull response of US Trustee from bankruptcy docket | 0.20 | 32.00 |
| 08/26/04 | C Arterbridge | Prepare disc and hearing binder x2 for hearing on September 8, 2004 | 3.00 | 480.00 |
| 08/26/04 | T Schiltz | Call to MLT re: appointment of trustee | 0.10 | 34.00 |
| 08/26/04 | T Schiltz | call to HA Prussin re: NY order and need to modify order to obtain control over stock | 0.30 | 102.00 |

| Date | Person | Description | Hours | Amount |
|---|---|---|---|---|
| 08/26/04 | T Schiltz | review objection to committee motion to assume control of assets submitted by Rivco and Jenkins | 0.40 | 136.00 |
| 08/27/04 | M Temin | Review Gray objection to committee motion to act on behalf of debtor | 0.20 | 105.00 |
| 08/27/04 | C Arterbridge | Efile agenda for hearing on September 8, 2004; copy and serve same; email copy to G Ballick at bankruptcy court, hand deliver agenda binder to court | 1.20 | 192.00 |
| 08/31/04 | C Arterbridge | Revise agenda, efile with bankruptcy court and serve; copy disk and documents to Ginger Ballek | 0.80 | 128.00 |
| 09/07/04 | T Schiltz | Review objections to motion to give committee authority over certain assets | 0.90 | 306.00 |
| 09/07/04 | T Schiltz | call to US Trustee re: committee motion to assume onctrol over assets | 0.30 | 102.00 |
| 09/07/04 | T Schiltz | review US Trustee motion to appoint Ch. 11 trustee | 0.90 | 306.00 |
| 09/08/04 | T Schiltz | Prepare for hearing before J. Kornreich re: motion of committee to act on behalf of the estate | 2.00 | 680.00 |
| 09/08/04 | M Temin | Review UST motion to appoint Ch. 11 trustee | 0.20 | 105.00 |
| 09/09/04 | T Schiltz | Attend hearing before J. Kornreich re: injunction and appointment of Chapter 11 trustee | 1.50 | 510.00 |
| 09/09/04 | T Schiltz | Draft injunction order | 1.50 | 510.00 |
| 09/09/04 | T Schiltz | calls to and from US Trustee, R. Gray and A. Evans re: language of injunction | 1.30 | 442.00 |
| 09/13/04 | M Temin | Telephone call with Schiltz re: liquidating plan | 0.10 | 52.50 |
| 09/13/04 | T Schiltz | Calls from potential Chapter 11 trustee re: status of case | 0.20 | 68.00 |
| 09/14/04 | T Schiltz | Call from Ch. 11 trustee candidate re: status of case. | 0.70 | 238.00 |
| 09/17/04 | T Schiltz | Meet with Chapter 11 trustee and counsel re: next steps in case and value of Rivco and Jenkins stock; call to J. Kelly re: same | 2.50 | 850.00 |
| 09/17/04 | T Schiltz | Call to J Kelly re: Rivco and Jenkins | 0.30 | 102.00 |
| 09/23/04 | J Goldberg | Telephone call with TCSchiltz re: valuation | 0.20 | 83.00 |
| | | **TOTAL** | **192.10** | **48,009.50** |

# *Exhibit "C"*

**CLAIMS ADMINISTRATION AND OBJECTIONS**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|------------|-------------|
| 05/11/99 | P Brenman | Discussion with PBGC counsel | 0.80 | 248.00 |
| 06/01/99 | P Brenman | Conference with counsel for PBGC re: status - next steps | 0.30 | 93.00 |
| 06/01/99 | P Brenman | Telephone call to PBGC counsel | 0.10 | 31.00 |
| 06/10/99 | P Brenman | Review PBGC developments and next steps and confer with R. Landy re: same | 0.60 | 186.00 |
| 06/11/99 | P Brenman | Analyze Richardson claim documents submitted to Debtor | 0.30 | 93.00 |
| 07/06/99 | P Brenman | Prepare for Notice of Deposition - PBGC request | 0.20 | 62.00 |
| 07/06/99 | P Brenman | Letter to counsel re: IRS claim and litigation | 0.20 | 62.00 |
| 07/06/99 | P Brenman | Review IRS issues | 0.20 | 62.00 |
| 07/09/99 | P Brenman | Conference with counsel for PBGC | 0.20 | 62.00 |
| 07/19/99 | P Brenman | Letter to counsel re: IRS information | 0.30 | 93.00 |
| 07/22/99 | P Brenman | Conference with counsel for PBGC | 0.10 | 31.00 |
| 07/27/99 | P Brenman | Conference with Prussin re: Tax issues | 0.20 | 62.00 |
| 07/29/99 | P Brenman | Review PBGC issues | 0.20 | 62.00 |
| 08/18/99 | P Brenman | Review issues re: Taxes and related issues | 0.10 | 31.00 |
| 08/26/99 | P Brenman | Review tax issues and claims | 0.20 | 62.00 |
| 09/22/99 | P Brenman | Conference with counsel for PBGC | 0.10 | 31.00 |
| 12/09/99 | P Brenman | Review re: A. Richardson, III's Motion for Dismissal | 0.20 | 62.00 |
| 12/10/99 | P Brenman | Review re: A. Richardson's Motion for Dismissal | 0.20 | 62.00 |
| 09/23/02 | P Brenman | Telephone call with counsel to IRS re: Open issues and potential for settlement | 0.80 | 308.00 |
| 11/06/02 | P Brenman | Telephone call with IRS re: Status | 0.50 | 192.50 |
| | | **TOTAL** | **5.80** | **1,895.50** |

# *Exhibit "D"*

**FEE/EMPLOYMENT APPLICATIONS**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|-----------:|------------:|
| 05/18/99 | B Grohsgal | Draft papers re: replacement of counsel | 0.80 | 248.00 |
| 06/28/99 | T Schiltz | Prepare application to retain firm which was prosecuting New York actions | 1.00 | 225.00 |
| 07/01/99 | T Schiltz | Revise motion to retain law firm | 1.00 | 225.00 |
| 08/16/99 | P Brenman | Review A. Prussin documents and fee application issues | 0.10 | 31.00 |
| 08/17/99 | P Brenman | Finalize A. Prussin Application | 0.40 | 124.00 |
| 08/19/99 | T Schiltz | Telephone call from P. Brenman re: filing motion to retain Prussin | 0.50 | 112.50 |
| 08/19/99 | P Brenman | Review A. Prussin Application | 0.20 | 62.00 |
| 08/26/99 | P Brenman | Review Wolf, Block Retention Order | 0.10 | 31.00 |
| 08/30/99 | P Brenman | Conference with A. Prussin re: retention hearing issues | 0.60 | 186.00 |
| 08/31/99 | P Brenman | Review objection by Debtor to Silverman, Harnes retention | 0.10 | 31.00 |
| 09/02/99 | P Brenman | Review re: A. Prussin retention documents | 0.20 | 62.00 |
| 09/21/99 | P Brenman | Review issues re: A. Prussin's retention | 0.20 | 62.00 |
| 11/15/99 | T Schiltz | Telephone call from P. Brenman re: fee application | 0.20 | 45.00 |
| 07/19/00 | C Arterbridge | Prepare certificate of service, copy file with Bankruptcy Court and serve, Application to Retain Pomerantz et al. | 1.20 | 138.00 |
| 07/28/00 | C Arterbridge | Research PACER for objections to Application to Retain Pomerantz, et al., prepare Certificate of No Objection | 0.50 | 57.50 |
| 11/29/00 | M Morris | Research previous fee applications | 0.40 | 48.00 |
| 11/29/00 | M Morris | confer with P. Brenman re: interim fee app. | 0.10 | 12.00 |
| 11/29/00 | M Morris | e-mail and telephone conversation with CCArterbridge re: fee applications and orders | 0.20 | 24.00 |
| 11/29/00 | C Arterbridge | Telephone conference with P Morris re: fee application | 0.30 | 34.50 |
| 11/29/00 | C Arterbridge | conf. w/ C Greenway re: billing information | 0.20 | 23.00 |
| 11/29/00 | C Arterbridge | review files for applications and orders | 0.50 | 57.50 |
| 11/30/00 | M Morris | Preliminary review of draft and pro forma bills | 0.20 | 24.00 |
| 12/12/00 | M Morris | Confer with PJBrenman re: filing of fee application | 0.10 | 12.00 |
| 04/24/01 | M MaloneyHu | Reviewed pleading for filing of fee application | 0.50 | 167.50 |
| .09/30/04 | M Temin | Conference with TCSchiltz re: proposed engagement of investment banker for trustee | 0.70 | 367.50 |
| 09/30/04 | M Temin | Review SSG engagement | 0.10 | 52.50 |
| 09/30/04 | T Schiltz | calls to MLT re: retention of investment banker | 0.80 | 272.00 |
| | | **TOTAL** | **11.20** | **2,734.50** |

WIL:48255.3/CRE042-145994

# *Exhibit "E"*

**FEE/EMPLOYMENT OBJECTIONS**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|-----------|-------------|
| 06/03/99 | P Brenman | Review Klehr, Harrison fees | 0.30 | 93.00 |
| 08/10/99 | T Schiltz | Meet with C. Arterbridge re: fee application | 0.30 | 67.50 |
| 08/16/99 | P Brenman | Review fees re: Klehr, Harrison | 0.20 | 62.00 |
| 12/14/99 | P Brenman | Review re: Klehr, Harrison fees and Fee Application | 0.20 | 62.00 |
| 12/14/99 | P Brenman | telephone call with S Victor | 0.15 | 46.50 |
| 12/23/99 | P Brenman | Review re: Klehr, Harrison fees | 0.40 | 124.00 |
| 12/27/99 | P Brenman | Review re: Klehr, Harrison fees | 0.50 | 155.00 |
| 03/16/00 | T Schiltz | Review Klehr Harrison fee application | 0.20 | 48.00 |
| | | **TOTAL** | **2.25** | **658.00** |

WIL:48255.3/CRE042-145994

00230

# Exhibit "F"

PROCEEDINGS RELATED TO CLAIMS AGAINST RICHARD GRAY

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|-----------|-------------|
| 05/03/99 | P Brenman | Telephone call to Committee chairman re: examination of Kelly, Quinn and Gray | 0.60 | 186.00 |
| 05/03/99 | P Brenman | Prepare for Kelly, Quinn, Gray depositions | 0.20 | 62.00 |
| 05/04/99 | P Brenman | Review class action | 0.10 | 31.00 |
| 05/04/99 | P Brenman | Prepare for Gray deposition | 0.40 | 124.00 |
| 05/04/99 | P Brenman | Review Protective Order | 0.30 | 93.00 |
| 05/05/99 | P Brenman | Attend meeting and planning session in New York with potential accountant and Committee Chairman re: strategy issues | 6.80 | 1,813.50 |
| 05/05/99 | P Brenman | Review Protective Order issues - Gray | 0.20 | 62.00 |
| 05/05/99 | P Brenman | Prepare open items re: Gray conduct | 0.20 | 62.00 |
| 05/07/99 | P Brenman | Telephone call to counsel re: Gray deposition to prepare for same | 0.50 | 155.00 |
| 05/07/99 | P Brenman | Prepare for accountant retention and deposition | 0.20 | 62.00 |
| 05/10/99 | P Brenman | Review Motion for Protective Order | 0.40 | 124.00 |
| 05/10/99 | P Brenman | Telephone call to counsel re: Gray deposition | 0.50 | 155.00 |
| 05/10/99 | P Brenman | Telephone call with Rhine re: Kelly/Quinn depositions | 0.40 | 124.00 |
| 05/10/99 | P Brenman | Prepare for Kelly deposition | 0.50 | 155.00 |
| 05/10/99 | P Brenman | Telephone call to Rhine re: Quinn deposition | 0.30 | 93.00 |
| 05/11/99 | P Brenman | Telephone call to counsel for Debtor re: Kelly/Quinn depositions | 0.20 | 62.00 |
| 05/11/99 | P Brenman | Prepare for Kelly deposition | 0.10 | 31.00 |
| 05/11/99 | P Brenman | Prepare Response - Motion for Protective Order | 0.90 | 279.00 |
| 05/12/99 | P Brenman | Prepare for deposition of Kelly, President of Energy Savings Products | 3.90 | 1,209.00 |
| 05/12/99 | P Brenman | Review options re: Gray deposition | 0.10 | 31.00 |
| 05/13/99 | L Mogavero | Review Delaware fraudulent conveyance law | 2.00 | 580.00 |
| 05/13/99 | P Brenman | Legal research re: claims of bankrupt estate | 0.20 | 62.00 |
| 05/13/99 | L Mogavero | Research re: 2004 Examination | 3.00 | 870.00 |
| 05/13/99 | P Brenman | Prepare for ESP (Kelly) deposition | 0.30 | 93.00 |
| 05/13/99 | P Brenman | Prepare Motion re: Estate causes of action | 3.50 | 1,085.00 |
| 05/14/99 | P Brenman | Take deposition of Kelly, President of Energy Saving Products | 6.20 | 1,922.00 |
| 05/14/99 | P Brenman | Prepare for Quinn deposition | 0.40 | 124.00 |
| 05/17/99 | L Mogavero | Research re: fraudulent conveyance issues | 2.50 | 725.00 |
| 05/17/99 | P Brenman | Prepare response to Protective Order | 1.10 | 341.00 |
| 05/17/99 | P Brenman | Prepare for argument re: Protective Order | 0.60 | 186.00 |
| 05/18/99 | L Mogavero | Confer with partner PBrenman re: adversary against Gray | 0.10 | 29.00 |
| 05/18/99 | L Mogavero | Review Kelly deposition | 2.50 | 725.00 |
| 05/18/99 | P Brenman | Review Quinn deposition issues | 0.20 | 62.00 |
| 05/18/99 | P Brenman | Review Kelly deposition | 0.20 | 62.00 |
| 05/18/99 | L Mogavero | Research re: 2004 issues | 1.00 | 290.00 |
| 05/18/99 | P Brenman | Review motion for protective order | 0.40 | 124.00 |
| 05/19/99 | P Brenman | Prepare response to motion for protective order | 0.50 | 155.00 |
| 05/19/99 | P Brenman | telephone call to counsel re: deposition | 0.10 | 31.00 |
| 05/20/99 | P Brenman | Prepare response to Motion for Protective Order | 1.70 | 527.00 |
| 05/20/99 | P Brenman | Review Kelly deposition re: Gray entities | 0.40 | 124.00 |
| 05/21/99 | L Mogavero | Research re: Del fraudulent conveyance action | 2.00 | 580.00 |

WIL:48255.3/CRE042-145994

| 05/21/99 | P Brenman | Prepare Response to Motion for Protective Order | 2.10 | 651.00 |
|---|---|---|---|---|
| 05/24/99 | P Brenman | Prepare final Response to Motion for Protective Order | 0.80 | 248.00 |
| 05/25/99 | P Brenman | Prepare for Gray deposition | 0.60 | 186.00 |
| 05/25/99 | P Brenman | Review and analyze documents re: Gray actions and conduct | 2.50 | 775.00 |
| 05/25/99 | P Brenman | Finalize Response to Motion for Protective Order | 0.10 | 31.00 |
| 05/25/99 | P Brenman | Review Kelly deposition | 0.20 | 62.00 |
| 05/26/99 | B Grohsgal | Protective Order filing. | 0.80 | 248.00 |
| 05/27/99 | P Brenman | Review upcoming discovery issues re: Gray deposition | 0.20 | 62.00 |
| 05/27/99 | T Schiltz | meet with shareholder plaintiff's counsel to discuss prosecution of derivative claims | 0.80 | 180.00 |
| 06/01/99 | P Brenman | Review discovery status | 0.20 | 62.00 |
| 06/01/99 | P Brenman | Review federal confidentiality agreement | 0.20 | 62.00 |
| 06/02/99 | P Brenman | Conference with A. Prussin to prepare for review of issues arising from New York actions | 0.60 | 186.00 |
| 06/02/99 | P Brenman | Legal research re: fraudulent conveyance | 0.60 | 186.00 |
| 06/02/99 | P Brenman | Review Confidentiality Order in District Court action | 0.20 | 62.00 |
| 06/02/99 | P Brenman | Review possible assignment of Debtor's claims and rights | 0.60 | 186.00 |
| 06/03/99 | T Schiltz | Legal research re: use of deposition transcript outside of litigation | 2.70 | 607.50 |
| 06/03/99 | P Brenman | Legal research re: fraudulent conveyance | 0.20 | 62.00 |
| 06/03/99 | P Brenman | Analyze derivative claims | 0.40 | 124.00 |
| 06/04/99 | T Schiltz | meet with B. Grohsgal to call P. Brenman to discuss claims against Gray | 0.20 | 45.00 |
| 06/04/99 | T. Schiltz | Legal research re: Section 548; review opposition for leave to pursue derivative claim | 1.80 | 405.00 |
| 06/04/99 | T Schiltz | review oppositoin for leave to file derivative claim | 0.50 | 112.50 |
| 06/04/99 | T Schiltz | Research re: whether debtor's failure to receive payment from transferee constitutes a per se fraudulent conveyance | 5.00 | 1,125.00 |
| 06/04/99 | P Brenman | Legal research re: fraudulent conveyance remedy | 0.20 | 62.00 |
| 06/07/99 | T Schiltz | Legal research re: fraudulent conveyance | 4.70 | 1,057.50 |
| 06/07/99 | P Brenman | Legal research re: Protective Order | 1.10 | 341.00 |
| 06/07/99 | P Brenman | Legal research re: derivative claims | 0.80 | 248.00 |
| 06/07/99 | P Brenman | Review proposed Stipulation settling discovery dispute re: Gray | 0.90 | 279.00 |
| 06/08/99 | P Brenman | Conference with counsel for Debtor re: derivative litigation | 1.40 | 434.00 |
| 06/08/99 | T Schiltz | legal research re: fraudulent conveyance under Delaware law | 3.50 | 787.50 |
| 06/08/99 | T Schiltz | research re: statute of limitations applicable to fraudulent conveyance claims | 2.10 | 472.50 |
| 06/08/99 | P Brenman | Legal research re: Gray involvement | 0.10 | 31.00 |
| 06/08/99 | P Brenman | Prepare for Gray depostion | 1.50 | 465.00 |
| 06/09/99 | P Brenman | Conference with Debtor and Kostelanetz and Fink re: contempt | 0.30 | 93.00 |
| 06/09/99 | P Brenman | Prepare for litigation - derivative action | 0.80 | 248.00 |
| 06/09/99 | P Brenman | Prepare for Gray 2004 | 0.20 | 62.00 |
| 06/10/99 | P Brenman | Analyze proposed 2004 Protective Order remedy and Debtor documents' limitation | 1.10 | 341.00 |
| 06/10/99 | P Brenman | Legal research re: fraudulent conveyance | 0.20 | 62.00 |
| 06/10/99 | P Brenman | Review information re: transactions by Gray | 0.20 | 62.00 |

| 06/11/99 | P Brenman | Review re: ESP ownership and inconsistent theories of relief | 0.10 | 31.00 |
| 06/11/99 | P Brenman | Review 2004–Gray issues and options | 0.40 | 124.00 |
| 06/11/99 | P Brenman | Revise Stipulation language re: protective order | 0.20 | 62.00 |
| 06/11/99 | P Brenman | Prepare Motion for Production of Documents | 0.30 | 93.00 |
| 06/11/99 | P Brenman | Telephone conference with counsel for Debtor re: Gray 2004 Examination Stipulation | 0.60 | 186.00 |
| 06/13/99 | T Schiltz | Review pleadings in New York State Court proceedings and application to file derivative claim | 1.70 | 382.50 |
| 06/13/99 | T Schiltz | review 2004 deposition transcripts | 0.50 | 112.50 |
| 06/14/99 | R Lopez | Legal research re: corporate opportunities and preference actions | 3.10 | 651.00 |
| 06/14/99 | P Brenman | Prepare for Gray 2004 Examination | 0.20 | 62.00 |
| 06/14/99 | P Brenman | Analyze areas of Gray 2004 Examination | 0.30 | 93.00 |
| 06/14/99 | P Brenman | Legal research re:  Merger and fraudulent conveyance | 0.90 | 279.00 |
| 06/15/99 | P Brenman | Analyze annual report issued by Gray entities for admissions against interest | 0.10 | 31.00 |
| 06/15/99 | P Brenman | Prepare for Gray 2004 and witness information | 0.60 | 186.00 |
| 06/15/99 | P Brenman | Analyze unsealing of record in New York action | 0.40 | 124.00 |
| 06/15/99 | P Brenman | Conferences with counsel for Debtor and Committee Chairman re: Gray | 0.60 | 186.00 |
| 06/15/99 | P Brenman | Prepare proposal for Gray 2004 Order | 0.30 | 93.00 |
| 06/16/99 | P Brenman | Review Gray 2004 issues | 0.30 | 93.00 |
| 06/17/99 | P Brenman | Prepare Motion re: Committee claims | 1.10 | 341.00 |
| 06/17/99 | T Schiltz | Research re: remedy under state fraudulent conveyance laws | 4.00 | 900.00 |
| 06/17/99 | T Schiltz | Meet with Michael Seidl to discuss legal research | 0.80 | 180.00 |
| 06/17/99 | T Schiltz | legal research re: fraudulent conveyance remedies under state law | 1.70 | 382.50 |
| 06/17/99 | M Seidl | Discussed with TSchiltz case and research re: fraudulent transfer | 0.80 | 172.00 |
| 06/17/99 | M Seidl | Research re: fraudulent transfer and availability of return in kind | 5.10 | 1,096.50 |
| 06/17/99 | P Brenman | Prepare Stipulation re: Gray 2004 Order | 0.30 | 93.00 |
| 06/17/99 | P Brenman | Analyze discovery issues | 0.20 | 62.00 |
| 06/18/99 | T Schiltz | Legal research re: remedy for fraudulent conveyance under Delaware and New York law | 5.00 | 1,125.00 |
| 06/18/99 | M Seidl | Continued reviewing case law re: remedy for fraudulent transfer and begin compiling summary of same | 4.10 | 881.50 |
| 06/18/99 | P Brenman | Analyze status of contempt proceedings | 0.10 | 31.00 |
| 06/18/99 | P Brenman | conference with A Prussin re: contempt proceedings | 0.10 | 31.00 |
| 06/18/99 | P Brenman | Conference with counsel for Debtor and Richard Gray re: Examination | 0.60 | 186.00 |
| 06/20/99 | T Schiltz | Legal research re: when set-off on money damages are the appropriate remedy under Uniform Fraudulent Conveyance Act | 4.00 | 900.00 |
| 06/21/99 | P Brenman | Review unsealed NY record | 0.10 | 31.00 |
| 06/21/99 | T Schiltz | Legal research re: appropriate remedy for fraudulent conveyance | 7.00 | 1,575.00 |
| 06/21/99 | M Seidl | Completed summary re: bankruptcy law on return of fraudulently transferred property | 1.00 | 215.00 |

WIL:48255.3/CRE042-145994

00234

| Date | Person | Description | Hours | Amount |
|---|---|---|---|---|
| 06/21/99 | M Seidl | Discussed case law with TSchiltz | 0.20 | 43.00 |
| 06/21/99 | M Seidl | revise summary of research re: when property of debtor must be returned under bankruptcy law | 1.50 | 322.50 |
| 06/21/99 | P Brenman | Prepare final Stipulation re: Gray 2004 Examination | 0.40 | 124.00 |
| 06/21/99 | P Brenman | Conference with counsel for Debtor re: Gray 2004 Examination | 0.30 | 93.00 |
| 06/21/99 | P. Brenman | Prepare for Gray 2004 Examination | 2.90 | 899.00 |
| 06/22/99 | T Schiltz | Revise memorandum on damages | 0.50 | 112.50 |
| 06/22/99 | M Seidl | Performed additional research re: nature of equitable remedy against Gray | 0.90 | 193.50 |
| 06/22/99 | M Seidl | Discussed with TSchiltz memorandum re: equitable remedy | 0.30 | 64.50 |
| 06/22/99 | T Schiltz | Legal research re: appropriate remedy for fraudulent conveyance | 0.50 | 112.50 |
| 06/22/99 | T Schiltz | revise legal memo on remedies | 4.00 | 900.00 |
| 06/22/99 | M Seidl | Revised memorandum re: appropriate remedy for fraudulent transfer | 0.50 | 107.50 |
| 06/22/99 | P Brenman | Finalize Stipulation re: Gray 2004 Examination | 0.30 | 93.00 |
| 06/23/99 | P Brenman | Conference with counsel for Debtor re: protective order | 0.30 | 93.00 |
| 06/23/99 | T. Schiltz | Telephone call to P. Brenman re: damages memo | 0.20 | 45.00 |
| 06/23/99 | T Schiltz | legal research re: whether committee has standing to prosecute claims which debtor refuses to prosecute | 1.10 | 247.50 |
| 06/23/99 | P Brenman | Draft Stipulation for Committee to have authority to prosecute actions v. Gray, et al. | 1.00 | 310.00 |
| 06/23/99 | P Brenman | Prepare for and analyze theories for Committee to prosecute claims and causes of action of the Debtor | 2.50 | 775.00 |
| 06/23/99 | T Schiltz | Revise memo to Paul Brenman re: corporate remedy of fraudulent conveyance | 2.00 | 450.00 |
| 06/23/99 | P Brenman | Telephone call to counsel for plaintiff re: prosecution of derivative claims | 0.10 | 31.00 |
| 06/23/99 | P Brenman | Letter to Rhine re: Kelly claims of privilege | 0.20 | 62.00 |
| 06/23/99 | P Brenman | Legal research re: Remedy under fraudulent conveyance | 0.30 | 93.00 |
| 06/23/99 | P Brenman | Prepare for Gray 2004 Examination | 0.40 | 124.00 |
| 06/23/99 | P Brenman | Analyze Debtor's proposal re: Gray 2004 Stipulation | 0.40 | 124.00 |
| 06/24/99 | P Brenman | Letter to Rhine re: Privilege claims | 0.10 | 31.00 |
| 06/24/99 | P Brenman | Prepare, analyze and redraft Stipulation re: Standing of Committee to prosecute actions | 0.60 | 186.00 |
| 06/24/99 | T Schiltz | Meeting with P. Brenman to discuss discovery | 1.00 | 225.00 |
| 06/24/99 | P Brenman | Analyze status of A. Prussin proposal for retention, etc. | 0.60 | 186.00 |
| 06/24/99 | P Brenman | Analyze contempt issues | 0.20 | 62.00 |
| 06/24/99 | P Brenman | Analyze issues re: Unsealing record | 0.20 | 62.00 |
| 06/24/99 | P Brenman | Prepare for R. Gray deposition | 0.40 | 124.00 |
| 06/24/99 | P Brenman | Prepare 2004 Motion re: Summit and American Express | 0.50 | 155.00 |
| 06/24/99 | P Brenman | Prepare final Stipulation for Gray 2004 Examination | 0.20 | 62.00 |
| 06/25/99 | T Schiltz | Research 2004 discovery | 0.50 | 112.50 |
| 06/25/99 | T Schiltz | review Kelly deposition for information on affiliated entities | 1.00 | 225.00 |
| 06/25/99 | T Schiltz | prepare motion to obtain documents and deposition from American Express | 0.50 | 112.50 |
| 06/25/99 | P Brenman | Review J. Kelly deposition issues | 0.10 | 31.00 |
| 06/25/99 | P Brenman | Legal research re: Fraudulent conveyance | 0.10 | 31.00 |
| 06/27/99 | P Brenman | Prepare for next steps - discovery re: claims against Gray | 0.60 | 186.00 |

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 06/28/99 | T Schiltz | Draft 2004 Motion as to American Express and Ellen Carlson | 2.50 | 562.50 |
| 06/28/99 | P Brennan | Prepare for American Express deposition | 1.10 | 341.00 |
| 06/29/99 | P Brennan | Prepare for Gray discovery | 0.50 | 155.00 |
| 06/30/99 | P Brennan | Review documents re: conveyance to prepare for conference with counsel for shareholder plaintiffs | 0.50 | 155.00 |
| 07/01/99 | P Brennan | Prepare for Gray deposition | 0.50 | 155.00 |
| 07/06/99 | P Brennan | Legal research re: Remedy of rescission for fraudulent conveyance | 0.40 | 124.00 |
| 07/06/99 | P Brennan | Telephone call to Prussin re: Status and next steps - Gray | 0.10 | 31.00 |
| 07/06/99 | P Brennan | Letter to H. Rhine re: Privileges asserted in deposition | 0.20 | 62.00 |
| 07/07/99 | P Brennan | Prepare for Gray deposition | 0.10 | 31.00 |
| 07/07/99 | P Brennan | Review Stipulation re: Gray claims and standing | 0.30 | 93.00 |
| 07/09/99 | P Brennan | Conference with A. Prussin | 0.20 | 62.00 |
| 07/09/99 | P Brennan | Conference with R. Gray per J. Kurtzman | 0.90 | 279.00 |
| 07/09/99 | P Brennan | Telephone call to counsel for Debtor | 0.30 | 93.00 |
| 07/09/99 | P Brennan | Prepare for Gray deposition | 0.80 | 248.00 |
| 07/10/99 | P Brennan | Review Kelly deposition | 0.30 | 93.00 |
| 07/10/99 | P Brennan | Review ESP deposition issues | 0.10 | 31.00 |
| 07/12/99 | P Brennan | Review Gray liability issues | 0.20 | 62.00 |
| 07/12/99 | P Brennan | Prepare for Gray deposition - questions, documents and outline | 1.70 | 527.00 |
| 07/12/99 | P Brennan | Analyze Order re: Unsealing record and New York Action issues | 0.70 | 217.00 |
| 07/12/99 | P Brennan | Conference with counsel re: Gray deposition scheduling and related issues | 0.50 | 155.00 |
| 07/13/99 | P Brennan | Conferences with J. Kurtzman, A. Richardson, III and other counsel re: Gray not attending deposition | 0.40 | 124.00 |
| 07/13/99 | P Brennan | prepare contempt motion | 0.40 | 124.00 |
| 07/13/99 | P Brennan | Telephone call to counsel re: Deposition rescheduling | 0.20 | 62.00 |
| 07/13/99 | P Brennan | Prepare for Gray deposition | 0.10 | 31.00 |
| 07/14/99 | P Brennan | Prepare Motion for standing to pursue actions of Debtor | 1.20 | 372.00 |
| 07/14/99 | P Brennan | Prepare Motion re: Gray Complaint | 0.20 | 62.00 |
| 07/15/99 | P Brennan | Prepare final Motion re: Gray contempt and examination issues | 1.20 | 372.00 |
| 07/16/99 | T Schiltz | Review motion for sanctions re Gray deposition | 0.60 | 135.00 |
| 07/16/99 | P Brennan | Conference with counsel to ESP re: claims against Gray and his related entities | 0.20 | 62.00 |
| 07/16/99 | P Brennan | Preparation for Gray deposition | 1.20 | 372.00 |
| 07/16/99 | P Brennan | Telephone call to counsel re: Gray deposition and hearings | 0.20 | 62.00 |
| 07/19/99 | P Brennan | Conference with counsel for ESP re: Production/deposition/privilege | 0.20 | 62.00 |
| 07/20/99 | T Schiltz | Telephone call to P. Brennan re: claims against Gray | 0.30 | 67.50 |
| 07/20/99 | P Brennan | Prepare Motion re: Gray 2004 Examination | 4.40 | 1,364.00 |
| 07/20/99 | P Brennan | Telephone call to counsel re: Gray 2004 Examination | 0.20 | 62.00 |
| 07/20/99 | P Brennan | Conference with Debtor's counsel re: Discovery issues | 0.20 | 62.00 |
| 07/21/99 | P Brennan | Review next steps re: Gray 2004 Examination | 0.50 | 155.00 |
| 07/21/99 | P Brennan | Conference with counsel re: Gray 2004 Examination | 0.10 | 31.00 |
| 07/22/99 | P Brennan | Finalize Motion re: Standing and strategy | 1.30 | 403.00 |
| 07/26/99 | P Brennan | Conference with T. Workman re: motion for contempt | 0.10 | 31.00 |
| 07/26/99 | P Brennan | Finalize Motion for Contempt | 1.50 | 465.00 |
| 07/27/99 | P Brennan | Prepare Motion re: Kostelanetz and Fink | 0.20 | 62.00 |

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 07/28/99 | P Brenman | Review issues re: Subpoena | 0.10 | 31.00 |
| 07/29/99 | P Brenman | Finalize Motion re: Kostelanetz and Fink | 1.30 | 403.00 |
| 07/30/99 | P Brenman | Finalize Motions for Standing and Kostelanetz and Fink | 3.70 | 1,147.00 |
| 08/03/99 | P Brenman | Review Response to Motion for Sanctions re: Gray | 0.10 | 31.00 |
| 08/03/99 | P Brenman | Analyze Response - stay of contempt | 0.10 | 31.00 |
| 08/03/99 | P Brenman | Conference with H. Rhine re: ESP privilege | 0.20 | 62.00 |
| 08/03/99 | P Brenman | Research regarding Sanctions | 1.80 | 558.00 |
| 08/04/99 | P Brenman | Conference with J. Snyder re: Motion to Stay Contempt | 0.20 | 62.00 |
| 08/04/99 | P Brenman | Review Notice re: Contempt Motion | 0.10 | 31.00 |
| 08/05/99 | T Schiltz | Telephone call to debtor's counsel re stipulation of extension | 0.50 | 112.50 |
| 08/06/99 | T Schiltz | Telephone call from P. Brenman; research re: 11 U.S.C. | 1.50 | 337.50 |
| 08/06/99 | T Schiltz | Review pleadings for motion to delay hearing on contempt | 0.50 | 112.50 |
| 08/06/99 | P Brenman | Prepare Response to Motion to Stay Contempt Proceedings | 1.30 | 403.00 |
| 08/06/99 | P Brenman | Telephone call to B. Wille re: motion for contempt | 0.10 | 31.00 |
| 08/06/99 | P Brenman | Conference with B. Wille, etc. re: Motions, scheduling and discovery re: IRS | 1.00 | 310.00 |
| 08/06/99 | P Brenman | prepare for hearing on motion for contempt and sanctions | 0.90 | 279.00 |
| 08/11/99 | P Brenman | Prepare for hearing on Motion re: Standing and prosecution threat | 1.60 | 496.00 |
| 08/12/99 | P Brenman | Review claims against Gray and discovery need to prove claims | 0.20 | 62.00 |
| 08/13/99 | P Brenman | Review Order re: discovery and prepare discovery pursuant to Rule 2004 | 0.20 | 62.00 |
| 08/13/99 | P Brenman | Review Kostelanetz and Fink proposal re: Taxes | 0.20 | 62.00 |
| 08/13/99 | P Brenman | Prepare for R. Gray deposition and Kostelanetz and Fink discovery | 0.50 | 155.00 |
| 08/13/99 | P Brenman | Draft Consent Order re: Production of documents | 0.20 | 62.00 |
| 08/16/99 | P Brenman | Review Sanction issues | 2.50 | 775.00 |
| 08/17/99 | P Brenman | Prepare for R. Gray deposition and document production | 1.40 | 434.00 |
| 08/17/99 | P Brenman | Telephone call to counsel re: R. Gray deposition | 0.20 | 62.00 |
| 08/17/99 | P Brenman | Analyze tax position per Kostelanetz and Fink | 1.00 | 310.00 |
| 08/17/99 | P Brenman | conference with A. Richardson, III | 0.30 | 93.00 |
| 08/18/99 | P Brenman | Review Court Order re: discovery | 0.10 | 31.00 |
| 08/18/99 | P Brenman | Analyze documents | 1.40 | 434.00 |
| 08/18/99 | P Brenman | prepare for R. Gray deposition | 1.00 | 310.00 |
| 08/18/99 | P Brenman | conf. with A. Richardson re: R. Gray deposition | 0.50 | 155.00 |
| 08/18/99 | P Brenman | Conference call with J. Kurtzman re: Standing and discovery | 0.40 | 124.00 |
| 08/18/99 | P Brenman | Review Kostelanetz and Fink issues | 0.20 | 62.00 |
| 08/19/99 | P Brenman | Prepare for Creditors' Committee litigation | 0.50 | 155.00 |
| 08/19/99 | P Brenman | Prepare for R. Gray deposition | 4.20 | 1,302.00 |
| 08/19/99 | P Brenman | attend R. Gray deposition | 1.20 | 372.00 |
| 08/19/99 | P Brenman | prepare for next round of discovery | 1.00 | 310.00 |
| 08/19/99 | P Brenman | Review Kostelanetz and Fink issues | 0.30 | 93.00 |
| 08/20/99 | P Brenman | Analyze Kostelanetz and Fink Response to inquiry | 0.40 | 124.00 |
| 08/20/99 | P Brenman | Letter to H. Rhine re: ESP | 0.20 | 62.00 |
| 08/20/99 | P Brenman | Review Contempt Stay Order | 0.20 | 62.00 |
| 08/23/99 | P Brenman | Analyze A. Prussin Amended Complaint | 0.90 | 279.00 |
| 08/26/99 | P Brenman | Analyze Committee litigation options | 0.60 | 186.00 |

| | | | | |
|---|---|---|---|---|
| 08/26/99 | P Brenman | Follow-up on Gray document production | 0.20 | 62.00 |
| 08/26/99 | P Brenman | Conference with A. Richardson, III re: Unsealing record | 0.20 | 62.00 |
| 08/30/99 | P Brenman | Letter to Kostelanetz & Fink regarding motion and response | 0.20 | 62.00 |
| 08/31/99 | P Brenman | Review/analyze issues regarding tax returns, ESP with Rhine regarding Kelly Deposition - Privacy | 0.30 | 93.00 |
| 09/02/99 | P Brenman | Conference with J. Kurtzman re: Gray deposition continuance scheduling | 0.60 | 186.00 |
| 09/03/99 | P Brenman | Prepare for 9/21/99 hearing on standing of Committee | 0.50 | 155.00 |
| 09/03/99 | P Brenman | Prepare for hearing re: Motion for leave to prosecute claims | 0.30 | 93.00 |
| 09/07/99 | P Brenman | Review issues re: Next steps in Committee action re: Gray claims | 0.20 | 62.00 |
| 09/07/99 | P Brenman | Letter to counsel for Debtor re: Document Production | 0.30 | 93.00 |
| 09/07/99 | P Brenman | Letter to Kostelanetz and Fink re: Hearing date; prepare for hearing | 0.80 | 248.00 |
| 09/07/99 | P Brenman | Conference with A. Prussin and A. Richardson, III re: Standing issues; prepare documents | 0.30 | 93.00 |
| 09/07/99 | P Brenman | Conference with J. Kurtzman re: Gray discovery and Document Production | 0.20 | 62.00 |
| 09/08/99 | P Brenman | Prepare for litigation by Committee v. Gray and related parties | 0.30 | 93.00 |
| 09/08/99 | P Brenman | Telephone call to J. Kurtzman re: Gray deposition | 0.10 | 31.00 |
| 09/08/99 | P Brenman | Review Kelly transcript - need back-up for privilege claims | 0.20 | 62.00 |
| 09/09/99 | P Brenman | Review Quinn deposition transcript | 0.10 | 31.00 |
| 09/09/99 | P Brenman | Conference with A. Prussin re: Standing Motion | 0.20 | 62.00 |
| 09/09/99 | P Brenman | Conference call with J. Kurtzman re: Standing - no opposition and Committee Motion | 0.20 | 62.00 |
| 09/09/99 | T Schiltz | Telephone call to P. Brenman re: entities related to Gray; meet with C. Arterbridge re calling Secretary of State | 0.10 | 22.50 |
| 09/09/99 | T Schiltz | meet with C. Arterbridge re: calls to Sec. of State re: Gray entities | 0.10 | 22.50 |
| 09/09/99 | T Schiltz | Telephone call to Parcels re Delaware corporations affiliated with Richard Gray | 0.30 | 67.50 |
| 09/09/99 | P Brenman | Review results of Delaware search - Gray reports | 0.20 | 62.00 |
| 09/09/99 | P Brenman | Review tax claims and Kostelanetz and Fink issues | 0.10 | 31.00 |
| 09/10/99 | P Brenman | Conference with H. Rhine re: ESP deposition | 0.20 | 62.00 |
| 09/10/99 | P Brenman | Review and analyze draft document requests | 0.10 | 31.00 |
| 09/13/99 | T Schiltz | Telephone call to P. Brenman re: claims against Gray | 0.10 | 22.50 |
| 09/13/99 | T Schiltz | Review materials from Delaware Secretary of State re: Gray entities | 0.20 | 45.00 |
| 09/13/99 | P Brenman | Prepare for next steps in Gray deposition and document production | 0.30 | 93.00 |
| 09/13/99 | P Brenman | Prepare for continued R. Gray examination | 0.10 | 31.00 |
| 09/13/99 | P Brenman | Review and analyze research results re: Gray involvement in related companies | 0.60 | 186.00 |
| 09/13/99 | C Arterbridge | Conference with TS re: reports needed from secretary of state, telephone call to parcels, fax from parcels | 0.40 | 44.00 |
| 09/15/99 | P Brenman | Review trail of fund issues | 0.70 | 217.00 |
| 09/15/99 | P Brenman | Analyze next steps re: Kostelanetz and Fink | 0.70 | 217.00 |
| 09/15/99 | P Brenman | Letter to counsel re: R. Gray transcript | 0.10 | 31.00 |

| 09/15/99 | P Brennan | Prepare subpoena re: New York documents | 0.20 | 62.00 |
|----------|-----------|------------------------------------------|------|-------|
| 09/15/99 | P Brennan | Prepare Complaint re: Related Summit entities | 0.20 | 62.00 |
| 09/15/99 | P Brennan | Legal research re: Attorney/client and Kostelanetz and Fink | 0.40 | 124.00 |
| 09/16/99 | P Brennan | Review and outline all pleadings from New York State Court Actions | 1.40 | 434.00 |
| 09/17/99 | P Brennan | Prepare for discovery - A. Prussin subpoena | 0.90 | 279.00 |
| 09/17/99 | P Brennan | Legal research re: Claims v. Gray | 1.10 | 341.00 |
| 09/17/99 | P Brennan | Legal research re: Attorney-client privilege re: Kostelanetz and Fink | 0.90 | 279.00 |
| 09/21/99 | P Brennan | Analyze next steps re: Litigation and venue | 0.30 | 93.00 |
| 09/21/99 | P Brennan | Prepare for hearing; prepare subpoenas | 0.60 | 186.00 |
| 09/21/99 | P Brennan | Review Motion in Opposition to Motion for Protective Order | 0.20 | 62.00 |
| 09/21/99 | T Schiltz | Attend hearing re committee's effort to prosecute claims against Gray | 1.20 | 270.00 |
| 09/21/99 | P Brennan | Prepare for 9/21/99 hearing re: A. Richardson discovery, etc.; attend same | 1.30 | 403.00 |
| 09/21/99 | P Brennan | attend 9/21 hearing | 1.20 | 372.00 |
| 09/22/99 | P Brennan | Draft Complaint re: v. Gray and Related Entities | 1.60 | 496.00 |
| 09/22/99 | P Brennan | Review re: ESP privilege issues; conference with H. Rhine | 0.30 | 93.00 |
| 09/23/99 | P Brennan | Prepare subpoenas re: New York action | 0.20 | 62.00 |
| 09/23/99 | P Brennan | Review Kostelanetz and Fink position | 0.10 | 31.00 |
| 09/23/99 | P Brennan | Review Answer and analyze same - amended class action | 0.10 | 31.00 |
| 09/24/99 | T Schiltz | Prepare subpoenas to A. Richardson and A. Prussin | 0.50 | 112.50 |
| 09/24/99 | P Brennan | Redraft Complaint re: v. Gray Entities | 0.80 | 248.00 |
| 09/27/99 | P Brennan | Review pleadings | 0.50 | 155.00 |
| 09/27/99 | P Brennan | Review correspondence from M. Babbitt re: Schedule | 0.10 | 31.00 |
| 09/27/99 | P Brennan | Review Certificate of Service re: Answer to Amended Class Action Complaint | 0.10 | 31.00 |
| 09/27/99 | P Brennan | Letter to H. Rhine re: ESP privileges | 0.10 | 31.00 |
| 09/27/99 | P Brennan | Conference with J. Kurtzman re: Subpoenas | 0.20 | 62.00 |
| 09/27/99 | P Brennan | Review issues re: Claims v. Estate | 0.20 | 62.00 |
| 09/27/99 | P Brennan | Telephone call to J. Kurtzman re: R. Gray deposition | 0.20 | 62.00 |
| 09/28/99 | T Schiltz | Review Bankruptcy Rules for disclosure requirements under Rule 26 | 0.20 | 45.00 |
| 09/28/99 | P Brennan | Prepare Complaint v. Gray Entities for accounting, merger, preference and fraudulent conveyance | 2.30 | 713.00 |
| 09/29/99 | P Brennan | Redraft A. Prussin Complaint re: v. Gray | 1.70 | 527.00 |
| 09/30/99 | P Brennan | Redraft A. Prussin Complaint re: v. Gray | 5.20 | 1,612.00 |
| 10/04/99 | P Brennan | Prepare complaint against Gray for filing | 2.50 | 775.00 |
| 10/04/99 | P Brennan | Review New York documents | 0.40 | 124.00 |
| 10/05/99 | P Brennan | Redraft, research and finalize A. Prussin Complaint Against Gray Entities | 7.60 | 2,356.00 |
| 10/05/99 | P Brennan | Conference with A. Richardson, III re: Complaint | 0.50 | 155.00 |
| 10/06/99 | P Brennan | Prepare for R. Gray deposition | 0.30 | 93.00 |
| 10/06/99 | P Brennan | Inspect documents produced by R. Gray | 1.20 | 372.00 |
| 10/06/99 | P Brennan | Review document requests served on Gray | 0.20 | 62.00 |
| 10/07/99 | P Brennan | Review files produced by H. A. Prussin | 6.90 | 2,139.00 |
| 10/08/99 | P Brennan | Prepare for litigation | 0.20 | 62.00 |

| | | | | |
|---|---|---|---|---|
| 10/08/99 | P Brennan | Analyze documents following meeting with Creditors' Committee | 0.10 | 31.00 |
| 10/08/99 | P Brennan | Review production of documents and missing documents | 0.40 | 124.00 |
| 10/11/99 | P Brennan | Prepare for document inspection | 0.40 | 124.00 |
| 10/11/99 | P Brennan | Research re: Complaint v. Gray Entities | 0.70 | 217.00 |
| 10/11/99 | P Brennan | Prepare for R. Gray deposition | 0.20 | 62.00 |
| 10/12/99 | P Brennan | Conference with J. Kurtzman re: 2004 date for R. Gray | 1.40 | 434.00 |
| 10/13/99 | P Brennan | Review documents drafted by H. A. Prussin | 0.10 | 31.00 |
| 10/13/99 | P Brennan | Prepare for R. Gray deposition | 0.60 | 186.00 |
| 10/13/99 | P Brennan | Review final Complaint drafted by H. A. Prussin | 1.10 | 341.00 |
| 10/14/99 | P Brennan | Review and Revise Complaint against Gray and Entities | 0.30 | 93.00 |
| 10/14/99 | P Brennan | Telephone call to J. Kurtzman re: R. Gray deposition | 0.60 | 186.00 |
| 10/15/99 | P Brennan | Review correspondence from J. Kurtzman re: Discovery | 0.10 | 31.00 |
| 10/19/99 | P Brennan | Prepare for R. Gray deposition | 0.40 | 124.00 |
| 10/19/99 | P Brennan | Conference with J. Kurtzman re: R. Gray deposition | 0.20 | 62.00 |
| 10/20/99 | P Brennan | Prepare for R. Gray deposition | 0.30 | 93.00 |
| 10/21/99 | P Brennan | Conference with J. Kurtzman re: R. Gray deposition | 0.50 | 155.00 |
| 10/23/99 | P Brennan | Prepare for filing of A. Prussin Complaint | 0.40 | 124.00 |
| 10/26/99 | P Brennan | Conferences with A. Richardson, III and J. Kurtzman | 0.20 | 62.00 |
| 10/28/99 | T Schiltz | Review bankruptcy rules for proper method of service of process | 0.70 | 157.50 |
| 10/28/99 | C Arterbridge | Conference with Todd Schiltz re Gray entities | 0.10 | 11.50 |
| 10/28/99 | C Arterbridge | locate Gray entities on Internet and Lexis | 3.50 | 402.50 |
| 10/28/99 | C Arterbridge | telephone calls to secretary of state re: gray entities | 0.20 | 23.00 |
| 10/28/99 | T Schiltz | Prepare complaint and accompanying papers for filing | 4.20 | 945.00 |
| 10/28/99 | P Brennan | Prepare for litigation v. Gray Entities | 0.20 | 62.00 |
| 10/29/99 | P Brennan | Analyze documents; prepare for litigation | 0.80 | 248.00 |
| 10/29/99 | C Arterbridge | assist with filing adversary complaint | 0.50 | 57.50 |
| 11/01/99 | P Brennan | Review re: Status of Complaint - strategy | 1.00 | 310.00 |
| 11/02/99 | P Brennan | Telephone call to J. Kurtzman re: R. Gray deposition | 0.60 | 186.00 |
| 11/04/99 | P Brennan | Analyze litigation status | 0.80 | 248.00 |
| 11/04/99 | T Schiltz | Review and execute summons | 0.50 | 112.50 |
| 11/04/99 | C Arterbridge | Prepare Certificate of service for Summons and Complaint; file with Bankruptcy Court; copy and serve defendants | 1.20 | 138.00 |
| 11/05/99 | T Schiltz | Meet with MTemin to discuss bankruptcy practice and serving discovery before Rule 26(a) conference | 0.40 | 90.00 |
| 11/05/99 | P Brennan | Telephone call from R. Gray re: Next steps, status and resolution | 0.80 | 248.00 |
| 11/09/99 | T Schiltz | Teleconference with A. Prussin re: Summary Judgment motion | 0.30 | 67.50 |
| 11/15/99 | C Arterbridge | Conference with T Schiltz re: returned service for Jenkins Acquisition | 0.10 | 11.50 |
| 11/16/99 | P Brennan | Prepare for next steps in litigation adverse to Gray | 0.40 | 124.00 |
| 11/17/99 | C Arterbridge | Telephone call to Joanne Santiago at Corporation Trust re: returned service of summons | 0.30 | 34.50 |
| 11/17/99 | T Schiltz | Review local rules re: briefing on motion for summary judgment (motion against Gray) | 0.50 | 112.50 |
| 11/18/99 | C Arterbridge | Conference with T Schiltz re: hearing date for Summary Judgment | 0.10 | 11.50 |
| 11/19/99 | P Brennan | Prepare summary judgment pleadings | 2.50 | 775.00 |

WIL:48255.3/CRE042-145994

00240

| Date | Person | Description | Hours | Amount |
|---|---|---|---|---|
| 11/19/99 | C Arterbridge | Telephone call to Lori Capp at Bankruptcy Court re: hearing dates for: fee application and Summary Judgment | 0.30 | 34.50 |
| 11/22/99 | T Schiltz | Telephone calls from A. Prussin re: summary judgment brief | 0.40 | 90.00 |
| 11/22/99 | T Schiltz | telephone call to P. Brenman re: summary judgment brief | 0.40 | 90.00 |
| 11/22/99 | P Brenman | Telephone call with T. Schiltz re: Hearing on summary judgment | 0.40 | 124.00 |
| 11/22/99 | P Brenman | Finalize memorandum re: Summary judgment | 0.10 | 31.00 |
| 11/22/99 | C Arterbridge | Update production documents | 0.20 | 23.00 |
| 11/23/99 | P Brenman | Legal research re: Attorney-client privilege | 3.90 | 1,209.00 |
| 11/23/99 | C Arterbridge | Conference with T Schiltz re: service list and Certificate of Service | 0.50 | 57.50 |
| 11/23/99 | C Arterbridge | Assist T Schiltz with filing Memorandum Brief | 1.20 | 138.00 |
| 11/23/99 | C Arterbridge | Telephone call from P Brenman's office re: copy of docket # 175 | 0.30 | 34.50 |
| 11/29/99 | P Brenman | Review re: Summary judgment pleadings | 0.40 | 124.00 |
| 11/29/99 | C Arterbridge | Telephone call from Gail Keenan re: docket # 175 | 0.20 | 23.00 |
| 11/29/99 | P Brenman | Telephone calls with H. Rhine re: ESP | 0.20 | 62.00 |
| 11/29/99 | C Arterbridge | Conference with T Schiltz re: annual reports for Jenkins Acquisitions | 0.10 | 11.50 |
| 11/29/99 | C Arterbridge | Conference with T Schiltz re: Jenkins Acquisitions, Inc. | 0.10 | 11.50 |
| 11/30/99 | C Arterbridge | Conference with T Schiltz; telephone Parcels for Jenkins entities; Order Certificates of Incorporation; remove CRL from service list | 0.30 | 34.50 |
| 12/03/99 | T Schiltz | Review and revise pleading re: default judgment against Gray | 1.50 | 337.50 |
| 12/03/99 | T Schiltz | review rules re: notice to parties in default | 0.50 | 112.50 |
| 12/03/99 | T Schiltz | revise motion for default judgment | 0.50 | 112.50 |
| 12/06/99 | T Schiltz | Conversations with M. Seidl re: motion for default judgment | 0.10 | 22.50 |
| 12/06/99 | T Schiltz | review motion for default judgment | 0.40 | 90.00 |
| 12/06/99 | M Seidl | Teleconference with TSchiltz re: filing of motion for default judgment | 0.30 | 64.50 |
| 12/06/99 | M Seidl | Reviewed motion for default judgment and exhibits | 0.60 | 129.00 |
| 12/08/99 | T Schiltz | Review and revise certificate of A. Prussin | 0.50 | 112.50 |
| 12/08/99 | C Arterbridge | Telephone call to W Davis re: default order | 0.30 | 34.50 |
| 12/08/99 | T Schiltz | Telephone calls to A. Prussin re: default judgment | 0.40 | 90.00 |
| 12/08/99 | T Schiltz | telephone calls to P. Brenman re: default judgment and status of case against Gray | 1.00 | 225.00 |
| 12/08/99 | T Schiltz | telephone calls to Laurie Capp re: scheduling matters | 0.10 | 22.50 |
| 12/09/99 | P Brenman | Review re: Default and summary judgment issues - Plan | 0.50 | 155.00 |
| 12/09/99 | T Schiltz | Prepare motion for default judgment for filing with the Court | 0.50 | 112.50 |
| 12/10/99 | T Schiltz | Telephone call from P. Prenman re: motion for default | 0.30 | 67.50 |
| 12/10/99 | P Brenman | Review re: Defendant, summary judgment | 0.25 | 77.50 |
| 12/10/99 | C Arterbridge | Conference with T Schiltz re: filing of default judgment motion | 0.10 | 11.50 |
| 12/14/99 | P Brenman | Review re: Next steps - litigation | 0.90 | 279.00 |
| 12/14/99 | C Arterbridge | Amend letter and prepare exhibits for default filing; check Bankruptcy docket for docketing, telephone call to P Brenman | 1.00 | 115.00 |
| 12/15/99 | M Krasny | Meeting with P. Brenman re: Confidentiality Agreement | 0.30 | 112.50 |

| | | | | |
|---|---|---|---|---|
| 12/15/99 | P Brenman | Review re: Next steps - default judgments | 0.20 | 62.00 |
| 12/15/99 | C Arterbridge | copy, file with Bankruptcy Court, Certification with exhibits | 0.50 | 57.50 |
| 12/15/99 | C Arterbridge | telephone call from L. Capp re: signed order | 0.10 | 11.50 |
| 12/16/99 | P Brenman | Telephone call with Harcar counsel re: recent correspondence | 1.40 | 434.00 |
| 12/17/99 | T Schiltz | Telephone call from P. Brenman re: default judgment | 0.50 | 112.50 |
| 12/17/99 | P Brenman | Telephone call with TS and counsel for Harcar | 0.40 | 124.00 |
| 12/22/99 | P Brenman | Prepare for argument on Motion for Default Judgment | 0.60 | 186.00 |
| 12/22/99 | T Schiltz | Telephone call from defendants' counsel re default judgment | 1.00 | 225.00 |
| 12/23/99 | T Schiltz | Telephone call re: default judgment | 0.20 | 45.00 |
| 12/27/99 | T Schiltz | Review papers filed by defendants in an effort to vacate default judgment | 1.00 | 225.00 |
| 12/27/99 | T Schiltz | Telephone call to S. Kaufman re default judgment; prepare letter to L. Silverstein re: same | 0.40 | 90.00 |
| 12/27/99 | T Schiltz | Telephone call to Laurie Capp re: date objection is due | 0.20 | 45.00 |
| 12/27/99 | T Schiltz | Telephone call from A. Prussin re: response to motion to vacate; discuss response; fax materials to A. Prussin | 0.80 | 180.00 |
| 12/27/99 | T Schiltz | Telephone call from A. Prussin re: dates of filings | 0.20 | 45.00 |
| 12/27/99 | T Schiltz | Telephone call to H. Heiman re: dates for responding to motion to vacate | 0.10 | 22.50 |
| 12/27/99 | P Brenman | Telephone call with A. Prussin re: Default judgments | 0.40 | 124.00 |
| 12/28/99 | R Lopez | Legal research re: subpoena of party defendant to testify at trial in another jurisdiction | 1.00 | 210.00 |
| 12/28/99 | P Brenman | Telephone call with A. Prussin re: Gray adversary | 0.10 | 31.00 |
| 12/29/99 | R Lopez | Preparation of subpoena re: corporate officer re: review of file re: address of officer and location of defendant in DE to serve | 3.50 | 735.00 |
| 12/29/99 | M Seidl | Teleconference with PBrenman and RLopez re: subpoena and fees and forward form of subpoena to RLopez | 0.50 | 107.50 |
| 01/03/00 | T Schiltz | Review brief in opposition to motion to vacate the default judgment | 0.80 | 184.00 |
| 01/03/00 | T Schiltz | Review affidavit in support of oppositoin to motion to vacate | 0.40 | 92.00 |
| 01/03/00 | C Arterbridge | prepare certificate of service and exhibits for filing | 0.50 | 57.50 |
| 01/04/00 | T Schiltz | Finalize brief in opposition to motion to vacate and file same | 1.50 | 345.00 |
| 01/04/00 | P Brenman | Prepare for hearing on motion to vacate default | 2.20 | 693.00 |
| 01/19/00 | P Brenman | Review re: Motion for Sanctions and fee issues | 0.30 | 94.50 |
| 01/20/00 | T Schiltz | Call to MSeidl re serving of subpoena on PNC Bank | 0.30 | 69.00 |
| 01/20/00 | M Seidl | Teleconference with TSchiltz re: service of subpoena; prepare cover letter re: same and have served | 0.50 | 110.00 |
| 01/21/00 | P Brenman | Review re: Confidentiality issues | 0.20 | 63.00 |
| 01/21/00 | M Seidl | Review rules re: notice and certificate of service for subpoena | 0.20 | 44.00 |
| 01/24/00 | P Brenman | Review re: Document production issues | 0.40 | 126.00 |
| 01/27/00 | P Brenman | Telephone call with counsel; review re: Documents | 0.30 | 94.50 |
| 01/27/00 | P Brenman | Review re: Scheduling issues | 0.40 | 126.00 |
| 01/31/00 | P Brenman | Prepare discovery re: Contempt | 0.30 | 94.50 |
| 02/07/00 | T Schiltz | Telephone call to A. Prussin re: confidentiality agreement | 0.20 | 48.00 |
| 02/07/00 | P Brenman | Telephone call with counsel re: confidentiality order | 0.10 | 32.50 |

| Date | Person | Description | Hours | Amount |
|------|--------|-------------|-------|--------|
| 02/08/00 | P Brenman | Review re: compelling adequate discovery disclosures from Gray | 0.20 | 65.00 |
| 02/09/00 | P Brenman | Review re: next steps to take in litigation against Gray | 0.50 | 325.00 |
| 02/09/00 | P Brenman | Review re: Open issues in adversary proceeding | 0.90 | 292.50 |
| 02/09/00 | P Brenman | Review re: Withdrawal of reference | 1.20 | 390.00 |
| 02/10/00 | T Schiltz | E-mail to P. Brenman re: motion to withdraw | 0.30 | 72.00 |
| 02/10/00 | P Brenman | Review re: Summary Judgment issues | 0.10 | 32.50 |
| 02/10/00 | P Brenman | Review re: defendants' Motion for Extension of Time to respond to Summary Judgment Motion | 0.10 | 32.50 |
| 02/10/00 | P Brenman | Review Motion re: Withdrawal of Reference | 0.40 | 130.00 |
| 02/10/00 | P Brenman | Review re: Status re: Confidentiality requests | 0.20 | 65.00 |
| 02/11/00 | P Brenman | Prepare Response to Motion re: Withdrawal of Reference | 0.60 | 195.00 |
| 02/11/00 | P Brenman | Review re: Outstanding Discovery in Adversary Action | 0.40 | 130.00 |
| 02/13/00 | P Brenman | Prepare Response to Motion re: Withdrawal of Reference | 0.10 | 32.50 |
| 02/14/00 | P Brenman | Review re: Next steps in Adversary Action | 0.20 | 65.00 |
| 02/15/00 | T Schiltz | Telephone call from P. Brenman re: response to motion to withdraw reference | 0.50 | 120.00 |
| 02/15/00 | R Lopez | Conference with PBrenman re: motion to withdrawal reference | 0.50 | 112.50 |
| 02/15/00 | P Brenman | Review re: Withdrawal of reference issues | 0.40 | 130.00 |
| 02/16/00 | R Lopez | Legal research re: motion to withdrawal and case law standards | 4.90 | 1,102.50 |
| 02/16/00 | R Lopez | Conference with PBrenman re: motion to withdrawal reference | 1.00 | 225.00 |
| 02/16/00 | P Brenman | Review re: Withdrawal of reference issues | 5.40 | 1,755.00 |
| 02/17/00 | T Schiltz | Review motions to quash subpoena and Rhine Affidavit | 0.30 | 72.00 |
| 02/17/00 | R Lopez | Preparation of response to Motion to Withdrawal of Defendants; draft memorandum of law in support of objection and form order | 10.90 | 2,452.50 |
| 02/17/00 | M Seidl | Discussion with TSchiltz and RLopez re: filing of brief | 0.30 | 69.00 |
| 02/18/00 | T Schiltz | telephone call to M. Sawczuk re agenda letter and motion to withdraw | 1.00 | 240.00 |
| 02/18/00 | R Lopez | Preparation of final draft of motion and memorandum of law in opposition to Defendants' motion to Withdrawal | 5.60 | 1,260.00 |
| 02/18/00 | M Seidl | Forward subpoenaed documents to PBrenman and APrussin | 0.40 | 92.00 |
| 02/18/00 | T Schiltz | Revise Brief in Support of Plaintiff's Response and Objection to Certain Defendants' Motion for Withdrawal of Reference of Adversary Proceeding | 2.00 | 480.00 |
| 02/22/00 | P Brenman | Review re: Next steps, withdrawal of reference issues, etc. | 1.80 | 585.00 |
| 02/23/00 | B Klayman | Telephone call from A. Prussin re: discovery rules | 0.20 | 65.00 |
| 02/28/00 | T Schiltz | Telephone call to P. Brenman re: recent pleadings in adversary | 0.30 | 72.00 |
| 02/28/00 | T Schiltz | Review motions to quash subpoena filed by R. Gray | 0.70 | 168.00 |
| 02/28/00 | T Schiltz | Prepare stipulation to motion to quash subpoena | 1.00 | 240.00 |
| 02/28/00 | T Schiltz | Telephone call to P. Brenman re: motion to quash subpoenas | 0.10 | 24.00 |
| 02/28/00 | P Brenman | Review re: Withdrawal of Reference | 0.40 | 130.00 |
| 02/28/00 | T Schiltz | Telephone call to A. Prussin re: motion to quash the subpoenas | 0.30 | 72.00 |
| 02/28/00 | P Brenman | Review re: Settlement issues | 0.30 | 97.50 |

WIL:48255.3/CRE042-145994

00243

| 03/01/00 | T Schiltz | Telephone call to A. Prussin re: filing of summary judgment reply brief | 0.40 | 96.00 |
|---|---|---|---|---|
| 03/02/00 | T Schiltz | Review draft reply brief | 0.70 | 168.00 |
| 03/02/00 | T Schiltz | Review draft of reply brief on summary judgment | 0.50 | 120.00 |
| 03/03/00 | T Schiltz | Review final draft of reply brief in support of motion for summary judgment | 1.20 | 288.00 |
| 03/03/00 | T Schiltz | Prepare reply brief in support of motion for summary judgment | 1.20 | 288.00 |
| 03/03/00 | T Schiltz | Review and revise objection to motion to quash | 1.00 | 240.00 |
| 03/03/00 | T Schiltz | Prepare letter to Judge Walrath re: Prussin Affidavit and objection to motion to quash | 1.00 | 240.00 |
| 03/06/00 | T Schiltz | Finalize papers in opposition to motion to quash for filing with court | 0.20 | 48.00 |
| 03/06/00 | T Schiltz | Telephone call to A. Prussin re: motion to quash the subpoenas | 0.10 | 24.00 |
| 03/06/00 | T Schiltz | Prepare motion to compel production of documents | 1.00 | 240.00 |
| 03/06/00 | T Schiltz | Review pleadings and exhibits for notice to compel | 0.20 | 48.00 |
| 03/06/00 | T Schiltz | Telephone call from H. Adam Prussin re: interrogatory responses | 0.20 | 48.00 |
| 03/06/00 | P Brenman | Review reply brief re: Summary judgment | 0.40 | 130.00 |
| 03/07/00 | T Schiltz | Telephone call from P. Brenman re: hearing on summary judgment motion | 0.10 | 24.00 |
| 03/07/00 | P Brenman | Review re: Discovery in Adversary Action | 0.20 | 65.00 |
| 03/08/00 | P Brenman | Review re: Withdrawal of reference issues | 0.60 | 195.00 |
| 03/09/00 | P Brenman | Letter to D. Baldwin and call to A. Prussin re: Plan re: settlement issues | 0.70 | 227.50 |
| 03/10/00 | P Brenman | Telephone call with A. Prussin re: Injunction | 0.70 | 227.50 |
| 03/10/00 | P Brenman | Telephone call with D. Baldwin re: Settlement issues | 0.20 | 65.00 |
| 03/13/00 | P Brenman | Telephone call with counsel; review re: Strategy | 0.40 | 130.00 |
| 03/13/00 | P Brenman | Telephone call with H. Rhine re: Settlement | 0.20 | 65.00 |
| 03/14/00 | P Brenman | Telephone call with D. Baldwin re: Settlement issues | 0.20 | 65.00 |
| 03/17/00 | P Brenman | Telephone call with A. Prussin re: Scheduling Hearing on Pending Motions | 0.30 | 97.50 |
| 03/17/00 | P Brenman | Telephone call with H. Rhine re: Next steps | 0.30 | 97.50 |
| 03/17/00 | P Brenman | Review re: Gray Affidavit - summary judgment | 0.20 | 65.00 |
| 03/17/00 | P Brenman | Review documents re: Document production | 0.30 | 97.50 |
| 03/22/00 | T Schiltz | Review reply brief on motion to compel in adversary proceeding against Gray | 0.50 | 120.00 |
| 03/22/00 | P Brenman | Review re: Status - ESP deal | 0.10 | 32.50 |
| 03/23/00 | T Schiltz | Revise and reply brief in support of motion to compel | 1.00 | 240.00 |
| 03/23/00 | T Schiltz | Prepare brief for filing with the Court | 1.50 | 360.00 |
| 04/03/00 | P Brenman | Prepare for District Court hearing | 0.20 | 65.00 |
| 04/04/00 | P Brenman | Telephone call with counsel re: Settlement issues | 0.20 | 65.00 |
| 04/05/00 | P Brenman | Telephone call with R. Gray re: Settlement | 0.30 | 97.50 |
| 04/05/00 | T Schiltz | Attend scheduling conference in adversary proceeding before J. Farnan | 1.00 | 240.00 |
| 04/14/00 | P Brenman | Telephone calls with A. Prussin and D. Baldwin re: Motion to Quash and Other Discovery Disputes | 0.50 | 162.50 |
| 04/17/00 | P Brenman | Memorandum to Creditors' Committee re: Settlement | 0.40 | 130.00 |
| 04/26/00 | P Brenman | Telephone call with Prussin re: Open issues | 1.30 | 422.50 |
| 04/28/00 | P Brenman | Telephone call with counsel re: ESP open issues | 0.20 | 65.00 |
| 05/02/00 | T Schiltz | Meet with H. Adam Prussin re: summary judgment hearing | 0.50 | 120.00 |

WIL:48255.3/CRE042-145994

| 05/02/00 | T Schiltz | Attend hearing on motion for summary judgment | 0.50 | 120.00 |
|---|---|---|---|---|
| 05/02/00 | P Brennan | Prepare for hearing on summary judgment motion | 0.40 | 130.00 |
| 05/03/00 | P Brennan | Telephone call with R. Gray re: Settlement | 0.30 | 97.50 |
| 05/04/00 | P Brennan | Review re: Next steps in Adversary Action | 0.10 | 32.50 |
| 05/08/00 | T Schiltz | Review Prussin Affidavit in opposition to motion for sanctions | 0.20 | 48.00 |
| 05/08/00 | T Schiltz | Review Affidavit of Adam Prussin and provide comments thereto | 0.50 | 120.00 |
| 05/08/00 | P Brennan | Telephone calls with U.S. Trustee's Office and A. Prussin re: status of Adversary Action | 0.30 | 97.50 |
| 05/09/00 | P Brennan | Telephone call with A. Prussin re: ESP | 0.20 | 65.00 |
| 05/18/00 | P Brennan | Review re: Next steps in Adversary Action | 0.50 | 162.50 |
| 05/19/00 | P Brennan | Telephone call with counsel re: next steps in Adversary Action; review file re: same | 5.30 | 1,722.50 |
| 05/25/00 | T Schiltz | Review draft requests for admissions | 0.70 | 168.00 |
| 05/31/00 | T Schiltz | Review and revise requests for admission | 0.60 | 144.00 |
| 06/05/00 | T Schiltz | Prepare and finalize requests for admission | 0.20 | 48.00 |
| 06/05/00 | C Arterbridge | Conference with TSchiltz; copy, serve discovery with exhibits | 1.00 | 115.00 |
| 06/06/00 | P Brennan | Review correspondence from B. Quinn re: discovery in adversary action | 0.20 | 65.00 |
| 06/06/00 | C Arterbridge | prepare notice of service of Plaintiffs' request notice of service of Plaintiffs' request for admission, copy and file with District Court | 0.40 | 46.00 |
| 06/22/00 | P Brennan | Telephone call with R. Gray re: settlement | 0.20 | 65.00 |
| 07/06/00 | P Brennan | Telephone call with R. Gray re: IRS; correspondence re: Settlement | 0.30 | 97.50 |
| 07/10/00 | P Brennan | Telephone call with R. Gray re: settlement | 0.50 | 162.50 |
| 07/12/00 | P Brennan | Telephone call with Prussin re: settlement | 0.10 | 32.50 |
| 07/12/00 | P Brennan | Review re: Settlement issues | 0.40 | 130.00 |
| 07/14/00 | P Brennan | Telephone call with A. Prussin re: Settlement Strategy | 0.50 | 162.50 |
| 07/25/00 | T Schiltz | Call from D. Baldwin re extension of time to respond to request for admission | 0.50 | 120.00 |
| 07/26/00 | T Schiltz | Call to David Baldwin re stipulation on extension of time | 0.10 | 24.00 |
| 07/28/00 | P Brennan | Review re: Latest developments in settlement and adversary proceeding | 0.90 | 292.50 |
| 07/29/00 | P Brennan | Telephone call with R. Gray re: Settlement procedures | 0.30 | 97.50 |
| 07/31/00 | P Brennan | Review re: Settlement issues | 0.30 | 97.50 |
| 08/07/00 | P Brennan | Telephone call with R. Gray re: Settlement | 0.20 | 65.00 |
| 08/08/00 | P Brennan | Analyze R. Gray settlement proposal | 0.80 | 260.00 |
| 08/10/00 | P Brennan | Review settlement | 0.20 | 65.00 |
| 08/11/00 | P Brennan | Review settlement issues | 1.80 | 585.00 |
| 08/24/00 | P Brennan | Review open issues re: Settlement | 0.90 | 292.50 |
| 08/28/00 | P Brennan | Confer with Prussin re: discovery | 0.40 | 130.00 |
| 08/31/00 | T Schiltz | Review A. Prussin discovery materials | 0.30 | 72.00 |
| 09/05/00 | T Schiltz | Call from A. Prussin re Motion to Extend Discovery Cut-Off | 0.20 | 48.00 |
| 09/06/00 | P Brennan | Telephone call with counsel re: Discovery Cut-Off | 0.30 | 97.50 |
| 09/07/00 | T Schiltz | Call to District Court Clerk re: filing | 0.10 | 24.00 |
| 09/07/00 | T Schiltz | Review motion to adjourn discovery cut-off date | 0.30 | 72.00 |
| 09/20/00 | P Brennan | Prepare for next steps in Adversary Proceeding | 1.20 | 390.00 |
| 09/26/00 | P Brennan | Review open issues re: settlement | 0.50 | 162.50 |

| Date | Person | Description | Hours | Amount |
|---|---|---|---|---|
| 09/29/00 | C Arterbridge | Prepare Certificate of Service for Plaintiffs' Motion To Strike etc. and Affidavit of H. Prussin; copy, file with District Court, and serve | 1.30 | 149.50 |
| 10/02/00 | P Brenman | Review discovery issues | 0.80 | 260.00 |
| 11/10/00 | C Arterbridge | prepare certificate of service for Plaintiff's Motion for Indefinite Stay and To Extend Discovery Cut-Off | 0.40 | 46.00 |
| 11/13/00 | C Arterbridge | Telephone call to Parcels for filing in District Court | 0.10 | 11.50 |
| 11/14/00 | T Schiltz | E-mail to A. Prussin re: filing of motion for indefinite stay | 0.10 | 24.00 |
| 11/30/00 | P Brenman | Analysis of settlement issues. | 0.40 | 130.00 |
| 12/01/00 | P Brenman | Analyze settlement issues | 0.50 | 162.50 |
| 12/04/00 | P Brenman | Review settlement issues | 0.20 | 65.00 |
| 01/02/01 | P Brenman | Telephone call with A. Prussin re: case status | 0.40 | 136.00 |
| 02/28/01 | T Schiltz | Call from J. Farnan's chambers re scheduling | 0.30 | 75.00 |
| 02/28/01 | P Brenman | Review open issues re: Trial | 0.80 | 272.00 |
| 03/21/01 | R Lopez | Conference with PBrenman re: subpoena service pursuant to 2004 and jurisdiction | 0.30 | 69.00 |
| 04/05/01 | T Schiltz | Call to Judge Farnan's chambers regarding scheduling conflict. | 0.10 | 25.00 |
| 04/17/01 | T Schiltz | Telephone call to court regarding scheduling office conference | 0.20 | 50.00 |
| 05/01/01 | T Schiltz | Attend hearing before Judge Acker regarding whether ESP Bankruptcy should be transferred to the District of Delaware. | 2.30 | 575.00 |
| 05/03/01 | T Schiltz | Attend hearing before judge on Richardson motion to transfer | 0.80 | 200.00 |
| 05/07/01 | T Schiltz | Review draft order on hearing and call to V. Proctor. | 0.10 | 25.00 |
| 05/21/01 | R Lopez | Conference with PBrenman re: analysis of Delaware Court hearing order and committee responsibilities and duties | 0.60 | 138.00 |
| 06/04/01 | T Schiltz | Calls to defense counsel re stipulation, call to A. Prussin, e-mails from R. Brenman re: same | 0.50 | 125.00 |
| 07/02/01 | T Schiltz | Attend Hearing before the Court re: status of the case. | 1.40 | 350.00 |
| 07/11/01 | P Brenman | Prepare for next steps in litigation | 1.40 | 504.00 |
| 07/18/01 | P Brenman | Prepare for attendance at Court hearing; analyze Court Order and next steps | 1.40 | 504.00 |
| 07/18/01 | P Brenman | Attend Court hearing | 1.80 | 648.00 |
| 07/19/01 | P Brenman | Prepare for discovery in adversary action | 0.60 | 216.00 |
| 08/28/01 | P Brenman | Analyze proposed settlement re: Summit | 1.10 | 396.00 |
| 08/29/01 | P Brenman | Review settlement issues in Summit | 0.50 | 180.00 |
| 08/30/01 | R Lopez | Review of settlement agreement in Summit | 2.30 | 529.00 |
| 10/09/01 | P Brenman | Attend Court hearing in New York | 5.30 | 1,908.00 |
| 11/09/01 | R Lopez | Conference with PBrenman re: lis pendes action in Delaware | 0.30 | 69.00 |
| 11/13/01 | R Lopez | Review of amended complaint re: lis pendes in Delaware | 0.60 | 138.00 |
| 11/14/01 | A Bruno | Confer with RCLopez; research internet for Zip code and County of property in Delaware | 0.20 | 24.00 |
| 11/14/01 | R Lopez | Conference with PBrenman re: lis pendens action | 0.30 | 69.00 |
| 11/14/01 | R Lopez | Preparation of Draft lis pendens notice | 1.20 | 276.00 |
| 11/14/01 | R Lopez | Review of lis pendens statute | 0.50 | 115.00 |
| 11/15/01 | R Lopez | Receipt and review of property search | 0.20 | 46.00 |
| 11/15/01 | A Bruno | Confer with RCLopez; review property search | 0.20 | 24.00 |
| 11/15/01 | A Bruno | Telephone call with Security Search and Abstract Company | 0.20 | 24.00 |

WIL:48255.3/CRE042-145994

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 11/15/01 | R Lopez | Review of pleading for New Hampshire action | 0.30 | 69.00 |
| 11/15/01 | R Lopez | Conference with PBrennan re: lis pendens New Hampshire | 0.20 | 46.00 |
| 11/15/01 | R Lopez | Conference with PBrennan, Adam Prussin and Ambrose Richardson re: lis pendens actions | 0.90 | 207.00 |
| 11/15/01 | R Lopez | Conference with PBrennan re: new hampsire pleading and Delaware lise pendens | 0.10 | 23.00 |
| 11/19/01 | R Lopez | Review pleadings filed in NY contempt proceedings | 2.70 | 621.00 |
| 11/19/01 | A Bruno | Telephone call with Paul from Searchtec re: request Corporate Tax Lien Certificate | 0.20 | 24.00 |
| 11/19/01 | A Bruno | Telephone call with Heather from Security Search and Abstract | 0.10 | 12.00 |
| 11/19/01 | A Bruno | Telephone call to Information re: New Castle County Tax Division | 0.30 | 36.00 |
| 11/19/01 | R Lopez | Conference with PBrennan re: effect of contempt proceedings on the Delaware action and discovery needed | 1.10 | 253.00 |
| 11/19/01 | P Brennan | Attend Court hearing in New York | 4.00 | 1,640.00 |
| 11/20/01 | R Lopez | Conference with PBrennan re: contempt proceedings | 0.20 | 46.00 |
| 11/20/01 | R Lopez | Conference with PBrennan re: discovery extension motion in | 0.10 | 23.00 |
| 11/20/01 | A Bruno | Telephone call with Erik from Security Search and Abstract | 0.10 | 12.00 |
| 11/20/01 | A Bruno | Review search from Searchtec | 0.10 | 12.00 |
| 11/20/01 | R Lopez | Revisions of lis pendens notice | 0.30 | 69.00 |
| 11/21/01 | R Lopez | Conference with PBrennan re: motion to file re: complaint | 0.10 | 23.00 |
| 11/21/01 | R Lopez | Correspondence to Prussin and Richardson re: motion to amend | 0.10 | 23.00 |
| 11/21/01 | R Lopez | Review of tax searches for summit | 0.20 | 46.00 |
| 11/21/01 | R Lopez | Review of motion to file amended complaint and exhibits | 0.40 | 92.00 |
| 11/21/01 | A Bruno | Telephone call with Diane from Esquire Assist | 0.10 | 12.00 |
| 11/21/01 | A Bruno | Telephone call with Erik from Searchtec | 0.10 | 12.00 |
| 11/21/01 | A Bruno | Confer with RCLopez; request Good Standing Certificate | 0.20 | 24.00 |
| 11/21/01 | A Bruno | Review Good Standing Certificate | 0.10 | 12.00 |
| 11/26/01 | R Lopez | Correspondence from Prussin re: discovery motion | 0.10 | 23.00 |
| 11/26/01 | P Brennan | Review settlement status | 0.30 | 108.00 |
| 12/04/01 | A Bruno | Review correspondence from Security Search and Abstract Company | 0.10 | 12.00 |
| 12/06/01 | A Bruno | Review correspondence from Security Search and Abstract Company | 0.10 | 12.00 |
| 12/06/01 | A Bruno | Review correspondence from Esquire Assist | 0.10 | 12.00 |
| 12/06/01 | R Lopez | Conference with PBrennan re: discovery issues | 0.20 | 46.00 |
| 12/10/01 | R Lopez | Preparation of motion to amend pleadings; revisions, Preparation of notice of hearing and order | 2.20 | 506.00 |
| 12/11/01 | R Lopez | Preparation of motion to extend pretrial and for filing in delaware | 5.80 | 1,334.00 |
| 12/12/01 | R Lopez | motion to extend pretrial deadlines | 0.50 | 115.00 |
| 12/12/01 | R Lopez | Review of motion to extend discovery | 0.10 | 23.00 |
| 12/12/01 | J Ranji | Reviewed and revised motion to amend complaint, filed same | 1.30 | 318.50 |
| 12/12/01 | C Arterbridge | Copy Efile with Bankruptcy Court Motion to Amend | 2.70 | 351.00 |
| 12/26/01 | P Brennan | Legal research and preparation for exploration of claims against Debtor officer | 3.40 | 1,224.00 |
| 01/02/02 | R Lopez | Conference with Colleen Arterbridge re: Judge Farnan contacts | 0.20 | 48.00 |

WIL:48255.3/CRE042-145994

00247

| | | | | |
|---|---|---|---|---|
| 01/02/02 | R Lopez | Conference with PBrenman re: Judge Farnan and scheduling issues | 0.30 | 72.00 |
| 01/07/02 | R Lopez | Conference with PBrenman re: adversary extension motion and Judge Farnan's chambers | 0.20 | 48.00 |
| 01/14/02 | P Brenman | Prepare for summary judgment argument | 2.30 | 862.50 |
| 01/22/02 | R Lopez | Plan of action re: lack of movement in adversary action | 0.10 | 24.00 |
| 01/23/02 | P Brenman | Review next steps re: moving case forward in Delaware | 0.70 | 262.50 |
| 01/31/02 | P Brenman | Review open issues re: Summary judgment | 1.40 | 525.00 |
| 02/13/02 | P Brenman | Prepare for next steps in Delaware litigation | 1.30 | 487.50 |
| 02/14/02 | R Lopez | Conference with PBrenman re: open adversary issues | 0.20 | 48.00 |
| 02/15/02 | R Lopez | Review of motion to extend discovery | 0.20 | 48.00 |
| 02/15/02 | R Lopez | Conference with PBrenman re: status of orders | 0.30 | 72.00 |
| 02/19/02 | T Schiltz | Review order from Judge Farnan | 0.50 | 145.00 |
| 02/19/02 | R Lopez | Conference with PBrenman re: discovery deadline and Quinn 2004 | 0.90 | 216.00 |
| 02/19/02 | R Lopez | Preparation of amended order and letter to judge Farnan re: discovery deadline | 0.40 | 96.00 |
| 02/19/02 | P Brenman | Prepare for summary judgment follow-up | 2.30 | 862.50 |
| 02/20/02 | R Lopez | Conference with PBrenman re: summary judgment order | 0.20 | 48.00 |
| 02/20/02 | P Brenman | Prepare for next steps in Delaware litigation | 1.40 | 525.00 |
| 02/21/02 | P Brenman | Review pleadings in adversary action against Gray | 2.20 | 825.00 |
| 02/22/02 | P Brenman | Prepare for settlement approach | 1.90 | 712.50 |
| 02/26/02 | R Lopez | Telephone conference with PBrenman re: brief issues | 0.20 | 48.00 |
| 02/26/02 | P Brenman | Prepare summary judgment material | 2.60 | 975.00 |
| 02/28/02 | J Ranji | Receive call from APrussin re:  need to obtain pleadings to prepare brief and meet with C. Arterbridge re:  which documents needed, have pulled and faxed | 1.20 | 312.00 |
| 02/28/02 | C Arterbridge | Conference with J Barber re: documents needed, pull down District Court Docket | 0.50 | 70.00 |
| 03/01/02 | P Brenman | Review Creditors' Committee options re: claims against Gray | 0.80 | 300.00 |
| 03/01/02 | R Lopez | Conference with PBrenman re: settlement of case | 0.20 | 48.00 |
| 03/04/02 | P Brenman | Prepare for and participate in strategy session re: potential resolution | 3.20 | 1,200.00 |
| 03/04/02 | J Ranji | Receive and briefly review supplemental brief in support of summary judgment | 0.10 | 26.00 |
| 03/05/02 | T Schiltz | Review draft brief and prepare same for filing with District Court | 2.00 | 580.00 |
| 03/05/02 | T Schiltz | meet with J Barber re: supplemental brief | 0.10 | 29.00 |
| 03/05/02 | T Schiltz | call to P. Brenman re: supplemental brief | 0.40 | 116.00 |
| 03/05/02 | T Schiltz | call to A. Prussin re: supplemental brief | 0.10 | 29.00 |
| 03/05/02 | J Ranji | Conference with APrussin, TCSchiltz, PBrenman re: supplemental brief | 0.20 | 52.00 |
| 03/05/02 | J Ranji | receive, review and revise supplemental brief | 0.30 | 78.00 |
| 03/05/02 | R Lopez | Conference with PBrenman re: settlement | 0.10 | 24.00 |
| 03/07/02 | P Brenman | Participate in conference call and review options re: Settlement | 1.80 | 675.00 |
| 03/18/02 | R Lopez | Conference with PBrenman re: 2004 of Quinn | 0.20 | 48.00 |
| 03/19/02 | R Lopez | Preparation of notice of 2004 examination | 0.40 | 96.00 |
| 03/19/02 | P Brenman | Review open issues re: Settlement and next steps | 1.60 | 600.00 |
| 03/20/02 | R Lopez | Preparation of 2004 motion of Quinn | 1.40 | 336.00 |

| | | | | |
|---|---|---|---|---|
| 03/21/02 | R Lopez | Telephone conference with Brenman re: 2004 examination motion | 0.10 | 24.00 |
| 03/28/02 | R Lopez | Conference with PBrenman re: 2004 of Quinn | 0.20 | 48.00 |
| 03/29/02 | P Brenman | Prepare for Barry Quinn deposition | 2.60 | 975.00 |
| 04/03/02 | T Schiltz | Review motion to withdraw filed by Heiman; call to Prussin; e-mail to PBrenman. | 0.10 | 29.00 |
| 04/03/02 | T Schiltz | Call to Prussin and email to P Brenman re: motion to withdraw | 0.10 | 29.00 |
| 04/08/02 | P Brenman | Prepare for Court argument re: motion to withdraw | 1.40 | 525.00 |
| 04/08/02 | T Schiltz | Review motions filed by RAC defendants | 0.80 | 232.00 |
| 04/08/02 | T Schiltz | review order issued by J. Farnan and emails to Prussin and Brenman re: same | 0.20 | 58.00 |
| 04/10/02 | P Brenman | Analyze latest pleadings re: Summary judgment | 1.40 | 525.00 |
| 04/12/02 | T Schiltz | Review email from A. Prussin and respond to same | 0.20 | 58.00 |
| 04/12/02 | T Schiltz | draft opposition to motion to stay | 2.00 | 580.00 |
| 04/12/02 | T Schiltz | review and revise draft brief in opposition to motion to withdraw | 2.00 | 580.00 |
| 04/15/02 | T Schiltz | Review draft opposition to motion to withdraw or, in the alternative, a stay and Prussin affidavit re: same | 3.20 | 928.00 |
| 04/15/02 | T Schiltz | prepare letter to J. Farnan re: oppositoin to motion to stay | 0.20 | 58.00 |
| 04/22/02 | T Schiltz | Review e-mail from PBrenman re: conference call with J. Farnan. | 0.10 | 29.00 |
| 04/23/02 | T Schiltz | Review reply in support of motion to withdraw or stay | 0.40 | 116.00 |
| 05/09/02 | P Brenman | Analyze status and claim strategy | 1.80 | 675.00 |
| 05/13/02 | P Brenman | Prepare for Creditors' Committee litigation | 4.60 | 1,725.00 |
| 06/05/02 | P Brenman | Review litigation strategy | 0.90 | 337.50 |
| 06/14/02 | P Brenman | Analysis of next steps to be taken by Committee | 0.70 | 262.50 |
| 06/19/02 | T Schiltz | Conference call with the court re: substitution of counsel. | 0.30 | 87.00 |
| 06/19/02 | P Brenman | Preparation for conference call with court | 0.90 | 337.50 |
| 06/19/02 | P Brenman | Particpate in conf. call with court | 0.30 | 112.50 |
| 07/23/02 | T Schiltz | Review and revise draft reply brief in support of second motion for summary judgment | 2.10 | 609.00 |
| 07/24/02 | T Schiltz | Review and revise draft reply brief and draft Prussin affidavit. | 1.60 | 464.00 |
| 07/25/02 | T Schiltz | Review and revise reply brief in support of second motion for partial summary judgment. | 2.10 | 609.00 |
| 07/25/02 | R Lopez | Conference with PBrenman re: Gray and Delaware adversary | 0.20 | 48.00 |
| 08/05/02 | R Lopez | Conference with PBrenman re: status of Delaware Adversary | 0.20 | 48.00 |
| 08/05/02 | P Brenman | Analyze options and next steps re: District Court case | 0.70 | 269.50 |
| 08/06/02 | B Klayman | Review draft motion for examination and notice of motion | 0.40 | 144.00 |
| 08/06/02 | R Lopez | Preparation of 2004 motion for filing with the court | 3.20 | 768.00 |
| 08/07/02 | R Lopez | Revise motion re: 2004 examination | 1.40 | 336.00 |
| 08/07/02 | C Arterbridge | Electronically file and serve Motion for Examination of Barry Quinn, forward copy to R Lopez | 0.50 | 70.00 |
| 08/08/02 | R Lopez | Preparation of Quientero motion for 2004 examination | 0.50 | 120.00 |
| 08/13/02 | R Lopez | Conference with PBrenman re: 2004 exams | 0.10 | 24.00 |
| 08/17/02 | P Brenman | Review status and strategy of Delaware Adversary Action | 1.10 | 423.50 |
| 08/19/02 | T Schiltz | Review Prussin letter to Judge Farnan. | 0.30 | 90.00 |

| | | | | |
|---|---|---|---|---|
| 08/20/02 | P Brenman | Prepare strategy re: District Court | 0.40 | 154.00 |
| 09/03/02 | R Lopez | Review of docket re: 2004 motion responses | 0.20 | 48.00 |
| 09/11/02 | T Schiltz | Review Quinn 2004 exam request; call from H. Heiman. | 0.20 | 60.00 |
| 09/11/02 | R Lopez | Conference with PBrenman re: 2004 of Quinn | 0.70 | 168.00 |
| 09/12/02 | T Schiltz | Email to A. Prussin and R. Lopez re: Quinn depo. | 0.10 | 30.00 |
| 09/12/02 | T Schiltz | call to R. Lopez re: Quinn examination | 0.30 | 90.00 |
| 09/12/02 | T Schiltz | call from H. Heiman re: Quinn examination | 0.10 | 30.00 |
| 09/12/02 | P Brenman | Prepare for Court hearing re: 2004 Examination of B. Quinn | 0.10 | 38.50 |
| 09/21/02 | P Brenman | Prepare for Quinn deposition | 3.30 | 1,270.50 |
| 09/23/02 | P Brenman | Preparation for Quinn Deposition | 1.80 | 693.00 |
| 09/23/02 | P Brenman | Attendance at Quinn Deposition | 5.30 | 2,040.50 |
| 09/24/02 | P Brenman | Analyze possible Global settlement | 1.10 | 423.50 |
| 10/10/02 | T Schiltz | Meet with JBarber re: preparing status letter to Judge Thynge and status report. | 0.60 | 180.00 |
| 10/10/02 | P Brenman | Prepare update and strategy re: moving case forward | 0.40 | 154.00 |
| 10/10/02 | J Ranji | Meet with TSchiltz, discuss case background, status memo; | 0.40 | 104.00 |
| 10/10/02 | J Ranji | Review pleadings and other materials re: case status | 2.60 | 676.00 |
| 10/11/02 | J Ranji | Status report - pull files, review pleadings; obtain proper titles, filing and response dates; determine which motions were ruled on and which remain pending; finishing drafting status report; arrange for retrieval of docket item numbers | 3.20 | 832.00 |
| 10/14/02 | T Schiltz | Revise letter to Judge Thynge re: status of adversary proceeding | 0.40 | 120.00 |
| 10/14/02 | J Ranji | Review docket item numbers, insert into status report | 0.20 | 52.00 |
| 10/16/02 | P Brenman | Prepare for status hearing | 0.60 | 231.00 |
| 10/17/02 | P Brenman | Attendance at status conference | 1.70 | 654.50 |
| 10/17/02 | P Brenman | Prepare for status conference | 1.90 | 731.50 |
| 10/21/02 | T Schiltz | Attend status hearing before Magistrate Judge Thynge. | 1.60 | 480.00 |
| 10/21/02 | C Arterbridge | Conference with T Schiltz re: Notice of Deficiency received from bankruptcy court | 0.30 | 42.00 |
| 10/23/02 | C Arterbridge | Telephone call to Lillie Lewis at Bankruptcy Court re: Deficiency for Motion to Lift Stay | 0.70 | 98.00 |
| 10/24/02 | C Arterbridge | Prepare letter to Bankruptcy Court re: Motion to Lift Stay | 0.50 | 70.00 |
| 10/30/02 | C Arterbridge | Electronically file Amended Certificate of Service with bankruptcy court | 0.30 | 42.00 |
| 10/31/02 | P Brenman | Prepare Scheduling Order for DE adversary action | 0.90 | 346.50 |
| 10/31/02 | J Ranji | Telephone call with PBrenman and A. Prussin regarding scheduling order | 0.20 | 52.00 |
| 10/31/02 | J Ranji | review and revise proposed scheduling order | 1.10 | 286.00 |
| 10/31/02 | J Ranji | prepare cover letter for judge re: scheduling order | 0.10 | 26.00 |
| 10/31/02 | T Schiltz | Call from PBrenman re: withdrawal of motion to lift stay. | 0.10 | 30.00 |
| 11/01/02 | J Ranji | Telephone call with A. Prussin regarding scheduling order | 0.40 | 104.00 |
| 11/01/02 | J Ranji | Call P. Brenman re: withdrawal of motion | 0.10 | 26.00 |
| 11/01/02 | J Ranji | file notice of withdrawal | 0.20 | 52.00 |
| 11/01/02 | J Ranji | contact judge's chambers re: withdrawal of motion | 0.20 | 52.00 |
| 11/01/02 | C Arterbridge | Conference with J Barber draft Motion to Withdraw e file with bankruptcy court and serve | 0.80 | 112.00 |
| 11/05/02 | T Schiltz | Call to HAP re: leter to Judge Thynge | 0.20 | 60.00 |
| 11/05/02 | T Schiltz | Call to P Brenman re: sale of BF Rich stock | 0.20 | 60.00 |
| 11/05/02 | T Schiltz | Call to H. Heiman re: discovery issues | 0.20 | 60.00 |

| | | | | |
|---|---|---|---|---|
| 11/11/02 | J Ranji | Meet with TSchiltz regarding issue for teleconference with Judge Thynge | 0.30 | 78.00 |
| 11/11/02 | J Ranji | review file to determine if motion to amend complaint was filed | 0.70 | 182.00 |
| 11/11/02 | J Ranji | review file and chronology to prepare to host teleconference with court | 0.40 | 104.00 |
| 11/12/02 | J Ranji | Telephone call with PBrenman regarding motion to amend; review chronology; hearing by teleconference | 1.10 | 286.00 |
| 11/18/02 | T Schiltz | Meeting with J. Barber re: case status and issues that need attention | 0.20 | 60.00 |
| 11/18/02 | J Ranji | Review scheduling order, calendar relevant dates and rules regarding proposed pretrial order | 0.30 | 78.00 |
| 11/19/02 | J Ranji | Receive e-mail from A. Prussin regarding initial disclosures and review same | 0.10 | 26.00 |
| 11/20/02 | J Ranji | Review and edit initial disclosures, draft notice, have served and filed | 0.70 | 182.00 |
| 11/26/02 | P Brenman | Analyze next steps in light of Court Orders | 0.20 | 77.00 |
| 11/26/02 | J Ranji | Review message from PBrenman regarding motion to amend complaint and obtain same from court | 0.30 | 78.00 |
| 11/26/02 | C Arterbridge | Locate amended complaint and copy same to J Barber | 0.70 | 98.00 |
| 12/19/02 | J Ranji | Review correspondence from A. Prussin regarding amended complaint | 0.10 | 26.00 |
| 12/19/02 | J Ranji | check status of motion to file amended complaint | 0.20 | 52.00 |
| 12/19/02 | J Ranji | review correspondence with A. Prussin re: discovery | 0.10 | 26.00 |
| 12/20/02 | J Ranji | Call A. Prussin re discovery | 0.10 | 26.00 |
| 12/20/02 | J Ranji | receive and review discovery responses | 0.20 | 52.00 |
| 12/20/02 | J Ranji | email to A. Prussin regarding discovery responses | 0.10 | 26.00 |
| 01/02/03 | J Ranji | Contact TSchiltz, P Brenman and A Prussin regarding interim status report | 0.10 | 26.00 |
| 01/02/03 | J Ranji | review proposed status letter | 0.30 | 78.00 |
| 01/02/03 | J Ranji | correspondence with T Schiltz and A Prussin re: status letter | 0.10 | 26.00 |
| 01/03/03 | J Ranji | Forward status letter to opposing counsel and contact for comments | 0.20 | 52.00 |
| 01/03/03 | J Ranji | correspond with opposing counsel re: contents of sttus report | 0.60 | 156.00 |
| 01/03/03 | J Ranji | revise status report to court | 0.40 | 104.00 |
| 01/03/03 | J Ranji | check local rules re: filing of discovery response | 0.20 | 52.00 |
| 01/13/03 | J Ranji | Receive information regarding status conference and set up same | 0.20 | 52.00 |
| 01/13/03 | J Ranji | review letter from PBrenman regarding amended complaint | 0.40 | 104.00 |
| 01/13/03 | J Ranji | correspond with A Prussin re: status conference | 0.20 | 52.00 |
| 01/14/03 | J Ranji | Receive and distribute information regarding court status conference | 0.10 | 26.00 |
| 01/14/03 | J Ranji | receive and review draft motion in oppositoin to motion to withdraw | 1.60 | 416.00 |
| 01/14/03 | J Ranji | contact A. Prussin with questions re: memo in opposition to motion to withdraw | 0.20 | 52.00 |
| 01/15/03 | J Ranji | Telephone call with A. Prussin regarding changes to draft memo in opposition to motion to withdraw and regarding amended complaint | 0.30 | 78.00 |

| 01/15/03 | J Ranji | edit memo in oppostion to motoin to withdraw | 1.80 | 468.00 |
| 01/15/03 | J Ranji | locate transcript from 6/02 hearing and discuss with T Schiltz | 0.20 | 52.00 |
| 01/15/03 | J Ranji | file and serve memo in opposition to motion to withdraw | 0.10 | 26.00 |
| 01/15/03 | J Ranji | edit affidavit in support of opposition papers | 0.20 | 52.00 |
| 01/17/03 | J Ranji | Correspond with PBrenman regarding teleconference | 0.10 | 26.00 |
| 01/17/03 | J Ranji | fax amended complaint to A Prussin | 0.10 | 26.00 |
| 01/17/03 | J Ranji | Particpate in scheduling conf. with court | 1.10 | 286.00 |
| 01/23/03 | J Ranji | Receive and review new scheduling order and calendar dates | 0.20 | 52.00 |
| 01/24/03 | P Brenman | Attend Kelly deposition | 6.50 | 2,502.50 |
| 01/24/03 | P Brenman | Review open issues in preparation for Kelly deposition | 1.10 | 423.50 |
| 01/30/03 | P Brenman | Review next steps in litigation | 0.40 | 154.00 |
| 01/31/03 | J Ranji | Correspond with A. Prussin regarding Heiman's failure to file response to objection or proof of service | 0.30 | 78.00 |
| 02/03/03 | J Ranji | Review e-mail and draft letter to judge from A. Prussin | 0.10 | 29.00 |
| 02/04/03 | J Ranji | Correspond with A. Prussin regarding filing letter with court | 0.20 | 58.00 |
| 02/04/03 | C Arterbridge | Conference with J Barber, pull down docket from Pacer, telephone call to Parcels to order documents | 0.40 | 72.00 |
| 02/05/03 | J Ranji | Review District Court case docket re: filings by opposing counsel | 0.20 | 58.00 |
| 02/05/03 | J Ranji | obtain and review filings regarding motion to withdraw | 0.20 | 58.00 |
| 02/05/03 | J Ranji | correspond with A. Prussin regarding pleadings | 0.20 | 58.00 |
| 02/05/03 | C Arterbridge | Conference with J Barber, re: documents from District Court, telephone calls to Parcels | 0.20 | 36.00 |
| 02/10/03 | P Brenman | Review latest developments and potential for resolution | 1.60 | 648.00 |
| 04/14/03 | J Ranji | Receive/review court's letter regarding H. Heiman's service | 0.20 | 58.00 |
| 04/18/03 | T Schiltz | Review draft letter to J. Jordan and provide comments on same. | 0.20 | 64.00 |
| 04/30/03 | T Schiltz | Email to C. Keller re: letter to J. Jordan | 0.10 | 32.00 |
| 04/30/03 | T Schiltz | email to P. Brenman, A. Prussin and J. Barber re: request for complaint | 0.10 | 32.00 |
| 04/30/03 | T Schiltz | review email from Prussin re: amended complaint | 0.20 | 64.00 |
| 04/30/03 | T Schiltz | call to K. Gatusso re: amended complaint | 0.20 | 64.00 |
| 04/30/03 | J Ranji | Correspond with co-counsel, TSchiltz, PBrenman regarding status of motion to amend | 0.40 | 116.00 |
| 04/30/03 | J Ranji | review notes on motoin to amend complaint | 0.40 | 116.00 |
| 04/30/03 | C Arterbridge | Conference with J Barber, compare black-lined amended complaint with new version | 0.80 | 144.00 |
| 05/08/03 | C Arterbridge | Conference with M MaloneyHuss check District Court docket for bankruptcy documents | 0.20 | 36.00 |
| 05/09/03 | T Schiltz | Review and revise brief in support of default judgment and motion for partial summary judgment | 3.40 | 1,088.00 |
| 05/09/03 | T Schiltz | call to HA Prussin re: draft brief and edits thereto | 0.80 | 256.00 |
| 05/12/03 | T Schiltz | Revise draft brief on default judgment | 2.70 | 864.00 |
| 05/12/03 | T Schiltz | Call to HA Prussin re: revisions to draft | 0.50 | 160.00 |
| 05/20/03 | T Schiltz | Review pleadings and determine status of case | 0.50 | 160.00 |
| 05/20/03 | T Schiltz | call to MN Goldberger re: status of case | 0.30 | 96.00 |
| 05/22/03 | T Schiltz | Review and revise brief in support of default judgment and Prussin affidavit | 6.00 | 1,920.00 |

| 05/23/03 | T Schiltz | Revise brief in support of default judgment and Prussin affidavit | 8.00 | 2,560.00 |
|---|---|---|---|---|
| 06/06/03 | T Schiltz | Review limited objection of Rivco and Jenkins to motion for default | 0.20 | 64.00 |
| 06/06/03 | T Schiltz | legal research for case supporting proposition that corporation has no interest in who its stockholders are | 0.30 | 96.00 |
| 06/11/03 | T Schiltz | Call to Rick Cross re: time for filing reply papers, emails and call to HA Prussin re: time for filing reply papers. | 0.60 | 192.00 |
| 06/11/03 | M Varzally | Research for TCSchiltz re: under Delaware corporations law, to what extent may a corporation restrict who owns its shares | 3.30 | 264.00 |
| 06/30/03 | T Schiltz | Review brief filed by Richard Gray in opposition to motion for default judgment | 1.20 | 384.00 |
| 07/02/03 | T Schiltz | Review draft reply brief on motion for default and provide comments to same | 1.80 | 576.00 |
| 07/07/03 | T Schiltz | Prepare reply brief in support of motion for default. | 2.30 | 736.00 |
| 07/08/03 | T Schiltz | Call to HAP re: pretrial order and filing of a pretrial brief. | 0.50 | 160.00 |
| 07/15/03 | T Schiltz | Call to H.A. Prussin re: pre-trial order. | 0.30 | 96.00 |
| 07/16/03 | T Schiltz | Review and revise draft pre-trial order | 4.00 | 1,280.00 |
| 07/22/03 | T Schiltz | Call from J. Grey re: Rich Realty and PTO | 0.30 | 96.00 |
| 07/22/03 | T Schiltz | review comments on PTO received from V. Proctor | 0.40 | 128.00 |
| 07/23/03 | T Schiltz | Calls to HAP and A. Richardson re: proposed edits to PTO and claims against Rich Realty | 1.80 | 576.00 |
| 07/23/03 | T Schiltz | call to Joe Grey re: case against Rich Realty | 0.20 | 64.00 |
| 07/23/03 | T Schiltz | revise PTO to conform to comments by V. Proctor; emails to V. Proctor re: proposed stipulation | 0.30 | 96.00 |
| 07/24/03 | T Schiltz | Review and revise draft pretrial order to incorporate comments from co-counsel and opposing counsel | 1.00 | 320.00 |
| 07/28/03 | T Schiltz | Revise draft PTO to incorporate changes from V. Proctor | 1.00 | 320.00 |
| 07/28/03 | T Schiltz | calls and emails to HAP re: proposed changes to PTO | 0.60 | 192.00 |
| 07/29/03 | T Schiltz | Revise draft pretrial order to incorporate comments from opposing counsel | 5.20 | 1,664.00 |
| 07/30/03 | T Schiltz | Review and revise draft pretrial order | 0.20 | 64.00 |
| 07/30/03 | T Schiltz | revise exhibit list for trial | 0.60 | 192.00 |
| 07/30/03 | T Schiltz | email to opposing counsel re: changes to PTO | 0.20 | 64.00 |
| 07/30/03 | T Schiltz | revise brief in opposition to motion of Gray to represent defaulting corporate defendants and prepare same for filing | 1.60 | 512.00 |
| 07/30/03 | T Schiltz | legal research re: anti-injunction act, ability of federal court to issue order for prisoner to appear at civil trial and right of prisoner to obtain a stay of civil proceedings because he is in prison | 1.50 | 480.00 |
| 07/31/03 | T Schiltz | Review and revise draft pretrial order | 1.00 | 320.00 |
| 07/31/03 | T Schiltz | calls and emails to opposing counsel re: draft PTO | 0.40 | 128.00 |
| 07/31/03 | T Schiltz | review and revise exhibit list | 0.50 | 160.00 |
| 07/31/03 | T Schiltz | revise, review and prepare for filing response to Gray motion to stay lawsuit until he is released from lawsuit | 1.70 | 544.00 |
| 08/01/03 | T Schiltz | Prepare pretrial order for filing with the court; draft letter to J. Jordan; emails to opposing counsel re: changes to pretrial order | 2.40 | 768.00 |

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 08/05/03 | T Schiltz | E-mails to HAP and G. Johnson regarding exhibits and proffers from witnesses | 0.10 | 32.00 |
| 08/12/03 | T Schiltz | Emails to and from HAP re: pre-trial conference and providing Gray notice of change of time of conference. | 0.20 | 64.00 |
| 08/15/03 | T Schiltz | Calls from HAP re: pre-trial conference | 0.60 | 192.00 |
| 08/15/03 | T Schiltz | prepare for pretrial conference | 0.60 | 192.00 |
| 08/15/03 | T Schiltz | attend pretrial conference | 1.10 | 352.00 |
| 08/15/03 | T Schiltz | revise order re: default | 0.40 | 128.00 |
| 08/15/03 | T Schiltz | email to Johnson re: supplementing information in PTO | 0.10 | 32.00 |
| 08/18/03 | T Schiltz | Revise order on default judgment | 0.40 | 128.00 |
| 08/18/03 | T Schiltz | draft ltr to J. Jordan re: default | 0.30 | 96.00 |
| 08/18/03 | T Schiltz | call to HAP re: form of default judgment | 0.10 | 32.00 |
| 08/18/03 | T Schiltz | email to Johnson re: supplementing information in PTO and form of order on default | 0.20 | 64.00 |
| 08/19/03 | T Schiltz | Prepare letter to J. Jordan re: order on default judgment. | 0.10 | 32.00 |
| 08/25/03 | T Schiltz | Review Order signed by J. Jordon on default | 0.10 | 32.00 |
| 08/25/03 | T Schiltz | emails to HAP re: leeter to Gray re: default order | 0.10 | 32.00 |
| 09/24/03 | T Schiltz | Review letter from R. Gray and draft response thereto. | 0.20 | 66.00 |
| 10/28/03 | T Schiltz | Call from J. Jordan's clerk re: filing of amended complaint | 0.20 | 66.00 |
| 10/28/03 | T Schiltz | call to HAP re: filing of amended complaint | 0.20 | 66.00 |
| 10/31/03 | T Schiltz | prepare amended complaint | 0.10 | 33.00 |
| 10/31/03 | T Schiltz | Calls to HAP re: status of case and need to file amended complaint | 0.10 | 33.00 |
| 10/31/03 | T Schiltz | prepare letter to opposing counsel re: amended complaint | 0.10 | 33.00 |
| 10/31/03 | C Arterbridge | Conference with T Schiltz, locate order 9/21/99 to be used with First Amended Complaint, check and read complaint for content | 1.50 | 270.00 |
| 11/03/03 | C Arterbridge | Continue to locate order, conference with T Schiltz, telephone call to Adam Prussin, telephone call from Parcels, prepare certificate of service, copy to District Court, telephone call to Parcels, prepare letter to service group and copy exhibit A with letter. | 1.80 | 324.00 |
| 11/05/03 | T Schiltz | Meet with HAP regarding trial preparation and call with court on November 7. | 2.30 | 759.00 |
| 11/06/03 | T Schiltz | Prepare for teleconference with J. Jordan. | 0.40 | 132.00 |
| 11/07/03 | T Schiltz | Particpate in tleconference with J. Jordan | 0.50 | 165.00 |
| 11/07/03 | T Schiltz | Revise pre-trial stipulation to take into account events which have occurred since August, 2003 | 0.50 | 165.00 |
| 11/07/03 | T Schiltz | draft letter to R. Gray | 0.20 | 66.00 |
| 11/11/03 | T Schiltz | Finalize letter to Richard Gray. | 0.10 | 33.00 |
| 11/19/03 | T Schiltz | Review correspondence from R. Gray | 0.30 | 99.00 |
| 11/19/03 | T Schiltz | draft letter to J. Jordan | 0.60 | 198.00 |
| 11/19/03 | T Schiltz | calls to HAP re: scheduling trial | 0.20 | 66.00 |
| 11/20/03 | T Schiltz | Review draft memo on trial issues and provide comments to same | 2.30 | 759.00 |
| 11/20/03 | T Schiltz | review pleadings to provide comments on trial memo | 1.00 | 330.00 |
| 12/22/03 | T Schiltz | Exchange emails with J. Kelly re: case status. | 0.20 | 66.00 |
| 12/29/03 | T Schiltz | Revise PTO and draft letter to defense counsel. | 0.30 | 99.00 |
| 01/07/04 | C Arterbridge | Conference with T Schiltz; make 4 binders of plaintiffs exhibits | 2.50 | 375.00 |
| 01/08/04 | C Arterbridge | Complete binders of plaintiffs exhibits | 2.20 | 352.00 |

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 01/08/04 | C Arterbridge | Conference with T. Schiltz re: trial preparation | 0.20 | 32.00 |
| 01/08/04 | C Arterbridge | locate dates of appointment of creditors' committee | 0.20 | 32.00 |
| 01/12/04 | T Schiltz | calls to chambers of Judge Littlefield re: motion to lift stay | 0.50 | 165.00 |
| 01/12/04 | T Schiltz | calls to chambers of J. Jordan re: efforts to lift automatic stay | 0.30 | 99.00 |
| 01/12/04 | T Schiltz | calls to R. Gray re: lifting the automatic stay | 0.50 | 165.00 |
| 01/12/04 | T Schiltz | draft motion to show cause why stay should not be lifted | 2.20 | 726.00 |
| 01/12/04 | T Schiltz | draft letters to J. Jordan and R. Gray re: status of Gray bankruptcy proceedings | 0.30 | 99.00 |
| 01/12/04 | T Schiltz | teleconference with J. Littlefield and R. Gray re: lift stay | 1.30 | 429.00 |
| 01/12/04 | T Schiltz | draft order re: relief from stay | 0.50 | 165.00 |
| 01/12/04 | T Schiltz | call to J. Jordan chambers re: results of hearing | 0.10 | 33.00 |
| 01/12/04 | C Arterbridge | Telephone call from T Schiltz re find bankruptcy information for R Gray and other Gray entities in NY | 0.30 | 45.00 |
| 01/12/04 | C Arterbridge | telephone call to Court Clerk in NY | 0.40 | 60.00 |
| 01/12/04 | C Arterbridge | telephone call from T Schiltz re: search for materials re: Gray personal bankruptcy which was filed in Northern District of NY | 0.20 | 30.00 |
| 01/12/04 | C Arterbridge | research all Gray entities all states; for filing bankruptcy by Lexis | 1.10 | 165.00 |
| 01/12/04 | C Arterbridge | telephone call to Lexis re: date of current bankruptcy data bank | 0.30 | 45.00 |
| 01/12/04 | C Arterbridge | locate amended complaint and prepare same for exhibit to motion to lift stay | 0.50 | 75.00 |
| 01/13/04 | M Temin | Telephone call with Schiltz re: bankruptcy issues | 0.20 | 100.00 |
| 01/13/04 | T Schiltz | Prepare for and attend trial before J. Jordan. | 7.80 | 2,574.00 |
| 01/13/04 | C Arterbridge | locate copy of proposed final pretrial order deliver copy to District Court | 1.00 | 150.00 |
| 01/14/04 | T Schiltz | Calls to HAP re: procedural hoops that must be addressed to settle claims and monetize stock; calls to MLTemin re: settlement structure. | 1.10 | 363.00 |
| 01/14/04 | T Schiltz | call to MLT re: settlement structure | 0.10 | 33.00 |
| 01/16/04 | M Temin | Consider alternatives to compromise | 0.20 | 100.00 |
| 01/19/04 | M Temin | Telephone call with Schiltz re: mechanics of settlement | 0.10 | 50.00 |
| 01/19/04 | C Arterbridge | prepare trial exhibit table noting documents entered w/o objection | 0.50 | 75.00 |
| 02/06/04 | T Schiltz | Review and revise draft proposed findings of fact and conclusions of law. | 6.40 | 2,176.00 |
| 02/09/04 | T Schiltz | legal research re: cases to include in the proposed conclusion of law section of the submission to the court | 2.00 | 680.00 |
| 02/09/04 | T Schiltz | revise proposed conclusions of law and fact | 1.50 | 510.00 |
| 02/09/04 | C Arterbridge | read proceedings transcript to locate cites | 1.20 | 192.00 |
| 02/09/04 | C Arterbridge | locate additional cites in transcript | 0.80 | 128.00 |
| 02/10/04 | T Schiltz | Revise and revise proposed findings of fact and conclusions of law | 7.40 | 2,516.00 |
| 02/10/04 | C Arterbridge | cite check brief to District Court | 4.90 | 784.00 |
| 02/12/04 | T Schiltz | review and revise statement of facts for submission to Judge Jordan | 4.00 | 1,360.00 |
| 02/12/04 | T Schiltz | revise supplemental findings of fact for inclusion in the joint statement | 1.00 | 340.00 |

| Date | Attorney | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 02/12/04 | T Schiltz | calls to R. Cross re: revisions to facts and law | 1.00 | 340.00 |
| 02/25/04 | T Schiltz | Review proposed findings of fact and conclusions of law submitted by R. Gray | 2.40 | 816.00 |
| 02/25/04 | T Schiltz | emails to client and HAP re: Gray submission | 0.80 | 272.00 |
| 02/27/04 | T Schiltz | Legal research re: statute of limitations and nature of a derivative suit. | 1.10 | 374.00 |
| 03/08/04 | T Schiltz | Review and revise reply to Gray post-trial findings of fact and conclusions of law | 1.40 | 476.00 |
| 03/09/04 | T Schiltz | Review and revise reply papers to submit to J. Jordan | 3.20 | 1,088.00 |
| 03/10/04 | T Schiltz | revise post-trial reply papers for submission to J. Jordan | 1.30 | 442.00 |
| 03/10/04 | C Arterbridge | Check NY Bankruptcy Court for Objection to conversion of Gray bankruptcy | 0.20 | 32.00 |
| 03/11/04 | T Schiltz | Revise and finalize reply papers to submit to J. Jordan. | 2.60 | 884.00 |
| 03/12/04 | T Schiltz | Finalize reply submission to J. Jordan | 0.50 | 170.00 |
| 03/12/04 | T Schiltz | legal research re: case law to bolster entire fairness argument | 1.50 | 510.00 |
| 03/12/04 | C Arterbridge | Retrieve from NY docket copies of dismissal of bankruptcy case | 0.20 | 32.00 |
| 03/18/04 | C Arterbridge | Locate date from NY bankruptcy docket when Trustee filed to dismiss Gray bankruptcy | 0.20 | 32.00 |
| 08/09/04 | T Schiltz | Calls to HAP re: opinion from J. Jordan | 1.30 | 442.00 |
| 08/09/04 | B Slipakoff | Research for TSchiltz re: time limits for bankruptcy appeals | 1.50 | 277.50 |
| 08/09/04 | T Schiltz | Review post-trial opinion issued by J. Jordan | 1.30 | 442.00 |
| 08/10/04 | C Arterbridge | Locate order entered re: judgment; telephone call to Parcels re: certified copies | 0.20 | 32.00 |
| 08/13/04 | B Slipakoff | Research for TSchiltz re: time to appeal under FRAP | 0.20 | 37.00 |
| 08/16/04 | H Booker | Correspondence with District Court and Judge Jordan's docketing clerk regarding Post-Trial Findings and Judgment | 0.40 | 54.00 |
| 08/16/04 | T Schiltz | Revise motion to assume control over assets, call with committee members re: motion to assume control over assets | 5.60 | 1,904.00 |
| 08/23/04 | M Temin | Telephone call with TSchiltz re: strategy to deal with sale of Rivco/Jenkins stock | 0.50 | 262.50 |
| 08/25/04 | M Temin | review NY court order in Richardson v. Gray and escrow agreement | 0.60 | 315.00 |
| 08/25/04 | M Temin | review Jenkins' opinion | 0.60 | 315.00 |
| 08/25/04 | M Temin | telephone call with Schiltz re: conversation with UST office | 0.10 | 52.50 |
| 09/02/04 | H Booker | Review of adversary docket materials | 0.20 | 27.00 |
| 09/08/04 | T Schiltz | legal research re: whether entity can perfect appeal by having its corporate officer file notice of appeal | 4.20 | 1,428.00 |
| 09/10/04 | T Schiltz | Review correspondence from District Court clerk and 3rd Cir. clerk | 0.20 | 68.00 |
| 09/10/04 | T Schiltz | review appellate rule of procedure | 1.60 | 544.00 |
| 09/10/04 | T Schiltz | call to D. Parker (potential Ch. 11 trustee) | 0.80 | 272.00 |
| 09/10/04 | T Schiltz | legal research re: whether a corporate officer can file a notice of appeal on behalf of corporation | 4.80 | 1,632.00 |
| 09/13/04 | T Schiltz | review 3d circuit procedures for appeal. | 0.90 | 306.00 |

| 09/24/04 | T Schiltz | Legal research re: whether appellate court has jurisdiction over appeal filed by corporate officer | 1.10 | 374.00 |
| | | **TOTAL** | **795.85** | **229,302.00** |

WIL:48255.3/CRE042-145994

# *Exhibit "G"*

PLAN AND DISCLOSURE STATEMENT

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| 05/04/99 | P Brennan | Review plan issues | 0.10 | 31.00 |
| 05/12/99 | P Brennan | Review proposed funding under Plan | 1.90 | 589.00 |
| 06/11/99 | P Brennan | Review Plan issues re: Chapter 11 | 0.10 | 31.00 |
| 07/20/99 | P Brennan | Review Plan issues | 0.10 | 31.00 |
| 07/27/99 | P Brennan | Review issues re: Plan | 0.90 | 279.00 |
| 08/10/99 | P Brennan | Prepare Plan language | 0.50 | 155.00 |
| 09/14/99 | P Brennan | Review A. Richardson, III's Motion re: Kostelanetz and Fink and status of plan options | 0.20 | 62.00 |
| 11/10/99 | P Brennan | Review re: Plan issues | 3.60 | 1,116.00 |
| 11/12/99 | P Brennan | Review re: Plan issues | 1.10 | 341.00 |
| 11/15/99 | P Brennan | Review re: Plan issues | 1.80 | 558.00 |
| 11/23/99 | P Brennan | Review re: Plan issues | 0.60 | 186.00 |
| 11/24/99 | P Brennan | Review re: Plan issues | 0.90 | 279.00 |
| 11/29/99 | P Brennan | Review re: Plan issues per H. Rhine | 0.20 | 62.00 |
| 11/30/99 | P Brennan | Telephone call with S. Victor re: Plan | 0.20 | 62.00 |
| 11/30/99 | P Brennan | Review re: Plan issues - timing | 0.60 | 186.00 |
| 11/30/99 | P Brennan | Analyze proposal re: Plan | 0.80 | 248.00 |
| 12/07/99 | P Brennan | Analyze Plan issues | 4.80 | 1,488.00 |
| 12/07/99 | P Brennan | Review re: Plan strategy, issues and timing | 0.80 | 248.00 |
| 12/10/99 | P Brennan | Review plan issues | 0.25 | 77.50 |
| 12/13/99 | P Brennan | Telephone call with A. Prussin re: Meeting/Plan; prepare for Plan | 0.60 | 186.00 |
| 12/15/99 | P Brennan | Conference with Plan proponents; review options | 2.80 | 868.00 |
| 12/16/99 | P Brennan | Analyze Plan issues | 0.20 | 62.00 |
| 12/16/99 | P Brennan | Review re: Litigation/Plan issues | 1.40 | 434.00 |
| 12/16/99 | P Brennan | Analyze Plan | 0.40 | 124.00 |
| 12/20/99 | P Brennan | Review and analyze Plan issues and options | 1.40 | 434.00 |
| 12/22/99 | P Brennan | Letter to J. Scott Victor re: Plan; review same | 1.70 | 527.00 |
| 12/23/99 | P Brennan | Analyze Plan issues | 1.40 | 434.00 |
| 12/27/99 | P Brennan | Prepare Plan | 0.50 | 155.00 |
| 12/27/99 | P Brennan | Prepare issues re: plan | 0.30 | 93.00 |
| 12/28/99 | P Brennan | Prepare Plan | 0.50 | 155.00 |
| 12/28/99 | P Brennan | Review re: Plan proposal | 0.20 | 62.00 |
| 12/28/99 | P Brennan | Letter to S. Victor re: plan | 0.10 | 31.00 |
| 12/29/99 | P Brennan | Review re: Plan issues and proposals | 1.10 | 341.00 |
| 01/03/00 | P Brennan | Telephone call with A. Prussin re: Plan | 0.70 | 220.50 |
| 01/03/00 | P Brennan | Prepare Plan | 0.20 | 63.00 |
| 01/12/00 | P Brennan | Review re: Plan | 0.80 | 252.00 |
| 01/25/00 | P Brennan | Review re: Plan issues | 1.40 | 441.00 |
| 01/27/00 | P Brennan | Review re: Plan issues | 0.60 | 189.00 |
| 01/30/00 | P Brennan | Review re: Plan issues | 0.10 | 31.50 |
| 02/03/00 | P Brennan | Review re: Plan issues | 0.20 | 65.00 |
| 02/09/00 | P Brennan | Review re: Plan issues; conference call with Creditors' Committee | 1.20 | 390.00 |
| 02/14/00 | P Brennan | Review re: Plan issues | 0.20 | 65.00 |
| 02/15/00 | P Brennan | Review re: Next steps - Plan | 0.40 | 130.00 |
| 02/23/00 | P Brennan | Review re: Plan | 0.40 | 130.00 |
| 02/23/00 | P Brennan | Review re: Plan issues, options and strategy | 0.50 | 162.50 |

WIL:48255.3/CRE042-145994

| | | | | |
|---|---|---|---|---|
| 02/24/00 | P Brenman | Review re: Plan issues | 0.30 | 97.50 |
| 02/28/00 | P Brenman | Review re: Plan issues | 0.40 | 130.00 |
| 03/07/00 | P Brenman | Review re: Plan | 0.50 | 162.50 |
| 03/13/00 | P Brenman | Telephone call with A. Prussin re: Plan | 0.60 | 195.00 |
| 03/13/00 | P Brenman | Review re: Plan issues | 0.20 | 65.00 |
| 03/20/00 | P Brenman | Review re: Disclosure Statement issues | 0.30 | 97.50 |
| 04/05/00 | P Brenman | Review re: Creditors' Committee position on Plan | 1.60 | 520.00 |
| 04/07/00 | P Brenman | Telephone call with A. Prussin re: Plan and alternatives | 0.50 | 162.50 |
| 04/07/00 | P Brenman | Telephone call with A. Gordon re: Plan | 0.40 | 130.00 |
| 04/12/00 | P Brenman | Telephone call with A. Prussin; review re: Plan strategy and timing; prepare for telephone call | 1.40 | 455.00 |
| 04/13/00 | C Arterbridge | Copy, file with Bankruptcy Court Objection to Plan | 0.30 | 34.50 |
| 04/14/00 | P Brenman | Review re: Plan issues | 0.30 | 97.50 |
| 04/14/00 | P Brenman | Review re: Latest financing issues | 0.10 | 32.50 |
| 04/18/00 | P Brenman | Review re: Plan issues | 1.90 | 617.50 |
| 04/18/00 | P Brenman | Review re: Plan | 1.80 | 585.00 |
| 04/19/00 | P Brenman | Telephone call with counsel re: Financing | 0.10 | 32.50 |
| 04/21/00 | P Brenman | Letter to Creditors' Committee re: Plan | 0.10 | 32.50 |
| 05/12/00 | P Brenman | Telephone call with R. Gray re: ESP - CIT issues | 0.20 | 487.50 |
| 05/12/00 | P Brenman | telephone call with A. Prussin re: CIT response | 0.10 | 32.50 |
| 05/12/00 | P Brenman | review re: CIT (Polovy) advised 5/12/2000: no side letter, CIT couldn't sell conditions | 1.10 | 357.50 |
| 05/12/00 | P Brenman | D. Baldwin confers CIT had been definitive | 0.10 | 32.50 |
| 05/16/00 | P Brenman | Review re: Next steps re: Plan | 0.50 | 162.50 |
| 05/17/00 | P Brenman | Telephone call with R. Gray re: CIT issues | 0.30 | 97.50 |
| 05/22/00 | P Brenman | Review re: Refinancing issues | 1.10 | 357.50 |
| 05/23/00 | P Brenman | Review re: Refinancing for purposes of proposing plan | 0.50 | 162.50 |
| 05/30/00 | P Brenman | Telephone call with R. Gray re: refinancing | 0.50 | 162.50 |
| 09/13/00 | P Brenman | Review status of Plan | 0.50 | 162.50 |
| 09/25/00 | P Brenman | Review open issues re: Plan possibilities | 0.20 | 65.00 |
| 11/03/00 | P Brenman | Review Plan prospects in light of ESP bankruptcy | 0.40 | 130.00 |

|  | **TOTAL** | **55.05** | **17,732.00** |
|---|---|---|---|

*Exhibit "H"*

**RELIEF FROM STAY PROCEEDINGS**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|-----------|-------------|
| 05/03/99 | P Brennan | Prepare for argument on motion for relief from stay | 0.40 | 124.00 |
| 05/18/99 | P Brennan | Prepare Committee response to motion to lift stay | 0.20 | 62.00 |
| 05/20/99 | P Brennan | Prepare for hearing on motion to stay | 0.20 | 62.00 |
| 05/25/99 | P Brennan | Review Debtor's Response to Motion to Lift Stay; analyze same | 0.10 | 31.00 |
| 06/04/99 | P Brennan | Legal research re: Stay lifting | 0.20 | 62.00 |
| 06/07/99 | P Brennan | Prepare for hearings re: Protective Order and automatic stay | 1.10 | 341.00 |
| 06/18/99 | P Brennan | Prepare Response to A. Richardson's Motion for Relief from Stay | 0.40 | 124.00 |
| 06/24/99 | P Brennan | Prepare for 6/25/99 hearings in Delaware re: Stay relief | 0.60 | 186.00 |
| 06/25/99 | P Brennan | Review Motion to Lift Stay | 0.10 | 31.00 |
| 08/02/99 | P Brennan | Analyze Motion to Stay | 0.80 | 248.00 |
| 10/01/02 | T Schiltz | Review draft motion to lift stay so action against Gray can go forward in New York and provide comments to H.A. Prussin re: same. | 1.60 | 480.00 |
| 10/04/02 | T Schiltz | Review motion to lift stay and prepare same for filing with court. | 2.00 | 600.00 |
| 10/07/02 | T Schiltz | Review local rules re: filing a motion to lift stay; call to court re: scheduling motion for hearing. | 1.10 | 330.00 |
| 10/08/02 | T Schiltz | Prepare notice of motion to lift stay | 0.40 | 120.00 |
| | | **TOTAL** | **9.20** | **2,801.00** |

WIL:48255.3/CRE042-145994

00262

# *Exhibit "I"*

**TAX ISSUES**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|------|------|-------------|------------|-------------|
| 09/20/04 | T Schiltz | Review record to determine how IRS acquired tax lien against Rivco and Jenkins | 0.40 | 136.00 |
| 09/20/04 | T Schiltz | legal research re: whether Rivco and Jenkins can be held accountable for tax liability of Summit | 0.80 | 272.00 |
| 09/22/04 | T Schiltz | Legal research re: whether Rivco and Jenkins can be held accountable for tax liability of Summit; email to Chapter 11 trustee re: results of research . | 1.50 | 510.00 |
| | | **TOTAL** | **2.70** | **918.00** |

WIL:48255.3/CRE042-145994

00264

# Exhibit "J"

**CONVERSION ISSUES**

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| 06/18/99 | P Brenman | Call to debtor's counsel re: possible conversion | 0.60 | 186.00 |
| 11/08/99 | P Brenman | Review re: Chapter 7 issues | 2.50 | 775.00 |
| 11/09/99 | M Krasny | Conference with P. Brenman re: Conversion from Chapter 11 to Chapter 7 | 0.30 | 112.50 |
| 11/11/99 | K Buraks | Conference with PJBrenman re: conversion | 0.20 | 43.00 |
| 11/11/99 | K Buraks | Legal research - re:  conversion to Chapter 7 | 0.30 | 64.50 |
| 11/11/99 | P Brenman | Prepare opposition to conversion from Chapter 11 to Chapter 7 | 2.30 | 713.00 |
| 11/12/99 | K Buraks | Legal research - re:  conversion to Chapter 7 | 2.20 | 473.00 |
| 11/12/99 | T Schiltz | Telephone call from P. Brenman re: opposition to motion to convert | 0.10 | 22.50 |
| 11/12/99 | T Schiltz | review response to motion to convert | 0.20 | 45.00 |
| 11/12/99 | T Schiltz | prepare opposition to motion to convert for filing | 0.20 | 45.00 |
| 11/12/99 | P Brenman | Finalize opposition to conversion from Chapter 11 to Chapter 7 | 1.40 | 434.00 |
| 11/22/99 | P Brenman | Telephone call with A. Richardson, III re: Chapter 7 issues | 0.30 | 93.00 |
| 11/29/99 | P Brenman | Review re: Plan - conversion issues | 0.20 | 62.00 |
| 12/02/99 | M Seidl | Teleconference with TSchiltz re: research on recent Delaware decision on substantive consolidation; research re: same; teleconference with APrussin re: same | 1.10 | 236.50 |
| 12/06/99 | K Buraks | Conference with PJBrenman re: conversion | 0.20 | 43.00 |
| 12/07/99 | K Buraks | Legal research re:conversion | 3.20 | 688.00 |
| 12/08/99 | P Brenman | Prepare for 12/9/99 hearing re: Conversion, etc. (Hearing continued to 1/6/00) | 3.10 | 961.00 |
| 12/29/99 | P Brenman | Prepare argument in response to motion to convert | 5.40 | 1,674.00 |
| 01/02/00 | P Brenman | Prepare for 1/6/00 hearing re: Chapter 7 and default judgments | 0.80 | 252.00 |
| 01/03/00 | T Schiltz | revise brief in opposition to motion to convert | 0.20 | 46.00 |
| 01/05/00 | P Brenman | Prepare for hearing on motion to convert | 0.70 | 220.50 |
| 01/06/00 | K Buraks | Conference with PJBrenman re: conversion | 0.10 | 22.50 |
| 01/06/00 | T Schiltz | Prepare for hearing on motion to vacate default judgment and motion to convert | 3.50 | 805.00 |
| 01/06/00 | P Brenman | Attend hearing on motion to vacate default judgment and motion to convert | 3.70 | 1,165.50 |
| 01/18/00 | P Brenman | Legal research re: Conversion | 0.40 | 126.00 |
| 01/19/00 | P Brenman | Prepare for conversion issues | 1.60 | 504.00 |
| 01/21/00 | P Brenman | Review re: Chapter 7 issues | 0.20 | 63.00 |
| 08/07/00 | P Brenman | Review Chapter 7 status | 0.10 | 32.50 |
| 01/03/01 | P Brenman | prepare Objection to conversion | 0.60 | 204.00 |
| 01/04/01 | P Brenman | Telephone call with counsel re: objection to conversion | 0.40 | 136.00 |
| 01/05/01 | P Brenman | Prepare Objection to Motion to Convert to Chapter 7 | 1.80 | 612.00 |
| 01/08/01 | P Brenman | Finalize Objection to Motion to Convert | 1.50 | 510.00 |
| 01/09/01 | B Klayman | Review and sign opposition to motion to convert for T. Schiltz | 0.20 | 68.00 |
| 01/09/01 | P Brenman | Finalize Objection to Motion to Convert | 1.40 | 476.00 |

| Date | Attorney | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 01/09/01 | C Arterbridge | Telephone call from G Keenan re: filing Objection of Committee to Converting Chapter 7 to Chapter 11; copy, file with Bankruptcy Court and serve; telephone call to Parcels; forward clocked copies to P Brenman | 1.30 | 169.00 |
| 01/10/01 | P Brenman | Prepare for Court hearing re: Motion to Convert | 2.20 | 748.00 |
| 01/11/01 | B Klayman | Attend hearing on Debtor's motion to convert. | 0.60 | 204.00 |
| 01/11/01 | R Lopez | Legal research re: debtor's right to convert | 1.70 | 391.00 |
| 01/11/01 | P Brenman | Attend Court hearing on motion to convert | 2.10 | 714.00 |
| 01/11/01 | P Brenman | Prepare for Court hearing on motion to convert | 3.70 | 1,258.00 |
| 06/19/01 | R Lopez | Conference with P Brenman re: Hearing before Judge Acker on the show cause issues | 1.10 | 253.00 |
| 06/25/01 | R Lopez | Conference with PBrenman re: hearing on Judge's order regarding conversion or dismissal of case | 1.00 | 230.00 |
| | | **TOTAL** | **54.70** | **15,881.00** |

# Exhibit "K"

| TRAVEL DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| 05/05/99 | P Brenman | Travel to and from meeting in New York | 2.20 | 682.00 |
| 05/12/99 | P Brenman | Travel to meeting with Committee Chairman | 3.10 | 961.00 |
| 05/14/99 | P Brenman | Travel to and from Kelly deposition in New York | 2.80 | 868.00 |
| 05/27/99 | P Brenman | Travel to and from hearing in Delaware | 0.80 | 248.00 |
| 06/08/99 | P Brenman | Travel to and from hearings in Delaware | 0.80 | 248.00 |
| 06/25/99 | P Brenman | Travel to and from hearings in Delaware | 0.80 | 248.00 |
| 08/10/99 | P Brenman | Travel to and from hearing in Delaware | 0.80 | 248.00 |
| 08/27/99 | P Brenman | Travel to and from hearing in Delaware | 1.00 | 310.00 |
| 09/09/99 | P Brenman | Travel to and from meeting in New York | 3.90 | 1,209.00 |
| 09/21/99 | P Brenman | Travel to and from hearing in Delaware | 0.80 | 248.00 |
| 04/18/01 | P Brenman | Travel to and from Court hearing in Tennessee | 4.40 | 1,496.00 |
| 05/23/01 | P Brenman | Travel to and from Court hearing in Tennessee | 5.20 | 1,768.00 |
| 07/02/01 | P Brenman | Travel to and from Nashville for hearing | 4.80 | 1,728.00 |
| 10/09/01 | P Brenman | Travel to and from New York | 3.10 | 1,116.00 |
| 11/19/01 | P Brenman | Travel to and from New York | 3.20 | 1,312.00 |
| 03/04/02 | P Brenman | Travel to strategy session regarding potential resolution | 1.70 | 637.50 |
| 04/13/04 | T Schiltz | Travel to and from Nashville, TN to attend settlement hearing before J. Payne | 7.00 | 2,380.00 |

|  |  | **TOTAL** | **46.40** | **15,707.50** |
|---|---|---|---|---|
|  |  |  |  | -7,853.75 |
|  |  |  |  | 7,853.75 |

WIL:48255.3/CRE042-145994

00269

# *Exhibit "L"*

| COMMITTEE ACTIVITIES | | | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| **DATE** | **NAME** | **DESCRIPTION** | | |
| 05/04/99 | P Brennan | Prepare for Creditors' meeting | 0.30 | 93.00 |
| 05/10/99 | P Brennan | Prepare for Creditors' meeting | 0.20 | 62.00 |
| 05/10/99 | P Brennan | Telephone call with Committee Chairman re: update on outstanding motions to dismiss or stay bankruptcy case | 0.60 | 186.00 |
| 05/10/99 | P Brennan | Telephone call to committee members re: update on outstanding motions to dismiss or stay bankruptcy case | 0.20 | 62.00 |
| 05/11/99 | P Brennan | Telephone call to Committee Members | 0.30 | 93.00 |
| 05/18/99 | P Brennan | Telephone call to Committee Chairman | 0.20 | 62.00 |
| 05/24/99 | P Brennan | Conference with Committee Chairman re: committee's right to prosecute claims | 0.50 | 155.00 |
| 05/25/99 | P Brennan | Prepare for Committee meeting | 0.20 | 62.00 |
| 05/27/99 | P Brennan | Conference with A. Richardson | 0.30 | 93.00 |
| 05/27/99 | P Brennan | Conference with HA Prussin re: claims against Gray | 0.40 | 124.00 |
| 06/01/99 | P Brennan | Conference with Committee Chairman | 0.40 | 124.00 |
| 06/01/99 | P Brennan | Letter to Creditors' Committee re: 2004 Order | 0.20 | 62.00 |
| 06/01/99 | P Brennan | Letter to Committee Chairman | 0.10 | 31.00 |
| 06/02/99 | P Brennan | Prepare for Committee meeting | 0.20 | 62.00 |
| 06/02/99 | P Brennan | Prepare for and participate in conference call with Creditors' Committee | 0.60 | 186.00 |
| 06/03/99 | P Brennan | Conference with Committee Chairman re: pending actions | 0.30 | 93.00 |
| 06/04/99 | P Brennan | Letter to Committee re: class action | 0.20 | 62.00 |
| 06/04/99 | P Brennan | Conference with Committee Chairman re: derivative action | 0.30 | 93.00 |
| 06/07/99 | P Brennan | Conference with counsel and client re: 2004 examination issues | 0.90 | 279.00 |
| 06/09/99 | P Brennan | Conference with Committee Chairman re: plan funding options and ESP | 0.70 | 217.00 |
| 06/10/99 | P Brennan | Letter to Committee Chairman re: outstanding issues and next steps | 0.10 | 31.00 |
| 06/14/99 | P Brennan | Conferences with counsel and Committee Chairman | 0.50 | 155.00 |
| 06/18/99 | P Brennan | Conference with Chairman of Committee | 0.10 | 31.00 |
| 06/21/99 | P Brennan | Telephone call to counsel for Committee re: Gray 2004 Examination; prepare for same | 0.40 | 124.00 |
| 06/23/99 | P Brennan | Legal research re: Committee standing to sue and appropriate remedy | 0.20 | 62.00 |
| 06/23/99 | P Brennan | Conference with Committee Chairman re: Next steps in investigation | 0.20 | 62.00 |
| 06/25/99 | P Brennan | Letter to Creditors' Committee re:  Gray 2004 Examination | 0.20 | 62.00 |
| 07/13/99 | P Brennan | Analyze proposed changes to Stipulation re: Standing to Prosecute; letter to Creditors' Committee | 0.30 | 93.00 |
| 07/13/99 | P Brennan | Conference with A. Richardson, III re: Gray deposition preparation; prepare deposition questions | 2.80 | 868.00 |
| 07/20/99 | P Brennan | Conference with A. Richardson, III re: Litigation issues | 0.50 | 155.00 |
| 07/28/99 | P Brennan | Conference with A. Richardson, III re: Status/next steps | 0.30 | 93.00 |
| 07/28/99 | P Brennan | Conference with A. Prussin; prepare for 8/10/99 hearing | 0.30 | 93.00 |
| 08/02/99 | P Brennan | Conference with Prussin re: Committee Motions for 8/10/99 hearing | 0.50 | 155.00 |
| 08/04/99 | P Brennan | Letter to new Creditors' Committee member | 0.20 | 62.00 |

WIL:48255.3/CRE042-145994

00271

| Date | Name | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 08/05/99 | P Brenman | Letter to Committee re: Motions | 0.10 | 31.00 |
| 08/18/99 | P Brenman | Letter to Creditors' Committee | 0.10 | 31.00 |
| 08/20/99 | P Brenman | Letter to A. Richardson, III | 0.25 | 77.50 |
| 08/20/99 | P Brenman | Review Creditors' Committee actions | 0.40 | 124.00 |
| 08/20/99 | P Brenman | Review issues re: Creditors' Committee | 0.25 | 77.50 |
| 08/20/99 | P Brenman | Letter to Creditors' Committee members | 0.10 | 31.00 |
| 08/26/99 | P Brenman | Conference with A. Richardson, III and review documents | 0.50 | 155.00 |
| 08/27/99 | P Brenman | Letter to A. Richardson, III | 0.50 | 155.00 |
| 08/30/99 | P Brenman | Conference with U.S. Trustee regarding A. Richardson | 0.30 | 93.00 |
| 09/03/99 | P Brenman | Conference with A. Richardson, III re: Documents produced by Debtor | 0.20 | 62.00 |
| 09/07/99 | P Brenman | Review A. Richardson, III information | 0.20 | 62.00 |
| 09/09/99 | P Brenman | Conference with A. Richardson, III and A. Prussin re: Open issues in case; prepare for same meeting; analyze documents | 3.40 | 1,054.00 |
| 09/09/99 | P Brenman | Telephone call to A. Richardson, III re: Stay Motion | 0.20 | 62.00 |
| 09/13/99 | P Brenman | Conference call with A. Richardson, III re: Research and strategy | 0.20 | 62.00 |
| 09/15/99 | P Brenman | Letters to Creditors' Committee re: Tax and Plan issues | 0.20 | 62.00 |
| 09/23/99 | P Brenman | Letter to Creditors' Committee re: Meeting and developments | 0.20 | 62.00 |
| 09/24/99 | P Brenman | Telephone call to A. Richardson, III re: Developments | 0.10 | 31.00 |
| 09/27/99 | P Brenman | Telephone call to Prussin re: Status and next steps - Gray | 0.10 | 31.00 |
| 09/27/99 | P Brenman | Letter to Creditors' Committee re: Developments | 0.10 | 31.00 |
| 09/28/99 | P Brenman | Prepare for Creditors' Committee meeting | 0.20 | 62.00 |
| 09/30/99 | P Brenman | Conference with A. Richardson, III re: Complaint | 0.40 | 124.00 |
| 10/01/99 | P Brenman | Prepare memorandum to committee re: complaint against Gray | 1.60 | 496.00 |
| 10/06/99 | P Brenman | Prepare for 10/7/99 Creditors' Committee meeting | 0.90 | 279.00 |
| 10/06/99 | P Brenman | Letter to Creditors' Committee in preparation of 10/7/99 meeting | 0.30 | 93.00 |
| 10/07/99 | P Brenman | Attend creditors' Committee meeting | 2.50 | 775.00 |
| 10/08/99 | P Brenman | Letter to Creditors' Committee | 0.20 | 62.00 |
| 10/15/99 | P Brenman | Conference with A. Richardson, III re: Litigation stay; prepare same | 0.60 | 186.00 |
| 10/20/99 | P Brenman | Conference with A. Richardson, III re: R. Gray deposition | 0.20 | 62.00 |
| 10/26/99 | P Brenman | Prepare for R. Gray deposition; conference with A. Richardson, III | 0.50 | 155.00 |
| 11/05/99 | P Brenman | Correspondence to Creditors' Committee | 0.40 | 124.00 |
| 12/14/99 | P Brenman | Letter to Creditors' Committee re status of adversary and conversion | 0.25 | 77.50 |
| 12/20/99 | P Brenman | Conference call with Committee | 1.10 | 341.00 |
| 12/22/99 | P Brenman | Letter to Creditors' Committee re: Default judgment | 0.30 | 93.00 |
| 01/18/00 | P Brenman | Telephone call with A. Richardson | 0.20 | 63.00 |
| 01/31/00 | P Brenman | Telephone call with A. Richardson | 0.20 | 63.00 |
| 02/10/00 | T Schiltz | Telephone call to A. Prussin re: conference call with committee | 0.20 | 48.00 |
| 02/16/00 | P Brenman | Letter to Creditors' Committee; review re: Next steps | 0.50 | 162.50 |
| 02/25/00 | P Brenman | Letter to Creditors' Committee re: Plan | 0.20 | 65.00 |
| 02/25/00 | P Brenman | Telephone call with A. Richardson, III; review re: Open issues | 1.70 | 552.50 |

| | | | | |
|---|---|---|---|---|
| 03/09/00 | P Brenman | Telephone call with A. Richardson, III re: summary judgment motion | 0.10 | 32.50 |
| 03/15/00 | P Brenman | Telephone call with Prussin re: Status | 0.50 | 162.50 |
| 04/27/00 | P Brenman | Telephone call with Creditors' Committee member re: Status of Adversary Proceedings and Plan Discussions | 0.20 | 65.00 |
| 05/08/00 | P Brenman | Review re: Creditors Committee issues | 0.40 | 130.00 |
| 05/09/00 | P Brenman | Telephone call with A. Richardson, III re: Creditors Committee issues and 5/8/00 telephone calls | 0.50 | 162.50 |
| 05/15/00 | M Morris | Voice-mail from GKeenan re: Creditors' Committee conference call | 0.10 | 12.00 |
| 05/16/00 | P Brenman | Conference call with Creditors Committee members re: ESP | 1.20 | 390.00 |
| 06/06/00 | P Brenman | correspondence to Creditors Committee re: status of plan negotiations and adversary proceeding | 0.10 | 32.50 |
| 11/29/00 | P Brenman | Conference with Committee Members re: ESP bankruptcy | 0.80 | 260.00 |
| 12/06/00 | P Brenman | Telephone call with A. Richardson re: voting issues | 0.50 | 162.50 |
| 12/12/00 | P Brenman | Telephone call with J. Giglietti re: ESP bankruptcy | 0.10 | 32.50 |
| 02/06/01 | P Brenman | Telephone calls with counsel and A. Richardson re: case status and steps to take to move case forward | 0.50 | 170.00 |
| 06/21/01 | P Brenman | Conference call with Committee members re: Next steps and Court hearing | 0.90 | 306.00 |
| 06/26/01 | P Brenman | Attend Creditors' Committee meeting and Court hearing | 5.90 | 2,006.00 |
| 02/15/02 | R Lopez | Conference with APrussin and A Richards re: lis pendens and ESP settlement approval order | 0.20 | 48.00 |
| 08/18/03 | T Schiltz | email to A. Richardson re: results of pre-trial conference | 0.20 | 64.00 |
| 09/16/03 | T Schiltz | Call from A. Richardson re: ESP bankruptcy and claim asserted therein. | 0.50 | 165.00 |
| 08/10/04 | T Schiltz | Calls to A. Richardson re: next steps in case including right of committee to take control of assets | 2.50 | 850.00 |
| 08/24/04 | T Schiltz | Calls to members of creditors committee re: appointment of Chapter 11 Trustee. | 0.80 | 272.00 |
| 08/25/04 | M Temin | Conference call re: meeting of creditors committee re: UST opposition to creditors committee motion; next steps in case | 0.70 | 367.50 |
| 08/25/04 | T Schiltz | Call with creditors committee re: Chapter 11 Trustee | 0.60 | 204.00 |
| 09/09/04 | T Schiltz | Calls and emails to committee members re: results of hearing before J. Kornreich. | 0.90 | 306.00 |
| 09/16/04 | T Schiltz | Call from Chapter 11 trustee and emails to committee members re: appointment of Chapter 11 trustee | 0.20 | 68.00 |
| | | **TOTAL** | 51.95 | 16,693.00 |

WIL:48255.3/CRE042-145994

# *Exhibit "M"*

## PROCEEDINGS RELATED TO ESP BANKRUPTCY

| DATE | NAME | DESCRIPTION | WORK HOURS | WORK AMOUNT |
|---|---|---|---|---|
| 10/19/00 | P Brenman | Review status and strategy of litigation in light of ESP bankruptcy | 0.90 | 292.50 |
| 10/25/00 | P Brenman | Conf. call re: status and strategy of case and new development (ESP bankruptcy) | 1.60 | 520.00 |
| 11/08/00 | M Temin | Telephone conversation with TCSchiltz re: effect of automatic stay resulting from ESP bankruptcy | 0.20 | 77.00 |
| 11/16/00 | P Brenman | Analyze options post-ESP bankruptcy in preparation for conference call | 0.90 | 292.50 |
| 11/30/00 | P Brenman | Conference with A. Prussin re: ESP bankruptcy | 0.60 | 195.00 |
| 12/11/00 | P Brenman | Review new developments re: ESP bankruptcy | 0.80 | 260.00 |
| 12/12/00 | P Brenman | Telephone call with Prussin re: new developments | 0.40 | 130.00 |
| 03/01/01 | M Morris | Retrieve docket from Middle District of Tennessee on Energy Savings | 0.20 | 24.00 |
| 03/22/01 | P Brenman | Review ESP claim | 0.50 | 170.00 |
| 04/05/01 | R Lopez | Preparation of motion to dismiss complaint filed against committee in ESP bankruptcy proceeding; review of docket | 4.70 | 1,081.00 |
| 04/05/01 | M Temin | Conference with PJBrenman re: ESP Tennessee suit | 0.70 | 297.50 |
| 04/05/01 | R Lopez | Review of complaint by Energy Saving Products and motion for preliminary injunction barring defendant from continuing litigation; initial review of jurisdiction issue | 1.20 | 276.00 |
| 04/05/01 | P Brenman | Prepare response to ESP Motion for Preliminary Injunction | 1.10 | 374.00 |
| 04/06/01 | M Temin | Telephone conversation with PJBrenman re: Tennessee complaint | 0.30 | 127.50 |
| 04/06/01 | R Lopez | Legal research re: preliminary injunctions of adversary proceedings and personal jurisdiction | 2.30 | 529.00 |
| 04/06/01 | R Lopez | Conference with Brenman re: preliminary injunction and stay of delaware proceeding | 0.90 | 207.00 |
| 04/06/01 | R Lopez | Preparation of response to motion for preliminary injunction | 4.60 | 1,058.00 |
| 04/06/01 | P Brenman | Telephone calls and preparation for hearing re: stay of ESP suit | 1.80 | 612.00 |
| 04/07/01 | P Brenman | Prepare Response re: Tennessee action | 3.40 | 1,156.00 |
| 04/18/01 | P Brenman | Prepare for Court hearing in Tennessee re: Venue, stay of case and Delaware adversary | 2.70 | 918.00 |
| 04/18/01 | P Brenman | Attend court hearing in TN re: venue and staying case | 4.20 | 1,428.00 |
| 04/24/01 | C Arterbridge | Copy file with Bankruptcy Court Response of Committee re: Venue; forward clocked-in copy to B Klayman | 1.10 | 143.00 |
| 05/23/01 | P Brenman | Attend Court hearing in Tennessee re: Litigation; analyze next steps | 6.70 | 2,278.00 |
| 05/23/01 | P Brenman | Prepare for Court hearing in Tennessee | 3.20 | 1,088.00 |
| 05/24/01 | R Lopez | Conference with PBrenman re: effect of Tennessee judge order re: stay | 0.20 | 46.00 |
| 05/30/01 | R Lopez | Analysis of ruling on complaint by Tennessee court and Review of docket | 0.30 | 69.00 |
| 05/31/01 | R Lopez | Preparation of pleading seeking dismissal of ESP action | 1.70 | 391.00 |
| 05/31/01 | R Lopez | Conference with PBrenman re: committee dismissal of ESP action | 0.10 | 23.00 |

WIL:48255.3/CRE042-145994

00275

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 06/01/01 | R Lopez | Preparation of final draft of notice of dismissal | 0.90 | 207.00 |
| 06/07/01 | R Lopez | Review of docket in adversary and main case | 0.20 | 46.00 |
| 06/12/01 | R Lopez | Review of ESP docket re: objections to ESP disclosure statement | 0.10 | 23.00 |
| 06/15/01 | R Lopez | Conference with PBrenman re: ESP new york order | 0.40 | 92.00 |
| 06/19/01 | P Brenman | Prepare pleadings for claim against ESP | 0.50 | 170.00 |
| 06/27/01 | C Maddaloni | Meet with PJBrenman to receive new assignment re: violations of automatic stay; | 0.20 | 16.00 |
| 06/27/01 | C Maddaloni | legal research re: violation of automatic stay including review of research provided by PJBrenman, review applicable sections of the Bankruptcy Code, outline secondary law review articles, download relevant cases from CDRoms, make notations of all relevant legislative history | 2.40 | 192.00 |
| 06/28/01 | K Buraks | Legal research - re: violation of automatic stay | 0.30 | 73.50 |
| 06/28/01 | C Maddaloni | Review all secondary sources and cases concerning automatic stay violations; review summaries of all potentially relevant case in the Sixth Circuit; perform additional case law research on CD Roms; research issue in Collier's | 4.00 | 320.00 |
| 06/28/01 | C Maddaloni | Outlineresearch for presentation to P. Brenman | 1.10 | 88.00 |
| 06/29/01 | P Brenman | Prepare Pretrial Statement for ESP adversary | 2.10 | 714.00 |
| 06/29/01 | C Maddaloni | Meet with PJBrenman to discuss research and notes re: 362 automatic stay issue | 0.40 | 32.00 |
| 06/29/01 | C Maddaloni | draft rough outline on issue and cite to all applicable cases, secondary sources and pertinent provisions of the Bankruptcy Code; download all cases to attach to rough outline for PJBrenman; revise memo and leave it for PJBrenman | 3.80 | 304.00 |
| 07/02/01 | C Maddaloni | additional research re: Norton on Bankruptcy; conduct research on CD Rom and leave PJBrenman voice mail message briefly describing the information that I found | 2.00 | 160.00 |
| 07/02/01 | C Maddaloni | draft memo to ML Temin | 1.20 | 96.00 |
| 07/02/01 | P Brenman | Attend Court hearing in Nashville, Tennessee re: scheduling of action by ESP Creditors' Committee against Summit/committee | 6.60 | 2,376.00 |
| 07/23/01 | P Brenman | Analyze proposed resolution of open issues re: ESP litigation | 1.70 | 612.00 |
| 08/07/01 | P Brenman | Review next steps re: Tennessee Claim litigation | 0.50 | 180.00 |
| 08/08/01 | P Brenman | Review next steps in Tennessee claim litigation | 0.80 | 288.00 |
| 08/16/01 | P Brenman | Review open issues re: Tennessee litigation | 0.40 | 144.00 |
| 08/22/01 | P Brenman | Attend settlement conference re: Tennessee claim litigation | 3.50 | 1,260.00 |
| 08/23/01 | R Lopez | Conference with PBrenman re: discovery order in Tennessee | 0.20 | 46.00 |
| 08/23/01 | R Lopez | Preparation of stipulation for extended discovery in Tennessee | 0.30 | 69.00 |
| 08/24/01 | R Lopez | Preparation of Stipulation for discovery in Tennessee | 0.20 | 46.00 |
| 08/26/01 | P Brenman | Review settlement strategy re: ESP | 0.50 | 180.00 |
| 08/28/01 | P Brenman | Analyze settlement proposals re: Tennessee | 1.80 | 648.00 |

WIL:48255.3/CRE042-145994

00276

| 08/29/01 | R Lopez | Correspondence with  PBrenman re: settlement agreement in Tennessee | 0.20 | 46.00 |
|---|---|---|---|---|
| 08/29/01 | R Lopez | Review of draft settlement agreement re: ESP | 0.60 | 138.00 |
| 08/29/01 | R Lopez | Review of pledge agreement in Tennessee | 0.30 | 69.00 |
| 08/29/01 | P Brenman | Review settlement issues in Tennessee | 0.20 | 72.00 |
| 09/04/01 | P Brenman | Prepare for and attend Court hearing re: Contempt in ESP proceedings | 8.10 | 2,916.00 |
| 09/17/01 | R Lopez | Prepare for and particpate in telephone conference with PBrenman and parties to litigation re: ESP pretrial | 2.10 | 483.00 |
| 09/17/01 | P Brenman | Prepare for and particpate in conference call with Court and counsel re: ESP | 1.60 | 576.00 |
| 09/19/01 | R Lopez | Conference with PBrenman re: moving forward with adversary | 0.50 | 115.00 |
| 10/11/01 | R Lopez | Preparation of objection to ESP plan of reorganization | 1.80 | 414.00 |
| 10/12/01 | R Lopez | Preparation of final draft of objection to ESP plan | 0.80 | 184.00 |
| 10/23/01 | M Gold | Exchange messages with RCLopez re: service of subpoena, conferences with AGarcia re: same | 0.50 | 162.50 |
| 10/23/01 | R Lopez | Conference with PBrenman re: Gray subpoena | 0.20 | 46.00 |
| 10/23/01 | R Lopez | Preparation of subpoena re: gray | 1.30 | 299.00 |
| 10/24/01 | M Gold | Conferences with AGarcia re: service of subpoena, exchange messages with RCLopez re: same | 0.30 | 97.50 |
| 10/24/01 | A Garcia | Review subpoena, arranged for service of same upon Richard Gray. | 0.60 | 90.00 |
| 10/25/01 | R Lopez | Correspondence to counsel re: Gray subpoena | 0.10 | 23.00 |
| 10/25/01 | A Garcia | Drafted affidavit of service re Richard Gray's subpoena. | 0.50 | 75.00 |
| 11/02/01 | R Lopez | Conference with PBrenman re: confirmation hearing and status | 0.20 | 46.00 |
| 11/03/01 | P Brenman | Review open issues; review pleadings and prepare same | 2.80 | 1,008.00 |
| 11/13/01 | R Lopez | Discovery motion re: Gray (ESP case) | 0.30 | 69.00 |
| 11/16/01 | R Lopez | Conference with PBrenman re: discovery motion to extend | 0.10 | 23.00 |
| 11/06/02 | M Morris | Retrieve bankruptcy and adversary proceedings dockets in the Energy Saving Products case | 0.20 | 26.00 |
| 11/06/02 | R Ey | MD Tenn Bankr docket 00 09273 for Gail Keenan | 0.20 | 18.00 |
| 09/12/03 | T Schiltz | Call to ESP debtor's counsel in TN re outstanding issue and motion in TN | 0.20 | 66.00 |
| 09/12/03 | T Schiltz | call to MLT re: claim pending in ESP bankrupty case | 0.20 | 66.00 |
| 09/15/03 | T Schiltz | Call to T. Forrestor re: Summit claims in the ESP bankruptcy | 0.30 | 99.00 |
| 09/15/03 | T Schiltz | collect materials re: default judgment for ESP counsel | 0.40 | 132.00 |
| 09/18/03 | T Schiltz | Call to MLT re: subordination and whether we have a claim against ESP | 0.30 | 99.00 |
| 09/18/03 | T Schiltz | draft email to Richardson re: ESP claim subordination | 0.50 | 165.00 |
| 09/22/03 | T Schiltz | Legal research re: Section 510(b) subordination and emails/calls to A. Richardson and A. Curley re: same | 2.60 | 858.00 |
| 09/23/03 | T Schiltz | Email exchange with HAP and AR re: claim in TN. | 0.40 | 132.00 |
| 09/24/03 | A Curley | Researched applicability of 510(b) of the bankruptcy code for TSchiltz | 1.10 | 121.00 |
| 09/25/03 | A Curley | Researched applicability of 510(b) of bankruptcy code for TSchiltz | 3.80 | 418.00 |
| 12/02/03 | T Schiltz | Review pleadings in TN and calls to MLT re: motion to subordinate | 1.20 | 396.00 |
| 12/02/03 | T Schiltz | draft email to A Richardson re: motion to subordinate | 0.30 | 99.00 |

| 01/05/04 | T Schiltz | Calls from TN counsel re: ESP bankruptcy and claim pending in that court | 0.50 | 165.00 |
|---|---|---|---|---|
| 01/05/04 | T Schiltz | review record to uncover facts supporting TN claim for dividends | 3.00 | 990.00 |
| 01/06/04 | T Schiltz | Review record to uncover facts supporting TN claim for dividends; calls to ESP committee counsel re: plan confirmation and hearing on objection to claim; draft outline of facts needed for TN claim. | 8.00 | 2,640.00 |
| 01/07/04 | T Schiltz | calls to ESP counsel re: plan confirmation and hearing on obj. to claim | 0.30 | 99.00 |
| 01/07/04 | T Schiltz | Review record to uncover facts supporting TN claim for dividends | 2.00 | 660.00 |
| 01/07/04 | T Schiltz | draft outline of facts needed for TN claim | 2.70 | 891.00 |
| 01/08/04 | B Klayman | Review T. Schiltz outline re: claims against ESP | 0.30 | 114.00 |
| 01/08/04 | T Schiltz | Draft outline of facts needed for TN claim and find documents supporting factual allegations | 5.70 | 1,881.00 |
| 01/09/04 | T Schiltz | review correspondence from counsel for the ESP committee re: scheduling of A. Richardson deposition | 0.20 | 66.00 |
| 01/09/04 | T Schiltz | call from ESP committee counsel re: scheduling of A. Richardson deposition | 0.20 | 66.00 |
| 01/14/04 | M Temin | Telephone call with Schiltz re: ESP claim | 0.60 | 300.00 |
| 01/19/04 | T Schiltz | Calls to TN counsel re: disclosure stament | 0.60 | 198.00 |
| 01/19/04 | T Schiltz | Review documents for materials responsive to document requests | 3.60 | 1,188.00 |
| 01/19/04 | T Schiltz | email to A richardson re: scheduling deposition | 0.10 | 33.00 |
| 01/20/04 | T Schiltz | Calls to J. Kelly re: deposition | 0.50 | 165.00 |
| 01/20/04 | T Schiltz | calls and emails to L. Ahern re: Kelly deposition | 0.20 | 66.00 |
| 01/20/04 | T Schiltz | emails and calls to HAP re: settlement of claim against ESP | 2.10 | 693.00 |
| 01/20/04 | T Schiltz | calls to MLT re: structuring the Summit settlement | 0.30 | 99.00 |
| 01/22/04 | T Schiltz | Review documents for use in connection with TN claim. | 2.20 | 726.00 |
| 01/23/04 | T Schiltz | Review trial transcript and prepare outline of Kelly deposition. | 1.30 | 429.00 |
| 01/26/04 | T Schiltz | Review document requests and collect documents responsive to the request for submission to TN counsel; review trial transcript. | 4.00 | 1,320.00 |
| 01/27/04 | T Schiltz | Review document requests and collect documents responsive to the request for submission to TN counsel | 2.30 | 759.00 |
| 01/27/04 | T Schiltz | review DE trial transcript for testimony helpful to TN proceedings | 2.30 | 759.00 |
| 01/29/04 | C Arterbridge | Conference with T Schiltz; copy and organize documents | 0.30 | 45.00 |
| 01/29/04 | C Arterbridge | Conference with T Schiltz, prepare bates labels, label documents | 0.60 | 90.00 |
| 01/29/04 | T Schiltz | Review exhibits for use in connection with hearing on TN claim. | 4.50 | 1,485.00 |
| 02/02/04 | T Schiltz | Prepare notice of deposition directed to James Kelly | 0.30 | 99.00 |
| 02/02/04 | T Schiltz | call J. Kelly re: scheduling deposition | 0.70 | 231.00 |
| 02/02/04 | T Schiltz | call to A. Richardson re: TN claims | 0.50 | 165.00 |
| 02/02/04 | T Schiltz | call to TN opposing counsel re: Richardson deposition and disclosure statement | 0.70 | 231.00 |
| 02/02/04 | T Schiltz | review disclosure statement | 1.00 | 330.00 |

| Date | Attorney | Description | Hours | Amount |
|---|---|---|---|---|
| 02/03/04 | M Temin | Research classification cases to determine if claim against ESP may be subordinated | 0.30 | 157.50 |
| 02/03/04 | C Arterbridge | E-mail from T Schiltz re: cases needed from Westlaw; locate and copy to T Schiltz | 0.40 | 64.00 |
| 02/03/04 | T Schiltz | Legal research re: manipulation of vote and proper classification of Summit claim in TN proceedings | 1.20 | 408.00 |
| 02/03/04 | T Schiltz | Draft objection to ESP disclosure statement | 2.00 | 680.00 |
| 02/04/04 | T Schiltz | Draft objection to disclosure statement in TN | 1.60 | 544.00 |
| 02/04/04 | T Schiltz | legal research re: grounds to obj. to disclosure stmt | 0.50 | 170.00 |
| 02/05/04 | M Temin | Review objection to disclosure statement | 0.20 | 105.00 |
| 02/05/04 | M Temin | telephone call with Schiltz re: objections to disclosure statement | 0.40 | 210.00 |
| 02/05/04 | M Temin | research standard for objections to disclosure statement | 0.20 | 105.00 |
| 02/05/04 | T Schiltz | legal research re: grounds to object to disclosure statement in TN; review cases found through legal research | 2.80 | 952.00 |
| 02/05/04 | T Schiltz | draft obj. to plan disclosure stmt | 5.40 | 1,836.00 |
| 02/11/04 | T Schiltz | Review documents for use as exhibits at deposition of J. Kelly | 1.20 | 408.00 |
| 02/11/04 | T Schiltz | prepare outline of J. Kelly deposition | 2.00 | 680.00 |
| 02/11/04 | T Schiltz | call from A. Richardson re: whether to press the claim in TN as an adverse ruling could impact the relief in DE | 1.00 | 340.00 |
| 02/12/04 | T Schiltz | Prepare for Kelly deposition; depose J. Kelly | 2.40 | 816.00 |
| 02/13/04 | C Arterbridge | Conference with T Schiltz; re: certified copy of merger; telephone call to Parcels re: same: received copy, copy to T Schiltz | 0.30 | 48.00 |
| 02/16/04 | T Schiltz | Calls to client re: settling the dispute in TN with the ESP committee | 1.50 | 510.00 |
| 02/16/04 | T Schiltz | call to L. Ahern re: potential settlement and terms thereof | 2.00 | 680.00 |
| 02/16/04 | T Schiltz | calls to IRS representatives re: potential settlement and whether they would object to proposed settlement terms | 0.80 | 272.00 |
| 02/17/04 | M Temin | Telephone call with Schiltz re: settlement strategy and obstacles thereto | 0.60 | 315.00 |
| 02/17/04 | T Schiltz | Calls to L. Ahern to negotiate settlement terms | 1.00 | 340.00 |
| 02/17/04 | T Schiltz | calls to MLTemin: proposed settlement and best manner to present settlement to the court | 0.50 | 170.00 |
| 02/17/04 | T Schiltz | legal research re: whether issues can be resolved through a 9019 settlement or must go through the plan process | 2.00 | 680.00 |
| 02/18/04 | M Temin | Telephone call with Schiltz re: possible settlement | 0.20 | 105.00 |
| 02/18/04 | T Schiltz | Emails and calls to client to advise them of settlement of TN issue and discuss with client whether issue should be resolved through a 9019 settlement or through a plan. | 2.40 | 816.00 |
| 02/20/04 | T Schiltz | Call to L. Ahern re: settlement of TN issue. | 0.40 | 136.00 |
| 02/24/04 | T Schiltz | Calls to client re: settlement terms and status of settlement negotiations. | 1.10 | 374.00 |
| 03/01/04 | M Temin | Review and revise motion to compromise and order re: same | 0.40 | 210.00 |
| 03/08/04 | T Schiltz | Draft settlement agreement | 0.60 | 204.00 |
| 03/08/04 | T Schiltz | Draft DE settlement motion | 0.50 | 170.00 |
| 03/08/04 | T Schiltz | Review TN settlement motion | 0.70 | 238.00 |
| 03/08/04 | C Arterbridge | Email from T Schiltz re: Rule 9019 Motion locate same | 0.30 | 48.00 |
| 03/10/04 | T Schiltz | Finalize terms of settlement agreement with TN counsel | 1.10 | 374.00 |

WIL:48255.3/CRE042-145994

00279

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 03/10/04 | T Schiltz | calls to client and HAP re: status of settlement agreement | 2.00 | 680.00 |
| 03/10/04 | T Schiltz | revise DE motion to approve settlement | 0.50 | 170.00 |
| 03/10/04 | T Schiltz | review Gray bankruptcy docket information | 0.40 | 136.00 |
| 03/10/04 | C Arterbridge | Telephone call to judge's chambers re: scheduling hearing | 0.20 | 32.00 |
| 03/11/04 | C Arterbridge | Telephone call to Judge's chambers re: scheduling hearing; telephone call from chambers; read chambers procedures | 0.50 | 80.00 |
| 03/12/04 | T Schiltz | review revised ESP plan and disclosure statement | 1.10 | 374.00 |
| 03/15/04 | C Arterbridge | prepare notice of service and locate 2002 group; prepare exhibit; and certificate of service for filing; efile with bankruptcy court; copy and serve same | 2.00 | 320.00 |
| 04/06/04 | C Arterbridge | Locate Motion for Default and related documents | 0.90 | 144.00 |
| 04/07/04 | C Arterbridge | Check bankruptcy docket for objection to settlement | 0.20 | 32.00 |
| 04/08/04 | C Arterbridge | Locate information from Tenn. bankruptcy website; telephone call to clerks office re: Motion Pro Hac Vice for T Schiltz; email signed order to T Schiltz | 0.80 | 128.00 |
| 04/12/04 | C Arterbridge | Check bankruptcy docket for objection to Motion | 0.20 | 32.00 |
| 04/12/04 | T Schiltz | Review exhibits and other materials for evidence Gray owns/controls Harcar | 1.40 | 476.00 |
| 04/12/04 | T Schiltz | review file to prepare for settlement hearing before J. Paine | 1.40 | 476.00 |
| 04/12/04 | T Schiltz | calls to L. Ahern re: strategy for settlement hearing | 0.40 | 136.00 |
| 04/13/04 | T Schiltz | Attend settlement hearing before J. Paine. | 4.20 | 1,428.00 |
| 04/14/04 | T Schiltz | Review and revise agenda letter; draft revised proposed order. | 0.80 | 272.00 |
| 04/15/04 | T Schiltz | Calls from court re: scheduling of hearing on settlement agreement | 0.40 | 136.00 |
| 04/21/04 | M Temin | Telephone call with Schiltz re: Kornreich order | 0.40 | 210.00 |
| 04/21/04 | T Schiltz | Prepare for hearing before J. Kornreich re: settlement of claims against ESP | 1.00 | 340.00 |
| 04/21/04 | T Schiltz | research facts and law re: proper notice to Gray and Harcar | 1.20 | 408.00 |
| 04/21/04 | T Schiltz | attend hearing before J. Kornreich | 2.10 | 714.00 |
| 04/21/04 | T Schiltz | report results of hearing to clients and ESP counsel | 1.10 | 374.00 |
| 04/22/04 | T Schiltz | Legal research re: whether interlocutory order is final for purposes of res judicata, collateral estoppel or law of the case. | 3.20 | 1,088.00 |
| 04/23/04 | C Arterbridge | retrieve order re: Settlement and distribute same to 2002 list | 1.50 | 240.00 |
| 04/26/04 | R Ey | Review and copy portions of the Restatement of Judgments for TCSchiltz | 0.20 | 20.00 |
| 05/05/04 | C Arterbridge | E mail from T Schiltz re: order certified copy of Order from 4/21 hearing; telephone call to Parcels re: same | 0.10 | 16.00 |
| 05/05/04 | C Arterbridge | E mail from T Schiltz re: order certified copy of Order from 4/21 hearing; telephone call to Parcels re: same | 0.10 | 16.00 |
| 05/05/04 | T Schiltz | Prepare letter to J. Jordan | 0.30 | 102.00 |
| 05/05/04 | T Schiltz | review email from L. Ahern | 0.10 | 34.00 |
| 05/05/04 | T Schiltz | email to C. Arterbridge re: collection of DE order on ESP settlement | 0.10 | 34.00 |
| 05/07/04 | C Arterbridge | Telephone call to Parcels re: order certified copy of docket; prepare letter to L Ahern and fed/ex documents | 0.50 | 80.00 |
| 05/07/04 | T Schiltz | Call from T. Forrester re: ESP plan approval process | 0.50 | 170.00 |
| 08/10/04 | C Arterbridge | pull down bankruptcy docket from Nashville Tennessee re: Energy Savings Products locate filings | 0.30 | 48.00 |

| | | | | |
|---|---|---|---|---|
| 08/18/04 | T Schiltz | Review recent pleading in ESP bankruptcy case | 1.00 | 340.00 |
| 08/18/04 | T Schiltz | Call from US Trustee's office re: status of ESP case | 0.60 | 204.00 |
| 08/30/04 | M Temin | Telephone call with Schiltz re: appeal by Gray | 0.40 | 210.00 |
| 08/30/04 | M Temin | review plan of liquidation for ESP | 0.40 | 210.00 |
| 08/31/04 | M Temin | Review disclosure statement of ESP | 0.40 | 210.00 |
| 09/07/04 | M Temin | Review Richardson email of 9/6 re: procedure | 0.10 | 52.50 |
| 09/07/04 | M Temin | review notes of testimony of Energy Saving Products | 0.10 | 52.50 |
| 09/07/04 | M Temin | telephone call with Schiltz re: 9/8 hearing | 0.10 | 52.50 |
| 09/07/04 | M Temin | telephone call with Schiltz re: Tennessee appeal re: ownership ESP stock | 0.20 | 105.00 |

**TOTAL** 241.20 72,623.50

WIL:48255.3/CRE042-145994

# Exhibit "N"

145994        Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX | BILL DATE |
|------|------|-------------|--------|------|-------|---------|-------|-----------|
| 5/18/2001 | 66 | Telephone | 20.42 B | | 1714 | 234151 | 2863862 | |
| 8/10/2001 | 66 | Telephone | 16.74 B | | 1714 | 242512 | 2951833 | |
| 11/1/2001 | 66 | Telephone | 3.38 B | | 1714 | 249520 | 3034018 | |
| 3/18/2002 | 66 | Telephone | 10.15 B | | 1714 | 261696 | 3165342 | |
| 3/18/2002 | 66 | Telephone | 11.08 B | | 1714 | 261697 | 3165419 | |
| 3/18/2002 | 66 | Telephone | 10.82 B | | 1714 | 261694 | 3165320 | |
| 3/18/2002 | 66 | Telephone | 1.7 B | | 1714 | 261693 | 3165315 | |
| 1/6/2003 | 66 | Telephone | 38.34 B | | 1848 | 286193 | 3521552 | |
| 3/31/2003 | 66 | Telephone | 66.19 B | | 1848 | 293900 | 3624972 | |
| 1/19/2004 | 66 | Telephone | 19.39 B | | 9999 | 319311 | 3923900 | |
| 1/19/2004 | 66 | Telephone | 126.56 B | | 9999 | 319318 | 3923919 | |
| 4/7/2004 | 66 | Telephone | 101.76 B | | 1377 | 328122 | 4008032 | |
| 7/8/2004 | 66 | Telephone | 68.56 B | | 1377 | 337184 | 4104510 | |
| | 66 | Telephone | 495.09 | | | | | |
| | | | | | | | | |
| 3/27/2002 | 101 | Special Photocopying | 297.88 B | | 9999 | 262657 | 3180054 | |
| 6/6/2003 | 101 | Special Photocopying | 83.38 B | | 9999 | 299840 | 3695192 | |
| | 101 | Special Photocopying | 381.26 | | | | | |
| | | | | | | | | |
| 5/24/1999 | 103 | Travel-PJB-05/12/99-New York | 174 B | | 1714 | 177143 | 2135603 | |
| 6/11/1999 | 103 | Travel-PJB-5/05/99-New York | 73.25 B | | 1714 | 178770 | 2152413 | |
| 6/11/1999 | 103 | Travel-PJB-5/14/99-New York | 134.5 B | | 1714 | 178769 | 2152412 | |
| 6/28/1999 | 103 | Travel-PJB-05/12/99-New York | 174.75 B | | 1714 | 179901 | 2172632 | |
| 5/23/2001 | 103 | Travel - PJB - 04/17 - 18 - Nashville, TN | 176.73 B | | 1714 | 234570 | 2867399 | |
| 7/25/2001 | 103 | Travel- PB- 07/17/01-Wilmington | 46 B | | 1714 | 240866 | 2930773 | |
| 7/26/2001 | 103 | Travel- PJB- 07/02/01- Nashville | 73 B | | 1714 | 240919 | 2932221 | |
| 9/20/2001 | 103 | Travel-PJB-09/04-NY | 50.9 B | | 1714 | 245617 | 2984360 | |
| 9/20/2001 | 103 | Travel-PJB-08/22-NY | 194.4 B | | 1714 | 245609 | 2984356 | |
| 10/26/2001 | 103 | Travel | 6 B | | 9999 | | 3034031 | |
| 12/5/2001 | 103 | Travel-PJB-5/23/01-Tennessee | 66 B | | 1714 | 252250 | 3067550 | |
| 3/18/2002 | 103 | Travel - PBrennan 03/04/02 - NY | 39 B | | 1714 | 261690 | 3165304 | |
| 5/10/2004 | 103 | Travel - TCSchiltz 04/13/04 TN | 92 B | | 1377 | 331315 | 4042848 | |
| | 103 | Travel | 1300.53 | | | | | |
| | | | | | | | | |
| 11/18/2002 | 106 | Filing/Recording Fees | 75 B | | 9999 | 282183 | 3459112 | |
| 1/31/2004 | 106 | Filing/Recording Fees | 150 B | | 1377 | 320706 | 3939202 | |
| | 106 | Filing/Recording Fees | 225 | | | | | |
| | | | | | | | | |
| 6/4/1999 | 107 | Depositions and Transcripts | 954.2 B | | 1714 | 178076 | 2147702 | |
| 7/29/1999 | 107 | Depositions and Transcripts | 166.8 B | | 1714 | 181809 | 2209359 | |
| 9/8/1999 | 107 | Depositions and Transcripts | 92.75 B | | 1714 | 184598 | 2243579 | |
| 10/19/1999 | 107 | Depositions and Transcripts | 362.26 B | | 1714 | 187098 | 2295234 | |
| 10/19/1999 | 107 | Depositions and Transcripts | 495.9 B | | 1714 | 187099 | 2295235 | |
| 11/3/2000 | 107 | Depositions and Transcripts | 99.11 B | | 1377 | 216959 | 2667520 | |
| 5/8/2001 | 107 | Depositions and Transcripts | -74.29 B | | 9999 | 233094 | 2853927 | |
| 5/9/2002 | 107 | Depositions and Transcripts | 93 B | | 9999 | 266385 | 3227970 | |
| 11/6/2002 | 107 | Depositions and Transcripts | 200.13 B | | 1714 | 281206 | 3444160 | |
| 11/15/2002 | 107 | Depositions and Transcripts | 111 B | | 9999 | 281906 | 3456416 | |
| 8/28/2003 | 107 | Depositions and Transcripts | 66 B | | 1377 | 306434 | 3781256 | |
| 1/20/2004 | 107 | Depositions and Transcripts | 95.7 B | | 9999 | 319533 | 3925234 | |
| 1/20/2004 | 107 | Depositions and Transcripts | 122.1 B | | 9999 | 319532 | 3925231 | |
| 2/25/2004 | 107 | Depositions and Transcripts | 515.2 B | | 1377 | 323463 | 3965741 | |
| 5/4/2004 | 107 | Depositions and Transcripts | 130.75 B | | 1377 | 330682 | 4038360 | |
| | 107 | Depositions and Transcripts | 3579.19 | | | | | |
| | | | | | | | | |
| 12/13/2001 | 109 | Investigation and Search Fees | 20 B | | 9999 | 253125 | 3075283 | |
| 12/13/2001 | 109 | Investigation and Search Fees | 65 B | | 9999 | 253121 | 3075279 | |
| 12/13/2001 | 109 | Investigation and Search Fees | 25 B | | 9999 | 253126 | 3075284 | |
| | 109 | Investigation and Search Fees | 110 | | | | | |
| 10/26/2001 | 113 | Service of Subpoena | 15 B | | 9999 | | 3034030 | |
| | 113 | Service of Subpoena | 15 | | | | | |
| | | | | | | | | |
| 10/24/2001 | 114 | Witness Fee | 50 B | | 1397 | 248463 | 3026582 | |
| 9/20/2002 | 114 | Witness Fee | 120 B | | 1714 | 277278 | 3381324 | |
| | 114 | Witness Fee | 170 | | | | | |
| | | | | | | | | |
| 5/11/2001 | 130 | Good Standing Certificates | 15 B | | 1714 | 233648 | 2857427 | |
| 12/11/2001 | 130 | Good Standing Certificates | 65 B | | 9999 | 252825 | 3072358 | |
| 6/15/2004 | 130 | Good Standing Certificates | 15 B | | 1377 | 334992 | 4083010 | |
| | 130 | Good Standing Certificates | 95 | | | | | |

00283

145994        Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX | BILL DATE |
|------|------|-------------|--------|------|-------|---------|-------|-----------|
| 12/1/1999 | 146 | Filing Complaint | 150 | B | 1377 | 195441 | 2406737 | |
| | 146 | Filing Complaint | 150 | | | | | |
| | | | | | | | | |
| 8/27/1999 | 158 | Cab Fare | 10 | B | 1714 | 183719 | 2229559 | |
| 10/26/1999 | 158 | Cab Fare | 32 | B | 1714 | 187615 | 2301513 | |
| 5/18/2000 | 158 | Cab Fare | 5 | B | 1714 | 203801 | 2506766 | |
| 11/6/2001 | 158 | Cab Fare | 12.25 | B | 1714 | 249870 | 3036801 | |
| 12/5/2001 | 158 | Cab Fare | 31.85 | B | 1714 | 252249 | 3067548 | |
| 1/2/2002 | 158 | Cab Fare | 8.9 | B | 1681 | 254566 | 3087607 | |
| | 158 | Cab Fare | 100 | | | | | |
| | | | | | | | | |
| 8/19/1999 | 180 | Use of Computer Applications | 7.16 | B | 9999 | 183202 | 2227650 | |
| 1/31/2000 | 180 | Use of Computer Applications | 1.24 | B | 9999 | 195454 | 2406780 | |
| 2/10/2000 | 180 | Use of Computer Applications | 5 | B | 9063 | 196443 | 2412935 | |
| 3/7/2000 | 180 | Use of Computer Applications | 6 | B | 9999 | 198419 | 2437076 | |
| 1/31/2001 | 180 | Use of Computer Applications | 15 | B | 9999 | 224825 | 2760897 | |
| 2/12/2002 | 180 | Use of Computer Applications | 0.07 | B | 9999 | 258574 | 3129802 | |
| 5/9/2002 | 180 | Use of Computer Applications | 0.98 | B | 9999 | 266316 | 3227198 | |
| 11/12/2002 | 180 | Use of Computer Applications | 0.98 | B | 9999 | 281611 | 3450340 | |
| 2/28/2003 | 180 | Use of Computer Applications | 13.86 | B | 9999 | 291375 | 3591852 | |
| 5/12/2003 | 180 | Use of Computer Applications | 3.01 | B | 9999 | 297707 | 3666982 | |
| 9/30/2003 | 180 | Use of Computer Applications | 2.31 | B | 9999 | 309029 | 3809532 | |
| 5/28/2004 | 180 | Use of Computer Applications | 26.04 | B | 9999 | 333346 | 4065978 | |
| | 180 | Use of Computer Applications | 81.65 | | | | | |
| | | | | | | | | |
| 2/26/2001 | 184 | Car Rental | 130.84 | B | 1714 | 226076 | 2780919 | |
| | 184 | Car Rental | 130.84 | | | | | |
| | | | | | | | | |
| 6/11/1999 | 185 | Parking | 3 | B | 1714 | 178771 | 2152414 | |
| 10/26/1999 | 185 | Parking | 35 | B | 1714 | 187615 | 2301512 | |
| 1/6/2000 | 185 | Parking | 8 | B | 1714 | 199770 | 2451845 | |
| 12/21/2000 | 185 | Parking | 7.5 | B | 1714 | 220874 | 2718830 | |
| 2/26/2001 | 185 | Parking | 13 | B | 1714 | 226607 | 2780924 | |
| 2/26/2001 | 185 | Parking | 6 | B | 1714 | 226609 | 2780926 | |
| 5/18/2001 | 185 | Parking | 19 | B | 1714 | 234153 | 2863867 | |
| 7/5/2001 | 185 | Parking | 9 | B | 1714 | 238897 | 2907470 | |
| 12/5/2001 | 185 | Parking | 12 | B | 1714 | 252249 | 3067549 | |
| 10/7/2002 | 185 | Parking | 24.5 | B | 1714 | 278610 | 3404843 | |
| 11/19/2002 | 185 | Parking | 19.5 | B | 1714 | 282229 | 3460247 | |
| | 185 | Parking | 156.5 | | | | | |
| 6/28/2001 | 187 | Lexis | 200 | B | 1854 | | 2931829 | |
| 6/11/2003 | 187 | Lexis SEARCHED BY: VARZALLY, MATTHEW, Time Units = 10, Searches = 3,Search Charges $133.00, Citations = 2, Cite Charges $8.50,LEXSEES = 10, LEXSEE Charges $30, Other Charges $45.00, Taxes$15.16 Reference: CRED042-145994-1928 | 231.66 | B | 9999 | | 3727216 | |
| 9/24/2003 | 187 | Lexis SEARCHED BY: CURLEY, ANDREW, Time Units = 13, Searches = 2,Search Charges $102.00, Citations = 1, Cite Charges $4.25,LEXSEES = 9, LEXSEE Charges $27, Other Charges $11.00, Taxes$10.10 Reference: CRED042-145994-1892 | 154.35 | B | 9999 | | 3808310 | |
| 9/25/2003 | 187 | Lexis SEARCHED BY: CURLEY, ANDREW, Time Units = 3, Searches = 3,Search Charges $38.00, LEXSEES = 1, LEXSEE Charges $3, Taxes$2.87 Reference: CRED042-145994-1892 | 43.87 | B | 9999 | | 3808311 | |
| 4/20/2004 | 187 | Lexis SEARCHED BY: ARTERBRIDGE, COLLEEN, Time Units = 2, Searches =4, Search Charges $252.00, Taxes $17.64 Reference: CRE042 | 269.64 | B | 9999 | | 4035929 | |
| | 187 | Lexis | 899.52 | | | | | |
| | | | | | | | | |
| 6/3/1999 | 188 | Westlaw | 719.19 | B | 1377 | | 2192693 | |
| 6/4/1999 | 188 | Westlaw | 15.54 | B | 1377 | | 2192694 | |
| 6/7/1999 | 188 | Westlaw | 11.33 | B | 1377 | | 2192695 | |
| 6/8/1999 | 188 | Westlaw | 63.14 | B | 1377 | | 2192696 | |
| 6/10/1999 | 188 | Westlaw | 95.26 | B | 1377 | | 2192697 | |
| 6/11/1999 | 188 | Westlaw | 22.5 | B | 1377 | | 2192698 | |
| 6/11/1999 | 188 | Westlaw | 53.68 | B | 1377 | | 2192699 | |
| 6/17/1999 | 188 | Westlaw | 66.53 | B | 1682 | | 2192701 | |
| 6/17/1999 | 188 | Westlaw | 121.12 | B | 1377 | | 2192700 | |
| 6/18/1999 | 188 | Westlaw | 52.08 | B | 1377 | | 2192703 | |

00284

145994        Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX | BILL DATE |
|------|------|-------------|--------|------|-------|---------|-------|-----------|
| 6/18/1999 | 188 | Westlaw | 130.96 | B | 1682 | | | 2192702 |
| 6/20/1999 | 188 | Westlaw | 897.14 | B | 1377 | | | 2192704 |
| 6/21/1999 | 188 | Westlaw | 87.49 | B | 1377 | | | 2192705 |
| 6/22/1999 | 188 | Westlaw | 278.23 | B | 1682 | | | 2192706 |
| 6/22/1999 | 188 | Westlaw | 366.7 | B | 1377 | | | 2192707 |
| 6/23/1999 | 188 | Westlaw | 261.55 | B | 1377 | | | 2192708 |
| 11/19/1999 | 188 | Westlaw | 89.58 | B | 1377 | | | 2330597 |
| 11/19/1999 | 188 | Westlaw | 11.09 | B | 1377 | | | 2330589 |
| 11/19/1999 | 188 | Westlaw | 48.98 | B | 1377 | | | 2330601 |
| 11/19/1999 | 188 | Westlaw | 50.48 | B | 1377 | | | 2330599 |
| 11/19/1999 | 188 | Westlaw | 261.71 | B | 1377 | | | 2330603 |
| 11/20/1999 | 188 | Westlaw | 117.99 | B | 1377 | | | 2331301 |
| 11/22/1999 | 188 | Westlaw | 306.05 | B | 4075 | | | 2331560 |
| 1/12/2000 | 188 | Westlaw WESTLAW SEARCHED BY: LOPEZ, ROBERT C; TIME: $2. 00; PRINTING:1790 $35.80; TRANSACTIONS: 2 $69. 00; TAXES: $7.34. | 114.14 | B | 9999 | | | 2953730 |
| 1/18/2000 | 188 | Westlaw WESTLAW SEARCHED BY: BURAKS, KEVIN H; TIME: 0:06.13 $4.97;DATABASE: 0:06:13 $25 | 32.39 | B | 9999 | | | 2406625 |
| 2/17/2000 | 188 | Westlaw WESTLAW SEARCHED BY: LOPEZ, ROBERT C; TIME: $1.00; PRINTING:4004 $80.08; TRANSA | 175.76 | B | 9999 | | | 2425389 |
| 1/5/2001 | 188 | Westlaw WESTLAW SEARCHED BY: HESS, MARY LOUISE; TIME: 0:01:46 $1.41;DATABASE: 0:01:46 $7.66. | 9.07 | B | 9999 | | | 2744043 |
| 1/11/2001 | 188 | Westlaw WESTLAW SEARCHED BY: SEANER, MARNIE R; TRANSACTIONS: 10 $68.75. | 68.75 | B | 9999 | | | 2744191 |
| 1/11/2001 | 188 | Westlaw WESTLAW SEARCHED BY: SEANER, MARNIE R; TRANSACTIONS: 5 $50.00. | 50 | B | 9999 | | | 2744192 |
| 11/13/2001 | 188 | Westlaw SEARCHED BY: LOPEZ, ROBERT C; PRINTING: 481 $9. 09;TRANSACTIONS: 1 $47.22. Reference: CRE042-145994-lisependes1.000 Westlaw ID#1764341 | 56.31 | B | 9999 | | | 3050615 |
| 4/12/2002 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; TIME: 0:01:13 $0. 95; DATABASE:0:01:13 $5.29; PRINTING: 145 $2.74. Reference:CRE042-145994-caseforbrief1.000 Westlaw ID# 1515862 | 8.98 | B | 9999 | | | 3201486 |
| 4/29/2003 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 74 $1. 74; TRANSACTIONS:3 $46.86. Reference: CRE042-1459941.000 Westlaw ID# 1515862 | 48.6 | B | 9999 | | | 3674268 |
| 7/31/2003 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 1612 $37.56;TRANSACTIONS: 1 $65.25. Reference: CRE042-145994-13771.000Westlaw ID# 1515862 | 102.81 | B | 9999 | | | 3761312 |
| 2/3/2004 | 188 | Westlaw SEARCHED BY: ARTERBRIDGE, COLLEEN C; PRINTING: 1318 $37.43;TRANSACTIONS: 8 $216.08. Reference: CRE042-145994-4075253.51Westlaw ID#1621805 | 253.51 | B | 9999 | | | 3957443 |
| 2/4/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 4902 $139.22;TRANSACTIONS: 8 $30.07. Reference: CRE042-145994169.29Westlaw ID# 1515862 | 169.29 | B | 9999 | | | 3957444 |
| 2/5/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 1012 $28.74;TRANSACTIONS: 4 $19.65. Reference: CRE042-145994448.39Westlaw ID# 1515862 | 48.39 | B | 9999 | | | 3957445 |
| 2/9/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; TRANSACTIONS: 27 $1323.20.Reference: CRE042-145994 1323.20 Westlaw ID# 1515862 | 1323.2 | B | 9999 | | | 3957519 |
| 3/11/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; TRANSACTIONS: 2 $133.12.Reference: CRE042-145994133.12 Westlaw ID# 1515862 | 133.12 | B | 9999 | | | 3990507 |
| 9/8/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 1436 $40.93; Reference: CRE042-145994221.47Westlaw ID# 1515862 | 221.47 | B | 9999 | | | 4159100 |
| 9/9/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 2435 $69.42;TRANSACTIONS: 6 $200.74. Reference: CRE042-145994270.16Westlaw ID# 1515862 | 270.16 | B | 9999 | | | 4159101 |
| 9/10/2004 | 188 | Westlaw SEARCHED BY: SCHILTZ, TODD C; PRINTING: 3954 $112.71;TRANSACTIONS: 42 $759.31. Reference: CRE042-145994872.02Westlaw ID#1515862 | 872.02 | B | 9999 | | | 4159102 |
| | 188 | Westlaw | 8086.29 | | | | | |
| 5/23/2001 | 203 | Meals - Travel - 04/23 - Newark, NJ | 30.6 | B | 1714 | 234570 | | 2867400 |
| 7/26/2001 | 203 | Meals- PJB- 07/02/01 | 9.7 | B | 1714 | 240919 | | 2932223 |
| 9/20/2001 | 203 | Meals-PJB-09/04-NY | 27.96 | B | 1714 | 245617 | | 2984361 |
| 12/5/2001 | 203 | Meals-PJB-5/23/01-Tennessee | 14.35 | B | 1714 | 252250 | | 3067551 |
| 3/18/2002 | 203 | Meals | 2 | B | 1714 | 261690 | | 3165305 |

145994     Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX | BILL DATE |
|------|------|-------------|--------|------|-------|---------|-------|-----------|
| 5/10/2004 | 203 | Meals - TCSchlitz 04/13/04 TN | 7.59 | B | 1377 | 331315 | 4042849 | |
| | 203 | Meals | 92.2 | | | | | |
| 10/6/1999 | 303 | Corporate Travel PJB/PHL-NY-PHL/09/09/99 | 148 | B | 1714 | | 2273225 | |
| 11/3/1999 | 303 | Corporate Travel PJB/PHL-NY-PHL/10/07/99 | 150 | B | 1714 | | 2311360 | |
| 3/13/2000 | 303 | Corporate Travel-PB/Philadelphia-New York-Philadelphia/02-04-00 | 10 | B | 1714 | | 2442749 | |
| 6/26/2000 | 303 | Corporate Travel; Philadelphia/New York/Philadelphia/5-19-00 | 164 | B | 1714 | | 2540670 | |
| 6/26/2000 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia/5-19-00 | 10 | B | 1714 | | 2540671 | |
| 12/11/2000 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 11-17-00 (PB) | 10 | B | 1714 | | 2708228 | |
| 12/11/2000 | 303 | Corporate Travel: Philadelphia/New York 11-17-00 (PB) | 10 | B | 1714 | | 2708231 | |
| 4/30/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 4-10-01 (PB) | 1077 | B | 1714 | | 2845680 | |
| 5/17/2001 | 303 | Corporate Travel: Philadelphia/Nashville 4-17-01 (PB) | 594.25 | B | 1714 | | 2862899 | |
| 5/17/2001 | 303 | Corporate Travel: Philadelphia/Philadelphia 4-18-01 (PB) | 1077 | B | 1714 | | 2862869 | |
| 6/18/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 5-23-01 (PB) | 1233 | B | 1714 | | 2891503 | |
| 7/17/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 4-18-01 (PB) | -515.6 | B | 1714 | | 2919239 | |
| 7/17/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 4-10-01 (PB) | -1067 | B | 1714 | | 2919236 | |
| 7/30/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 7-2-01 (PB) | 1077 | B | 1714 | | 2935012 | |
| 8/20/2001 | 303 | Corporate Travel: Philadelphia/Wilmington 7-18-01 (PB) | 46 | B | 1714 | | 2961745 | |
| 9/14/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 9-4-01 (PB) | 178 | B | 1714 | | 2981485 | |
| 10/17/2001 | 303 | Corporate Travel: Philadelphia/New York 10-10-01 (PB) | 94 | B | 1714 | | 3019928 | |
| 10/17/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 10-10-01 (PB) | 178 | B | 1714 | | 3019927 | |
| 10/17/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 9-20-01 (PB) | 178 | B | 1714 | | 3019654 | |
| 10/17/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 9-20-01 (PB) | 10 | B | 1714 | | 3019659 | |
| 11/30/2001 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 11-9-01 (PB) | 1077 | B | 1714 | | 3063185 | |
| 12/20/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 9/20/01 (PB) | -84 | B | 1714 | | 3080741 | |
| 12/20/2001 | 303 | Corporate Travel: New York/Philadelphia 11/19/01 (RL) | 94 | B | 1681 | | 3081307 | |
| 12/20/2001 | 303 | Corporate Travel: New York/Philadelphia 11/19/01 (PB) | 94 | B | 1714 | | 3081306 | |
| 12/20/2001 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 11/19/01 (PB) | 178 | B | 1714 | | 3081309 | |
| 1/24/2002 | 303 | Corporate Travel: Philadelphia/Nashville/Philadelphia 11-9-01 (PB) | -1067 | B | 1714 | | 3108622 | |
| 3/18/2002 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 3-4-02 (PB) | 10 | B | 1714 | | 3165961 | |
| 3/18/2002 | 303 | Corporate Travel: New York/Philadelphia 3-4-02 (PB) | 95 | B | 1714 | | 3165960 | |
| 3/28/2002 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 3-4-02 (PB) | 188 | B | 1714 | | 3180917 | |
| 4/23/2002 | 303 | Corporate Travel: Philadelphia/New York/Philadelphia 3-14-02 (PB) | 188 | B | 1714 | | 3207758 | |
| 4/23/2002 | 303 | Corporate Travel: New York/Philadelphia 3-14-02 (PB) | 95 | B | 1714 | | 3207756 | |
| 4/30/2002 | 303 | Corporate Travel: New York/Philadelphia 3-4-02 (PB) | -85 | B | 1714 | | 3215242 | |

145994        Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX BILL DATE |
|------|------|-------------|--------|------|-------|---------|-----------------|
| 6/25/2002 | 303 | Corporate Travel: New York/Philadelphia 3-14-02 (PB) | -85 B | | 1714 | | 3275646 |
| 1/30/2003 | 303 | Corporate Travel: Ardmore/Philadelphia/Ardmore 1-24-03 (PB) | 120 B | | 1714 | | 3557768 |
| 2/20/2004 | 303 | Corporate Travel: Philadelphia/Nashville/Charlotte/Philadelphia 2-19-04 (TS) | 462.3 B | | 1377 | | 3960549 |
| 4/21/2004 | 303 | Corporate Travel: Philadelphia/Atlanta/Nashville/Philadelphia 4-13-04 (TS) | 312.3 B | | 1377 | | 4024929 |
| 5/24/2004 | 303 | Corporate Travel: Philadelphia/Nashville/Charlotte/Philadelphia 2-19-04 (TS) | -422.3 B | | 1377 | | 4059919 |
| | 303 | Corporate Travel | 5831.95 | | | | |
| 8/31/2002 | 888 | Use of Computer Applications | 0.56 B | | 9999 | | 3362797 |
| 8/31/2002 | 888 | Use of Computer Applications | 1.12 B | | 9999 | | 3363057 |
| | 888 | Miscellaneous | 1.68 | | | | |

COST SUB TOTAL                                    21901.7

| CODE | SUMMARIZED COSTS | |
|------|------------------|-----|
| 002 | Duplicating | 4,464.78 |
| 003 | Postage | 471.88 |
| 005 | Air/Federal Express | 1,086.58 |
| 006 | Long Distance Telephone | 5,814.09 |
| 007 | Secretarial Overtime | 322.00 |
| 008 | Miscellaneous | 1.87 |
| 024 | Copies of Dockets | 117.05 |
| 025 | Telecopy | 1,480.95 |
| 027 | Miscellaneous | 90.00 |
| 044 | Messenger/Delivery | 4,363.21 |
| 183 | Messenger/Delivery | 111.50 |
| 309 | Telecopy-New York | 6.25 |
| 066 | Telephone | 495.09 |
| 101 | Special Photocopying | 381.26 |
| 103 | Travel | 1,300.53 |
| 106 | Filing/Recording Fees | 225.00 |
| 107 | Depositions and Transcripts | 3,579.19 |
| 109 | Investigation and Search Fees | 110.00 |
| 113 | Service of Subpoena | 15.00 |
| 114 | Witness Fee | 170.00 |
| 130 | Good Standing Certificate | 95.00 |
| 146 | Filing Complaint | 150.00 |
| 158 | Cab Fare | 100.00 |
| 180 | Use of Computer Applications (PACER charges) | 81.65 |
| 184 | Car Rental | 130.84 |
| 185 | Parking | 156.50 |
| 187 | Lexis | 899.52 |
| 188 | Westlaw | 8,086.29 |
| 203 | Meals | 92.20 |
| 303 | Corporate Travel | 5,831.95 |
| 354 | Pacer Service Center | 6.79 |
| 888 | Miscellaneous | 1.68 |

TOTAL DISBURSEMENTS                          40,238.65

## CERTIFICATE OF SERVICE

I, Todd C. Schiltz, hereby certifies that on April 21, 2005, a copy of the foregoing

Amended Application of Wolf Block, Schorr and Solis-Cohen LLP for Compensation For

Services Rendered and Reimbursement of Expenses as Counsel to the Creditors' Committee for

the Period from May 1, 1999 through September 30, 2004 was served upon plaintiffs' counsel

and all interested parties via electronic filing and in the following manner:

## BY U.S. MAIL POSTAGE PRE-PAID

Steven K. Kortanek, Esquire
Jeffrey Kurtzman, Esquire
Klehr Harrison Harvey Branzburg & Ellers, LLP
919 Market Street
Suite 1000
Wilmington, DE  19801

Mark Minuti, Esquire
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899

Kevin Gross, Esquire
Rosenthal, Monhait, Gross & Goddess
Mellon Bank Center, Suite 1401
PO Box 1070
Wilmington, DE 19899

Brett D. Fallon, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899

Francis A. Monaco, Jr. Esquire
Monzack and Monaco, P.A.
1201 North Orange Street
Suite 400
P.O. Box 2031
Wilmington, DE  19899-2031

WIL:47855.1/CRE042-145994

00288

Ellen W. Slights, Esquire
U.S. Attorney's Office
1201 N. Market Street, Suite 1100
P.O. Box 2046
Wilmington, DE 19899

Margaret Harrison, Esquire
Office of The U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street
Suite 2313
Lock Box 35
Wilmington, DE 19801

Richard Henry Cross, Jr., Esquire
Amy Evans, Esquire
Cross and Simon LLC
913 North Market Street
Suite 1001
Wilmington, DE 19801

Henry A. Heiman, Esquire
Heiman, Gouge & Kaufman LLP
800 King Street
Suite 303
Wilmington, DE 19801

Richard E. Gray
Rivco Management, Inc.
P.O. Box 182
Keene, NY 12942

David A. Loglisci, Esquire
Moritt, Hock & Hamroff, LLP
400 GardenCity Plaza,
Suite 202
Garden City, NY 11530

Joseph DeFranco, Esquire
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, DC 20005-4026

00289

Alan R. Gordon, Esquire
Pelino & Lentz P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, Pennsylvania 19103-7393

William R. O'Bryan, Esquire
Miller & Martin
1200 One Nashville Place
150 4th Avenue N.
Nashville, TN 37219-2433

Todd C. Schiltz (No. 3253)

00290

145994          Creditors' Committee of Summit Metals, Inc.

| DATE | CODE | DESCRIPTION | AMOUNT | STAT | TKPER | VOUCHER | INDEX | BILL DATE |
|------|------|-------------|--------|------|-------|---------|-------|-----------|
| 6/25/2002 | 303 | Corporate Travel: New York/Philadelphia 3-14-02 (PB) | -85 | B | 1714 | | 3275646 | |
| 1/30/2003 | 303 | Corporate Travel: Ardmore/Philadelphia/Ardmore 1-24-03 (PB) | 120 | B | 1714 | | 3557768 | |
| 2/20/2004 | 303 | Corporate Travel: Philadelphia/Nashville/Charlotte/Philadelphia 2-19-04 (TS) | 462.3 | B | 1377 | | 3960549 | |
| 4/21/2004 | 303 | Corporate Travel: Philadelphia/Atlanta/Nashville/Philadelphia 4-13-04 (TS) | 312.3 | B | 1377 | | 4024929 | |
| 5/24/2004 | 303 | Corporate Travel: Philadelphia/Nashville/Charlotte/Philadelphia 2-19-04 (TS) | -422.3 | B | 1377 | | 4059919 | |
| | 303 | Corporate Travel | 5831.95 | | | | | |
| 8/31/2002 | 888 | Use of Computer Applications | 0.56 | B | 9999 | | 3362797 | |
| 8/31/2002 | 888 | Use of Computer Applications | 1.12 | B | 9999 | | 3363057 | |
| | 888 | Miscellaneous | 1.68 | | | | | |

COST SUB TOTAL                                    21901.7

| CODE | SUMMARIZED COSTS | |
|------|------------------|------|
| 002 | Duplicating | 4,464.78 |
| 003 | Postage | 471.88 |
| 005 | Air/Federal Express | 1,086.58 |
| 006 | Long Distance Telephone | 5,814.09 |
| 007 | Secretarial Overtime | 322.00 |
| 008 | Miscellaneous | 1.87 |
| 024 | Copies of Dockets | 117.05 |
| 025 | Telecopy | 1,480.95 |
| 027 | Miscellaneous | 90.00 |
| 044 | Messenger/Delivery | 4,363.21 |
| 183 | Messenger/Delivery | 111.50 |
| 309 | Telecopy-New York | 6.25 |
| 066 | Telephone | 495.09 |
| 101 | Special Photocopying | 381.26 |
| 103 | Travel | 1,300.53 |
| 106 | Filing/Recording Fees | 225.00 |
| 107 | Depositions and Transcripts | 3,579.19 |
| 109 | Investigation and Search Fees | 110.00 |
| 113 | Service of Subpoena | 15.00 |
| 114 | Witness Fee | 170.00 |
| 130 | Good Standing Certificate | 95.00 |
| 146 | Filing Complaint | 150.00 |
| 158 | Cab Fare | 100.00 |
| 180 | Uaw od Computer Applications | 81.65 |
| 184 | Car Rental | 130.84 |
| 185 | Parking | 156.50 |
| 187 | Lexis | 899.52 |
| 188 | Westlaw | 8,086.29 |
| 203 | Meals | 92.20 |
| 303 | Corporate Travel | 5,831.95 |
| 354 | Pacer Service Center | 6.79 |
| 888 | Miscellaneous | 1.68 |
| | TOTAL DISBURSEMENTS | 40,238.65 |

## CERTIFICATE OF SERVICE

I, Todd C. Schiltz, hereby certifies that on February 11, 2005, a copy of the foregoing

Application of Wolf Block, Schorr and Solis-Cohen LLP for Compensation For Services

Rendered and Reimbursement of Expenses as Counsel to the Creditors' Committee for the Period

from May 1, 1999 through September 30, 2004 was served upon plaintiffs' counsel and all

interested parties via electronic filing and in the following manner:

## BY U.S. MAIL POSTAGE PRE-PAID

Steven K. Kortanek, Esquire
Jeffrey Kurtzman, Esquire
Klehr Harrison Harvey Branzburg & Ellers, LLP
919 Market Street
Suite 1000
Wilmington, DE  19801

Mark Minuti, Esquire
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899

Kevin Gross, Esquire
Rosenthal, Monhait, Gross & Goddess
Mellon Bank Center, Suite 1401
PO Box 1070
Wilmington, DE 19899

Brett D. Fallon, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899

Francis A. Monaco, Jr. Esquire
Monzack and Monaco, P.A.
1201 North Orange Street
Suite 400
P.O. Box 2031
Wilmington, DE  19899-2031

WIL:47855.1/CRE042-145994

00292

Ellen W. Slights, Esquire
U.S. Attorney's Office
1201 N. Market Street, Suite 1100
P.O. Box 2046
Wilmington, DE 19899

Margaret Harrison, Esquire
Office of The U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street
Suite 2313
Lock Box 35
Wilmington, DE 19801

Richard Henry Cross, Jr., Esquire
Amy Evans, Esquire
Cross and Simon LLC
913 North Market Street
Suite 1001
Wilmington, DE 19801

Henry A. Heiman, Esquire
Heiman, Gouge & Kaufman LLP
800 King Street
Suite 303
Wilmington, DE 19801

Richard E. Gray
Rivco Management, Inc.
P.O. Box 182
Keene, NY 12942

David A. Loglisci, Esquire
Moritt, Hock & Hamroff, LLP
400 GardenCity Plaza,
Suite 202
Garden City, NY 11530

Joseph DeFranco, Esquire
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, DC 20005-4026

00293

Alan R. Gordon, Esquire
Pelino & Lentz P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, Pennsylvania 19103-7393

William R. O'Bryan, Esquire
Miller & Martin
1200 One Nashville Place
150 4th Avenue N.
Nashville, TN 37219-2433

Todd C. Schiltz  (No. 3253)

00294

Invoice submitted to:

Chariot Group/Summit Metals, Inc.
c/o Monzack and Monaco LLP
1201 N. Orange Street, Suite 400
Wilmington, DE 19801

March 29, 2006
#10654
In reference to: For time and disbursements 6/1/95 - 12/31/98

| | | Hours | Amount |
|---|---|---|---|
| | (3)(D)/(4) | | |
| 6/2/95 | AMR telephone call AH; attempt to reach JF and TJ; Westlaw research (3)(D)/(4) | 1.00 | 250.00 |
| 6/20/95 | AMR telephone call Lane; attempt to reach Schneiderman (3)(D)/(4) | 1.00 | 250.00 |
| 6/22/95 | AMR telephone calls, Kelly, Schneiderman, Lane, Adams (3)(D)/(4) | 1.00 | 250.00 |
| 6/29/95 | AMR mtgs w. Lane and Colson (3)(D)/(4) | 5.00 | 1,250.00 |
| 6/30/95 | AMR review financials; forward to SJB; telephone call CKR; telephone call JHA (3)(D)/(4) | 1.50 | 375.00 |
| 7/5/95 | AMR calls re financing of litig.: colson, Kelly, Benton, Mates, Brand (3)(D)/(4) | 2.50 | 625.00 |
| 7/6/95 | AMR tcs Johnson, Lane, Benton, etc. | 3.00 | 750.00 |

Chariot Group/Summit Metals, Inc.                          Page 2
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
|  | (3)(D)/(4) |  |  |
| 7/7/95 | AMR tcs Rosenthal; conference with SJB; conference with SJB and Bradley; work on draft of complaint | 6.00 | 1,500.00 |
|  | (3)(D)/(4) |  |  |
| 7/10/95 | AMR misc. calls: Adams re NY Complaint; Monhait (2) re Del Complaint; CKR; Benton re financing | 3.50 | 875.00 |
|  | (3)(D)/(4) |  |  |
| 7/11/95 | AMR calls to Monhait and CKR re Cht complaint; calls to Benton and Adams; letter to Jaffe | 2.50 | 625.00 |
|  | (3)(D)/(4) |  |  |
| 7/12/95 | AMR telephone call Benton; meeting with Adams; calls to Monhait | 3.00 | 750.00 |
|  | (3)(D)/(4) |  |  |
| 7/13/95 | AMR redft Benton afft; tcs Adams; lcw Benton; telephone calls Monhait | 7.00 | 1,750.00 |
|  | (3)(D)/(4) |  |  |
| 7/14/95 | AMR calls to Colson; Mates; Brand; Prussin; Benton; Adams; Monhait, etc. reNY and Delaware actions; review BCL provisions | 7.00 | 1,750.00 |
|  | (3)(D)/(4) |  |  |
| 7/17/95 | AMR tcs re injunction, etc: Benton, Adams, Silverman, Monhait, Lane; review draft amnded complaint. | 5.50 | 1,375.00 |
|  | (3)(D)/(4) |  |  |
| 7/18/95 | AMR misc calls; draft letter to Houlihan; telephone calls Adams; research, etc. | 5.00 | 1,250.00 |
|  | (3)(D)/(4) |  |  |
| 7/19/95 | AMR misc. calls; Jaffe, Benton, Adams, Monhait | 2.00 | 500.00 |
|  | (3)(D)/(4) |  |  |
| 7/20/95 | AMR review OSC; fax to Adams; telephone call Benton; telephone call Monhait | 1.50 | 375.00 |
|  | (3)(D)/(4) |  |  |

00296

Chariot Group/Summit Metals, Inc.                           Page 3
March 29, 2006

|          |                                                                                                                          | Hours | Amount   |
|----------|--------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/21/95  | AMR telephone call Jaffe re support and strategy; attmept to reach Schreiber; telephone call Adams re letter to Houlihan; telephone call Benton investors (3)(D)/(4) | 2.00  | 500.00   |
| 7/24/95  | AMR review letter to Houlihan; meeting with Benton and Bradley; have financials retyped; telephone call Schreiber (3)(D)/(4) | 4.00  | 1,000.00 |
| 7/25/95  | AMR calls to BR, Prussin, Adams, Monhait re NY action, Del stipulation, etc., recruitment of other stockholders; telephone call Lane (3)(D)/(4) | 4.00  | 1,000.00 |
| 7/27/95  | AMR misc calls; review mtls from Monhait; telephone call Adams; telephone call Bradley; draft stockholder letter (3)(D)/(4) | 3.00  | 750.00   |
| 7/28/95  | AMR rewrite letter to stockholders; review Bradley proposal; telephone call SJB; telephone call Lane; tcs Adams, etc. (3)(D)/(4) | 4.00  | 1,000.00 |
| 7/31/95  | AMR calls re NY suit etc. (3)(D)/(4)                                                                                      | 2.00  | 500.00   |
| 8/1/95   | AMR complete letters and send out; telephone calls Adams; Bradley; Benton (3)(D)/(4)                                      | 2.00  | 500.00   |
| 8/2/95   | AMR misc calls--Ben, Stu, Joe, Jones (3)(D)/(4)                                                                           | 2.00  | 500.00   |
| 8/3/95   | AMR meeting with Benton and Adams re NY suit; telephone call Adams re same;telephone call Ben and forward names; telephone call atty for stockholder; telephone call Herman (3)(D)/(4) | 3.83  | 958.33   |

Chariot Group/Summit Metals, Inc.                          Page 4
March 29, 2006

|         |                                                                                                                                                                      | Hours | Amount   |
|---------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 8/4/95  | AMR telephone calls Adams re original service; 94 financials, new parties, etc.; arrange for service on Houlihan Lokey (3)(D)/(4)                                      | 3.50  | 875.00   |
| 8/7/95  | AMR  telephone call Adams; forward original complaint; telephone call Adams re caption change; review OSC; telephone call Benton (3)(D)/(4)                             | 1.50  | 375.00   |
| 8/8/95  | AMR telephone call Adams re OSC issues; review documents; telephone call Benton; telephone call  Ben; telephone call Jones; telephone call Lane re absence of info (3)(D)/(4) | 5.00  | 1,250.00 |
| 8/9/95  | AMR    telephone call Monhait; review 228 documents; calls Prussin, Adams, Johnson, Lane, etc.; review Del cases; (3)(D)/(4)                                           | 5.00  | 1,250.00 |
| 8/10/95 | AMR calls re service of OSC; Adams; Monhait;   Johnson; Benton; CKR; Raible; Deaviser and broker;    review Merritt; (3)(D)/(4)                                        | 5.00  | 1,250.00 |
| 8/11/95 | AMR tcs Adams re issues; telephone call Benton; attempt to reach Johnson; telephone call Lane; telephone call Jones; telephone call Rosenthal; telephone call Adams and Benton; review new complaint (3)(D)/(4) | 6.00  | 1,500.00 |
| 8/14/95 | AMR misc calls; Rosenthal; Schreiber; Adams; Benton; Kolilias; etc.; edit and send out new stockholder letter; telephone call Schneiderman; telephone call Princi (3)(D)/(4) | 6.00  | 1,500.00 |

Chariot Group/Summit Metals, Inc.                          Page 5
March 29, 2006

|          |     |                                                                                                       | Hours | Amount   |
|----------|-----|-------------------------------------------------------------------------------------------------------|-------|----------|
| 8/14/95  | SJF | catch up on developments; read Adams papers<br>(3)(D)/(4)                                             | 3.00  | 375.00   |
| 8/15/95  | AMR | tcs stockholders, Adams, Benton re financing and litigation<br>(3)(D)/(4)                             | 6.00  | 1,500.00 |
| 8/16/95  | AMR | tcs Schneiderman; Benton; Prussin; Adams; attend to service of new OSC; tcs stockholders<br>(3)(D)/(4) | 6.00  | 1,500.00 |
| 8/17/95  | AMR | attend court; lcw Liss and Benton; meeting with Benton and Bradley; tcs Rosenthal and misc stockholders<br>(3)(D)/(4) | 8.50  | 2,125.00 |
| 8/18/95  | AMR | telephone call Adams re First Capital Advisers; review amended complaint; conference with Benton and Bradley; conference with TL re DTC<br>(3)(D)/(4) | 4.00  | 1,000.00 |
| 8/21/95  | AMR | WL research; tcs Adams, Smith, Schneiderman; review financing proposal; have subpoenas served; telephone call Rosenthal; mark up draft 2nd amended complaint<br>(3)(D)/(4) | 4.00  | 1,000.00 |
|          | AMR | WL research; tcs Adams, Bradley; conference with JJM re tax proceedings; mark up financing proposal; review Schwartz letter<br>(3)(D)/(4) | 5.00  | 1,250.00 |
|          | SJF | copy Synalloy case for JA<br>(3)(D)/(4)                                                               | 0.33  | 41.67    |
| 8/23/95  | AMR | misc calls: Rosenthal, Adams, Bradley; review Adams letters to sublessee atty and Schwartz; WL research;<br>(3)(D)/(4) | 4.00  | 1,000.00 |

Chariot Group/Summit Metals, Inc.                        Page 6
March 29, 2006

|         |     |                                                                                                                      | Hours | Amount   |
|---------|-----|----------------------------------------------------------------------------------------------------------------------|-------|----------|
| 8/24/95 | AMR | dun & Bradstreet and other corp research; miscellaneous calls--Rosenthal, Harris, Adams, Benton, etc. (3)(D)/(4)       | 5.00  | 1,250.00 |
| 8/25/95 | AMR | research, calls, etc., review cert of merger; review statute; telephone call Rosenthal; conference with Blattberg re no agreement of merger; work on financing presentation (3)(D)/(4) | 5.00  | 1,250.00 |
|         | SJF | review Summit materials; discuss availability of merger agreement with AR (3)(D)/(4)                                   | 2.00  | 250.00   |
| 8/29/95 | AMR | field calls from s/h; review Del complaint; telephone call Adam; meeting with Morris; draft presentation (3)(D)/(4)    | 7.00  | 1,750.00 |
| 8/30/95 | AMR | telephone call Schneiderman; telephone call Adams re Houlihan approach; conference with TL re stockholder interest; revise presentation; fax to Harris (3)(D)/(4) | 5.00  | 1,250.00 |
| 8/31/95 | AMR | misc. calls to s/h; telephone calls Adams re Houlihan, logistics, Prussin, theories, etc. (3)(D)/(4)                  | 4.00  | 1,000.00 |
| 9/1/95  | AMR | revise proposal; tcs JHA; conference with TL re stockholder letters; review mtls from Schwarz (3)(D)/(4)              | 7.00  | 1,750.00 |
|         | SJF | discuss Gray papers with AR; and review further (3)(D)/(4)                                                            | 2.00  | 250.00   |
| 9/2/95  | AMR | review adversary mtls (3)(D)/(4)                                                                                      | 2.00  | 500.00   |

Chariot Group/Summit Metals, Inc.                              Page 7
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 9/3/95 | AMR work on response<br>(3)(D)/(4) | 5.00 | 1,250.00 |
| 9/4/95 | AMR work on response<br>(3)(D)/(4) | 4.00 | 1,000.00 |
| 9/5/95 | AMR draft affts; tcs Adams; review<br>financial information; telephone call<br>Phil; review Hallowell papers<br>(3)(D)/(4) | 7.00 | 1,750.00 |
|  | SJF review affidavit<br>(3)(D)/(4) | 3.50 | 437.50 |
| 9/6/95 | AMR work on affts; misc. calls<br>(3)(D)/(4) | 8.00 | 2,000.00 |
|  | SJF memo re accusations of sf theft<br>(3)(D)/(4) | 4.00 | 500.00 |
| 9/7/95 | AMR work on affts<br>(3)(D)/(4) | 4.00 | 1,000.00 |
|  | SJF discuss opposition papers with AR;<br>review drafts<br>(3)(D)/(4) | 3.25 | 406.25 |
| 9/8/95 | AMR meeting with Chapman, Bradley, Benton;<br>work on affts; misc research and calls<br>(3)(D)/(4) | 8.00 | 2,000.00 |
|  | SJF discuss derivative action with TL<br><br>(3)(D)/(4) | 1.00 | 125.00 |
| 9/9/95 | AMR draft affts.<br>(3)(D)/(4) | 9.00 | 2,250.00 |
| 9/10/95 | AMR revise affts; telephone call Adams<br>(3)(D)/(4) | 1.50 | 375.00 |
| 9/11/95 | AMR draft affts; telephone call Adams,<br>Benton, etc.<br>(3)(D)/(4) | 7.00 | 1,750.00 |
|  | SJF review papers | 2.50 | 312.50 |

Chariot Group/Summit Metals, Inc.                              Page 8
March 29, 2006

|         |                                                                                      | Hours | Amount   |
|---------|--------------------------------------------------------------------------------------|-------|----------|
|         | (3)(D)/(4)                                                                           |       |          |
| 9/12/95 | AMR complete and arrange for service of Chariot documents<br>(3)(D)/(4)               | 7.00  | 1,750.00 |
|         | SJF memo re SB points; SF rebuttal;<br>(3)(D)/(4)                                    | 4.00  | 500.00   |
| 9/13/95 | AMR help complete documents and have served<br>(3)(D)/(4)                            | 7.00  | 1,750.00 |
|         | SJF work on affidavit re theft of Chariot documents; assist with other papers<br>(3)(D)/(4) | 4.50  | 562.50   |
| 9/14/95 | AMR meeting with Benton, Adams and Liss downtown re hearing<br>(3)(D)/(4)             | 5.00  | 1,250.00 |
| 9/18/95 | AMR  misc calls, Adams, Jones, Prussin, Jaffe, etc.<br>(3)(D)/(4)                     | 4.00  | 1,000.00 |
| 9/19/95 | AMR calls to Adams and Prussin, Benton, Bradley, Jaffe, etc.<br>(3)(D)/(4)            | 4.00  | 1,000.00 |
| 9/20/95 | AMR telephone call Schreiber; work on corporate structure; arrange meetings; telephone call Bradley<br>(3)(D)/(4) | 3.00  | 750.00   |
| 12/5/95 | AMR fax to Adams; conference with Liss<br>(3)(D)/(4)                                  | 1.00  | 250.00   |
| 2/12/96 | AMR telephone call Prussin; telephone call Adams re Gray offer of settlement -- immediate payment of "notes"; fax from Rosenthal re status<br>(3)(D)/(4) | 1.00  | 250.00   |
| 2/13/96 | AMR telephone call Coulson re Gray call; attempt to reach Adams;<br>(3)(D)/(4)        | 0.50  | 125.00   |

Chariot Group/Summit Metals, Inc.                              Page 9
March 29, 2006

|         |                                                                                              | Hours | Amount |
|---------|----------------------------------------------------------------------------------------------|-------|--------|
| 2/14/96 | AMR telephone call Adams re discussions w/Schwartz; fax to Rosenthal re status (3)(D)/(4)     | 0.75  | 187.50 |
| 2/15/96 | AMR telephone call Adams re status (3)(D)/(4)                                                 | 0.25  | 62.50  |
| 2/21/96 | AMR tcs Adams re settlement discussions and Prussin letter; letter from Prussin; fax note back (3)(D)/(4) | 0.50  | 125.00 |
| 2/22/96 | AMR review Adams correspondence; tcs Adams (3)(D)/(4)                                         | 1.00  | 250.00 |
| 3/6/96  | AMR telephone call Prussin re meeting with w/ Gray (3)(D)/(4)                                 | 0.50  | 125.00 |
| 4/11/96 | AMR rsrch re Chariot mangmnt; formulate response (3)(D)/(4)                                   | 1.00  | 250.00 |
| 4/24/96 | AMR faxes to Benton; Adams; Prussin; Rosenthal; draft letter to Schackman; letter to Caron (3)(D)/(4) | 2.50  | 625.00 |
| 4/25/96 | AMR telephone call Adams re violations of TRO (3)(D)/(4)                                      | 0.25  | 62.50  |
| 4/26/96 | AMR conference with SJB; telephone call Rosenthal (3)(D)/(4)                                  | 1.00  | 250.00 |
| 4/29/96 | AMR letter from Benton; telephone call Prussin re settlement discussions (3)(D)/(4)           | 1.00  | 250.00 |
| 5/8/96  | SJF look for Schackman fees case on CD ROM (3)(D)/(4)                                         | 1.00  | 125.00 |
| 5/9/96  | AMR telephone call Adams re settlement discussions (3)(D)/(4)                                 | 0.50  | 125.00 |

Chariot Group/Summit Metals, Inc.                                    Page 10
March 29, 2006

| | | Hours | Amount |
|---|---|---|---|
| 5/17/96 | AMR telephone call Adams re status and settlement options (3)(D)/(4) | 1.25 | 312.50 |
| 5/20/96 | AMR telephone call Prussin; review proposed settlement (3)(D)/(4) | 0.50 | 125.00 |
| 5/21/96 | AMR review proposed settlement; look for standards decision; attempt to reach Prussin; fax to Adams (3)(D)/(4) | 1.00 | 250.00 |
| 5/22/96 | AMR telephone call Prussin re stip and attys fees; attempt to find case (3)(D)/(4) | 1.00 | 250.00 |
| 5/23/96 | AMR telephone call Adams re settlement of stkhldr suit; attempt to find Willson case (3)(D)/(4) | 1.00 | 250.00 |
| 5/28/96 | AMR telephone call Benton; Adams; fax from Prussin (3)(D)/(4) | 0.50 | 125.00 |
| 5/29/96 | AMR review draft stip; review Willson file; conference with Benton; telephone call CKR (3)(D)/(4) | 4.00 | 1,000.00 |
| 5/30/96 | AMR review forms; telephone call Prussin re comments; fax same; telephone call Adams (3)(D)/(4) | 1.00 | 250.00 |
| 5/31/96 | AMR telephone call Prussin re all systems go re 200k level of attys fees for RMC and JHA (3)(D)/(4) | 0.17 | 41.67 |
| 6/4/96 | AMR telephone calls Adams re notification of court re settlement--JS says premature (3)(D)/(4) | 0.25 | 62.50 |

Chariot Group/Summit Metals, Inc.                        Page 11
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 6/20/96 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 6/24/96 | AMR telephone call Prussin--concern re tax finagle - Gray response due next week (3)(D)/(4) | 0.25 | 62.50 |
| 7/10/96 | AMR telephone call Prussin re status of settlement discussions; advise JHA re same (3)(D)/(4) | 0.50 | 125.00 |
| 7/30/96 | AMR telephone call Prussin; telephone call Benton (3)(D)/(4) | 0.50 | 125.00 |
| 9/5/96 | AMR telephone call Brodeur re status (3)(D)/(4) | 0.50 | 125.00 |
| 9/10/96 | AMR telephone call Adams re info re Friedman (3)(D)/(4) | 0.17 | 41.67 |
| 9/24/96 | AMR telephone call Adams re status; review fed suit (3)(D)/(4) | 1.00 | 250.00 |
| 9/25/96 | AMR telephone call Caron re procedural status and condition of cos. (3)(D)/(4) | 0.50 | 125.00 |
| 9/26/96 | AMR telephone call Prussin re non-settlement and next steps; conference with Liss re same (3)(D)/(4) | 1.00 | 250.00 |
| 10/23/96 | AMR review Friedman decision; misc calls (3)(D)/(4) | 3.00 | 750.00 |
| 10/28/96 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 11/1/96 | AMR telephone call Adams re status (3)(D)/(4) | 0.25 | 62.50 |

00305

Chariot Group/Summit Metals, Inc.                    Page 12
March 29, 2006

|         |                                                                                      | Hours | Amount |
|---------|--------------------------------------------------------------------------------------|-------|--------|
| 11/5/96 | AMR meeting with source re violations of TRO; forward to opinion to interested parties (3)(D)/(4) | 1.00 | 250.00 |
| 11/6/96 | AMR telephone call Blaikie re bond; review form (3)(D)/(4) | 0.25 | 62.50 |
| 11/7/96 | AMR telephone call Nealon; telephone call Anderson; telephone call Benton; review financial form (3)(D)/(4) | 1.00 | 250.00 |
| 11/11/96 | AMR telephone call Adams re status; telephone call Engel re possible role (3)(D)/(4) | 0.50 | 125.00 |
| 11/12/96 | AMR telephone call Adams; work on Blaikie form (3)(D)/(4) | 1.00 | 250.00 |
| 11/13/96 | AMR review article re decision; prepare bond form; distribuite article; telephone call Adams (3)(D)/(4) | 2.00 | 500.00 |
| 11/14/96 | AMR forward form to SJB (3)(D)/(4) | 0.25 | 62.50 |
| 11/15/96 | AMR calls to sources; send out opinion; telephone call Engel (3)(D)/(4) | 1.00 | 250.00 |
| 11/18/96 | AMR telephone call JHA; telephone call Benton re bond, etc. (3)(D)/(4) | 0.25 | 62.50 |
| 11/19/96 | AMR telephone call Benton re form (3)(D)/(4) | 0.25 | 62.50 |
| 11/22/96 | AMR conference with Benton re bond; discussion of consididerations for conference/ misc calls re same; telephone call Adams re same (3)(D)/(4) | 1.50 | 375.00 |

Chariot Group/Summit Metals, Inc.                     Page 13
March 29, 2006

| | | Hours | Amount |
|---|---|---|---|
| 11/24/96 | AMR review form of order from JHA (3)(D)/(4) | 1.00 | 250.00 |
| 11/25/96 | AMR telephone call Adams re conf.; work on bond application; telephone calls Benton (3)(D)/(4) | 2.00 | 500.00 |
| 11/26/96 | AMR forward to bond applications; telephone call Blaikie; lcw Adams re status; telephone call Marshall; telephone call Benton; telephone call source (3)(D)/(4) | 3.00 | 750.00 |
| 11/27/96 | AMR calls re bond -- Ben, Blaikie, Tobi, Adams, office, Prussin, etc. (3)(D)/(4) | 4.00 | 1,000.00 |
| 11/29/96 | AMR calls re bond (3)(D)/(4) | 2.00 | 500.00 |
| 12/2/96 | AMR calls re bond; telephone call Blaikie, Prussin, Adams, Benton, Leubert, Whelan (3)(D)/(4) | 4.00 | 1,000.00 |
| 12/3/96 | AMR telephone call Prussin, Adams, Coulson, James, etc. re bond, etc. (3)(D)/(4) | 3.00 | 750.00 |
| 12/4/96 | AMR calls re bond -- Lane, Adams, etc. (3)(D)/(4) | 1.50 | 375.00 |
| 12/5/96 | AMR calls to supporters re status; telephone call Prussin; telephone call Adams; telephone call Ben re application (3)(D)/(4) | 5.00 | 1,250.00 |
| 12/6/96 | AMR review JHA draft; telephone call JHA (2); tcs Prussin; telephone call Lane; telephone call Ben; forward forms (3)(D)/(4) | 3.00 | 750.00 |
| 12/9/96 | AMR telephone call re bond, etc., Prussin, Adams, etc., attempt to reach Coulson (3)(D)/(4) | 1.50 | 375.00 |

Chariot Group/Summit Metals, Inc.                          Page 14
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 12/10/96 | AMR more calls and discussions re bond; Benton, Adams, Prussin, etc. (3)(D)/(4) | 2.00 | 500.00 |
| 12/11/96 | AMR telephone call Prussin re degree of urgency; review correspondence and fax orders; letter to Prussin; review 3212(b); draft letter to James; complete forms (3)(D)/(4) | 4.00 | 1,000.00 |
| 12/12/96 | AMR tcs Prussin, James, Coulson, Adams; complete letters and fax same (3)(D)/(4) | 3.00 | 750.00 |
| 12/13/96 | AMR telephone call Prussin re word for Adams re stepping aside; telephone call James; telephone call Adams – vituperative refusal; review CPLR 321; draft substitution; draft letter to Adams; review mtls from Prussin re contribution; fax back signed page; review retainer ltr (3)(D)/(4) | 6.00 | 1,500.00 |
| 12/16/96 | AMR telephone call Lane re party vs. indemnitor- advise party not necessary; do Stu form; telephone call Adams; telephone call Prussin; fax mtls to Ben (3)(D)/(4) | 2.00 | 500.00 |
| 12/17/96 | AMR telephone call Prussin; fax mtls re substitution and engagement; fax mtls to Adams; telephone call JHA re same (3)(D)/(4) | 2.00 | 500.00 |
| 12/18/96 | AMR calls and correspondence re substitution -- Prussin and Adams (3)(D)/(4) | 2.00 | 500.00 |
| 12/26/96 | AMR telephone call Prussin re status; review letters, etc. (3)(D)/(4) | 0.50 | 125.00 |
| 12/27/96 | AMR transmit substitution stip and file to Prussin | 1.00 | 250.00 |

Chariot Group/Summit Metals, Inc.                                    Page 15
March 29, 2006

|          |                                                                                              | Hours | Amount |
|----------|----------------------------------------------------------------------------------------------|-------|--------|
|          | (3)(D)/(4)                                                                                    |       |        |
| 12/30/96 | AMR telephone call Prussin re delivery of items -- will proceed (3)(D)/(4)                    | 0.25  | 62.50  |
| 1/6/97   | AMR telephone calls Prussin, Adams, James re bonding mtls (3)(D)/(4)                          | 1.00  | 250.00 |
| 1/7/97   | AMR telephone call James re bond; attempt to reach Ben; telephone call Adams (3)(D)/(4)       | 1.00  | 250.00 |
| 1/9/97   | AMR forward bond form to Ben; telephone call Ben; telephone call Prussin re notifying court - discussion of additional ptfs (3)(D)/(4) | 1.00  | 250.00 |
| 1/15/97  | AMR letter to Prussin fwdg bond application (3)(D)/(4)                                        | 0.75  | 187.50 |
| 1/23/97  | AMR review letter from Prussin; telephone call Adams (3)(D)/(4)                               | 1.00  | 250.00 |
| 1/24/97  | AMR telephone call Prussin; forward to mtls re decision and proposed order; telephone call Adams (3)(D)/(4) | 2.00  | 500.00 |
| 1/27/97  | AMR fax from Prussin; fax ltr and mtls to Prussin; review draft rogs and notice to produce (3)(D)/(4) | 1.00  | 250.00 |
| 2/4/97   | AMR investigations re various affiliated companies (3)(D)/(4)                                 | 0.25  | 62.50  |
| 2/7/97   | AMR telephone call Prussin re order (3)(D)/(4)                                                | 0.25  | 62.50  |
| 2/10/97  | AMR telephone call Prussin; review order; (3)(D)/(4)                                          | 0.50  | 125.00 |

Chariot Group/Summit Metals, Inc.                          Page 16
March 29, 2006

|         |                                                                          | Hours | Amount |
|---------|--------------------------------------------------------------------------|-------|--------|
| 2/11/97 | AMR telephone call Prussin re order and coverage of TRO (3)(D)/(4)        | 0.50  | 125.00 |
| 2/17/97 | AMR calls re status (3)(D)/(4)                                            | 0.50  | 125.00 |
| 2/20/97 | AMR telephone call Prussin re answer and document requests (3)(D)/(4)     | 0.50  | 125.00 |
| 3/4/97  | AMR telephone call  re status (3)(D)/(4)                                  | 0.25  | 62.50  |
|         | AMR telephone call  re status (3)(D)/(4)                                  | 0.25  | 62.50  |
| 3/5/97  | AMR calls re status and adjourned schedule (3)(D)/(4)                     | 0.25  | 62.50  |
|         | AMR calls re status and adjourned schedule (3)(D)/(4)                     | 0.25  | 62.50  |
| 3/10/97 | AMR review answer and deposition requests; telephone call Prussin (3)(D)/(4) | 0.75 | 187.50 |
|         | AMR review answer and deposition requests; telephone call Prussin (3)(D)/(4) | 0.75 | 187.50 |
| 3/11/97 | AMR work w/ Alla on stkhldr list; telephone call Benton re status (3)(D)/(4) | 0.75 | 187.50 |
|         | AMR work w/ Alla on stkhldr list; telephone call Benton re status (3)(D)/(4) | 0.75 | 187.50 |
| 3/12/97 | AMR work w/ Alla on stkhldr list; fax to Prussin (3)(D)/(4)               | 0.75  | 187.50 |
|         | AMR work w/ Alla on stkhldr list; fax to Prussin                         | 0.75  | 187.50 |

Chariot Group/Summit Metals, Inc.                    Page 17
March 29, 2006

|         |                                                                                              | Hours | Amount |
|---------|----------------------------------------------------------------------------------------------|-------|--------|
|         | (3)(D)/(4)                                                                                    |       |        |
| 3/13/97 | AMR telephone calls re status of discovery, Prussin and others (3)(D)/(4)                     | 1.00  | 250.00 |
|         | AMR telephone calls re status of discovery, Prussin and others (3)(D)/(4)                     | 1.00  | 250.00 |
| 3/21/97 | AMR telephone call Prussin re status (3)(D)/(4)                                               | 0.50  | 125.00 |
|         | AMR telephone call Prussin re status (3)(D)/(4)                                               | 0.50  | 125.00 |
| 3/25/97 | AMR telephone call Prussin re discovery and confidentiality (3)(D)/(4)                        | 0.25  | 62.50  |
|         | AMR telephone call Prussin re discovery and confidentiality (3)(D)/(4)                        | 0.25  | 62.50  |
| 3/26/97 | AMR find and fax confidentiality agmt to Prussin; fax opinion; telephone call Giglietti re deposition (3)(D)/(4) | 1.00  | 250.00 |
|         | AMR find and fax confidentiality agmt to Prussin; fax opinion; telephone call Giglietti re deposition (3)(D)/(4) | 1.00  | 250.00 |
| 4/1/97  | AMR telephone call Basham; telephone call Prussin re confidentiality; Gray disclosures, etc., (3)(D)/(4)          | 0.75  | 187.50 |
| 4/2/97  | AMR attempt to reach Lauzon (3)(D)/(4)                                                        | 0.50  | 125.00 |
| 4/3/97  | AMR review court files re Rockefeller Ctr suit; review Rock Ctr brief (3)(D)/(4)              | 1.50  | 375.00 |

Chariot Group/Summit Metals, Inc.                          Page 18
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 4/4/97 | AMR review Rock Ctr brief; telephone call Lauzon re proceeding; attempt to reach Rubin (3)(D)/(4) | 1.50 | 375.00 |
| 4/7/97 | AMR letter to Prussin re tortious interference claims (3)(D)/(4) | 1.00 | 250.00 |
| 4/8/97 | AMR fax from Adams; fax Rock Ctr mtls to Adams and Prussin; letter to Prussin; call to same (3)(D)/(4) | 1.50 | 375.00 |
| 4/10/97 | AMR check status of tax filing (3)(D)/(4) | 0.50 | 125.00 |
| 4/22/97 | AMR fax to Prussin re approach to Hahn & Hessen (3)(D)/(4) | 0.50 | 125.00 |
| 4/24/97 | AMR fax letter to Prussin; telephone call Benton (3)(D)/(4) | 0.25 | 62.50 |
| 4/28/97 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 5/5/97 | AMR letter to Cohen; conference with Ben (3)(D)/(4) | 3.50 | 875.00 |
| 5/6/97 | AMR telephone call Ben re dep; telephone call Prussin re same (3)(D)/(4) | 0.50 | 125.00 |
| 5/7/97 | AMR calls re Ben deposition (3)(D)/(4) | 0.50 | 125.00 |
| 5/15/97 | AMR calls re depositions and discovery (3)(D)/(4) | 0.50 | 125.00 |
| 6/19/97 | AMR meeting with Prussin (3)(D)/(4) | 0.50 | 125.00 |
| 6/24/97 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |

00312

Chariot Group/Summit Metals, Inc.                          Page 19
March 29, 2006

|          |                                                          | Hours | Amount |
|----------|----------------------------------------------------------|-------|--------|
| 7/2/97   | AMR telephone call Prussin re status of discovery (3)(D)/(4) | 0.25  | 62.50  |
| 7/14/97  | AMR review class certification decision (3)(D)/(4)       | 0.25  | 62.50  |
| 8/18/97  | AMR telephone call Adams re status (3)(D)/(4)            | 0.25  | 62.50  |
| 9/5/97   | AMR telephone call Prussin re status (3)(D)/(4)          | 0.50  | 125.00 |
|          | AMR telephone call Prussin re status (3)(D)/(4)          | 0.50  | 125.00 |
| 9/11/97  | AMR telephone call Prussin re status (3)(D)/(4)          | 0.25  | 62.50  |
|          | AMR telephone call Prussin re status (3)(D)/(4)          | 0.25  | 62.50  |
| 9/15/97  | AMR telephone call Prussin re rogs (3)(D)/(4)            | 0.17  | 41.67  |
|          | AMR telephone call Prussin re rogs (3)(D)/(4)            | 0.17  | 41.67  |
| 9/25/97  | AMR  calls re status (3)(D)/(4)                          | 0.50  | 125.00 |
|          | AMR  calls re status (3)(D)/(4)                          | 0.50  | 125.00 |
| 9/26/97  | AMR forward to Prussin mtls re tax proceeding (3)(D)/(4) | 0.25  | 62.50  |
|          | AMR forward to Prussin mtls re tax proceeding (3)(D)/(4) | 0.25  | 62.50  |
| 10/1/97  | AMR review cases re receivers (3)(D)/(4)                | 0.50  | 125.00 |

00313

Chariot Group/Summit Metals, Inc.                           Page 20
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 10/29/97 | AMR telephone call Prussin re status of discovery (3)(D)/(4) | 0.25 | 62.50 |
| 11/12/97 | AMR collect mtls re Gray (3)(D)/(4) | 1.00 | 250.00 |
| 11/17/97 | AMR telephone call Prussin re status of discovery (3)(D)/(4) | 0.25 | 62.50 |
| 11/21/97 | AMR telephone call Prussin re receipt of documents -- rec'd after threats (3)(D)/(4) | 0.25 | 62.50 |
| 12/5/97 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 12/11/97 | AMR review research re discovery (3)(D)/(4) | 1.00 | 250.00 |
| 12/17/97 | AMR meeting with Prussin re background; westlaw research (3)(D)/(4) | 1.50 | 375.00 |
| 1/6/98 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 1/16/98 | AMR tcs Prussin; advise re information relevant to stockholder litigation (3)(D)/(4) | 0.75 | 187.50 |
| 1/23/98 | AMR telephone call Prussin re information (3)(D)/(4) | 0.25 | 62.50 |
| 2/2/98 | AMR telephone call Prussin re meaning of ordinary course of business; telephone call Adams re same (3)(D)/(4) | 0.33 | 83.33 |
| 2/5/98 | AMR telephone call Prussin re theories of motion for contempt or receiver; fax case re same (3)(D)/(4) | 1.00 | 250.00 |

00314

Chariot Group/Summit Metals, Inc.                            Page 21
March 29, 2006

|         |     |                                                                              | Hours | Amount |
|---------|-----|------------------------------------------------------------------------------|-------|--------|
| 2/6/98  | AMR | fax Rand case; letter to Prussin re theories of motion (3)(D)/(4)             | 1.00  | 250.00 |
| 2/19/98 | AMR | calls re discovery (3)(D)/(4)                                                 | 0.50  | 125.00 |
| 2/23/98 | AMR | telephone call Prussin re Friedman death and use of Chariot Management as conduit (3)(D)/(4) | 0.33  | 83.33  |
| 3/26/98 | AMR | telephone call Rosenberg re Cozier (3)(D)/(4)                                 | 0.25  | 62.50  |
| 4/2/98  | AMR | discussions with Prussin and others re Kelly deposition; discussion of receiver possibilities (3)(D)/(4) | 1.50  | 375.00 |
| 4/3/98  | AMR | discussions of receiver motion (3)(D)/(4)                                     | 0.50  | 125.00 |
| 4/6/98  | AMR | telephone call Prussin re next steps; find stkhlder mail list; draft letter to stkhldrs (3)(D)/(4) | 2.00  | 500.00 |
| 4/27/98 | AMR | telephone call Prussin re status (3)(D)/(4)                                   | 0.25  | 62.50  |
| 4/28/98 | AMR | telephone call Prussin re Gray motion (3)(D)/(4)                              | 0.25  | 62.50  |
| 4/29/98 | AMR | review mtls re summary judgment motion bz AMR is supposedly bad guy (3)(D)/(4) | 2.50  | 625.00 |
| 4/30/98 | AMR | revise Gray afft; telephone call Prussin re violation of confidentiality order (3)(D)/(4) | 1.00  | 250.00 |
| 5/12/98 | AMR | telephone call Prussin re response to motion; message for Benton (3)(D)/(4)   | 0.50  | 125.00 |

Chariot Group/Summit Metals, Inc.                                    Page 22
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 5/13/98 | AMR telephone call Prussin re sj mtn and recvr mtn (3)(D)/(4) | 0.75 | 187.50 |
| 5/14/98 | AMR telephone call Prussin re outrage du jour - denial of Schackman tro extension (3)(D)/(4) | 0.50 | 125.00 |
| 5/15/98 | AMR calls re contempt hearing (3)(D)/(4) | 1.50 | 375.00 |
| 5/27/98 | AMR telephone call Prussin; fax to Adams (3)(D)/(4) | 0.50 | 125.00 |
| 6/8/98 | AMR telephone call Prussin re status (3)(D)/(4) | 0.25 | 62.50 |
| 6/9/98 | AMR review confidentiality rules (3)(D)/(4) | 1.00 | 250.00 |
| 6/10/98 | AMR review mtls from Missouri; telephone call Smotkin re same (3)(D)/(4) | 1.00 | 250.00 |
| 6/11/98 | AMR telephone call Prussin re status and theories; forward mtls from MO to Prussin (3)(D)/(4) | 1.00 | 250.00 |
| 7/2/98 | AMR telephone call Prussin re decision and sales of Cht. stk; telephone call Adams re assignment of claim (3)(D)/(4) | 1.00 | 250.00 |
| 7/3/98 | AMR draft stkhldr letter (3)(D)/(4) | 0.50 | 125.00 |
| 7/8/98 | AMR revise stkhldr letter (3)(D)/(4) | 0.50 | 125.00 |
| 7/9/98 | AMR telephone call Prussin re motion of list non-disclosure; revise stockholder letter (3)(D)/(4) | 1.00 | 250.00 |

00316

Chariot Group/Summit Metals, Inc.                              Page 23
March 29, 2006

|         |                                                                              | Hours | Amount |
|---------|------------------------------------------------------------------------------|-------|--------|
| 7/12/98 | AMR draft afft in support of motion to unseal<br>(3)(D)/(4)                    | 1.00  | 250.00 |
| 7/13/98 | AMR send out stkhldr letter<br>(3)(D)/(4)                                      | 1.00  | 250.00 |
| 7/14/98 | AMR review stonewall book re motion for opening confidentiality<br>(3)(D)/(4)  | 1.00  | 250.00 |
| 7/17/98 | AMR telephone call Case; forward Friedman opinion<br>(3)(D)/(4)                | 0.50  | 125.00 |
| 7/28/98 | AMR telephone call Pecha re information; telephone call Adams re fee claims<br>(3)(D)/(4) | 0.50 | 125.00 |
| 7/29/98 | AMR work on unsealing afft; work out deal w/ Adams; forward agmt<br>(3)(D)/(4) | 1.25  | 312.50 |
| 8/11/98 | AMR work on intervention motion<br>(3)(D)/(4)                                  | 0.50  | 125.00 |
| 8/12/98 | AMR calls re status; work on intervention motion<br>(3)(D)/(4)                 | 1.00  | 250.00 |
| 8/14/98 | AMR work on presentation of motion<br>(3)(D)/(4)                               | 1.00  | 250.00 |
| 8/20/98 | AMR work on afft<br>(3)(D)/(4)                                                 | 0.50  | 125.00 |
| 8/21/98 | AMR calls re status of tax investigation<br>(3)(D)/(4)                         | 0.25  | 62.50  |
| 9/9/98  | AMR telephone call Smotkin re status<br>(3)(D)/(4)                             | 0.50  | 125.00 |
| 9/16/98 | AMR review filings<br>(3)(D)/(4)                                               | 0.50  | 125.00 |

00317

Chariot Group/Summit Metals, Inc.                                    Page 24
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 11/19/98 | AMR work on motion for disclosure; fax to Prussin (3)(D)/(4) | 1.50 | 375.00 |
| 11/20/98 | AMR review Prussin response; work on motion (3)(D)/(4) | 1.50 | 375.00 |
| 12/1/98 | AMR work on disclosure motion; (3)(D)/(4) | 3.00 | 750.00 |
| 12/3/98 | AMR telephone call Prussin re Chin decision and implications; fax Quinn correspondence (3)(D)/(4) | 1.50 | 375.00 |
| 12/7/98 | AMR review materials on intervention (3)(D)/(4) | 1.00 | 250.00 |
| 12/10/98 | AMR work on intervention motion (3)(D)/(4) | 3.00 | 750.00 |
| 12/11/98 | AMR draft brief; revise afft to terminate confidentiality (3)(D)/(4) | 4.00 | 1,000.00 |
| 12/14/98 | AMR review file; conference with Alla re filing of motion for opening file (3)(D)/(4) | 1.50 | 375.00 |
| 12/16/98 | AMR telephone call Prussin re status and evolving big picture (3)(D)/(4) | 0.25 | 62.50 |

For professional services rendered                  490.00  $118,614.59

Additional charges

|  |  | Qty/Price |  |
|---|---|---|---|
| | (3)(D)/(4) | | |
| 8/9/95 | -Federal Express | 1 @15.00 | 15.00 |
| 8/10/95 | -Need It Now | 1 @7.00 | 7.00 |

00318

Chariot Group/Summit Metals, Inc.                          Page 25
March 29, 2006

| | | Qty/Price | Amount |
|---|---|---|---|
| 8/24/95 | -Special Service | 1 @1000.00 | 1,000.00 |
| 9/1/95 | - | 1 @346.53 | 346.53 |
| 9/20/95 | -Federal Express | 1 @25.50 | 25.50 |
| 11/10/95 | -J. H. Adams, Esq. | 1 @5000.00 | 5,000.00 |
| 4/18/96 | -CSC Networks. | 1 @206.41 | 206.41 |
| 8/11/97 | -Alexander Poole | 1 @75.00 | 75.00 |
| | - | 1 @680.50 | 680.50 |
| 8/12/97 | -Stkhldr Letters(3*250=750; postage:250*0.33=82.5; 750*0.2=150+82.5=232.5 | 1 @232.50 | 232.50 |
| 8/25/97 | -Special Service | 1 @205.00 | 205.00 |
| 3/25/98 | -Blaikie for pi bond. | 1 @109.00 | 109.00 |
| 5/6/98 | -Special Service | 1 @345.00 | 345.00 |
| 7/14/98 | -J. H. Adams, Esq. | 1 @5000.00 | 5,000.00 |
| 7/27/98 | -copies of MO materials to Prussin and Cenawood on | 1 @14.00 | 14.00 |
| 7/28/98 | -UPS to Case | 1 @19.75 | 19.75 |
| 7/29/98 | -J. H. Adams, Esq. | 1 @10000.00 | 10,000.00 |
| 8/11/98 | -NJ cases at Bar Assoc | 1 @27.98 | 27.98 |
| 8/13/98 | -UPS to Adams on 7/29 | 1 @10.00 | 10.00 |
| 12/1/98 | -Order to Show Cause (155*10=1550) | 1550 @0.20 | 310.00 |
| 12/7/98 | -CD-ROM re Confidentiality (45*1=45) | 45 @0.20 | 9.00 |

Total costs                                          $23,638.17

Total time and expense charges                       $142,252.76

00319

Chariot Group/Summit Metals, Inc.                               Page 26
March 29, 2006

Federal I.D. Number
13-3681922

Invoice submitted to:

Chariot Group/Summit Metals, Inc.
c/o Monzack and Monaco LLP
1201 N. Orange Street, Suite 400
Wilmington, DE 19801


March 29, 2006
#10654
In reference to: For time and disbursements 1/1/99 - 12/31/00

| | | Hours | Amount |
|---|---|---|---|
| | (1)(A)(i) | | |
| 1/5/99 | AMR  review new motion to vacate judgment (1)(A)(i) | 0.50 | 125.00 |
| 1/7/99 | AMR review mtls re creditors' committee; calls to Princi, Loglisci, Rubin, Benton etc. (1)(A)(i) | 3.00 | 750.00 |
| 1/8/99 | AMR calls re creditors' meeting; telephone call Loglisci; Babbitt; Brenman; Fax McLaughlin letter etc. (1)(A)(i) | 4.00 | 1,000.00 |
| 1/9/99 | AMR draft opposition to motion to vacate judgment; review precedents (1)(A)(i) | 4.50 | 1,125.00 |
| 1/11/99 | AS  for court, affofserv, assemble 5 sets of documents, mail to Quinn - 1/11/99 (1)(A)(i) | 4.50 | 337.50 |
| 1/12/99 | AMR note from United re adjournment (1)(A)(i) | 0.08 | 20.83 |

00321

Chariot Group/Summit Metals, Inc.                                    Page 2
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 1/13/99 | AS | Assemble court files.<br>(1)(A)(i) | 2.50 | 187.50 |
| 1/18/99 | AS | CD-ROM - "summary judgment" - 1/20/99<br>(1)(A)(i) | 0.50 | 37.50 |
|  | AMR | Calls re creditors' committee.<br>(1)(A)(i) | 0.50 | 125.00 |
|  | AMR | review Barry papers on motion to<br>vacate;  begin Hartford draft<br>(1)(A)(i) | 1.50 | 375.00 |
| 1/19/99 | AMR | draft papers for suit against Hartford<br>(1)(A)(i) | 4.00 | 1,000.00 |
| 1/20/99 | AMR | telephone call Kolilias, Brenman and<br>Cala;<br>fws mtls to Parker<br>(1)(A)(i) | 1.00 | 250.00 |
|  | AMR | work on suit re Hartford; calls re<br>service;  rsrch re 3212<br>(1)(A)(i) | 4.00 | 1,000.00 |
| 1/21/99 | AMR | prepare form for Cala; telephone call<br>Loglisci; telephone call Cenawood<br>(1)(A)(i) | 1.83 | 458.33 |
|  | AMR | draft memo of law memo of law Hartford<br>suit<br>(1)(A)(i) . | 4.50 | 1,125.00 |
| 1/22/99 | AS | of Exhibits from Quinn's Court papers -<br>1/22/99<br>(1)(A)(i) | 1.00 | 75.00 |
|  | AMR | forward mtls to Albany re Hartford;<br>review bankruptcy cases<br>(1)(A)(i) | 0.25 | 62.50 |
| 1/23/99 | AMR | Letter to Cala fwdg forms.<br>(1)(A)(i) | 0.50 | 125.00 |
| 1/25/99 | AMR | put in slip for motion return;<br>(1)(A)(i) | 0.08 | 20.83 |

00322

Chariot Group/Summit Metals, Inc.                        Page 3
March 29, 2006

|         |     |                                                      | Hours | Amount |
|---------|-----|------------------------------------------------------|-------|--------|
| 1/26/99 | AS  | CD-ROM re Gray v Richardson & Hartford - 1/26/99 (1)(A)(i) | 5.00  | 375.00 |
| 2/1/99  | AMR | Telephone call Brenman re status. (1)(A)(i)          | 0.33  | 83.33  |
|         | AS  | Bill of Costs, AffServ, prep corresp - 2/1/99 (1)(A)(i) | 3.00  | 225.00 |
| 2/3/99  | AMR | review Tompkins decision (1)(A)(i)                   | 0.25  | 62.50  |
| 2/4/99  | AS  | Notice of Entry - 2/4/99 (1)(A)(i)                   | 2.50  | 187.50 |
| 2/8/99  | AS  | prep corr and send FAXes - 2/8/99 (1)(A)(i)          | 1.50  | 112.50 |
| 2/9/99  | AS  | court file - 2/9/99 (1)(A)(i)                        | 3.50  | 262.50 |
| 2/17/99 | AMR | Attend motion for sj; adj to 3/24. (1)(A)(i)         | 1.00  | 250.00 |
|         | AMR | Telephone call Breman; telephone call Giglietti and Cala. (1)(A)(i) | 0.75  | 187.50 |
|         | AMR | Telephone call Prussin; telephone call McLaughlin; telephone call Cenawood. (1)(A)(i) | 1.00  | 250.00 |
| 2/18/99 | AS  | trip to Cala in Astoria - 2/18/99 (1)(A)(i)          | 3.00  | 132.00 |
| 2/20/99 | AMR | Calls re bankruptcy; Brenman, Benton, etc. (1)(A)(i) | 1.00  | 250.00 |
| 2/22/99 | AMR | Tcs Babbitt; Cala; Giglietti; Brenman. (1)(A)(i)     | 1.00  | 250.00 |

00323

Chariot Group/Summit Metals, Inc.                                    Page 4
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 2/24/99 | AMR | Telephone call Brenman; fax re same.<br>(1)(A)(i) | 0.50 | 125.00 |
| 2/25/99 | AMR | Meeting with creditors' committee;<br>meeting with Brenman.<br>(1)(A)(i) | 4.00 | 1,000.00 |
| 3/1/99 | AMR | Review Hartford brief;<br>(1)(A)(i) | 1.00 | 250.00 |
| 3/2/99 | AMR | Review Hartford papers;<br>(1)(A)(i) | 0.25 | 62.50 |
| 3/8/99 | AMR | telephone call Stim;  do  Hartford<br>papers.<br>(1)(A)(i) | 3.42 | 854.17 |
| 3/10/99 | AMR | Conference with Alla re submission of<br>papers; review Hartford submission;<br>telephone call Stim<br>(1)(A)(i) | 0.83 | 208.33 |
| 3/11/99 | AS | CD-ROM re transfer of business - 3/11/99<br>(1)(A)(i) | 6.50 | 286.00 |
|  | AMR | Draft OSC re amendment of answer;<br>review provision of transcript; review<br>cases on fraudulent transfer;<br>(1)(A)(i) | 3.25 | 812.50 |
|  | AS | CD-ROM re transfer of business - 3/11/99<br>(1)(A)(i) | 6.50 | 487.50 |
| 3/12/99 | AMR | research on fraudulent transfer; work<br>on amendment of answer;<br>(1)(A)(i) | 3.00 | 750.00 |
| 3/17/99 | AMR | work on motion in indemnification case;<br>(1)(A)(i) | 1.00 | 250.00 |
| 3/19/99 | AS | Court papers (made copies,  made<br>exhibits, assemble 4 sets of documents)<br>- 3/19/99<br>(1)(A)(i) | 4.00 | 300.00 |

Chariot Group/Summit Metals, Inc.                          Page 5
March 29, 2006

|         |     |                                                                                           | Hours | Amount |
|---------|-----|-------------------------------------------------------------------------------------------|-------|--------|
| 3/19/99 | AMR | Do afft. for motion to amend; conference with Alla re same; (1)(A)(i)                     | 3.50  | 875.00 |
|         | AS  | trip to Court to file Order to Show Cause - 3/19/99 (1)(A)(i)                             | 3.50  | 262.50 |
| 3/22/99 | AS  | trip to Court to pick up Order to Show Cause (1)(A)(i)                                    | 3.50  | 262.50 |
|         | AMR | Letter to Stim. (1)(A)(i)                                                                  | 0.83  | 208.33 |
|         | AMR | Telephone call call Brenman re committee meeting and thursday hearing; K&F conflict; telephone conf. for committee meeting . (1)(A)(i) | 1.50  | 375.00 |
| 3/23/99 | AMR | Telephone call Brenman re scheduling; review By-Laws. (1)(A)(i)                          | 0.75  | 187.50 |
|         | AS  | packages for Quinn and Chariot Manaqment; Aff of Service, backs, prep papers for United - 3/23/99 (1)(A)(i) | 2.50  | 187.50 |
|         | AS  | CD-ROM - CBS vs. Ziff-Davis - 3/23/99 (1)(A)(i)                                           | 1.00  | 75.00  |
|         | AMR | telephone call Stim; research bad faith and punitive damages. (1)(A)(i)                   | 1.50  | 375.00 |
|         | AMR | Attend to service of motion to amend. (1)(A)(i)                                           | 0.25  | 62.50  |
| 3/24/99 | AMR | Attend court; obtain adjourment; letter to Quinn. (1)(A)(i)                               | 2.00  | 500.00 |
| 3/26/99 | AS  | for court papers - 3/26/99 (1)(A)(i)                                                       | 4.00  | 300.00 |

Chariot Group/Summit Metals, Inc.                    Page 6
March 29, 2006

| | | Hours | Amount |
|---|---|---|---|
| 4/5/99 | AMR Telephone call Giglietti.<br>(1)(A)(i) | 0.25 | 62.50 |
| 4/6/99 | AMR Telephone call Brenman re<br>confidentiality, accountant, etc;<br>telephone call Babbitt; telephone call<br>Newkirk.<br>(1)(A)(i) | 2.50 | 625.00 |
| | AS  CD-ROM - 4/6/99<br>(1)(A)(i) | 1.50 | 112.50 |
| 4/14/99 | AMR attend court re motion to add<br>defendant;<br>(1)(A)(i) | 2.00 | 500.00 |
| 5/4/99 | AS  of book and supp materials - 5/4/99<br>(1)(A)(i) | 3.00 | 225.00 |
| 5/5/99 | AS  CD-ROM - 5/5/99<br>(1)(A)(i) | 2.50 | 187.50 |
| 5/7/99 | AMR Telephone call Cala, Giglietti and<br>Babbitt<br>(1)(A)(i) | 1.00 | 250.00 |
| 5/17/99 | AMR review Hartford papers<br>(1)(A)(i) | 0.50 | 125.00 |
| 5/18/99 | AMR work on response to Quinn in fees case;<br>prepare for Hartford; telephone call<br>Stim<br>(1)(A)(i) | 2.50 | 625.00 |
| 5/19/99 | AMR complete reply memo; attend calendar<br>call--adjourn to 6/30; attend Hartford<br>re mtn; adjrn to 7/25?<br>(1)(A)(i) | 5.50 | 1,375.00 |
| 5/20/99 | AMR Telephone call Ambro; attempt to reach<br>Pernick.<br>(1)(A)(i) | 0.50 | 125.00 |
| 5/21/99 | AMR Draft suit against CMI<br>(1)(A)(i) | 2.00 | 500.00 |

Chariot Group/Summit Metals, Inc.                                    Page 7
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Telephone call Saul Ewing.<br>(1)(A)(i) | 0.25 | 62.50 |
| 5/24/99 | AS | for filing a new case - 5/24/99<br>(1)(A)(i) | 2.50 | 187.50 |
|  | AMR | finalize CMI complaint<br>(1)(A)(i) | 0.50 | 125.00 |
| 5/26/99 | AS | prep letter for Demovsky - 5/26/99<br>(1)(A)(i) | 1.00 | 75.00 |
| 6/2/99 | AMR | Telephone call with Brenman; conf call<br>with creditors' committee.<br>(1)(A)(i) | 1.50 | 375.00 |
| 6/7/99 | AS | AMR Letter to Prussin and Brenman  (Fax<br>and regular mail)- to Committee - 6/7/99<br>(1)(A)(i) | 2.00 | 120.00 |
| 6/8/99 | AMR | Telephone call Stim re scheduling and<br>settlement<br>(1)(A)(i) | 0.25 | 62.50 |
| 6/17/99 | AS | billing for  Chariot (Gray v.<br>Richardson) -6/17/99<br>(1)(A)(i) | 6.00 | No Charge |
| 6/25/99 | AMR | telephone call Stim re settelement.<br>(1)(A)(i) | 0.25 | 62.50 |
| 7/12/99 | AS | AMR Letter for mailing to Cala,<br>Babbitt, Gigliotti<br>(1)(A)(i) | 0.75 | 56.25 |
| 7/22/99 | AMR | Telephone calls re committee<br>representation; telephone call Brenman<br>re Carucci and Coulson involvement;<br>(1)(A)(i) | 1.50 | 375.00 |
| 7/30/99 | AMR | Telephone call Giglietti and Babbitt.<br>(1)(A)(i) | 0.50 | 125.00 |

00327

Chariot Group/Summit Metals, Inc.                     Page 8
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 8/5/99 | AMR Letter from Prussin re retention ; telephone call Carucci re plan and status. (1)(A)(i) | 1.25 | 312.50 |
| 8/12/99 | AMR Calls re deposition; enter default w/ court reporter; review Quinn motion re same (1)(A)(i) | 0.50 | 125.00 |
| 8/16/99 | CKR Review of Appellate brief. (1)(A)(i) | 0.50 | 75.00 |
| 8/18/99 | AMR Telephone calls Babbitt, Carucci, Coulson, Prussin, Giglietti, Brenman. (1)(A)(i) | 2.50 | 625.00 |
| 8/30/99 | AMR  Forward Brenman ltr to committee members; telephone call Giglietti; telephone call Linda at Carr. (1)(A)(i) | 5.00 | 1,250.00 |
| 8/31/99 | AMR Telephone call Carucci re letter to Brenman; calls to bankruptcy court re court order; fax for same; review opposition to Prussin. (1)(A)(i) | 2.00 | 500.00 |
| 9/7/99 | AS  prep corr for Quinn re AMR Letter to Tompkins (1)(A)(i) | 1.00 | 75.00 |
| 9/20/99 | CKR Reviewed Chariot Mgmt's verified answer to Hartford's complaint (1)(A)(i) | 0.75 | 112.50 |
| 9/27/99 | AMR Letters from Brenman re meeting of committee; (1)(A)(i) | 0.25 | 62.50 |
| 9/30/99 | AMR Telephone call Carucci and Babbitt re scheduling; attempt to reach Coulson. (1)(A)(i) | 0.25 | 62.50 |
| 10/1/99 | AMR Telephone call Carucci re scheduling; (1)(A)(i) | 0.17 | 41.67 |

Chariot Group/Summit Metals, Inc.                          Page 9
March 29, 2006

|          |     |                                                                                       | Hours | Amount |
|----------|-----|---------------------------------------------------------------------------------------|-------|--------|
| 10/4/99  | AMR | telephone call Quinn re deposition dates; he will call back with dates (1)(A)(i)      | 0.25  | 62.50  |
| 10/7/99  | AMR | Attend creditor com. meeting with Carucci, Coulson, Prussin, Brenman, Cala and Babbitt by phone; (1)(A)(i) | 1.00  | 250.00 |
| 10/14/99 | CKR | Research CPLR 3124 (1)(A)(i)                                                           | 1.50  | 225.00 |
|          | CKR | Research CPLR 2214 (1)(A)(i)                                                           | 0.30  | 45.00  |
|          | CKR | MOL: Compel compliance. (1)(A)(i)                                                      | 1.00  | 150.00 |
|          | AMR | telephone call Quinn re deposition dates; conference with CKR re motion to compel (1)(A)(i) | 1.00  | 250.00 |
| 10/15/99 | CKR | MOL: Compel compliance. (1)(A)(i)                                                      | 0.75  | 112.50 |
|          | AMR | prepare and serve motion to compel re CMI suit (1)(A)(i)                               | 2.00  | 500.00 |
|          | AS  | 5 sets of Court papers(Ehxibits, backs, RJI form) (1)(A)(i)                            | 5.00  | 375.00 |
| 10/20/99 | AMR | revise CMI mtn and send out (1)(A)(i)                                                  | 0.50  | 125.00 |
|          | AS  | for Quinn (1)(A)(i)                                                                    | 1.00  | 75.00  |
| 10/27/99 | AMR | draft good faith afft; conference with AS re same; telephone call Quinn (1)(A)(i)      | 1.50  | 375.00 |
|          | AS  | a new set of Court papers                                                             | 2.50  | 187.50 |

Chariot Group/Summit Metals, Inc.                                  Page 10
March 29, 2006

|            |     |                                                                                                                         | Hours | Amount |
|------------|-----|-------------------------------------------------------------------------------------------------------------------------|-------|--------|
|            |     | (1)(A)(i)                                                                                                               |       |        |
|            | AS  | trip to Court to file papers (Room116)                                                                                  | 3.50  | 262.50 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 10/28/99   | AMR | telephone call Quinn re scheduling                                                                                      | 0.08  | 20.83  |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 11/17/99   | CKR | Telephone conversation with irate Chariot stockholder to discuss status of case and chances for success.               | 0.50  | 75.00  |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 11/19/99   | AMR | Telephone call Prussin, Carucci, Coulson, Brenman Secy, etc re committee meeting.                                       | 1.50  | 375.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
|            | AMR | Telephone call Prussin, Coulson, Carucci re meeting etc.;                                                               | 1.00  | 250.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 11/21/99   | AS  | 2 trips to Court re: Order to Show Cause                                                                                | 6.00  | 450.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 11/23/99   | CKR | Telephone conversations with AMR concerning motion to dismiss and preclude; call to K. Gross to inquire about changes; research local rules of Del Bcy court. | 3.00  | 450.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 12/6/99    | AMR | telephone call Brenman re schedule and stategy; telephone call Prussin re same; calls to Cala and Giglietti re corrected meeting notice; review hearing notice | 3.00  | 750.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |
| 12/8/99    | CKR | Court appearance to adjourn with consent to January 5, 2000; motion to compel docs in AMR v. Chariot Mgmt; travel to and from court; check Delaware website for updates on docket. | 3.00  | 450.00 |
|            |     | (1)(A)(i)                                                                                                               |       |        |

00330

Chariot Group/Summit Metals, Inc.                          Page 11
March 29, 2006

|          |                                                                                                             | Hours | Amount |
|----------|-------------------------------------------------------------------------------------------------------------|-------|--------|
| 12/8/99  | CKR  Tvl to and from Court. (1)(A)(i)                                                                        | 1.00  | 75.00  |
| 12/22/99 | AMR review Quinn motion and previous response. (1)(A)(i)                                                    | 0.50  | 125.00 |
| 12/23/99 | CKR Revise affidavit in response to motion to enlarge on Chariot indemnification; compile exhibits; prepare and serve by mail on B. Quinn; draft affidavit of service and notarize (1)(A)(i) | 3.70 | 555.00 |
|          | AMR draft and send out opposition to motion to enlarge time to appeal (1)(A)(i)                             | 2.00  | 500.00 |
| 1/5/00   | AMR attend court re mtn to compel deps; adjourned to 1/26 (1)(A)(i)                                          | 2.00  | 500.00 |
| 1/11/00  | AMR telephone call Stim re status of Hartford suit (1)(A)(i)                                                 | 0.25  | 62.50  |
| 1/26/00  | AMR attend ct. re CMI mtn to compel; research re Mohawk Maintenance -- re good will (1)(A)(i)                | 2.50  | 625.00 |
| 2/4/00   | AMR review court reorg. notice; review Weissberg rules (1)(A)(i)                                             | 0.50  | 125.00 |
| 2/9/00   | AMR Com meeting by phone w/ Carucci, Prussin, Brenman, Cala. (1)(A)(i)                                       | 1.50  | 375.00 |
| 2/17/00  | AMR Calls to Prussin re Brenman deal re timing, discussions w/ Baldwin; review letter from same. telephone call Giglietti and Cala re Brenman screwup (1)(A)(i) | 3.50 | 875.00 |
| 2/21/00  | AMR prepare proofs of claim                                                                                  | 2.00  | 500.00 |

00331

Chariot Group/Summit Metals, Inc.                              Page 12
March 29, 2006

|         |     |                                                                                          | Hours | Amount |
|---------|-----|------------------------------------------------------------------------------------------|-------|--------|
|         |     | (1)(A)(i)                                                                                |       |        |
| 2/22/00 | AMR | Calls to Fox Rothschild re former rep.                                                   | 0.25  | 62.50  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 2/28/00 | AMR | telephone call Weissberg clerk re status of motion                                       | 0.25  | 62.50  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 2/29/00 | AMR | Tcs Carucci, Prussin, phone tag w/ Carey.                                                 |       |        |
|         |     | (1)(A)(i)                                                                                |       |        |
| 3/1/00  | AMR | Telephone call KC re meeting;                                                             | 0.25  | 62.50  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 3/3/00  | AMR | Meeting with Prussin, Carucci, Coulson, O'Leary and Carey.                                | 1.50  | 375.00 |
|         |     | (1)(A)(i)                                                                                |       |        |
| 3/6/00  | AMR | Telephone call Prussin re Carey declination; telephone call Gordon re nominations.       | 0.50  | 125.00 |
|         |     | (1)(A)(i)                                                                                |       |        |
| 3/14/00 | AMR | check status of CMI on web, etc. ; review pleadings                                      | 1.00  | 250.00 |
|         |     | (1)(A)(i)                                                                                |       |        |
|         | AMR | Telephone call Gordon re non-interest of Buchanan --                                     | 0.17  | 41.67  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 3/21/00 | AMR | Telephone call Stim (Hartford) re motion.                                                | 0.17  | 41.67  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 4/25/00 | AMR | telephone call Weissberg office re status of motion -- offer of new evidence             | 0.25  | 62.50  |
|         |     | (1)(A)(i)                                                                                |       |        |
| 5/5/00  | AMR | review Crane pre-opinion; rsrch re same; adopt new theory re liability; check registration of Summit. | 2.75  | 687.50 |
|         |     | (1)(A)(i)                                                                                |       |        |

Chariot Group/Summit Metals, Inc.                          Page 13
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 5/8/00 | AMR rsrch on inducing breach of contract; review committee lawsuit; remove pleadings<br>(1)(A)(i) | 1.75 | 437.50 |
| 5/9/00 | AMR review cases and Crane order; work on theories.<br>(1)(A)(i) | 1.00 | 250.00 |
| 5/10/00 | AMR work on response to discovery motion<br>(1)(A)(i) | 0.50 | 125.00 |
| 5/12/00 | AMR review Crane order; work on response; telephone call Crane clerk re scheduling.<br>(1)(A)(i) | 1.00 | 250.00 |
| 5/16/00 | AMR work on response to claim of stay.<br>(1)(A)(i) | 0.50 | 125.00 |
| 5/17/00 | AMR conference with CKR re theory re merger<br>(1)(A)(i) | 0.25 | 62.50 |
| 5/19/00 | AMR work on presentation to Crane<br>(1)(A)(i) | 2.00 | 500.00 |
|  | CKR rsrch de facto mergers and successor liability<br>(1)(A)(i) | 3.50 | 525.00 |
|  | CKR deliver papers to Judge Crane<br>(1)(A)(i) | 1.50 | 112.50 |
| 5/20/00 | AMR review evidence and transcripts<br>(1)(A)(i) | 2.00 | 500.00 |
| 5/21/00 | AMR work on presentation to Crane<br>(1)(A)(i) | 4.00 | 1,000.00 |
| 5/22/00 | AMR draft afft; review evidence and cases<br>(1)(A)(i) | 5.00 | 1,250.00 |
| 5/23/00 | AMR work on presentation to Crane.<br>(1)(A)(i) | 5.00 | 1,250.00 |

00333

Chariot Group/Summit Metals, Inc.                          Page 14
March 29, 2006

|          |                                                                              | Hours | Amount   |
|----------|------------------------------------------------------------------------------|-------|----------|
| 5/24/00  | AMR work on presentation to Crane<br>(1)(A)(i)                               | 4.00  | 1,000.00 |
| 5/25/00  | AMR complete afft; collect exhibits;<br>arrange for copying; work on brief<br>(1)(A)(i) | 6.00  | 1,500.00 |
| 5/26/00  | AMR complete brief; letter to Crane; review<br>submission by Quinn.<br>(1)(A)(i) | 4.50  | 1,125.00 |
| 6/9/00   | AMR telephone call Prussin re change of<br>counsel<br>(1)(A)(i)             | 0.08  | 20.83    |
| 6/10/00  | AMR Draft letter to Giglietti;<br>(1)(A)(i)                                  | 1.00  | 250.00   |
| 6/13/00  | AMR Letter to Giglietti; revise and send<br>out;<br>(1)(A)(i)               | 0.50  | 125.00   |
| 6/22/00  | AMR review indemnification materials;<br>arrange for copying.<br>(1)(A)(i)  | 0.50  | 125.00   |
|          | AMR Telephone call Grabino re status;<br>(1)(A)(i)                          | 0.25  | 62.50    |
| 7/7/00   | AMR telephone call Prussin re signing<br>substitution; execute same<br>(1)(A)(i) | 0.08  | 20.83    |
| 7/17/00  | AMR telephone call Brenman re no hard<br>feelings<br>(1)(A)(i)              | 0.08  | 20.83    |
| 8/23/00  | AMR letter to Crane; revise memorandum<br>(1)(A)(i)                         | 1.00  | 250.00   |
| 8/25/00  | AMR revise letter to Crane; have hand<br>delivered; fax to Quinn.<br>(1)(A)(i) | 0.50  | 125.00   |

00334

Chariot Group/Summit Metals, Inc.                                    Page 15
March 29, 2006

|          |                                                                                                          | Hours  | Amount      |
|----------|----------------------------------------------------------------------------------------------------------|--------|-------------|
| 9/14/00  | AMR telephone call Prussin re Gray/Brenman meeting with; telephone call Cala; letter to Committee; telephone call Brenman; (1)(A)(i) | 1.75   | 437.50      |
| 9/19/00  | AMR attempt to reach Prussin; telephone call Baldwin; telephone call Brenman re Carucci mtgs. (1)(A)(i)   | 0.25   | 62.50       |
| 9/22/00  | AMR arrange for execution of discovery responses (1)(A)(i)                                                | 0.25   | 62.50       |
| 10/12/00 | AMR email and telephone call Keenan re meeting with scheduling (1)(A)(i)                                  | 0.25   | 62.50       |
| 10/20/00 | AMR conf call w/ Committee re implications, etc. (1)(A)(i)                                                | 0.50   | 125.00      |
| 12/6/00  | AMR telephone call Giglietti; telephone call Carucci; telephone call Prussin; telephone call Brenman. (1)(A)(i) | 2.00   | 500.00      |
|          | SUBTOTAL :[                                                                                               | 294.50 | 53,631.73]  |
|          | (1)(A)(i)/(3)(D)/(4)                                                                                      |        |             |
| 1/5/99   | AMR review bankruptcy papers; telephone call Cenawood, Benton, Stim, Prussin, ect; (1)(A)(i)/(3)(D)/(4)   | 4.00   | 1,000.00    |
| 1/6/99   | AMR review bankruptcy; calls to other creditors; telephone call McLaughlin; telephone call Prussin, ect (1)(A)(i)/(3)(D)/(4) | 5.00   | 1,250.00    |
| 1/7/99   | AMR revise disclosure affidavit (1)(A)(i)/(3)(D)/(4)                                                      | 0.50   | 125.00      |
| 1/10/99  | AMR telephone call Fishman re bankruptcy alternatives                                                     | 0.25   | 62.50       |

00335

Chariot Group/Summit Metals, Inc.                                    Page 16
March 29, 2006

|         |                                                                                   | Hours | Amount |
|---------|-----------------------------------------------------------------------------------|-------|--------|
|         | (1)(A)(i)/(3)(D)/(4)                                                               |       |        |
| 1/11/99 | AMR Trvl to  1st mtg of creditors.<br>(1)(A)(i)/(3)(D)/(4)                         | 3.00  | 375.00 |
|         | AMR Attend 1st mtg of creditors.<br>(1)(A)(i)/(3)(D)/(4)                           | 2.00  | 500.00 |
| 1/12/99 | AMR review bankruptcy statute and annotations re relief from stay; telephone call Raible re status of bankruptcy<br>(1)(A)(i)/(3)(D)/(4) | 2.17  | 541.67 |
| 1/13/99 | AMR misc calls-- Benton; Prussin re actions in bankruptcy-- dismissal, lift stay, etc.; conference with JJM re strategy vs. IRS, etc.; review bankruptcy rules; telephone call Seidel; attempt to reach Logisci.<br>(1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00 |
| 1/14/99 | AMR Misc calls: Silverschotz; Raible; review bankruptcy statute.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
| 1/15/99 | AMR review Cenawood letter<br>(1)(A)(i)/(3)(D)/(4)                                 | 0.50  | 125.00 |
| 1/20/99 | AS of documents, prep corresp - 1/20/99<br>(1)(A)(i)/(3)(D)/(4)                    | 0.75  | 56.25  |
| 1/22/99 | AS  trip to 551 Fifth Ave to deliver package for Mr. Parker - 1/22/99<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 75.00  |
|         | AS  of Sandusky Plastic Documents - 1/22/99<br>(1)(A)(i)/(3)(D)/(4)                | 1.00  | 75.00  |
|         | AMR telephone call Cenawood re confidentiality agmt; calls re bankruptcy representation;<br>(1)(A)(i)/(3)(D)/(4) | 2.58  | 645.83 |
| 1/23/99 | AMR Fax to Cenawood re cofidential material.                                       | 0.50  | 125.00 |

Chariot Group/Summit Metals, Inc.                          Page 17
March 29, 2006

|          |     |                                                                                                                                          | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                      |       |          |
| 1/29/99  | AMR | Conference with Alla re bankruptcy decisions; review same.<br>(1)(A)(i)/(3)(D)/(4)                                                        | 1.00  | 250.00   |
| 2/1/99   | AS  | CD-ROM - 11#9011, 362 - 2/3/99<br>(1)(A)(i)/(3)(D)/(4)                                                                                    | 4.50  | 337.50   |
| 2/2/99   | AS  | Library of Association of Bar - 2/4/99<br>(1)(A)(i)/(3)(D)/(4)                                                                            | 5.00  | 375.00   |
|          | AMR | Telephone call Prussin re status and motion to dismiss; telephone call Cenawood re status and motions; letter from Cala; review bankruptcy notice; review cases on dismissal for bad faith.<br>(1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |
| 2/3/99   | AS  | CD-ROM of citations N.Y.S.2d - 2/5/99<br>(1)(A)(i)/(3)(D)/(4)                                                                             | 4.50  | 337.50   |
|          | AMR | review cases on dismissal and trustees; conference with Alla re same;<br>(1)(A)(i)/(3)(D)/(4)                                             | 2.58  | 645.83   |
| 2/4/99   | AMR | tcs Prussin, Parker, Brenman, Smotkin; letter to McLaughlin, forward Cala form; review lifting of stay cases<br>(1)(A)(i)/(3)(D)/(4)      | 4.00  | 1,000.00 |
| 2/8/99   | AMR | telephone calls re status of contempt order;<br>(1)(A)(i)/(3)(D)/(4)                                                                     | 0.50  | 125.00   |
|          | AMR | Telephone call Galioto; letter to same.<br>(1)(A)(i)/(3)(D)/(4)                                                                           | 2.00  | 500.00   |
| 2/16/99  | AS  | working with citations - 2/19/99<br>(1)(A)(i)/(3)(D)/(4)                                                                                  | 5.00  | 375.00   |
|          | AMR | Telephone call Prussin; lw Mclaughlin; lw Lansco; fax from Prussin re motion; review same; review papers re tax debt.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00   |

00337

Chariot Group/Summit Metals, Inc.                          Page 18
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 2/18/99 | AMR | Draft proxies; arrange to go to Wilmington; call to Basham; telephone call Giglietti; fax proxies; telephone call Prussin; telephone call Cenawood; review schedules. (1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
| 2/22/99 | AS | Working with citations - 2/22/99 (1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
|  | AS | for K. Gross, J. Rosenthal, and Prussin - 2/23/99 (1)(A)(i)/(3)(D)/(4) | 0.67 | 50.00 |
|  | AS | Working with citations for AMR - 2/23/99. (1)(A)(i)/(3)(D)/(4) | 4.00 | 176.00 |
|  | AS | working with citations - 2/25/99 (1)(A)(i)/(3)(D)/(4) | 5.50 | 412.50 |
|  | AMR | Tcs Rosenthal; Cenawood; Prussin; work on motion for lifting of stay. (1)(A)(i)/(3)(D)/(4) |  |  |
| 2/23/99 | AMR | Review original TRO; letter to Gross re transcript; review fed papers . (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AMR | Work on lifting stay motion; letter to Gross re local representation (1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
| 2/24/99 | AMR | Review previous filings; fax from Gross. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 2/26/99 | AS | with citations - 2/26/99 (1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AMR | Work on motion; misc. phone calls. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 2/28/99 | AMR | Work on bankruptcy memo. (1)(A)(i)/(3)(D)/(4) | 4.15 | 1,037.50 |
| 3/1/99 | AS | Writing summary of citations - 3/1/99. | 3.00 | 225.00 |

00338

Chariot Group/Summit Metals, Inc.                              Page 19
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
|  | AMR | Review lifting of stay cases; telephone call Brenman; telephone Prussin; telephone call Cenawood re government motion; telephone call Prussin: fax to Brenman. | 3.00 | 750.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/2/99 | AMR | Telephone call Prussin; telephone call Brenman re motion in bankruptcy court; telephone call Babbitt re court order; work on brief for lifting of stay; review lifting stay cases; conference with JJM; revise memorandum. | 5.58 | 1,395.83 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/3/99 | AS | Working with citations - 3/3/99. | 3.00 | 132.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
|  | AMR | Misc. calls-- Prussin, Case; review bankruptcy cases. | 5.00 | 1,250.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/4/99 | AMR | Work on memo and afft; telephone call Brenman; telephone call Gross and Prussin. | 4.50 | 1,125.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/5/99 | AMR | Calls re transcript; work on mailing list; review plan and opposition to Prussin motion; work on memo. | 3.00 | 750.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/6/99 | AMR | Work on bankruptcy afft; telephone call Prussin. | 5.00 | 1,250.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/7/99 | AMR | Work on Bankruptcy afft. | 6.00 | 1,500.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/8/99 | AMR | Work on Afft; telphone call Brenman; | 2.00 | 500.00 |
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/9/99 | AMR | Telephone call Prussin; Gross; Wilcox; request transcript. | 1.50 | 375.00 |

Chariot Group/Summit Metals, Inc.                           Page 20
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 3/10/99 | AS | of documents - 3/10/99<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 56.25 |
|  | AMR | Review transcript of first meeting of creditors; telephone call Cenawood re transcript; telephone call Prussin re Management PNC account; telephone call Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
| 3/11/99 | AMR | telephone call Prussin re contempt.<br>(1)(A)(i)/(3)(D)/(4) | 0.42 | 104.17 |
| 3/12/99 | AMR | work on bankruptcy papers.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 3/14/99 | AMR | Work on bankruptcy brief.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 3/15/99 | AMR | Telephone call Brenman re K & F meeting; status of stockholder suit; AMR declaration; work on brief; telephone call Mclaughlin.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 3/16/99 | AMR | Work on bankruptcy brief; forward to declarations to Gross.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 3/17/99 | AMR | Work on bankruptcy brief; fax to Gross; forward certification to Gross.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 3/18/99 | AS | send Faxes to Cenawood and Prussin - 3/18/99<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
|  | AMR | Telephone call Brenman; telephone call Gross; review fax; revise brief; telephone call Cenawood; fax to Prussin and Cenawood.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |

Chariot Group/Summit Metals, Inc.                           Page 21
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 3/19/99 | AMR | telephone call Laura re receipt and service of papers; telephone call Brenman re depositions and strategy. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 3/21/99 | AS | plus correspondence, AMR Letter to Judge, prep packages for mailing - 3/21/99 (1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
| 3/22/99 | AS | Prep corresp. for Paul Brenman. (1)(A)(i)/(3)(D)/(4) | 0.50 | 37.50 |
|  | AMR | Telephone call Prussin re deposition schedules. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 3/23/99 | AMR | Misc. calls re status; work on approach to banks; (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 3/24/99 | AMR | Tcs Prussin, Brenman; (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 3/25/99 | AMR | Travel to Delaware for hearing on motion to dismiss. (1)(A)(i)/(3)(D)/(4) | 3.50 | 437.50 |
|  | AMR | Attend hearing on motion to dismiss or stay; discussion w/Prussin, Gross and Brenman. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 3/26/99 | AMR | Work on intervention motion. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
|  | AMR | Telephone call Brenman re deposition list. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 3/29/99 | AMR | Revise afft for revocation of confidetiality; telephone calls Brenman, Newkirk, Prussin; notice from Adams; fax to Prussin; notice re schedule. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |

Chariot Group/Summit Metals, Inc.                           Page 22
March 29, 2006

|         |     |                                                                 | Hours | Amount |
|---------|-----|-----------------------------------------------------------------|-------|--------|
| 3/30/99 | AMR | Revise afft for intervention.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 4/2/99  | AMR | Research on Corp. opportunity.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 4/3/99  | AMR | Draft letter to Cenawood; fax Brenman;<br>fax Gross; review Borden v. Sinsky.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 4/5/99  | AMR | Telephone call Prussin re status;<br>attempt to reach Brenman; review<br>transcript.<br>(1)(A)(i)/(3)(D)/(4) | 2.75 | 687.50 |
| 4/6/99  | AS  | Trip to City Register Office  Chamber<br>Street for reseach of UCC - 5/6/99<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
| 4/7/99  | AMR | Telephone call Prussin re status and<br>meeting re resolution of goals.<br>(1)(A)(i)/(3)(D)/(4) | 0.42 | 104.17 |
| 4/8/99  | AMR | letter from Prussin re special counsel<br>role<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 4/9/99  | AS  | For Order to Show Cause - 4/9/99<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 240.00 |
|         | AMR | Revise osc re intervention; telephone<br>call Prussin re role in bankruptcy.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 4/12/99 | AS  | Order to Show  Cause - 4/12/99<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
|         | AMR | Complete papers for intervention;<br>telephone call Brenman re status.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 4/13/99 | AS  | trip to Court to File Order - 4/13/99<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |

Chariot Group/Summit Metals, Inc.                                    Page 23
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 4/13/99 | AS | went to Post Office to mail Copies of Court papers - 4/13/99 (1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AMR | Review file re contempt; complete intervention papers; conference with Alla re same; telephone call Newkirk. (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
|  | AS | Affid of Serv for Chariot - 4/13/99 (1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
| 4/14/99 | AMR | Submit order to show cause to Cozier. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 4/15/99 | AMR | Draft Certificate  in support of motion to lift stay; research bankruptcy provisions. (1)(A)(i)/(3)(D)/(4) | 4.75 | 1,187.50 |
| 4/16/99 | AMR | Review transcript of hearing; phone calls Prussin; Brenman; revise certification. (1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 4/18/99 | AMR | Prepare questions for Quinn. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 4/19/99 | AS | Trip to Court to Judge Cozier to deliver package of court papers - 4/19/99 (1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | prep papers for "Advanced" - 4/19/99 (1)(A)(i)/(3)(D)/(4) | 6.00 | 450.00 |
|  | AMR | Travel to Quinn deposition in Phil. (1)(A)(i)/(3)(D)/(4) | 3.00 | 375.00 |
|  | AMR | Work on memo on motion to lift stay; Attend Dep. conference with Brenman; research for memo; telephone call Prussin. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |

Chariot Group/Summit Metals, Inc.                          Page 24
March 29, 2006

|          |     |                                                                                                                                           | Hours | Amount   |
|----------|-----|-------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 4/20/99  | AS  | trip to Advnced to pick up 10 sets of Documents - 4/20/99 (1)(A)(i)/(3)(D)/(4)                                                            | 1.00  | 75.00    |
|          | AS  | Trip to Court to pick up Order to Show Cause - 4/20/99 (1)(A)(i)/(3)(D)/(4)                                                                | 3.50  | 262.50   |
|          | AMR | Review notes of Quinn deposition; review fee application; review bankruptcy rules re same; review Prudhomme case; send out osc; revise memo re lifting stay. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 4/21/99  | AMR | Telephone call Brenman re Gray dep; telephone call Gross re mtn to lift stay; telephone call Scarlatos re scheduling of hearing. (1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00   |
| 4/22/99  | AMR | Tcs Skarlatos re timing; letter from Brenman re Gray deposition; calls re timing of events: Prussin, Wills, Kurzman (lw); Gross (lw); Brenman; review documents in fed and other cases. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 4/23/99  | AS  | for Prussin, Case, Skarlatos - 4/23/99 (1)(A)(i)/(3)(D)/(4)                                                                                | 1.50  | 112.50   |
|          | AMR | Telephone call Prussin re pending motions; forward memo of law; letter from Brenman (1)(A)(i)/(3)(D)/(4)                                    | 1.00  | 250.00   |
| 4/28/99  | AMR | Letter from Brenman re Kelly deposition;  telephone call Newkirk re date. (1)(A)(i)/(3)(D)/(4)                                             | 0.50  | 125.00   |
| 4/29/99  | AMR | review letter from Brenman re scheduling; review Prussin class action complaint. (1)(A)(i)/(3)(D)/(4)                                       | 3.00  | 750.00   |

Chariot Group/Summit Metals, Inc.                           Page 25
March 29, 2006

|          |     |                                                                                                              | Hours | Amount   |
|----------|-----|--------------------------------------------------------------------------------------------------------------|-------|----------|
| 4/30/99  | AMR | Telephone call Cenawood re Chin hearing. (1)(A)(i)/(3)(D)/(4)                                                 | 0.33  | 83.33    |
| 5/4/99   | AMR | Tcs Brenman re status and scheduling; review motion. (1)(A)(i)/(3)(D)/(4)                                    | 2.00  | 500.00   |
| 5/7/99   | AMR | Review Prussin papers; review Gray papers; telephone call Brenman; fax to Brenman. (1)(A)(i)/(3)(D)/(4)      | 2.50  | 625.00   |
| 5/10/99  | AMR | Draft afft re protective order; telephone calls Brenman re same and Kelly deposition and next steps; review cases cited by K&F. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 5/11/99  | AMR | Draft afft; telephone call Brenman (1)(A)(i)/(3)(D)/(4)                                                       | 8.00  | 2,000.00 |
| 5/12/99  | AS  | 5 sets of court documents with Exhibits – 5/12/99 (1)(A)(i)/(3)(D)/(4)                                        | 4.50  | 337.50   |
|          | AMR | draft afft; draft brief; meeting with Brenman re strategy and Kelly exam (1)(A)(i)/(3)(D)/(4)                 | 7.00  | 1,750.00 |
| 5/13/99  | AS  | to Park Ave. to deliver court papers – 5/13/99 (1)(A)(i)/(3)(D)/(4)                                           | 1.00  | 75.00    |
|          | AS  | to Lexington to deliver court papers – 5/13/99 (1)(A)(i)/(3)(D)/(4)                                           | 1.00  | 75.00    |
|          | AS  | trip to Court to deliver court documents for Judge Cozier – 5/13/99 (1)(A)(i)/(3)(D)/(4)                      | 3.50  | 262.50   |
|          | AMR | complete brief; arrange for service; prepare for argument; telephone call Brenman; fax substitution; telephone | 6.00  | 1,500.00 |

00345

Chariot Group/Summit Metals, Inc.                          Page 26
March 29, 2006

|          |     |                                                                                                                  | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | call Rosenthal; fax to Gross re preference complaint<br>(1)(A)(i)/(3)(D)/(4)                                       |       |          |
| 5/14/99  | AMR | Attend hearing re motion to revoke confidentiality order; attend Kelly deposition; tcs Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 5.83  | 1,458.33 |
|          | AMR | Attempt to reach Gross re preference complaint.<br>(1)(A)(i)/(3)(D)/(4)                                            | 0.25  | 62.50    |
| 5/17/99  | AMR | Review Prussin derivative complaint; telephone call court reporter.<br>(1)(A)(i)/(3)(D)/(4)                        | 2.00  | 500.00   |
|          | AMR | Calls to get copy of preference complaint; review of same; telephone call Prussin.<br>(1)(A)(i)/(3)(D)/(4)         | 2.00  | 500.00   |
| 5/18/99  | AS  | for Court, AffServ, Letter for Demovsky, packages for Dem, Eisen, United Lawers, - 5/18/99<br>(1)(A)(i)/(3)(D)/(4) | 3.50  | 262.50   |
|          | AS  | CD-ROM (bankruptcy) - 5/18/99<br>(1)(A)(i)/(3)(D)/(4)                                                              | 1.00  | 75.00    |
|          | AMR | Telephone call Brenman re next steps and timing.<br>(1)(A)(i)/(3)(D)/(4)                                           | 0.50  | 125.00   |
|          | AMR | Review preference complaint, rec'd by certified mail.<br>(1)(A)(i)/(3)(D)/(4)                                      | 1.25  | 312.50   |
| 5/19/99  | AS  | AffServ, backs, mail court papers to Quinn - 5/19/99.<br>(1)(A)(i)/(3)(D)/(4)                                      | 2.50  | 187.50   |
| 5/20/99  | AMR | Draft letter to Walrath re clarification re opening of NY contempt.<br>(1)(A)(i)/(3)(D)/(4)                        | 3.00  | 750.00   |

Chariot Group/Summit Metals, Inc.                          Page 27
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 5/21/99 | AMR | Telephone call with Gross; forward letter to Walrath.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 5/24/99 | AMR | Arrange for sending copies of Walrath letter.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
|  | AMR | Telephone call Brenman re motions in Del; review Brenman draft response ro mtn for protective order; revisions to same.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 5/25/99 | AS | papers for filing in Court - 5/25/99<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 37.50 |
|  | AS | AffServ for Delaware Case - 5/25/99<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AS | Making copies and prep package of documents for mailing - 5/25/99<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AMR | Calls re response to motion--Laura; Snyder;<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 5/26/99 | AMR | Telephone call Brenman; telephone call Prussin; review opposition to motion; review brief; review Fox Rothschild brief.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 5/27/99 | AS | prep corr.  and package for CIT Group and delivered this package - 5/27/99<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
|  | AMR | Tvl to Wilmington for hearing on intervention, etc.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |

Chariot Group/Summit Metals, Inc.                           Page 28
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 5/27/99 | AMR | Attend hearing at bankruptcy court--progress report, unsealing, lift stay; meeting with after re working with Prussin; calls re same; letter to Mindlin.<br>(1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 5/28/99 | AMR | Telephone call Prussin re division of labor, upcoming depositions; attempt to reach Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 6/1/99 | AS | FAx for Prussin (46 p) - 6/1/99<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AMR | Draft motion papers re lift stay re unsealing; forward to Del; attempt to reach Gross; telephone call Brenmman re cooperation with Prussin and need to focus on ESP transfer; telephone call Prussin re lease.<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,500.00 |
| 6/2/99 | AMR | fax Kelly ts to Prussin<br>(1)(A)(i)/(3)(D)/(4) | 0.17 | 41.67 |
|  | AMR | Telephone call Cenawood, discussion of appeal possibilities; telephone call Cohen office.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
|  | AS | Set of documents for Court; 10 sets for mailing - 6/2/99<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
|  | AMR | Send out motion papers; review Gross comments; telephone call Prussin re Kelly dep. and contempt.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 6/3/99 | AMR | Attempt to reach Cohen<br>(1)(A)(i)/(3)(D)/(4) | 0.08 | 20.83 |
|  | AS | sets of documents for Court; Faxes - 6/3/99<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 180.00 |

00348

Chariot Group/Summit Metals, Inc.                                    Page 29
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Draft Order; forward to court with Cozier order and cover letter; review Prussin ltr; telephone call with Prussin re conversations with Brenman. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
|  | AMR | work on time records and forward to Kurtzman (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AMR | Draft responses to preference complaint. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 6/4/99 | AS | Summit Answer - 6/4/99 (1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AS | package of documents plus Cover Letter (for UPS) - to Court - 6/4/99 (1)(A)(i)/(3)(D)/(4) | 1.00 | 60.00 |
|  | AMR | tcs Prussin and Brenman; review response to deriv. suit; markup and forward to Brenman; discussions of contempt; draft letter of terms of cooperation; complete answer and forward to Gross. (1)(A)(i)/(3)(D)/(4) | 7.50 | 1,875.00 |
| 6/6/99 | AMR | Letter to stockholders (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 6/7/99 | AMR | Send out stockholder letter;  attempt to reach Cohen (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AS | for hearing in Delawere - 6/7/99 (1)(A)(i)/(3)(D)/(4) | 1.00 | 60.00 |
|  | AMR | Review debtor response to Prussin mtn; tcs Prussin and Brenman re cooperation terms and strategy; discussions of contempt. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |

00349

Chariot Group/Summit Metals, Inc.                                    Page 30
March 29, 2006

|         |     |                                                                                                                                                                                                                                                                      | Hours | Amount   |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 6/8/99  | AMR | Telephone call Mindlin; attempt to reach Cohen. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                    | 0.50  | 125.00   |
|         | AMR | Attend hearings in Wilmington; discussions with Prussin re representation; work on RICO complaint; review confidentiality order; attmpt to reach Brenman. (1)(A)(i)/(3)(D)/(4)                                                                                           | 3.00  | 750.00   |
|         | AMR | Review answer to preference claim; telephone call Prussin re contempt. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                             | 0.50  | 125.00   |
|         | AMR | Tvl to Wilmington. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                 | 3.00  | 375.00   |
| 6/9/99  | AS  | court documents and papers - 6/9/99 (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                | 3.00  | 180.00   |
|         | AMR | Telephone call Brenman re confidentiality; telephone call Delaware Secretary of State; on line search re Delaware corps.; letter to Secy of State re annual reports; forward time records to Brenman; work on racketeering suit; research at library on wire and mail fraud. (1)(A)(i)/(3)(D)/(4) | 5.50  | 1,375.00 |
| 6/10/99 | AMR | Prepare list of Summit documents and forward to Brenman; telphone call Brenman re confidentiality discussions and need for takeover order; work on RICO complaint. (1)(A)(i)/(3)(D)/(4)                                                                                  | 5.00  | 1,250.00 |
| 6/11/99 | AMR | look up Fleet counsel (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                              | 0.17  | 41.67    |
|         | AMR | Review memo for Schiltz re exclusive period; review Kurtzman confidentiality stip; revise documents list; reasearch on bankruptcy; causes of action; work on RICO complaint; and forward to                                                                             | 7.00  | 1,750.00 |

Chariot Group/Summit Metals, Inc.                              Page 31
March 29, 2006

|          |     |                                                                                                                                                                                                      | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | Brenman and Case; rsrch post petition claims; review tax returns for Chariot holdings.<br>(1)(A)(i)/(3)(D)/(4)                                                                                        |       |          |
| 6/14/99  | AMR | Telephone call Cenawood re takeover; telephone call Benton re approaches to banks; draft letter to Cohen.<br>(1)(A)(i)/(3)(D)/(4)                                                                     | 1.50  | 375.00   |
|          | AS  | Library of BAr Ass. (BR and Restatesment) - 6/14/99<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                           | 3.50  | 262.50   |
|          | AS  | Aff of Service for United - 6/14/99<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                           | 0.50  | 37.50    |
|          | AS  | of documents  - 6/14/99<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                       | 1.50  | 112.50   |
|          | AMR | Telephone call Brenman re confidentiality discussions; Homestar; document requests;  order for takeover of litigation; telephone call Prussin re status of contempt discovery; review bankruptcy cases on substantial benefit.<br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 6/15/99  | AMR | draft discovery motions and orders<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                            | 1.50  | 375.00   |
| 6/16/99  | AMR | Revise letter to Cohen.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                       | 0.50  | 125.00   |
|          | AMR | Draft Metzker and Swindell orders; telephone call Prussin re receipt of documents; attempt to reach Brenman.<br>(1)(A)(i)/(3)(D)/(4)                                                                  | 2.00  | 500.00   |
| 6/17/99  | AMR | Telephone call Cohen and Backenroth re Fleet participation.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                   | 0.50  | 125.00   |

Chariot Group/Summit Metals, Inc.                          Page 32
March 29, 2006

|         |     |                                                                                                                                                                              | Hours | Amount   |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 6/17/99 | AMR | Work on drafts of Metzger 2004 order; attempts to reach Brenman; fax to Brenman re takeover and Prussin orders; telephone call Prussin re status of contempt discovery. (1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |
| 6/18/99 | AMR | Telephone call Brenman re confidentiality discussions; review opposition to motion; review Prussin fax re Kurtzman letter; telephone call Brenman re takeover order; review Brenman support of motion; work on discovery motions; review file. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 6/19/99 | AMR | Draft motions, orders and doc lists for Kelly, Skarlatos, Carlson, Fleet; draft response to opposition. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 6/21/99 | AS  | Working with court files, set up new files. (1)(A)(i)/(3)(D)/(4) | 4.50  | 337.50   |
|         | AMR | Send out draft motion papers; telephone call Brenman re same and confidentiality order. (1)(A)(i)/(3)(D)/(4) | 1.00  | 250.00   |
| 6/22/99 | AMR | Forward motion papers to court re reply; fax from Brenman; complete drafts re deposition orders; fax from Brenman. (1)(A)(i)/(3)(D)/(4) | 3.50  | 875.00   |
| 6/23/99 | AMR | Telephone call Prussin re delaying tactics; review fax from Prussin draft letter to Rhine et al.; telephone call Brenman re stipulations and takeover order (he's drafting); review rules on 2004 notice. (1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |

Chariot Group/Summit Metals, Inc.                          Page 33
March 29, 2006

|         |     |                                                                 | Hours | Amount   |
|---------|-----|-----------------------------------------------------------------|-------|----------|
| 6/24/99 | AMR | Letter to Rhine and Wille re relationship of bankruptcy and contempt; attempt to reach Rhine; tcs Prussin re attendance in fed. court; review restatement of trust re remedies; review draft orders re protective order and confidentiality; comments on same; calls re schedule of hearings; forward to document requests to Brenman. (1)(A)(i)/(3)(D)/(4) | 5.25 | 1,312.50 |
| 6/25/99 | AMR | Meeting with Brenman; metting with Kurtzman and Brenman; discussion of Stips re Gray exam and Committee prosecution of claims against Gray; attend hearing at Ct. re relief from stay to move in NY and scheduling re preference suit; colloquy re contempt--debtor to make motion telephone call Prussin re contempt and Del hearing; draft questions for Gray. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|         | AMR | Travel to Wilmington. (1)(A)(i)/(3)(D)/(4) | 3.00 | 375.00 |
| 6/29/99 | AMR | Telephone call Prussin re contempt and bankruptcy orders; attempt to reach Brenman; review of annual reports to Delaware. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 6/30/99 | AMR | Telephone call Brenman re status of orders; forward order re lifting of stay to Court. (1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 7/6/99  | AMR | Telephone call Prussin re lack of cooperation from Rhine and need for order; telephone call Brenman re lack of progress; draft document request for Summit and fax and mail to Kurtzman. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |

Chariot Group/Summit Metals, Inc.                          Page 34
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 7/7/99 | AS | copies of documents and send FAX to Prussin<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AMR | review subpoena forms; make list; conference with Alla re same; fax forms<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AMR | Telephone call Prussin re application for retention.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 7/8/99 | AMR | Telephone call court re order; work on renewal motion for opening confidentiality.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 7/9/99 | AS | copies of documents<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 56.25 |
| 7/12/99 | AMR | Review Gray plan; tcs Prussin and Brenman; review letter from Brenman to Wille; letter to Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 7/13/99 | AS | made copies of papers, Exhibits<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
|  | AMR | tf Pipski re 84-6 taxes and tax sharing regs; telephone calls Brenman re Gray deposition; draft questions and forward to to Brenman; draft osc for renewal of unsealing mtn.<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 875.00 |
| 7/14/99 | AS | trip to Court to file Order to Show Cause<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | trip to Court to pick up signed papers; make copies for us and for judge Cozier<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | Court papers for Prussin, Case,<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |

Chariot Group/Summit Metals, Inc.                          Page 35
March 29, 2006

|         |     |                                                                                                                                                                                                                                                                                                   | Hours | Amount   |
|---------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/14/99 | AMR | Telephone call Prussin re disclosure motion; letter to Gross re subpoenas; work on subpoenas; arrange for service of osc.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                    | 2.00  | 500.00   |
| 7/15/99 | AS  | Supboenas for Metzger, Neff, Cohen, Carlson, Kelly, Bank of NY.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                             | 3.50  | 262.50   |
|         | AMR | review Prussin application; comment on same; review Brenman contempt motion; comment on same.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                               | 2.00  | 500.00   |
| 7/16/99 | AMR | Telephone call Brennan re plan and scheduling; telephone call Cozier clerk; letter to Will and Prussin re same; draft schedules to subpoenas for Carlson, Neff, Cohen, Metzger, BONY; telephone call Case re status and schedule change; telephone call Luke; review contempt motion; telephone call Brenman re same.<br>(1)(A)(i)/(3)(D)/(4) | 7.00  | 1,750.00 |
| 7/19/99 | AS  | prep Subpoenas, letter to Demovsky, packages for mailing<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                    | 4.00  | 300.00   |
|         | AS  | prep new variant of Subpoenas<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                              | 2.50  | 187.50   |
|         | AMR | Telephone call Prussin re scheduling and company billboard; phone tag w/ Brenman; forward draft plan to Brenman; telephone call K&F (2) re scheduling; telephone call Kennedy re same; deal w/ subpoenas; telephone call DLS same.<br>(1)(A)(i)/(3)(D)/(4)                                           | 3.00  | 750.00   |
| 7/20/99 | AS  | to Metzger office to servr sabpoena<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                        | 1.33  | 100.00   |
|         | AS  | for Demovsky<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                                               | 1.00  | 75.00    |

Chariot Group/Summit Metals, Inc.                                    Page 36
March 29, 2006

|         |     |                                                                                                                                                                                                      | Hours | Amount    |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|-----------|
|         | AMR | telephone call Prussin re application; Telephone call Brenman re same and mtn re takeover; telephone call Kurtzman re documents -- will object to everything; rsrch re Rule 37; complete deposition notices; conference with Alla re subpoenas.<br>(1)(A)(i)/(3)(D)/(4) | 5.50  | 1,375.00  |
| 7/21/99 | AS  | Reply to Counterclaim<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                         | 3.50  | 262.50    |
|         | AS  | AffServ+ prep package for Quinn, for United<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                   | 1.00  | 75.00     |
|         | AS  | subpoena for Kelly<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                            | 0.33  | 25.00     |
|         | AMR | telephone call Kennedy re scheduling; letter To Wille, Prussin, Case re same; telephone call Prussin re class action and theories; telephone call Brenman office re Quinn examination; calls re service on Kelly; work on motion to compel.<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00  |
| 7/22/99 | AMR | Telephone call Prussin re strategy; elephone call Skarlatos re scheduling; work on motion to compel; review Quinn deposition.<br>(1)(A)(i)/(3)(D)/(4)                                                 | 3.50  | 875.00    |
| 7/23/99 | AMR | Telephone call Prussin re application; fax to Brenman re motions; letter from Skarlatos; telephone call Cousy; letter from Kurtzman; telephone call Galioto; fax to Galioto; letter to Backenroth; attempt to reach Coulson; review Quinn deposition; work on motion to compel<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00  |
| 7/24/99 | AMR | draft mtn to compel and order<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                 | 4.50  | 1,125.00  |

Chariot Group/Summit Metals, Inc.                                    Page 37
March 29, 2006

|          |     |                                                                                                                                                      | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/26/99  | AS  | In Federal Court re CSC Recovery<br>(1)(A)(i)/(3)(D)/(4)                                                                                              | 4.00  | 300.00   |
|          | AS  | packages of Court papers<br>(1)(A)(i)/(3)(D)/(4)                                                                                                      | 3.50  | 262.50   |
|          | AMR | review mtn for committee takeover;<br>complete mtn to compel; telephone call<br>Prussin re same; telephone call<br>Brenman; work on Skarlatos motion;<br>telephone call K&F re adjourned date --<br>8/17/99<br>(1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
| 7/27/99  | AS  | packages for mailing and Faxing<br>(1)(A)(i)/(3)(D)/(4)                                                                                               | 1.00  | 75.00    |
|          | AMR | Telephone call Brenman; work on<br>Skarlatos motion; fax Skarlatos motion;<br>fax Moshe motion; phone tag w/ Capuder;<br>telephone call Prussin re takeover<br>motion; fax same; telephone call re<br>special counsel<br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 7/28/99  | AS  | court papers for mailing and Faxing  in<br>accordance with bankruptcy procedure<br>(1)(A)(i)/(3)(D)/(4)                                               | 1.50  | 112.50   |
|          | AMR | Telephone call Amato; telephone call<br>Capuder re compliance; letter from<br>Kurtzman; letter to same; telephone<br>call Prussin; telephone call Brenman re<br>motion<br>(1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |
| 7/29/99  | AMR | calls to Prussin and Brenman re<br>motions; telephone call Prussin re Gray<br>response re contempt; letter from<br>Capuder; letter to Amato re adjournment<br>(1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |

00357

Chariot Group/Summit Metals, Inc.                                    Page 38
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 7/30/99 | AMR | numerous calls w/Prussin and Brenman re Prussin retention, Committee takeover, motion re contempt, motion to avoid contempt, K&F compulsion;  telephone call Gross re subpoenas and proceedings. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| 8/2/99 | AMR | tcs Brenman, Prussin re submissions for 8/10; review of same; review Summit motion; review Brown Bros. objections; letter from BONY; telephone call Court re notice and hearing; fax notice to Klehr Harrison. (1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
|  | AS | Notice of Deposition for Carlson (1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
| 8/3/99 | AMR | Telephone call Prussin; fax from U.S. Trustee; telephone call Carucci; letter from Branzburg; letter to same; review objections; forward additional letter to Branzburg, (1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
|  | AMR | work on accounting (1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 8/4/99 | AMR | conference with Alla re acctg issues; telephone call Prussin and Brenman re Prussin retention; telephone call Brenman re K&F motion; work on response to stay motion; letter from Skarlatos re scheduling scheduling. (1)(A)(i)/(3)(D)/(4) | 3.50 | 875.00 |
| 8/6/99 | AMR | calls to Prussin; review opposition to stay motion; draft opposition to stay mtn; telephone call Brenman re pending mtns (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | AS | 5 sets of Objection of AMR (1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
|  | AS | Objection Of AMR for Court and Judge | 1.00 | 75.00 |

00358

Chariot Group/Summit Metals, Inc.                                    Page 39
March 29, 2006

|         |     |                                                                                                                                                                                    | Hours | Amount   |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|         |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                |       |          |
| 8/9/99  | AMR | Complete service of opposition; tcs Prussin, Brenman re motions on and opposition; review papers in prep. for court hearing.<br>(1)(A)(i)/(3)(D)/(4)                                | 5.00  | 1,250.00 |
|         | AS  | Faxes in Accordance with Bankruptcy proc- AMR Papers for Kurtzman, Prussin, Brenman, McLaughlin.<br>(1)(A)(i)/(3)(D)/(4)                                                            | 2.50  | 187.50   |
|         | AS  | AffService<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                  | 1.50  | 112.50   |
|         | AS  | of Court documents prep for Hearing in Delaware (8/10/99)<br>(1)(A)(i)/(3)(D)/(4)                                                                                                   | 1.50  | 112.50   |
| 8/10/99 | AMR | Attend hearing in Wilmington; discussions w/ Prussin en route; meeting with Prussin, Gross, Brenman; misc calls -- Benton, Prussin, etc., review papers from K&F; conference with Alla re same; review RICO complaint; conference with JJM re same.<br>(1)(A)(i)/(3)(D)/(4) | 7.00  | 1,750.00 |
| 8/11/99 | AMR | Telephone call Brenman re plan and presentation; review racketeering complaint; review Rule 11 mtls; review K&F brief re unsealing of file.<br>(1)(A)(i)/(3)(D)/(4)                | 5.00  | 1,250.00 |
|         | AS  | re Kostelanetz's Memo of Law; and "Candor"<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                  | 7.50  | 562.50   |
| 8/12/99 | AMR | Review K&F memo; prepare and serve response; draft letter to Chin.<br>(1)(A)(i)/(3)(D)/(4)                                                                                          | 7.00  | 1,750.00 |
|         | AS  | re B.Wille Memo (made new notebook)<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                         | 1.50  | 112.50   |

Chariot Group/Summit Metals, Inc.                          Page 40
March 29, 2006

|         |     |                                                                                                                                                  | Hours | Amount   |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 8/12/99 | AS  | 7 sets of court papers plus AffServ, backs; prep corr for Wille and Prussin and sent papers by fax (1)(A)(i)/(3)(D)/(4)                          | 3.00  | 225.00   |
|         | AS  | prep package for Cozier (1)(A)(i)/(3)(D)/(4)                                                                                                      | 0.33  | 25.00    |
| 8/13/99 | AS  | trip to Court to deliver a copy of documents for judge Cozier (1)(A)(i)/(3)(D)/(4)                                                                | 3.50  | 262.50   |
|         | AS  | CD-ROM re Eisen's papers (1)(A)(i)/(3)(D)/(4)                                                                                                     | 3.50  | 262.50   |
| 8/16/99 | CKR | Review and detail allegations against Richardson et al.  Review case history (1)(A)(i)/(3)(D)/(4)                                                 | 7.50  | 1,125.00 |
|         | AMR | Review papers re hearing 8/17/99; telephone call Prussin; telephone call Benton re plan and next steps; conference with CKR re review of racketeering suit and prior determinations. (1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00   |
|         | AS  | Trip to 730 Park avenue for investigation. (1)(A)(i)/(3)(D)/(4)                                                                                   | 2.00  | 150.00   |
| 8/17/99 | CKR | Counter arguments to allegations in Bankruptcy RICO claims. (1)(A)(i)/(3)(D)/(4)                                                                  | 2.50  | 375.00   |
|         | AMR | Telephone call Brenman re plan, Gray deposition and Prussin application; telephone call Adam re same; attend ct re hearing on unsealing; letter from Prussin; conference with CKR re RICO complaint and Rule 11. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
|         | AS  | with Brown, Harris, Stevens (1)(A)(i)/(3)(D)/(4)                                                                                                  | 0.50  | 37.50    |

Chariot Group/Summit Metals, Inc.                              Page 41
March 29, 2006

|         |     |                                                                                                                                                                                                                    | Hours | Amount   |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 8/17/99 | AS  | Copies of documents and prep documents for review (1)(A)(i)/(3)(D)/(4)                                                                                                                                              | 1.00  | 75.00    |
| 8/18/99 | AS  | Working with court files, making copies of documents for AMR prep for hearing. (1)(A)(i)/(3)(D)/(4)                                                                                                                 | 3.50  | 262.50   |
|         | AS  | CD-ROM cases (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                   | 1.50  | 112.50   |
|         | AMR | Review questions and mtls for Gray deposition. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                 | 1.50  | 375.00   |
| 8/19/99 | AMR | Attend Gray deposition; preparation for same; conference with Brenman; review document production; review 9(b) cases; telephone call Prussin. (1)(A)(i)/(3)(D)/(4)                                                  | 6.00  | 1,500.00 |
|         | AS  | Fed.Rules Civ.Proc.Rul 9(b) (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                    | 4.67  | 350.00   |
|         | AS  | Copies of documents (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                            | 1.33  | 100.00   |
|         | AMR | Travel to Phil. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                | 2.50  | 312.50   |
| 8/20/99 | CKR | Research 9b cases (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                              | 6.00  | 900.00   |
|         | AMR | Letter to Brenman re Prussin application and copies of discovery documents; draft letter to Cozier; review Prussin ltr re same; review pi order re Homestar; review bankruptcy stipulation re Gray deposition. (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
|         | AS  | Send Faxes in acc with requirements of bankruptcy proc (1)(A)(i)/(3)(D)/(4)                                                                                                                                         | 1.50  | 112.50   |
|         | AS  | court files                                                                                                                                                                                                        | 3.50  | 262.50   |

Chariot Group/Summit Metals, Inc.                      Page 42
March 29, 2006

|          |                                                                                                                                                                                                                                                                  | Hours | Amount   |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          | (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                              |       |          |
| 8/21/99  | CKR Review RICO cases<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                     | 1.00  | 150.00   |
|          | AMR Draft opposition to Klehr fee application; draft letter to Cozier.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                    | 5.00  | 1,250.00 |
| 8/22/99  | CKR Research RICO cases<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                   | 2.00  | 300.00   |
| 8/23/99  | CKR Draft motion to dismiss RICO bcy claims<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                               | 6.00  | 900.00   |
|          | AMR Review Gross comments and send out; complete letter to Cozier and have delivered; telephone call Prussin re submissions to Cozier; telephone call Gail Keenan re Prussin application; message to Case re injunction; review submissions of Rhine and Wille and Prussin response; review dfts of motion to dismiss.<br>(1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
|          | AS  and sent Faxes in acc with the list<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                   | 1.50  | 112.50   |
|          | AS  trip to Court to deliver AMR Letter to Cozier<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                         | 3.50  | 262.50   |
| 8/24/99  | AMR Conference with CKR re mtn to dismiss; telephone call Gross re objection to fees and objection to disclosure statement; review Summit bank records.<br>(1)(A)(i)/(3)(D)/(4)                                                                                    | 3.00  | 750.00   |
|          | AS  3 sets of documents<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                   | 2.50  | 187.50   |
|          | AS  CD-ROM<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                | 2.50  | 187.50   |

Chariot Group/Summit Metals, Inc.                              Page 43
March 29, 2006

|          |     |                                                                                                                                                                                                                                              | Hours | Amount   |
|----------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 8/24/99  | AS  | trip to Bar Association to pick up citations <br> (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                         | 1.00  | 75.00    |
| 8/25/99  | CKR | drafting motion to dismiss RICO et al claims <br> (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                         | 1.50  | 225.00   |
|          | AMR | review bank records; conference with Alla re same; letter from Wille re motion for stay; Review papers re same; letter to Wille re motion and absence of order; telephone call Prussin re stay motion and pending mtn; review K&F response to mtn to compel; return to office to get info for mtn. <br> (1)(A)(i)/(3)(D)/(4) | 7.00  | 1,750.00 |
|          | AS  | analyzing bank's statements re  moneys transactions in 1996-97 <br> (1)(A)(i)/(3)(D)/(4)                                                                                                                                                       | 6.50  | 487.50   |
| 8/26/99  | AMR | Attend 1st Dept re stay motion -- no appealable paper; document review; telephone call Prussin re scheduling and mini complaint; telephone call Brenman re Gray deposition; scheduling ltr; telephone call Brenman re same; conference with CKR re Rule 11; prepare for 8/27. <br> (1)(A)(i)/(3)(D)/(4) | 7.50  | 1,875.00 |
| 8/27/99  | AS  | Analyzing bank's statements re transactions in 1996-97 <br> (1)(A)(i)/(3)(D)/(4)                                                                                                                                                               | 6.50  | 487.50   |
|          | AMR | Attend hearing in Delaware; preparation for same; conference with Prussin; conference with Gross and Rosenthal; conference with Brenman re notice to McLaughlin; telephone call Benton re disapproval of RICO action. <br> (1)(A)(i)/(3)(D)/(4) | 4.25  | 1,062.50 |
|          | AMR | Travel to Wilmington. <br> (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                | 3.00  | 375.00   |

Chariot Group/Summit Metals, Inc.                        Page 44
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Travel to Wilmington<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 375.00 |
| 8/28/99 | AMR | Draft letter to Brenman re adjournments<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 8/30/99 | AS | for Brenman, Prussin and others in acc<br>with the list<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
|  | AMR | Review objection from Klehr; attempt to<br>reach Ted (2).<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 8/31/99 | AS | prep letter to Office of the Clerk and<br>send Fax<br>(1)(A)(i)/(3)(D)/(4) | 1.75 | 131.25 |
| 9/1/99 | AS | working with court files<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
| 9/2/99 | CKR | Researched cases on consolidation and<br>piercing the corporate veil.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 300.00 |
|  | AMR | Telephone call Brenman; telephone call<br>Prussin re application for retention<br>and other issues -- consolidation,<br>involuntaries, etc.; letter from Wills<br>re document production.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 9/3/99 | CKR | confer with AMR over bankruptcy<br>proceedings<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
|  | AMR | Telephone call Brenman re approval of<br>Prussin; discussion of additional<br>bankruptcies; review discovery items.<br>(1)(A)(i)/(3)(D)/(4) | 2.75 | 687.50 |
| 9/7/99 | AS | AMR Lettter to M.Walrath; Exhibits,<br>made copies; 5 sets of documents;   send | 4.50 | 337.50 |

00364

Chariot Group/Summit Metals, Inc.　　　　　　　　　　Page 45
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | fax; prep corr in accord with bankrupty proc.<br>(1)(A)(i)/(3)(D)/(4) |  |  |
|  | AMR | Complete letter to Walrath re document production; send out; draft letter to McLaughlin; forward to Brenman; telephone call Prussin; telephone call Prussin and Brenman re next steps; review   court order re dismissal of RICO suit; conference with CKR and JJM re Rule 11.<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,500.00 |
| 9/8/99 | AS | AMR Letter to Galioto - made copies of attachment, 4 sets of document; faxes and mailed<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | subpoenas for Neff and CIT Group; letter to Demovsky; package for Demovsky<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
| 9/9/99 | AMR | Meeting with Prussin and Brenman re takeover motion and complaint; telephone call Brenman re Kurtzman discussions; send out CIT subpoena; send out Skarlatos 2004 motion;<br>(1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
|  | AS | trip to CIT Group to serve subpoena<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AS | 15 sets of document and 15 packages<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 225.00 |
|  | CKR | Researched consolidations cases<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 300.00 |
|  | AS | for Joseph H. Adams<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 56.25 |
| 9/10/99 | AMR | Complete and forward letter to McLaughlin re plan; prepare Scarlatos 2004 and forward to Walrath; review disclosure from Hahn & Hessen; forward | 5.00 | 1,250.00 |

Chariot Group/Summit Metals, Inc.                              Page 46
March 29, 2006

|         |     |                                                                                                                                                                                                                                                      | Hours | Amount   |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|         |     | letter to unauthorized law committee; review draft complaint and document request from Prussin (1)(A)(i)/(3)(D)/(4)                                                                                                                                   |       |          |
|         | AS  | Aff of Service + package for Court (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                               | 1.50  | 112.50   |
|         | AS  | for Walrath, Kurtzman, Gross – made copies, prep packages for mailing (1)(A)(i)/(3)(D)/(4)                                                                                                                                                            | 0.75  | 56.25    |
|         | AS  | of Bank's Statements for Prussin (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                 | 4.00  | 300.00   |
|         | AS  | package for Prussin (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                              | 0.50  | 37.50    |
| 9/13/99 | AMR | Mark up draft complaint; fax to Prussin; telephone call Prussin re same; inquiries to Cozier office re open hearing; telephone call Capuder re Metzger; do new subpoena for Carlson; letter to Case re Quinn; telephone call Skarlatos re stip on appeal; telephone call Brenman re Del info re Gray companies (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
|         | AS  | Notice of Deposition for Kurtzman (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                | 3.50  | 262.50   |
|         | AS  | Subpoena for Carlson; Letter to Demovsky, Package for Need Now (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                   | 3.00  | 225.00   |
|         | CKR | Draft letter to 730 Park avenue about REG and B. Quinn requesting assistance in serving parties.  Find location of Brown Harris Stevens (1)(A)(i)/(3)(D)/(4)                                                                                          | 1.17  | 175.00   |
| 9/14/99 | AMR | Telephone call Prussin re contempt hearing; review revised complaint; review documents from Fleet Bank; review motion from Klehr re same;                                                                                                             | 5.50  | 1,375.00 |

00366

Chariot Group/Summit Metals, Inc.                                    Page 47
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| | | research re standing and service of notices; review Skarlatos stipulation (1)(A)(i)/(3)(D)/(4) | | |
| 9/15/99 | AMR | Review motion re Fleet; telephone call; forward copies of documents; letter to Sawchuk; review case law; conference with CKR; begin work on opposition; faxes to Prussin; telephone call Brenman re plan; review stipulation from Skarlatos (1)(A)(i)/(3)(D)/(4) | 6.00 | 1,500.00 |
| | CKR | examine emergency motion for a protective order (1)(A)(i)/(3)(D)/(4) | 2.00 | 300.00 |
| 9/16/99 | AMR | Telephone call Capuder re Metzger production; draft opposition to motion for protective order; conference with CKR; prepare exhibits; fax to Gross; telephone call Brenman; fax from Amato (1)(A)(i)/(3)(D)/(4) | 7.00 | 1,750.00 |
| | CKR | Draft motion in opposition to request for protective order (1)(A)(i)/(3)(D)/(4) | 5.00 | 750.00 |
| | CKR | Research rule 45 (1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| | CKR | Research rule 45 cases concerning 3rd party subpoenas (1)(A)(i)/(3)(D)/(4) | 1.50 | 225.00 |
| 9/17/99 | AMR | Calls and faxes -- Keener, Brenman, Prussin -- forward opposition to motion; review rvsd complaint -- comment to Prussin. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| | CKR | met with AMR about REG flowchart (1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |
| | CKR | Research automatic stays in bankruptcy (1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |

Chariot Group/Summit Metals, Inc.                          Page 48
March 29, 2006

|          |                                                                                                                                                                                                                      | Hours | Amount   |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          | CKR research consolidation cases in bankruptcy<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                | 0.50  | 75.00    |
|          | CKR Met with AMR about updates on Chariot<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                     | 0.25  | 37.50    |
| 9/20/99  | AMR Telephone call Capuder re Metzger subpoena; telephone call CKR re consolidation; review cases re same; review Gray transcript; review Valente; review presumption cases; telephone call Carmella re service of response; conference with Mahon re Skarlatos subpoena<br>(1)(A)(i)/(3)(D)/(4) | 6.50  | 1,625.00 |
|          | CKR Draft flowchart of REG Companies<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                          | 2.25  | 337.50   |
|          | CKR research consolidation cases<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                              | 1.40  | 210.00   |
|          | CKR met with AMR for discussion of consolidation<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                              | 0.40  | 60.00    |
| 9/21/99  | AMR Attend hearing in Wilmington; conference with Prussin re causes of action; conference with Brenman -- will supply causes of action re fraudulent transfer; discussion w/ Prussin re next steps and discovery plan; conference with CKR and JJM re Rule 11<br>(1)(A)(i)/(3)(D)/(4) | 4.50  | 1,125.00 |
|          | CKR Researched consolidation without involuntary ch. 11<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                       | 4.00  | 600.00   |
|          | CKR revise REG flowchart<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                      | 4.00  | 600.00   |
|          | CKR Research consolidation in 3rd circuit<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                     | 0.75  | 112.50   |

00368

Chariot Group/Summit Metals, Inc.                    Page 49
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 9/22/99 | AMR | Review subpoenas -- Metzger subpoena; forward to Kurtzman and court; telephone call Kurtzman and Rhine re H&H documents; conference with Alla re reforwarding and adversary proceeding. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | AS | Aff of Service; package for Kurtzman, Letter to Office of the Clerk, package for Court, copies of Subpoenas (1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
|  | AS | new court file for Adversary proceeding (1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | CKR | REG Flowchart (1)(A)(i)/(3)(D)/(4) | 4.50 | 675.00 |
|  | CKR | review letter to B. Quinn asking for new deposition time (1)(A)(i)/(3)(D)/(4) | 0.10 | 15.00 |
|  | CKR | Outline motion for consolidation (1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| 9/23/99 | AMR | Forward discovery mtls to Kurtzman (two letters); review discovery schedules; conference with Alla re same; review pleadings binder; letter to Brenman; revise chart of companies; forward to Prussin and Brenman (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | AS | of Exhibits from Hahn & Hessen for Kurtzman (1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | package for Kurtzman (1)(A)(i)/(3)(D)/(4) | 0.50 | 37.50 |
|  | AS | second set of documents plus package for Kurtzman (1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |

00369

Chariot Group/Summit Metals, Inc.                    Page 50
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 9/23/99 | AS | for Paul Brenman - AMR Letter (Mail and Fax)<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 37.50 |
| | CKR | revise REG flowchart<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 600.00 |
| | CKR | letter requesting deposition times<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |
| 9/24/99 | AMR | Telephone call Prussin; meeting with Prussin and CKR re discovery and pleading; review cases on failure to disclose adverse interest; revise flow chart; telephone call Brenman re same; review cases on insolvency;<br>(1)(A)(i)/(3)(D)/(4) | 7.00 | 1,750.00 |
| | CKR | revise REG flowchart<br>(1)(A)(i)/(3)(D)/(4) | 0.20 | 30.00 |
| 9/27/99 | AMR | Telephone call CKR re def. of insolvency; telephone call Galioto re objections; mailed copy of subpoena; telephone call Friedberg (CIT) re disclosure and subpoena; letter from 730 Park Avenue attorneys;<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| | AS | 5 sets of court papers, AffServ; backs, package for Eisen, set for United<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
| | AS | working with documents<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
| | AS | working with files re Bankruptcy<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
| | CKR | Research failure to disclose adverse interests in bankruptcy<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 450.00 |
| | CKR | Download local rules of bankruptcy court<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |

00370

Chariot Group/Summit Metals, Inc.                           Page 51
March 29, 2006

|          |     |                                                                                                                                                                                                                                                                     | Hours | Amount   |
|----------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 9/27/99  | CKR | Research definition of property in bankruptcy context (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                          | 2.50  | 375.00   |
| 9/28/99  | AMR | Telephone call Friedberg (CIT) re subpoena; review mtn to quash; telephone call Prussin re complaint. (1)(A)(i)/(3)(D)/(4)                                                                                                                                          | 2.50  | 625.00   |
|          | AS  | set up a new court file (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                         | 4.00  | 300.00   |
|          | AS  | fax for Brenman (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                 | 0.33  | 25.00    |
|          | CKR | research failure to disclose cases (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                              | 1.00  | 150.00   |
| 9/29/99  | AMR | Letter to Brenman re Summit documents; telephone call Prussin re no comments yet; review cases re def of insolvency; review memo on disqualification; telephone call Galioto; telephone call Friedberg (1)(A)(i)/(3)(D)/(4)                                          | 5.00  | 1,250.00 |
|          | CKR | Download bankruptcy forms (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                       | 0.50  | 75.00    |
| 9/30/99  | AMR | Letter to Galioto re confid. and BB acct at Chase; telephone call Brenman re revisions of complaint and preference theories, discovery of BB and CIT, inventory of papers produced by Kurtzman, IRS ok re subpoena of tax records, timing of meeting; telephone call Prussin re lack of revisions, date for meeting. (1)(A)(i)/(3)(D)/(4) | 4.50  | 1,125.00 |
|          | CKR | download bankruptcy docket (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                      | 0.50  | 75.00    |
| 10/1/99  | CKR | Meet with AMR to discuss motion to compel production of documents. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                              | 0.50  | 75.00    |

Chariot Group/Summit Metals, Inc.                              Page 52
March 29, 2006

|  |  | | Hours | Amount |
|---|---|---|---|---|
|  | CKR | DRAFT MOTION TO COMPEL PRODUCTION OF DOCUMENTS.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
|  | CKR | RESEARCH RULE 45 AND 37.<br>(1)(A)(i)/(3)(D)/(4) | 2.70 | 405.00 |
|  | AMR | Telephone call Prussin re status; review draft mtn to compel and for comtempt; review mtn for disqualification; letter to Friedman (CIT); telephone call Galioto re disclosures; forward Friedman ltr; telephone call court re misc. proceeding;<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | AS | for Brenman and Friedberg<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 37.50 |
|  | AS | Notice of Deposition for Carlson<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 150.00 |
| 10/4/99 | CKR | MOL: compel compliance and for costs.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 225.00 |
|  | CKR | Notice: motion to compel<br>(1)(A)(i)/(3)(D)/(4) | 1.70 | 255.00 |
|  | CKR | Download local rules for Southern District.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |
|  | CKR | Conference AMR to discuss bankruptcy and notice to compel compliance.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |
|  | CKR | Review rules 37 and 45.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 37.50 |
|  | CKR | Research Southern District local rules.<br>(1)(A)(i)/(3)(D)/(4) | 0.40 | 60.00 |
|  | CKR | Download Docket 142.<br>(1)(A)(i)/(3)(D)/(4) | 0.30 | 45.00 |

Chariot Group/Summit Metals, Inc.                          Page 53
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| | CKR | Review Docket 142 with AMR.<br>(1)(A)(i)/(3)(D)/(4) | 0.10 | 15.00 |
| | CKR | Meet with AMR to assign tasks.<br>(1)(A)(i)/(3)(D)/(4) | 0.10 | 15.00 |
| | AMR | Review mtn to compel; make revisions;<br>telephone call Prussin re absence of<br>comments; letter from Prussin re same;<br>attempt to reach Brenman; telephone<br>call Cenawood re Summit tax filing;<br>attempt to reach misc. clerk; review<br>rules and cover sheets<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| | AS | working with court files<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
| | AS | for Brenman<br>(1)(A)(i)/(3)(D)/(4) | 0.33 | 25.00 |
| 10/5/99 | CKR | Draft memo of law to compel.<br>(1)(A)(i)/(3)(D)/(4) | 1.75 | 262.50 |
| | CKR | Read cases cited on Rule 37.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 225.00 |
| | CKR | Travel time to misc. clerks.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 187.50 |
| | CKR | Meet with misc. clerk.<br>(1)(A)(i)/(3)(D)/(4) | 0.20 | 30.00 |
| | CKR | Draft of notice to compel.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| | CKR | MOL: compel compliance and for costs.<br>(1)(A)(i)/(3)(D)/(4) | 6.25 | 937.50 |
| | AMR | Telephone call Prussin re records;<br>conference with CKR re proceeding for<br>motion to compel; telephone call<br>Galioto re documents; telephone call<br>Friedman re compliance; telephone call | 4.50 | 1,125.00 |

00373

Chariot Group/Summit Metals, Inc.                              Page 54
March 29, 2006

|          |     |                                                                                                                                                                                                        | Hours | Amount   |
|----------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | Brenman re new complaint and inventory of disclosure; review draft complaint (1)(A)(i)/(3)(D)/(4)                                                                                                       |       |          |
|          | AS  | working with court file; set up a new file for Transcript of Proceeding (1)(A)(i)/(3)(D)/(4)                                                                                                            | 2.50  | 187.50   |
| 10/6/99  | AMR | review Brenman draft; tcs Prussin and Brenman re same; letter from Prussin; letter from Brenman (1)(A)(i)/(3)(D)/(4)                                                                                    | 3.25  | 812.50   |
| 10/7/99  | CKR | WL: cases on timely objection to subpoena. (1)(A)(i)/(3)(D)/(4)                                                                                                                                         | 1.00  | 150.00   |
|          | CKR | WL: cases on filing motion in court where subpoena was issued. (1)(A)(i)/(3)(D)/(4)                                                                                                                     | 0.75  | 112.50   |
|          | AMR | Review Prussin docs; meeting with Brenman and Prussin;  further review of Prussin docs and conference with Prussin re scheduling, Gray dep, complaint, etc; conference with Coulter re memo re compel production (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
| 10/8/99  | CKR | Outline: rule 37 arguments . (1)(A)(i)/(3)(D)/(4)                                                                                                                                                       | 0.25  | 37.50    |
|          | CKR | MOL: compel compliance and for costs. (1)(A)(i)/(3)(D)/(4)                                                                                                                                              | 3.50  | 525.00   |
|          | CKR | Notice: motion to compel. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                          | 0.20  | 30.00    |
|          | CKR | Back: for MOL (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                      | 0.20  | 30.00    |
|          | AMR | Revise motion to compel CIT and get out. (1)(A)(i)/(3)(D)/(4)                                                                                                                                           | 2.00  | 500.00   |
|          | CKR | Statute of frauds in Delaware. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                     | 0.50  | 75.00    |

Chariot Group/Summit Metals, Inc.                                        Page 55
March 29, 2006

|  | | | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Review revised complaint; review Prussin exhibits; revise motion to compel CIT and get out.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
|  | AS | 5 sets of Court Papers(made copies, Exhibits)<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AS | Packages for mailing for Kurtzman, and for CIT Group; Fax for Kurtzman.<br>(1)(A)(i)/(3)(D)/(4) | 0.67 | 50.00 |
|  | AS | Trip to Legal department of CIT Group to serve papers.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AS | trip to CIT Group to serve court papers<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
| 10/11/99 | CKR | Statute of Frauds in Delaware .<br>(1)(A)(i)/(3)(D)/(4) | 1.30 | 195.00 |
| 10/12/99 | CKR | Notice: motion to compel.<br>(1)(A)(i)/(3)(D)/(4) | 0.20 | 30.00 |
|  | CKR | File: motion to compel.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 37.50 |
|  | CKR | Travel to Federal Court.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AMR | Arrange for filing of motion; conference with CKR and Alla re same; conference with Coulter re statute of frauds;  review draft complaint; telephone call Prussin re corrections; review financial statements - purported ledgers<br>(1)(A)(i)/(3)(D)/(4) | 4.75 | 1,187.50 |
|  | CKR | Organize binder : Statute of Frauds.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
|  | AS | for Kurtzman | 1.00 | 75.00 |

00375

Chariot Group/Summit Metals, Inc.                              Page 56
March 29, 2006

|          |     |                                                                                                                                                              | Hours | Amount   |
|----------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
|          | AS  | court files                                                                                                                                                       | 3.00  | 225.00   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
| 10/13/99 | AMR | Review draft complaint; telephone call Prussin re complaint; telephone call Brenman re same and Gray dep; draft letter to Kurtzman; telephone call Galioto; review memo on statute of frauds; review ledgers. | 5.50  | 1,375.00 |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
|          | CKR | Organize binder : Statute of Frauds.                                                                                                                              | 2.00  | 300.00   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
|          | AS  | re Subpoenas                                                                                                                                                      | 1.50  | 112.50   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
| 10/14/99 | AMR | Forward letter to Kurtzman; review Summit and CMI accounting mtls; attempt to reach Friedberg.                                                                     | 2.50  | 625.00   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
| 10/15/99 | AMR | Telephone call Brenman re pending discovery and suits.                                                                                                            | 0.50  | 125.00   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
| 10/18/99 | AMR | Tcs Friedberg, Capuder re production of documents; letter to Friedberg; letter to Capuder.                                                                         | 2.00  | 500.00   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
|          | AS  | for Friedberg, Caputer, Kurtzman                                                                                                                                  | 1.50  | 112.50   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
|          | AS  | updated court files                                                                                                                                               | 3.50  | 262.50   |
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                              |       |          |
| 10/19/99 | AMR | Attend mtn part 1--report issue settled; telephone call Prussin re Gray exam and filing of complaint; review opposition to Skarlatos exam; review cases on Westlaw; review memo on confidentiality; work on mtn to compel | 8.50  | 2,125.00 |

Chariot Group/Summit Metals, Inc.                    Page 57
March 29, 2006

|          |     |                                                                                                                                              | Hours | Amount   |
|----------|-----|----------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | Metzger; work on response to Galioto re confidentiality.<br>(1)(A)(i)/(3)(D)/(4)                                                              |       |          |
|          | AS  | prep papers for United (AffServ, slips, backs)<br>(1)(A)(i)/(3)(D)/(4)                                                                        | 2.50  | 187.50   |
|          | AS  | for A. Prussin<br>(1)(A)(i)/(3)(D)/(4)                                                                                                        | 0.75  | 56.25    |
| 10/20/99 | AMR | Telephone calls Capuder, Galioto re subpoenas and production; review memo re confidentiality; review opposition to Skarlatos exam; review cases; telephone call Brenman re Gray exam.<br>(1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
|          | AS  | Westmate<br>(1)(A)(i)/(3)(D)/(4)                                                                                                              | 2.50  | 187.50   |
| 10/21/99 | AMR | Complete mtn re Metzger; forward to Capuder; fax and mail letter to Galioto re response to confidentiality stip; review CKR memo re confidentiality.<br>(1)(A)(i)/(3)(D)/(4) | 3.50  | 875.00   |
|          | AS  | prep AffServ and slip and package for United<br>(1)(A)(i)/(3)(D)/(4)                                                                          | 1.50  | 112.50   |
|          | AS  | 5 sets of Court Papers<br>(1)(A)(i)/(3)(D)/(4)                                                                                                | 2.50  | 187.50   |
| 10/22/99 | AMR | Telephone call CKR re mtn re Metzger<br>(1)(A)(i)/(3)(D)/(4)                                                                                  | 0.25  | 62.50    |
|          | CKR | Travel time to/from Misc, Clerk;<br>(1)(A)(i)/(3)(D)/(4)                                                                                      | 1.00  | 75.00    |
| 10/25/99 | CKR | Draft outline: Debtor confidentiality: file Order to show cause (Metzger); Organize Debtor confidentiality into binder.<br>(1)(A)(i)/(3)(D)/(4) | 4.50  | 675.00   |

Chariot Group/Summit Metals, Inc.                          Page 58
March 29, 2006

|  |  | | Hours | Amount |
|---|---|---|---|---|
| 10/25/99 | CKR | Outline debtor confidentiality; serve Arnold and Capuder; draft Affidavit of Service (Capuder) and (Klehr). (1)(A)(i)/(3)(D)/(4) | 6.10 | 915.00 |
|  | AMR | Arrange re service of osc papers; telephone call Capuder re same; telephone call Quinn re scheduling; review and revise service affts. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
|  | AS | working with court file (1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | CKR | Travel time to Arnold & Capuder. (1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
| 10/26/99 | CKR | Draft Affidavit of Service (Capuder); get Order signed and stamped at Clerk's office; draft Affidavit of Service (Quinn); research cases on lack of accountatnt privilege in bankruptcy; fax copies of Pollack's Order to parties. (1)(A)(i)/(3)(D)/(4) | 5.00 | 750.00 |
|  | AMR | Gather mtls; attend Special 1 re mtn to compel Metzger; prepare order and have submitted; conf call w/ Capuder and Pollack, J.; have served; review mtls on privilege and confidence. (1)(A)(i)/(3)(D)/(4) | 6.00 | 1,500.00 |
|  | AS | AMR Letter re Gray (10 sets of documents for Faxing and mailing (1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AS | for filing in Court (1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | CKR | Travel to/from Judge Pollack's Chambers. (1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
| 10/27/99 | CKR | Review cases on third party standing to challenge subpoenas; attend to catalog of REG unresponsive answers to 2004 | 11.50 | 1,725.00 |

00378

Chariot Group/Summit Metals, Inc.    Page 59
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | examination, met with AMR to discuss new developments; draft catalog of REG unresponsive answers to 2004 examination.<br>(1)(A)(i)/(3)(D)/(4) |  |  |
|  | AMR | Go to document prod. where Friedberg is a no show; telephone call Mindlin re same; draft response to opposition to Skarlatos examination; telephone call Prussin; conference with CKR re authorities<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 10/28/99 | CKR | Research NY cases on debtor confidentiality; organize debtor confidentialty cases.<br>(1)(A)(i)/(3)(D)/(4) | 4.50 | 675.00 |
|  | AMR | telephone call Prussin re complaint; telephone call Schiltz re ESP registration; telephone call Friedberg re subpoena; telephone call Prussin re same; review docket; work on response to opposition re Skarlatos; forward to Gross; telephone call Smotkin and Prussin.<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,500.00 |
|  | AS | working with court file<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 75.00 |
|  | AS | 10 sets of court papers<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
| 10/29/99 | AMR | Revise response to opposition to Skarlatos examination; attempt to reach Gross; forward to subpoenas to Prussin; telephone call Prussin re schedules for discovery; telephone call Schiltz Secy re filing of complaint.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
|  | AS | assemble court papers<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |

Chariot Group/Summit Metals, Inc.                                    Page 60
March 29, 2006

|          |     |                                                                                                                                                                | Hours | Amount |
|----------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 10/29/99 | AS  | AMR response<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                            | 1.50  | 112.50 |
| 11/1/99  | AS  | 10 sets of court papers, mailed, AffServ<br>(1)(A)(i)/(3)(D)/(4)                                                                                                | 5.00  | 375.00 |
|          | AMR | Telephone call Brenman re status; review Brown Bros revision re confidentiality; finalize response re Skarlatos and send to court and others.<br>(1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00 |
|          | CKR | Catalog of REG unresponsive answers to 2004 examination, revise list and format; review forms for holding debtor's in possession in contempt; met with AMR to discuss new filings.<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 750.00 |
|          | AS  | Update file.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                            | 2.00  | 150.00 |
| 11/2/99  | AMR | Telephone call Galioto re production of documents and concepts of confidentiality; telephone call Prussin re same; conference with CKR re motion.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
|          | CKR | research docket; debtor confidentiality.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                | 2.00  | 300.00 |
|          | AS  | Update files.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                           | 5.00  | 375.00 |
| 11/3/99  | AS  | working with a court file<br>(1)(A)(i)/(3)(D)/(4)                                                                                                               | 3.00  | 225.00 |
|          | AMR | Conference with CKR re banks records as confidential; review cases re same; work on moving papers; telephone call Prussin re stip; attempt to reach Galioto; attempt to reach Friedberg; telephone call Capuder re review of documents.<br>(1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00 |

Chariot Group/Summit Metals, Inc.                              Page 61
March 29, 2006

|         |     |                                                                                                                                    | Hours | Amount   |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/3/99 | CKR | Research bank record privileges; draft motion to compel production for Brown brothers. (1)(A)(i)/(3)(D)/(4)                         | 5.00  | 750.00   |
| 11/4/99 | AMR | Review Metzger documents. (1)(A)(i)/(3)(D)/(4)                                                                                      | 3.00  | 750.00   |
|         | CKR | Draft memo of law to compel Brown brothers; compile exhibits. (1)(A)(i)/(3)(D)/(4)                                                  | 8.00  | 1,200.00 |
| 11/5/99 | AS  | Subpoenas for Bank of New York and for Ellen Carlson. (1)(A)(i)/(3)(D)/(4)                                                          | 3.50  | 262.50   |
|         | AMR | Formulate questions for Metzger; draft afft re Brown Bros motion; review and revise memo of law; conference with CKR re service; conference with Alla re service on Carlson. (1)(A)(i)/(3)(D)/(4) | 5.50  | 1,375.00 |
|         | CKR | Finish motion to compel Brown brothers; make copies; notice of motion; serve on Rogers and Wells. (1)(A)(i)/(3)(D)/(4)             | 7.00  | 1,050.00 |
| 11/8/99 | AS  | AffServ and correspondence for mailing - for Summit (Adv) (1)(A)(i)/(3)(D)/(4)                                                      | 1.50  | 112.50   |
|         | AS  | trip to Carlson to deliver Subpoena (1)(A)(i)/(3)(D)/(4)                                                                            | 1.33  | 100.00   |
|         | AS  | prep documents for new court papers (1)(A)(i)/(3)(D)/(4)                                                                            | 2.00  | 150.00   |
|         | AMR | Telephone call Friedberg re discovery; telephone call Brenman (2) and Prussin re CH. 7 motion; review provision; conference with CKR re preclusion motion, motion to compel Brown Bros; review docket, etc. (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |

00381

Chariot Group/Summit Metals, Inc.                          Page 62
March 29, 2006

|          |     |                                                                                                                                                                                                                                                                           | Hours | Amount   |
|----------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/8/99  | CKR | Copies of motion to compel Brown brothers; prepare motion for service on Klehr; discuss case with AMR; affidavit of service for Brown and Klehr; research sanctions for discovery violations.<br>(1)(A)(i)/(3)(D)/(4)                                                        | 11.00 | 1,650.00 |
| 11/9/99  | CKR | Copies of motion to compel; research inverse piercing and downloading of documents; download Bcy docket; pick up Metzger Docs at Wall Street; file motion to compel Brown Brothers with SDNY.<br>(1)(A)(i)/(3)(D)/(4)                                                        | 6.00  | 900.00   |
|          | AMR | Telephone call and letter from Prussin re 12/9 date for trial of summary judgment; telephone call Cenawood re status of IRS deal; consider options for preclusion motions; telephone call Luke and Galioto re motion; arrange w/ CKR re filing; telephone call Capuder re documents and questions for Metzger; telephone call Hector re subpoena on Bank of New York.<br>(1)(A)(i)/(3)(D)/(4) | 5.50  | 1,375.00 |
|          | CKR | Tvl to court to file motion and pick up Metzger papers.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                            | 1.00  | 75.00    |
| 11/10/99 | AS  | Westmate Capter 11 cases and key research<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                          | 4.50  | 337.50   |
|          | AMR | Review CIT docs; telephone calls Prussin re same; telephone call Galioto; review stip; review mtn to convert; telephone call Case; tcs Prussin, Brenman, Carucci, Coulson, Giglietti, Cala, Babbit; telephone call Walrath secy; review conversion cases; conference with CKR re preclusion mtn<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |

Chariot Group/Summit Metals, Inc.                    Page 63
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 11/10/99 | CKR | Research Preclusion of evidence because of discovery violations. (1)(A)(i)/(3)(D)/(4) | 4.00 | 600.00 |
| 11/11/99 | AS | Westmate cases re Bankruptcy 1USCA§§706,1112 (1)(A)(i)/(3)(D)/(4) | 4.00 | 300.00 |
|  | AMR | Tcs Galioto are conf; agmt; telephone call Prussin re same; telephone call Brenman re opposition to conversion; review cases on conversion to 11; conference with CKR re motion to preclude; review Metzger documents; prepare questions. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | CKR | Research dismissal of claim for discovery sanctions (cite checking). (1)(A)(i)/(3)(D)/(4) | 4.50 | 675.00 |
| 11/12/99 | AMR | Tcs Galioto and Prussin re stipulations and withdrawal of motion; review Moshe documents; telephone call Brenman re opposition to conversion; telephone call Prussin re same; conference with CKR re preclusion motions. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
|  | CKR | Research dismissal of claim for discovery sanctions. (1)(A)(i)/(3)(D)/(4) | 5.00 | 750.00 |
| 11/13/99 | CKR | Telephone call with SDNY clerk concerning withdrawing motion to compel Brown brothers; research into preclusion of evidence; organize cases. (1)(A)(i)/(3)(D)/(4) | 3.50 | 525.00 |
| 11/14/99 | AMR | Draft mtn to dismiss. (1)(A)(i)/(3)(D)/(4) | 3.50 | 875.00 |
| 11/15/99 | AS | Motion by Defendants for Order of Dismissal – 10 sets of court papers (1)(A)(i)/(3)(D)/(4) | 5.00 | 375.00 |

00383

Chariot Group/Summit Metals, Inc.                          Page 64
March 29, 2006

|          |     |                                                                                                                                                                                                         | Hours | Amount   |
|----------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/15/99 | AMR | Telephone call Brenman re opposition to conversion and plan; draft mtn to dismiss; review CKR research; conference with Alla re dates, etc; revise same; review tax returns; review Prussin motion. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
|          | CKR | Organize cases on preclusion of evidence and dismissal; draft MOL to dismiss. (1)(A)(i)/(3)(D)/(4)                                                                                                       | 6.50  | 975.00   |
| 11/16/99 | AS  | Motion by Defendants for Order of Dismissal – 10 sets of court papers (1)(A)(i)/(3)(D)/(4)                                                                                                               | 4.00  | 300.00   |
|          | AS  | analyzing Bank Statements for Chariot Man transfers (1)(A)(i)/(3)(D)/(4)                                                                                                                                 | 2.50  | 187.50   |
|          | AMR | Work on mtn to dismiss; review financial statements; telephone calls Prussin re mtn for summary judgment; review mtls on earmarking. (1)(A)(i)/(3)(D)/(4)                                                | 5.00  | 1,250.00 |
|          | CKR | Draft and revise memorandum of law to preclude evidence and dismiss case. (1)(A)(i)/(3)(D)/(4)                                                                                                           | 4.00  | 600.00   |
| 11/18/99 | AMR | Telephone call Brenman re status of motion; telephone call Prussin re motion for summary judgment; conference with AS re exhibits; conference with CKR re earmarking; review CIT docs; calls re adjournment of Metzger deposition (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 11/19/99 | CKR | Research earmarking doctrine to defend against preference action. (1)(A)(i)/(3)(D)/(4)                                                                                                                   | 2.00  | 300.00   |
|          | AMR | telephone call Brenman re status of motion; Review Prussin Afft.                                                                                                                                         | 0.50  | 125.00   |

Chariot Group/Summit Metals, Inc.                                Page 65
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 11/21/99 | AMR | Draft osc re augmenting record. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 11/22/99 | AMR | Complete draft of mtn to dismiss; fax to Gross; conference with CKR; telephone call Brenman re plan and scheduling; telephone call Cenawood re IRS, fence sitting position. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
|  | CKR | Revise and prepare motion to preclude and dismiss; fax to K. Gross; organize and research on earmarking doctrine. (1)(A)(i)/(3)(D)/(4) | 2.50 | 375.00 |
|  | AS | trip to Court to pick up signed Order to Show Cause (1)(A)(i)/(3)(D)/(4) | 3.50 | 262.50 |
|  | AS | prep 3 packages for mailing/ serve upon parties (1)(A)(i)/(3)(D)/(4) | 1.50 | 112.50 |
|  | AMR | put together osc re augmenting record; conference with AS re same (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 11/23/99 | AMR | Calls to CKR re completion of mtn to dismiss. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
|  | AS | prep affSev, AMR Letter to Court, 10 packages of Court papers for mailing (1)(A)(i)/(3)(D)/(4) | 4.50 | 337.50 |
| 11/24/99 | JCC | Mtg. with C. Richardson re and review Del. U.S.D.C. local rules re briefs, motions. (1)(A)(i)/(3)(D)/(4) | 0.10 | 14.50 |
|  | CKR | Revise motion to preclude and dismiss to conform to Del rules. (1)(A)(i)/(3)(D)/(4) | 6.00 | 900.00 |

Chariot Group/Summit Metals, Inc.                           Page 66
March 29, 2006

|          |     |                                                                                                                              | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/26/99 | AMR | Telephone call Brenman, Prussin re Kelly.<br>(1)(A)(i)/(3)(D)/(4)                                                             | 1.00  | 250.00   |
| 11/29/99 | CKR | Revise motion to dismiss and preclude.<br>(1)(A)(i)/(3)(D)/(4)                                                                | 4.50  | 675.00   |
|          | AMR | review memo of law re dismissal; revise<br>(1)(A)(i)/(3)(D)/(4)                                                               | 1.00  | 250.00   |
| 11/30/99 | CKR | Revise motion and MOL to send to K. Gross; re-format in WP; compile exhibits; draft cover letter.<br>(1)(A)(i)/(3)(D)/(4)     | 3.00  | 450.00   |
|          | AS  | AfServ<br>(1)(A)(i)/(3)(D)/(4)                                                                                                | 1.00  | 75.00    |
|          | AMR | Review memo of law re dismissal; forward to to Gross<br>(1)(A)(i)/(3)(D)/(4)                                                  | 1.50  | 375.00   |
| 12/1/99  | AMR | Telephone call Brenman re scheduling of meetings and hearings; fax to Gross; review Brenman ltr; conference with Prussin; review Brown Bros documents; forward Homestar complaint to Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 12/2/99  | CKR | Meet with AMR about disqualification and discovery; review files for evidence of conflict of interest on part of Klehr Harrison; revise MOL to disqualigy Klehr; review docket in Del Bcy court; discuss motions and strategy with AMR and AP.<br>(1)(A)(i)/(3)(D)/(4) | 2.50  | 375.00   |
| 12/3/99  | AMR | Letter to Galioto; telephone call Galioto re Chase acct.;  telephone call Prussin re strategy, Gray calls to Carucci and Coulson, asking for more in the contempt; review memos re disqual. and disgorgement disgorgement.<br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |

Chariot Group/Summit Metals, Inc.                          Page 67
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 12/7/99 | CKR | Research bad faith offers of settlement; revise MOL and motion to include table of authorities and add cases; discuss court appearance with AMR; telephone A. Prussin to request a copy of the settlement offer; review same. (1)(A)(i)/(3)(D)/(4) | 5.00 | 750.00 |
|  | AMR | review Brown Bros. docs.; prepare for Wed hearings; (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 12/8/99 | AMR | attend ct re additional mtls re contempt; telephone call Brenman re adjournment of hearing; misc calls re same; conference with CKR re bribe offer; telephone call and letter to Galioto re use of BPH memo. (1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 12/10/99 | CKR | Research bribery; photocopies of Brown brothers docs; discuss future filings with AMR . (1)(A)(i)/(3)(D)/(4) | 1.50 | 225.00 |
|  | AMR | Draft lts to Cozier and Walrath re new injunction violation and bribe; review bankruptcy statute; telephone call Prussin re defaults; telephone call Case re same and status of MO action; inquiries re Cozier decision; telephone call Galioto re agreement on use of exec. summary (1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
| 12/13/99 | CKR | Make copies of Chariot docs for A. Prussin; draft letter to A. Prussin concerning duty to inform authorities of unethical behavior; revise motion and MOL to disqualify Klehr to add new info; check docket. (1)(A)(i)/(3)(D)/(4) | 6.00 | 900.00 |

00387

Chariot Group/Summit Metals, Inc.                          Page 68

March 29, 2006

|          |     |                                                                                                                                                                         | Hours | Amount   |
|----------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 12/13/99 | AMR | review Klehr application; telephone call Prussin re status; telephone call Galioto re approval of release; review CKR ltr to Prussin re referral; work on motion for disqual. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 12/14/99 | AMR | telephone call Cozier's office; review order; telephone call Prussin, re same and hearing; review application for fees; work on motion (1)(A)(i)/(3)(D)/(4)             | 4.00  | 1,000.00 |
| 12/17/99 | AMR | review default order; telephone call Prussin re standards to vacate; K&F appeal papers and timing (1)(A)(i)/(3)(D)/(4)                                                  | 2.00  | 500.00   |
| 12/20/99 | AMR | Telephone call Prussin re K&F requests for delay of ref. hearing; telephone call Coulter re docket of adversary and filing of motion; review mtn for disqualification and disgorgement. (1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00   |
| 12/22/99 | AMR | Telephone call Prussin re upcoming hearings and proof of issues;  message to Brenman re time; attempt to reach Galioto. (1)(A)(i)/(3)(D)/(4)                            | 1.00  | 250.00   |
| 12/23/99 | AMR | telephone call Prussin re hearings in Jan; complete opposition to fees (1)(A)(i)/(3)(D)/(4)                                                                             | 1.00  | 250.00   |
| 12/26/99 | AMR | Telephone call Prussin re mtn to vacate, contempt, etc.; send over Rivco mgt records; review Brown Bros. records.; review mtns to vacate default; telephone call Brenman; draft letter to Brenman. (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |

Chariot Group/Summit Metals, Inc.                    Page 69
March 29, 2006

|          |     |                                                                                                                                                   | Hours | Amount   |
|----------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 12/27/99 | CKR | Go to A. Prussin's office to deliver and receive docs; discuss strategy with Prussin; compile docs for DA; research cases on vacating jts in bcy. (1)(A)(i)/(3)(D)/(4) | 6.00  | 900.00   |
|          | AMR | review mtns to vacate; review Rockefeller case; begin dfting response. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 12/29/99 | AMR | telephone call Prussin; review cases; work on opposition; letter to Brenman re time records. (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,500.00 |
| 12/30/99 | AMR | Prepare opposition to mtns to vacate default; review motions; review Prussin opp.; telephone call Prussin; review Brown Bros., CIT and Fleet records re same. (1)(A)(i)/(3)(D)/(4) | 7.00  | 1,750.00 |
| 12/31/99 | AMR | Revise opposition to motions to vacate default; select and copy exhibits; Letter to Galioto re use of documents, e.g. Harcar bank statements. (1)(A)(i)/(3)(D)/(4) | 4.25  | 1,062.50 |
| 1/3/00   | CKR | Organize opposition to motion to vacate judgment and exhibits; bind documents for presentation; serve via UPS; draft letter to P. Brenman directing no further adjournments. (1)(A)(i)/(3)(D)/(4) | 5.50  | 825.00   |
|          | AMR | complete opposition to motions to vacate; telephone call Prussin re contempt hearing; review Wolf Block time records-- (1)(A)(i)/(3)(D)/(4) | 4.50  | 1,125.00 |
| 1/4/00   | CKR | Research Bad faith purchase of claims in bcy; review defenses to motion to vacate; conference call with unsecured creditors committee; serve A.M. | 3.50  | 525.00   |

Chariot Group/Summit Metals, Inc.                                    Page 70
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| | | Richardson opposition to motion to vacate on M. Hepworth at Piper Marbury. (1)(A)(i)/(3)(D)/(4) | | |
| | AMR | conference with CKR re service on Piper; review cases on bad faith acquisition of claims; plan interference (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 1/5/00 | CKR | Research USC section 152 and bad faith forebearance in Bcy voting. (1)(A)(i)/(3)(D)/(4) | 1.50 | 225.00 |
| | AMR | review filings; forward opposition to Rhine; prepare for 1/6/00; review buying of claim cases; telephone call CKR re same (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 1/6/00 | AMR | Attend hearing in Wilmington. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| | AMR | Tvl to Wilmington for hearings. (1)(A)(i)/(3)(D)/(4) | 3.00 | 375.00 |
| 1/7/00 | AMR | draft letter to Walrath re conversion (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 1/10/00 | AMR | Review Prussin doc. request; telephone call Prussin re same; telephone call Rhine re notice of entry re opening of proceedings; review pleadings (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 1/11/00 | CKR | Research restaement of law on trusts; restitution; contract; and agency as it relates to bankruptcy and fiduciary duty; review Gellene case; revise motion to enlarge request for relief; review case file. (1)(A)(i)/(3)(D)/(4) | 4.50 | 675.00 |

Chariot Group/Summit Metals, Inc.                          Page 71
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 1/13/00 | AMR Review Houlihan Lokey memo; telephone call Smotkin re theories; review subpoenas to BBH, Houlihan, Warburg, PNC bank, etc., ; comments to Prussin re same and Houlihan $8 mil. <br> (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 1/19/00 | CKR Review DE local rules; review case law on earmarking; review case file for adversary proceedings <br> (1)(A)(i)/(3)(D)/(4) | 1.80 | 270.00 |
|  | AMR Telephone call Prussin re referee hearing. <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 1/21/00 | AMR Telephone call Brenman re status; calls re transcript; review Prussin subpoenas. <br> (1)(A)(i)/(3)(D)/(4) |  |  |
| 1/27/00 | AMR preparation for argument 2/1/00 <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 1/28/00 | CKR Review case file; review docket on WWW; review letter from bcy court. <br> (1)(A)(i)/(3)(D)/(4) | 1.60 | 240.00 |
| 1/31/00 | AMR review memo of law; calls re rescheduling; telephone call Prussin re sj mtn, contempt, subpoenas, etc. <br> (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 2/2/00 | CKR Review opposition to motion for dismissal by KH;  discuss same with AMR. <br> (1)(A)(i)/(3)(D)/(4) | 1.25 | 187.50 |
| 2/3/00 | AMR telephone call Prussin re bond, status of contempt, Potter Anderson request, review of 18 U.S.C. 3057, telephone call Brenman re pending motion <br> (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 2/4/00 | AMR review objections to motion to dismiss; telephone call Brenman re subordinating claims v. Klehr to larger objectives <br> (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |

Chariot Group/Summit Metals, Inc.                                    Page 72
March 29, 2006

| | | Hours | Amount |
|---|---|---|---|
| 2/7/00 | AMR telephone call Prussin re mtn to tsfr; attempt to seal record of hearing<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 2/8/00 | CKR Review case file; search for instances of CFI and other irregularities.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| | AMR review mtn papers; obtain tscrpt; review same; review CSC opinion<br>(1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 2/9/00 | CKR Discuss new filings with AMR; copy deposition.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| | CKR Research recent decision in Daido Steel concerning potential assets of the estate and inconsistancies in REG prior testimony.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 75.00 |
| | AMR Telephone call Prussin re CSC; review opinion; fax documents; review transcript.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 2/10/00 | AMR Tcs Prussin re status -- schedule for sj, discussions w/ Brenman re tsfr mtn, call from CIT lawyer re tsfr of ESP assets, CSC mtls and response to transcript.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 2/11/00 | AMR telephone call Brenman re opposition to transfer motion; review motion papers re tsfr and re resealing contempt papers; begin work on response .<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
| 2/12/00 | AMR Draft response papers to resealing motion.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |

00392

Chariot Group/Summit Metals, Inc.                        Page 73
March 29, 2006

|         |     |                                                                                                                                                                                                                                                                                          | Hours | Amount   |
|---------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 2/14/00 | CKR | Draft affidavit of service of opp of motion to seal record; research withdrawal of reference; download and print.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                     | 3.20  | 480.00   |
|         | AMR | Oversee submission of papers to Cozier; telephone call Prussin re investigation of imaginary stockholders; review Prussin submission; review transfer cases.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                          | 4.50  | 1,125.00 |
| 2/15/00 | AMR | Attend court re motion to seal contempt record; conference with Prussin re new motion re ESP financing; telephone call Brenman re 2/22 proceedings.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                    | 3.50  | 875.00   |
| 2/16/00 | AMR | Telephone call Prussin re status of proceedings -- Brenman default on reference withdrawal motion, etc.; fax from Brenman re negotiations w/ Gray.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                     | 1.00  | 250.00   |
| 2/18/00 | CKR | Research removal of action to District Court.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                         | 1.80  | 270.00   |
|         | AMR | telephone call Linda for Carucci re Brenman screw up; draft fax; telephone call Prussin; rsrch on issue of core proceedings, withdrawal of reference, etc.; review revised scheduling letter; conference with Prussin; review brief in opposition to motion for summary judgment.<br>(1)(A)(i)/(3)(D)/(4) | 7.00  | 1,750.00 |
| 2/19/00 | AMR | Work on presentation for 2/22/00; telephone call Prussin re Gray summary judgment papers.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                             | 3.00  | 750.00   |
| 2/20/00 | AMR | work on presentation<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                                                  | 2.00  | 500.00   |

00393

Chariot Group/Summit Metals, Inc.                    Page 74
March 29, 2006

|         |                                                                                                                              | Hours | Amount |
|---------|------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 2/21/00 | AMR telephone call Prussin re Rule 45; work on presentation; review Gray brief; review 8/30/95 afft; review submission re default (1)(A)(i)/(3)(D)/(4) | 3.50 | 875.00 |
| 2/22/00 | CKR Discuss plan of action in Bcy case with AMR. (1)(A)(i)/(3)(D)/(4) | 0.25 | 37.50 |
|         | AMR Attend hearing in Delaware -- re disqual, remove ref, summary judgment, plan; discussions w/ Prussin re issues in sj and removal of reference. (1)(A)(i)/(3)(D)/(4) | 3.00 | 750.00 |
|         | AMR Tvl to Wilmington. (1)(A)(i)/(3)(D)/(4) | 3.00 | 375.00 |
| 2/23/00 | CKR Review opposition to motion for SJ. (1)(A)(i)/(3)(D)/(4) | 0.25 | 37.50 |
|         | AMR Telephone call Prussin re withdrawal of ref and summary judgment; review statute; telephone call Victor, etc. re cases (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 2/24/00 | CKR Review and organize cases for withdrawal of reference; contact SEC concerning CSS; attempt to do same with NYAG. (1)(A)(i)/(3)(D)/(4) | 1.10 | 165.00 |
|         | AMR Telephone call Prussin re Houlihan discussion and reply on summary judgment. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 2/25/00 | AMR tcs Prussin re submissions on contempt; Borow afft, etc.; review Gray afft; telephone call Cenawood re motion to withdraw reference; review K&F defense; | 2.50 | 625.00 |

Chariot Group/Summit Metals, Inc.                          Page 75
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | fax mtls (plan and withdrawal mtn) to Cenawood. (1)(A)(i)/(3)(D)/(4) |  |  |
| 2/28/00 | CKR | Telephone call to NYAG to find out info on registered companies; confer with AMR about P. Brenman; withdrawal of reference; check docket. (1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
|  | AMR | telephone call Prussin re Houlihan affidavit; review letter re same; discussions of AMW "stockholders"; calls re meeting with FR; discussions w/ Prussin re summary judgment; review court order re non-core proceedings; telephone call Prussin re same; review docket re "pro se" filings; review code re appeal procedures; inquire re BONY subpoena (1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 3/1/00 | AMR | review Prussin summary judgment brief; telephone call Prussin re same (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 3/2/00 | AMR | Telephone call Prussin; fax consent decision; telephone call Prussin re judgment; review Prussin brief; telephone call Prussin re same (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
|  | CKR | Review case file concerning IRS judgment. (1)(A)(i)/(3)(D)/(4) | 0.90 | 135.00 |
| 3/3/00 | AMR | Telephone call Prussin re motions to quash; review Prussin affidavit and brief re mtn for sj (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 3/6/00 | AMR | Review docket items; work on order and letter to Gross; telephone call Prussin re pending motion re ESP. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |

Chariot Group/Summit Metals, Inc.                     Page 76
March 29, 2006

|         |                                                                                                                                                  | Hours | Amount |
|---------|--------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 3/6/00  | CKR Organize and copy pro se filings; conference with AMR re: adversary proceeding. (1)(A)(i)/(3)(D)/(4)                                          | 2.20  | 330.00 |
|         | CKR Conference with AMR re: adversary proceeding. (1)(A)(i)/(3)(D)/(4)                                                                            | 0.25  | 37.50  |
| 3/7/00  | AMR telephone call Prussin re scheduling of motions, proposed meeting with Brenman & Kurzman re settlement. (1)(A)(i)/(3)(D)/(4)                  | 0.50  | 125.00 |
| 3/8/00  | AMR Review papers re motion to require ct approval of ESP financing; telephone call Prussin re news from Del, pending motions, etc; telephone call Case re status of Missouri proceedings. (1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
| 3/9/00  | AMR attempt to reach Brenman; telephone call Prussin re role of Butler, also representing PBGC; (1)(A)(i)/(3)(D)/(4)                              | 0.75  | 187.50 |
| 3/13/00 | AMR Review referee decision and court order; attempt to reach Brenman; telephone call Prussin; fax mtls to Gordon, Cenawood. (1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
| 3/14/00 | AMR next steps re adversary proceeding; work out next steps; begin work on AMR adversary. (1)(A)(i)/(3)(D)/(4)                                    | 3.00  | 750.00 |
| 3/15/00 | AMR telephone call CKR re theories re CGR; telephone call Prussin re reversion to state court, appeal of contempt, mtns to quash; calls re representation (1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
| 3/16/00 | CKR Research filing of Corporation in                                                                                                            | 0.90  | 135.00 |

Chariot Group/Summit Metals, Inc.                          Page 77
March 29, 2006

|         |                                                                                                                      | Hours | Amount   |
|---------|----------------------------------------------------------------------------------------------------------------------|-------|----------|
|         | Delaware; download forms; conference with AMR.<br>(1)(A)(i)/(3)(D)/(4)                                                |       |          |
| 3/17/00 | AMR outline of proof for trial<br>(1)(A)(i)/(3)(D)/(4)                                                                | 2.00  | 500.00   |
| 3/22/00 | CKR Obtain most recent docket and copy.<br>(1)(A)(i)/(3)(D)/(4)                                                       | 0.20  | 30.00    |
|         | AMR Prepare and send mtls filed in Del to Gross for review; telephone call Prussin re status.<br>(1)(A)(i)/(3)(D)/(4) | 1.50  | 375.00   |
| 3/24/00 | AMR assemble trial prep mtls, and info re representation<br>(1)(A)(i)/(3)(D)/(4)                                      | 1.00  | 250.00   |
| 3/27/00 | AMR Work on trial prep;<br>(1)(A)(i)/(3)(D)/(4)                                                                       | 2.50  | 625.00   |
| 3/28/00 | AMR prepare trial outline; telephone call CKR re research issues.<br>(1)(A)(i)/(3)(D)/(4)                             | 4.50  | 1,125.00 |
| 3/29/00 | CKR Send disclosure statement to Prussin; research implying facts against non-complying party in discovery, research majority shareholder duties.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 150.00 |
| 3/30/00 | AMR review trial prep. mtls<br>(1)(A)(i)/(3)(D)/(4)                                                                   | 2.00  | 500.00   |
| 4/5/00  | AMR review trial outline; conference with CKR re same<br>(1)(A)(i)/(3)(D)/(4)                                        | 0.50  | 125.00   |
| 4/10/00 | AMR review documents relating to tro and injunction -- sj motion<br>(1)(A)(i)/(3)(D)/(4)                             | 2.00  | 500.00   |
| 4/14/00 | AMR telephone call Prussin re approval of                                                                            | 1.00  | 250.00   |

Chariot Group/Summit Metals, Inc.                           Page 78
March 29, 2006

|         |                                                                                                                                              | Hours | Amount   |
|---------|----------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|         | financing -- don't want takeover an event of default; more info re plan (1)(A)(i)/(3)(D)/(4)                                                  |       |          |
| 4/19/00 | CKR Review Preference action; discuss with AMR defenses. (1)(A)(i)/(3)(D)/(4)                                                                 | 0.90  | 135.00   |
| 4/20/00 | CKR Meeting with expert witness to go over requirements for testimony at Bcy proceeding; print flow chart. (1)(A)(i)/(3)(D)/(4)               | 0.60  | 90.00    |
|         | AMR meeting with Newkirk re acctg representation; review Harcar financials; telephone call Prussin re money trail; telephone call Case; message to Cenawood. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
| 4/21/00 | AMR draft letter to Singer; review retainer ltr and forward to. (1)(A)(i)/(3)(D)/(4)                                                          | 1.00  | 250.00   |
| 4/26/00 | AMR telephone call Brenman re scheduling; telephone call court re same; attempt to reach Kurtzman; attempt to reach Singer.  Assemble exhibits. (1)(A)(i)/(3)(D)/(4) | 3.50  | 875.00   |
| 4/27/00 | AMR Attend trial on adversary in Wilmington; preparation en route;meeting with Singer . (1)(A)(i)/(3)(D)/(4)                                  | 4.00  | 1,000.00 |
|         | CKR Conference with AMR about Preference case in DE on Chariot matter. (1)(A)(i)/(3)(D)/(4)                                                    | 0.50  | 75.00    |
|         | AMR Tvl to Wilmington. (1)(A)(i)/(3)(D)/(4)                                                                                                    | 3.00  | 375.00   |
| 5/1/00  | AMR Telephone call Prussin re sj argument; review letter from Gross; telephone                                                                 | 0.50  | 125.00   |

00398

Chariot Group/Summit Metals, Inc.                          Page 79
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | call Gordon re hearing; telephone call Singer re same. (1)(A)(i)/(3)(D)/(4) |  |  |
| 5/5/00 | AMR | Telephone call Prussin re discussions w/ Polevy (CIT atty), proof of tax case, taxability of sale; etc. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 5/8/00 | AMR | telephone call Prussin re "bounty agreement". Review IRS papers. Attempt to reach McMahon. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 5/16/00 | AMR | phone conf. re CIT default provision (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 5/23/00 | AMR | review Prussin requests to admit; telephone call AP re same and status of discovery. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 5/30/00 | AMR | telephone call Prussin re firm change, status of pending motions, request for admissions, etc.; advise re CMI suit (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 6/1/00 | AMR | conference with CKR re rules for sealing of files; review 26(c) mtls. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 6/9/00 | AMR | Review CKR research re sealing of records (1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 6/10/00 | AMR | Revise letter to Chin; review mtn to unseal. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 6/12/00 | AMR | review mtls from Brenman re lower numbers for s/h; telephone call Brenman re same (1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |

00399

Chariot Group/Summit Metals, Inc.                              Page 80
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 6/13/00 | AMR  Attempt to reach Prussin; conference with CKR re standards for opening record to public access (1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 6/15/00 | AMR telephone call Prussin re status and settlement discussions w/ Gray; (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 6/16/00 | AMR work on letter to Pepper; review mandatory abstention (1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 6/19/00 | AMR review Klehr motion for fees; (1)(A)(i)/(3)(D)/(4) | 0.33 | 83.33 |
| 6/20/00 | AMR Draft letter to Pepper (Daido); letter to Prussin; forward to application for retention. (1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 6/21/00 | AMR review docs re transmission to Singer; revise record re advance indemnification. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AMR telephone call Prussin re change of counsel; Daido Steel; notices of pendency. (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 6/22/00 | AMR telephone call Pepper re estate claim to Daido settlement; draft letter to Pepper. (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 6/23/00 | AMR draft letter to Chin re intervention and settlement (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
|  | AMR draft letter to Singer re approaches to trial (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 6/24/00 | AMR letter to Singer; fedex mtls to Singer (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |

Chariot Group/Summit Metals, Inc.                              Page 81
March 29, 2006

|          |                                                                                                                                                           | Hours | Amount |
|----------|-----------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 6/26/00  | AMR telephone call Prussin re ESP and potential letter to Cozier -- Prussin to send financials; review and update letter to Chin; look up Jenkins address and Alabama lawyers (1)(A)(i)/(3)(D)/(4) | 1.25  | 312.50 |
| 6/27/00  | AMR modify letter to Buchwald re conflict of interest; review ESP financials; (1)(A)(i)/(3)(D)/(4)                                                         | 1.50  | 375.00 |
|          | AMR revise letter to Buchwald. (1)(A)(i)/(3)(D)/(4)                                                                                                        | 0.75  | 187.50 |
| 6/29/00  | AMR revise letter to Buchwald (1)(A)(i)/(3)(D)/(4)                                                                                                         | 0.50  | 125.00 |
| 6/30/00  | AMR complete and forward letter to Pepper; on line check of Cozier decisions; work on letter to Cozier; revise letter to Buchwald (1)(A)(i)/(3)(D)/(4)     | 2.50  | 625.00 |
| 7/1/00   | AMR send out letter to Buchwald (1)(A)(i)/(3)(D)/(4)                                                                                                       | 0.25  | 62.50  |
| 7/11/00  | AMR telephone call Prussin re Ben whereabouts; status of contempt mtn and ESP problems; (1)(A)(i)/(3)(D)/(4)                                               | 0.50  | 125.00 |
| 7/13/00  | AMR letter from Brenman re Gray confidentiality proposal; draft letter to Cozier (1)(A)(i)/(3)(D)/(4)                                                      | 0.75  | 187.50 |
| 7/19/00  | AMR review Sweet decision (1)(A)(i)/(3)(D)/(4)                                                                                                             | 0.33  | 83.33  |
| 7/21/00  | AMR review Commodore bankruptcy decision; review ESP financials for 98,97,96 (1)(A)(i)/(3)(D)/(4)                                                          | 1.00  | 250.00 |
| 7/24/00  | CKR conference AMR re public disclosure of files                                                                                                          | 0.17  | 25.00  |

00401

Chariot Group/Summit Metals, Inc.                          Page 82
March 29, 2006

|         |                                                                                                                                                      | Hours | Amount |
|---------|------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
|         | (1)(A)(i)/(3)(D)/(4)                                                                                                                                  |       |        |
| 7/26/00 | AMR revise letter to Cozier; review Sweet contempt decision. (1)(A)(i)/(3)(D)/(4)                                                                     | 1.25  | 312.50 |
| 7/28/00 | AMR conf call w/ Brenman and Prussin re attorneys only view of plan; organize trial exhibits. (1)(A)(i)/(3)(D)/(4)                                    | 1.00  | 250.00 |
| 7/31/00 | AMR Review and catalog evidence re mtn to consolidate or dismiss. (1)(A)(i)/(3)(D)/(4)                                                                | 3.50  | 875.00 |
| 8/1/00  | AMR sort evidence. (1)(A)(i)/(3)(D)/(4)                                                                                                               | 0.50  | 125.00 |
| 8/4/00  | AMR Review and organize trial exhibits. (1)(A)(i)/(3)(D)/(4)                                                                                          | 2.50  | 625.00 |
|         | AMR review Klehr's latest application for fees. (1)(A)(i)/(3)(D)/(4)                                                                                  | 0.25  | 62.50  |
| 8/7/00  | AMR organize trial exhibits; letter from Brenman re Gray plan. (1)(A)(i)/(3)(D)/(4)                                                                   | 1.50  | 375.00 |
| 8/8/00  | AMR review and organize evidence (1)(A)(i)/(3)(D)/(4)                                                                                                 | 1.50  | 375.00 |
| 8/9/00  | CKR Research bankruptcy docket. (1)(A)(i)/(3)(D)/(4)                                                                                                  | 1.75  | 262.50 |
|         | AMR Update pleadings; review docket; conference with CKR re same. (1)(A)(i)/(3)(D)/(4)                                                                | 2.00  | 500.00 |
| 8/10/00 | AMR Review pleadings by U.S. Trustee; attempt to call (lv word); telephone call Prussin re status; revise letter to Cozier; telephone call Case; telephone call Prussin re implications of settlement. (1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00 |

00402

Chariot Group/Summit Metals, Inc.                          Page 83
March 29, 2006

|         |     |                                                                                                                                                                                                                                                              | Hours | Amount   |
|---------|-----|------|------|
| 8/11/00 | AMR | attempt to reach Case; complete and forward to letter to Cozier; fax Sweet mtls to Cozier; telephone call Prussin re Gray plan -- reportedly worse than before; draft letter to Singer re proposed steps.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
|         | AMR | draft letter to Singer re proposed steps.<br>(1)(A)(i)/(3)(D)/(4) | 1.25 | 312.50 |
| 8/14/00 | AMR | work on memo to Singer<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 187.50 |
| 8/15/00 | AMR | complete memo to Singer<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 8/16/00 | AMR | telephone call St. L. bankruptcy services; telephone call Prussin; review Quinn afft; review 341; memo to Adam Singer; telephone call DiFranco of PBGC; forward transcript re AMW Recovery to DiFranco; telephone call Stim re collection of judgment and advice from local counsel re levy.<br>(1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 8/23/00 | AMR | letter to Cozier re ESP urgency;<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
|         | AMR | letter to Giannirakis re amount due on note; correct calculations;<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 8/24/00 | CKR | Research public disclosure of court records as public documents<br>(1)(A)(i)/(3)(D)/(4) | 1.75 | 262.50 |
|         | AMR | review defts notices to admit and interrogatories; telephone call Prussin re same; review letter to Giannirakis, fax and send out.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |

00403

Chariot Group/Summit Metals, Inc.                          Page 84
March 29, 2006

|          |                                                                                                                                                                              | Hours | Amount |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 8/28/00  | AMR research at library re remedies re trustees; telephone call Prussin re response to admit and implications re same; review of same; discussion of St. Louis, failure to pay note. (1)(A)(i)/(3)(D)/(4) | 3.00  | 750.00 |
| 8/31/00  | AMR letter from Singer re "interesting questions" (1)(A)(i)/(3)(D)/(4)                                                                                                        | 0.25  | 62.50  |
| 9/6/00   | AMR telephone call Prussin re request for bank information -- will not help; discussion of status of Del action, possibility of 1344 mtn and hostility of Cozier. (1)(A)(i)/(3)(D)/(4) | 0.25  | 62.50  |
| 9/7/00   | AMR telephone call Prussin re discovery; letter from Stim re Delaware exemption from attachment for banks. (1)(A)(i)/(3)(D)/(4)                                               | 1.00  | 250.00 |
| 9/8/00   | CKR Review docket; obtain Walrath order; cw AMR re Del rule re liens. (1)(A)(i)/(3)(D)/(4)                                                                                    | 1.00  | 150.00 |
| 9/12/00  | AMR review draft answers from Prussin; review proposed Baldwin schedule; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4)                                                 | 1.25  | 312.50 |
| 9/18/00  | AMR telephone call review deposition notice; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4)                                                                             | 0.25  | 62.50  |
| 9/20/00  | AMR telephone call Prussin re discovery schedule; review and comment on discovery responses; review letter from Brenman; telephone call Prussin re proposed Carucci meeting; review Smotkin correspondence. (1)(A)(i)/(3)(D)/(4) | 1.50  | 375.00 |

Chariot Group/Summit Metals, Inc.                           Page 85
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 9/21/00 | AMR review answers to interrogatories;  fax comments; telephone call Prussin re same.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 9/27/00 | AMR review Prussin mtn re dismissing affirmative defenses; telephone call HAP re same.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 10/2/00 | AMR telephone call Prussin, email, re depositions<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 10/3/00 | AMR review letter from Prussin re discovery schedule and depositions<br>(1)(A)(i)/(3)(D)/(4) | 0.08 | 20.83 |
| 10/4/00 | AMR dig out and forward papers to Singer.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 10/17/00 | AMR telephone call HAP; dig out and fax BBH ltr re Jenkins financing; disc. re tax sharing and 84-86 returns.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 10/20/00 | AMR tcs Prussin re ESP involuntary bankruptcy;<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
|  | AMR discussion of Cozier ruling;<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 10/25/00 | AMR telephone call Prussin and Brenman re implications of ESP bankruptcy;<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
|  | AMR review Cozier decision.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 11/2/00 | AMR telephone call Singer re options and ESP bankruptcy<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |

Chariot Group/Summit Metals, Inc.                                    Page 86
March 29, 2006

|         |     |                                                                                                                          | Hours | Amount   |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/3/00 | AMR | Review Prussin letter responding to Brenman; telephone call Prussin re status and motion to Cozier to reconsider. (1)(A)(i)/(3)(D)/(4) | 1.00  | 250.00   |
| 11/7/00 | AMR | telephone call Prussin re reconsideration motion and Gray motion to stay discovery (1)(A)(i)/(3)(D)/(4)                   | 0.33  | 83.33    |
| 11/17/00| AMR | telephone call Prussin re status of actions; telephone call Brenman re next steps; conf call w/ Prussin and Brenman. (1)(A)(i)/(3)(D)/(4) | 1.50  | 375.00   |
| 11/27/00| AMR | telephone call Brenman re need for plan; telephone call Prussin re status. (1)(A)(i)/(3)(D)/(4)                           | 0.50  | 125.00   |
| 12/1/00 | AMR | telephone call Cenawood re status; IRS willingness to deal; work on options (1)(A)(i)/(3)(D)/(4)                          | 0.75  | 187.50   |
| 12/5/00 | AMR | telephone call Singer re options; review Crane opinion. (1)(A)(i)/(3)(D)/(4)                                              | 0.50  | 125.00   |
| 12/6/00 | AMR | Inquries re Tn bankruptcy; telephone call court; telephone call Soderquist; letter to court re item 26; (1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00   |
| 12/7/00 | AMR | letter to Brenman confirming conversation; telephone call Prussin re same and opposition to conversion motion; rsrch re possibilities re dismissal. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,000.00 |
| 12/8/00 | AMR | draft ltrs re settlement; telephone call Prussin; work on opposition to Ch 7 motion. (1)(A)(i)/(3)(D)/(4)                 | 3.00  | 750.00   |
| 12/10/00| AMR | work on response to Ch 7 motion.                                                                                          | 2.00  | 500.00   |

Chariot Group/Summit Metals, Inc.                        Page 87
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | (1)(A)(i)/(3)(D)/(4) |  |  |  |
| 12/11/00 | AMR | work on opposition; letter to Brenman re opposition to settlement; letter to Kurtzman re non-authorization of deal; telephone call Prussin; conference with Karasik re replacement. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| 12/12/00 | AMR | Complete opposition and forward to Delaware; review letter from Brenman (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,000.00 |
| 12/13/00 | AMR | Review Prussin opposition to Ch.7 conversion; draft letter to Brenman. (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 12/14/00 | AMR | letter from Klehr Harrison re change in schedule; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 12/20/00 | AMR | review bankruptcy rules re related proceedings and motions to dismiss (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 12/27/00 | AMR | review rule re affiliate bankruptcy; letter from Brenman; draft letter to Brenman (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
|  | SUBTOTAL :[ |  | 1787.63 | 341,522.90] |
|  | (3)(C) |  |  |  |
| 12/28/99 | CKR | Meeting with Manhattan DA concerning bribery offer made from R. Gray. (3)(C) | 2.75 | 412.50 |
| 3/16/00 | AMR | Telephone call Cox re PNC accts, Carlson; fax conf. order. (3)(C) | 1.00 | 250.00 |
| 3/23/00 | AMR | telephone call Cox re decisions and orders of NY courts; fax same to Cox; | 1.00 | 250.00 |

Chariot Group/Summit Metals, Inc.                          Page 88
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
|  | telephone call Cox re applicability of prelim. inj. (3)(C) |  |  |
| 3/29/00 | AMR telephone call JK re status of St. Louis (3)(C) | 0.50 | 125.00 |
| 4/6/00 | AMR assemble and fax documents to Cox (3)(C) | 0.50 | 125.00 |
| 5/17/00 | AMR forward transcript and CSC mtl to Cenawood; telephone call Cox re certification of files in NY action. (3)(C) | 1.00 | 250.00 |
| 5/18/00 | AMR telephone call Cox (FBI) re certification of docs in NY; telephone call Stim re CMI bank account (3)(C) | 0.42 | 104.17 |
| 5/19/00 | AMR telephone call Prussin re FBI theories; message to Cox re Prussin interest (3)(C) | 0.25 | 62.50 |
| 5/23/00 | AMR telephone call Cenawood re contact w/ St. Louis, purchase of claims. (3)(C) | 0.25 | 62.50 |
| 8/1/00 | AMR telephone call Cox re scope and timing (3)(C) | 0.50 | 125.00 |
| 9/5/00 | AMR Metting w/ Cox re grand jury investigation and Gray structure. (3)(C) | 2.50 | 625.00 |
|  | SUBTOTAL :[ | 10.67 | 2,391.67] |
| | (3)(C)/(D)/(4) | | |
| 3/30/99 | AMR Telephone call Brenman re 2004's; telephone call Smotkin re deposition of Gray and future plans; review docket of Homestar. (3)(C)/(D)/(4) | 1.50 | 375.00 |
| 4/21/99 | AMR Telephone call Case re status and Gray 341 testimony. | 1.00 | 250.00 |

Chariot Group/Summit Metals, Inc.                                    Page 89
March 29, 2006

|          |                                                                                          | Hours | Amount |
|----------|------------------------------------------------------------------------------------------|-------|--------|
|          | (3)(C)/(D)/(4)                                                                            |       |        |
| 4/28/99  | AMR Review transcript of Gray 341.<br>(3)(C)/(D)/(4)                                      | 3.00  | 750.00 |
| 4/30/99  | AMR Fax materials (class action and AMR Cert.) to Case; telephone call Case re violation of injunction and IRS.<br>(3)(C)/(D)/(4) | 1.50  | 375.00 |
| 5/4/99   | AMR Review Gray transcript.<br>(3)(C)/(D)/(4)                                            | 1.00  | 250.00 |
| 5/5/99   | AMR Review Gray transcript.<br>(3)(C)/(D)/(4)                                            | 1.00  | 250.00 |
| 5/7/99   | AMR Review homestar motion.<br>(3)(C)/(D)/(4)                                            | 1.00  | 250.00 |
| 5/20/99  | AMR Telephone call Case and Smotkin re Julie.<br>(3)(C)/(D)/(4)                          | 0.50  | 125.00 |
| 5/26/99  | AMR Telephone call Case; review Chesterfield document.<br>(3)(C)/(D)/(4)                 | 1.00  | 250.00 |
| 5/27/99  | AMR Review Gray deposition in St. Louis<br>(3)(C)/(D)/(4)                                | 2.00  | 500.00 |
| 6/7/99   | AMR Review mtls from St. Louis.<br>(3)(C)/(D)/(4)                                        | 1.00  | 250.00 |
| 6/11/99  | AMR Telephone call Case re status of pleadings in St. Louis.<br>(3)(C)/(D)/(4)           | 0.50  | 125.00 |
| 6/17/99  | AMR Telephone call Case re Homestar acquisition and corp entities, status of litigation.<br>(3)(C)/(D)/(4) | 0.50  | 125.00 |
| 6/21/99  | AMR Review order from St. Louis.<br>(3)(C)/(D)/(4)                                       | 0.50  | 125.00 |

Chariot Group/Summit Metals, Inc.                          Page 90
March 29, 2006

|         |                                                                                              | Hours | Amount |
|---------|----------------------------------------------------------------------------------------------|-------|--------|
| 6/23/99 | AMR Telephone call Smotkin re delivery of documents<br>(3)(C)/(D)/(4)                        | 0.25  | 62.50  |
| 6/24/99 | AMR Telephone call Case and Smotkin re attendance at Gray examination.<br>(3)(C)/(D)/(4)     | 0.25  | 62.50  |
| 6/30/99 | AMR Telephone call Case re Gray exam.<br>(3)(C)/(D)/(4)                                       | 0.50  | 125.00 |
| 7/1/99  | AMR Telephone call Case re St. Louis bankruptcy.<br>(3)(C)/(D)/(4)                           | 0.25  | 62.50  |
| 9/3/99  | AMR Message to Case re contempt hearing;<br>(3)(C)/(D)/(4)                                   | 0.08  | 20.83  |
| 9/13/99 | CKR Draft letter to Rebecca Case and Howard Smotkin to apprise them of events with B. Quinn<br>(3)(C)/(D)/(4) | 0.50  | 75.00  |
|         | CKR Sent docs to Rebecca Case<br>(3)(C)/(D)/(4)                                              | 0.33  | 50.00  |
| 10/12/99| AMR Telephone call Case re complaint expected this week.<br>(3)(C)/(D)/(4)                   | 0.25  | 62.50  |
| 10/20/99| AMR Telephone call Case re complaint in St. Louis<br>(3)(C)/(D)/(4)                          | 0.25  | 62.50  |
| 11/1/99 | AMR Review Homestar suit.<br>(3)(C)/(D)/(4)                                                  | 0.50  | 125.00 |
| 1/7/00  | CKR Fax docs to Smotkin in Homestar case.<br>(3)(C)/(D)/(4)                                  | 0.25  | 37.50  |
| 3/10/00 | AMR Telephone call Case re status.<br>(3)(C)/(D)/(4)                                         | 0.25  | 62.50  |
| 4/12/00 | AMR telephone call Case re status of Homestar<br>(3)(C)/(D)/(4)                              | 0.25  | 62.50  |

Chariot Group/Summit Metals, Inc.                          Page 91
March 29, 2006

|         |                                                                                                                              | Hours | Amount |
|---------|------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 4/27/00 | AMR Telephone call Prussin re theories re $700k; telephone call Case re St. Louis pleadings and grand jury status. (3)(C)/(D)/(4) |       |        |
| 4/28/00 | AMR telephone call Case re status of St.L. proceedings, pleadings on behalf of Cht. Group. (3)(C)/(D)/(4)                     | 0.50  | 125.00 |
| 5/4/00  | AMR telephone call Smotkin re Daido suit; Homestar claims v. estate; rumor of payment to Latham & Watkins. (3)(C)/(D)/(4)     | 0.50  | 125.00 |
| 5/5/00  | AMR telephone call JK re developments in STL, offer to "noteholders", etc.; status of tax case (3)(C)/(D)/(4)                 | 0.50  | 125.00 |
| 5/10/00 | AMR Telephone call Smotkin re tscpt and amount of claim; telephone call Seidel. (3)(C)/(D)/(4)                                |       |        |
| 5/30/00 | AMR telephone call Case re status of St. Louis, mediation, joining this case, etc; review article re bank fraud. (3)(C)/(D)/(4) | 1.00  | 250.00 |
| 5/31/00 | AMR conference with JKre status; telephone call same re Gray's new directions; look up rules for sealing records in fed court. (3)(C)/(D)/(4) | 1.50  | 375.00 |
| 6/15/00 | AMR telephone call Case re staus in Homestar -- Gray offers etc. (3)(C)/(D)/(4)                                               | 0.50  | 125.00 |
| 6/19/00 | AMR review Homestar notice re claims (3)(C)/(D)/(4)                                                                           | 0.25  | 62.50  |
| 7/21/00 | AMR telephone call JK re St. Louis (3)(C)/(D)/(4)                                                                             | 0.25  | 62.50  |

Chariot Group/Summit Metals, Inc.                     Page 92
March 29, 2006

|          |                                                                                                                      | Hours | Amount   |
|----------|----------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/27/00  | AMR telephone call Case re status. (3)(C)/(D)/(4)                                                                     | 0.50  | 125.00   |
| 8/14/00  | AMR notice from St. Louis re settlement; fax to Prussin (3)(C)/(D)/(4)                                                | 0.50  | 125.00   |
| 8/15/00  | AMR telephone call Smotkin re service list; telephone call Prussin next steps (Prussin unsure of actions); calls to get copy of agreement; fax to Cenawood; work on response. (3)(C)/(D)/(4) | 3.00  | 750.00   |
| 8/18/00  | AMR review settlement agreement; fax to Prussin; fax to Cenawood; work on response. (3)(C)/(D)/(4)                   | 3.00  | 750.00   |
| 8/21/00  | AMR work on response to settlement agreement; review documents re same; work on letter to Trustee; note calculations (3)(C)/(D)/(4) | 3.00  | 750.00   |
| 8/22/00  | AMR draft and serve objections to motion to approve settlement; telephone call Prussin re same; do calculations for Hallowell Note delinquencies. (3)(C)/(D)/(4) | 8.00  | 2,000.00 |
| 8/23/00  | AMR fax to Case re settlement; (3)(C)/(D)/(4)                                                                         | 0.25  | 62.50    |
|          | AMR Conference w/ Grabino re status. (3)(C)/(D)/(4)                                                                   | 0.50  | 125.00   |
| 8/25/00  | AMR telephone call Case re objections; work on presentation re same; (3)(C)/(D)/(4)                                  | 2.50  | 625.00   |
| 8/30/00  | AMR Telephone call Smotkin re trip to St. Louis. (3)(C)/(D)/(4)                                                       | 0.25  | 62.50    |
| 8/31/00  | AMR make travel arrangements for St. Louis                                                                           | 0.25  | 62.50    |

Chariot Group/Summit Metals, Inc.                    Page 93
March 29, 2006

| | | Hours | Amount |
|---|---|---|---|
| | (3)(C)/(D)/(4) | | |
| 9/1/00 | AMR Arrangements and preparation for trip to St. Louis re objection to settlement (3)(C)/(D)/(4) | 1.00 | 250.00 |
| 9/5/00 | AMR tvl to St. Louis; (3)(C)/(D)/(4) | 5.00 | 6,275.00 |
| | AMR attend hearing on objection to settlement; (3)(C)/(D)/(4) | 2.50 | 625.00 |
| 9/14/00 | AMR download and review order from Smotkin. (3)(C)/(D)/(4) | 1.00 | 250.00 |
| 9/15/00 | AMR review order; e-mail to Smotkin. (3)(C)/(D)/(4) | 0.50 | 125.00 |
| 9/18/00 | AMR review draft order; review fee application from Stone, Leyton; draft alernative order language; fax to Smotkin; (3)(C)/(D)/(4) | 1.50 | 375.00 |
| 9/28/00 | AMR review St. Louis mtls (3)(C)/(D)/(4) | 0.25 | 62.50 |
| | SUBTOTAL : [ | 58.42 | 19,520.83] |

For professional services rendered          2151.22  $417,067.13

Additional charges

| | | Qty/Price | |
|---|---|---|---|
| | (1)(A)(i) | | |
| 1/11/99 | -AMR papers in Opposition to Motion to Vacate Judgment (45*5=225) | 225 @0.20 | 45.00 |
| 1/19/99 | -Summons, Complaint, AMR Affidavit re Hartford (55*5=275) | 275 @0.20 | 55.00 |
| 1/25/99 | -CD-ROM research re Hartford (85*1=85) | 85 @0.20 | 17.00 |
| 2/4/99 | -Notice of Entry (5*5=25) | 25 | 5.00 |

Chariot Group/Summit Metals, Inc.                          Page 94
March 29, 2006

| | | Qty/Price | Amount |
|---|---|---|---|
| | | @0.20 | |
| 3/8/99 | -CD-ROM re Transfer of Business (130*1=130) | 130 | 26.00 |
| | | @0.20 | |
| | -AMR Papers in Support of Motion For Summary Judgment re Hartford (12*5=60) | 60 | 12.00 |
| | | @0.20 | |
| 3/19/99 | -trip to Court - 3/19/99 | 1 | 3.00 |
| | | @3.00 | |
| | -Order to Show Cause (47*5=235) | 235 | 47.00 |
| | | @0.20 | |
| 3/22/99 | -CD-ROM research (13*1=13) | 13 | 2.60 |
| | | @0.20 | |
| 3/23/99 | -trip to Court - 3/23/99 | 1 | 3.00 |
| | | @3.00 | |
| | -made copies of Order in the Court - 3/23/99 | 3 | 0.75 |
| | | @0.25 | |
| 4/6/99 | -CD-ROM research (28*1=28) | 28 | 5.60 |
| | | @0.20 | |
| 5/5/99 | -CD-ROM re Quinn's Papers (43*1=43) | 43 | 8.60 |
| | | @0.20 | |
| 5/24/99 | -CMI complaint index number | 1 | 170.00 |
| | | @170.00 | |
| | -Summons and Complaint re AMR vs Chariot Management (5*5=25) | 25 | 5.00 |
| | | @0.20 | |
| | -Summons and Complaint re AMR vs Chariot Management (10*5=50) | 50 | 10.00 |
| | | @0.20 | |
| 7/21/99 | -Reply to Counterclaim re AMR vs Chariot Management (3*5=15) | 15 | 3.00 |
| | | @0.20 | |
| 8/20/99 | -photocopy Gray v. Richardson Bcy claims | 1 | 2.00 |
| | | @2.00 | |
| 10/27/99 | -trip to Court | 1 | 3.00 |
| | | @3.00 | |
| 11/8/99 | -to 353 East 53rd Street | 1 | 3.00 |
| | | @3.00 | |
| 12/8/99 | -Subway fare to and from court. | 2 | 3.00 |
| | | @1.50 | |
| 2/21/00 | -proof of claim | 560 | 112.00 |
| | | @0.20 | |
| | SUBTOTAL :[ | | 541.55] |
| | (1)(A)(i)/(3)(D)/(4) | | |
| 1/11/99 | -Train and taxis to creditors meeting | 1 | 97.00 |
| | | @97.00 | |
| 2/1/99 | -CD-ROM re 11§9011, 362 (150*1=150) | 150 | 30.00 |
| | | @0.20 | |
| 2/2/99 | -of citations in Library - 2/4/99 | 75 | 15.00 |

Chariot Group/Summit Metals, Inc.                          Page 95
March 29, 2006

|  |  | Qty/Price | Amount |
|---|---|---|---|
|  |  | @0.20 |  |
| 2/5/99 | -CD-ROM N.Y.S.2d cases(95*1=95) | 95 | 19.00 |
|  |  | @0.20 |  |
| 2/18/99 | -trip to astoria - 2/18/99 | 1 | 3.00 |
|  |  | @3.00 |  |
| 2/26/99 | -overnight delivery | 1 | 13.00 |
|  |  | @13.00 |  |
| 3/8/99 | -Certification of AMR (212*10=2100) | 2100 | 420.00 |
|  |  | @0.20 |  |
| 3/18/99 | -AMR Response in Support of Motion to Lift | 200 | 40.00 |
|  | Automatic Stay (20*10=200) | @0.20 |  |
| 3/25/99 | -Metroliner to Wilmington. | 1 | 75.00 |
|  |  | @75.00 |  |
|  | -train to Wilmington. | 1 | 152.00 |
|  |  | @152.00 |  |
| 3/30/99 | -AMR motion to Intervene (23*5=115) | 115 | 23.00 |
|  |  | @0.20 |  |
| 4/6/99 | -4/6/99 trip to City Register Office | 1 | 3.00 |
|  |  | @3.00 |  |
|  | -for service for getting these copies of UCC | 1 | 10.00 |
|  | - $10 - 4/6/99 | @10.00 |  |
| 4/9/99 | -Order to Show Cause (160*5=800) | 800 | 160.00 |
|  |  | @0.20 |  |
| 4/13/99 | -trip to Court - 4/13/99 | 1 | 3.00 |
|  |  | @3.00 |  |
| 4/18/99 | -Amtrak to Phil. and cabs | 1 | 86.00 |
|  |  | @86.00 |  |
| 4/19/99 | -trip to Court - 4/19/99 | 1 | 3.00 |
|  |  | @3.00 |  |
| 4/20/99 | -trip to Court - 4/20/99 | 1 | 3.00 |
|  |  | @3.00 |  |
| 5/13/99 | -trip to Park Avenue - 5/13/99 | 1 | 3.00 |
|  |  | @3.00 |  |
|  | -trip to Lexington (Silverman) - 5/13/99 | 1 | 3.00 |
|  |  | @3.00 |  |
|  | -trip to Court - 5/13/99 | 1 | 3.00 |
|  |  | @3.00 |  |
| 5/19/99 | -Transcript of 5/14/99 hearing. | 1 | 294.00 |
|  |  | @294.00 |  |
| 5/27/99 | -Metroliner to Wilmington. | 1 | 150.00 |
|  |  | @150.00 |  |
| 6/1/99 | -UPS to Walrath & Kurtzman. | 1 | 20.50 |
|  |  | @20.50 |  |
|  | -AMR Motion for Clarification(30*15=450) | 450 | 90.00 |
|  |  | @0.20 |  |
| 6/4/99 | -Summit Answer (7*5=35) | 35 | 7.00 |

Chariot Group/Summit Metals, Inc.               Page 96
March 29, 2006

| | | Qty/Price | Amount |
|---|---|---|---|
| | | @0.20 | |
| 6/9/99 | -payment for corp. reports 18 times $6 | 1 | 108.00 |
| | | @108.00 | |
| 6/15/99 | -messenger to Prussin on 2/18/99 | 1 | 20.00 |
| | to Newkirk on 3/31/99 | @20.00 | |
| | -to Hahn & Hessen | 1 | 10.00 |
| | | @10.00 | |
| 6/22/99 | -CD-ROM research (54*1=54) | 54 | 10.80 |
| | | @0.20 | |
| 6/25/99 | -tvl to Wilmington | 1 | 126.00 |
| | | @126.00 | |
| 7/13/99 | -Order to Show Cause (35*5=175) | 175 | 35.00 |
| | | @0.20 | |
| | -Order to Show Cause (32*5=160) | 160 | 32.00 |
| | | @0.20 | |
| 7/19/99 | -Subpoenas re Summit (25*5=125) | 125 | 25.00 |
| | | @0.20 | |
| 7/26/99 | -copies of Court papers in Court | 35 | 8.75 |
| | | @0.25 | |
| | -AMR Motion to Compel Disclosure (30*7=210) | 210 | 42.00 |
| | | @0.20 | |
| 8/6/99 | -AMR Correspondence re all Chariot Suits for | 575 | 115.00 |
| | !/1/99-8/6/99 -575 | @0.20 | |
| | -Research cases from diff sources (av) for | 250 | 50.00 |
| | 1/1/99-8/6/99 -250 | @0.20 | |
| | -AMR Objection to Motion to Stay State Court | 140 | 28.00 |
| | Contempt Proceedings Against Richard E. | @0.20 | |
| | Gray 48*5=140 | | |
| 8/9/99 | -of Court documents for Hearing in Delaware | 145 | 29.00 |
| | | @0.20 | |
| 8/10/99 | -train to Wilmington | 1 | 152.00 |
| | | @152.00 | |
| 8/12/99 | -7 sets of Court papers 7*7=49 | 49 | 9.80 |
| | | @0.20 | |
| 8/13/99 | -of citations | 40 | 8.00 |
| | | @0.20 | |
| 8/18/99 | -copies of documents | 105 | 21.00 |
| | | @0.20 | |
| 8/19/99 | -Klehr application | 43 | 8.60 |
| | | @0.20 | |
| | -train to and from Phil. | 1 | 122.00 |
| | | @122.00 | |
| | -CD-ROM Research | 175 | 35.00 |
| | | @0.20 | |
| 8/20/99 | -of CD-ROM cases | 45 | 9.00 |
| | | @0.20 | |

Chariot Group/Summit Metals, Inc.                    Page 97
March 29, 2006

| Date | Description | Qty/Price | Amount |
|------|-------------|-----------|--------|
| 8/23/99 | -7 sets of court papers (80* 7 =480) | 480 @0.20 | 96.00 |
| 8/24/99 | -3 sets of court documents (20 * 3 =60) | 60 @0.20 | 12.00 |
|  | -CD-ROM cases - 25 | 25 @0.20 | 5.00 |
| 8/27/99 | -tvl to Wilmington | 1 @152.00 | 152.00 |
| 9/7/99 | -copies of judges order to dismiss RICO charges | 10 @2.00 | 20.00 |
|  | -Court, Clerk, McLaughlin | 1 @30.75 | 30.75 |
|  | -service of summons -- Demovsky (Kelly) | 1 @185.00 | 185.00 |
| 9/10/99 | -5 sets of AMR Letter to Walrath (7*5=35) | 35 @0.20 | 7.00 |
|  | -of Bank's Statements for Prussin - 257 | 257 @0.20 | 51.40 |
| 9/15/99 | -of documents from Hanh & Hessen - 230 | 230 @0.20 | 46.00 |
|  | -copies of documents -230 | 230 @0.20 | 46.00 |
| 9/20/99 | -Westlaw charges | 1 @16.45 | 16.45 |
|  | -DLS for Neff | 1 @70.00 | 70.00 |
|  | -copies of cannon decision | 12 @2.00 | 24.00 |
|  | -copies of Taraud decision | 8 @2.00 | 16.00 |
| 9/23/99 | -second set of documents - 105 | 105 @0.20 | 21.00 |
| 9/29/99 | -copy statement under bankruptcy rule 2016 | 9 @2.00 | 18.00 |
| 10/1/99 | -UPS overnight | 1 @125.95 | 125.95 |
| 10/5/99 | -Subway to Court and back. | 2 @1.50 | 3.00 |
| 10/8/99 | -5 copies of MOL. | 50 @2.00 | 100.00 |
| 10/21/99 | -mtls to Galioto | 26 @0.20 | 5.20 |
| 10/22/99 | -Subway fare to Federal Court. | 2 @1.50 | 3.00 |
| 10/25/99 | -Subway fare to Capuder and Arnoff. | 2 @1.50 | 3.00 |

Chariot Group/Summit Metals, Inc.                                    Page 98
March 29, 2006

| | | Qty/Price | Amount |
|---|---|---|---|
| 10/26/99 | -Subway fare to Federal Court. | 2 @1.50 | 3.00 |
| 10/27/99 | -Gray deposition | 54 @0.20 | 10.80 |
| 10/29/99 | -overnight to Sawchuk | 1 @10.25 | 10.25 |
| | -Avanced Repro. -- Fleet docs | 1 @102.23 | 102.23 |
| 11/9/99 | -Brown Bros. motion | 1 @20.00 | 20.00 |
| | -Travel to and from court/wall street. | 2 @1.50 | 3.00 |
| 11/22/99 | -To pick up OSC. | 1 @3.00 | 3.00 |
| 11/29/99 | -CIT copies | 1 @173.61 | 173.61 |
| | -UPS service on K&F, Case and Prussin | 1 @37.75 | 37.75 |
| 12/13/99 | -copies of Brown brothers docs for A. Prussin. | 220 @0.20 | 44.00 |
| 12/23/99 | -messenger to DLS on 11/5/99 | 1 @8.00 | 8.00 |
| 1/7/00 | -UPS opposition to mtn to vacate to service list | 1 @108.25 | 108.25 |
| 1/10/00 | -Wilcox & Fetzer transcripts for 6/8/99, 6/27/99 and 8/10/99 | 1 @321.95 | 321.95 |
| 1/31/00 | -11/10/99 to Sawczuk | 1 @10.25 | 10.25 |
| | -1/18/00 to Wilmington | 1 @12.00 | 12.00 |
| 2/8/00 | -papers to Delaware on 12/27/99 | 1 @30.75 | 30.75 |
| | -mtls to Delaware on 1/24/00 | 1 @46.85 | 46.85 |
| | -mtl to Delaware on 11/30/99 | 1 @26.75 | 26.75 |
| | -mtls to Prussin on 12/13/99 | 1 @11.75 | 11.75 |
| 2/9/00 | -Copy transcript of interview with REG for Hon. Cozier contempt motion. | 432 @0.20 | 86.40 |
| 2/22/00 | -train to Wilmington | 1 @132.00 | 132.00 |
| 3/13/00 | -messengers to Prussin, K&F (2), 60 Centre (2) | 5 @8.00 | 40.00 |
| 3/22/00 | -Photocopy docket. | 30 @0.20 | 6.00 |

Chariot Group/Summit Metals, Inc.                           Page 99
March 29, 2006

|  |  | Qty/Price | Amount |
|---|---|---|---|
| 4/4/00 | -UPS to Walrath, Klehr and Clerk on 2/3/00 | 1 @24.75 | 24.75 |
|  | -UPS to Gross on 3/22/00 | 1 @22.75 | 22.75 |
| 4/24/00 | -Cooch & Taylor | 1 @3683.00 | 3,683.00 |
| 4/27/00 | -metroliner to Wilmington | 1 @158.00 | 158.00 |
| 5/8/00 | -UPS to Singer on 4/24/00 | 1 @14.25 | 14.25 |
|  | -UPS to Prussin on 3/29/00 | 1 @12.00 | 12.00 |
| 6/28/00 | -1t Pepper and attachment | 54 @0.20 | 10.80 |
| 7/18/00 | -UPS to Singer 4/19/00 | 1 @18.25 | 18.25 |
| 9/13/00 | -UPS to Singer on 8/16/00 | 1 @10.63 | 10.63 |
|  | SUBTOTAL : [ |  | 8,990.22] |
|  | (3)(C) |  |  |
| 12/28/99 | -Travel to and from DA's office. | 2 @1.50 | 3.00 |
|  | SUBTOTAL : [ |  | 3.00] |
|  | (3)(C)/(D)/(4) |  |  |
| 9/13/99 | -Copied docs for rebecca case | 50 @2.00 | 100.00 |
| 9/5/00 | -plane to St. Louis for hearing; cab to court, metrolink to airport 1650 + 36.50 + 1.25 | 1 @1687.75 | 1,687.75 |
| 9/13/00 | -UPS to St. Louis 8/26/00 | 1 @27.34 | 27.34 |
|  | SUBTOTAL : [ |  | 1,815.09] |
|  | Total costs |  | $11,349.86 |
|  | Total time and expense charges |  | $428,416.99 |

00419

Chariot Group/Summit Metals, Inc.                              Page 100
March 29, 2006

                        Federal I.D. Number
                           13-3681922

Invoice submitted to:

Chariot Group/Summit Metals, Inc.
c/o Monzack and Monaco
1201 N. Orange Street, Suite 400
Wilmington, DE 19899


March 29, 2006
#1313
In reference to: For time and disbursements 1/1/01 - 8/31/04


| | | Hours | Amount |
|---|---|---|---|
| | (1)(A)(i) | | |
| 1/9/01 | AMR review "committee" papers.<br>(1)(A)(i) | 0.25 | 62.50 |
| 2/6/01 | AMR tcs Giglietti, Grabino; Brenman, Cala.<br>(1)(A)(i) | 1.75 | 437.50 |
| 5/31/01 | AMR Telephone call Giglietti; telephone call Coulson re settlement possibilities.<br>(1)(A)(i) | 0.50 | 137.50 |
| 6/12/01 | AMR Attend conf for CMI case at 60 Centre; case to be transferred again.<br>(1)(A)(i) | 1.50 | 412.50 |
| 6/21/01 | AMR Conf call w/ committee re approach to hearing.<br>(1)(A)(i) | 1.00 | 275.00 |
| 6/26/01 | AMR Meeting with Prussin, Brenman, Coulson and Giglietti in DE; attend hearing re status of case.<br>(1)(A)(i) | 3.00 | 825.00 |

00421

Chariot Group/Summit Metals, Inc.                              Page 2
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 7/9/01 | AMR | Fix up motion papers and fax to Quinn.<br>(1)(A)(i) | 0.50 | 137.50 |
| 12/12/01 | AMR | Telephone call Cala re Gray<br>incarceration.<br>(1)(A)(i) | 0.17 | 45.83 |
| 1/30/02 | AMR | Telephone call Prussin and Coulson re<br>Gray offer.<br>(1)(A)(i) | 0.25 | 68.75 |
| 10/12/02 | AMR | Review Quinn response<br>(1)(A)(i) | 1.50 | 412.50 |
| 8/9/04 | AMR | Telephone call Giglietti; fax decision;<br>telephone call Counihan re<br>participation by Rock Ctr.<br>(1)(A)(i) | | |
| 8/10/04 | AMR | Lw Coulson; telephone call Counihan;<br>telephone call Reisbaum; e-mail<br>decision; lw Cala;  attempt to reach<br>Grabino; prepare updated list; e-mail<br>Schiltz and Prussin.<br>(1)(A)(i) | | |
| 8/11/04 | AMR | Telephone call Cala; telephone call<br>Coulson re result and possible meeting.<br>(1)(A)(i) | 1.00 | 275.00 |
| 8/13/04 | AMR | E-mail from Schiltz re Com. meeting for<br>mtn approval; lw Coulson and Giglietti;<br>review Kelly comments re motion.<br>(1)(A)(i) | 1.00 | 275.00 |
| 8/16/04 | AMR | Arrange for and attend phone conf of<br>Creditor Com. w/ Giglietti, Coulson,<br>Schiltz and Prussin to approve motion<br>for Com. to take control of operating<br>companies.<br>(1)(A)(i) | 1.25 | 343.75 |
| 8/18/04 | AMR | E-mails and telephone call Schiltz re<br>discussions w/ Trustee; possible motion | 1.00 | 275.00 |

00422

Chariot Group/Summit Metals, Inc.                                    Page 3
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|

for conversion; review Cybergenics re same.
(1)(A)(i)

SUBTOTAL :[             14.67    3,983.33]

(1)(A)(i)/(3)(D)/(4)

| Date | Description | Hours | Amount |
|---|---|---|---|
| 1/8/01 | AMR Review mtl from office of trustee in TN re creditors' committee; conflict letter from Bass, Barry, etc. <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 1/9/01 | AMR Telephone call Kelly; telephone call TN trustee; letter from Singer; attempt to reach Giannirakis. <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 1/10/01 | AMR review letter to Court, Com. submission; preparation for next day <br> (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 1/11/01 | AMR tvl to Del for hearing re Ch. 7 conversion; attend hearing; conference with Prussin on return. <br> (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
|  | AMR Tvl to Del for hearing re Ch. 7 conversion.attend hearing. <br> (1)(A)(i)/(3)(D)/(4) | 2.00 | 250.00 |
| 1/12/01 | AMR Telephone call Brown re TN representation; telephone call JK re 363 offer, IRS mtls; work on next steps - mtn to amend, appeal, wrongful levy, adversary in PA; suit v. Gray et ux. <br> (1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 1/15/01 | AMR Order transcript from Wilcox <br> (1)(A)(i)/(3)(D)/(4) | 0.17 | 41.67 |
| 1/16/01 | AMR Review Gray scheme re B.F. Rich; telephone call JK; message for Prussin; work out next steps. <br> (1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |

Chariot Group/Summit Metals, Inc.                          Page 4
March 29, 2006

|          |                                                                                                                                                                                                          | Hours | Amount   |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 1/17/01  | AMR telephone call Prussin; telephone call Kelly; review motions; attempt to reach trustee and Case; forward historic mtls to trustee; forward mtls to Prussin re bankruptcy; fax to Derrick. (1)(A)(i)/(3)(D)/(4) | 3.75  | 937.50   |
| 1/18/01  | AMR Tcs Prussin re opposition to Gray scheme; draft opposition and forward to Brown; telephone call Brown; telephone call Grant; fax additional mtls.; telephone call Wilcox re transcript. (1)(A)(i)/(3)(D)/(4) | 4.50  | 1,125.00 |
| 1/19/01  | AMR Telephone call Grant re hearings. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                | 0.25  | 62.50    |
| 1/22/01  | AMR Tcs Kelly; Forrester; Grant; Norton; review notice of sale; work on next steps. (1)(A)(i)/(3)(D)/(4)                                                                                                  | 3.00  | 750.00   |
| 1/25/01  | AMR telephone call Prussin re judge's rulings. (1)(A)(i)/(3)(D)/(4)                                                                                                                                       | 0.50  | 125.00   |
| 1/26/01  | AMR Telephone call Forrester re problems w/ sale; telephone call Prussin re discussions w/ Polivy; fax letter and Friedman decision to Forrester. (1)(A)(i)/(3)(D)/(4)                                     | 1.25  | 312.50   |
| 1/27/01  | AMR Draft objections to collusive sale (1)(A)(i)/(3)(D)/(4)                                                                                                                                               | 4.00  | 1,000.00 |
| 1/29/01  | AMR complete objections; add exhibits; forward to Nashville; tcs Forrester; telephone call Dinsmore; look at complaint for Fleet Capital. (1)(A)(i)/(3)(D)/(4)                                             | 3.50  | 875.00   |
| 1/30/01  | AMR Telephone call Prussin re Gray manipulation of schedule, sequestration, etc.; discussion of ESP                                                                                                       | 1.00  | 250.00   |

00424

Chariot Group/Summit Metals, Inc.                        Page 5
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | Committee objections; reorganize after objections<br>(1)(A)(i)/(3)(D)/(4) |  |  |
| 2/5/01 | AMR | Forward mtls to Gordon; telephone call Gordon; conf call w/ Prussin re 2/8/01 hearing re conversion motion or mtn to dismiss<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 2/7/01 | AMR | Telephone call Gordon re hearing in Del re conversion motion.<br>(1)(A)(i)/(3)(D)/(4) | 0.30 | 75.00 |
| 2/8/01 | AMR | Review draft order re approval of sale; telephone call Gordon re hearing on motion for Ch. 7 conversion.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |
| 2/12/01 | AMR | review appeal rules; review draft order from TN re bar date.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 2/14/01 | AMR | review order from Tennessee.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 2/15/01 | AMR | Telephone call Kelly re deposition schedules.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 2/16/01 | AMR | Research re arguments re non-activity.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 62.50 |
| 2/23/01 | AMR | Review rules re notice of appeal; prepare same; telephone call Grant; letter to Grant re filing.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 2/26/01 | AMR | Telephone call Prussin re filng of appeal, conf schedule, depositions, etc.; work on strategy<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 2/27/01 | AMR | Telephone call JK; review tax mtls; outline next steps.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 250.00 |

00425

Chariot Group/Summit Metals, Inc.                          Page 6
March 29, 2006

|         |     |                                                                                                                                            | Hours | Amount |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 2/28/01 | AMR | Telephone call Tn Bankruptcy clerk re copies of notice of appeal; telephone call Grant re same. (1)(A)(i)/(3)(D)/(4)                         | 0.50  | 125.00 |
| 3/12/01 | AMR | Begin work on rationale for transfer. (1)(A)(i)/(3)(D)/(4)                                                                                  | 0.25  | 62.50  |
| 3/13/01 | AMR | More work on transfer rationale. (1)(A)(i)/(3)(D)/(4)                                                                                       | 0.25  | 62.50  |
| 3/15/01 | AMR | E-mail from Prussin re status; e-mail response. (1)(A)(i)/(3)(D)/(4)                                                                        | 0.25  | 62.50  |
| 3/20/01 | AMR | Review mtn to dismiss appeal. (1)(A)(i)/(3)(D)/(4)                                                                                          | 0.25  | 62.50  |
| 3/21/01 | AMR | Review motion to dismiss appeal; attempt to reach Gordon; telephone call Grant re same and need for transcript. (1)(A)(i)/(3)(D)/(4)        | 1.00  | 250.00 |
| 3/22/01 | AMR | telephone call Grant re inquiries re record; fax from Grant; telephone call Gordon re required steps; work on outline for transfer motion; fax from Brenman; respond and fax back. (1)(A)(i)/(3)(D)/(4) | 2.00  | 500.00 |
| 3/23/01 | AMR | Complete outline of arguments for transfering the case; Telephone call Grant re transcript; Phone message to Dolce re desire for transcript. (1)(A)(i)/(3)(D)/(4) | 2.50  | 625.00 |
| 3/26/01 | AMR | Telephone call Gordon re transfer motion; telephone call Bankruptcy Court and Grant re transcripts. (1)(A)(i)/(3)(D)/(4)                    | 1.00  | 250.00 |
| 3/27/01 | AMR | Telephone call Prussin re Kelly deposition and submission of claim;                                                                         | 1.00  | 250.00 |

Chariot Group/Summit Metals, Inc.                                    Page 7
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| | | letter to clerk forwarding transcript fee.<br>(1)(A)(i)/(3)(D)/(4) | | |
| 3/28/01 | AMR | Telephone call Prussin re committee filing; review same; message from Grant; work on response.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 3/29/01 | AMR | Prepare and submit proofs of claim.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 375.00 |
| 3/30/01 | AMR | telephone call Bankruptcy court re copies; e-mail from Prussin; review motion papers.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 4/1/01 | AMR | Review tapes of Tennesee proceedings.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 4/2/01 | AMR | Review mtn to dismiss; review cases; draft designation of record, etc.; work on opposition; telephone call Prussin re Quinn deposition, etc.; review opposition.<br>(1)(A)(i)/(3)(D)/(4) | 4.50 | 1,125.00 |
| 4/3/01 | AMR | Prepare Designation; calls to Grant; forward to Grant; telephone call Forrester re adjournment; work on opposition to motion.<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| 4/4/01 | AMR | telephone call Prussin; telephone call Grant re new action; work on opposition to motion; message to Norton demanding papers.<br>(1)(A)(i)/(3)(D)/(4) | 5.50 | 1,375.00 |
| 4/5/01 | AMR | Review adversary pleadings in Tn; revise afft in opposition to dismissal motion; fax pleadings to Gordon; telephone call Gordon; draft motion for transfer; go to get good standing certif.<br>(1)(A)(i)/(3)(D)/(4) | 7.00 | 1,750.00 |

Chariot Group/Summit Metals, Inc.                          Page 8
March 29, 2006

|         |                                                                                                                                                                                                                                                          | Hours | Amount   |
|---------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 4/6/01  | AMR Numerous calls re preliminary injunction motion, opposition, etc.; Gordon, Mashburn, Grant, Brenman, Prussin; review Gordon motion; fax to Brenman and Prussin re resisting concessions.<br>(1)(A)(i)/(3)(D)/(4)                                             | 6.00  | 1,500.00 |
| 4/8/01  | AMR draft memo in opposition to motion to dismiss; telephone call Kelly re need to testify.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                             | 4.50  | 1,125.00 |
| 4/9/01  | AMR Advise Gordon re changes in motion; fax order; calls to Gordon; conf calls w/ Brenman, Grant and Prussin; tcs Mashburn re adjournment and effect of motion.<br>(1)(A)(i)/(3)(D)/(4)                                                                          | 6.00  | 1,500.00 |
| 4/10/01 | AMR Review files; calls: Mashburn; Grant; Prussin; Gordon; Kelly; Brenman; re hearing in TN, future hearing, motion for transfer, affiliate status of ESP, etc.<br>(1)(A)(i)/(3)(D)/(4)                                                                          | 7.00  | 1,750.00 |
| 4/12/01 | AMR Telephone call Case; telephone call Mashburn; review 1014 cases;  telephone call  Grant; telephone call Prussin; work on presentation; review Committee presentation; telephone call clerk re procedure for certified copies; review case v. Prussin<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
|         | CKR Discuss obtaining certified copies<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                 | 0.25  | 37.50    |
| 4/13/01 | AMR Review BDBC motion; telephone call Prussin; conference with CKR re certified copies; fax Quinn testimony;<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                            | 2.00  | 500.00   |

Chariot Group/Summit Metals, Inc.                          Page 9
March 29, 2006

|         |                                                                                                                                                             | Hours | Amount   |
|---------|-------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 4/13/01 | CKR Tvl to and from court; obtain, review and obtain certification of court opinions (1)(A)(i)/(3)(D)/(4)                                                     | 3.00  | 450.00   |
| 4/16/01 | AMR Review papers filed in TN; telephone calls Mashburn re exhibits and preparation; telephone calls Prussin re same; telephone call Grant Wednesday presentation and re motion re reinstatement of appeal. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,250.00 |
|         | AMR Telephone call Kelly re status and witness availability; status of IRS case, etc.;; telephone call Gordon. (1)(A)(i)/(3)(D)/(4)                          | 1.00  | 250.00   |
| 4/17/01 | AMR calls to Prussin, Brenman, Grant and Mashburn re next day's events, possibilities of adjournment; review pleadings and arguments (1)(A)(i)/(3)(D)/(4)    | 4.00  | 1,000.00 |
| 4/18/01 | AMR Attend hearing in Nashville re 1014 and preliminary injunction; meeting with Brenman and Mashburn; lcw Mashburn. (1)(A)(i)/(3)(D)/(4)                    | 7.00  | 1,750.00 |
| 4/20/01 | AMR Review opposition papers; tcs Prussin and Kelly; fax cases to Gordon and Cenawood. (1)(A)(i)/(3)(D)/(4)                                                  | 3.00  | 750.00   |
| 4/21/01 | AMR Draft e-mail for Gordon; review opposition to motion to transfer. (1)(A)(i)/(3)(D)/(4)                                                                   | 3.00  | 750.00   |
| 4/23/01 | AMR tcs Kelly, Brenman, Prussin, Gordon re presentation; review revised opposition; review fee application; assemble documents for Gordon. (1)(A)(i)/(3)(D)/(4) | 5.50  | 1,375.00 |

Chariot Group/Summit Metals, Inc.      Page 10
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 4/24/01 | AMR | Review Benesch fee application; telephone call Brenman; telephone call Gordon; fax mtls to Gordon, Brenman and Prussin; telephone call Kelly re B.F Rich receivable. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| 4/25/01 | AMR | telephone call Gordon re scheduling; review of evidence and theories; work on questions for Kelly. (1)(A)(i)/(3)(D)/(4) | 2.00 | 500.00 |
| 4/26/01 | AMR | Meeting with Gordon re hearing for transfer. (1)(A)(i)/(3)(D)/(4) | 2.50 | 625.00 |
| 4/27/01 | AMR | Telephone calls Prussin, Kelly re discussions w/ Gordon; review motion to extend period for plan; review complaint against Summit/Chariot committee; review fee application. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,250.00 |
| 4/28/01 | AMR | Assemble materials to review for Del hearing. (1)(A)(i)/(3)(D)/(4) | 0.50 | 125.00 |
| 4/30/01 | AMR | Telephone call Brenman re approaches tohearing; telephone call Gordon re yet another judge; fax Gordon re Harcar; review mtls for hearing. (1)(A)(i)/(3)(D)/(4) | 3.50 | 875.00 |
| 5/2/01 | AMR | Telephone calls Mashburn; Kelly; Benton; Cenawood re hearings in Del and next steps. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,375.00 |
| 5/3/01 | AMR | Telephone calls Prussin, Gordon, Minuti, Benton, Cenawood re decision in Delaware and next steps. (1)(A)(i)/(3)(D)/(4) | 4.50 | 1,237.50 |
| 5/4/01 | AMR | Fax to Mashburn; fax to Azan re "sale"; check docket; get claim form; e-mail from Prussin re decision; telephone | 6.00 | 1,650.00 |

Chariot Group/Summit Metals, Inc.                                   Page 11
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | call Kelly re decision and 5/23/01 date; telephone call Brenman re decision and next steps. (1)(A)(i)/(3)(D)/(4) |  |  |
| 5/7/01 | AMR | Review court decision; attempt to reach Cenawood re next steps; work on amendment of claims. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 5/8/01 | AMR | Telephone call Kelly re status and Rivco property. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Fax Akard decision to Mashburn, Gordon and Cenawood. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 5/10/01 | AMR | Telephone call Grant re status; fax decision; telephone call Kelly; fax from Mashburn; telephone call Gordon; message for Cenawood; work on strategy. (1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 5/11/01 | AMR | Telephone call Mashburn re proceedings in TN and options;  review Chariot merger papers; telephone call Cenawood re US participation. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 5/14/01 | AMR | Review orders re disclosure statement; telephone call Cenawood; message to Mashburn. (1)(A)(i)/(3)(D)/(4) | 1.25 | 343.75 |
| 5/15/01 | AMR | Calculate time charges with view to amending proof of claim. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
|  | AMR | Telephone call Cenawood re IRS involvement in TN; work on amendment of claim. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |

Chariot Group/Summit Metals, Inc.                    Page 12
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 5/16/01 | AMR | Telephone call JTK re calls to creditors; do calculations for amendment.<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 5/18/01 | AMR | Telephone call Kelly re calls to creditors re payment and objections to disclosure statement; telephone call Grant re 23rd hearing; telephone call Mashburn re discussions w/ Norton and Judge action in Del; telephone call Gordon re same; telephone call Minuti. attempt to reach Brenman; work on amendment of claims.<br>(1)(A)(i)/(3)(D)/(4) | 3.75 | 1,031.25 |
| 5/21/01 | AMR | Review Del court order re status of proceeding; fax to Minuti and Gordon; telephone call Grant re timing; attempt to reach Brenman;  revise proofs of claim.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 5/22/01 | AMR | Prepare for hearing in Tenn re prelim inj; conf call w/ Prussin and Brenman re tactics; telephone call Grant re same; telephone call Mashburn re same; telephone call Gordon re Ackard order to Del.<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 962.50 |
| | AMR | Revise proof of claim<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 5/23/01 | AMR | Attend hearing on motion for preliminary injunction re Del suit; review mtls en route.<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,375.00 |
| 5/24/01 | AMR | Telephone calls Kelly, Prussin, Cenawood re hearing and next steps re disclosure statement, etc.; review disclosure statement<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |

Chariot Group/Summit Metals, Inc.                    Page 13
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 5/25/01 | AMR Telephone call Prussin re dismissal of ESP or amendment of complaint. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 5/27/01 | AMR e-mail to Brenman and Prussin re next steps (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 5/29/01 | AMR e-mails from Brenman and Prussin; telephone call Kelly re status; telephone call Prussin re next steps -- depositions, etc. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 5/30/01 | AMR Telephone call Prussin re court order and next steps (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 5/31/01 | AMR Telephone call Mashburn re possibilities and next steps; telephone call Prussin re recommendation to amend complaint; fax from Prussin re Schlachet letter objecting to deposition notices; telephone call Prussin re same; attempts to reach Brenman. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,100.00 |
| 6/1/01 | AMR Attempt to reach Mashburn; telephone call Prussin; review withdrawal notice re ESP; fax to Brenman and Prussin re actions to take re Del; e-mail to Forrester re his inquiry re Summit. (1)(A)(i)/(3)(D)/(4) | 3.50 | 962.50 |
| 6/4/01 | AMR Draft and revise mtn to amend complaint. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
|  | AMR E-mail from Prussin re committee plan; e-mail in response. (1)(A)(i)/(3)(D)/(4) | 0.33 | 91.67 |
| 6/5/01 | AMR Check Cahn rules. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |

Chariot Group/Summit Metals, Inc.                          Page 14
March 29, 2006

|        |     |                                                                                                                                                                                                                                                                                                        | Hours | Amount   |
|--------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 6/5/01 | AMR | E-mail from Mashburn re no word from Forrester; phone tag w/ Brenman; e-mails to JTK. (1)(A)(i)(3)(D)/(4)                                                                                                                                                                                                    | 0.50  | 137.50   |
| 6/6/01 | AMR | telephone call Prussin re amendment of complaint; review of same; telephone call Prussin re same; review Collier's re objections to disclosure statement; draft outline of objections. (1)(A)(i)/(3)(D)/(4)                                                                                                  | 3.50  | 962.50   |
| 6/7/01 | AMR | Draft objections; forward to Prussin and Brenman; telephone call Prussin; review Prussin objections; telephone call Mshburn. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                            | 3.50  | 962.50   |
| 6/8/01 | AMR | Review Brenman objections; telephone call Brenman re same; calls to Ramage and Mashburn re objections to disclosure statement; fax to Mashburn (1)(A)(i)/(3)(D)/(4)                                                                                                                                          | 2.50  | 687.50   |
| 6/11/01| AMR | Telephone call JTK re involvement of Nashville U.S. Attorney; Telephone call Ramage; review objections of Trustee; fax to same re objections, with Friedman and Cozier opinions and Hallowell note; telephone call Cenawood and fax Cozier opinion. (1)(A)(i)/(3)(D)/(4)                                      | 2.50  | 687.50   |
| 6/18/01| AMR | E-mail from Mashburn re response; tcs Prussin, Brenman, Grant, Ramage, Mashburn re answers, motions to dismiss, etc.;  review on-line docket; tcs re hearing schedules for 6/19/01; fax response materials to Grant and Ramage.telephone call Prussin re Gray hearing and evidence for same; telephone call JTK re same; attempt to reach Pepper. (1)(A)(i)/(3)(D)/(4) | 7.50  | 2,062.50 |

00434

Chariot Group/Summit Metals, Inc.                          Page 15
March 29, 2006

|         |     |                                                                                                          | Hours | Amount   |
|---------|-----|----------------------------------------------------------------------------------------------------------|-------|----------|
| 6/19/01 | AMR | Game plan w/ Prussin re contempt hearing, proof and  and timing; comment on draft subpoena. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
|         | AMR | Telephone calls re proceedings in TN; faxes re orders re pre-trial, etc. (1)(A)(i)/(3)(D)/(4)             | 1.50  | 412.50   |
|         | AMR | Review Brenman plan. (1)(A)(i)/(3)(D)/(4)                                                                 |       |          |
| 6/20/01 | AMR | Calls Prussin re hearing; timing and proof; telephone calls re subpoenas; advise PB re timing of hearing. (1)(A)(i)/(3)(D)/(4) | 2.50  | 687.50   |
|         | AMR | Telephone call Mashburn re pre-trials and proceedings in Court. (1)(A)(i)/(3)(D)/(4)                      | 1.00  | 275.00   |
|         | AMR | Comment on plan; telephone call Brenman re same. (1)(A)(i)/(3)(D)/(4)                                     | 0.50  | 137.50   |
| 6/21/01 | AMR | Arrange for service of subpoena; tcs Prussin re hearing and removal motion; review rule re same; various e-mails. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
|         | AMR | Faxes to Forrester, Azan, etc. re payments by Gray; various e-mails. (1)(A)(i)/(3)(D)/(4)                 | 1.50  | 412.50   |
| 6/22/01 | AMR | Calls re removal petition; review of same; review Prussin draft; comment on same; draft letter to Forrester; review Prussin presentation; various e-mails (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
|         | AMR | Telephone call Azan re status in TN; telephone call Mashburn re value of claim. (1)(A)(i)/(3)(D)/(4)      | 1.00  | 275.00   |

Chariot Group/Summit Metals, Inc.                          Page 16
March 29, 2006

|            |     |                                                                                                                                              | Hours | Amount   |
|------------|-----|----------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 6/22/01    | AMR | Forward mtls to Akard re sua sponte Ch. 7 motion. (1)(A)(i)/(3)(D)/(4)                                                                        | 1.00  | 275.00   |
| 6/25/01    | AMR | Telephone call Cenawood; effect service of mtls; telephone call Prussin re comments; telephone call JTK; review Civ. Ct. suit; attempt to reach Pepper; review schedules. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,375.00 |
| 6/26/01    | AMR | Tvl to Delaware hearing on third conversion motion. (1)(A)(i)/(3)(D)/(4)                                                                      | 3.00  | 412.50   |
|            | AMR | Telephone call Mashburn re same and proceedings in TN;  telephone call Cenawood re same. (1)(A)(i)/(3)(D)/(4)                                 | 0.75  | 206.25   |
|            | AMR | R,eview Prussin brief. (1)(A)(i)/(3)(D)/(4)                                                                                                   | 0.50  | 137.50   |
| 6/27/01    | AMR | Letter from Azan; collect exhibits; fax to Azan; telephone call Prussin and Brenman re pre-trial and attendance. (1)(A)(i)/(3)(D)/(4)          | 4.50  | 1,237.50 |
| 6/28/01    | AMR | Tcs w/ Prussin and Brenman re proceedings; telephone call Ramage; e-mail from Mashburn; telephone call Azan; fax Hallowell materials. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
|            | AMR | Fax to Cox re theories re $2.2 million; (1)(A)(i)/(3)(D)/(4)                                                                                  | 0.50  | 137.50   |
| 6/29/01    | AMR | Draft mtls re pretrials; tcs Prussin, Mashburn, Ramage, Brenman; review Prussin mtn re amended committee complaint; revise letter to Forrester. (1)(A)(i)/(3)(D)/(4) | 4.50  | 1,237.50 |
| 6/30/01    | AMR | Letter from Gilman and Schlachet; draft response to same. (1)(A)(i)/(3)(D)/(4)                                                               | 2.50  | 687.50   |

Chariot Group/Summit Metals, Inc.                                   Page 17
March 29, 2006

|         |                                                                                                                      | Hours | Amount   |
|---------|----------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/2/01  | AMR Review submissions re pretrial; telephone call Ramage; telephone call Norton and Ramage re AMR pretrial; review letter from Gilman and Schlachet; forward letter to Schlachet and Gilman; telephone call Good re theories; review IRS pretrial statement; telephone call Brenman re response to adversary; organize exhibits.<br>(1)(A)(i)/(3)(D)/(4) | 5.00  | 1,375.00 |
| 7/3/01  | AMR Get copies of article for Azan and forward; review pretrial materials; e-mails to and from Mashburn.<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00   |
| 7/5/01  | AMR Review opposition to motion re contempt; attempt to reach Prussin; telephone call Mashburn re Judge response to sanction request and AMR claims vis-a-vis IRS.<br>(1)(A)(i)/(3)(D)/(4) | 1.25  | 343.75   |
| 7/6/01  | AMR Telephone call Prussin before hearing re comparison of contempt and Note A; telephone call Azan re hearing; telephone call Brenman (2) re hearing and next steps; telephone call Kelly (2) re same and letters to attorneys; fax letter to Forrester and Committee.<br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 7/8/01  | AMR Draft CMI mtn to amend complaint.<br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 7/9/01  | AMR Telephone call Prussin re pretrial hearing and Gray settlement offers; rumor re stock to Forrester; telephone call Prussin re Court OK re NY contempt and procedure in NY bankruptcy; letter from Forrester declining to respond; telephone call Kelly re discussions w/ creditors, activity at ESP bank account.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00   |

Chariot Group/Summit Metals, Inc.                              Page 18
March 29, 2006

|            |     |                                                                                                                                                                                                                                                                                | Hours | Amount   |
|------------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/10/01    | AMR | Telephone call Prussin re need for order; message to Mashburn; review order; message to Prussin;  fax to Prussin; review letter from  Prussin to Schlachet re possible sanctions re removal and remand; telephone call Mashburn re strategy re settlement; telephone call Kelly re creditor sentiment. <br>(1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
|            | AMR | Revise notice to Quinn; review afft of service. <br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                           | 0.33  | 91.67    |
|            | AMR | Obtain docket for Daido; review Summit gen'l ledger. <br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                      |       |          |
| 7/11/01    | AMR | Have motion to amend filed. <br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                                               | 0.25  | 68.75    |
|            | AMR | telephone calls Prussin re withdrawal of opposition to remand, Gray settlement proposal; review of same; e-mail to Prussin and Brenman re counter offer; fax to Azan re bank activity. <br>(1)(A)(i)/(3)(D)/(4)                                                                    | 2.00  | 550.00   |
| 7/12/01    | AMR | Telephone calls and e-mails re settlement terms; conf. call w/ Prussin and Brenman - PB dislikes mediation wants price -- AMR & AP way higher for s/h - view need for sale; calls and e-mails to Kelly; e-mail re need to proceed w/ remand; review e-mails re amended complaint; telephone call Gordon re status; telephone call JJM re effect of Ch.7. <br>(1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |

Chariot Group/Summit Metals, Inc.                                      Page 19
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 7/13/01 | AMR | Telephone call Mashburn; telephone call Prussin re next setps re settlement?, etc., review Schlachet response re amended complaint; e-mails to Kelly re Gray proposal.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 7/16/01 | AMR | e-mails from Prussin; review revisions to motion to Farnan.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 7/17/01 | AMR | Review schedule from Klehr; telephone calls Kelly re status and discussions w/ creditors, Quintero inquiries; attempt to reach Brenman re status of motions, etc.<br>(1)(A)(i)/(3)(D)/(4) | 1.25 | 343.75 |
| 7/18/01 | AMR | Telephone call Brenman re motions to TN and DE; telephone call Prussin re same; telephone call Prussin re DE hearing; telephone call Brenman re same and revision of mtls for Farnan; telephone call Azan re status and motions; letter to Quintero enclosing App Div., Homestar, Hallowell; telephone call Kelly re latest Benesch disclosure.<br>(1)(A)(i)/(3)(D)/(4) | 4.50 | 1,237.50 |
| 7/19/01 | AMR | Telephone call Prussin re revisions to mtn to Farnan; telephone call JTK re possible double payment re ESP participation; review of Gilman statement; telephone call JTK re same; e-mail to Mashburn re status.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 7/20/01 | AMR | Telephone call Kelly re efforts to recover B.F. Rich; telephone call Case re effect of appointment of Trustee; review Gray affts; attempt to reach Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 1.75 | 481.25 |
|  | AMR | Review Quinn affirm and preparation of reply. | 2.00 | 550.00 |

Chariot Group/Summit Metals, Inc.                                    Page 20
March 29, 2006

|         |                                                                 | Hours | Amount |
|---------|-----------------------------------------------------------------|-------|--------|
|         | (1)(A)(i)/(3)(D)/(4)                                             |       |        |
| 7/21/01 | AMR Draft reply papers.<br>(1)(A)(i)/(3)(D)/(4)                 | 2.50  | 687.50 |
| 7/23/01 | AMR Complete reply papers; arrange for service; file in Room 130<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
|         | AMR telephone calls Brenman, Prussin over pending mtns, extension of discovery cutoff; resistance to amendment of complaint, desire for no claim to obtain corporate opportunities; telephone call Kelly re efforts to undo sale.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
| 7/25/01 | AMR Conference with JTK; telephone call Gordon; telephone call Prussin re TN; telephone call Prussin re remand motion.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 7/26/01 | AMR Review Prussin motion; telephone call Prussin re same and approach to Farnan re changed circumstances; research Del procedures for lis pendens; forward to Prussin.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
|         | AMR Telephone call Best re mtn for trustee; review mtn to compel mediation.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 7/27/01 | AMR Forward to Dinsmore bills to Prussin and Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 7/30/01 | AMR Telephone call Prussin and Brenman re pending motions -- stall on motion for mediation; nothing on approach to Farnan.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |

Chariot Group/Summit Metals, Inc.                    Page 21
March 29, 2006

|         |     |                                                                                                                                                              | Hours | Amount |
|---------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 8/1/01  | AMR | Attempt to reach Spencer; telephone call Prussin re status and lis pendens. e-mail from Kelly re open questions re Homestar investment. (1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00 |
| 8/2/01  | AMR | E-mail to Brenman and Prussin re lis pendens; fax to Brenman and Schiltz. (1)(A)(i)/(3)(D)/(4)                                                               | 1.00  | 275.00 |
|         | AMR | Phone tag w/ Backenroth. (1)(A)(i)/(3)(D)/(4)                                                                                                                | 0.10  | 27.50  |
| 8/3/01  | AMR | Telephone call JTK re terms of Note A and timing of activity of Creditor Com.; telephone call Prussin re desire of Crocker for adjournment. (1)(A)(i)/(3)(D)/(4) | 0.50  | 137.50 |
| 8/6/01  | AMR | Telephone call Mashburn re pretrial. (1)(A)(i)/(3)(D)/(4)                                                                                                    | 0.25  | 68.75  |
| 8/7/01  | AMR | Telephone calls Prussin re Monday conference; remand motion and response thereto; telephone call Kelly re scheduling. (1)(A)(i)/(3)(D)/(4)                   | 0.75  | 206.25 |
| 8/8/01  | AMR | Telephone call Prussin re hearing and dismissal of removal petition and next steps. (1)(A)(i)/(3)(D)/(4)                                                     | 0.50  | 137.50 |
|         | AMR | Telephone call Azan re motion for trustee; letter to Azan and Forrester re rescission of B.F. Rich sale. (1)(A)(i)/(3)(D)/(4)                                | 2.00  | 550.00 |
| 8/9/01  | AMR | Telephone call Prussin re next steps, summary judgment mtn in case against Prussin; Quinn afft; committee lawsuit, contempt hearing, motion for trustee appointment, possible delays, etc; telephone call Brenman re trustee | 2.00  | 550.00 |

00441

Chariot Group/Summit Metals, Inc.                          Page 22
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | appointment, rescission of B.F. Rich sale; IRS claims, etc.<br>(1)(A)(i)/(3)(D)/(4) |  |  |
| 8/13/01 | AMR | Review mtn from Tennessee re Ch. 11 Trustee; Telephone call Prussin re contempt status; telephone call Grant re status of adversary vs. Committee.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 8/14/01 | AMR | Telephone call Prussin re hearing in Del re summary judgment motion; Quinn afft re tax deal; ESP trustee mtn.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 8/15/01 | AMR | Telephone call Prussin re summary judgment granted in Del in Chariot Plastics suit; message to Brenman re same; e-mail to Mashburn.<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 8/16/01 | AMR | Telephone calls Prussin and Brenman re contempt hearing and settlement strategies.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 8/17/01 | AMR | Telephone call Prussin re settlement strategies; review past e-mails; fax 7004 for AMW Recovery.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR | Check calendar; review affidavits.<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 8/19/01 | AMR | Memo and calculations re amount owed for "purchase" of ESP; draft letter to Backenroth re missing ESP money.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 8/20/01 | AMR | Telephone calls w/ Prussin re Gray settlement offer; review of same; review CSC file.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
|  | AMR | Attend court re motion to amend.<br>(1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |

00442

Chariot Group/Summit Metals, Inc.                              Page 23
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Telephone call Kelly re B.F. Rich suit; telephone call Prussin re same; fax memo re note; fax letter to Backenroth. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
| 8/21/01 | AMR | Telephone calls Prussin re response to Gray proposal; e-mails to Prussin and Brenman re same, and Kelly explanation of B.F. Rich suit; telephone call Kelly re hearing; telephone call Ben re same and availability; telephone call Prussin. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 8/22/01 | AMR | Calls from Prussin and Brenman re settlement discussions and results of conference w/ Moskowitz; telephone call Kelly re same; comment on Prussin letter to Rhine. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
|  | AMR | Telephone call Azan re prior faxes, Gray representations in "settlement" propoal, dilution of stock, pending motions, objections to fees, etc. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 8/24/01 | AMR | e mail from Brenman; e-mail back; telephone call Prussin re strategy re contempt, subpoena to Goldstein, etc.; telephone calls Kelly re developments and evidence of Gray wealth; telephone call Prussin re same and additional subpoenas; e-mails Prussin, Coulson and Ben (1)(A)(i)/(3)(D)/(4) | 3.50 | 962.50 |
| 8/27/01 | AMR | telephone call Prussin; telephone call Ben; conf call w/ both re settlement discussions w/ REG; telephone call JTK re same. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |

Chariot Group/Summit Metals, Inc.                           Page 24
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 8/28/01 | AMR Telephone calls Prussin re settlement discussions w/ Kuntz; draft Pledge and Security Agreement; e-mails to Prussin and Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,375.00 |
| 8/29/01 | AMR Tcs Prussin; telephone call Kelly; draft note; review Stipulations of Settlement.<br>(1)(A)(i)/(3)(D)/(4) | 5.00 | 1,375.00 |
| 8/30/01 | AMR Calls and e-mails re settlement and lack therof.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 9/4/01 | AMR Attend Gray contempt hearing.<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,650.00 |
| 9/5/01 | AMR Attend contempt hearing; voice mails from Kelly; telephone call Kelly; review tax returns and other documents, incl. secret bank acct.<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,650.00 |
| 9/6/01 | AMR Telephone call Brenman re contempt hearings; telephone call Ronen re exhibits, etc.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR telephone call Azan re contempt hearings, events in TN, motion for trustee.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/7/01 | AMR Review Gray and Amex documents at Pomerantz<br>(1)(A)(i)/(3)(D)/(4) | 6.00 | 1,650.00 |
| 9/9/01 | AMR Review deocuments at Pomerantz w/ Prussin and Sharaf<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 9/10/01 | AMR Attend hearing re contempt; review documents.<br>(1)(A)(i)/(3)(D)/(4) | 3.50 | 962.50 |

Chariot Group/Summit Metals, Inc.                          Page 25
March 29, 2006

|          |                                                                                                                                                  | Hours | Amount |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 9/10/01  | AMR Review mtls re TN;<br>(1)(A)(i)/(3)(D)/(4)                                                                                                     | 0.50  | 137.50 |
| 9/11/01  | AMR Fax to Azan re Harcar ownership of<br>ESPAH; review draft disclosure<br>statement re same.<br>(1)(A)(i)/(3)(D)/(4)                            | 2.50  | 687.50 |
| 9/12/01  | AMR Telephone call Prussin re non-continued<br>contempt trial, new documents, etc.<br>(1)(A)(i)/(3)(D)/(4)                                        | 0.50  | 137.50 |
|          | AMR Telephone call Prussin re hearing on<br>motion to compel; Paine ruling on<br>amended complaint; attempt to reach<br>Brenman<br>(1)(A)(i)/(3)(D)/(4) | 0.50  | 137.50 |
| 9/13/01  | AMR Telephone call messages to and<br>telephone call Brennan re pretrials,<br>etc, and mtn to compel mediation<br>(1)(A)(i)/(3)(D)/(4)            | 0.50  | 137.50 |
|          | AMR Telephone call Brenman  re need for<br>chart; telephone call Kelly re alleged<br>payment to ESP.<br>(1)(A)(i)/(3)(D)/(4)                       | 0.75  | 206.25 |
| 9/14/01  | AMR Telephone call Mashburn re pretrial;<br>telephone call Kelly re fees, trustee<br>and Harcar supposed payment; review<br>Forrester request for fees.<br>(1)(A)(i)/(3)(D)/(4) | 1.50  | 412.50 |
|          | AMR Faxes to Azan; e-mails to Prussin and<br>Brenman re no need for Harcar payment.<br>(1)(A)(i)/(3)(D)/(4)                                        | 1.50  | 412.50 |
| 9/17/01  | AMR telephone call Prussin re status of<br>contempt trial.<br>(1)(A)(i)/(3)(D)/(4)                                                                | 0.50  | 137.50 |
|          | AMR Draft letter to Forrester; telephone<br>call Prussin re pretrial; tcs Mashburn<br>re same.<br>(1)(A)(i)/(3)(D)/(4)                             | 1.50  | 412.50 |

Chariot Group/Summit Metals, Inc.                          Page 26
March 29, 2006

|          |     |                                                                                                                                        | Hours | Amount |
|----------|-----|----------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 9/18/01  | AMR | Telephone call Azan re need for accounting re B.F. Rich sale.<br>(1)(A)(i)/(3)(D)/(4)                                                   | 0.50  | 137.50 |
| 9/19/01  | AMR | Telephone call Prussin re status and theories<br>(1)(A)(i)/(3)(D)/(4)                                                                   | 0.50  | 137.50 |
|          | AMR | Review order re disclosure statement; fax to Prussin and Brenman; telephone call Best re IRS suit; telephone call JTK<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00 |
| 9/20/01  | AMR | Fax to Mashburn re approval of disclosure statement; e-mail from same; review plan; telephone call JTK; review Newby ltr; e-mail from Prussin; review docket<br>(1)(A)(i)/(3)(D)/(4) | 3.50  | 962.50 |
| 9/21/01  | AMR | Telephone call Cenawood re trial of claim and support; telephone call Azan re plan, disclosure statement, etc.; draft letter to creditors<br>(1)(A)(i)/(3)(D)/(4) | 2.50  | 687.50 |
|          | AMR | E-mail to and from Prussin; review brief and commment; fax to Prussin<br>(1)(A)(i)/(3)(D)/(4)                                           | 1.00  | 275.00 |
| 9/24/01  | AMR | Revise letter to creditors; fax to JTK; review comments; telephone call Prussin re Gray arguments re Harcar payment; fax Gray brief to Azan.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00 |
|          | AMR | Telephone call Prussin re hearing schedule and strategy, witnesses.<br>(1)(A)(i)/(3)(D)/(4)                                             | 0.50  | 137.50 |
| 9/25/01  | AMR | Telephone calls and e-mails, JTK and Prussin.   Look at comments for letter to creditors.<br>(1)(A)(i)/(3)(D)/(4)                       | 2.00  | 550.00 |

00446

Chariot Group/Summit Metals, Inc.                    Page 27
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 9/26/01 | AMR E-mails from Kelly and Mashburn re pretrial order, etc. and plan. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/27/01 | AMR Review ntc re emergency mtn to compromise; fax to Brenman re same; telephone call JTK. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 9/28/01 | AMR tcs Mashburn, Prussin, Brenman, Cenawood, Kelly re emergency motion to compromise; Gray trying to buy assets w/ ESP's own money. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 10/1/01 | AMR Tcs Brenman, Mashburn, Katinsky and Best; telephone call Kelly. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR Look up attys in Concord; telephone call Marshall; dig out deed. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 10/2/01 | AMR Telephone call Poole re accounting for B.F. Rich purchase; review McLean statement. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR Tcs Prussin re subpoenas; e-mails re Farnan decisions. (1)(A)(i)/(3)(D)/(4) |  |  |
| 10/3/01 | AMR Tcs Best re hearing; telephone call Azan; telephone call Kelly re pending deal; telephone call and e-mails to Prussin re strategy in re IRS. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
| 10/4/01 | AMR E-mails to Prussin & Brenman re IRS discovery and claim; telephone call JTK re status. | 1.00 | 275.00 |

00447

Chariot Group/Summit Metals, Inc.                        Page 28
March 29, 2006

|          |                                                                                                                        | Hours | Amount |
|----------|------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 10/4/01  | AMR Telephone call Marshall and Rood re NH equivalent of lis pendens; fax mtls to Rood<br>(1)(A)(i)/(3)(D)/(4)          | 1.00  | 275.00 |
| 10/5/01  | AMR Telephone call Camerino re lis pendens in NH; review letter from Rood re steps, cost and feasibility; phone tag w/ Brenman.<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
| 10/10/01 | AMR Conference with AP re contempt hearing.<br>(1)(A)(i)/(3)(D)/(4)                                                      | 1.00  | 275.00 |
| 10/11/01 | AMR E-mails w/ Brenman; suggest objections; submit vote; telephone call Best.<br>(1)(A)(i)/(3)(D)/(4)                    | 2.00  | 550.00 |
| 10/12/01 | AMR Attend court; consult w/ HAP.<br>(1)(A)(i)/(3)(D)/(4)                                                                | 2.00  | 550.00 |
| 10/14/01 | AMR e-mail Prussin re cross; timing of CSC stkhldr designations.<br>(1)(A)(i)/(3)(D)/(4)                                 | 0.25  | 68.75  |
| 10/15/01 | AMR telephone call Prussinr re completion of cross; and proof admitted.<br>(1)(A)(i)/(3)(D)/(4)                          | 0.25  | 68.75  |
|          | AMR Review objections of creditors' committee; telephone call Kelly re same; telephone call Brenman re same.<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
| 10/16/01 | AMR Attend last court day; conference with Prussin re next steps.<br>(1)(A)(i)/(3)(D)/(4)                                | 1.00  | 275.00 |
|          | AMR Telephone call Brenman re opposition to Plan.<br>(1)(A)(i)/(3)(D)/(4)                                                | 0.50  | 137.50 |
| 10/17/01 | AMR Telephone call Donovan re lis pendens.<br>(1)(A)(i)/(3)(D)/(4)                                                       | 0.75  | 206.25 |

Chariot Group/Summit Metals, Inc.                              Page 29
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 10/17/01 | AMR | Telephone call Jacobus re IRS case; e-mail from and to Mashburn re status. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 10/18/01 | AMR | Review Rivco realty mtls; telephone call Best re IRS case; telephone call Azan re overall situation; conference with Prussin and Saraf re Rivco Realty, etc.; e-mail to Prussin re lis pendens (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,100.00 |
| 10/22/01 | AMR | Tcs Brenman, Azan, Prussin re motions in TN and adjournment thereof; various e-mails re same; and cracks in the empire. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
| 10/23/01 | AMR | Telephone call Brenman re next steps; telephone call Kelly re same; e-mail from Kelly re developments. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 10/24/01 | AMR | Telephone call Jacobus; discussion of subpoenaed documents; fax pertinent documents; e-mail to Brenman re status. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 10/25/01 | AMR | Telephone call Prussin; review Gray post-trial arguments; telephone call Prussin again re same and further violations of  prelim. inj. (1)(A)(i)/(3)(D)/(4) | 1.75 | 481.25 |
| | AMR | Telephone call Jacobus re ESP materials and Quinn deposition; forward mtls re Gilman; same re Brenman. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 10/26/01 | AMR | Fax mtls to Prussin re purported payment of note. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| | AMR | Fax Jacobus worksheet re Gray payments. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |

Chariot Group/Summit Metals, Inc.                          Page 30
March 29, 2006

|            |     |                                                                                                     | Hours | Amount   |
|------------|-----|-----------------------------------------------------------------------------------------------------|-------|----------|
| 10/29/01   | AMR | Review JTK faxes re conflicts of interest and remaining interest; phone tag w/ Brenman; telephone call Kelly re same; review notice re hearing on trustee, etc. (1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00   |
| 10/30/01   | AMR | Review Prussin post-trial brief; comment thereon. (1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00   |
|            | AMR | Telephone call Brenman re Del amendment and lis pendens. (1)(A)(i)/(3)(D)/(4) | 0.33  | 91.67    |
| 10/31/01   | AMR | Fax to Prussin re suggestion re interp. of injunction; tcs re same and addition of Keen Valley and Rac forgiveness of indebtedness; review transcript. (1)(A)(i)/(3)(D)/(4) | 1.50  | 412.50   |
|            | AMR | E-mails from Kelly re status of Gray vs. Creditor Com.; Aylward departure; Rivco fortunes, etc. Telephone call JTK re same. (1)(A)(i)/(3)(D)/(4) | 0.50  | 137.50   |
| 11/1/01    | AMR | Review Prussin brief; message re same; telephone call Prussin. (1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00   |
| 11/2/01    | AMR | Tcs Kelly re non-payment and response to creditors to concept of sale, possible settlement w/ IRS; telephone call Azan re same; telephone call Brenman re amendment of complaint and adjournment of plan motion; telephone call Jacobus re deposition schedule and motion ; review pleadings re sale. (1)(A)(i)/(3)(D)/(4) | 4.50  | 1,237.50 |
| 11/5/01    | AMR | Telephone call Jacobus re scheduling of depositions; settlement discussions; attempt to reach Azan; telephone call Prussin re Brenman efforts re amendment | 1.00  | 275.00   |

00450

Chariot Group/Summit Metals, Inc.                              Page 31
March 29, 2006

|          |                                                                                                          | Hours | Amount |
|----------|----------------------------------------------------------------------------------------------------------|-------|--------|
|          | of complaint, etc.; advise others re schedule for  hearing.<br>(1)(A)(i)/(3)(D)/(4)                      |       |        |
|          | AMR Telephone call JTK re discussions w/ Newby; telephone call SJB re IRS settlement.<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
|          | AMR telephone call Prussin re adjournment of hearing on Gray contempt due to cataract operation for judge.<br>(1)(A)(i)/(3)(D)/(4) | 0.25  | 68.75  |
| 11/6/01  | AMR Telephone call JTK re tax investigation and proceedings in TN.<br>(1)(A)(i)/(3)(D)/(4)               | 0.17  | 45.83  |
|          | AMR E-mail to Brennan re next steps in De.<br>(1)(A)(i)/(3)(D)/(4)                                       | 0.25  | 68.75  |
| 11/7/01  | AMR Telephone call Carter in NH; assemble and forward to background mtls.<br>(1)(A)(i)/(3)(D)/(4)         | 1.75  | 481.25 |
|          | AMR Telephone call Prussin re findings of facts -- were submitted w/ brief -- and scheduling, possible appeal.<br>(1)(A)(i)/(3)(D)/(4) | 0.08  | 22.92  |
|          | AMR Telephone call Prussin re letter from Forrester re brief; telephone call Kelly re status of discussions w/ ESP creditors.<br>(1)(A)(i)/(3)(D)/(4) | 0.75  | 206.25 |
| 11/8/01  | AMR telephone call Carter re petition in NH; fax materials re Gray structure.<br>(1)(A)(i)/(3)(D)/(4)    | 1.00  | 275.00 |
| 11/9/01  | AMR E-mails to Kelly re status; attempt to reach Azan.<br>(1)(A)(i)/(3)(D)/(4)                           | 0.50  | 137.50 |
| 11/13/01 | AMR Review NH papers.<br>(1)(A)(i)/(3)(D)/(4)                                                            | 0.50  | 137.50 |

Chariot Group/Summit Metals, Inc.                          Page 32
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 11/19/01 | AMR tcs Prussin, Brenman, Kelly re Gray incarceration; message to Azan. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 11/20/01 | AMR Tcs Prussin and Azan re next steps. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 11/24/01 | AMR Review NH pleadings. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 11/26/01 | AMR Telephone call Prussin re Gray's next steps; telephone call Kelly re same. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR Lw Jacobus and Azan and Cenawood. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 11/27/01 | AMR Telephone call Prussin re order and record (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR Review NH dfts; telephone call Carter; fax changes. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
|  | AMR Telephone call Prussin re Delaware. (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
|  | AMR Attempt to reach Azan. (1)(A)(i)/(3)(D)/(4) | 0.08 | 22.92 |
| 11/28/01 | AMR Review transcript; forward to others; telephone call Prussin; telephone call Kelly. (1)(A)(i)/(3)(D)/(4) | 4.00 | 1,100.00 |
| 11/29/01 | AMR Review NH pleadings; telephone call Carter; telephone call Prussin; attempt to reach Brenman. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
|  | AMR Telephone call Jacobus re IRS settlement and creditor com. actions; | 1.00 | 275.00 |

Chariot Group/Summit Metals, Inc.                              Page 33
March 29, 2006

|            |     |                                                                                                                                                 | Hours | Amount |
|------------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
|            |     | telephone call Kelly re same and new 363 sale. (1)(A)(i)/(3)(D)/(4)                                                                              |       |        |
| 11/30/01   | AMR | telephone Kelly re 363 sale and news from Rich; e-mails re same; telephone call  Brenman; forward ranscript. (1)(A)(i)/(3)(D)/(4)                | 2.00  | 550.00 |
|            | AMR | Telephone call Prussin re future strategy re Gray seeking release; mtn for fees and interest. (1)(A)(i)/(3)(D)/(4)                               | 1.00  | 275.00 |
|            | AMR | Telephone call Carter re filing complaint; (1)(A)(i)/(3)(D)/(4)                                                                                  |       |        |
| 12/3/01    | AMR | Telephone call Ronen and Adam re interest calculations and pending motion; adjournment thereof and possible move by Gray. (1)(A)(i)/(3)(D)/(4)   | 0.75  | 206.25 |
| 12/12/01   | AMR | E-mail from Kelly re tactics of Cr. Com; telephone call JTK re same; attempt to reach Azan; attempt to reach Cenawood (1)(A)(i)/(3)(D)/(4)       | 1.50  | 412.50 |
| 12/13/01   | AMR | Telephone call Jacobus re IRS positions re settlement, etc; telephone call Azan re TN proceedings scheduled for Monday. (1)(A)(i)/(3)(D)/(4)     | 1.25  | 343.75 |
| 12/14/01   | AMR | Telephone call Carter re service. (1)(A)(i)/(3)(D)/(4)                                                                                           | 0.25  | 68.75  |
|            | AMR | Telephone call Brenman re suits vs. Quinn; (1)(A)(i)/(3)(D)/(4)                                                                                  | 0.50  | 137.50 |
| 12/17/01   | AMR | Telephone call Azan re items scheduled Monday, no collection of receivables;adjournment of other                                                 | 1.75  |        |

00453

Chariot Group/Summit Metals, Inc.                                    Page 34
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | matters; review settlement proposal; telephone call Prussin; telephone call JTK re Gray's PNC deal. (1)(A)(i)/(3)(D)/(4) |  |  |
| 12/18/01 | AMR | Telephone call Jacobus re Monday proceedings in TN; telephone call JTK and e-mails re bank finnancing, etc. (1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
|  | AMR | Telephone call Prussin re Gray offer and response thereto. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 12/19/01 | AMR | Telephone call Prussin re next steps by Gray; approach to Farnan; (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Telephone call Prussin re PNC financing; telephone call JTK re PNC, etc. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 12/20/01 | AMR | Telephone call Prussins re response to Asche; Quinn notice of appeal. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Conf call w/ Prussin/Brenman-- discussion approaches to Farnan. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
|  | AMR | Notice to PNC; fax notice to PNC w/ copy of PI; (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
|  | AMR | Telephone call Azan re objections to Benesch bill, Fleet 500k; look up 18 U.S.C. 152; fax NH papers. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 12/21/01 | AMR | Telephone call Kelly re PNC reaction; telephone call Prussin re same and anticipated next steps by Gray. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR | Create Quinn list; forward to Brenman. | 2.00 | 550.00 |

Chariot Group/Summit Metals, Inc.                          Page 35
March 29, 2006

|          |     |                                                                                                                                                                                                                          | Hours | Amount   |
|----------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                                      |       |          |
| 12/26/01 | AMR | Telephone call Kelly re continuing cash flow to Gray; think of alternatives for obtaining it; telephone call Carter re garnishment of management fees; review Quinn testimony re note payments, etc. (1)(A)(i)/(3)(D)/(4) | 3.75  | 1,031.25 |
| 12/27/01 | AMR | Telephone call JTK re position of creditors com.; e-mails re same.tcs Prussin and Brenman re next steps w/ Farnan, lift stay, refer back, abstain; discussion of garnishing management fees; telephone call Azan re status; e-mail to Prussin re same; telephone call Brenman. (1)(A)(i)/(3)(D)/(4) | 1.50  | 412.50   |
|          | AMR | telephone call Prussin and Brenman re opposition to motion -- Quinn's opposition; letter from Kelly re use of corp funds. (1)(A)(i)/(3)(D)/(4)                                                                             | 0.50  | 137.50   |
| 12/28/01 | AMR | Review abstension statute; ltrs to interested parties; telephone call Kelly re status of bankruptcies; review Quinn memo; review Prussin memo; review Cozier order; forward to mtls to Azan and Forrester; attempt to reach Jacobus. (1)(A)(i)/(3)(D)/(4) | 6.00  | 1,650.00 |
| 1/7/02   | AMR | telephone call Prussin re 773 and fine as possible bar to other claims for damages for violation of injunction. (1)(A)(i)/(3)(D)/(4)                                                                                      | 0.50  | 137.50   |
| 1/8/02   | AMR | Telephone call Brenman re proceeding in DE -- calls made to arrange conference, levying on management fees. (1)(A)(i)/(3)(D)/(4)                                                                                           | 0.50  | 137.50   |
|          | AMR | Telephone call Prussin re motion for                                                                                                                                                                                      | 0.50  | 137.50   |

00455

Chariot Group/Summit Metals, Inc.                    Page 36
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| | interest and possible waiver of other claims for violation of pi. (1)(A)(i)/(3)(D)/(4) | | |
| 1/10/02 | AMR Telephone call Prussin re status and levy or garnishment of management fees; AP not averse; telephone call JTK re purchase of claims, etc. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 1/11/02 | AMR Message for Brenman re urgency. (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
| 1/14/02 | AMR Telephone call Leitman re representation in Alabama; telephone call Brenman and Prussin re moving forward in Delaware, levying on management fees. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 1/15/02 | AMR Telephone call Kelly re approaching directors of companies; fax from Brenman; forward transcript to Jones. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 1/16/02 | AMR Telephone call Carter re levying on cash flow; telephone call Kelly re approach to Jenkins, consider options re levy. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 1/17/02 | AMR E-mails JTK re scheduling, collections of judgments; telephone call Prussin re same and discussions w/ Asche; (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| | AMR Telephone call Jensen re scheduling. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| | AMR E-mails Mashburn and Brenman re adjournment of 1/23/02 date; telephone call Jacobus re collection and settlement efforts; forward copy of findings of fact; review of same. (1)(A)(i)/(3)(D)/(4) | 2.25 | 618.75 |

Chariot Group/Summit Metals, Inc.                                     Page 37
March 29, 2006

|         |     |                                                                                                                                                                           | Hours | Amount   |
|---------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 1/18/02 | AMR | Copy of letter from Brenman re adjourning hearing; telephone call Kelly re news or adbsence thereof. (1)(A)(i)/(3)(D)/(4)                                                    | 0.50  | 137.50   |
| 1/22/02 | AMR | Telephone call Kelly re NH financing; new deadline from creditor committee. (1)(A)(i)/(3)(D)/(4)                                                                            | 0.50  | 137.50   |
|         | AMR | Fax to Asche re misinformation from Cenawood; (1)(A)(i)/(3)(D)/(4)                                                                                                          | 0.25  | 68.75    |
| 1/23/02 | AMR | Telephone call Brenman re next steps; telephone call Kelly; e-mails to Mashburn re pre-trial; telephone call Azan re motion Monday; review conflict of interest rules. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 1/24/02 | AMR | telephone call Prussin re theories for cutting off money supply; settlement offers; review ltr re stock. (1)(A)(i)/(3)(D)/(4)                                               | 1.00  | 275.00   |
|         | AMR | Kelly e-mail re creditor committee; telephone call Prussin re pre-trial; e-mail to Brenman; check travel schedules; prepare list of third party defendants; e-mail to Prussin and Brenman. (1)(A)(i)/(3)(D)/(4) | 2.50  | 687.50   |
| 1/25/02 | AMR | Telephone call Brenman re TN scheduling; telephone call Azan re same and probable non filing of mortgage; e-mail to Mashburn; telephone call Brenman re push on Del.; telephone call Jacobus; telephone call JTK re approach to Quintero et al. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 1/28/02 | AMR | Attempt to reach Brenman; tcs Prussin re St. Louis papers, mtn for relief 1/31/02; fax same; telephone call Prussin re next steps in DE; telephone | 3.50  | 962.50   |

00457

Chariot Group/Summit Metals, Inc.                          Page 38
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  |  | call Azan re pretrial; telephone call Kelly; review Cr. Com. complaint for reformation, etc. (1)(A)(i)/(3)(D)/(4) |  |  |
| 1/29/02 | AMR | Telephone call JTK re Gray moves and tax scams; review Quintero testimony and documents; review Asche settlement proposal. (1)(A)(i)/(3)(D)/(4) | 3.50 | 962.50 |
|  | AMR | Fax Cr. Com mtls to Prussin and Brenman; telephone call Brenman re approach to Farnan. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 1/30/02 | AMR | Telephone call Brenman re approach to Farnan. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Fax Quintero testimony to Azan and Forrester. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 2/3/02 | AMR | Draft letter to Farnan. (1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 2/4/02 | AMR | Fax draft letter to Farnan to Brenman and Prussin; telephone call Donovan and Carter re motino to dismiss; fax to Brenman and Prussin. (1)(A)(i)/(3)(D)/(4) | 2.50 | 687.50 |
| 2/5/02 | AMR | telephone call JTK re banks, etc. and attitudes; further extensions for Gray. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Telephone call Cox; forward transcript to St. Louis. (1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 2/6/02 | AMR | Attempt to reach Brenman; telephone call review mtn to dismiss in NH; telephone call Donovan re same and previous consideration of issue. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |

Chariot Group/Summit Metals, Inc.                              Page 39
March 29, 2006

|         |     |                                                                                                                                                                                                                                                          | Hours | Amount   |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 2/7/02  | AMR | Attempt to reach Brenman; telephone call JTK re banks; telephone call Prussin re action to garnish management fees; review TN pleadings re prior dealings w/ issue of 362 stay; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4)                          | 5.00  | 1,375.00 |
| 2/10/02 | AMR | Telephone call Prussin re TN emergency motion. (1)(A)(i)/(3)(D)/(4)                                                                                                                                                                                         | 0.50  | 137.50   |
| 2/11/02 | AMR | Review mtn; review NY collection procedure; review contempt findings; telephone call Prussin re delay and garnishment or contempt; review later notices; telephone call JTK; telephone call Brenman and Prussin; obtain garnishment forms; fax to Ronen and Adam. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,375.00 |
|         | AMR | Telephone call Jacobus re assessment and levy; e-mail to Mashburn re local representation. (1)(A)(i)/(3)(D)/(4)                                                                                                                                              | 1.00  | 275.00   |
| 2/12/02 | AMR | Review Prussin objection; telephone call Prussin; e-mails from Mashburn; review plane schedules; attempt to reach Ramage; attempt to reach Brenman; attempt to reach Jacobus; e-mail to Ramage; e-mail to Brenman; telephone call Mashburn; telephone call Brown. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 2/13/02 | AMR | Telephone call Prussin; telephone call Brenman re proceedings in Nashville; telephone call Ramage re same (2) . (1)(A)(i)/(3)(D)/(4)                                                                                                                          | 2.00  | 550.00   |
| 2/14/02 | AMR | Telephone call Ramage re TN hearing; telephone call Brenman re same;                                                                                                                                                                                        | 1.50  | 412.50   |

Chariot Group/Summit Metals, Inc.                              Page 40
March 29, 2006

|          |     |                                                                                                                                                                                                          | Hours | Amount   |
|----------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|          |     | telephone call Kelly re misc info; e-mail to Mashburn. (1)(A)(i)/(3)(D)/(4)                                                                                                                               |       |          |
|          | AMR | Telephone call Saraf re execution forms. (1)(A)(i)/(3)(D)/(4)                                                                                                                                             | 0.50  | 137.50   |
| 2/19/02  | AMR | Telephone call Brenman re next steps; Farnan order re additional info on mtn to preclude; need for amended complaint; theories in NH; telephone call Kelly re threat of suit against others, PNC financing; fax from Prussin re settlement. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 2/20/02  | AMR | Comment on proposed settlement; Review Prussin settlement proposal; conf call w/ Brenman and Prussin; e-mail Brenman re mtls from Del.; telephone call Kelly re status here and there. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
| 2/25/02  | AMR | Telephone call Prussin re coverage in restraining notices of payments for Gray's benefit; briefs for Delaware; telephone call Jones re removal of antiques. (1)(A)(i)/(3)(D)/(4)                           | 0.50  | 137.50   |
| 2/26/02  | AMR | E-mail from Prussin re service of restraining notices; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4)                                                                                               | 0.50  | 137.50   |
|          | AMR | Telephone call Jacobus re pressure on B.F. Rich to pay bills. (1)(A)(i)/(3)(D)/(4)                                                                                                                        | 0.25  | 68.75    |
| 2/27/02  | AMR | E-mail from Prussin re sj mtn; telephone call Prussin re DE and restraining notices; telephone call Donovan re corrections of dates, DE action. (1)(A)(i)/(3)(D)/(4)                                       | 1.50  | 412.50   |

Chariot Group/Summit Metals, Inc.                                    Page 41
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 2/28/02 | AMR | Review NH papers.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
|  | AMR | Telephone call Kelly re restraining notices; fax notices to Kelly.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR | Telephone call Prussin re brief on mtn to dismiss affirm defenses in DE.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 3/4/02 | AMR | Telephone call Schilling re opposition to motion to dismiss.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 3/8/02 | AMR | Telephone call Brenman re extension of pretrial.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 3/18/02 | AMR | Fax from Prussin re counter offer; work on response.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
|  | AMR | Telephone call Cenawood re IRS intentions.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 3/19/02 | AMR | Review correspondence re 99 and 2000 and past handling of case.<br>(1)(A)(i)/(3)(D)/(4) |  |  |
| 3/20/02 | AMR | e-mail to Ben re status.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 3/21/02 | AMR | E-mails from and to Prussin; e-mail from Coulson; consider response; telephone call CKR re alternative theory re Del.;  fax St. L. decision to Polivy; telephone call Cenawood; work on response to Coulson.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
|  | AMR | fax materials to Azan and Forrester;<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |

00461

Chariot Group/Summit Metals, Inc.                          Page 42
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 3/27/02 | AMR E-mail from HAP re summary judgment in DE. <br> (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
|  | AMR E-mail from Prussin re sj in DE. <br> (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
| 3/28/02 | AMR Telephone call JTK re continued violations of restraining order. <br> (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
|  | AMR  Telephone call Azan re McClean response, sham estate and appointment of trustee. <br> (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
|  | AMR Telephone call Azan re McClean response, sham estate and appointment of trustee. <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 4/3/02 | AMR E-mails Prussin and Kelly re restraining notices. <br> (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 4/5/02 | AMR E-mails JTK; Telephone call JTK re contacts w/ Loquatro; NH foreclosure. <br> (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 4/9/02 | AMR Review correspondence from Prussin and e-mails; telephone call and e-mails from Kelly re contacts w/ ESP. <br> (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 4/15/02 | AMR E-mail from HAP re lack of response to subpoenas. <br> (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
| 4/17/02 | AMR Telephone calls re JTK, Prussin re actions in DE, NY and TN. <br> (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 4/23/02 | AMR E-mail to and from Prussin re Jenkins response to subpoena, telconf in DE re | 2.50 | 687.50 |

Chariot Group/Summit Metals, Inc.                          Page 43
March 29, 2006

|         |                                                                                                              | Hours | Amount |
|---------|--------------------------------------------------------------------------------------------------------------|-------|--------|
|         | withdrawal motions; telephone call Prussin.<br>(1)(A)(i)/(3)(D)/(4)                                           |       |        |
| 4/24/02 | AMR E-mails Prussin re hearing in DE.<br>(1)(A)(i)/(3)(D)/(4)                                                 | 0.25  | 68.75  |
| 4/25/02 | AMR Telephone call Brenman re status of DE action.<br>(1)(A)(i)/(3)(D)/(4)                                    | 0.25  | 68.75  |
| 4/26/02 | AMR Review fee request; draft response.<br>(1)(A)(i)/(3)(D)/(4)                                               | 1.00  | 275.00 |
| 4/28/02 | AMR Letter to Azan and Forrester objecting to fees; draft 28 USC 372 letter.<br>(1)(A)(i)/(3)(D)/(4)          | 3.00  | 825.00 |
| 4/30/02 | AMR E-mail to Prussin and Brenman re deposition of Quintero et al.;<br>(1)(A)(i)/(3)(D)/(4)                   | 0.50  | 137.50 |
| 5/1/02  | AMR Telephone call Prussin re depositions.<br>(1)(A)(i)/(3)(D)/(4)                                            | 0.25  | 68.75  |
| 5/2/02  | AMR E-mail from Prussin re latest offer;<br>(1)(A)(i)/(3)(D)/(4)                                              | 0.25  | 68.75  |
|         | AMR Telephone call Cenawood re liens; telephone calls and e-mails JTK re same; fax objections re fees.<br>(1)(A)(i)/(3)(D)/(4) | 1.50  | 412.50 |
| 5/6/02  | AMR Telephone call Prussins re Quintero non-appearance for depositions.<br>(1)(A)(i)/(3)(D)/(4)               | 0.50  | 137.50 |
| 5/8/02  | AMR E-mail message to Brenman re adding third parties.<br>(1)(A)(i)/(3)(D)/(4)                                | 0.17  | 45.83  |
| 5/16/02 | AMR Attempt to reach Brenman.<br>(1)(A)(i)/(3)(D)/(4)                                                         | 0.08  | 22.92  |
|         | AMR Telephone call Cenawood re lien on ESP; e-mail re Forrester plan.                                          | 1.00  | 275.00 |

Chariot Group/Summit Metals, Inc.                              Page 44
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
|  | (1)(A)(i)/(3)(D)/(4) |  |  |
|  | AMR Telephone call Ronen re response to Quinn mtn; (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 5/17/02 | AMR Telephone call Prussin re proceedings in NY; draft complaint re Farnan; fax to Brennan and Prussin. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 5/20/02 | AMR Telephone call Brennan re complaint letter re Farnan. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 5/21/02 | AMR Fax to Prussin and Brennan re status -- Quinn to be deposed; hold Farnan complaint in abeyance. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 5/23/02 | AMR Revise Farnan letter. (1)(A)(i)/(3)(D)/(4) | 0.33 | 91.67 |
| 5/30/02 | AMR Telephone call JTK re visit to Rich; various defaults;  attempt to reach Cenawood; attempt to reach Azan. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 5/31/02 | AMR Telephone call JTK re funds to REG and BJQ -- default in DE;  telephone call Cenawood re funds to Gray; telephone call Jensen re service on Gray. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 6/4/02 | AMR Telephone call Prussin re Quinn motion. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 6/7/02 | AMR E-mails and telephone call JTK re rumored deal to sell B.F. Rich. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
|  | AMR Telephone call Prussin re pending motions. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |

Chariot Group/Summit Metals, Inc.                    Page 45
March 29, 2006

|         |                                                                                                                              | Hours | Amount |
|---------|------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 6/10/02 | AMR Telephone call JTK re status; Azan opp to fees; no info re sale of Rich; whether to approach Gray, etc. (1)(A)(i)/(3)(D)/(4) | 0.33  | 91.67  |
| 6/11/02 | AMR Review reply brief; telephone call HAP re status and Del. (1)(A)(i)/(3)(D)/(4)                                            | 0.50  | 137.50 |
| 6/12/02 | AMR Telephone call Prussin re threat of Rich sale. (1)(A)(i)/(3)(D)/(4)                                                       | 0.25  | 68.75  |
|         | AMR Telephone call Bennick re sale of coop. (1)(A)(i)/(3)(D)/(4)                                                              | 0.25  | 68.75  |
|         | AMR Telephone call JTK re bidder for Rich -- nothing for anyone but lawyers and trade creditors; fax to Cenawood; calls to interested parties. (1)(A)(i)/(3)(D)/(4) |       |        |
| 6/19/02 | AMR Telephone call AP re conf. in DE (1)(A)(i)/(3)(D)/(4)                                                                     | 0.17  | 45.83  |
| 6/24/02 | AMR Revise Farnan complaint letter. (1)(A)(i)/(3)(D)/(4)                                                                      | 0.33  | 91.67  |
| 6/26/02 | AMR Send out Farnan ltr. (1)(A)(i)/(3)(D)/(4)                                                                                 | 0.17  | 45.83  |
| 6/29/02 | AMR Revise letter to 3rd Cir. and send out. (1)(A)(i)/(3)(D)/(4)                                                              | 1.50  | 412.50 |
| 7/8/02  | AMR Telephone call JTK re stockholder mtgs for Jenkins and Rivco. (1)(A)(i)/(3)(D)/(4)                                        | 0.50  | 137.50 |
| 7/11/02 | AMR Telephone call Brenman re dates in TN, need to prod Farnan; review Gray papers. (1)(A)(i)/(3)(D)/(4)                      | 1.00  | 275.00 |
| 7/12/02 | AMR Telephone call Prussin re motion on 7/11/02 -- who has authority to enforce injunction. (1)(A)(i)/(3)(D)/(4)             | 0.50  | 137.50 |

00465

Chariot Group/Summit Metals, Inc.                     Page 46
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
|  | AMR | Review Gray afft; telephone call Prussin re same; e-mail to Mashburn. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 7/18/02 | AMR | E-mail to Prussin and Brenman re Farnan complaint. (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
| 7/22/02 | AMR | Review Gray mtn to get out of jail; think about response. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 7/23/02 | AMR | Review Prussin brief; provide comments; telephone call Prussin re response to Gray order to show cause. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 7/24/02 | AMR | E-mail from Prussin re brief; review of same; telephone call Prussin re Gray plea and ramification. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 7/25/02 | AMR | tcs Prussin re response to OSC re incarceration. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 7/27/02 | AMR | Review complaint forms and rules. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 7/29/02 | AMR | Revise complaint; fax to Brenman and Prussin. (1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 7/30/02 | AMR | Prepare complaint forms; revise complaint statement and letter to Third Cir. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 7/31/02 | AMR | Complete complaint to 3rd Cir. E-mail to Prussin and Brenman re 3rd part;y authority -- cutting off cash flow. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 8/1/02 | AMR | E-mail from Prussin -- ruminations re next steps. | 0.50 | 137.50 |

Chariot Group/Summit Metals, Inc.                          Page 47
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
|  | (1)(A)(i)/(3)(D)/(4) |  |  |
| 8/2/02 | AMR Review draft letter to Farnan; comments re same.<br>(1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
|  | AMR Telephone call JTK re inducement re halting mgt fees; letter to Polivy re mgt fees and presumption of theft; various calls -- Polivy, Ahern; telephone call Jacobus re AMW filing; telephone call Cenawood re same.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 8/4/02 | AMR E-mail to Brenman re approaches to Farnan, authority to sue third parties, willingness to work, etc.<br>(1)(A)(i)/(3)(D)/(4) | 0.33 | 91.67 |
| 8/6/02 | AMR Telephone call Brenman re next steps; fax copy of Farnan complaint.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 8/7/02 | AMR Telephone calls Brenman re depositions of Quintero and Quinn, moving case to Akard; e-mails re same.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 8/9/02 | AMR Letter from 3rd Cir. re receipt and delivery of complaint; fax to Brenman; telephone call Brenman re discussion w/ Jacobus.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 8/12/02 | AMR Review order from 3rd Cir.; message to Brenman; review Prussin letter to Farnan; comments re same.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 8/13/02 | AMR Telephone calls Prussin re draft letter to Farnan.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 8/14/02 | AMR Telephone call Prussin re letter to | 1.50 | 412.50 |

Chariot Group/Summit Metals, Inc.                          Page 48
March 29, 2006

|         |                                                                                      | Hours | Amount |
|---------|--------------------------------------------------------------------------------------|-------|--------|
|         | Farnan -- I am for sending -- e-mails re same; review rvsd letter to Farnan. (1)(A)(i)/(3)(D)/(4) |       |        |
| 8/15/02 | AMR e-mail from Prussin re status. (1)(A)(i)/(3)(D)/(4)                               | 0.25  | 68.75  |
|         | AMR E-mail Prussin re status; movement against Benesch. (1)(A)(i)/(3)(D)/(4)         | 0.50  | 137.50 |
| 8/16/02 | AMR E-mails re letter to Farnan. (1)(A)(i)/(3)(D)/(4)                                | 0.50  | 137.50 |
| 8/19/02 | AMR Telephone call Prussin re letter to Farnan; review final product. (1)(A)(i)/(3)(D)/(4) | 0.50  | 137.50 |
| 8/21/02 | AMR E-mail from Prussin; review Farnan opinion; telephone call Prussin re request for immediate trial. (1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
| 8/22/02 | AMR Telephone call Prussin re absence of facts in opinion. (1)(A)(i)/(3)(D)/(4)     | 0.25  | 68.75  |
|         | AMR E-mails from JTK re auction of Rivco Realty. (1)(A)(i)/(3)(D)/(4)               | 0.25  | 68.75  |
| 8/26/02 | AMR Review court notice re transfer of case. (1)(A)(i)/(3)(D)/(4)                   | 0.17  | 45.83  |
| 9/3/02  | AMR Review letter from Farnan. (1)(A)(i)/(3)(D)/(4)                                 | 0.50  | 137.50 |
| 9/4/02  | AMR Review Farnan letter; forward to Prussin and Brenman. (1)(A)(i)/(3)(D)/(4)      | 0.50  | 137.50 |
| 9/5/02  | AMR Telephone call Prussin re response from Farnan; letter to Becker re same. (1)(A)(i)/(3)(D)/(4) | 0.50  | 137.50 |

00468

Chariot Group/Summit Metals, Inc.                          Page 49
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 9/9/02 | AMR Telephone call Brennan re status and next steps; review docket for adversary; telephone call Prussin re status.<br>(1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 9/10/02 | AMR Telephone call Brenman re Farnan ltr and next steps -- authority mtns, etc.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 9/11/02 | AMR Review Farnan mtls; e-mail to Prussin and Brenman re absence of mtn to amend; fax re memo re Baldwin; review class action complaint and contemplate severance.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 9/12/02 | AMR E-mail from Prussin re mtn to dismiss; work on response re Farnan.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/13/02 | AMR Review Farnan mtls.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/16/02 | AMR Review Gray affts.; draft letter to Becker re Farnan; on-line search of docket.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 9/17/02 | AMR Revise Becker letter.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/18/02 | AMR Telephone call Brenman re Quinn deposition; forward Gray affidavits; review of same.<br>(1)(A)(i)/(3)(D)/(4) | 1.25 | 343.75 |
| 9/19/02 | AMR Work on questions for Quinn<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/20/02 | AMR Prepare questions for Quinn; telephone call Brenman; revise and send out letter to Becker.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 9/21/02 | AMR Forward outline of questions to Brenman. | 0.25 | 68.75 |

00469

Chariot Group/Summit Metals, Inc.                                    Page 50
March 29, 2006

|          |                                                                                                            | Hours | Amount |
|----------|------------------------------------------------------------------------------------------------------------|-------|--------|
|          | (1)(A)(i)/(3)(D)/(4)                                                                                        |       |        |
| 9/24/02  | AMR Telephone call JTK re Quinn debriefing and NH auction.<br>(1)(A)(i)/(3)(D)/(4)                          | 0.25  | 68.75  |
| 9/26/02  | AMR Review latest Gray epistle; attempt to reach Mack.<br>(1)(A)(i)/(3)(D)/(4)                              | 1.00  | 275.00 |
|          | AMR Conf call w/ JTK, Cenawood and Klapper re flow of funds to Gray; review JTK letters to Klapper; telephone call JTK and e-mails re NH auction.<br>(1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00 |
| 9/27/02  | AMR E-mail to Prussin re status -- NH sale; severing class action.<br>(1)(A)(i)/(3)(D)/(4)                 | 0.50  | 137.50 |
| 10/2/02  | AMR Review Prussin motion papers; fax comments.<br>(1)(A)(i)/(3)(D)/(4)                                     | 1.00  | 275.00 |
| 10/3/02  | AMR Review mtn to lift stay; telephone call Prussin re same.<br>(1)(A)(i)/(3)(D)/(4)                        | 0.25  | 68.75  |
| 10/8/02  | AMR Fax to Victor; telephone call Jacobus re tax liability for fraudulent returns and Gray's latest letter.<br>(1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
|          | AMR  Telephone call Schilling re NH proceedings;<br>(1)(A)(i)/(3)(D)/(4)                                    | 0.50  | 137.50 |
|          | AMR Review CSC materials; fax to Mack re Vytex.<br>(1)(A)(i)/(3)(D)/(4)                                     |       |        |
| 10/18/02 | AMR Telephone call Prussin re proceedings in DE; telephone call Brenman re same.<br>(1)(A)(i)/(3)(D)/(4)    | 0.50  | 137.50 |

Chariot Group/Summit Metals, Inc.                          Page 51
March 29, 2006

|          |                                                                                                                          | Hours | Amount   |
|----------|--------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 10/22/02 | AMR telephone call Prussin re DE status – denial of discovery objections. (1)(A)(i)/(3)(D)/(4)                            | 0.50  | 137.50   |
| 10/25/02 | AMR Review Prussin fax re Asche reply; telephone call Prussin re same. (1)(A)(i)/(3)(D)/(4)                               | 0.75  | 206.25   |
| 10/28/02 | AMR Telephone call Prussin re contempt hearing. (1)(A)(i)/(3)(D)/(4)                                                      | 0.25  | 68.75    |
|          | AMR Review Becker decision. (1)(A)(i)/(3)(D)/(4)                                                                          | 0.25  | 68.75    |
| 11/7/02  | AMR Telephone call Prussin re tax returns; telephone call Brenman re 3 year and settlement; telephone call JTK re tax returns; review Colliers; telephone call Jacobus re 3 year rule; fax to Spar re tax exposures. (1)(A)(i)/(3)(D)/(4) | 5.00  | 1,375.00 |
| 11/8/02  | AMR Telephone call Spar re financial records;  refax materials; telephone call JTK re call to Fahey; letter to Polivy re competing offers; (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
| 11/19/02 | AMR Telephone call Prussin; review initial disclosures; telephone call Prussin; advise re status. (1)(A)(i)/(3)(D)/(4)   | 0.50  | 137.50   |
| 12/19/02 | AMR  Think about theories for objections; research re collapsing transaction cases, fraudulent transfer cases; review Quinn and Quintero testimony. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 4/14/03  | AMR Tcs Kelly, Prussin re possible stockholder action, Brenman, Cenawood re continuing funds to Gray; telephone call Schilling re hearing in NH and | 3.50  | 962.50   |

Chariot Group/Summit Metals, Inc.                              Page 52
March 29, 2006

                                                    Hours       Amount

        attempt to remove stay; e-mails re
        Rivco financials.
        (1)(A)(i)/(3)(D)/(4)

     AMR attempt to reach Ahern, Forrester,        0.50        137.50
        Norton;   e-mail from Mashburn.
        (1)(A)(i)/(3)(D)/(4)

5/5/03   AMR E-mails from Prussin and Schiltz;     1.00        275.00
        comment on same.
        (1)(A)(i)/(3)(D)/(4)

5/9/03   AMR Review Prussin dfts re summary        1.25        343.75
        judgment; telephone call Prussin re
        same and contempt proceedings.
        (1)(A)(i)/(3)(D)/(4)

5/12/03  AMR E-mails Prussin re contempt hearing;  2.00        550.00
        e-mail Schiltz re brief; e-mail JTK re
        status; e-mail from Prussin re
        companies; review same.
        (1)(A)(i)/(3)(D)/(4)

5/14/03  AMR E-mail comments to Prussin re proposed 1.00       275.00
        escrow deal.
        (1)(A)(i)/(3)(D)/(4)

5/17/03  AMR E-mail fromm HAP re Gray location and 0.25        68.75
        pending motions.
        (1)(A)(i)/(3)(D)/(4)

     AMR Review brief for default and summary      1.00        275.00
        judgment; comment on concepts re
        guaranty of Hallowell note.
        (1)(A)(i)/(3)(D)/(4)

5/18/03  AMR Review Prussin brief and add comments. 2.00       550.00
        (1)(A)(i)/(3)(D)/(4)

5/19/03  AMR Forward to comments to Prussin.       1.50        412.50
        (1)(A)(i)/(3)(D)/(4)

5/22/03  AMR Review summary judgment brief; comments 1.00      275.00
        to Prussin re same.
        (1)(A)(i)/(3)(D)/(4)

00472

Chariot Group/Summit Metals, Inc.                           Page 53
March 29, 2006

|         |     |                                                                                                                                                      | Hours | Amount |
|---------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 6/6/03  | AMR | Telephone call Prussin re status and new date for Gray -- 6/23; Rich Realty was represented; Gray served by certified mail. (1)(A)(i)/(3)(D)/(4)      | 0.50  | 137.50 |
| 6/16/03 | AMR | Review Technicorp suit re cancellation of equity; rsrch Del. cases re same; review financials of Chariot Group -- 8.7 M equity at 92 end. (1)(A)(i)/(3)(D)/(4) | 2.50  | 687.50 |
| 6/17/03 | AMR | ]Review Asche proposal; review pledge agreement from 2001; e-mail and telephone call Prussin re same; review Prussin response to Asche; research re Technicorp and cancellation of equity. (1)(A)(i)/(3)(D)/(4) | 2.00  | 550.00 |
| 6/20/03 | AMR | Telephone call HAP re draft to Asche re Gray consent to default motion; discussion of what happens next, trustee, etc. (1)(A)(i)/(3)(D)/(4)            | 1.00  | 275.00 |
| 6/22/03 | AMR | Look up rules on appointment of trustees. (1)(A)(i)/(3)(D)/(4)                                                                                        | 1.00  | 275.00 |
| 6/27/03 | AMR | Review letter from Proctor re letting BFR out; telephone call HAP re same and status of proceedings. (1)(A)(i)/(3)(D)/(4)                             | 0.50  | 137.50 |
| 7/1/03  | AMR | Review Gray submission; faxes and e-mails to Prussin and Schiltz re same. (1)(A)(i)/(3)(D)/(4)                                                        | 1.50  | 412.50 |
| 7/2/03  | AMR | Review Prussin draft brief; comments on same; telephone call Prussin re opposition; e-mails to Schiltz re Gray representation. (1)(A)(i)/(3)(D)/(4)   | 2.00  | 550.00 |
| 7/4/03  | AMR | Review Prussin reply brief and comment. (1)(A)(i)/(3)(D)/(4)                                                                                          | 2.00  | 550.00 |

Chariot Group/Summit Metals, Inc.                          Page 54
March 29, 2006

|          |     |                                                                                                                                                                              | Hours | Amount   |
|----------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
| 7/13/03  | AMR | On line research re statute of limitations for state and federal violations.<br>(1)(A)(i)/(3)(D)/(4)                                                                               | 2.00  | 550.00   |
| 7/14/03  | AMR | Review pending arguments and schedules.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                   | 0.50  | 137.50   |
| 7/16/03  | AMR | Review and comment on pretrial order and exhibit list; review of same; telephone call Prussin and e-mails to Schiltz and Prussin; telephone call and e-mails JTK and forward to Prussin and Schiltz.<br>(1)(A)(i)/(3)(D)/(4) | 4.50  | 1,237.50 |
| 7/17/03  | AMR | E-mail comments on PTO; review final; e-mail and telephone call Prussin re same.<br>(1)(A)(i)/(3)(D)/(4)                                                                           | 2.00  | 550.00   |
| 7/18/03  | AMR | Forward to PTO to JTK; telephone call HAP re same.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                         | 0.50  | 137.50   |
| 7/22/03  | AMR | Review Proctor comments.<br>(1)(A)(i)/(3)(D)/(4)                                                                                                                                   | 0.75  | 206.25   |
| 7/23/03  | AMR | Review Proctor comments; e-mail to Prussin and Schiltz; telephone call JTK; conf call w/ Prussin and Schiltz; review e-mail from Schiltz to Proctor.<br>(1)(A)(i)/(3)(D)/(4)       | 2.50  | 687.50   |
| 7/27/03  | AMR | Telephone call Schilling re hearing in NH; fax pretrial re same.<br>(1)(A)(i)/(3)(D)/(4)                                                                                           | 0.50  | 137.50   |
| 8/1/03   | AMR | Review opposition to Gray mtn for stay or adjournment; telephone call Prussin re same.<br>(1)(A)(i)/(3)(D)/(4)                                                                     | 0.50  | 137.50   |
|          | AMR | Review Colliers and cases re collectibility of collection costs.                                                                                                                  | 2.50  | 687.50   |

Chariot Group/Summit Metals, Inc.                        Page 55
March 29, 2006

|          |                                                                                                                                                | Hours | Amount |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
|          | (1)(A)(i)/(3)(D)/(4)                                                                                                                            |       |        |
| 8/2/03   | AMR Review time on stockholder and bankruptcy matters.<br>(1)(A)(i)/(3)(D)/(4)                                                                  | 2.00  | 550.00 |
| 8/5/03   | AMR Review prior claim in Summit case; download and review claim form.<br>(1)(A)(i)/(3)(D)/(4)                                                  | 1.00  | 275.00 |
| 8/11/03  | AMR E-mail from Prussin re need for documents; telephone call JTK re Gray plea agreement;  telephone call Prussin; prepare copies of 86 return and Sandusky prospectus; review of same.<br>(1)(A)(i)/(3)(D)/(4) | 1.50  | 412.50 |
| 8/12/03  | AMR E-mails JTK re hearing; assemble and forward to mtls to Prussin.<br>(1)(A)(i)/(3)(D)/(4)                                                     | 0.25  | 68.75  |
| 8/18/03  | AMR E-mails to and from Prussin re results of pre-trial and adjournment of trial.<br>(1)(A)(i)/(3)(D)/(4)                                        | 1.00  | 275.00 |
| 8/20/03  | AMR Telephone call Prussin re amended complaint.<br>(1)(A)(i)/(3)(D)/(4)                                                                         | 0.25  | 68.75  |
| 8/21/03  | AMR Review order of default judgment; fax to Kelly.<br>(1)(A)(i)/(3)(D)/(4)                                                                      | 0.25  | 68.75  |
| 8/27/03  | AMR Review amended complaint re available relief; telephone call JTK re same and Rivco murmurings.<br>(1)(A)(i)/(3)(D)/(4)                       | 0.75  | 206.25 |
| 9/2/03   | AMR E-mail to Prussin and Schiltz re next steps.<br>(1)(A)(i)/(3)(D)/(4)                                                                         | 0.25  | 68.75  |
| 9/3/03   | AMR Exchange of e-mails w/ Prussin re possibilities in TN.<br>(1)(A)(i)/(3)(D)/(4)                                                               | 0.75  | 206.25 |

Chariot Group/Summit Metals, Inc.                          Page 56
March 29, 2006

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 9/5/03 | AMR | Telephone call Prussin re next steps in DE- do something with ESP stock; e-mails from JTK re Rivco. (1)(A)(i)/(3)(D)/(4) | 0.75 | 206.25 |
| 9/12/03 | AMR | Attempt to reach Schiltz. (1)(A)(i)/(3)(D)/(4) | 0.17 | 45.83 |
| 9/15/03 | AMR | message from Schiltz (1)(A)(i)/(3)(D)/(4) | 0.08 | 22.92 |
| 9/16/03 | AMR | E-mails and telephone call Schiltz re TN Com desire to seek subordination; rsrch re dividends as debt. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 9/17/03 | AMR | E-mail to Prussin and Schiltz re next steps; conference with Shafferman re same; get bankruptcy materials. (1)(A)(i)/(3)(D)/(4) | 1.25 | 343.75 |
| 9/18/03 | AMR | E-mail from Schiltz re 510(b); research at bar lib; review Montgomery Ward; e-mail to Schiltz and Prussin re same. (1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 9/19/03 | AMR | Telephone call JTK re matters in NH and TN -- company adrift - Gray full of threats. (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| | AMR | Telephone call Prussin re NY order, etc.; and TN proceedings. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 9/22/03 | AMR | Review e-mails re Montgomery Ward and 510(b). (1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 9/23/03 | AMR | E-mail to Schiltz and Prussin re claims in TN. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 10/24/03 | AMR | Gray letter re deal. (1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |

Chariot Group/Summit Metals, Inc.                                    Page 57
March 29, 2006

| | | | Hours | Amount |
|---|---|---|---|---|
| 10/28/03 | AMR | Telephone call Prussin re Gray offer; telephone call Shafferman re same, and response.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 10/29/03 | AMR | Telephone call Prussin re Gray news, denial of summary judgment; release from jail; arrange meeting; delivery of letter to Asche.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 10/30/03 | AMR | Review Jordan decision; e-mail and telephone call Prussin re Moskowitz letter re contempt.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 11/7/03 | AMR | E-mail Prussin re timing and proof issues; review past outlines; Telephone call Prussin re scheduling and proof in DE; new judge in NY and hearing Monday-- no papers yet re Gray claims.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 11/10/03 | AMR | Telephone call Jensen re order re Gray release; message to Prussin; attend part of court hearing.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 11/12/03 | AMR | E-mails re scheduling.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 11/13/03 | AMR | Review charts from Prussin re Gray looting, etc.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 11/14/03 | AMR | Review Prussin charts; attempt to reach Prussin.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 11/18/03 | AMR | E-mails re trial prep; Rich Realty; ESP motion to subordinate.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |

Chariot Group/Summit Metals, Inc.                                    Page 58
March 29, 2006

|            |                                                                                                                      | Hours | Amount   |
|------------|----------------------------------------------------------------------------------------------------------------------|-------|----------|
| 11/19/03   | AMR Meeting with Prussin re trial prep; telephone call JTK re same, taxes and Rich Realty; review bankruptcy materials re authority. (1)(A)(i)/(3)(D)/(4) | 4.00  | 1,100.00 |
| 11/20/03   | AMR Review TN opposition to claims; Review e-mails from Prussin and Kelly; e-mail to Schiltz re claims in TN. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00   |
| 11/21/03   | AMR Review objections to claims; conference with Shafferman; e-mails Prussin and Kelly; review Colliers re authority to file. (1)(A)(i)/(3)(D)/(4) | 1.25  | 343.75   |
| 12/2/03    | AMR Review TN materials; e-mail from Schiltz re opposition. (1)(A)(i)/(3)(D)/(4)                                        | 0.50  | 137.50   |
| 12/5/03    | AMR Review ESP objections. (1)(A)(i)/(3)(D)/(4)                                                                        | 0.25  | 68.75    |
| 12/8/03    | AMR E-mail from Schiltz; e-mail to same. (1)(A)(i)/(3)(D)/(4)                                                          | 0.17  | 45.83    |
| 12/9/03    | AMR Review file and e-mails; review Colliers re Montgomery Ward, etc.; draft response to objections; conference with Schafferman; revise; e-mail to Schiltz and Prussin. (1)(A)(i)/(3)(D)/(4) | 2.50  | 687.50   |
| 12/12/03   | AMR E-mails re filing of committee response to objection. (1)(A)(i)/(3)(D)/(4)                                         | 0.25  | 68.75    |
| 1/6/04     | AMR E-mails Schiltz re TN claims. (1)(A)(i)/(3)(D)/(4)                                                                 | 0.75  | 206.25   |
| 1/7/04     | AMR Telephone call and e-mails w/ Schiltz re TN schedule. (1)(A)(i)/(3)(D)/(4)                                         | 0.50  | 137.50   |

Chariot Group/Summit Metals, Inc.                          Page 59
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 1/8/04 | AMR | Meeting with Prussin re trial preparation for Delaware adversary proceeding; telephone call Prussin re discussions w/ Gray and strategy. (1)(A)(i)/(3)(D)/(4) | 3.00 | 825.00 |
| 1/9/04 | AMR | Tcs Prussin and Schiltz re trial conference and results thereof. (1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 1/11/04 | AMR | Tvl to Delaware. (1)(A)(i)/(3)(D)/(4) | 3.00 | 412.50 |
|  | AMR | Mtgs w/ Prussin and Kelly re settlement and trial. (1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |
| 1/12/04 | AMR | Attend trial; work w/ Schiltz and Prussin on motion to lift stay. (1)(A)(i)/(3)(D)/(4) | 5.00 | 1,375.00 |
| 1/13/04 | AMR | Attend trial of Adversary proceeding in De. (1)(A)(i)/(3)(D)/(4) | 6.00 | No Charge |
|  | AMR | Tvl from DE to NY (1)(A)(i)/(3)(D)/(4) | 3.00 | 412.50 |
| 1/15/04 | AMR | E-mails Schiltz re TN claims and schedule; conference with Schafferman re same; research re same. (1)(A)(i)/(3)(D)/(4) | 1.50 | 206.25 |
|  | AMR | E-mails Schiltz re claims in TN; conference with Schafferman re subordination claim and purchase of debtor shares; rsrch re same. (1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 1/16/04 | AMR | E-mails to and from Schiltz re note claim; review Colliers re tax priority; conference with Blum re lien removal; review Saltzman re same. (1)(A)(i)/(3)(D)/(4) | 1.25 | 343.75 |

Chariot Group/Summit Metals, Inc.                                    Page 60
March 29, 2006

|          |                                                                                                                           | Hours | Amount |
|----------|---------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 1/19/04  | AMR Research re note claim and subordination under 510(b). (1)(A)(i)/(3)(D)/(4)                                            | 1.00  | 275.00 |
| 1/27/04  | AMR E-mail from Schiltz re depositions, etc. (1)(A)(i)/(3)(D)/(4)                                                          | 0.25  | 68.75  |
| 1/28/04  | AMR Message from Schilling. (1)(A)(i)/(3)(D)/(4)                                                                           | 0.08  | 22.92  |
| 2/13/04  | AMR Telephone call Prussin re theories and possibilities in TN claim. (1)(A)(i)/(3)(D)/(4)                                 | 0.25  | 68.75  |
| 2/17/04  | AMR Conf call w/ Schiltz and Prussin re approach to TN; review e-mails from Schiltz re conversations w/ Ahern and IRS. (1)(A)(i)/(3)(D)/(4) | 0.75  | 206.25 |
| 2/18/04  | AMR Review e-mails from Schiltz and Prussin re TN settlement; conf call re same. (1)(A)(i)/(3)(D)/(4)                      | 1.00  | 275.00 |
|          | AMR Telephone call JTK re offer to creditors' committee; e-mail from Prussin re status; e-mail re to same; review Satlzman re tax procedure. (1)(A)(i)/(3)(D)/(4) | 1.00  | 275.00 |
| 2/24/04  | AMR Telephone call Prussin re offer. (1)(A)(i)/(3)(D)/(4)                                                                  | 0.17  | 45.83  |
| 3/8/04   | AMR Review settlement agreements; e-mails from and to Schiltz re same; review Gray materials. (1)(A)(i)/(3)(D)/(4)         | 1.25  | 343.75 |
| 3/9/04   | AMR Review Gray counter statement of facts. (1)(A)(i)/(3)(D)/(4)                                                           | 1.00  | 275.00 |
| 3/10/04  | AMR Telephone call Schiltz and Prussin re settlement agreement and response to Gray. (1)(A)(i)/(3)(D)/(4)                  | 0.67  | 183.33 |

Chariot Group/Summit Metals, Inc.                    Page 61
March 29, 2006

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 4/2/04 | AMR | E-mails from Schiltz; review ESP mtls.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 4/6/04 | AMR | E-mails from Schiltz re modification of settlement agreement; telephone call Schiltz re same; review Gray objections in TN;  review e-mail to Prussin re modification; e-mail to Prussin and Schiltz.<br>(1)(A)(i)/(3)(D)/(4) | 1.50 | 412.50 |
| 4/14/04 | AMR | E-mail from proceedings in TN; e-mail from JTK re same.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 5/26/04 | AMR | Comment on Schiltz message re Jenkins problems w/ Gray taxes.<br>(1)(A)(i)/(3)(D)/(4) | 0.50 | 137.50 |
| 6/16/04 | AMR | E-mails from JTK re potential Jenkins bankruptcy; conference with Schafferman re same; print out disclosure statement; attempt to reach Ahern.<br>(1)(A)(i)/(3)(D)/(4) | 1.00 | 275.00 |
| 6/18/04 | AMR | Telephone call JTK re status of proceedings in TN & DE; Gray threats to Simmons; Gray mtn in TN; lw Larry.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 7/7/04 | AMR | Telephone call Prussin re status or lack thereof; operating co. problems w/ IRS; HAP swampted w/ suits v. mutual funds.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 7/12/04 | AMR | Review Schiltz e-mail; lw Schiltz re Gray appeal.<br>(1)(A)(i)/(3)(D)/(4) | 0.25 | 68.75 |
| 8/9/04 | AMR | Message from and telephone call Prussin re Court decision; review of same; lw Schiltz; lw Rayment re no payouts to Gray.<br>(1)(A)(i)/(3)(D)/(4) | 2.00 | 550.00 |

Chariot Group/Summit Metals, Inc.                              Page 62
March 29, 2006

|          |                                                                                                                                                                          | Hours | Amount |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|--------|
| 8/10/04  | AMR Telephone call Schiltz and Prussin re next steps; telephone call Schiltz re firm ok for Cr. Com. role; conference with RS re same. (1)(A)(i)/(3)(D)/(4)              | 0.50  | 137.50 |
| 8/11/04  | AMR  Tcs Kelly; e-mails Prussin and Schiltz re motion for Committee authority; ; telephone call Janssen re Rich Realty and someone's corporate opportunity; fax Gray resolutions re directors. (1)(A)(i)/(3)(D)/(4) | 3.00  | 825.00 |
| 8/12/04  | AMR E-mails Schiltz and Prussin re dealing w/ CIT and valuation of operating companies. (1)(A)(i)/(3)(D)/(4)                                                              | 0.50  | 137.50 |
|          | SUBTOTAL :[                                                                                                                                                               | 829.07 | 219,837.91] |
| 6/19/01  | (3)(C) AMR tcs Cenawood re IRS position re Gray, bankruptcies and shares; faxes of Homestar materials. (3)(C)                                                            | 1.00  | 275.00 |
| 6/27/01  | AMR Telephone call Kelly re St. L; phone message to Cox. (3)(C)                                                                                                           | 0.50  | 137.50 |
| 10/16/01 | AMR Telephone call Jensen re transcript information re CSC. (3)(C)                                                                                                        |       |        |
| 10/17/01 | AMR Forward to mtls to Jensen. (3)(C)                                                                                                                                     | 0.50  | 137.50 |
| 11/1/01  | AMR Telephone call Jenson re brief and exhibits and transcripts; forward to brief to Jacobus; telephone call Kelly re depositions. (3)(C)                                 | 1.50  | 412.50 |
| 11/2/01  | AMR Forward disks of transcripts to Jensen. (3)(C)                                                                                                                        | 0.25  | 68.75  |

Chariot Group/Summit Metals, Inc.                    Page 63
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 12/11/01 | AMR Calls: Kelly, Benton, Best, Azan, Prussin, Brenman; attempts to reach Cenawood, Jacobus, Litman, etc; review indictment; fax same to others. (3)(C) | 3.00 | 825.00 |
| 12/14/01 | AMR Telephone call Case re arraignment and discussions w/ Forrester; review findings of fact in contempt; telephone call Cenawood. (3)(C) | 1.00 | 275.00 |
| 12/20/01 | AMR Telephone call Jensen re St. Louis proceedings. (3)(C) | 0.50 | 137.50 |
| 1/8/02 | AMR Advise Jensen re status in NY. (3)(C) | 0.50 | 137.50 |
| 1/11/02 | AMR Telephone call JTK re arrangements for arraignment; telephone call Cox. (3)(C) | 0.50 | 137.50 |
| 1/14/02 | AMR Telephone call Jensen re hearing in St. Louis; telephone call Case re same; telephone call Jones from Litchfield County News. (3)(C) | 2.50 | 687.50 |
| 1/25/02 | AMR Telephone call Jensen re status in MO. (3)(C) |  |  |
| 2/6/02 | AMR Telephone call Jensen re detention hearing and lack of effort to purge in NY. (3)(C) | 0.50 | 137.50 |
| 2/8/02 | AMR Telephone call Jensen re hearing; fax findings of fact. (3)(C) | 1.00 | 275.00 |
| 2/13/02 | AMR Telephone call Case re Gray in St. Louis. (3)(C) | 0.50 | 137.50 |

00483

Chariot Group/Summit Metals, Inc.                                    Page 64
March 29, 2006

|         |                                                                                               | Hours | Amount |
|---------|-----------------------------------------------------------------------------------------------|-------|--------|
| 2/14/02 | AMR Review Gray letter to Jones; message re same; (3)(C)                                       | 0.50  | 137.50 |
| 2/28/02 | AMR Telephone call Jensen re CMI acct used for Homestar. (3)(C)                                | 0.50  | 137.50 |
| 3/8/02  | AMR Telephone call JTK re activities in MO, identity of Dandretta; circulate Post article. (3)(C) | 1.00  | 275.00 |
| 3/15/02 | AMR Telephone calls Jensen, Prussin, Kelly; fax to Kelly; fax to Bennick; review Kelly e-mails. (3)(C) | 2.00  | 550.00 |
| 3/18/02 | AMR Telephone call Cenawood; fax St. Louis decision and Litchfield article. (3)(C)            | 0.75  | 206.25 |
| 3/22/02 | AMR Faxes to Azan, Forrester and Polivy re detention decision in MO. (3)(C)                    | 0.50  | 137.50 |
| 4/10/02 | AMR Telephone call Kelly re developments in St. Louis; e-mails w/Mashburn. (3)(C)             | 1.00  | 275.00 |
| 5/1/02  | AMR Fax to Jensen re possible Quinn testimony of Gray's behalf. (3)(C)                         | 0.50  | 137.50 |
| 5/17/02 | AMR Telephone call JTK re latest re REG. (3)(C)                                                | 0.50  | 137.50 |
| 6/3/02  | AMR Telephone call Kelly re status in St. Louis. (3)(C)                                        | 0.25  | 68.75  |
| 7/23/02 | AMR Telephone call Jacobus re Gray plea deal; conf. call w/ Kelly and Benton;lv wd. w/ Ahern; telephone call Case. (3)(C) | 2.00  | 550.00 |

Chariot Group/Summit Metals, Inc.                    Page 65
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
| 10/2/02 | AMR Tcs Kelly, Polivy, Mack. (3)(C) | 2.00 | 550.00 |
| 10/3/02 | AMR Presentation for Mack; ltr re same; forward plea agreement; telephone call JTK re Gray reaction to probation report; telephone call Jacobus re status of matters in TN. (3)(C) | 5.00 | 1,375.00 |
| 10/9/02 | AMR Draft letter to Hamilton (sentencing judge). (3)(C) | 0.50 | 137.50 |
| 10/10/02 | AMR Complete and send out letter to Hamilton. (3)(C) | 0.50 | 137.50 |
| 10/16/02 | AMR e-mail from JTK re sentencing. (3)(C) | 0.25 | 68.75 |
| 10/17/02 | AMR Calls re Gray sentencing; Kelly, Jacobus, Cenawood and Jensen. (3)(C) | 1.00 | 275.00 |
| 10/24/02 | AMR Telephone call Jacobus; Telephone call Cenawood; fax Gray payments. (3)(C) | 0.50 | 137.50 |
| | SUBTOTAL :[ | 33.00 | 9,075.00] |
| 5/8/01 | (3)(C)/(D)/(4) AMR Telephone call Case and Smotkin re next steps and conflict of interest. (3)(C)/(D)/(4) | 1.00 | 275.00 |
| 6/5/01 | AMR Telephone call Case re St. Louis status; review 19 factors in adequate disclosure. (3)(C)/(D)/(4) | | |
| 10/11/01 | AMR Telephone call Case re news in West. (3)(C)/(D)/(4) | 0.25 | 68.75 |
| | SUBTOTAL :[ | 1.25 | 343.75] |

Chariot Group/Summit Metals, Inc.                        Page 66
March 29, 2006

|  |  | Hours | Amount |
|---|---|---|---|
|  | For professional services rendered | 877.98 | $233,239.99 |
|  | Additional charges |  |  |
| 1/11/01 | (1)(A)(i)/(3)(D)/(4)<br>metroliner and reserved train to and from Wilmington<br>(1)(A)(i)/(3)(D)/(4) |  | 136.00 |
| 2/16/01 | Wilcox & Fetzer<br>(1)(A)(i)/(3)(D)/(4) |  | 101.95 |
| 3/9/01 | UPS to Grant on 2/23<br>(1)(A)(i)/(3)(D)/(4) |  | 13.00 |
| 3/21/01 | Dinsmore & Shohl (TN)<br>(1)(A)(i)/(3)(D)/(4) |  | 3,735.00 |
|  | Pelino & Lentz (DE)<br>(1)(A)(i)/(3)(D)/(4) |  | 4,701.60 |
| 3/26/01 | UPS (5) to US Trustee, Brenman, Sawzuk, Bankruptcy<br>Court, Walrath on 12/12/00<br>(1)(A)(i)/(3)(D)/(4) |  | 52.50 |
| 3/27/01 | fees for ESP transcripts<br>(1)(A)(i)/(3)(D)/(4) |  | 680.00 |
| 4/1/01 | Baker Donelson<br>(1)(A)(i)/(3)(D)/(4) |  | 5,000.00 |
| 4/13/01 | tvl to court and back<br>(1)(A)(i)/(3)(D)/(4) |  | 3.00 |
| 4/17/01 | Plane to Nashville<br>(1)(A)(i)/(3)(D)/(4) |  | 1,249.00 |
|  | Gray-line to and from airport<br>(1)(A)(i)/(3)(D)/(4) |  | 17.00 |
| 4/24/01 | Messenger to pick up good standing certif. in<br>Brooklyn on 4/9/01.<br>(1)(A)(i)/(3)(D)/(4) |  | 38.00 |
|  | Transcript of hearings in ESP bankruptcy on January<br>19, 2001 and January 30, 2001. |  | 293.61 |

Chariot Group/Summit Metals, Inc.                          Page 67
March 29, 2006

                                                            Amount

        (1)(A)(i)/(3)(D)/(4)

        Package to Bankruptcy clerk on 3/27 and 3/29          26.32
        (1)(A)(i)/(3)(D)/(4)

5/22/01  Plane fare to Nashville                           1,450.00
        (1)(A)(i)/(3)(D)/(4)

5/23/01  Taxis in Nashville to and from Airport               50.00
        (1)(A)(i)/(3)(D)/(4)

        Dinsmore & Shohl                                    3,210.43
        (1)(A)(i)/(3)(D)/(4)

5/31/01  Hilton in Nashville on 4/18/01                       248.02
        (1)(A)(i)/(3)(D)/(4)

        Amtrak to Wilmington on 5/1/01                        138.00
        (1)(A)(i)/(3)(D)/(4)

        UPS to Grant on 4/6/01                                 13.00
        (1)(A)(i)/(3)(D)/(4)

6/26/01  Train to Wilminton                                   138.00
        (1)(A)(i)/(3)(D)/(4)

6/29/01  Dinsmore &  Shohl                                  3,509.28
        (1)(A)(i)/(3)(D)/(4)

7/17/01  Pelino & Lentz (DE)                                3,664.27
        (1)(A)(i)/(3)(D)/(4)

        Dinsmore &  Shohl                                   6,462.30
        (1)(A)(i)/(3)(D)/(4)

8/31/01  Dinsmore &  Shohl                                  3,585.39
        (1)(A)(i)/(3)(D)/(4)

9/18/01  Dinsmore &  Shohl                                    440.40
        (1)(A)(i)/(3)(D)/(4)

12/21/01 Saul, Ewing (DE)                                   3,534.20
        (1)(A)(i)/(3)(D)/(4)

        Baker, Donelson                                     4,189.63
        (1)(A)(i)/(3)(D)/(4)

Chariot Group/Summit Metals, Inc.                      Page 68
March 29, 2006

|            |                                                                                              | Amount     |
|------------|----------------------------------------------------------------------------------------------|------------|
| 12/24/01   | Fees of McLane, Graf for representation in NH<br>(1)(A)(i)/(3)(D)/(4)                          | 3,950.00   |
| 2/12/02    | Fees of Dinsmore & Shohl in Nashville in re Gray effort to enjoin claims against PNC.<br>(1)(A)(i)/(3)(D)/(4) | 5,000.00   |
| 3/4/02     | Advanced Duplicating<br>(1)(A)(i)/(3)(D)/(4)                                                   | 903.00     |
| 4/23/02    | Dinsmore & Shohl<br>(1)(A)(i)/(3)(D)/(4)                                                       | 128.03     |
| 6/17/02    | Advanced Office Solutions<br>(1)(A)(i)/(3)(D)/(4)                                              | 903.00     |
| 7/5/02     | Rsrch charges on Westlaw on 4/29/02<br>(1)(A)(i)/(3)(D)/(4)                                    | 88.79      |
| 11/22/02   | MCLane, Graf<br>(1)(A)(i)/(3)(D)/(4)                                                           | 5,000.00   |
| 1/28/04    | MacLane, Graf.<br>(1)(A)(i)/(3)(D)/(4)                                                         | 5,220.00   |
| 2/13/04    | Amtrak to Wilmington on 2/10/04<br>(1)(A)(i)/(3)(D)/(4)                                        | 60.00      |
|            | Hotel in Wilminton 1/10 - 1/14<br>(1)(A)(i)/(3)(D)/(4)                                         | 867.65     |
| 2/27/04    | Dinsmore & Shohl<br>(1)(A)(i)/(3)(D)/(4)                                                       | 1,701.79   |
| 3/30/04    | Dinsmore & Shohl<br>(1)(A)(i)/(3)(D)/(4)                                                       | 2,324.27   |
|            | SUBTOTAL :[                                                                                    | 72,826.43] |
| 2/23/01    | (3)(C)/(D)/(4)<br>UPS to Case on 1/19/01<br>(3)(C)/(D)/(4)                                     | 12.50      |
|            | SUBTOTAL :[                                                                                    | 12.50]     |

Chariot Group/Summit Metals, Inc.                     Page 69
March 29, 2006

|                                   | Amount       |
|-----------------------------------|--------------|
| Total costs                       | $72,838.93   |
| Total time and expense charges    | $306,078.92  |

Tax I.D. No. 13-3681922

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | CHAPTER 11 |
| SUMMIT METALS, INC., | ) ) | CASE NO. 98-2870 (KC) |
| Debtor. | ) ) ) ) |  |

## AMENDED APPLICATION OF AMBROSE M. RICHARDSON, ESQ. FOR COMPENSATION AS POST-PETITION CREDITOR AND AS CREDITOR PROVIDING SUBSTANTIAL BENEFIT TO THE ESTATE PURSUANT TO §§ 503(b)(1)(A)(i), 503(b)(3)(B), (C), (D) and (F) and 503(b)(4).

Ambrose M. Richardson, Esq., ("Richardson") makes this application for payment of amounts due for fees and expenses for his role (a) as a post-petition creditor; (b) as a creditor recovering assets for the Estate, (c) in connection with the prosecution of a criminal offense related to the case or the business or property of the Debtor, (d) as a creditor making a substantial contribution to the case, (e) for expenses incurred as Chairman of The Official Committee of Unsecured Creditors (the "Committee") and in connection with the foregoing, and (f) for professional services rendered in connection with the foregoing, for the period from June 1, 1995, through August 31, 2004, pursuant to 11 U.S.C. §§503(b)(1)(A)(i), 503(b)(3)(B), 503(b)(3)(C), 503(b)(3)(D), 503(b)(3)(F) and 503(b)(4). Applicant respectfully represents as follows:

### SUMMARY OF CLAIMS

1. The claims are summarized as follows:

3

(a) <u>Post Petition Creditor – §503(b)(1)(A)(i)</u>: Richardson became a

creditor when the New York Supreme Court found that he was entitled to indemnification

and expenses pursuant to Delaware law and the Debtor's By-laws. <u>Gray v. Richardson</u>,

251 A.D.2d 268, 675 N.Y.S.2d 57 (1st Dept. 1998), leave to appeal den., 92 N.Y.2d 815,

706 N.E.2d 747,683 N.Y.S.2d 759 (1998). The Debtor and Richard E. Gray ("Gray")

sued Richardson for allegedly violating his duty as former corporate officer by supporting

litigation to stop and recover Gray's looting and fraudulent transfers from the Debtor. In

fact Gray was the one violating duties to the corporation, and Richardson won summary

judgment, dismissing the suit and awarding indemnification.

Proceedings relating to the original suit continued post petition, and Richardson

was sued three more times (and subjected to various sanctions motions) on basically the

same theory. The Debtor is legally and contractually obligated to pay Richardson for his

expenses in defending the suits pursuant to the Delaware General Corporation Law and

the Debtor's By-laws, as well as Richardson's cost of collecting those expenses.

In addition, Richardson's defense of the various actions also provided substantial

benefits to the Estate.

(b) and (d) <u>Recovered Assets and Provided Substantial Contributions -</u>

<u>§§503(b)(3)(B)(C) and (D)</u>: As a direct and proximate result of Richardson's efforts, the

Debtor obtained title to two operating companies, Riverside Millwork, Inc. and Jenkins

Manufacturing, Inc. These two companies comprised substantially all of the assets of

the Debtor. In addition, Richardson was instrumental in obtaining the evidence and

providing the basis for most of the monetary judgments against Gray. In addition,

4

Richardson was instrumental in thwarting Gray's many efforts to defeat the Debtor's claims against him.

<u>Thirteen Separate Forums</u>

Richardson's efforts took place in thirteen separate forums:

(i)     New York stockholder actions vs. Gray;

(ii)    New York Contempt Proceeding vs. Gray;

(iii)   New York action by Debtor and Gray vs. Richardson;

(iv)    Delaware bankruptcy;

(v)     Delaware adversary proceeding #1 vs. Richardson in Delaware (preference action), most proceedings of which occurred in New York;

(vi)    Delaware adversary proceeding #2 vs. Richardson and others (racketeering);

(vii)   Delaware adversary proceeding vs. Gray and affiliates (to recover assets);

(viii)  Missouri bankruptcy proceedings of Homestar Industries, an affiliate of the Debtor;

(ix)    Missouri adversary proceeding vs. Gray (to recover assets);

(x)     Tennessee bankruptcy proceeding of Energy Saving Products, Inc., the Debtor's former subsidiary;

(xi)    (xi) Tennessee adversary proceeding against Richardson and others (injunctive and contempt action);

(xii)   New Hampshire fraudulent transfer and attachment proceeding (location of Debtor's affiliate, Riverside Millwork);

(xiii)  Missouri federal criminal proceeding vs. Gray.

<u>Substantial Contributions</u>

Among the substantial contributions by Richardson are the following:

00492

(i) In the New York stockholder actions, Richardson established the facts and theories of the Debtor's looting and fraudulent transfer claims against Gray;

(ii) In the New York stockholder actions, Richardson obtained the preliminary injunction that was used to hold Gray in contempt and ultimately incarcerate him, and served to prevent further actions by Gray adverse to the Debtor;

(iii) With regard to the New York contempt proceedings against Gray, Richardson successfully unsealed the records of the proceedings, prevented resealing, discovered evidence, evaluated evidence, and worked with H. Adam Prussin to discredit Gray's arguments of not owning his affiliates and having purged his contempt; the resulting incarceration led to a partial settlement that facilitated the Debtor's obtaining title to the operating companies; it also provided some of the evidence for the claims against Gray in Delaware;

(iv) In the Delaware bankruptcy, Richardson was instrumental in forming the Creditor's Committee, obtaining representation by the lawyer representing the New York stockholders and obtaining authority for the Committee to prosecute claims against Gray;

(v) In the Delaware bankruptcy, Richardson (A) helped prevent Gray from using the bankruptcy to preempt the contempt proceedings against him; interceded to prevent the conversion of the case to Chapter 7 (after Committee counsel defaulted), and made a submission to prevent the third attempt at conversion;

(vi) In the Delaware bankruptcy proceeding, Richardson was the first party to object the fee requests of Debtor's counsel, thereby preventing a drain on the assets of the Estate;

(vii) In the first adversary proceeding against him, Richardson obtained discovery from third parties (which Committee counsel was unwilling or unable to get) through subpoenas and motions to compel in the U.S. District Court for the Southern District of New York; the evidence thus obtained established the Debtor's corporate opportunity claims;

(viii) In the Delaware adversary proceeding against Gray, Richardson provided the facts and theories for the Committee's complaint and amended complaint, and assisted in the drafting of those documents;

(ix) With regard to the Delaware adversary proceeding against Gray, Richardson complained to the 3rd Circuit after a summary judgment motion and several discovery motions had been pending for more than two years before the District Court, and succeeded in getting the case moved to another judge (Judge Jordan);

(x) In the Delaware adversary proceeding against Gray, Richardson provided the evidence for findings 1 through 41 and 59 through 67 of Judge Jordan's findings against Gray of August 6, 2004, i.e., 75% of the

6

00493

findings, and 100% of the findings that provided any value to the Debtor; in addition, Richardson supplied the theories and precedents for all of the legal conclusions; the result was the recovery by the Debtor of the two operating companies;

(xi)  In the Tennessee bankruptcy proceeding, Richardson opposed the sale of B.F. Rich Co., Inc., another of the Debtor's operating companies, to Gray, and helped to cause that sale not to be completed;

(xii)  In the Tennessee bankruptcy proceeding, Richardson opposed Gray's plan of reorganization, which would have deprived the Debtor of everything;

(xiii)  In the Tennessee bankruptcy proceeding, Richardson attempted to transfer that case to Delaware, which was not successful, but which did sow seeds of distrust against Gray;

(xiv)  In the Tennessee bankruptcy proceeding, Richardson advanced claims on behalf of the Debtor, responded to opposition to those claims and conducted pretrial proceedings on the Debtor's behalf, resulting in the Debtor's obtaining the rights to the operating subsidiaries;

(xv)  In the Tennessee adversary proceeding against Richardson and others, Richardson was successful in resisting an attempt to enjoin the adversary proceeding against Gray in Delaware;

(xvi)  In the Missouri bankruptcy, Richardson exchanged information with the Chapter 7 Trustee, Rebecca Case, Esq., leading to Homestar's adversary proceeding against Gray (which included a claim based on the injunction obtained by Richardson in New York), and to a criminal referral against Gray; it also resulted in the Homestar Trustee's abandonment of any claims to the operating companies ultimately acquired by the Debtor;

(xvii)  In the New Hampshire proceedings against Gray, the Debtor's fraudulent transfer claims were kept alive (the statute of limitations was running out), more extensive looting was prevented, and Gray's sale of that operating company was prevented;

(xviii)  In the Missouri criminal proceedings, Richardson provided information to the FBI and U.S. Attorney that led to Gray's indictment, imprisonment without bail and guilty plea for bankruptcy and tax fraud.

(c)  Legal and Professional Fees - §§503(b)(3)(F) and §§503(b)(4):  To make the foregoing contributions, Richardson engaged counsel, within and without his office, and provided many of the legal services himself, from drafting pleadings, making arguments, reviewing evidence and formulating legal theories and strategies.  In Gray v. Richardson, supra, Richardson established the legal precedent that he was entitled to

7

charge for his own time as an attorney. Richardson appeared as an attorney in the New York Supreme Court, the U.S. District Court for the Southern District of New York, the Delaware Bankruptcy Court, the Bankruptcy Court for the Eastern District of Missouri and the Bankruptcy Court for the Middle District of Tennessee, and prepared and reviewed pleadings in those and other forums. If Richardson had not spent the time and made the foregoing contributions, there would have been no possibility of recover for himself or for the Estate.

2. A quantitative summary of the claims, allocated by forum, is as follows:

QUANTITATIVE SUMMARY OF CLAIMS

| Forum | Time Period | Fees | Expenses | Total |
|---|---|---|---|---|
| NY Stkhlder (i) and (ii) | 6/1/95-12/31/98 | $118, 614.59 | $23,638.17 | $142,252.76 |
| Committee (iv) | 1/1/99-8/31/04 | $19,341.57 | | $19,341.57 |
| Criminal (xiii) | 1/1/99-8/31/04 | $11,466.67 | | $11,466.67 |
| DEL (iv), (vi), (vii) | 1/1/99-8/31/04 | $109,619.24 | $4406.19 | $114,025.43 |
| DEL/MO (viii), (ix) | 1/1/99-8/31/04 | $21,114.58 | $1827.59 | $22942.17 |
| DEL/NH (xii) | 1/1/99-8/31/04 | $14529.17 | $14,170.00 | $28,669.17 |
| DEL/NY (ii), (v) | 1/1/99-8/31/04 | $302,700.94 | $7604.85 | $310,305.79 |
| DEL/TN (x), (xi) | 1/1/99-8/31/04 | $123,656.66 | $55,405.54 | $179,062.20 |
| Gray v. Richardson (iii) | 1/1/99-8/31/04 | $40,990.99 | 544.75 | 41,535.74 |
| Totals | | $762,034.41 | $107,597.09 | $869,631.50 |

00495

RATES OF CHARGE

3. Richardson's time is charged at the rates of $250 to $275 per hour. Richardson is a graduate of Harvard Law School, with thirty years of legal experience, and extensive knowledge of corporate law and litigation. This rate is one-half the rate claims by H. Adam Prussin, Esq., and less than virtually any other professional in this case. Associate time and paralegal time has been charged at $150 and $75 per hour respectively. Travel time has been charged at one half those rates, except in the case of the paralegal, whose function it was to travel to various courts. These rates of charge were found reasonable by the New York Supreme Court.

CLAIMS NOT INCLUDED

4. The claims do not include time and expenses relating to efforts to raise money and formulate plans of reorganization. This time and expense exceeds $500,000.

5. Richardson's first plan of reorganization was filed in 2000, and offered to pay creditors one hundred cents on the dollar. It was opposed by, among others, Committee Counsel, who said the plan was "unfair to Gray", and that creditors should receive two hundred cents on the dollar.

6. Richardson's second plan of reorganization was presented to the Trustee in June 2004. It proposed to have the operating companies acquired by a new entity, which would then offer to distribute up to twenty-five percent of the equity of the new entity to creditors. The value of this distribution, based on the amounts received for the operating companies, would exceed $1 million. This is vastly superior to anything the creditors would receive from any envisioned alternative. Richardson's second plan of

9

reorganization and subsequent offers for the operating companies resulted in price increases for the sales of those companies of at least $500,000.

7. The claims also do not include efforts that did not result in any significant benefit to the Estate, such as proceedings involving the conduct of attorneys and litigation initiatives that did not lead anywhere.

8. The claims do include time spent on Committee matters, but this time has been broken out separately from other efforts, and amounts to barely more than two percent (2%) of the total. Ninety-eight percent of the time was not spent on matters typically done by a committee member or, in this case, done by any other committee member. Moreover, most of the efforts were not done by any other professional.

9. Without the Committee, Gray's efforts to defraud his creditors and stockholders would have succeeded, and Richardson could not have recovered the indemnification due to him. Richardson's efforts were necessary to create and maintain the Committee. The creation of the Committee was initially problematic since there are only about half a dozen actual creditors, of whom Richardson is one. The rest of the so-called creditors were or are stockholders of Chariot Group who would have become creditors if the New York Supreme Court had not enjoined as fraudulent the issuance of notes to them. They never actually became creditors. Presently, Richardson is the only bona fide creditor on the Committee.

10

00497

## NO DUPLICATION OF EFFORTS OF COMMITTEE COUNSEL

10. Richardson's contributions were achieved in lieu or in spite of the efforts, or lack of efforts, of Committee Counsel.[1] Obviously, Committee Counsel did nothing to establish the claims and obtain the preliminary injunction in the New York Supreme Court, which were the basis for the Committee's adversary proceeding against Gray, and the basis for many of the findings and conclusions by Judge Jordan.

11. Committee Counsel made a secret arrangement with Gray's counsel[2], without authorization, not to seek discovery concerning Chariot Group, the Debtor's supposed predecessor, Gray's fraudulent transfers, seizures of corporate opportunities, looting or the operating companies. Consequently, Richardson did the discovery on those subjects in the context of the adversary proceeding brought by Gray against him.

12. Committee Counsel was asked repeatedly to obtain discovery from third parties, but failed to do so. Instead, Richardson obtained discovery from third parties, such as Fleet Capital, CIT Financial, Brown Brothers Harriman and American Express Financial Services, through his adversary proceeding. In addition, Committee Counsel was asked repeatedly to obtain authority to sue third parties that might have aided and abetted Gray. Despite assurances, Committee Counsel never obtained such authority, with the result that many such claims lapsed.

---

[1] The firm of Wolf Block et al. is referred to as "Committee Counsel". H. Adam Prussin, Esq., and his firm of Pomerantz Haudek et al., is referred to as "Special Counsel" or "Stockholder Counsel."

[2] The firm of Klehr Harrison et al., is referred to as "Gray's Counsel," since that is what they were.

11

00498

13. When Prussin needed evidence in connection with the New York contempt proceeding or the Committee's adversary proceeding against Gray, he referred to Richardson who had obtained this evidence and who provided it to Prussin.[3] Committee Counsel did not obtain discovery and had no evidence to provide.

14. Richardson insisted on engaging Special Counsel in Delaware, over the objections of Committee Counsel, to bring the adversary proceeding on behalf of the Debtor against Gray. In addition, Richardson prevented Committee Counsel from taking over the contempt proceeding against Gray, after Committee Counsel had agreed with Gray's counsel to do so.

15. With the permission of the Delaware Bankruptcy Court, Richardson intervened in the New York stockholder contempt proceeding to unseal the record and open the proceedings so that they became public, and Stockholder Counsel could share information with others, and use that information in the Delaware adversary proceeding.

16. Richardson participated in the drafting of the pleadings in Delaware, and insisted upon the corporate opportunity claims. Committee Counsel had emphasized efforts to obtain a judgment against Gray, which Richardson thought would be of little value because of Gray's use of more than fifty shell companies to conceal assets. Richardson was proved correct in this regard.

17. Richardson filed pleadings to prevent Gray from converting the case to Chapter 7, thereby preempting the Committee adversary proceeding. In one such

---

[3] E.g., the time entry of 12/26/99 shows Richardson providing Prussin with Rivco Management records; a time entry of 3/2/00 shows Richardson providing documents relating to the tax claim; a time entry of 10/17/00 shows Richardson providing evidence relating to the claims to Jenkins and the tax claims; time entries of 12/13/99 and 12/27/99 show exchanges of documents without specification;

00499

instance, Committee Counsel defaulted in responding to Gray's motion for conversion (Calendar Item 245), and only Richardson's timely intervention preventing conversion from occurring. When the conversion issue was later raised by Judge Akard, Richardson provided the documentation that Committee counsel had failed to provide.

18. The only substantive effort by Committee Counsel, which turned out to be a disaster, was "opposition" to Gray's motion to remove the reference and transfer the Committee's adversary proceeding to recover money and property to the District Court. Without authorization, Committee Counsel conceded that the suit was not a "core proceeding", although Richardson thought it was a "core proceeding" under 28 U.S.C. 157 (b)(2)(A)(E)(F)(H) and (O). Committee Counsel's unauthorized concession forfeited the more than one year that had been spent acquainting Judge Walrath with the case, and played into Gray's strategy of concealment and delay. The concession resulted in a more than two-year delay, during which time most of the Debtor's assets were dissipated. A similar proceeding in the Homestar matter in the Bankruptcy Court for the Eastern District of Missouri was brought as a "core proceeding", and resulted in a near 100% recovery within one year.

19. Richardson moved to transfer and consolidate the Energy Saving Products bankruptcy in Tennessee with the Summit bankruptcy in Delaware, after Committee counsel failed to advise of the possibility. That motion was not successful for several reasons, including Summit's delay in bringing the motion, and the fact that the Summit case was bogged down in the District Court.

20. After the Committee's summary judgment motion and discovery motions had been pending for more than two years, Richardson intervened to complain about the

13

delays, which was ultimately successful in having the case transferred from Judge

Farnan, who had ignored the case for two years, to Judge Jordan, who actively moved the

case along. Committee counsel was aware of, but was unwilling to make those efforts.

21. Committee Counsel played almost no role in Tennessee, where Gray, if

successful, would have cut off all Summit's claims in Delaware, since the Debtor in

Tennessee was one corporate level closer to the operating assets. In Tennessee,

Richardson opposed Gray's plans and, together with Stockholder Counsel, prevented

Gray from completing the acquisition of B.F. Rich. Richardson formulated the theories

of Summit's claims in Tennessee, and attended to the defense of the objections to those

proceedings. The claims resulted in Summit's obtaining the rights to obtain Riverside

Millwork and Jenkins Manufacturing.

22. By working with the U.S. Trustee in Tennessee, Richardson was able to

obtain evidence that was vital in preventing Gray from proving that he had purged his

contempt in New York. Richardson worked closely with Prussin to develop the strategy

and to obtain and present the evidence in the contempt proceedings against Gray, which

resulted in Gray's first incarceration. Committee Counsel had no role.

23. Of the thirteen forums in which Richardson appeared in this matter,

Committee Counsel had nothing to do with nine of them, and little to do with two others.

Committee Counsel had nothing to do with Missouri, New Hampshire, the criminal

proceedings, or three of the suits by Gray against Richardson.

### RISKS UNDERTAKEN BY RICHARDSON

24. Richardson, along with Adam Prussin, Esq., was active in this case, and the

related cases, at a time when the Estate had no tangible assets, and the only prospect for

14

compensation was to recover assets for the Estate. Thus, not only was there a risk of not being successful, there was a collection risk as well.

25. Moreover, Richardson was a defendant in four different actions (and several sanctions and disciplinary proceedings) threatening Richardson with substantial loss of money and livelihood. Richardson's actions are to be contrasted with those professionals, including the office of the U.S. Trustee, who arrived at payday, only after the hard and risky work had been done.

## DETAILED DESCRIPTION OF CLAIMS

A. Post Petition Claims.

26. The first part of this Application Code, seeks compensation and reimbursement for the fees and expenses (a) incurred post-petition in pursuing and collecting amounts due for indemnification under the Corporate By-laws as well as the Delaware General Corporation Law to which, in principle, the Courts of the State of New York said Richardson would be entitled (See Gray v. Richardson, 251 A.D.2d 268, 675 N.Y.S.2d 57 (1st Dept. 1998), leave to appeal den., 92 N.Y.2d 815, 706 N.E.2d 747,683 N.Y.S.2d 759 (1998).

27. In addition, this part of the Application seeks compensation for fees and expenses in successfully defending three additional lawsuits brought post petition: (Summit Metals v. Richardson, et al, Del Bkrptcy, Adv. No. 99-126; Summit Metals, Inc. v. Richardson, et al., Del. Bkrptcy., Adv. No. 99-257; and Energy Saving Products. Inc. v. Official Committee et al., M.D. TN Bkrptcy., Adv. No. 301-0676A).

28. The history of this matter, which began with an action entitled Richardson v. Gray, et al, in the New York Supreme Court, New York County in 1995, Index No.

15

00502

116880/95, is also described in detail by the Findings and Conclusions of United States District Court Judge Kent Jordan dated August 6, 2004, in the adversary proceeding related to this action, which was transferred to the District Court (<u>Summit Metals, Inc. v. Gray et al.</u>, Civil Action No. 00-387 (KAJ)).

29.  Many of the facts found by Judge Jordan had been preliminarily established in the New York Supreme Court action in a decision dated October 21, 1996, by the Justice Lewis Friedman, which resulted in the issuance of a crucial preliminary injunction on January 30, 1997 (See Jordan Findings ¶¶35 et seq.).

30.  Since Richardson had sponsored and assisted the stockholder litigation, Gray, on his own behalf and on behalf of Summit Metals, Inc. as Successor to Chariot Group, instituted an action against Richardson to enjoin his participation in the stockholder actions, claiming that he had violated his duties as a former officer and agent of Chariot Group (<u>Gray et al. v. Richardson et al.</u>, Index No. 124969/95.  Richardson counterclaimed for indemnification under the Chariot Group By-laws and under the Delaware General Corporation Law.

31.  Article VIII, Section 1 of the Chariot Group By-laws provides:

> "Section 1.  <u>Indemnification of Directors and Officers</u>.  The corporation <u>shall indemnify</u>, to the <u>fullest extent</u> now or hereafter permitted by law, any director or officer who was or is a party or is threatened to be made a party to, or is involved in, any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereafter, a "proceeding"), by reason of the fact that he...is or was a director or officer of the corporation, or is or was serving at the request of the corporation as a director, officer, partner, trustee, employee or agent of another corporation ..whether the basis of such proceeding is alleged action in an official capacity as a director, officer...or in any other capacity while serving as a director or officer ...or agent, against all expense, liability and loss (including attorneys' fees, judgment, fines, excise taxes or penalties and amounts paid or to be paid in settlement) actually and reasonably incurred or suffered by such person in connection therewith and

16

such indemnification shall continue as to a person who has ceased to be a director, officer...or agent..."

32. In addition, §145(c) of the Delaware General Corporation Law (which governs The Chariot Group) requires indemnification of persons to the extent they have been successful. This Section states:

> "To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action or proceedings referred to in sections (a) or (b) [i.e., made a party by reason of being or having been a director, officer, employee or agent of the corporation], or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith." [emphasis and parenthetical material supplied]

33. Moreover, Article VIII, Section 4, of the By-laws provides that a claimant may sue to collect the unpaid part of any indemnification obligation, and shall also be entitled to be paid the expense of prosecuting such claim.

> "...the claimant may at any time [after non-payment of a claim for indemnification] bring suit against the corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting the claim." (parenthetical supplied).

34. On March 24, 1997, Justice Friedman of the New York Supreme Court granted summary judgment to Richardson, dismissing the claims against him and holding that he was entitled to indemnification. 12. On July 30, 1997, after an inquest, Justice Harold Tompkins issued Findings of Fact and Conclusions of Law, determining that the amount of indemnification requested through March 31, 1997, including payment for Richardson's own time as an attorney, was reasonable and supported by law. A claim for time and expenses from March 31, 1997, until the filing of the Petition has been submitted. This claim is for post-Petition time and expenses.

17

00504

35. A Judgment was entered on September 23, 1997, and on June 30, 1998, the Appellate Division, First Department, affirmed both the decisions of Justice Friedman on March 24, 1997, and this Court's decision on July 30, 1997, with costs. Leave to appeal to the Court of Appeals was denied by the Appellate Division, with costs, and the Court of Appeals, with costs, the latest occurring on November 20, 1998.

36. In the case of In re Women First Healthcare, Inc., Case No. 04-11278 (MFW), in a decision dated October 21, 2005, Judge Walrath, following the reasoning of Reading Co. v. Brown, 391, U.S. 471 (1986), held that a debtor could recover its costs and expenses incurred in defending an action brought by the Debtor, whether or not substantial benefit had been received by the Debtor (pp. 13 et seq.).

37. It is a strong public policy of Delaware, as well as the Debtor, to indemnify persons who assume the risks of being corporate officers and directors. The Appellate Courts of New York upheld this strong policy in Richardson's case, and held further, that as an attorney, he was entitled to be compensated for his own time spend in doing legal work in defense of the claims against him. Thus, insofar as indemnification is provided to Richardson, the Debtor could be considered to be receiving a benefit.

38. However, in Richardson's case, the Debtor received not just a theoretical benefit, but also received a tangible benefit in the form of recovered property, namely the two operating companies, and a multi-million dollar judgment of dubious collectibility. The first adversary proceeding against Richardson in Delaware enabled Richardson to collect evidence from third parties in New York that established the Debtor's corporate opportunity claims. The defeat of the adversary proceeding in Tennessee enabled the Committee's adversary proceeding against Gray in Delaware to continue unimpeded.

18

B. Recovery of Assets and Substantial Contribution.

39. Every asset that the Debtor enjoys is a direct result of Richardson's extraordinary efforts. Before Judge Jordan's decision in August 2004, the Debtor had nothing but claims. Many of the claims had previously been established by Richardson in New York. The later, corporate opportunity claims resulted from Richardson's insistence, Richardson's suggested pleadings, and the evidence that Richardson single handedly obtained.

40. In the case of In re Worldwide Direct, Inc., et al., case No. 99-108 (MFW), Judge Walrath on November 30, 2005, issued an opinion that quoted with approval from a case in the Middle District of Florida, In re Psychiatric Hosps. of Hernando Cty., 228 B.R. 764, 767, to the effect that a substantial contribution must have "truly fostered and enhanced the administration of the estate." (at p. 17)

41. The services performed by or for Richardson were (except for the items attributable to Committee work), atypical of any other Committee member. Indeed, they were for the most part atypical of any other professional involved in the case. That is to say, the services were extraordinary not just measured against the other Committee members, but against anyone else involved in the case.

42. All of the following eighteen significant contributions, which ultimately resulted in the recovery of assets for the estate, fostered and enhanced the administration of the estate:

(a) In the New York stockholder actions, Richardson v. Gray, supra, Richardson established the facts and theories of the Debtor's looting and fraudulent transfer claims against Gray. Judge Jordan, in his decision of August 6, 2004, quoted extensively from

19

the opinion obtained by Richardson. His opinion confirmed the claims that Richardson had previously established.

(b) In the New York stockholder actions, Richardson obtained the preliminary injunction that was used to hold Gray in contempt and ultimately incarcerate him, and served to prevent further actions by Gray adverse to the Debtor. The injunction, among other provisions, enjoined any payments or transfers of assets to Gray or his affiliates. Gray was found to have violated the injunction and held in contempt. Gray claimed to have purged the contempt, but first Richardson and then Prussin argued that the purge was a sham. Gray later claimed that he could not afford to satisfy the contempt order. Richardson supplied the evidence to show that, indeed, Gray had sufficient resources to purge the contempt. The in court work was done by Prussin. The support work was done by Richardson, who spent a weekend going through documents produced by Gray, in order to elicit the significant and relevant documents.

(c) With regard to the New York contempt proceedings against Gray, Richardson successfully unsealed the records of the proceedings, prevented resealing, discovered evidence, evaluated evidence, and worked with H. Adam Prussin to discredit Gray's arguments of not owning his affiliates and having purged his contempt. The resulting incarceration led to a partial settlement that facilitated the Debtor's obtaining title to the operating companies; it also provided some of the evidence for the claims against Gray in Delaware. Gray's approach was to claim that anything he disclosed was confidential, and could not be disclosed to anyone but the attorneys handling the case or used in any other proceeding. In order to get any disclosure, Prussin and the Judge agreed. Richardson later argued that the appropriate findings of public interest had not been made, that

20

Chariot Group was a public company, and that the record should be unsealed. The entire effort took multiple trips back and forth between the Bankruptcy Court and the New York Supreme Court. Once Prussin was able to consult with Richardson, Richardson was able to identify pertinent evidence, and relate it to evidence elsewhere. When Gray finally went to trial on the issue of contempt, he had to reveal large amounts of information, which then became available for other proceedings, including the adversary proceeding against him in Delaware. Richardson also provided much of the information used by Prussin in the contempt trial against Gray, such a an article in House & Garden about Gray's lavish Park Avenue duplex, and prior testimony by one of Gray's witnesses associates, Ronald Quintero, which contradicted testimony in New York.

(d) In the Delaware bankruptcy, Richardson was instrumental in forming the Creditor's Committee, obtaining representation by the lawyer representing the New York stockholders and obtaining authority for the Committee to prosecute claims against Gray. It was not easy to form the Creditor's Committee since Summit, a shell company, had very few creditors. It had no operations or employees, and nothing had flowed through its bank accounts for more than two years prior to the bankruptcy. Besides Richardson, the creditors consisted of Rockefeller Center, a leasing broker, a copier leasing company and a defunct printing company. The other "creditors" were Chariot Group stockholders to whom Gray was enjoined from issuing notes in exchange for their stock. For purposes of the bankruptcy, the parties made believe that the injunction did not exist as to the notes. It was difficult to have Prussin represent the Committee in an adversary proceeding because of the resistance of Committee Counsel, which also delayed the efforts to obtain authority to prosecute claims on behalf of the estate. Committee

21

Counsel insisted on doing discovery to determine what had already been established in the stockholder litigation in New York. The discovery, which wasted several months, was half-hearted and ineffective, although it did show that Gray was stonewalling.

(e) In the Delaware bankruptcy, Richardson (i) helped prevent Gray from using the bankruptcy to preempt the contempt proceedings against him; (ii) interceded to prevent the conversion of the case to Chapter 7 (after Committee counsel defaulted), and (iii) made a submission to prevent the third attempt at conversion. When a visiting Judge (Akard) issued his own sua sponte order to show cause why the case should not be submitted, it was Richardson who acquainted him with Judge Walrath's prior decision on the issue and the status of the Committee's adversary proceeding, as well as the contempt proceedings against Gray in New York. Richardson submitted numerous pleadings in the Delaware bankruptcy, which served to educate the Court about the facts and circumstances of the case. Gray's strategy was to use the bankruptcy to preempt other proceedings against him. Gray first attempted to have the Bankruptcy Court stay the contempt proceedings, which Richardson opposed. Then Gray attempted to work an arrangement which would have Committee Counsel rather than Prussin pursue the contempt proceedings. Richardson vetoed this arrangement.

(d) In the Delaware bankruptcy proceeding, Richardson was the first party to object the fee requests of Debtor's counsel, thereby preventing a drain on the assets of the Estate. Until Richardson objected, no one would step up and say what was occurring, namely that so-called Debtor's counsel was actually representing Gray, and helping him conceal the assets of the estate. Richardson pointed out that the Debtor was not filing reports and the estate was not benefiting form the supposed services.

22

(e) In the first adversary proceeding against him, Richardson obtained discovery from third parties (which Committee counsel was unwilling or unable to get) through subpoenas and motions to compel in the U.S. District Court for the Southern District of New York. The evidence thus obtained established the Debtor's corporate opportunity claims. Since most of the witnesses in the case were located in New York, Richardson caused subpoenas to be issued out of the U.S. District Court for the Southern District of New York. In every instance, the witnesses at Gray's instruction did not cooperate, but after motions to compel were make, turned over information that was instrumental in establishing many of the claims against Gray.

(f) In the Delaware adversary proceeding against Gray, Richardson provided the facts and theories for the Committee's complaint and amended complaint, and assisted in the drafting of those documents. In most respects, the Committee complaint was simply a restatement of the claims caused to be made by Richardson in New York. Knowledge of additional claims, relating to Chariot Management (the actual successor in interest to Chariot Group, having taken over Chariot Group's employees, bank accounts, customers, files, equipment, etc.) came from the New York contempt proceedings, which Richardson had unsealed, and from Richardson's discovery of third parties in New York.

(g) With regard to the Delaware adversary proceeding against Gray, Richardson complained to the 3rd Circuit after a summary judgment motion and several discovery motions had been pending for more than two years before the District Court, and succeeded in getting the case moved to another judge (Judge Jordan). The transfer of the case to the District Court was a catastrophe for the case. There was a partial summary judgment pending, the sole issue of which was whether an unenforceable, defaulted note

23

00510

from a shell company was adequate consideration for a company valued at $16 million. There were also discovery motions pending. While the case was lying dormant in the District Court, nothing was occurring in the Bankruptcy Court, and the case was shuttled from visiting judge to visiting judge.

(h) In the Delaware adversary proceeding against Gray, Richardson provided the evidence for findings 1 through 41, 48 and 49, and 59 through 67 of Judge Jordan's findings against Gray of August 6, 2004, i.e., 75% of the findings, and 100% of the findings that provided any value to the Debtor. In addition, Richardson supplied the theories and precedents for all of the legal conclusions. The result was the recovery by the Debtor of the two operating companies. Richardson supplied the facts, theories, rulings and precedents for tax claims, looting claims, sale of ESP and merger into Summit claims, the New York temporary restraining order and injunctions, the diversion of dividend claim and the misappropriation of corporate opportunity claims. In addition, Richardson assisted in providing much of the evidence and results relating to Gray's contempt proceedings. Richardson had already established most of the legal conclusions relating to Gray's self dealing and breach of fiduciary duty.

(i) In the Tennessee bankruptcy proceeding, Richardson opposed the sale of B.F. Rich Co., Inc., another of the Debtor's operating companies, to Gray, and helped to cause that sale not to be completed. While the Committee's adversary proceeding was dormant in the District Court, Gray proceeded to loot ESP to such an extent that an involuntary bankruptcy proceeding was filed against it in the Middle District of Tennessee. Gray promptly converted the case to a Chapter 11 proceeding, and made an emergency motion to sell B.F. Rich to a company called ESP Asset Holdings. Both Prussin and Richardson

24

argued to no avail that the sale was prohibited by the New York injunction. The sale was to be accomplished by a refinancing of secured debt, and two notes, for roughly $3 million and $7 million, to pay, respectively, the trade debt and ESP stockholders, whoever they rightfully were, (that issuing being theoretically litigated in New York). Richardson advised the Creditor's Committee in Tennessee that Gray had a history of non-payment, and in his objections to the sale, Richardson set forth conditions that would be needed to insure payment. Richardson's advice was largely followed, and once Gray defaulted, the B.F. Rich stock was recovered for the Tennessee estate.

(j) In the Tennessee bankruptcy proceeding, Richardson opposed Gray's plan of reorganization, which would have deprived the Debtor of everything. Gray's plan allotted ESP's stockholders a level subordinate to supposed claims of B.F. Rich to get back dividends up streamed to ESP over the previous several years. That would have left the ESP stockholders with nothing. Richardson objected to Gray's plan and disclosure statement, and got the various parties in Tennessee to agree with his position.

(k) In the Tennessee bankruptcy proceeding, Richardson attempted to transfer that case to Delaware, which was not successful, but which did sow seeds of distrust against Gray. Rule 1014(b) permits a motion to be made to transfer the case of an affiliated company to the place where the first bankruptcy was filed. Since virtually everything owned by Summit was owned through ESP, it would have been beneficial to Summit to include the ESP bankruptcy as part of the case, especially since there were no assets in the Summit bankruptcy. The motion process served to educate Judge Paine in Tennessee about the overall state of affairs, and Gray's prior history. Unfortunately, the Summit

25

case had only a visiting judge, who was interesting in disposing of cases, not bringing new cases into Delaware.

(l) In the Tennessee bankruptcy proceeding, Richardson advanced claims on behalf of the Debtor, responded to opposition to those claims and conducted pretrial proceedings on the Debtor's behalf, resulting in the Debtor's obtaining the rights to the operating subsidiaries. Even though Summit's claims were essentially that of stockholder, Richardson advanced claims on Summit's behalf as a creditor of ESP under various theories. These theories included the theories that ESP's dividends, once declared, had not been lawfully paid to Summit, and that ESP, as successor by merger to the company to whom substantially all of Chariot Group's assets were sold, was obligated to pay the day arising from that sale. There were extensive pretrial proceedings relating to objections to those claims, and Richardson participated in those pretrial proceedings, prepared the pleadings, and dealt with local counsel. Ultimately, the Committee negotiated the acceptance of ESP's stock and ESP's claims against Gray, including claims to ownership of Riverside Millwork and Jenkins Manufacturing. This was the basis of the Debtor's legal claim to those companies.

(m) In the Tennessee adversary proceeding against Richardson and others, Richardson was successful in resisting an attempt to enjoin the adversary proceeding against Gray in Delaware. Just as Gray attempted to use the Delaware bankruptcy proceedings to stay claims against him in New York, Gray tried to use the Tennessee proceedings to prevent claims against him in Delaware. Gray commenced an adversary proceeding in Tennessee, claiming that the Delaware adversary proceeding violated the

26

Section 362 stay in Tennessee. Judge Paine ultimately ruled that the Delaware proceeding could continue so long as ESP was removed as a defendant in Delaware.

(n) In the Missouri bankruptcy, Richardson exchanged information with the Chapter 7 Trustee, Rebecca Case, Esq., leading to Homestar's adversary proceeding against Gray (which included a claim based on the injunction obtained by Richardson in New York), and to a criminal referral against Gray. It also resulted in the Homestar Trustee's abandonment of any claims to the operating companies ultimately acquired by the Debtor. Gray often told different stories in different locations. One of the roles Richardson played was to exchange information with various locales and expose Gray's contradictions. Richardson analyzed Gray's 341 testimony, and advised the Chapter 7 Trustee as to what statements were false. Gray subsequently pleaded guilty to false statements at the 341 hearing. Some of the money misappropriated by Gray was used to acquire Jenkins Manufacturing, and the Chapter 7 Trustee could have made claims with respect to that company. Instead, the Chapter 7 Trustee was content with restitution of the misappropriated funds.

(o) In the New Hampshire proceedings against Gray, the Debtor's fraudulent transfer claims were kept alive (the statute of limitations was running out), more extensive looting was prevented, and Gray's sale of that operating company was prevented. With the Delaware proceedings dormant, the statute of limitations on fraudulent transfer claims in New Hampshire were running out in 2001. Richardson, with the concurrence of Committee Counsel, caused a suit to be brought in New Hampshiore, which also sought to prevent further looting by Gray. The suit, although

27

stayed because of pending bankruptcy proceedings, place on cloud on Gray's title and prevented any attempts by Gray to sell Rivco out from under Summit.

(p) In the Missouri criminal proceedings, Richardson provided information to the FBI and U.S. Attorney that led to Gray's indictment, imprisonment without bail and guilty plea for bankruptcy and tax fraud. Richardson supplied extensive background information to the authorities in St. Louis relating to the New York proceedings and the overall big picture. Gray ultimately pleaded guilty to bankruptcy fraud and tax fraud. At his sentencing, Gray reportedly apologized to everyone, with the sole exception of Richardson. Gray's guilty plea caused him to be discredited in all other forums.

C. Services In Connection with the Prosecution of a Criminal Offense.

43. These services are briefly described in paragraph (p) preceding, and extensively in the time records submitted in support of the application. The total time spent on matter specifically related to criminal matters was $11,466.67, although time involved with the Missouri matters or the New York or Delaware proceedings to the extent they dealt with the Debtor's tax claims, could also be attributable to criminal offenses. The tax claims in the Committee's adversary proceeding arose out of the same matters that led to Gray's indictment. Also, Gray's abuses of the bankruptcy system were no greater, and probably less great, in St. Louis than they were in Delaware. Gray's initial incarceration in New York and guilty plea in Missouri led to the collapse of his house of cards, and to the Committee's ultimate success.

D. Legal Fees and Expenses.

28

44. Richardson incurred legal fees and expenses in the form of his own time, the time of persons working for his firm, as well as the fees and expenses of outside counsel. These fees and expenses are reimburseable under the reasoning of In re First Merchant's Acceptance Corp., Debtor v. J. C. Bradford Co., 198 F.3d 394 (3rd Cir. 1999), and Gray v. Richardson, supra, expressly holding that Richardson, an attorney is entitled to collect fees for his own time expended in defending suits against him, and in collecting the indemnification to which he is entitled. That decision is entitled to full faith and credit.

## CONCLUSION

45. The attached schedules show total time charges of $$762,034.41 and out of pocket expenses of $$107,597.09. These time and expense charges were reasonable and necessary both to foster and enhance the administration of the estate, to preserve the assets of the Estate, namely the claims against Gray, and to obtain assets for the Estate. The efforts took place in thirteen different forums. Gray, on his behalf, spent millions of dollars of estate funds defending himself and trying to further his improper activities, and was himself indemnified for his expenditures, despite having been found to have violated his fiduciary duties to the corporation.

46. Much of the time and expense was spent and incurred when the prospects of recovery were remote and the risks were great. After the commencement of this proceeding, Richardson was sued three more times by Gray (two adversary proceedings in Delaware, and one adversary proceeding in Tennessee). Richardson had no choice but to defend himself in those actions.

WHEREFORE, the Applicant respectfully requests that the Court enter an order (a) awarding to Applicant compensation in the amount of $762,034.41, representing

29

00516

billable time for services, and approving reimbursement of expenses incurred in the

amount of $107,597.09 (ii) directing payment to the Applicant of $869,631.50 and (iii)

granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 13th day of March 2006.


_____

Ambrose M. Richardson
A. M. Richardson, P.C.
40 Wall Street, 35th Floor
New York, NY 10005
(212) 530-4771

30

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>SUMMIT METALS, INC.,<br><br>Debtor. | CHAPTER 11<br><br>CASE NO. 98-2870 (KC) |

## SUPPLEMENT TO AMENDED APPLICATION OF
## AMBROSE M. RICHARDSON, ESQ.
## FOR COMPENSATION AS POST-PETITION CREDITOR AND
## AS CREDITOR PROVIDING SUBSTANTIAL BENEFIT TO THE ESTATE
## PURSUANT TO §§ 503(b)(1)(A)(i), 503(b)(3)(C), (D) and (F) and 503(b)(4).

Ambrose M. Richardson, Esq., ("Richardson") submits this supplement to his amended application for payment of amounts due for fees and expenses for his role (a) as a post-petition creditor; (b) in connection with the prosecution of a criminal offense related to the case or the business or property of the Debtor, (c) as a creditor making a substantial contribution to the case, (d) for expenses incurred as Chairman of The Official Committee of Unsecured Creditors (the "Committee") and in connection with the foregoing, and (e) for professional services rendered in connection with the foregoing, for the period from June 1, 1995, through August 31, 2004, pursuant to 11 U.S.C. §§503(b)(1)(A)(i), 503(b)(3)(C), 503(b)(3)(D), 503(b)(3)(F) and 503(b)(4).

SUPPLEMENTAL SUMMARY OF CLAIMS

1. Claims were previously broken down by time and venue as follows:

3

00518

## QUANTITATIVE SUMMARY OF CLAIMS

| Forum | Time Period | Fees | Expenses | Total |
|---|---|---|---|---|
| NY Stkhlder (i) and (ii) | 6/1/95-12/31/98 | $118, 614.59 | $23,638.17 | $142,252.76 |
| Committee (iv) | 1/1/99-8/31/04 | $19,341.57 | | $19,341.57 |
| Criminal (xiii) | 1/1/99-8/31/04 | $11,466.67 | | $11,466.67 |
| DEL (iv), (vi), (vii) | 1/1/99-8/31/04 | $109,619.24 | $4406.19 | $114,025.43 |
| DEL/MO (viii), (ix) | 1/1/99-8/31/04 | $21,114.58 | $1827.59 | $22942.17 |
| DEL/NH (xii) | 1/1/99-8/31/04 | $14529.17 | $14,170.00 | $28,669.17 |
| DEL/NY (ii), (v) | 1/1/99-8/31/04 | $302,700.94 | $7604.85 | $310,305.79 |
| DEL/TN (x), (xi) | 1/1/99-8/31/04 | $123,656.66 | $55,405.54 | $179,062.20 |
| Gray v. Richardson (iii) | 1/1/99-8/31/04 | $40,990.99 | 544.75 | 41,535.74 |
| Totals | | $762,034.41 | $107,597.09 | $869,631.50 |

2. At the direction of the Court, the claims have been recategorized according to the statutory section under which the claims are made. On this basis, the claims are summarized as follows:

4

QUANTITATIVE SUMMARY OF CLAIMS II

| Section | Time Period | Fees | Expenses | Total |
|---|---|---|---|---|
| 503(3)(D)/(4) | 6/1/95-12/31/98 | $118,614.59 | $23,638.17 | $142,252.76 |
| 503(1)(A)(i) | 1/1/99-8/31/04 | $57,615.06 | $541.55 | $58,156.61 |
| 503(1)(A)(i)/ (3)(D)/(4) | 1/1/99-8/31/04 | $561,380.81 | $81,816.65 | $643,177.46 |
| 503(3)(C) | 1/1/99-8/31/04 | $11,466.67 | $3.00 | $11,469.67 |
| 503(C)/(D)/(4) | 1/1/99-8/31/04 | $19,864.58 | $1,827.59 | $21,692.17 |
| Totals | | $768,921.71 | $107,826.96 | $876,748.67 |

503(3)(D) and 503(4)

3.  The time and expenses included under the category of Section 503(3)(D) and 503(4) are charges arising out of the stockholder actions that led to the temporary restraining order and preliminary injunction opinion and order that became a basis for the Debtor's claims against Richard Gray.  The result of this time and expense, which has not otherwise been compensated, provided a substantial contribution to the estate, as shown by the frequent references to those proceedings and the prior state court opinion by Judge Jordan.

503(1)(A)(i)

4.  The time and expenses included under the category of 503(1)(A)(i) alone are those previously categorized as Gray v. Richardson plus time spent on Committee matters.  The former time and expenses, which occurred post-petition, related to the original suit for which Richardson was awarded indemnification under a series of

5

00520

decisions entitled to full faith and credit pursuant to 28 U.S.C. §1738. The time spent on Committee matters was reasonable and necessary in order to bring assets into the estate so that all creditors could presumably benefit.

503(1)(A)(i), 503(3)(D) and 503(4)

5. The time and expenses included under the categories 503(1)(A)(i), 503(3)(D) and 503(4) were previously included in the categories assigned to proceedings in Delaware, New York, Tennessee, Missouri and New Hampshire, including the defense of three additional lawsuits against Richardson. The substantial contributions have been described in detail in the Amended Application. The category of 503(1)(A)(i) is assigned as well because these efforts were necessary to recover assets for the estate so that creditors generally could benefit and so that Richardson could recover the indemnification owed to him. Such efforts are covered by the Chariot Group/Summit By-laws, cited in the Amended Application.

503(3)(C)

6. The time and expense in the category of 503(3)(C) alone includes time developed in assisting state and federal officials in developing and prosecuting bankruptcy fraud claims against Richard Gray. The indictment and ultimate guilty plea arose in the bankruptcy of a company affiliated with the debtor, whose funds were commingled, along with those of the debtor, by Mr. Gray. Gray's indictment and guilty plea for bankruptcy fraud led to his being discredited in any further proceedings in any forum.

503(3)(C), 503(3)(D) and 503(4)

6

7. The time and expense in the categories of 503(3)(C), 503(C)(D) and 503(4) includes time and expenses spent in connection with the Homestar Industries bankruptcy in St. Louis, which led to Gray's indictment and conviction, and which provided information about Gray's use of funds to make the various acquisitions that were subsequently found to be corporate opportunities.

THE TRUSTEE'S BUDGET

8. One apparent objection of the Trustee is that if Richardson is paid, the estate will run out of money.[1]  If Richardson is entitled to compensation, then bad budgeting is a problem to be dealt with later by the Trustee, and is not properly an objection to his claim.

9. A principal cause of the Trustee's problem is the agreement by the Trustee to pay a financial advisor thirty percent (30%) of the proceeds received for the sale of one of the debtor's operating companies,[2] and ten percent (10%) for another.  For the thirty percent commission, the advisor "found" the company's management, which had already expressed interest in the company.  By simply conducting an auction – which was never done – the Trustee could have saved considerable sums.  Similarly observations can be made of the other sale.  The operating companies had each been profitable for at least forty years.

WHEREFORE, the Applicant respectfully requests that the Court enter an order (a) awarding to Applicant compensation in the amount of $$768,921.71, representing billable time for services, and approving reimbursement of expenses incurred in the

---

[1]  Richardson's plan of reorganization, submitted to the Trustee in June, 2005, would have paid creditors the equivalent of $1 million (see Amended Application, ¶6).
[2]  The purchase price was $1.2 million.  The advisor's fee was $360,000.  The purchase price was less than forty percent of the company's book value.

7

00522

amount of $107,826.96 (ii) directing payment to the Applicant of $876,748.67and (iii)

granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 31st day of March 2006.

Ambrose M. Richardson
A. M. Richardson, P.C.
40 Wall Street, 35th Floor
New York, NY 10005
(212) 530-4771

8

00523