## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| SUMMIT METALS, INC., | ) | Case No. 98-2870 |
| | ) | |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | |
| AMBROSE M. RICHARDSON, III | ) | |
| | ) | |
| Appellant, | ) | Civ. Action 1:08-cv-0005(SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTA A. DEANGELIS, ACTING UNITED | ) | |
| STATES TRUSTEE AND FRANCIS A. | ) | |
| MONACO, JR., CHAPTER 11 TRUSTEE, | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |
| ————————————————— | ) | |

## APPELLEE'S MEMORANDUM OF LAW

Dated: May 16, 2008

Kevin J. Mangan (#3810)
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4363
Facsimile: (302) 661-7728

Attorneys for Chapter 11 Trustee

# TABLE OF CONTENTS

PAGE(S)

I.    PRELIMINARY STATEMENT ............................................................... 2

II.   STANDARD OF APPELLATE REVIEW ........................................... 3

III.  STATEMENTS OF FACT.................................................................. 3

IV.   NATURE AND STAGE OF THE PROCEEDINGS ........................... 3

V.    THE BENEFITS TO THE ESTATE................................................... 4

      A.    The Gray Claims.................................................................. 5

      B.    The IRS Settlement and RIVCO and Jenkins Asset Sales ...................... 6

VI.   ARGUMENT...................................................................................... 6

      I.    Appellant Cannot Recover Under §503(b)(3)(D) His Fees and Expenses
            Associated with the New York Injunction Because His Actions Did Not
            Substantially Contribute to the Estate ..................................................... 6

      II.   Appellant Cannot Recover Under §503(b)(3)(D) His Fees and Expenses
            Resulting from his Participation in the ESP Bankruptcy Because Such
            Activities Did Not Preserve or Substantially Contribute to the
            Summit Estate...................................................................................... 10

      III.  Appellant Cannot Recover Under §503(b)(1)(A) His Fees and Expenses
            With Defending Four Proceedings Brought Against Him Because His
            Actions in Defending These Proceedings Were Not Transactions
            with the Debtor ................................................................................. 15

      IV.   Appellant Cannot Recover Under §503(b)(3)(C) His Fees and Expenses
            Incurred in Connection with the Tax and Bankruptcy Fraud Criminal
            Proceedings Against Gray Because the Criminal Proceedings Were
            Not Related to the Debtor's Bankruptcy Case or to Business or
            Property of the Debtor .......................................................................... 19

VII.  CONCLUSION ..................................................................................... 21

## TABLE OF AUTHORITIES

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 93d Cir. 1986) ........................................... 3

*Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992)* ......................................................... 3

*In re 9085 E. Minieral Office Bldg., Ltd.,* 119 B.R. 246 9Bankr. D. Colo. 1990) ............... 7

*U.S. Lines, Inc.,* 103 B.R. 427 (Bankr. S.D.N.Y. 1989) ........................................................ 7

*In re Worldwide Direct, Inc.,* 334 B.R. 112 (Bankr. D. Del. 2005) ..................................... 8, 9, 12, 14

*Lebron v. Mechem Financial Inc.,* 27 F.3d 937 (3d Cir. 1994) ............................................. 8

*In re Essential Therapeutics, Inc.,* 308 B.R. 170 (Bankr. D. Del. 2004) ............................. 9, 14

*In re Granite Partners, L.P.,* 213 B.R. 440 (Bankr. S.D.N.Y. 1997) .................................... 12, 13

*Calpine Corp. v. O'Brien Envtl. Energ, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 f.3d 527 (3d Cir. 1999) ........................................................................................................... 16

*In re Mid-American Waste Sys., Inc.,* 228 B.R. 816 (Bankr. D. Del. 1999) ........................ 17, 18

*In re Pinnacle Brands, Inc.,* 259 B.R. 46 (Bankr. D. Del. 2001) .......................................... 18

*Houbigant, Inc. v. ACB Mercantile, Inc.,* 188 B.R. 347 (Bankr. S.D.N.Y. 1995) ............... 18

*In re Amfesco Indus., Inc.,* 81 B.R. 777 (Bankr. E.D.N.Y 1988) ......................................... 18

*In re Petit,* 291 B.R. 582 (Bankr. D. Me. 2003) .................................................................... 19

*In re Holder,* 207 B.R. 574 (Bankr. M.D. Tenn. 1997) ......................................................... 19

### Statutes and Rules

11 U.S.C. § 503 .................................................................................................................... passim

Fed. R. Bankr. P. 8013 ............................................................................................................ 3

