UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| SUMMIT METALS, INC., | : | Bankr. Case No. 98-2870 (KJC) |
| | : | |
| Debtor. | : | |
| | : | |
| AMBROSE M. RICHARDSON, III, | : | |
| | : | |
| Appellant, | : | |
| | : | Civ. Action 1:08-cv-00005 (SLR) |
| v. | : | |
| | : | |
| ROBERTA A. DEANGELIS, | : | |
| ACTING UNITED STATES TRUSTEE, | : | |
| AND FRANCIS A. MONACO, JR., | : | |
| CHAPTER 11 TRUSTEE, | : | |
| | : | |
| Appellees. | : | |
| | : | |

**BRIEF FOR APPELLEE,
ROBERTA A. DEANGELIS, ACTING UNITED STATES TRUSTEE**

Roberta A. DeAngelis, Acting General Counsel
Ramona D. Elliott
P. Matthew Sutko
John Sheehan
Robert J. Schneider
U.S. Department of Justice
Executive Office for United States Trustees
20 Massachusetts Ave, N.W.
Washington, DC  20530

Andrew R. Vara, Assistant U.S. Trustee
Richard L. Schepacarter
U.S. Department of Justice
Office of the United States Trustee
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491

**Attorneys for Appellee**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF APPROPRIATE STANDARD OF APPELLATE REVIEW. . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Statutory Framework. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.      The Procedures Followed by the Bankruptcy Court Were Fair, So
        Remand Is Not Necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.     The Bankruptcy Court Properly Denied Richardson's Request For Hourly Fees. . . . . . . 17

III.    The Bankruptcy Court's Denial of Richardson's Out-of-Pocket Expenses Was
        Not Clearly Erroneous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

Page

*Burlington N. R.R. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),*
853 F.2d 700 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),*
181 F.3d 527 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 19, 24

*Derivative Plaintiffs v. Columbia Gas Sys. (In re Columbia Gas Sys.),*
2000 WL 1456298 (D. Del. Sept. 20, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27

*F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fellheimer, Eichen & Braverman P.C. v. Charter Technologies, Inc.,*
57 F.3d 1215 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*First Merchants Acceptance Corp. v. J.C. Bradford & Co.,*
198 F.3d 394 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Former Employees of Builders Square Retail Stores v.*
*Hechinger Inv. Co. of Del. (In re Hechinger Inv. Co. of Del.),*
298 F.3d 219 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Buckhead Am. Corp.,* 161 B.R. 11 (Bankr. D. Del. 1993). . . . . . . . . . . . . . . . . . . . . . . 27

*In re County of Orange,* 179 B.R. 195 (Bankr. C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Gimelson,* 2004 WL 2713059 (E.D. Pa. Nov. 23, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Hechinger Inv. Co. of Del., Inc.,* 276 B.R. 43 (D. Del. 2002). . . . . . . . . . . . . . . . . . . . . . 1

*In re Highland Group, Inc.,* 136 B.R. 475 (Bankr. N.D. Ohio 1992). . . . . . . . . . . . . . . . . . . . . 24

*In re Overland Park Fin. Corp.,* 240 B.R. 402 (Bankr. D. Kan. 1999). . . . . . . . . . . . . . . . . . . . 24

*In re Pappas,* 277 B.R. 171 (Bankr. E.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Patriot Aviation Services, Inc.,* ___ B.R. ___,
2008 WL 506260 (Bankr. S.D. Fla. Feb. 21, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re U.S. Lines, Inc.,* 103 B.R. 427 (Bankr. S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . 4, 27

**TABLE OF AUTHORITIES** (continued)

Page

*In re Worldwide Direct, Inc.*, 334 F.3d 112 (Bankr. D. Del. 2005). . . . . . . . . . . . . . . . . . . . . . . 4, 20

*Lebron v. Mechem Financial Inc.*, 27 F.3d 937 (3d Cir. 1994). . . . . . . . . . . . . 4-5, 6, 21, 22, 26

*Reading Co. v. Brown*, 391 U.S. 471 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

*Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*,
755 F.2d 200 (1st Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Xifaras v. Morad (In re Morad)*, 328 B.R. 264 (B.A.P. 1st Cir. 2005). . . . . . . . . . . . . . . . . . . . 6


STATE CASES

*Gray v. Richardson*, 251 A.D. 2d 268, 675 N.Y.S. 2d 57 (1st Dept. 1998). . . . . . . . . . . . . . . 7, 23


FEDERAL STATUTES

11 U.S.C. § 102(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

11 U.S.C. § 503(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11 U.S.C. § 507(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

11 U.S.C. § 1102(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. § 1103(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 157(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


FEDERAL RULES

Federal Rule of Bankruptcy Procedure 8010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rule of Bankruptcy Procedure 8013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF ISSUE PRESENTED

Under section 503(b) of the Bankruptcy Code, certain post-petition expenditures may be granted administrative expense priority treatment, which allows them to be paid from the bankruptcy estate ahead of other claims. Appellant Ambrose Richardson III, a creditor in the bankruptcy case of Summit Metals, Inc., sought administrative expense priority treatment for $768,921.71 in hourly time he spent on various matters in Summit's bankruptcy case and other cases, and $107,826.96 for reimbursement of out-of-pocket expenses he incurred. The bankruptcy court only allowed administrative expense priority treatment for $2,533.65 in out-of-pocket expenses that Richardson had proven were incurred in his capacity as a member of the official committee of unsecured creditors in Summit's bankruptcy case. Did the bankruptcy court err in finding that Richardson had not made the requisite showing under section 503(b) to support an entitlement to administrative expense priority treatment for the remainder of his out-of pocket expenses and his entire request for hourly compensation?

## STATEMENT OF APPROPRIATE STANDARD OF APPELLATE REVIEW

This Court conducts a *de novo* review of the bankruptcy court's legal findings. *See, e.g.*, *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990); *In re Hechinger Inv. Co. of Del., Inc.*, 276 B.R. 43, 45 (D. Del. 2002). The bankruptcy court's findings of fact, however, will not be set aside unless they are either "completely devoid of minimum evidentiary support displaying some hue of credibility or bear [ ] no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995); *see also* Fed. R. Bankr. P. 8013 ("[F]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

## STATEMENT OF THE CASE

**I.      Statutory Framework**

The assets in a bankruptcy case must be distributed to claimants in the order established by 11 U.S.C. § 507(a).[1]  First priority is afforded to administrative expenses allowed under 11 U.S.C. § 503(b).  *See* 11 U.S.C. § 507(a)(1).  The statutory administrative expense provisions are interpreted narrowly "so as to keep fees and administrative costs at a minimum."  *See Burlington N. R.R. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir. 1988).