Appellee, Francis A. Monaco, Jr., Chapter 11 Trustee for Summit Metals, Inc. ("Trustee"), by and through his undersigned counsel, respectfully submits this memorandum of law in response to the appeal by Appellant, Ambrose M. Richardson ("Appellant" or "Richardson"), of the United States Bankruptcy Court's December 4, 2007 opinion (the "Opinion") denying in part his application seeking allowance of fees and expenses as administrative expenses pursuant to § 503(b) of the Bankruptcy Code (the "Application"). In support hereof, the Trustee states as follows:

## I. PRELIMINARY STATEMENT

This appeal arises out of the chapter 11 bankruptcy case of Summit Metals, Inc. ("Summit" or "Debtor"). Appellant Richardson was a former law and business partner of Richard Gray ("Gray"), the antagonist of this bankruptcy. Prior to the bankruptcy, Richardson and Gray had a falling out, and as the record below demonstrates, Richardson and Gray had a great amount of personal animosity between them. Richardson now appeals the clear and detailed Opinion of Judge Carey denying this Application. The bulk of the work Richardson claims constitute administrative expenses relates to his pre-petition personal matters with Gray and had nothing to do with the Summit estate. Other work Richardson seeks as administrative expenses relates to his role on the Unsecured Creditors Committee (the "Committee") for which he is not entitled to recover.

The Trustee had a great deal of difficulty responding to Appellant's Memorandum of Law ("Richardson's Memorandum"). Richardson's Memorandum is replete with bold, sweeping and inaccurate conclusions without factual or legal support. Statements of fact are provided by Richardson without any citation to the record. In short, Richardson is unable to

provide any support or bases to overturn the well reasoned and detailed Opinion of the Bankruptcy Court.

## II. STANDARD OF APPELLATE REVIEW

A bankruptcy court's findings of fact are not to be set aside unless clearly erroneous. See Fed. R. Bankr. P. 8013. Conclusions of law are subject to de novo review. In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986). Mixed questions of law and fact are broken down into their respective components, and the appropriate standard is applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992).

## III. STATEMENT OF THE CASE

The facts pertinent to the instant appeal are set forth in the findings of fact made by the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the Order and are incorporated herein as if fully and at length set forth. Particular salient facts are set forth below, and other relevant facts will be referred to in connection with argument.

## IV. NATURE AND STAGE OF THE PROCEEDINGS

Ambrose M. Richardson filed an application seeking an award of fees and expenses in excess of $869,000 pursuant to 11 U.S.C. § 503 ("Section 503"). Francis A. Monaco, the Chapter 11 Trustee of Summit Metals, Inc. ("Chapter 11 Trustee"), and the Official Committee of Unsecured Creditors of Summit Metals, Inc. ("Committee") objected to Mr. Richardson's request. Hearings on this matter were held on March 16, 2006 and April 4, 2006, at which time the Court took evidence in connection with Mr. Richardson's application.[1] The Bankruptcy

---

[1]     The facts are derived from the testimony given at the March 16 and the April 4, 2006 hearings and the exhibits introduced at those hearings. Page and line numbers from these transcripts are referred to herein as "Mar. Tr. at __" and "Apr. Tr. at __." Citations to "D.I. ___" refer to docket entries in the underlying Bankruptcy case. Citations to the Trustee's Appendix, filed herewith, are referred to herein as "TA ___."

Court issued an Opinion (D.I. 793, TA at 00852) denying Richardson's application, except for an allowance of an administrative expense claim totaling $2,533.65 for his incurred expenses. Richardson has appealed the denial of his application.

## V.  THE BENEFITS TO THE ESTATE

Debtor Summit Metals, Inc. ("Summit") filed a voluntary petition for relief on December 30, 1998.  (Ex. 504 at 1, Apr. Tr.).  At that time, it had no tangible assets or operations and the only intangible assets it held were claims against its then sole director and shareholder, Richard E. Gray ("Gray").

In the intervening seven and-a-half years, the Summit estate has received benefits as a result of: (i) the successful prosecution of corporate opportunity claims against Gray resulting in the imposition of a constructive trust over a 92% ownership interest in Riverside Millwork, Inc. ("Rivco") and Jenkins Manufacturing Co., Inc. ("Jenkins"), two profitable operating entities (Ex. 509, Apr. Tr.), (ii) the successful negotiation of a settlement agreement regarding the claim of the Internal Revenue Service, the estate's single largest creditor holding a secured claim in excess of $7.5 million (D.I. 463, TA 00409), and (iii) the sale of the assets held by Rivco and Jenkins (D.I. 537, 562, TA 00569, TA 00758).  As a result of these activities, Summit recovered approximately $4.6 million for distribution to claimants and creditors.

On August 9, 2007, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law and Order Confirming Second Amended Liquidating Plan of Chapter 11 Trustee as Modified for Summit Metals, Inc. (D.I. 772, TA 00764) (the "Confirmation Order").