Section 503(b) contains a nonexclusive list of items that may be afforded administrative expense priority.  Each subparagraph of section 503(b) refers to a separate kind of administrative expense.  This appeal implicates subparagraphs (b)(1)(A), (b)(3), and (b)(4) of section 503.

**A.      Section 503(b)(1)(A)**

Section 503(b)(1)(A) provides administrative expense priority treatment to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."  Bankruptcy courts have broad discretion in determining whether to grant or deny administrative expense requests under section 503(b)(1)(A). *See Burlington*, 853 F.2d at 707.

An applicant under section 503(b)(1)(A) must prove three things: (i) that his costs and expenses were actually incurred (i.e., they are out-of-pocket expenses rather than "opportunity costs" or "services rendered"); (ii) that the estate received an actual benefit (i.e., not a conjectural, contingent, or potential benefit); and (iii) that there is a demonstrable causal

---

[1] As this case was filed prior to the October 17, 2005, effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), all references and citations herein are to the pre-BAPCPA version of title 11.

connection between the applicant's actual expenses and a specific actual benefit received by the estate (i.e., the expenses were "necessary" to "preserving the estate"). *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532 (3d Cir. 1999) (applicant must prove connection between actual expense and actual benefit); *Burlington*, 853 F.2d at 706 (benefit to estate must be actual, not potential). The Third Circuit has stated that an applicant under section 503(b)(1)(A) bears a "heavy burden." *Id*.

In addition, as the "estate" to be preserved did not exist before the filing of the petition, a claimant seeking priority treatment under subparagraph (b)(1)(A) must show that his request is based on a post-petition transaction with the debtor in possession. *See, e.g.*, *Former Employees of Builders Square Retail Stores v. Hechinger Inv. Co. of Del. (In re Hechinger Inv. Co. of Del.)*, 298 F.3d 219, 226 (3d Cir. 2002); *O'Brien*, 181 F.3d at 532. If the transaction that gave rise to the claim predates the filing of the petition, the claim is a pre-petition unsecured claim that cannot be afforded section 503(b)(1)(A) administrative expense priority treatment.

B.    Section 503(b)(3)

Section 503(b)(3) allows certain claimants to receive administrative expense priority for their "actual, necessary expenses" other than the compensation and reimbursement of professionals specified in subparagraph (b)(4). Thus, a creditor may never receive administrative expense priority under subparagraph (b)(3) for attorney compensation and expenses; attorney compensation and expenses may only receive administrative expense priority, if at all, under subparagraph (b)(4) (discussed below). In addition, subparagraph (b)(3) only allows for the reimbursement of a creditor's "actual" out-of-pocket "expenses," not the recovery of the value of the hours the creditor has put into the case.

3

1.      Section 503(b)(3)(C)

Subparagraph (b)(3)(C) refers to out-of-pocket expenses incurred by "a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor." Under this provision, a creditor must prove two things: (i) a direct relationship between the expenses sought and the prosecution of a criminal offense; and (ii) a direct relationship between the criminal offense and the debtor's bankruptcy case, business, or property. *See Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943 n.1 (3d Cir. 1994). If a creditor cannot prove either of these connections, he cannot receive a section 503(b)(3)(C) claim.

2.      Section 503(b)(3)(D)

Subparagraph (b)(3)(D) refers to out-of-pocket expenses incurred by a creditor "in making a substantial contribution in a case under chapter 9 or 11[.]" In determining whether he has made a "substantial contribution," the applicant bears an "especially difficult" burden. *See In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989). To carry this burden, a creditor must prove three things: (i) that his expenses were actually incurred; (ii) that the estate received an "actual and demonstrable benefit"; and (iii) that the benefit is "more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Lebron*, 27 F.3d at 944. Essentially, creditors seeking section 503(b)(3)(D) treatment must show a causal connection between their services and the benefit, just like applicants under section 503(b)(1)(A). *See In re Worldwide Direct, Inc.*, 334 B.R.112, 121 (Bankr. D. Del. 2005). Creditors are "presumed to be acting in their own interests"; the presumption is rebutted only if they "satisfy the court that their efforts have transcended self-protection." *Lebron*, 27 F.3d at 944. Unless the court finds that the creditor's actions "were designed to benefit others" rather than himself, the

4

creditor cannot obtain administrative expense priority under subparagraph 503(b)(3)(D) even if there was a benefit to the estate.  *Id.* at 946. The Third Circuit has held that "[t]he inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact finding task." *Id.*  As a result, the bankruptcy court has broad discretion to determine whether an applicant has carried his burden of proof.

        3.        Section 503(b)(3)(F)

Section 503(b)(3)(F) allows a member of an official committee of unsecured creditors to receive administrative expense priority for out-of-pocket expenses incurred in the performance of the duties of the committee.[2]  A committee member cannot receive administrative expense priority for everything he does during the case, however; only out-of-pocket expenses proven to be incurred as a member of the committee may receive priority treatment under subparagraph (b)(3)(F).  Specifically, a committee member cannot obtain hourly compensation for services he renders during the case.  *See In re County of Orange*, 179 B.R. 195, 201 (Bankr. C.D. Cal. 1995).

        C.        <u>Section 503(b)(4)</u>

Section 503(b)(4) refers to "reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph (3)[.]"

---

[2] Under the pre-BAPCPA version of section 503(b) applicable to this case, the Third Circuit had held that official committee members could also receive administrative expense priority treatment for reimbursement of out-of-pocket expenses constituting fees paid to attorneys.  *See First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 396 (3d Cir. 2000). This interpretation was superseded by the BAPCPA's amendment of subparagraph (b)(4) to expressly clarify that it does not apply to creditors specified in subparagraph (b)(3)(F).  The *First Merchants* decision applied to a reimbursement of the out-of-pocket expenses of a committee member who had actually paid an attorney; it did not apply to compensation for hours spent on the case by the committee member itself.

This provision only provides for compensation for services rendered by the "attorney of" a creditor; it does not provide for the hourly compensation for services rendered by the creditor himself. Indeed, a creditor must actually have paid an attorney before he can obtain a subparagraph (b)(4) claim, as the Third Circuit "do[es] not read subsection (b)(4) to authorize a payment to a creditor in excess of the amount he or she was required to pay for those services." *See Lebron*, 27 F.3d at 947 n.5. In addition, subparagraph (4) only applies to attorney services rendered for a creditor who is himself entitled to administrative expense priority under subparagraph (b)(3); attorney services rendered for a creditor who does not meet the subparagraph (b)(3) requirements cannot receive priority treatment under subparagraph (b)(4). *See Xifaras v. Morad (In re Morad)*, 328 B.R. 264, 269 (B.A.P. 1st Cir. 2005).

## II.    **Statement of Facts**

### A.    Background

Summit Metals, Inc. ("Summit") filed a petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") on December 30, 1998. D.I. 1.[3] Richard E. Gray ("Gray") is Summit's controlling shareholder and sole director. D.I. 320.