### A.    The Gray Claims

In August 1999, the Court authorized the Committee to prosecute claims against Gray. (D.I. 128, TA 00369).  In September 1999, the Committee retained special litigation counsel, H. Adam Prussin, to prosecute the claims.  (Apr. Tr. at 103:13-20; 104:20-24, 187:5-16).  Mr. Prussin had served as counsel for shareholders who had asserted related claims against Gray in New York prior to the filing of Summit's petition and, thus, he had substantial familiarity with the Committee's claims against Gray.  (Apr. Tr. at 103:16-20, 187:17-21).

Mr. Prussin and Delaware counsel for the Committee pursued the claims against Mr. Gray from October 29, 1999, the day the adversary complaint was filed, until August 6, 2004, the date Judge Jordan of the United States District Court for the District of Delaware issued his findings of fact and conclusions of law finding Gray breached various fiduciary duties he owed to Summit. (the "Jordan Opinion") (TA 00897)  They engaged in discovery, drafted motions, presented the case for trial and engaged in post-trial briefing and appeals.  As a result of these efforts, a judgment was entered against Gray and his affiliates holding them liable for millions of dollars in damages and imposing a constructive trust over the 92% interest in Rivco and Jenkins owned by Gray and his affiliates.  (Ex. 509; Apr. Tr. at 45:6-11; Jordan Opinion, TA 00897).

At no time did Mr. Richardson serve as counsel to the Committee or otherwise represent the Committee or Summit in the adversary proceedings against Gray.  (Apr. Tr. at 120:20-23). Rather, he was chairman of the Committee.

B.    **The IRS Settlement And Rivco And Jenkins Asset Sales**

Following the entry of the judgment against Gray, the Chapter 11 Trustee determined that

his two principal tasks were resolving the claim of the IRS and then selling Rivco and Jenkins or

their assets.  Both of these steps were necessary in order for claimants and creditors to be paid.

In May of 2005, the Chapter 11 Trustee reached a settlement with the IRS regarding its

claim.  (D.I. 463, TA 00409).  Thereafter, the Chapter 11 Trustee negotiated sales of the assets of

Rivco and Jenkins and those sales were approved by the Court.  (D.I. 521, 537, 538, 550, 562,

TA 00423, TA 00569, TA 00568, TA 00575, TA 00758).

It is undisputed that Richardson played no role in the IRS settlement agreement or the

sales of the Rivco and Jenkins assets.  To the contrary, Richardson objected to the sales and tried

to purchase these businesses himself (D.I. 525 and 554, respectively, TA 00561, TA 00754).

The sales and subsequent benefits to the Estate were achieved despite Richardson's attempts to

derail them.  Accordingly, he can take no credit for these events.

## VI.  ARGUMENT

I.    **Appellant Cannot Recover Under § 503(b)(3)(D) His Fees and Expenses Associated with the New York Injunction Because His Actions Did Not Substantially Contribute to the Estate.**

Appellant's first argument is that he is entitled, pursuant to § 503(b)(3)(D) to recover as

an administrative expense his fees and expenses relating to his work in obtaining an injunction

against (the "New York Injunction") and that the Bankruptcy Court committed reversible error

by denying him $107,282.41 in such expenses.  The Bankruptcy Court denied Appellant's

administrative claim because it found such expenses did not arise in connection with a

substantial contribution to the bankruptcy case.  11 U.S.C. § 503(b)(3)(D).  Although the

Bankruptcy Court found that the New York injunction itself substantially contributed to the Summit bankruptcy case, it held that Richardson failed to introduce evidence to support an argument that it was <u>his</u> efforts with regard to the New York Injunction that caused this contribution.[2]

Although Richardson made many assertions about his involvement, he supplied no direct evidence of his contribution. "Something more than mere conclusory self-serving statements regarding one's involvement in a case which allegedly resulted in a 'substantial contribution' must be presented to the Court before compensation can be allowed . . . ." <u>In re 9085 E. Mineral Office Bldg., Ltd.</u>, 119 B.R. 246, 249-50 (Bankr. D. Colo. 1990) (<u>quoting</u> <u>In re U.S. Lines, Inc.</u>, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989)).

To the contrary, the Bankruptcy Court found it was the Committee's efforts and not Richardson's efforts that made a substantial contribution. Richardson claims the Bankruptcy Court erred in attributing the New York Injunction to the work of other attorneys, including Prussin, and claims that he was "solely responsible for the New York Injunction." He further claims that "there is no dispute that Richardson originated and brought the original New York action and obtained the New York Injunction." However, he offers no evidence to substantiate this claim, except to state the Bankruptcy Judge should have reviewed time records. With absolutely no evidentiary proffer, Richardson has provided no basis for his substantial contribution argument, much less an abuse of discretion by the Bankruptcy Court in its findings of fact. In addition, even if Richardson devoted substantial time to the New York litigation, his

---

[2] Although not addressed by Richardson, the Court also supported its decision not to award Richardson his expenses related to the New York litigation by noting that Richardson's post-petition activities did not directly benefit the estate. Richardson did not address this argument in his appeal and it is therefore not at issue here.

time alone does not suggest that it was his efforts that caused the outcome which effected the Summit bankruptcy estate.