On March 4, 1999, the United States Trustee appointed an official committee of unsecured creditors ("Committee") under 11 U.S.C. § 1102(a). D.I. 37. The Committee's chairman, Ambrose R. Richardson, III ("Richardson"), was a creditor because of an indemnification claim for fees and expenses incurred in defending against litigation that

---

[3]Pursuant to D. Del. L.R. 7.1.3(a)(F), all references herein to docket entries shall be in the form "D.I. [docket item number]."

implicated his actions as a former officer of Summit's predecessor, The Chariot Group, Inc.

("Chariot").[4]  D.I. 599 (Transcript of April 4, 2006, Hearing ("Apr. Tr.") 130:16-21).

      B.      <u>Summit Ligation Against Richardson</u>

On May 3, 1999, Summit sued Richardson in bankruptcy court to recover, as an alleged

preferential transfer, a pre-petition payment made on Richardson's indemnification claim. D.I.

82; D.I. 599 (Apr. Tr. 102:6-13; 143:5-144:4; 145:16-19). This adversary proceeding continued

for several years, during which time Richardson, in defense of the action against him, conducted

discovery regarding Summit and related entities.  *See* Docket for Adv. Pro. No, 99-126.  The

parties ultimately agreed to resolve the adversary proceeding by an agreed stipulation of

dismissal dated January 31, 2005, in which counsel to Richardson and counsel to the chapter 11

trustee in Summit's bankruptcy case[5] stipulated that "th[e] action is hereby dismissed, *each party*

*to bear its own fees and costs*."  *See* Adv. Pro. No. 99-126, D.I. 44 (emphasis added).

In addition, on August 3, 1999, Summit filed a RICO action against Richardson (among

others).  D.I. 133.   This adversary proceeding was dismissed after only 10 days. Adv. Pro. No.

99-257 D.I. 1 (complaint), 3 (dismissal order).

---

[4]*Gray v. Richardson*, 251 A.D. 2d 268, 675 N.Y.S. 2d 57 (1st Dept. 1998), *leave to appeal denied*, 92 N.Y.2d 815, 706 N.E. 2d 747, 683 N.Y.S. 2d 759 (1998).

[5]On September 13, 2004, the bankruptcy court entered an order granting the United States Trustee's motion for the appointment of a chapter 11 trustee, which was grounded in part on Gray's self-dealing and gross mismanagement of Summit.  D.I. 329 (motion), 334 (order).  The United States Trustee subsequently appointed Francis A. Monaco to serve as chapter 11 trustee. D.I. 338, 343.

C.     Committee Litigation Against Gray

The Committee submitted an application under 11 U.S.C. § 1103(a) to employ

Silverman, Harnes, Harnes, Prussin & Keller as special counsel on August 20, 1999; an order

authorizing the employment was entered on August 27, 1999.  D.I. 148, 155.  A partner in that

firm, H. Adam Prussin ("Prussin"),[6] had represented shareholders in pre-petition litigation in

New York State in which it was alleged that Gray had looted Chariot for his own benefit.  D.I.

599 (Apr. Tr. at 187:5-24.); *see also* Appellant's Appendix at A56-A71.

On September 21, 1999, the bankruptcy court entered an order authorizing the Committee

to prosecute actions of Summit's estate against Gray and Gray-related entities.  D.I. 168.

Thereafter, on October 29, 1999, the Committee filed a complaint on behalf of Summit to

recover property from Gray and several of his affiliated entities including Riverside Millwork

Company, Inc. ("Rivco") and Jenkins Manufacturing, Inc. ("Jenkins").  D.I. 172.  The complaint

alleged that Gray breached his fiduciary duties owed to Summit and Chariot by engaging in

unfair and fraudulent self-dealing transactions, including: (i) looting Chariot from 1991 to 1995;

(ii) transferring Chariot's assets to Energy Savings Products ("ESP"); (iii) merging Chariot into

Summit, and (iv) using ESP's money to acquire Rivco and Jenkins. *Id*.

On August 6, 2004, the Honorable Kent Jordan, United States District Judge,[7] issued

post-trial findings of fact and conclusions of law in which he awarded a $48 million judgment in

---

[6]Later, after Prussin moved to Pomerantz Haudek Block Grossman & Gross, LLP, the Committee obtained an order authorizing the employment of that firm as special counsel.  D.I. 237.

[7]On April 6, 2000, the reference to the bankruptcy court was withdrawn pursuant to 28 U.S.C. § 157(d).  The District Court Civil Action number for the adversary proceeding is 1:00-cv-00387-SLR.

favor of Summit and directed Gray and his affiliated entities to transfer to Summit their interests in Rivco and Jenkins.[8] D.I. 320, Ex. A; District Court  D.I. 221-22. Summit's chapter 11 trustee later sold Rivco's assets for over $9 million and Jenkins' assets for $6.7 million. D.I. 538, 562.

     D.     ESP Litigation Against Committee and Richardson in Tennessee

On October 13, 2000, an involuntary petition under chapter 11 of the Bankruptcy Code was filed against ESP in the Middle District of Tennessee.  M.D. Tenn. Bankr. Case No. 00-09273, D.I.1. ESP then filed a complaint against the Committee, its counsel, and Richardson personally, in which it sought to stay the adversary proceeding pending in Delaware against Gray and Gray-related entities as well as monetary damages against the defendants and punitive damages against Richardson. *See* Docket for M.D. Tenn Bankr. Case No. 00-09273, D. I. 149. The ESP adversary proceeding was closed on April 29, 2005, after over three years of inactivity. *See* Docket for M.D. Tenn Adv. Pro. No. 01-00676.

     E.     Richardson's Application for Administrative Expense Priority Treatment

On February 15, 2005, Richardson filed his initial application ("Initial Application") under 11 U.S.C. §§ 507(a)(1) and 503(b) seeking the allowance of fees and expenses totaling $877,752.59[9] as an administrative expense.  D.I. 403. The chapter 11 trustee and United States Trustee both objected to the Initial Application.  D.I. 421, 427.

---

[8]Judge Jordan's decision is reported at 2004 WL 1812700.

[9]As a point of comparison, special counsel to the Committee received $1 million in fees and expenses, and counsel for the Committee received $770,300.25 in fees and $73,757.01 in expenses and. D.I. 580 (special counsel), 797 (counsel).

Thereafter, on March 13, 2006, Richardson filed an amended application ("Amended Application") reducing his total request to $869,631.50 and citing Sections 503(b)(1)(A), 503(b)(3)(B), (C), (D), and (F), and 503(b)(4) for legal authority. D.I. 587.   In his Amended Application, Richardson provided a "Quantitative Summary of Claims" that divided his request into thirteen discrete tasks.  *Id*.