Moreover, the "substantial contribution provisions must be narrowly construed . . . the benefit received by the estate [must] be more than incidental to the applicant's self interest . . . [and] . . . [r]eimbursement is improper where the activities of the interested parties are designed to serve primarily their own interests and would have been undertaken without an expectation of reimbursement from the estate . . . ." In re Worldwide Direct, Inc., 334 B.R. 112, 121-22 (Bankr. D. Del. 2005) (citations omitted). Here, even if his pre-petition activities in New York did benefit the Summit estate, such activities were personally beneficial to Richardson, not a substantial contribution to the estate.

The New York lawsuits were initiated in the summer of 1995, more than three years before Summit filed its voluntary petition. At the time the suits were filed, Mr. Richardson had no basis to expect that his expenses and compensation would be reimbursed by the estate. To the contrary, no one contemplated that there would even be an estate until Summit was found liable for the income taxes that its corporate parent owed the IRS.

The fact that Richardson had no expectation of payment from Summit yet pursued the New York lawsuits (in whatever capacity) defeats his claim for fees and expenses related to the pre-petition New York lawsuits. The Third Circuit has made clear that the phrase "substantial contribution" in Section "503(b)(3)(D) . . . should be applied in a manner that excludes reimbursement in connection with activities . . . which . . . would have been undertaken absent an expectation of reimbursement from the estate." Lebron v. Mechem Financial Inc., 27 F.3d 937, 944 (3d Cir. 1994). Excluding expenses of this nature is necessary in order to avoid burdening the estate with administrative fees which are generated solely out of a creditor's desire to

participate in the proceedings. See 4 Collier On Bankruptcy ¶ 503.10[5] ("An entity's active participation in the case, even if considerable in terms of time, effort and expense, and even if positive for the overall outcome, will not of itself be sufficient to constitute a substantial contribution. Such participation is considered to be of only incidental benefit to the estate, while substantial contribution requires something more").

In addition, many of the contributions Richardson extorts were necessary to fulfill his fiduciary duties as a Committee member and chair. As a member of the Committee, Appellant had a duty to act in the best interests of the estate and cannot be paid for the time spent performing Committee duties. See Worldwide, 334 B.R. at 126 (denying compensation because the Bankruptcy Code "does not allow payment of the hourly wages of a Committee member"). To allow otherwise would be contrary to public policy.

Denying Richardson's request for fees and expenses related to the New York lawsuits is particularly appropriate because Richardson was never retained to provide legal services in the New York lawsuits, although he billed the estate on a lode star basis (rate times hours) applying his professional rate. (Apr. Tr. at 120:12-19). The attorney who was retained in New York, Mr. Prussin, has already been paid $1 million for his work on behalf of the estate, including his work in New York. Allowing Mr. Richardson to recover the time he spent in New York would result in the estate paying for the same service twice, a result which is not proper. In re Essential Therapeutics, Inc., 308 B.R. 170, 175 (Bankr. D. Del. 2004) (fees for counsel for preferred stockholders were not recoverable when services provided were duplicative of debtor's counsel's services).

For these reasons, Richardson's actions related to the New York Injunction did not preserve or substantially contribute to the Summit bankruptcy estate and the Bankruptcy Court was correct in denying his administrative claim for his fees and expenses related there.

**II.    Appellant Cannot Recover Under § 503(b)(3)(D) His Fees and Expenses Resulting from his Participation in the ESP Bankruptcy Because Such Activities Did Not Preserve or Substantially Contribute to the Summit Estate.**

Richardson also appeals the Opinion on the grounds that the Bankruptcy erred in denying his claim for fees and expenses based on his work in the Tennessee bankruptcy case of Energy Saving Products, Inc. ("ESP").[3]  While the Bankruptcy Court acknowledged that Richardson took various actions in the ESP bankruptcy case, including trying to have the case transferred to Delaware, opposing the sale of BF Rich, objecting to the ESP plan, and bringing certain claims against ESP on behalf of the Debtor, the Court could not find, based on the evidence Richardson presented, that any of these actions substantially contributed to the Debtor's Delaware bankruptcy case as required for an administrative claim under § 503(b)(3)(D).

When the Committee filed its adversary complaint against Gray, one of the principal assets it sought to recover was ESP and its wholly owned subsidiary B.F. Rich, Inc. (Ex. 513, Apr. Tr.).  The Committee alleged and later proved that, in 1995, Gray engaged in an impermissible self-dealing transaction pursuant to which Gray caused Summit to sell its 92% interest in ESP to an entity Gray controlled for inadequate consideration. (Ex. 509 at ¶ 21-32, 85, Apr. Tr.).