Richardson filed a supplement to his Amended Application on April 3, 2006 ("Supplemental Application"), in which he provided an additional "Quantitative Summary of Claims II" that divided his request among the statutory provisions under which he sought administrative expense priority treatment.[10]  D.I. 591. In his Supplemental Application, Richardson removed Section 503(b)(3)(B) as legal authority for his request, but he increased his total claim to $876,748.67.  *Id*.  Of the amount requested, a total of $768,921.71 was in the form of "fees" calculated by taking the number of hours worked by Richardson or an associate of his law firm and multiplying them by the corresponding hourly rate ($250 to $275 for Richardson). *Id*. (attached invoices).  The remaining $107,826.96 was classified as "Expenses."  *Id*.

Richardson's Amended Application seeks administrative expense priority treatment for services such as the following:

  •  defending against post-petition litigation brought against Richardson by
     Summit and ESP, on the theory that Summit is required to indemnify
     Richardson for all costs attendant to all litigation with Gray-related entities

---

[10]The division is as follows: $561,380.81 in fees and $81,816.65 under a combination of sections 503(b)(1)(A), (b)(3)(D), and (b)(4); $118,614.59 in fees and $23,638.17 in expenses under a combination of sections 503(b)(3)(D) and (b)(4); $57,615.06 in fees and $541.55 in expenses under section 503(b)(1)(A) only; $19,864.58 in fees and $1,827.59 in expenses under a combination of sections 503(b)(3)(C), (b)(3)(D), and (b)(4); and $11,466.67 in fees and $3.00 in expenses under section 503(b)(3)(C) only.  D.I. 591.

10

(including the cost of post-petition efforts to collect his pre-petition indemnification claim);

• allegedly laying the factual and legal groundwork for virtually every asset collected during Summit's bankruptcy case, as well as other cases in other jurisdictions;

• taking actions in other jurisdictions that, as a matter of conjecture, might possibly have staved off actions adverse to Summit;

• taking measures in other jurisdictions that, while unsuccessful, nonetheless "did sow seeds of distrust against Gray"; and

• providing information that led to Gray's incarceration, in Missouri, for bankruptcy and tax fraud in a Missouri bankruptcy case.[11]

In addition, Richardson alleged that if he had not drafted pleadings, reviewed evidence, and formulated theories and strategies "there would have been no possibility of recover [sic] for himself or for the Estate." D.I. 587 at 7.  Richardson also stated that his services in allegedly creating the Committee were vital because, without the results obtained by the Committee, "Richardson could not have recovered the indemnification due to him."  *Id*. at 9.

On the other hand, Richardson acknowledged that Prussin "was active in this case," and that he and Prussin "worked closely" on the proceedings in which Gray was found to be in contempt of a pre-petition preliminary injunction obtained in New York state court by shareholders Prussin represented.  *Id*. at 13   Indeed, Richardson acknowledged that "[t]he in court work was done by Prussin" in obtaining the preliminary injunction which, according to Richardson, laid the groundwork for all of the assets subsequently brought into Summit's estate. *Id*. at 19.

---

[11]Gray was incarcerated for fraud committed in the bankruptcy case of HomeStar Industries, Case No. 97-51831, which was filed in the District of Missouri on December 2, 1997.

11

With regard to the criminal proceedings in Missouri, Richardson stated that he provided authorities with "extensive background" and "the overall big picture," and the benefit derived from the incarceration was "the collapse of [Gray's] house of cards." *Id.* at 27.

In support of Richardson's claims connecting his services in this and other cases to great results in this case, the Amended Application supplied time records indicating that he put in the time – but provided no additional evidence to connect the time spent to the alleged resulting benefit to the estate. *Id*.

The United States Trustee, chapter 11 trustee, and Committee objected to the Amended Application arguing that (i) Richardson's efforts were duplicative of other parties' services, (ii) Richardson's section 503(b)(1)(A) claim failed because his fees and expenses did not arise from a post-petition transaction with the Debtor or provide an actual benefit to the estate; (iii) Richardson's section 503(b)(3)(C) claim failed because the criminal matters in which he assisted do not relate to the Debtor's case, business, or property; (iv) Richardson's section 503(b)(3)(D) claim failed because he did not make a substantial contribution to the Debtor's estate or creditors; and (v) Richardson could not recover his fees under section 503(b)(4) because the mere fact that he is an attorney does not entitle him to recover professional fees as he was not employed by an entity entitled to recover under subsection 503(b)(3). D.I. 421, 427.

        F.    Trial

The hearing on Richardson's administrative expense request spanned two days, March 16, 2006, and April 4, 2006, and featured testimony from both Richardson and Prussin. D.I. 589, 599.  Relevant highlights of the testimony are as follows:

- Richardson admitted that, in the pre-petition New York shareholder lawsuits which he claimed laid the groundwork for most of the beneficial results obtained in this case, he was neither a plaintiff nor counsel to the plaintiffs. D.I. 599 (Apr. Tr. 91:9-14; 92:20-94:1;125:5-10). He also admitted that no assets were brought into Summit's bankruptcy estate through the pre-petition New York litigation. D.I. 589 (Transcript of March 16, 2006, Hearing ("Mar. Tr.") 19: 11-18); D.I. 599 (Apr. Tr. 126:1-4).

- Richardson admitted that his actions in defending against the short-lived RICO action provided no benefit to the estate. D.I. 599 (Apr. Tr. 151:3-9).

- Richardson admitted that the only benefit derived from Gray's incarceration in Missouri was "psychic gratification." D.I. 599 (Apr. Tr. 158:24-160:12).

- Richardson testified that James Kelly was the key witness in the adversary brought by the Committee against Gray, and that "it would have been impossible to go to trial" without him. D.I. 599 (Apr. Tr. 252:12).

- Prussin testified that Richardson did not participate in the trial in which Gray was originally jailed for contempt of the preliminary injunction entered in the New York shareholder litigation. D.I. 599 (Apr. Tr. at 188:24-189:15).

- Prussin testified that the majority of the facts and theories behind the various causes of action in the Committee's complaint against Gray were developed through the efforts of many different persons and were not solely the result of Richardson's exploits. D.I. 599 (Apr. Tr. 194-208).

On May 18, 2006, Richardson filed a post-hearing brief in which he stated, *inter alia*, that he was entitled to be indemnified by the Debtor and that his indemnification allowed him to collect his "costs of collection" under 11 U.S.C. § 503(b)(1)(A). D.I. 610 at 2. The United States Trustee filed a response, and the chapter 11 trustee and Committee filed a joint response.[12] D.I. 622, 620.

---

[12] The chapter 11 trustee and Committee sought leave to file a brief in excess of the page limits as the post-trial brief was joint in nature and addressed not only Richardson's Amended Application but that of Jepsco, another section 503(b) applicant.