---

[3] The exact amount of fees and expenses Mr. Richardson seeks for his efforts in the ESP bankruptcy case is not clear as he has lumped his time on this matter with time on another matter.  Specifically, the fees and expenses he seeks for this proceeding are lumped with the ESP adversary proceeding and both aggregate $123,656.66 in fees and $55,405.54 in expenses.  (Ex. 500 at 7; Apr. Tr. at 165:19-166:5).

In 2000, while the Committee's adversary proceeding was pending against Gray and ESP, ESP became the subject of its own bankruptcy proceedings in Tennessee. (Mar. Tr. at 31:5-7). Shortly after ESP's filing, Richardson filed an unsuccessful motion to transfer the ESP proceedings to Delaware so that they could be jointly administered with Summit's case and unsuccessfully opposed Gray's effort to acquire B.F. Rich from ESP. (Mar. Tr. at 32:2-33:2; Apr. Tr. at 160:19-161:4).

The filing of the ESP bankruptcy caused the Committee to drop ESP as a party to the adversary proceeding and to file a proof of claim on behalf of Summit against ESP in Tennessee. (Mar. Tr. at 33:13-18). The Committee's proof of claim sought the same relief against ESP that the Committee was seeking in Delaware. Richardson filed a duplicate proof of claim in the ESP bankruptcy. (See Apr. Tr. at 161:161:15-162:2 (parallel claims filed by Richardson and Committee)). He filed this claim on Summit's behalf even though he had no authority to act for Summit, was not acting in his capacity as chairman of the Committee and was never retained by anyone to act as a lawyer in connection with these proceedings. (Apr. Tr. at 161:15-18 ("I did . . . file a claim on -- essentially on behalf of the estate"), 162:5-19).

ESP objected to the Committee's claim and argued it was deficient on several grounds, including that it arose out of an equity position and had to be subordinated to the claims of other creditors. (Apr. Tr. at 163:4-21). Whether or not the Committee would prevail on its claim was not clear and, ultimately, the Committee settled its claim in exchange for claims ESP had against Gray. (Mar. Tr. at 34:21-24; Apr. Tr. at 163:22-164:8). No money ever flowed to the estate as a result of the activities in Tennessee. (Apr. Tr. at 164:9-12). A copy of the settlement agreement is part of the record in this case. (D.I. 312, 314, TA 00406, TA 00409). Richardson contends it was these claims -- the claims the Committee acquired for the estate through its compromise

with ESP -- that allowed the Committee to acquire Rivco and Jenkins. (Mar. Tr. at 35:3-22). There is, however, absolutely no support for this contention before the Bankruptcy Court or this Court.

In his appeal, Richardson asserts that the Bankruptcy Court erred in finding these activities did not constitute a substantial contribution to the Summit bankruptcy estate. The standard for substantial contribution under § 503(b)(3)(d) in this jurisdiction is clear: "A claimant makes a substantial contribution if its efforts result in an 'actual and demonstrable benefit to the debtor's estate and the creditors.'" Worldwide, 334 B.R. at 121 (citation omitted). While Richardson unsuccessfully objected to or brought a couple of motions and, without authority, filed a claim duplicative of the claim filed by the Committee, none of these actions caused an "actual and demonstrable benefit to the debtor's estate and the creditors."

Richardson argues that his action trying unsuccessfully to have the Tennessee case transferred to Delaware substantially contributed to the Delaware case. However, he offers no explanation of how his actions even benefited, much less substantially contributed to, the Summit bankruptcy estate. Richardson also finds fault with the Bankruptcy Court's failure to find that his actions opposing the proposed plan in the ESP case had any effect, much less benefit on the Summit estate. Although, according to Richardson, the proposed plan would have been detrimental to Summit's creditors because it subordinated Summit's claim as an ESP stockholder to those of BF Rich, such a result would have been inconsequential because the Summit Committee ended up relinquishing Summit's claim against ESP anyway. The fact that Richardson's actions may have been well-intentioned or could have conceivably benefited the estate is simply not enough. In re Granite Partners, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y.

1997) (extensive participation, without a showing that the activities increased the size of the estate, cannot establish substantial contribution).

Richardson also argues that his actions in trying to defeat the proposed financing for the B.F. Rich sale substantially contributed to the Summit bankruptcy estate. First, this argument makes no sense factually and, more importantly, does not explain what the benefit to the Summit estate was. He does not explain how his objection to the financing motion lead to the defeat of the ESP plan and again does not address the Bankruptcy Court's finding that it does not matter what happened with the ESP plan or what effect it would have had on Summit's claim against ESP because such claims were relinquished.