G.    Bankruptcy Court Decision

On December 4, 2007, the bankruptcy court issued an opinion and order.[13] D.I. 793, 795. The Bankruptcy Court found that Richardson failed to meet his burden of proof under section 503(b)(1)(A), (b)(3)(C), (b)(3)(D), and (b)(4). *Id*.  The bankruptcy court denied all hourly compensation requested, and all but $2,533.62 of the out-of-pocket expenses requested.

On December 13, 2007, Richardson filed a timely notice of appeal.  D.I. 809.

## SUMMARY OF ARGUMENT

The only relief sought anywhere in Richardson's Memorandum of Law is "remand for rehearing with fair procedures."  The procedures followed by the bankruptcy court were eminently fair, however.  Richardson was allowed to amend and supplement his initial request for an administrative expense claim, he then had a two-day plenary hearing, and finally he was afforded to opportunity to submit a post-hearing brief.  As Richardson received an eminently fair and thorough hearing, remand is not necessary, and the bankruptcy court's decision should be affirmed.

In addition, Richardson's request for hourly compensation was properly denied by the bankruptcy court.  Neither section 503(b)(1)(A), 503(b)(3)(C), nor 503(b)(3)(D) allow administrative expense priority treatment for a creditor's time spent.  In addition, section 503(b)(4) only applies to an attorney employed by a creditor, and not the creditor itself – and it only applies if the creditor may obtain administrative expense priority treatment under section 503(b).

---

[13]The Bankruptcy Court's decision is reported at 379 B.R. 40.

14

Furthermore, the bankruptcy court properly denied Richardson's request for administrative expense treatment of certain expenses pursuant to section 503(b)(1)(A), 503 (b)(3)(C), and 503(b)(3)(D).  Richardson was not able to carry his burden of proving that he actually rendered services, that those services benefitted the estate, and that he could prove a causal connection between his services and the benefit.  As Richardson could not carry the heavy burden attendant to section 503(b) claims, the bankruptcy court's denial of his request was not clearly erroneous, and should be affirmed.

## ARGUMENT

### I.    The Procedures Followed by the Bankruptcy Court Were Fair, So Remand is Not Necessary

Federal Rule of Bankruptcy Procedure 8010(a)(1)(F) requires an appellant's brief to contain a conclusion "stating the precise relief sought."  The only relief requested in the conclusion of Richardson's Memorandum of Law (or elsewhere, for that matter) is the request, at page 35, that "[t]he appropriate relief would be a remand for rehearing with fair procedures."  As the conclusion and the paragraph immediately preceding it contain the only suggestion in Richardson's Memorandum of Law of procedural infirmity, it is difficult to discern precisely what he is complaining about.  It would appear that Richardson thinks this matter should be remanded for further proceedings because he was not afforded the opportunity to file a reply to the responses filed to his post-hearing brief.  *See* Richardson Memorandum of Law at 1, 35.

The only procedural requirement contained in section 503(b) is that administrative expense requests be subject to "notice and a hearing."  Under 11 U.S.C. § 102(1)(A), "after

notice and a hearing" means "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."

In this case, Richardson filed his Initial Application in February 2005 and the hearing did not take place until March and April of 2006, so there are presumably no notice issues. D.I. 403, 589, 599. As for the adequacy of the hearing his request received, Richardson filed not only his Initial Application, but also an Amended Application and a Supplement Application. He then received a plenary hearing with two full days of testimony, during which he not only testified but also presented documentary evidence that had not been provided with his application. Then, after the hearing, he was allowed to file an extensive post-hearing brief. Far from being "unfair" to Richardson, the bankruptcy court went out of its way to provide him with the opportunity to carry his burden of proof.

It is difficult to imagine how much more "fair" the proceedings would have been had Richardson been allowed to file a post-hearing reply brief. In addition, nothing in the record below remotely supports Richardson's allegations that the bankruptcy court was "misled" (page 18 of Richardson's Memorandum of Law), suffered from a "fundamental misconception" (page 19), was "unfamiliar with Judge Jordan's findings" (page 23), did not read Richardson's document submission (page 34), had a "predisposition that makes a fair hearing impossible" (page 34), had "fundamental misconceptions of the underlying facts and proceedings [that] taint the entire analysis" (page 34-35), or was "confused about . . . factual matters that were viewed in a distorted context" (page 35). Contrary to his belief that the bankruptcy court was either duped, predisposed, or grossly negligent, the record shows that Richardson received a thorough and fair hearing on his request during which all of his evidence and arguments were considered – he

simply failed to carry his burden of proof, and he does not like the result. *See* Bankruptcy Court Decision at 23, 25, 27, 31, 37, 38, 39, 40. Given the extensive hearing Richardson has already received, there is no need for a remand that would only provide Richardson with yet another opportunity to attempt to carry his burden of proof.

As there is no need for a remand on this record, Richardson's request for remand should be denied. As Richardson's Memorandum of Law requests no relief other than remand, the bankruptcy court's decision should be affirmed.

## II.    The Bankruptcy Court Properly Denied Richardson's Request for Hourly Fees

The bulk of Richardson's administrative expense request consists of $768,921.71 in compensation for hourly time spent by Richardson and employees of his law firm in various matters attendant to this and other cases. As (i) sections 503(b)(1)(A) and (b)(3) do not allow administrative expense priority treatment to requests for compensation for services rendered, and (ii) section 503(b)(4) only allows administrative expense priority treatment to compensation for services rendered by an attorney employed by a creditor (but not to the creditor himself), the bankruptcy court did not err in denying Richardson's request to be paid for his time spent on this and other cases.

### A.    Section 503(b)(1)(A) Does Not Allow Administrative Expense Priority For Services Rendered

Of his total request, Richardson seeks to have hourly time valued at $643,197.46 afforded administrative expense priority treatment under section 503(b)(1)(A), either under that provision alone or "bootstrapped" with other provisions of section 503(b).[14] Under section 503(b)(1)(A), a

---

[14]It is inappropriate to "bootstrap" a request by seeking administrative expense treatment under myriad provisions of section 503(b) in the hope that if the request is denied under one

party may obtain administrative expense priority treatment for his attorney fees only if he can carry what the Third Circuit has called "the heavy burden of demonstrating that the costs and fees for which [he] seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of estate assets." *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d at 533.

As an initial matter, Richardson cannot prove that his hourly time spent is an "actual" cost or expense. He has not gone "out of pocket" to pay an attorney to provide these services; instead, he has rendered them himself. What he seeks to recover is not the reimbursement of an "actual" expense capable of being objectively proven, but the payment of a theoretical "opportunity cost" to which he has affixed a value. This is not the kind of "cost and expense" for which section 503(b)(1)(A) is intended.