Richardson claims that prosecution and defense of claims on behalf of Summit against ESP benefited the Summit estate because the settlement of such claims resulted in the assignment of ESP's corporate opportunity claims against Gray to Summit. However, the Bankruptcy Court expressly found this assertion to be untrue. The Bankruptcy Court specifically found that it was Judge Jordan's opinion in the Delaware Adversary Proceeding that "the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit" that ensured the corporate opportunity claims to Summit, not settlement of a proof of claim filed in the ESP bankruptcy. In his appeal, Richardson has offered no evidence to suggest this finding of fact was an abuse of discretion. Richardson argues that Summit's corporate opportunity claims against Gray did not arise as a matter of law, but belonged to ESP and were "traded" in exchange for ESP stock. However, again, he offers absolutely no evidence to back up this assertion. To the contrary, Judge Jordan specifically found that "Rivco and Jenkins operated in Summit and its subsidiaries' lines of business," "Summit could have acquired Rivco and Jenkins if Gray had not diverted this line of business from Summit," "Summit would have had an interest in acquiring

Rivco and Jenkins," and finally, that "the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit." (Ex. 509 at p 92-94 Apr. Tr., Jordan Opinion). The Bankruptcy Court did not abuse its discretion in agreeing with Judge Jordan and Richardson's claim that the estate benefited from the ESP settlement is simply incorrect.

The only support Richardson offers for this argument is an attack on the Bankruptcy Court's interpretation of Judge Jordan's decision and finding that "the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit." Richardson's basis for challenging the Bankruptcy Court's finding is the perverse argument that Judge Jordan did not make a specific finding that Rivco and Jenkins were *not* corporate opportunities of ESP. As the record is clear (even in the portions Richardson cites in his brief) that Judge Jordan did find that the acquisition of Rivco and Jenkins were corporate opportunities that belonged to Summit, there is no showing that the Bankruptcy Court abused its discretion in likewise finding Summit's corporate opportunity claims arose from the Jordan Opinion and not from any action taken by Richardson in the ESP bankruptcy.

The Bankruptcy Court was correct in finding that Richardson's actions in the ESP case did not preserve or confer a benefit on the Summit estate. Even if they had, which they did not, Richardson is still not entitled to recover his fees and expenses related to the ESP bankruptcy because such actions were duplicative of those taken by the Committee and Committee counsel. (See Apr. Tr. At 139:15-141:18) (objection to motion to convert was duplicative of objection filed by Committee) and should not be compensated. See Essential Therapeutics, 308 B.R. at 175 (holding that duplicative work is not compensable). In his Appellate Brief, Appellant seems to suggest that there was not a duplication of efforts, but that he was working on behalf the

Committee. However, the Committee had counsel to represent its interests and Appellant was never engaged to represent the Committee.

In addition, Richardson's time and efforts in the ESP bankruptcy case was done pursuant to his role as a Committee member. As a member of the Committee, Appellant had a duty to act in the best interests of the estate and cannot be paid for the time spent performing Committee duties. See Worldwide, 334 B.R. at 126 (denying compensation because the Bankruptcy Code "does not allow payment of the hourly wages of a Committee member").

Finally, Richardson pursued these activities not for the benefit of the estate, but to achieve a personal objective he would have sought regardless. As he admitted, he wanted to acquire the operating companies that the Committee intended to obtain through the adversary proceeding against Gray. See Apr. R. at 109:4-111:21. As discussed supra, "the benefit received by the estate [must] be more than incidental to the applicant's self interest . . . [and] . . . [r]eimbursement is improper where the activities of the interested parties are designed to serve primarily their own interests and would have been undertaken without an expectation of reimbursement from the estate . . . ." Worldwide, 334 B.R. at 121-22 (citations omitted).

III.   **Appellant Cannot Recover Under § 503(b)(1)(A) His Fees and Expenses Associated with Defending Four Proceedings Brought Against Him Because His Actions in Defending These Proceedings Were Not Transactions with the Debtor.**

Appellant sought to have $618,995.87 in fees and $82,358.20 in expenses paid as administrative expense under § 503(b)(1)(A). Section 503(b)(1)(A) provides an administrative priority claim for the actual, necessary costs and expenses of preserving the estate. However, as the Bankruptcy Court noted, "[f]or a request to be allowed under section 503(b)(1)(A), the application must prove that 'the debt [arises] from a transaction with the debtor-in-possession . . .

[and] the consideration supporting the claimant's right to payment [is] beneficial to the debtor-in-possession in the operation of the business." (Carey Order at p. 20) (quoting Calpine Corp. v. O'Brien Envtl. Energ, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3rd Cir. 1999)).   The Court found Richardson's § 503(b)(1)(A) claim failed because the fees and expenses for which he sought an administrative claim did not arise from a transaction with the Debtor.