Unlike other provisions of section 503(b), section 503(b)(1)(A) makes no mention of "compensation." *Compare* 11 U.S.C. § 503(b)(2), (4), & (5). Thus, applicants cannot obtain a section 503(b)(1)(A) claim in the amount of compensation for their services rendered. If Congress had so intended, it would have written "compensation" into subparagraph (b)(1)(A) like it did into other subparagraphs of section 503(b). Thus, subparagraph (b)(1)(A) only allows for reimbursement of the claimant's out-of-pocket "costs and expenses," but not for the hourly time spent by the claimant.

Even if he were entitled to request section 503(b)(1)(A) administrative expense priority treatment for services rendered, to carry his burden Richardson must do more than show that he

---

provision it may be granted under another. *Cf. F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108-09 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988) (professional may not use § 503(b)(1)(A) when he cannot meet requirement for § 503(b)(2) claim).

spent time on a matter in which the estate wound up with a good result; he must prove that his services were necessary to obtain the result – essentially, that he alone was the "catalyst" for the result. *O'Brien*, 181 F.3d at 533 (participation must be "necessary to accord the estate an actual benefit"), 537 (applicant must show not just benefit, but that he was the catalyst for benefit). In reviewing the denial of a section 503(b)(1)(A) request on appeal, this Court must "consider whether the record evidence supports the Bankruptcy Court's implicit conclusion that awarding [the requested] fees was not necessary to preserve the value of [the] estate." *Id*. at 536.

The record indicates that on most of the significant actions taken by Richardson, Prussin and others were involved, at least enough that Richardson cannot prove that he is the catalyst for the benefits received by the estate. D.I. 599 (Apr. Tr. 91:9-14, 92:20-94:1, 125:5-10). For example, Prussin testified that he was a principal draftsman of the Committee's complaint against Gray. D.I. 599 (Apr. Tr. 199:25, 200:1-8). In addition, matters filed in other courts were so attenuated that Richardson was not able to prove that they produced a demonstrable asset to the estate. D.I. (Apr. Tr. 151:3-9). As a result, even if compensation for services rendered was available under section 503(b)(1)(A), Richardson did make the necessary showing.

On the record before the bankruptcy court, it was not clear error to deny Richardson's request for section 503(b)(1)(A) administrative expense priority treatment for his hourly time spent. As a result, the bankruptcy court's decision should be affirmed.

B.    Section 503(b)(3)

Of his total request, Richardson seeks to have hourly time valued at $711,326.65 afforded administrative expense priority treatment under section 503(b)(3)(C) and (D), either under those provisions alone or "bootstrapped" with other provisions of section 503(b). Due to the existence

19

of section 503(b)(4), however, no hourly charges for legal services may ever be compensated under section 503(b)(3). The statutory construct expressly requires creditors to first prove that their actual out-of-pocket expenses, "other than compensation and reimbursement specified in [section 503(b)(4)]," may be afforded administrative expense priority under section 503(b)(3); only if they first make that showing can they seek administrative expense priority treatment for the fees incurred by their attorney. *See In re Worldwide Direct, Inc.*, 334 B.R. at 120.

In addition, section 503(b)(3) only allows administrative expense priority treatment for "actual" expenses. As Richardson's hourly time spent is not an actual out-of-pocket expense, it is not subject to administrative expense priority treatment under section 503(b)(3).

Also, section 503(b)(3) requires proof that the expenses were "necessary" to achieve a benefit to the estate. To carry his burden, Richardson needed to not only produce time records and his own glowing account of his deeds – he needed to provide "corroborating testimony from a disinterested party." *See Derivative Plaintiffs v. Columbia Gas Sys. (In re Columbia Gas Sys.)*, 2000 WL 1456298 (D. Del. Sept. 20, 2000). As he did not provide disinterested corroborating evidence, Richardson did not make the requisite showing to carry his burden of proof. D.I. 599 (Apr. Tr. 252:1-12).

Furthermore, section 503(b)(3)(C) applies only to criminal prosecution "relating to the case or to the business or property of the debtor." The fact that the prosecution was of Summit's principal, who may or may not have looted Summit, means that there is some question whether the prosecution was too attenuated. In any event, however, Richardson did not supply sufficient information to enable the bankruptcy court to determine that the prosecution implicated either Summit, its business, or its assets. D.I. 589 (Mar. Tr. 30:15-25).

As a result, the bankruptcy court's denial of Richardson's request to have his hourly services afforded administrative expense priority treatment under sections 503(b)(3)(C) and (D) was not erroneous, and the bankruptcy court's decision should be affirmed.

C.    Section 503(b)(4)

Of his total request, Richardson seeks to have hourly time valued at $699,859.98 afforded administrative expense priority treatment under section 503(b)(4), either under that provision alone or "bootstrapped" with other provisions of section 503(b).

Section 503(b)(4) provides for the administrative expense priority treatment of the legal fees of the attorney for a creditor whose expenses are entitled to section 503(b)(3) priority treatment.  Thus, unless a creditor has first received a section 503(b)(3) administrative expense, he cannot obtain section 503(b)(4) priority for his legal fees.

As has been addressed previously, Richardson was faced with a steep burden under section 503(b)(3)(D) – he had to rebut the presumption that everything he did in this case was done to benefit his own self-interest, such that every benefit that resulted was incidental and not a "substantial contribution." *See Lebron v. Mechem Financial Inc.*, 27 F.3d at 944.  Richardson was unable to rebut that presumption, so his section 503(b)(3)(D) request was properly denied. As a result, he cannot obtain section 503(b)(4) administrative expense treatment for his attorney fees, regardless of whether he actually paid for them or rendered them *pro se*.

Even if section 503(b)(4) was not inexorably linked to section 503(b)(3), Richardson would still not be entitled to receive administrative expense treatment for the *pro se* legal fees he alleges to have racked up in this case.  The Third Circuit has noted that it reads section 503(b)(4) as only allowing a creditor to obtain an administrative expense claim equal to the amount he

"was required to pay for [legal] services." *Lebron*, 27 F.3d at 947 n.5.  As a result, Richardson

could only recover attorney fees if he could prove that he had to pay for them, and then he would

only receive the actual amount he had to pay.  As he has not paid an attorney, but instead

rendered the services himself, Richardson cannot receive administrative expense treatment under

section 503(b)(4).

In any event, section 503(b)(4) applies to the attorney "of" a creditor, not the creditor

himself (even if the creditor just so happens to be an attorney).  As a result, even an attorney-

creditor cannot obtain compensation for his own legal services under section 503(b)(4).  *See, e.g.*,

*In re Patriot Aviation Services, Inc.*, ___ B.R. ___, 2008 WL 506260 (Bankr. S.D. Fla. Feb. 21,

2008); *In re Gimelson*, 2004 WL 2713059 * 22 (E.D. Pa. Nov. 23, 2004); *In re Pappas*, 277 B.R.