Richardson's appeal misses the point of the Bankruptcy Court's Opinion.  He seeks an administrative claim under 503(b)(1)(A) for his fees and expenses incurred in defending four proceedings brought against him and argues that the Bankruptcy Court erred in not finding his defense of these proceedings were "transactions" with the Debtor.  However, the Bankruptcy Court's reason for finding 503(b)(1)(A) inapplicable was not that these proceedings or Richardson's actions related thereto were not "transactions," but that they were not with the debtor-in-possession because they arose pre-petition and out of pre-petition conduct.

Richardson's claim for reimbursement of his fees and expenses arises out of his alleged right to indemnification, which is based on Gray v. Richardson, a lawsuit Gray and Summit filed against him pre-petition.  Richardson prevailed in that suit and then, prior to the filing of the Summit bankruptcy case, obtained an order directing Summit to indemnify him for the costs he incurred in defending that suit through March 31, 1997.  (Apr. Tr. at 90:12-17; 99:9-100:12; 129:11-131:16).  Hence, the conduct which forms the bases for Mr. Richardson's indemnification claim  and the indemnification claim itself all arose pre-petition.  Likewise, the terms of Summit's alleged bylaws, the instrument which purportedly creates Mr. Richardson's right to indemnification, were in place during the pre-petition period.

As Richardson was employed by Summit pre-petition, the conduct at issue related to pre-petition activities and the bylaws on which Richardson relies were in effect pre-petition, the indemnification expenses did not arise out of a post-petition transaction with Summit and, thus, are not recoverable as an administrative expense. In re Mid-American Waste Sys., Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999) ("An indemnification claim by an officer or director based on that officer's or director's prepetition services is not a claim on account of 'services rendered after the commencement of a case' that is entitled to administrative priority"). This is true even if the fees and expenses for which indemnification is sought arise in connection with legal proceedings arising post-petition. Id. 228 B.R. at 821-23 (stating that "[a] debt is not entitled to priority [under 503(b)(1)(A)(i)] simply because the right to payment arises after the debtor in possession has begun managing the estate" (citations omitted) and holding that a claim for indemnification in connection with defending a lawsuit that was filed post-petition but challenged pre-petition conduct was not entitled to administrative priority under 503(b)(1)(A)(i)).

In his appellate brief, Appellant spends much time bemoaning the inequity of denying his 503(b)(1)(A) claim. It should be pointed out, however, that the Bankruptcy Court did not hold or even consider whether Appellant's claim for collection costs itself lacked merit or that he should not be indemnified as required under the indemnification order.[4]  Rather, the Bankruptcy Court found that Richardson's claim arose from the Richardson Fiduciary Duty Proceeding, which was filed pre-petition and stemmed from Richardson's pre-petition conduct as an officer of Chariot and followed the plethora of caselaw holding that a creditor cannot receive administrative expense priority for a claim based on pre-petition conduct. (Br. Ct. Order at p. 20). As the Court

---

[4] Appellee has consistently argued that Richardson is not even entitled to be indemnified for his efforts to recover assets to satisfy his indemnification judgment. That issue, however, was not decided by the lower court and is consequently not before this Court on appeal.

correctly found, indemnification for pre-petition actions or services is simply not a cost or expense for "services rendered after the commencement of a case" and fees and expenses related thereto are therefore not entitled to administrative expense priority. 11 U.S.C. § 503(b)(1)(A). See In re Pinnacle Brands, Inc., 259 B.R. 46, 51-52 (Bankr. D. Del. 2001); Mid-American, 228 B.R. at 821-22; Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 188 B.R. 347, 359 (Bankr. S.D.N.Y. 1995); In re Amfesco Indus., Inc., 81 B.R 777, 784 (Bankr. E.D.N.Y. 1988).

Although some of the proceedings against Richardson for which he seeks reimbursement took place post-petition, Richardson did not show, and indeed in no way can show, that defending and protecting himself somehow preserved or conferred a benefit on the estate, much less was necessary to preserve the value of estate assets. 11 U.S.C. § 503(b)(1)(A).  To the contrary, some of these proceedings were actions against him by the estate.  To the extent, Richardson argues his right to reimbursement for his actions in defending these cases is based on his indemnification claims, as just discussed, such activity arose pre-petition and is not the basis for a 503(b)(1)(A) claim.

The Bankruptcy Court's decision denying Richardson's claim for fees and expenses pursuant to § 503(b)(1)(A) should therefore be affirmed.

IV.     **Appellant Cannot Recover Under § 503(b)(3)(C) His Fees and Expenses Incurred in Connection with the Tax and Bankruptcy Fraud Criminal Proceedings Against Gray Because the Criminal Proceedings Were Not Related to the Debtor's Bankruptcy Case or to Business or Property of the Debtor.**

Finally, Appellant argues that he should be able to recover as an administrative expense under § 503(b)(3)(C) $31,331.25 in fees and $1,830.59 in expenses he incurred in connection with his alleged involvement in certain tax and bankruptcy fraud criminal proceedings against Gray and that the Bankruptcy Court erred in finding that the tax and bankruptcy fraud criminal proceedings were unrelated to the Summit bankruptcy case.