171, 177-78 (Bankr. E.D.N.Y. 2002).[15]

Richardson argues at page 30-31 of his Memorandum of Law that he was awarded *pro se*

legal fees in his indemnification, and so should be awarded his *pro se* legal fees here.  This

argument is unavailing, however.  The Delaware indemnification law (pursuant to which

Richardson obtained his claim) and the Bankruptcy Code are different statutes, with different

purposes.  It may very well be good public policy to award *pro se* legal fees in indemnification

actions, but the overarching policy in bankruptcy cases is to limit the amount of administrative

claims.  *See Burlington*, 853 F.2d at 706 ("[K]eeping costs to a minimum serves the

overwhelming concern of the Code: Preservation of the estate.").  As section 503(b) is to be

---

[15]Richardson did not attempt to prove that he had a contractual relationship with anyone
in his capacity as an attorney.

applied strictly, and Richardson's desired result would require a lax application, the bankruptcy court's denial of Richardson's *pro se* counsel fees were not clearly erroneous.

As a result, the bankruptcy court's denial of Richardson's request for his hourly time spent in this and other cases to be treated as legal fees under section 503(b)(4) was not erroneous, and should be affirmed.

### III.    The Bankruptcy Court's Denial of Richardson's Out-of-Pocket Expenses Was Not Clearly Erroneous

####     A.    Denial of Richardson's Section 503(b)(1)(A) Request Was Not Clearly Erroneous

The bulk of Richardson's section 503(b)(1)(A) request is related to his attempts to collect the pre-petition indemnification award of $46,331.98 that he received after successfully defending himself in a suit by Gray alleging a violation of Richardson's fiduciary duty as an officer of Chariot, Summit's predecessor. *See Gray v. Richardson*, 251 A.D.2d 268, 675 N.Y.S.2d 57 (1ˢᵗ Dept. 1998), *leave to appeal denied*, 92 N.Y.2d 815, 706 N.E. 2d 747, 683 N.Y.S. 2d 759 (1998). Richardson seeks administrative expense priority for expenses he incurred in the Summit bankruptcy case, the RICO and preference actions brought against him by Summit, and several other cases in other venues in which he attempted to bring assets into the estate to increase the likelihood that he would collect on his indemnification award. *See* Bankruptcy Court Decision at 19. The bankruptcy court denied Richardson's entire indemnification-related request because, even if Richardson is entitled to an indemnification claim for his collection efforts, the claim would still not be entitled to section 503(b)(1)(A) administrative expense priority treatment because it would be a pre-petition claim. *See* Bankruptcy Court Decision at 20-21.

23

Under section 503(b)(1)(A), an applicant must show that the claim "arise[s] from a transaction with the debtor in possession," rather than a pre-petition transaction with the debtor (or its predecessor). *See O'Brien*, 181 F.3d at 532.  Although the Richardson Memorandum of Law states at page 26 that each post-petition contested matter with Summit was a new post-petition "transaction," the actual transaction that gave rise to Richardson having any indemnification claim at all was his pre-petition employment transaction with Chariot, Summit's predecessor.  D.I. 599 (Apr. Tr. 99:9-101:19).  As the bankruptcy court correctly held, indemnification claim grounded on a claimant's pre-petition employment status is a form of pre-petition compensation, and thus is part of the claimant's pre-petition unsecured claim rather than a post-petition administrative claim subject to section 503(b)(1)(A) priority.  *See, e.g.*, *In re Overland Park Fin. Corp.*, 240 B.R. 402, 405-06 (Bankr. D. Kan. 1999); *In re Highland Group, Inc.*, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992).  As a result, the bankruptcy court's denial of Richardson's request for administrative expense treatment for his indemnification claim was not clearly erroneous.

Richardson's analogy at page 27 and 28 of his Memorandum of Law to the Supreme Court's decision in *Reading Co. v. Brown* and similar cases is unavailing.  In those cases, an administrative expense claim was awarded because an estate fiduciary was affirmatively found to have engaged in wrongdoing that harmed the applicant.  *See, e.g.*, *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968) ("We hold that damages resulting from the negligence of a receiver acting within the scope of his authority as receiver gives rise to 'actual and necessary costs' of a Chapter XI arrangement."); *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200, 202 (1st Cir. 1985) (harm caused by debtor's violation of injunction during proceedings

for nuisance damages afforded administrative expense priority). In the instant case, while Richardson has certainly accused Gray and his entities (including Summit) of causing him harm, there has been no affirmative determination that Richardson is owed any damages for any post-petition action taken against him by Summit. *See* Bankruptcy Court Decision at 19 (Richardson's reliance on *Reading* "is misplaced, as he has not accused [Summit] of committing a tort."). Indeed, the only actions taken by Summit against Richardson were a short-lived RICO claim that caused Richardson no harm and a preference action that, in the stipulation that dismissed the adversary proceeding, expressly stated that the parties would each pay their own costs. Adv. Pro. 99-126 D.I. 44. And of course, actions taken by any entity other than Summit could never justify a *Reading* administrative expense in Summit's case, barring a finding that Summit itself had engaged in wrongdoing. Without an affirmative finding of wrongdoing by Summit that caused Richardson to incur damages, there is simply no basis for a *Reading* administrative expense claim in this case.

The remainder of Richardson's section 503(b)(1)(A) claim is comprised of expenses incurred on various Committee matters that, according to Richardson, enabled the estate to recover assets. D.I. 610 at 2. Although Richardson's writings have continuously argued that his actions benefitted the estate, Richardson has not provided any separate evidence to corroborate the causal connection between his services and an actual specific benefit to the estate. Section 503(b)(1)(A) claims cannot simply be had for the asking; Richardson had the admittedly "heavy burden" of proving that his expenses were necessary to achieve an identifiable actual benefit to the estate, but he was unable to carry that burden, producing only unsupported conclusory statements but no real evidence. Given the broad discretion provided the bankruptcy court in this

area, and especially given the deference accorded the bankruptcy court's ability to observe the witnesses, it cannot be said that the bankruptcy court's denial of Richardson's section 503(b)(1)(A) claim was clearly erroneous on the record before it.  As a result, the bankruptcy court's decision should be affirmed.

      B.     <u>Denial of Richardson's Section 503(b)(3)(D) Request Was Not Clearly Erroneous</u>

Most of the expenses for which Richardson seeks section 503(b)(3)(D) administrative expense priority treatment were generated during Richardson's defense against litigation filed against him.  Although Richardson's writings extol the benefits of his actions in these matters, the fact remains that at virtually every turn in this case Richardson was attempting to either defend himself against attack or collect on his indemnification claim.