Section 503(b)(3)(C) of the Bankruptcy Code allows a creditor to recover the actual, necessary expenses it incurs "in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor." 11 U.S.C. § 503(b)(3)(C). To recover under § 503(b)(3)(C), however, a creditor must show both a) a direct relationship between the expenses sought and the prosecution of the criminal activity, In re Petit, 291 B.R. 582, 591 (Bankr. D. Me. 2003), and b) that the prosecution of the criminal offense relates to a debtor's case, business or property. In re Holder, 207 B.R. 574, 576 (Bankr. M.D. Tenn. 1997). The Bankruptcy Court found that Appellant did not meet his burden of proof because he could not show a nexus between the MO criminal proceeding and the Summit bankruptcy case. The Court found no evidence that the Debtor had any interest in the insurance proceeds misappropriated by Gray or any interest in the MO bankruptcy proceeding. The Court also found that there was no evidence of how the Debtor's business was relevant to the MO criminal proceeding or to Homestar.

Supporting the Court's decision are the facts that the indictment that led to Gray's guilty pleas makes clear that the criminal charges do not relate to Summit's bankruptcy or its business

or property.  Rather, [as Richardson admits], the charges stem from Gray's misappropriation of HomeStar's assets -- insurance proceeds -- and the false testimony that he gave in the HomeStar bankruptcy proceedings.  (Ex. 507, Apr. Tr.; Post Hearing Brief at ¶ 38 ("Gray ultimately pleaded [sic] guilty to making false statements at a first meeting of [HomeStar's] creditors . . . .")).

In his appeal, Appellant does not offer any more proof on this issue.  Appellant states that Homestar was a corporate opportunity of Summit, but does not explain how this fact is relevant to Gray's criminal conviction or how Gray's fraud conviction had any effect on the Summit bankruptcy case.  The most evidence that Appellant offers to suggest a causal link is the assertion that Gray's criminal conviction affected his credibility in other bankruptcy proceedings, including the Summit bankruptcy, and that to suggest otherwise would be to "ignore human nature."  With no causal link between Gray's criminal convictions for his actions related to the Homestar bankruptcy and any activity or result in the Summit bankruptcy and because the criminal offenses have nothing to do with Summit or its assets, Mr. Richardson cannot recover under Section 503(b)(3)(C).  The Bankruptcy Court's decision to deny Appellant's fees and expenses sought under 503(b)(3)(C) should therefore be affirmed.

## VII. CONCLUSION

Amongst other findings, the Bankruptcy Court held that Richardson was not entitled to recover his fees and expenses under § 503(b)(3)(D) because his actions did not substantially contribute to the estate, nor could he recover his fees and expenses under § 503(b)(1)(A)(i) because his fees and expenses did not result from transactions with the estate, nor could he recover his fees and expenses associated with certain tax and bankruptcy fraud criminal proceedings under § 503(b)(3)(C) because such proceedings had no relation to the Summit bankruptcy case. Further, as a matter of public policy, Richardson must not be able to collect fees to the extent any work he may have performed was done in his role as chairman of the Committee.

As Richardson has advanced no evidence or arguments to support or in some cases even suggest an argument that the Bankruptcy Court abused its discretion in so finding or erred as a matter of law, the Trustee respectfully requests that the Bankruptcy Court Order should be affirmed in its entirety.

Dated: May 16, 2008
         Wilmington, Delaware

_____
Kevin J. Mangan (#3810)
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4363
Facsimile: (302) 661-7728

Attorneys for Chapter 11 Trustee

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| SUMMIT METALS, INC., | ) | Case No. 98-2870 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| AMBROSE M. RICHARDSON, III | ) | |
| | ) | Civ. Action 1:08-cv-0005(SLR) |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTA A. DEANGELIS, ACTING UNITED | ) | |
| STATES TRUSTEE AND FRANCIS A. | ) | |
| MONACO, JR., CHAPTER 11 TRUSTEE, | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing document was made on May 16, 2008 upon:

Richard Schepacarter, Esq.
Office of the United States Trustee
844 King Street, Ste. 2313
Wilmington, DE 19801

Ambrose Richardson
40 Wall Street, 35th Floor
New York, NY 10005

**Richard E. Gray**
Richard E. Gray, Pro se
P.O. Box 182
Keene Valley, NY 12942

Under penalty of perjury, I declare that the forgoing is true and correct.

May 16, 2008                              _/s/ Heidi E. Sasso_____

WCSR 3901925v1