The Third Circuit presumes that creditors are acting on their own behalf, unless they can rebut the presumption with proof that their actions were "designed to benefit others." *Lebron*, 27 F.3d at 946.  The record below contained ample evidence that Richardson's actions were borne of an intent to benefit himself, and no evidence of altruistic intent. As a result, he did not rebut the presumption of self-interest, so any benefit to the estate from his actions must be deemed to be purely incidental. D.I. 599 (Apr. Tr. 151:3-9, 164:23-165:2, 132:3-14, 144:13-17).

In addition, many of Richardson's actions did not produce a demonstrable benefit to the estate.  For example, on pages 25-26 of his Memorandum of Law Richardson posits a tenuous daisy chain linking (i) the pre-petition injunction against Gray in the New York shareholder litigation, (ii) Richardson's correspondence with the United States Trustee in Tennessee, (iii) Gray's federal indictment in Missouri, and (iv) the granting of a motion over Richardson's objection in a Tennessee bankruptcy court – all of which somehow, by Richardson's reckoning,

led to a benefit to the Summit estate caused solely by Richardson.  If this is a benefit, it is exactly

the kind of benefit that the Third Circuit deems insufficient for section 503(b)(3)(D) purposes.

In order to carry his burden of proof under section 503(b)(3)(D), Richardson was required

to introduce "'[s]omething more than mere conclusory, self-serving statements regarding [his]

involvement in [the] case.'"  *See Derivative Plaintiffs v. Columbia Gas Sys. (In re Columbia Gas*

*Sys)*, 2000 WL 1456298 (D. Del. Sept, 20, 2000) (quoting *In re Buckhead Am. Corp.*, 161 B.R.

11, 15 (Bankr. D. Del. 1993).  Indeed, he should have introduced "'[c]orroborating testimony

[from] a disinterested party attesting to [his] instrumental acts.'"  *Id.* (quoting *In re U.S. Lines,*

*Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989)).  But he introduced no such evidence, relying

instead on his time records and glowing narratives.  Given the evidence that Prussin, as special

counsel to the Committee, was intimately involved in most of the actions that produced value to

the Summit estate, Richardson's failure to produce corroborating evidence is fatal to his section

503(b)(3)(D) request.

Even when Richardson was involved in a matter that produced a benefit to the estate –

such as the Committee's complaint against Gray, which brought in over $48 million – he has

failed to prove that his services were the necessary bridge to the benefit.  While Richardson's

writings certainly trumpet his services as the font from which all benefits sprung, the record

placed before the bankruptcy court was devoid of any corroborating evidence to that effect, and

no one – not the court, not the United States Trustee, not the chapter 11 trustee, and not the

Committee – agreed with him on that point.  All Richardson has shown is that he filed

documents, responded to documents, and corresponded with people in this and other cases – but

he has not proven the causal connection between these actions and the benefit received by the

estate. Richardson has apparently fallen victim to the logical fallacy of "*post hoc, ergo propter hoc*" – essentially, "after this, therefore because of this." By focusing solely on his early actions and the ultimate result, he failed to prove the causal connection between his services and the result. *See* Bankruptcy Court Decision at 30 (Richardson provided no additional evidence to support assertions that he developed facts and theories regarding New York preliminary injunction and contempt proceedings against Gray), 32 (Richardson did not sow causal connection between his actions and Gray incarceration in Missouri), 33 (Richardson merely argues with no proof regarding alleged substantial contribution form actions in Tennessee proceedings).

As Richardson did not carry his burden of proof, the bankruptcy court's denial of his section 503(b)(3)(D) claim was not clear error. Thus, the bankruptcy court's decision should be affirmed.

C.    Denial of Richardson's Section 503(b)(3)(C) Request Was Not Clearly Erroneous

Richardson's request for administrative expense treatment under section 503(b)(3)(C) for his expenses attendant to Gray's prosecution for bankruptcy and tax fraud in Missouri is not as large as his other requests, but it suffers from most of the same failings. As the bankruptcy court stated at page 26 of its decision, although a request under section 503(b)(3)(C) need not show a benefit to the estate, Richardson still must show a direct relationship between his expenses and Gray's prosecution, and he must show a connection between Gray's prosecution and Summit's bankruptcy case, business, or property. As the record below did not make these connections, the bankruptcy court properly denied Richardson's request. D.I. (Apr. Tr. 83:6-25, 84:1-5, 158:24-159:25).

The record only reflects that Richardson corresponded with the authorities; there is no indication from the FBI, IRS, or other governmental authorities that Richardson's information was instrumental in prosecuting Gray. Indeed, as the bankruptcy court stated at page 27 of its decision, it is not clear how Gray's criminal proceeding, or even the underlying Missouri bankruptcy case, had anything more than a tangential relation to Summit's case, property, or business. It is not enough to say that any criminal proceeding against Summit's principal, who looted Summit, is related to Summit's case, business, or property. Some quantum of proof was required, and none was provided by Richardson.

As Richardson failed to carry his burden of proof under section 503(b)(3)(C), the bankruptcy court's denial of his request was not clearly erroneous. Thus, the bankruptcy court's decision should be affirmed.

## CONCLUSION

For these reasons, the Acting United States Trustee respectfully asks this Court to affirm the bankruptcy court's order.

Respectfully submitted,

ROBERTA A. DEANGELIS
ACTING UNITED STATES TRUSTEE
REGION 3

By:    P. Matthew Sutko
John Sheehan
Robert J. Schneider
United States Department of Justice
Executive Office for United States Trustees
20 Massachusetts Ave, N.W.
Washington, DC 20530

Andrew R. Vara, Assistant U.S. Trustee
Richard L. Schepacarter
/s/Richard L. Schepacarter
United States Department of Justice
Office of the United States Trustee
844 King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491

Dated: May 16, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| SUMMIT METALS, INC. | : | Case No. 98-2870(KJC) |
| Debtor. | : | |
| AMBROSE M. RICHARDSON, III | : | |
| Appellant, | : | |
| v. | : | Civ. Action 1:08-cv-00005 (SLR) |
| KELLY BEAUDIN STAPLETON, UNITED STATES TRUSTEE AND FRANCIS A. MONACO, JR., CHAPTER 11 TRUSTEE | : : | |
| Appellees. | : | |

## CERTIFICATE OF SERVICE

I certify that on May 16, 2008, I caused to be served a copy of the Brief of Appellee, Roberta

A. DeAngelis, Acting United States Trustee via fax and/or regular mail to the persons listed below:

Ambrose M. Richardson, III, Esquire
40 Wall Street
35th Floor
New York, NY 10005
Fax: 212-267-2030

Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Fax: 302-661-7729

Richard E. Gray
P.O. Box 182
Keene Valley, NY 12942

 /s/Richard L. Schepacarter
Richard L. Schepacarter, Esquire
Trial Attorney